*02cv 1138 dHt rspntc*

**FILED**

2004 JAN 12 P 3: 38

U.S. DISTRICT COURT
HART[FORD], CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re XEROX CORPORATION
ERISA LITIGATION

Master File No. 02-CV-1138 (AWT)

CLASS ACTION

This Document Relates To:

ALL ACTIONS

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF
SUPPLEMENTAL AUTHORITY REGARDING *ENRON ERISA LITIGATION* IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

For the third time since defendants filed their Motions to Dismiss, plaintiffs have filed a Notice of Supplemental Authority. The case plaintiffs now seek to bring to this Court's attention — *In re Enron Corporation Securities Derivative & "ERISA" Litigation*, 284 F.Supp.2d 511 (S.D. Tex. 2003) — once again has no relevance to this matter because of fundamental differences between the Enron 401(k) Plan and the Xerox Plans.

**No Defendant Responsible for Investment in Xerox Stock**

Plaintiffs' first and second points, respecting the so-called "duty to disregard directions to invest in company stock" and the *Enron* court's alleged rejection of the "Plan design" argument, both assume a fiduciary with responsibility for the investment in company stock. In *Enron*, there was clear evidence of this. For example:

> The duties of the Enron Administrative Committee under the Savings Plan include directing the Trustee "as to the investment of the Trust Fund in Enron Stock or EO&G Stock" and "direct[ing] the Trustee as to the exercise of rights or privileges to acquire, convert, or exchange Enron Stock or EO&G Stock." *Enron*, 284 F. Supp. 2d at 654.
>
> Consistent with the Savings Plan, the applicable trust agreement recognized the Administrative Committee's duty to "designate Investment Funds, such as a

Company Stock Investment Fund, and its '[authority] to terminate the existing Investment Funds'". *Id.*

The Enron Savings Plan also provided that "the Trustee shall diversify the investments of that portion of the fund of which it has investment responsibility so as to minimize the risk of large losses." *Id.* at 655.

Plaintiffs' quote from the *Enron* decision, that "an investment fiduciary must disregard plan documents if following their terms would be imprudent," also assumes a fiduciary with responsibility for investment in company stock. Here, as defendants have noted throughout their filings, no defendant is a fiduciary with respect to the investment in Xerox stock. There are no provisions in the Xerox Plans that mirror the provisions of the Enron Plans quoted above.

**Settlor Function Doctrine**

Unlike the Enron 401(k) Plan, which clearly gave the Enron Administrative Committee fiduciary responsibility regarding the Enron stock fund as well as all other plan investment choices, the Xerox Plans clearly and deliberately distinguish between Xerox stock and all other investment alternatives. They *require* that Xerox stock be one of the options available to Plan participants, while describing all other investment choices by category (*e.g.*, "Balanced Fund" or "Income Fund")[1] with specifics to be determined according to guidelines of the Board of Directors (under the Salaried Plan) or the Joint Administrative Board (under the Union Plan).[2] This requirement in the terms of the Plans places the Xerox Stock Fund

---

[1] 1998 Salaried Plan, § 6.02(a)(i) and (iii).

[2] *See* Salaried Plan § 6.02; Union Plan § 6.02 (the Plans list all but one of the investment choices *by category*, with each made subject to the guidelines of the Board of Directors (Salaried Plan) or the Joint Administrative Board (Union Plan). The exception is the "Xerox Stock Fund," which is listed *by name* and to which no such guidelines apply).

2

outside the ambit of fiduciary responsibility that attaches to all other investment choices due to the exercise of discretion required in specifying what those choices will be. The Company, settlor of the Plans and their associated trust, is stating in unmistakable terms, "Fiduciaries, you pick the specific investments for each category we have specified, but when it comes to Company stock, you have no choice to make. It is to be Xerox stock." Those terms are a clear manifestation of the intent of Xerox Corporation acting in its settlor capacity and not in any fiduciary capacity, and not subject to ERISA's fiduciary responsibility rules. Moreover, because those fiduciaries played no role in picking the Xerox Stock Fund as an investment choice (and played no other role relating to investment in Xerox stock), they have not "exercise[d]" investment authority with respect to that asset.[3]

The *Enron* Court recognized the existence of the settlor function doctrine. *Id.* at 655-56. Plaintiffs' assertion that Judge Harmon rejected the settlor function doctrine conveniently overlooks the fact that she was discussing the Enron Cash Balance Plan. In that Plan, there is no participant direction of investments and the plan itself designated at least one fiduciary responsible for the investment of all plan assets. *See* Exhibit A, Enron Cash Balance Plan, §§ 19.2 (trustee); 19.5 (investment manager). This is radically different from the Xerox Plans, in which participants made the buy and sell decisions with respect to their accounts and no defendant had or exercised responsibility for investment in Xerox stock. A far more instructive case than *Enron* with respect to the settlor function doctrine is *Tatum v. R.J. Reynolds Tobacco Co.*, 2003 WL 22940558 (M.D.N.C.), which applies the doctrine to plan

---

[3] *See* ERISA definition of the term "fiduciary," section 3(21)(A), 29 U.S.C. 1002(21)(A): "[a] person is a fiduciary with respect to a plan to the extent (i) he . . . exercises any authority or control respecting management or disposition of [a plan's] assets, . . ."

investment matters under a participant directed 401(k) plan. Defendants cited to the pendency of *Tatum* in their Motion to Dismiss as an example of a mirror image of the instant case, one in which the alleged fiduciary breach is not the acquisition or holding of company stock but rather the sale of company stock.[4] In *Tatum*, the court dismissed the complaint, holding that the sale was mandated by the terms of the plan and was therefore "part of settlor functions, and . . . not an exercise of fiduciary discretion. . . . In short, the decision to freeze, and eventually sell, the Nabisco stocks was made *and effectuated* pursuant to settlor authority" (emphasis supplied).[5]

Thus, the factual differences between the Enron plans and Xerox Plans make plaintiffs' reliance on the *Enron* decision misplaced.

**Monitoring**

Plaintiffs' third point - on monitoring - is irrelevant in light of the above. While some courts have held that one's exercise of the power to appoint a fiduciary under a plan subject to ERISA makes one a fiduciary with a duty to monitor the appointee, because no *Xerox* defendant exercised authority or control with respect to investment in Xerox stock,[6] none can be liable for failing to monitor an appointed fiduciary's alleged conduct in connection with that investment. As previously explained, fiduciary responsibility under ERISA is not an "all or nothing" proposition. It is clear beyond dispute that one may be a fiduciary for one purpose, *e.g.*, plan administration and not for another, *e.g.*, investment advice, and that even

---

[4] Def. Mot. p. 28. n. 65.

[5] 2003 WL 22940558 (M.D.N.C.), pp. 5 and 7

[6] *See* section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

*within* one of the categories of fiduciary responsibility, *e.g.,* investment authority, one may have fiduciary responsibility for certain assets and not for others.[7]

**Disclosure**

Plaintiffs' fourth point - on disclosure - once again would have this Court rule that a person who is not designated under a plan to provide investment advice to participants and does not voluntarily undertake to provide investment advice to them nevertheless may be liable for failing to provide investment advice.[8] Plaintiffs allege that defendants breached their fiduciary duty in not advising plaintiffs as to the "prudence" and "soundness" of investing in the Xerox Stock Fund.[9] One can hardly imagine two words that more clearly call for the normative, particularized judgment that is the essence of investment advice. Yet plaintiffs' contention that defendants were bound to advise participants as to the soundness and prudence of investing in company stock attempts to impose such an obligation on defendants. The Plan documents clearly told participants that the Xerox Stock Fund was not managed, distinguishing between it and other available plan investments, all mutual funds, and that, as an investment in a security of a single company, it was at the high end of the risk

---

[7] *See* Defs.' Mot. p. 7. *See also In re Williams Companies ERISA Litigation*, 271 F.Supp.2d 1328 (N.D. Okla. 2003), involving a 401(k) plan with an ESOP feature in which the court carefully distinguished among defendants based on the responsibilities they were given (or not given) under the terms of the plan and dismissed those that had no fiduciary responsibility with respect to investment in company stock, *i.e.,* the company itself and the company's board of directors.

[8] *See* § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A): "[a] person is a fiduciary with respect to a plan to the extent . . . (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of a plan, *or has any authority or responsibility to do so.* . . ." (emphasis supplied).

[9] Complaint, ¶ 172.

scale, compared to the other available options.[10] In short, defendants were not assigned responsibility by the terms of the Plans to provide investment advice and they did not voluntarily undertake to provide it, and this distinct fiduciary duty cannot be imposed on them *post hoc* by a pleading.

**Section 404(c)**

Plaintiffs' last point - regarding section 404(c) of ERISA - also is irrelevant to defendants' Motion to Dismiss. As discussed with particularity in defendants' response to plaintiffs' notice on *Kmart*, defendants do not rely on section 404(c) in their Motion to Dismiss. (*See* Defendants' Response to Notice of Supplemental Authorities in Opposition to Defendants' Motions to Dismiss, filed October 6, 2003, pp. 4-6). Further, plaintiffs' reference in their fifth point to the "selection of investment options by Plan fiduciaries" is misleading because no defendant herein selected Xerox stock to be one of the Plans' available investment alternatives.

**CONCLUSION**

Plaintiffs have once again brought an ERISA decision to this Court's attention, apparently without considering whether the plans at issue in the noticed case are similar to the Xerox Plans. Plaintiffs' strategy appears to be to rely upon sound bites from lengthy decisions without any consideration of whether the cases are relevant to the Xerox Plans. Defendants respectfully submit *Enron* (like *Kmart* and *WorldCom*) is not helpful to the Court in deciding the Defendants' Motions to Dismiss due to the dissimilarities in the plans at issue.

---

[10] *See* Def. Mot., n. 22 and Def. Rep. to Pl. Opp., n. 17.

Respectfully submitted,

*[signature]*

Benjamin H. Green (ct2332)
Brown Raysman Millstein
    Felder & Steiner LLP
Cityplace II
185 Asylum Street
Hartford, CT  06103
(860) 275-6400

Steven J. Sacher (ct 24024)
Kilpatrick Stockton LLP
607 14th Street, Suite 900
Washington, DC  2005-2018
(202) 508-5800
Attorneys for all Defendants
Except Ms. Myra Drucker

HARTFORD 81968v2