Exhibit
A

# ENRON CORP.
# CASH BALANCE PLAN

Effective January 1, 1996

# ENRON CORP.
## CASH BALANCE PLAN

WHEREAS, **ENRON CORP.** (the "**Company**") has heretofore adopted the **ENRON CORP. RETIREMENT PLAN** for the benefit of its employees; and

WHEREAS, the Company desires to amend the Enron Corp. Retirement Plan in several respects and to restate it in the form of this **ENRON CORP. CASH BALANCE PLAN**, intending thereby to provide an uninterrupted and continuing program of benefits;

NOW, **THEREFORE**, the Enron Corp. Retirement Plan is hereby amended and restated in its entirety in the form of this **ENRON CORP. CASH BALANCE PLAN** as follows, with no interruption in time, effective as of January 1, 1996, except as otherwise indicated herein:

shall Actuarial Equivalence with respect to a benefit becoming distributable during 1996 be less than the Actuarially Equivalent amount that would have been determined using the annual rate of interest on 30-year Treasury securities as in effect for the first day of 1996.

(6)  **Applicable Mortality Table**: The table prescribed by the Secretary of Treasury pursuant to section 417(e)(3) of the Code.

(7)  **Cash Balance Accrual**: For each Member and as of any determination date, the sum of all accruals credited for such Member pursuant to Section 4.2.

(8)  **Cash Balance Benefit**: The portion of a Member's Plan benefit which is attributable to the Member's Cash Balance Accruals.

(9)  **Code**: The Internal Revenue Code of 1986, as amended.

(10)  **Committee**: The administrative committee appointed by the Company to administer the Plan.

(11)  **Company**: Enron Corp.

(12)  **Compensation**: The total of all wages, salaries, fees for professional service, commissions and other amounts received in cash or in kind by a Member for services actually rendered or labor performed for the Employer while a Member to the extent such amounts are includable in gross income, subject to the following adjustments and limitations:

(A)  The following shall be excluded:

    (i)  overtime pay which is not regularly scheduled, bonuses, and incentive or other supplemental pay;

    (ii)  reimbursements and other expense allowances;

    (iii)  cash and noncash fringe benefits;

    (iv)  moving expenses;

    (v)  Employer contributions to or payments from this or any other deferred compensation program, whether such program is qualified under section 401(a) of the Code or nonqualified;

    (vi)  welfare benefits;

I-2

such Plan Year is taken into account, the Compensation for such prior period shall be subject to the Compensation limitation in the preceding sentence as in effect for that prior period. For this purpose. for periods prior to January 1. 1994, the annual limit on Compensation shall be $150,000.

Compensation received by a Member during a Plan Year shall be considered as having been received during such Plan Year for purposes of the Plan even if such Compensation is characterized for other purposes as being a payment which is retroactive for a prior Plan Year.

(13) **Controlled Entity**: Each corporation that is a member of a controlled group of corporations, within the meaning of section 1563(a) (determined without regard to sections 1563(a)(4) and 1563(e)(3)(C)) of the Code. of which the Employer is a member, each trade or business (whether or not incorporated) with which the Employer is under common control, and each organization that is a member of an affiliated service group, within the meaning of section 414(m) of the Code, of which the Employer is a member.

(14) **Direct Rollover**:  A payment by the Plan to an Eligible Retirement Plan designated by a Distributee.

(15) **Distributee**: Each (A) Member entitled to an Eligible Rollover Distribution, (B) Member's surviving spouse with respect to the interest of such surviving spouse in an Eligible Rollover Distribution, and (C) former spouse of a Member who is an alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, with regard to the interest of such former spouse in an Eligible Rollover Distribution.

(16) **Effective Date**:  January 1, 1996, as to this restatement of the Plan.

(17) **Eligible Employee**:  Each Employee other than (A) an individual whose terms of employment are governed by a collective bargaining agreement between a collective bargaining unit and the Employer unless such agreement provides for coverage of such individual under the Plan, (B) a nonresident alien who receives no earned income from sources within the United States, and (C) any Leased Employee.   Notwithstanding any provision in the Plan to the contrary, no individual who is designated, compensated, or otherwise classified or treated by the Employer as an independent contractor shall be eligible to become a Member of the Plan.

(18) **Eligible Retirement Plan**:  (A) With respect to a Distributee other than a surviving spouse, an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the

United States Federal Reserve Statistical Release H-15 for the immediately preceding month, the Interest Crediting Rate equals $((1 + \frac{i}{2})^2)^{1/12} - 1$.

(27) **Leased Employee**:  Each person who is not an employee of the Employer or a Controlled Entity but who performs services for the Employer or a Controlled Entity pursuant to an agreement (oral or written) between the Employer or a Controlled Entity and any leasing organization, provided that such person has performed such services for the Employer or a Controlled Entity or for related persons (within the meaning of section 144(a)(3) of the Code) on a substantially full-time basis for a period of at least one year and such services are of a type historically performed by the Employer's or Controlled Entity's employees in the Employer's or Controlled Entity's field of business.

(28) **Member**:  Each individual who has met the eligibility requirements for participation in the Plan as set forth in Article III herein.

(29) **Monthly Plan Compensation**: .The Plan Compensation received by a Member for a calendar month.  Plan Compensation received by a Member during a calendar month shall be considered as having been received during such calendar month for purposes of the Plan even if such Plan Compensation is characterized for other purposes as being a payment which is retroactive for a prior payment period.

(30) **Normal Retirement Date**:  The later of (A) the date upon which a Member attains sixty-five years of age or (B) the fifth anniversary of the date on which the Member commenced participation in the Plan; provided, however, that the Normal Retirement Date of a Member who commenced participation in the Plan prior to the Effective Date shall be the date upon which such Member attains the age of sixty-five.

(31) **Period of Service**:  Each period of an individual's Service commencing on his Employment Commencement Date or a Reemployment Commencement Date, if applicable, and ending on a Severance from Service Date.  Notwithstanding the foregoing, a period during which an individual is absent from Service by reason of the individual's pregnancy, the birth of a child of the individual, the placement of a child with the individual in connection with the adoption of such child by the individual, or for the purposes of caring for such child for the period immediately following such birth or placement shall not constitute a Period of Service between the first and second anniversary of the first date of such absence.  A Period of Service shall also include any period required to be credited as a Period of Service by federal law, other than the Act or the Code, but only under the conditions and to the extent so required by such federal law.

I-6

determine whether a Member has become Totally and Permanently Disabled and shall so notify such Member within sixty days thereafter. A Member shall be considered to have ceased to be Totally and Permanently Disabled if, prior to his Normal Retirement Date, such Member is no longer receiving either Social Security Disability Benefits under the federal Social Security Act or disability benefits under any Company-sponsored permanent and total disability plan.

(41) **Transition Member**: Any Member who was actively employed on January 1, 1995 and who had both attained the age of fifty and completed five or more years of Accrual Service as of January 1, 1995.

(42) **Trust**: The trust established under the Trust Agreement to hold and invest contributions made under the Plan and income thereon, and from which the Plan benefits are distributed.

(43) **Trust Agreement**: The agreement entered into between the Company and the Trustee establishing the Trust, as such agreement may be amended from time to time.

(44) **Trust Fund**: The funds and properties held pursuant to the provisions of the Trust Agreement for the use and benefit of the Members, together with all income, profits and increments thereto.

(45) **Trustee**: The trustee or trustees qualified and acting under the Trust Agreement at any time.

(46) **Vested Interest**: The portion of a Member's Plan benefit which, pursuant to the Plan, is nonforfeitable.

(47) **Vesting Service**: The measure of service used in determining a Member's nonforfeitable right to a benefit as determined pursuant to Section 8.4.

    **1.2   Employment Terminology**. Wherever appropriate herein, the terms "employment", "employee", "employed" or other similar terminology refer to being employed by the Company or a Controlled Entity and the terms "termination of employment", "terminate employment", "employment terminated", "terminated" or other similar terminology refer to no longer being employed by the Company or a Controlled Entity.

    **1.3   Number and Gender**. Wherever appropriate herein, words used in the singular shall be considered to include the plural and words used in the plural shall be considered to include the singular. The masculine gender, where appearing in the Plan, shall be deemed to include the feminine gender.

# II.

# Purpose of Plan and Effect of Restatement

**2.1    Purpose of Plan**.  The purpose of the Plan is to provide retirement and incidental benefits for those Members who complete the required period of employment with the Employer.  The benefits provided by the Plan will be paid from the Trust Fund and will be in addition to any benefits the Members may be entitled to receive pursuant to any other Employer programs or pursuant to the federal Social Security Act.  The Plan and the Trust are established and shall be maintained for the exclusive benefit of the Members and their beneficiaries.  No part of the Trust Fund can ever revert to the Employer. except as hereinafter provided in Sections 16.5 and 22.2. or be used for or diverted to purposes other than the exclusive benefit of the Members and their beneficiaries.

**2.2    Effect of Restatement**.

(a)    Contrary Plan provisions notwithstanding. in no event shall any Member's benefit under the Plan as restated be less than such Member's benefit determined on the date immediately prior to the date of adoption of this restatement of the Plan based upon the terms of the Plan on such date and the factors as of such date affecting such benefit.

(b)    Except as otherwise provided in the Plan, all benefit payments being made under the terms of the Plan as in effect prior to the Effective Date shall continue to be made in the same amount and manner and shall not be affected by the terms of this restated Plan.

(c)    Except as otherwise provided in the Plan, the terms of this restated Plan shall not affect the Plan benefit or Vested Interest of Members who do not complete an Hour of Service on or after the Effective Date.

# IV.

# Accrual Service
## And Cash Balance Accruals

**4.1    Accrual Service**.

(a)    For the period preceding the Effective Date, a Member shall be credited with years of Accrual Service in an amount equal to all full and fractional years of service credited to him for accrual purposes under the Plan as of December 31, 1994. Nothing in this restatement of the Plan shall be construed to eliminate the suspension of accruals under the Plan for 1995.

(b)    In addition to years of Accrual Service credited pursuant to Paragraph (a) above, if a Member's active employment was terminated prior to his Normal Retirement Date and prior to January 1, 1995 because he became Totally and Permanently Disabled while he was an Eligible Employee, such Member shall be credited with Accrual Service in an amount equal to the full and fractional years included in the period prior to December 31, 1995 during which he was Totally and Permanently Disabled.

(c)    For purposes of Paragraphs (a) and (b) above, fractional years shall be expressed in full months and fractional months of service shall be rounded up to a full month.

**4.2    Cash Balance Accruals**.

(a)    As of the last day of each Plan Year from and after January 1, 1996, a Member shall be credited with a Cash Balance Accrual equal to 5% of such Member's Monthly Plan Compensation for each calendar month in such Plan Year during which he was employed as an Eligible Employee; provided, however, that if a Member having a Vested Interest terminates employment during a Plan Year and elects to receive an immediate distribution of his Plan benefit, such Member shall be credited as of the last day of the calendar month in which his employment terminated with a Cash Balance Accrual equal to 5% of such Member's Monthly Plan Compensation for each calendar month in such Plan Year during which he was employed as an Eligible Employee.

(b)    As of the last day of each calendar month from and after January 1, 1997 and prior to the calendar month including his Annuity Starting Date for his Cash Balance Benefit, a Member (whether or not he is then an Eligible Employee or then employed) who has a Cash Balance Accrual as of the end of such calendar month shall be credited with a Cash Balance Accrual equal to:

restored as of the date of reemployment unless such Accrual Service is also disregarded pursuant to the provisions of Section 4.3.

Amount which will offset benefits payable under the Plan as a result of the Member's death (without regard to whether the beneficiary benefiting from such ESOP Release is the recipient of such Plan benefits payable as a result of the Member's death). A release to the control of an alternate payee under a "qualified domestic relations order" as such term is defined in Section 23.2 of a portion of a Member's ESOP Retirement Account shall also constitute an ESOP Release resulting in an ESOP Offset Amount which will offset benefits payable under the Plan to the Member or, as applicable, to such alternate payee as specified pursuant to such "qualified domestic relations order." Each ESOP Release has associated with it a Date of Release, which is the date on which the release occurs, and a Market Value, which is the Market Value of the portion of the ESOP Retirement Account released, as of the Date of Release. A particular ESOP Release does not include any portion of the ESOP Retirement Account previously released to the control of the Member. For purposes of the foregoing rules, a release to the control of an individual of a portion of a Member's ESOP Retirement Account includes not only an actual distribution or withdrawal of such portion but also such portion's having first become available for actual distribution or withdrawal (in the event such Member elects not to receive such distribution or to effect such withdrawal). Notwithstanding the foregoing, a payment to a Member (or his beneficiary) or an alternate payee under a "qualified domestic relations order" as such term is defined in Section 23.2 of dividends on shares of stock of the Company allocated to his accounts under the Enron Corp. Employee Stock Ownership Plan (whether paid directly to such Member by Enron Corp. or paid by Enron Corp. to the Enron Corp. Employee Stock Ownership Plan and distributed to such Member by the trustee of such plan) in accordance with the provisions of Section 6.2 of the Enron Corp. Employee Stock Ownership Plan shall not constitute an ESOP Release.

(d)   _ESOP Offset Amount and Total ESOP Offset Amount_:  For each ESOP Release, the ESOP Offset Amount is equal to the Actuarially Equivalent Annuity determined under Section 5.2(a) of this Plan for that ESOP Release. The Total ESOP Offset Amount is the sum of the ESOP Offset Amounts for all ESOP Releases.

(e)   _Final Average Pay_:  The result obtained by dividing the total Compensation paid to an Employee during a considered period by the number of months for which Compensation was received during the considered period.  The considered period shall be the sixty consecutive months of employment within the last one hundred twenty months of employment prior to January 1, 1995 or January 1, 1996 in the case of Members who were Totally and Permanently Disabled as of January 1, 1995 that yield the highest average Compensation; provided, that if a Member had less than sixty consecutive months of employment prior to January 1, 1995, his considered period shall be all of his completed months of employment prior to January 1, 1995. In determining the considered period and whether months are consecutive for calculating Final Average Pay, periods during which the Member was not employed by the Employer shall not be taken into account.

**5.3**    **Final Average Pay Benefit.**

(a)    A Member's Final Average Pay Benefit (prior to offset, if any, described in Section 5.4 below) shall be a series of monthly payments for the life of the Member commencing as of the first day of the first month immediately following his Normal Retirement Date or, if later, the date he terminates his employment, each monthly payment being equal to:

(1)    1.45 percent of his Final Average Pay multiplied by his years of Accrual Service not in excess of 25 years; plus

(2)    0.45 percent of his Final Average Pay multiplied by his years of Accrual Service in excess of 25 years, up to a maximum of 10 years; plus

(3)    0.45 percent of his Final Average Pay in excess of his Integration Level multiplied by his years of Accrual Service not in excess of 35 years; plus

(4)    1.0 percent of his Final Average Pay multiplied by his years of Accrual Service in excess of 35 years; minus

(5)    the monthly benefit payable from his Normal Retirement Date under the life annuity form that was used to determine either (a) the final value of assets transferred from the InterNorth, Inc. Retirement Income Plan on such Member's behalf with respect to the December 1, 1983 sale of Northern Propane Gas Company, or (b) a lump sum amount paid or on behalf of such Member with respect to a Period of Service or employment that was included in Accrual Service used in (1) and/or (2) above; minus

(6)    the monthly benefit commencing at age 65 he has received or is entitled to receive under any other qualified defined benefit pension plan to the extent such benefit is attributable to a Period of Service or employment for which the Member is credited with Accrual Service, including Sections 12.03 and 12.04 of the Houston Natural Gas Corporation Retirement Plan, subject to adjustments, if any, required by Section 4.02 of such Plan.

The above to the contrary notwithstanding, no changes in the Social Security Act occurring subsequent to a Member's Normal Retirement Date shall alter his Final Average Pay Benefit and the Final Average Pay Benefit of a Transition Member whose benefit is determined to be the benefit computed in accordance with Article XIII shall be such benefit.

(b)    If a Member has the right to elect to have payment of his Final Average Pay Benefit commence as of an Annuity Starting Date prior to the first day of

V-4

| Age at Benefit Commencement | Percentage of Benefit Payable |
|---|---|
| 65 | 100.0000% |
| 64 | 90.1786% |
| 63 | 81.3940% |
| 62 | 73.5318% |
| 61 | 66.4894% |
| 60 | 60.1759% |
| 59 | 54.5102% |
| 58 | 49.4175% |
| 57 | 44.8364% |
| 56 | 40.7118% |
| 55 | 36.9950% |

**5.5** **Calculation Examples**. Exhibits I through IV to this Plan provide examples of the calculations to apply the provisions of this Article V and such examples shall constitute the definitive interpretation of the provisions of the Article V.

V-6

# VII.

# Disability Benefits

### 7.1    Disability Benefits.

(a)    In the event a Member's active employment is terminated after the Effective Date and prior to his Normal Retirement Date while he is an Eligible Employee because he has become Totally and Permanently Disabled, such Member shall be entitled to receive, as of such Member's Normal Retirement Date, a disability retirement benefit, payable at the time and in a form provided in Article X, which is the Actuarial Equivalent of a series of monthly payments for his life commencing on the first day of the month coinciding with or next following the Member's Normal Retirement Date, each monthly payment being equal to the sum of (1) and (2) below:

(1)    the monthly amount of his Final Average Pay Benefit;

(2)    the monthly payment amount derived by converting his Cash Balance Accrual as of his Annuity Starting Date into a single life annuity on an Actuarially Equivalent basis.

(b)    In the event a Member's active employment was terminated prior to the Effective Date and prior to his Normal Retirement Date while he was an Eligible Employee because he became Totally and Permanently Disabled, such Member shall be entitled to receive, as of such Member's Normal Retirement Date, a disability retirement benefit, payable at the time and in a form provided in Article X, which is the Actuarial Equivalent of a series of monthly payments for his life commencing on the first day of the month coinciding with or next following the Member's Normal Retirement Date, each monthly payment being equal to the sum of (1) and (2) below:

(1)    the single life monthly amount based upon the Accrual Service determined pursuant to Section 4.1 and calculated in accordance with the disability retirement benefit formula applicable under the Plan (or any predecessor to the Plan) as in effect on the date the Member first became Totally and Permanently Disabled;

(2)    the monthly payment amount derived by converting his Cash Balance Accrual as of his Annuity Starting Date into a single life annuity on an Actuarially Equivalent basis.

(c)    With respect to any Member who is to receive his benefit pursuant to Paragraph (a) or (b) above, such Member's Annuity Starting Date shall be the first day of the month coincident with or next following his Normal Retirement Date.  A

VII-1

# VIII.

# Severance Benefits and Determination of Vested Interest

**8.1** <u>No Benefits Unless Herein Set Forth</u>. Except as set forth in this Article, upon termination of employment of a Member for any reason other than Retirement, or death, such Member shall acquire no right to any benefit from the Plan or the Trust Fund and this Article shall not be applicable with respect to a Member who has become Totally and Permanently Disabled except as provided in Article VII.

**8.2** <u>Determination of Vested Interest</u>.

(a)    A Member's Vested Interest shall be determined by such Member's full years of Vesting Service in accordance with the following schedule:

| Full Years of Vesting Service | Vested Interest |
|---|---|
| Less than    5    years | 0% |
| 5    years or more | 100% |

With respect to any Member who was a participant in the Plan on the day prior to the Effective Date, in no event shall such Member's nonforfeitable percentage in his December 31, 1994 Plan benefit be less after the Effective Date than such nonforfeitable percentage was as of December 31, 1994.

(b)    Paragraph (a) above notwithstanding, a Member shall have a 100% Vested Interest upon attainment of his Normal Retirement Date. Paragraph (a) above to the further notwithstanding, a Member shall at all times from and after the Effective Date have a 100% Vested Interest in his Final Average Pay Benefit.

**8.3    Severance Benefit**.

(a)    A Member whose employment is terminated, for a reason other than because of Retirement, or death shall be entitled to receive, as of such Member's Normal Retirement Date, a severance benefit, payable at the time and in a form provided in Article X, which is the Actuarial Equivalent of a series of monthly payments for his life commencing on his Annuity Starting Date. Unless such Member elects an earlier Annuity Starting Date, his Annuity Starting Date shall be the first day of the month coincident with or next following his Normal Retirement Date. A Member may elect an earlier Annuity Starting Date for commencement of his severance benefit as follows:

8.4    <u>Vesting Service</u>.

(a)    For the period preceding the Effective Date. subject to the provisions of Paragraphs (c) and (d) below, an individual shall be credited with Vesting Service in an amount equal to all service credited to him for vesting purposes under the Plan as it existed on the day prior to the Effective Date.

(b)    From and after the Effective Date, subject to the provisions of Paragraphs (c) and (d) below, an Employee shall be credited with Vesting Service for his aggregate Periods of Service completed after the Effective Date whether or not such Periods of Service are completed consecutively.

(c)    If an Employee terminates his Service (at a time other than during a leave of absence) and subsequently resumes his Service, if his Reemployment Commencement Date is within twelve months of his Severance from Service Date, such Period of Severance shall be treated as a Period of Service for purposes of Paragraph (b) above.  If an Employee terminates his Service during a leave of absence and subsequently resumes his Service, if his Reemployment Commencement Date is within twelve months of the beginning of such leave of absence, such Period of Severance shall be treated as a Period of Service for purposes of Paragraph (b) above.

(d)    If an Employee terminates employment at a time when he does not have any Vested Interest and who then incurs a Period of Severance that equals or exceeds five years, such individual's Period of Service completed before such Period of Severance shall be disregarded in determining his years of Vesting Service.

begin prior to the date such Member would have reached his Normal Retirement Date. In the event of such deferral, the amount of the survivor annuity attributable to the deceased Member's Final Average Pay Benefit shall be increased on an actuarially equivalent basis. Further notwithstanding the foregoing, the Member's Eligible Surviving spouse may elect to receive a death benefit consisting of a lump sum cash payment of the Member's Cash Balance Accrual as of the first day of the first month immediately following the Member's death or as of the first day of any subsequent month in lieu of the portion of the surviving spouse annuity payable pursuant to this Paragraph (b) which is attributable to the deceased Member's Cash Balance Accrual. Any such election must be made prior to commencement of payment of the survivor annuity payable pursuant to this Paragraph (b). For purposes of computing the death benefits described in this Paragraph (b), the Final Average Pay Benefit of a Member shall be offset for ESOP Releases in the manner described in Article V as and if such benefit would have been so adjusted had such Member terminated his employment on the date of his death.

(c)    The death benefit provided by this Paragraph (c) shall become payable with respect to a deceased Member if such deceased Member dies while employed on or after completing five years of Vesting Service and if no death benefit is payable pursuant to Paragraph (b) above. The death benefit provided by this Paragraph (c) shall be a single lump sum cash payment of the deceased Member's Cash Balance Accrual as of the first day of the month immediately following the date of his death or as of the first day of any subsequent month payable to the beneficiary designated by such Member pursuant to Section 10.7(b). No death benefit shall be payable pursuant to this Paragraph (c) with respect to any portion of a Member's Plan benefit which is attributable to a Final Average Pay Benefit.

## 9.2    After Benefit Commencement Date.

(a)    Except as provided in Paragraph (b) below, with respect to any Member who dies on or after his Annuity Starting Date, whether or not payment of his benefit has actually begun, the only benefit payable pursuant to this Plan shall be that, if any, provided for his beneficiary pursuant to the form of Article X benefit he was receiving or about to receive.

(b)    In the event of a Member (i) who is alive as of January 1, 1990, (ii) who retired from active employment on or before January 1, 1990 and commenced receipt of benefits under Article X (or the predecessor provision thereof) upon his retirement under a single life annuity form or a level income option form referenced to a single life annuity form, (iii) who at the time of his retirement had been married at least one year, and (iv) who dies on or after January 1, 1990 and is survived by the spouse to whom he was married at the time of his retirement (and to whom the Member was continuously married from his retirement until his death), then in such event such surviving spouse of such Member shall receive for life a monthly benefit in an amount

IX-2

# X.

# Time and Form of Payment of Benefits

## 10.1    Time of Payment.

(a)    Payment of benefits under the Plan to a Member (other than death benefits payable pursuant to Article IX) shall commence as of or as soon as administratively feasible following such Member's Annuity Starting Date. In the event that administrative problems prevent a Member's Plan benefit payments to commence upon his Annuity Starting Date, the first Plan benefit payment made to such Member shall include all amounts which should previously have been paid to such Member plus interest on the delayed Cash Balance Benefit payment or payments determined with reference to the Interest Crediting Rate.

(b)    Plan provisions to the contrary notwithstanding, commencement of a Member's benefit payments shall not occur:

(1)    Unless such Member consents (and, if such Member has an Eligible Surviving Spouse, unless such Eligible Surviving Spouse consents (with such consent being irrevocable) in accordance with the requirements of section 417 of the Code and applicable Treasury regulations thereunder) within ninety days of his Annuity Starting Date, prior to such Member's Normal Retirement Date;

(2)    After the sixtieth day following the close of the Plan Year during which such Member attains, or would have attained, his Normal Retirement Date or, if later, terminates his employment with the Employer or a Controlled Entity; or

(3)    At a time or in a manner inconsistent with the provisions of section 401(a)(9) of the Code and applicable Treasury regulations thereunder and shall in no event occur:

(A)    In the case of a benefit of a Member other than a benefit payable pursuant to Article IX, after April 1 of the calendar year following the calendar year in which such Member attains the age of seventy and one-half; and

(B)    In the case of a benefit payable pursuant to Article IX, (i) if payable to other than the Member's spouse, after the last day of the one-year period following the death of such Member or (ii) if payable to the Member's spouse, after the date upon which such Member would have

X-1

language and shall include an explanation of (1) the terms and conditions of the standard benefit. (2) such Member's right to make an election not to take his benefit in the standard form and the effect of such an election, (3) the rights of such Member's Eligible Surviving Spouse, if any, (4) the right to revoke any such election and the effect of such revocation, (5) a general description of the eligibility conditions and other material features of the alternative forms of benefit available pursuant to Paragraph (c) below, and (6) sufficient additional information to explain the relative values of such alternative forms of benefit. The period of time during which a Member may make or revoke the election described in this Section 10.2(a) shall be the ninety-day period ending on such Member's Annuity Starting Date.

(b)     Notwithstanding anything to the contrary herein. an election by a married Member not to receive the standard benefit as provided in Section 10.2(a) shall not be effective unless (1) such Member's Eligible Surviving Spouse has consented thereto in writing (including consent to the specific designated beneficiary, if any, to receive payments following the Member's death and to the specific benefit form elected, if any, which designation and election may not subsequently be changed by the Member without spousal consent) and such consent acknowledges the effect of such election and is witnessed by a Plan representative (other than the Member) or a notary public, or (2) the consent of such spouse cannot be obtained because such Eligible Surviving Spouse cannot be located or because of other circumstances described by applicable Treasury regulations. Any such consent by such Eligible Surviving Spouse shall be irrevocable.

(c)     For purposes of Article VI, VII, or VIII, the benefit for any Member who has elected not to receive the standard benefit set forth in Section 10.2(a) shall be paid in one of the following alternative forms to be selected by such Member prior to his Annuity Starting Date; provided, however, that the period and method of payment of any such form shall be in compliance with the provisions of section 401(a)(9) of the Code and applicable Treasury regulations thereunder:

(1)     A single life annuity for the life of such Member.

(2)     An annuity for the joint lives of the Member and any joint annuitant designated by the Member in accordance with Section 10.7(a) providing 50% or 100% survivor benefits to such surviving joint annuitant.

(3)     For the portion of his Plan benefit consisting of his Final Average Pay Benefit, an annuity for a term certain of five, ten or fifteen years and continuous for the life of the Member if he survives such term certain or continuing to the end of such term certain to the beneficiary or beneficiaries designated by such Member in accordance with Section 10.7 in the event of such Member's death before the end of such term certain.

X-3

(c)     If a Member terminates his employment with the Employer after the Effective Date and elects to receive a lump sum cash payment of his Cash Balance Benefit and the Member's Plan benefit either is not subject to any offset pursuant to Section 5.4 or such offset has become fully determinable and, in either case, and the Actuarially Equivalent present value of the portion of his Final Average Pay Benefit which is not annuitized under a Prudential Insurance Company Contract (expressed in the form of a single life annuity commencing at the Member's Normal Retirement Date) is not in excess of $10,000.00, such Member may elect to have such present value paid to him in a lump sum cash payment in lieu of any other benefit herein provided other than the Plan benefit for such Member which is annuitized under a Prudential Insurance Company Contract. A Members election to receive a lump sum cash payment pursuant to this Paragraph (d) shall be subject to the consent requirements of Section 10.1 and the election and spousal consent requirements of Section 10.2. Any payment pursuant to this Paragraph (d) shall be made as soon as administratively feasible following the Committee's receipt of the Member's election to receive such payment.

(d)     The provisions of this Section 10.4 shall not be applicable to a Member following his Annuity Starting Date.

### 10.5    Direct Rollover Election.

(a)     Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Committee, to have all or any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover. Prior to any Direct Rollover pursuant to this Section, the Distributee shall furnish the Committee with a statement from the plan, account, or annuity to which the benefit is to be transferred verifying that such plan, account, or annuity is, or is intended to be, an Eligible Retirement Plan.

(b)     No less than thirty days and no more than ninety days before his Annuity Starting Date, the Committee shall inform the Distributee of his Direct Rollover right pursuant to this Section. A distribution or Direct Rollover of the Distributee's benefit may commence less than thirty days after such notice is given, provided that (1) the Committee clearly informs the Distributee that the Distributee has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a Direct Rollover and (2) the Distributee, after receiving the notice, affirmatively elects either a distribution or a Direct Rollover or a combination thereof.

### 10.6    Special Distribution Limitations.

(a)     For purposes of this Section, the following terms shall have the following meanings:

on file with the Committee at the time of the death of the Member or if such designation is not effective for any reason as determined by the Committee. then the designated beneficiary or beneficiaries to receive such continuing payments for the remainder of such term certain shall be as follows:

      (1)    If a Member leaves a surviving spouse, any such continuing payments shall be paid to such surviving spouse;

      (2)    If a Member leaves no surviving spouse, any such continuing payments shall be paid to such Member's executor or administrator or to his heirs-at-law if there is no administration of such Member's estate.

If a Member's designated joint annuitant dies before the Member's Annuity Starting Date, such Member's election of a form of benefit for the joint lives of the Member and such joint annuitant shall be cancelled automatically and such Member's benefit shall be paid in the form of the standard benefit set forth in Section 10.2(a), unless a new election of an alternative form of benefit is made in accordance with the provisions of Section 10.2. The death of a joint annuitant following a Member's Annuity Starting Date shall not affect a Member's benefit election or permit such Member to revoke such election.

      (b)    Each Member shall have the right to designate the beneficiary or beneficiaries to receive any benefit payable with respect to such Member pursuant to Section 9.1(c). Each such designation shall be made on the form prescribed by the Committee and shall be filed with the Committee. Any such designation may be changed at any time by executing a new designation and filing same with the Committee. If no such designation is on file with the Committee at the time of the death of the Member or such designation is not effective for any reason as determined by the Committee, then the designated beneficiary or beneficiaries to receive such continuing payments shall be as follows:

      (1) If a Member leaves a surviving spouse, any death benefit or continuing payments shall be paid to such surviving spouse;

      (2) If a Member leaves no surviving spouse, any death benefit or continuing payments shall be paid to such Member's executor or administrator.

## 10.8   Reemployment of Members.

      (a)    Upon reemployment on a full-time and permanent basis of a Member who had previously terminated employment and who was to receive or had begun to receive payment of his benefit, payment of his Final Average Pay Benefit shall be suspended during the period of such reemployment. Upon reemployment on other than a full-time and permanent basis of a Member who had previously terminated

apply to benefits accrued both before and after such suspension or (2) if such Member's original Annuity Starting Date occurred on or after his Normal Retirement Date, the Member's original Annuity Starting Date and any elections and consents made pursuant to the provisions of Section 10.2 for such original Annuity Starting Date shall apply to benefits accrued both before and after such suspension.

(d)    As to a reemployed Member's Plan benefit payments that are not suspended pursuant to Paragraph (a) above, (1) if such Member's original Annuity Starting Date for the non-suspended benefits occurred prior to his Normal Retirement Date, the Member's original Annuity Starting Date and any elections and consents made pursuant to the provisions of Section 10.2 for such original Annuity Starting Date shall not apply to any additional benefits accrued during the Member's period of reemployment and the commencement of such additional benefit payments shall be considered a new Annuity Starting Date with respect to such payments or (2) if such Member's original Annuity Starting Date for the non-suspended benefits occurred on or after his Normal Retirement Date, the Member's original Annuity Starting Date and any elections and consents made pursuant to the provisions of Section 10.2 for such original Annuity Starting Date shall also apply to any additional benefits accrued during the Member's period of reemployment.

**10.9    Actuarial Equivalency**. With respect to any benefit payable pursuant to the Plan, whichever form of payment is selected, the value of such benefit shall be the Actuarial Equivalent of the Member's Plan benefit.

**10.10    Commercial Annuities**. At the direction of the Committee, the Trustee may pay any form of benefit provided hereunder other than a lump sum or a Direct Rollover pursuant to Section 10.5 by the purchase of a commercial annuity contract and the distribution of such contract to the Member or beneficiary. Thereupon, the Plan shall have no further liability with respect to the amount used to purchase the annuity contract and such Member or beneficiary shall look solely to the company issuing such contract for such annuity payments. All certificates for commercial annuity benefits shall be nontransferable, except for surrender to the issuing company, and no benefit thereunder may be sold, assigned, discounted, or pledged (other than as collateral for a loan from the company issuing same). Notwithstanding the foregoing, the terms of any such commercial annuity contract shall conform with the time of payment, form of payment and consent provisions of Article X.

**10.11    Unclaimed Benefits**. In the case of a benefit payable on behalf of a Member, if the Committee is unable to locate the Member or beneficiary to whom such benefit is payable, upon the Committee's determination thereof, such benefit shall be forfeited. Notwithstanding the foregoing, if subsequent to any such forfeiture the Member or beneficiary to whom such benefit is payable makes a valid claim for such benefit, such forfeited benefit shall be restored. The restoration provisions of this Section 10.11 shall be applicable with respect to benefits which were forfeited under the

# XI.

## Member Contributions

**11.1    Nature of Article and Definitions**.  The purpose of the Article XI is to preserve certain rights and benefits for Members who made contributions to the Houston Natural Gas Corporation Retirement Plan. For purposes of the Article XI, the following terms and phrases shall have these respective meanings:

(a)    **Accrued Benefit Derived from Company Contributions**:  As of the date of determination, the excess, if any, of the Member's accrued Plan benefit over the Member's Accrued Benefit Derived from Member Contributions.

(b)    **Accrued Benefit Derived from Member Contributions**:  As of the date of determination, such Member's Contributions Accumulation expressed as an annual benefit in the form of a single life annuity (without ancillary benefits) commencing as of the Member's Normal Retirement Date, calculated using the Applicable Interest Rate and the Applicable Mortality Table. The Actuarial Equivalent of a Member's Accrued Benefit Derived from Member Contributions shall, in all cases, be reduced by an amount which is the Actuarial Equivalent of the accumulated value of any benefit payments received by or on behalf of such Member pursuant to the Plan and not otherwise repaid into the Plan.

(c)    **Contributions Accumulation**:  The sum of (i) a Member's aggregate contributions made to the Plan, plus (ii) for the period preceding November 1, 1988, interest on such contributions accrued at the rate provided by the Plan to November 1, 1988, plus (iii) interest on the sum of the amounts determined under (i) and (ii) above, compounded annually, at a rate equal to 120% of the Federal mid-term rate (as in effect for the first month of a Plan Year) for the period beginning November 1, 1988 and ending on the date of determination of the Member's Accrued Benefit Derived from Member Contributions, and at the rate provided in Section 1.1(3)(ii) of the Plan for calculating the present value of a benefit (as of the determination date) for the period beginning with the determination date and ending on the date upon which the Member would reach Normal Retirement Date.

**11.2    Plan Benefit Increase**.  A Member who has an Accrued Benefit Derived from Member Contributions shall have his monthly Final Average Pay Benefit increased by an amount equal to one-twelfth of an amount equal to 25% of the aggregate contributions (without interest) made by the Member to the Houston Natural Gas Corporation Retirement Plan prior to February 1, 1980, excluding any such contributions which have been refunded to the Member.

deceased Member, his annuitant or designated beneficiary under the applicable form of Article X benefit. Such death benefit shall be payable in one lump sum as soon as practicable after such deceased Member's death.

| Age at Benefit Commencement | Percentage of Benefit Payable |
|---|---|
| 50 | 60% |
| 51 | 66% |
| 52 | 72% |
| 53 | 78% |
| 54 | 84% |

**12.5  Limit of Article**.  The provisions of this Article XII shall not affect the computation of a Pilot's Plan benefit (including specifically the Final Average Pay Benefit portion of such Plan benefit and the offset thereto described in Section 5.4) except as specifically provided in this Article XII.

**XII-2**

Section 6.1 shall be made on the basis of assumed crediting pursuant to Section 4.2(b) for the period between the date of the Transition Member's termination of employment and the date he elects to commence benefits but reducing such assumed crediting amount by any amounts actually credited pursuant to Section 4.2(b) during such period. The determination of whether the Plan benefit described in this Section 13.2 for a Transition Member is greater than the Plan benefit determined for such Transition Member in accordance with Section 6.1 shall include an adjustment as described in Exhibit V to this Plan for the allocations made under the Enron Corp. Employee Stock Ownership Plan for 1994 his Special Allocation Account and for his allocation of Enron Corp. Employee Stock Ownership Plan forfeitures in 1995 and 1996.  Exhibit V to this Plan provides an example of the calculations to apply the provisions of this Section 13.2 and such example shall constitute the definitive interpretation of the provisions of this Section 13.2.

(b)    A Transition Member who terminates employment prior to January 1, 2002 and becomes reemployed prior to such date shall cease to qualify as a Transition Member and shall not be eligible for any benefits pursuant to this Section 13.2 upon his subsequent termination of employment.

(c)    If the benefit determined pursuant to this Section 13.2 for a Transition Member is greater than the total Plan benefit determined for him pursuant to Section 6.1, his Final Average Pay Benefit shall be increased so that the sum of his Final Average Pay Benefit and his Cash Balance Benefit is actuarially equal to the benefit determined pursuant to this Section 13.2.

XIII-2

## XV.

## Limitations on Benefits

Contrary Plan provisions notwithstanding, the benefit of a Member under the Plan shall not exceed the maximum benefit permitted pursuant to section 415(b) of the Code (as adjusted in accordance with the provisions of section 415(d) of the Code). In the case of a Member who also participated in a defined contribution plan of the Employer, the benefit of such Member under this Plan shall be reduced to the extent necessary to prevent the limitation set forth in section 415(e) of the Code from being exceeded. For purposes of determining whether the Plan benefit of a Member exceeds the limitations provided in this Section, all defined benefit plans of the Employer are to be treated as one defined benefit plan and all defined contribution plans of the Employer are to be treated as one defined contribution plan. In addition, all defined benefit plans and defined contribution plans of Controlled Entities shall be aggregated for this purpose. For purposes of this Paragraph only, a "Controlled Entity" (other than an affiliated service group member within the meaning of section 414(m) of the Code) shall be determined by application of a more than 50% control standard in lieu of an 80% control standard. For purposes of this Section, the "limitation year" (as that term is defined in Treasury regulation section 1.415-2(b)) shall be the Plan Year. In no event shall a Member's benefit under the Plan as limited pursuant to the provisions of this Article XV and applicable provisions of the Code for periods from and after January 1, 1995 be less than such Member's benefit under the Plan determined as of December 31, 1994.