# XVII.

## Administration of the Plan

**17.1 Appointment of Committee.** The general administration of the Plan shall be vested in the Committee which shall be appointed by the Company and shall consist of one or more persons. Any individual, whether or not an Employee, is eligible to become a member of the Committee. Each member of the Committee shall, before entering upon the performance of his duties, qualify by signing a consent to serve as a member of the Committee under and pursuant to the Plan and by filing such consent with the records of the Committee. For purposes of the Act, the Committee shall be the Plan "administrator" and shall be the "named fiduciary" with respect to the general administration of the Plan (except as to the investment of the assets of the Trust Fund).

**17.2 Term, Vacancies, Resignation, and Removal.** Each member of the Committee shall serve until he resigns, dies, or is removed by the Company. At any time during his term of office, a member of the Committee may resign by giving written notice to the Company and the Committee, such resignation to become effective upon the appointment of a substitute member or, if earlier, the lapse of thirty days after such notice is given as herein provided. At any time during his term of office, and for any reason, a member of the Committee may be removed by the Company with or without cause, and the Company may in its discretion fill any vacancy that may result therefrom. Any member of the Committee who is an Employee shall automatically cease to be a member of the Committee as of the date he ceases to be employed by the Employer or a Controlled Entity.

**17.3 Officers, Records, and Procedures.** The Committee may select officers and may appoint a secretary who need not be a member of the Committee. The Committee shall keep appropriate records of its proceedings and the administration of the Plan and shall make available for examination during business hours to any Member or beneficiary such records as pertain to that individual's interest in the Plan. The Committee shall designate the person or persons who shall be authorized to sign for the Committee and, upon such designation, the signature of such person or persons shall bind the Committee.

**17.4 Meetings.** The Committee shall hold meetings upon such notice and at such time and place as it may from time to time determine. Notice to a member shall not be required if waived in writing by that member. A majority of the members of the Committee duly appointed shall constitute a quorum for the transaction of business. All resolutions or other actions taken by the Committee at any meeting where a quorum is present shall be by vote of a majority of those present at such meeting and entitled to vote. Resolutions may be adopted or other action taken without a meeting upon written consent signed by all of the members of the Committee.

XVII-1

(g) To prepare, file, and distribute, in such manner as the Committee determines to be appropriate, such information, and material as is required by the reporting and disclosure requirements of the Act;

(h) To issue directions to the Trustee concerning all benefits that are to be paid from the Trust Fund pursuant to the provisions of the Plan; and

(i) To receive and review reports from the Trustee as to the financial condition of the Trust Fund, including its receipts and disbursements.

**17.8 Third Party Administrative Services.** Notwithstanding any provision of the Plan or the Trust Agreement to the contrary, the Company may, in its discretion, engage any individual or entity (which is not an employee or a subsidiary of the Company) to perform administrative services with respect to the Plan ("Third-Party Administrative Services"). In the event that the Company engages any individual or entity to perform Third-Party Administrative Services, then notwithstanding any provision of the Plan to the contrary, the Company, and not the Committee, shall be fully responsible and accountable for selecting, credentialling, overseeing and monitoring each providers of Third-Party Administrative Services, including without limitation, evaluating the performance of such service provider, determining whether the fees charged are reasonable, and removing or replacing such service provider, as the Company deems to be necessary or appropriate in its discretion without any requirement to consult with the Committee (which shall have no duty or responsibility with respect to such matters under the terms and provisions of the Plan).

**17.9 Employer to Supply Information.** The Employer shall supply full and timely information to the Committee, including, but not limited to, information relating to each Member's Compensation, age, retirement, death, or other cause of termination of employment and such other pertinent facts as the Committee may require. The Employer shall advise the Trustee of such of the foregoing facts as are deemed necessary for the Trustee to carry out the Trustee's duties under the Plan. When making a determination in connection with the Plan, the Committee shall be entitled to rely upon the aforesaid information furnished by the Employer.

**17.10 Indemnification.** The Company shall indemnify and hold harmless each member of the Committee against any and all expenses and liabilities arising out of his administrative functions or fiduciary responsibilities, including any expenses and liabilities that are caused by or result from an act or omission constituting the negligence of such member in the performance of such functions or responsibilities, but excluding expenses and liabilities that are caused by or result from such member's own gross negligence or willful misconduct. Expenses against which such member shall be indemnified hereunder shall include, without limitation, the amounts of any settlement or judgment, costs, counsel fees, and related charges reasonably incurred in connection with a claim asserted or a proceeding brought or settlement thereof.

ciaries, or to pay expenses of administration of the Plan and Trust Fund to the extent not paid by the Employer.

(b)  No Member shall have any title to any specific asset in the Trust Fund. No Member shall have any right to, or interest in, any assets of the Trust Fund upon termination of his employment or otherwise, except as provided from time to time under this Plan, and then only to the extent of the benefits payable to such Member out of the assets of the Trust Fund.

**18.5  Authorization of Benefit Payments.** The Committee shall issue directions to the Trustee concerning all benefits which are to be paid from the Trust Fund pursuant to the provisions of the Plan. All distributions hereunder shall be made in cash or in the form of a commercial annuity contract.

**18.6  Payments Solely from Trust Fund.** All benefits payable under the Plan shall be paid or provided for solely from the Trust Fund, and neither the Employer nor the Trustee assumes any liability or responsibility for the adequacy thereof. The Committee or the Trustee may require execution and delivery of such instruments as are deemed necessary to assure proper payment of any benefits.

**18.7  No Benefits to the Employer.** No part of the corpus or income of the Trust Fund shall be used for any purpose other than the exclusive purpose of providing benefits for the Members and their beneficiaries and of defraying reasonable expenses of administering the Plan. Anything to the contrary herein notwithstanding, the Plan shall not be construed to vest any rights in the Employer other than those specifically given hereunder.

delegate to any of such appointees any or all of the powers and duties of the Committee. Such appointment and delegation must be in writing, specifying the powers or duties being delegated, and must be accepted in writing by the delegatee. Upon such appointment, delegation, and acceptance, the delegating Committee members shall have no liability for the acts or omissions of any such delegatee, as long as the delegating Committee members do not violate any fiduciary responsibility in making or continuing such delegation.

      19.5    **Investment Manager**. The Committee may, in its sole discretion, appoint an "investment manager," with power to manage, acquire, or dispose of any asset of the Plan and to direct the Trustee in this regard, so long as:

      (a)    the investment manager is (1) registered as an investment adviser under the Investment Advisers Act of 1940, (2) a bank, as defined in the Investment Advisers Act of 1940, or (3) an insurance company qualified to do business under the laws of more than one state; and

      (b)    such investment manager acknowledges in writing that he is a fiduciary with respect to the Plan.

Upon such appointment, the Committee shall not be liable for the acts of the investment manager, as long as the Committee does not violate any fiduciary responsibility in making or continuing such appointment. Notwithstanding anything to the contrary herein contained, the Trustee shall follow the directions of such investment manager and shall not be liable for the acts or omissions of such investment manager. The investment manager may be removed by the Committee at any time and within its sole discretion.

# XXI.

## Amendments

**21.1 Right to Amend.** Subject to Section 21.2 and any other limitations contained in the Act or the Code, the Company may from time to time amend, in whole or in part, any or all provisions of the Plan on behalf of the Company and all Employers. Specifically, but not by way of limitation, the Company may make any amendment necessary to acquire and maintain a qualified status for the Plan under the Code, whether or not retroactive.

**21.2 Limitations on Amendments.** No amendment of the Plan may be made that would vest in the Employer, directly or indirectly, any interest in or control of the Trust Fund. No amendment shall be made that would vary the Plan's exclusive purpose of providing benefits to Members and their beneficiaries and defraying reasonable expenses of administering the Plan or that would permit the diversion of any part of the Trust Fund from that exclusive purpose. No amendment shall be made that would reduce any then nonforfeitable interest of a Member. No amendment shall increase the duties or responsibilities of the Trustee unless the Trustee consents thereto in writing.

## XXIII.

### Miscellaneous Provisions

**23.1  Not Contract of Employment.** The adoption and maintenance of the Plan shall not be deemed to be a contract between the Employer and any person or to be consideration for the employment of any person. Nothing herein contained shall be deemed to give any person the right to be retained in the employ of the Employer or to restrict the right of the Employer to discharge any person at any time nor shall the Plan be deemed to give the Employer the right to require any person to remain in the employ of the Employer or to restrict any person's right to terminate his employment at any time.

**23.2  Alienation of Interest Forbidden.** Except as otherwise provided with respect to "qualified domestic relations orders" pursuant to section 206(d) of the Act and sections 401(a)(13) and 414(p) of the Code and except as otherwise provided under other applicable law, no right or interest of any kind in any benefit shall be transferable or assignable by any Member or any beneficiary or be subject to anticipation, adjustment, alienation, encumbrance, garnishment, attachment, execution, or levy of any kind. Plan provisions to the contrary notwithstanding, the Committee shall comply with the terms and provisions of any "qualified domestic relations order" and shall establish appropriate procedures to effect the same; provided, however, except as required by applicable law, an alternate payee under a qualified domestic relations order shall not have a right to commence receipt of benefits payments from the Plan at a time earlier than the Member from whose Plan benefit the assignment is made could have commenced receipt of such assigned Plan benefit.

**23.3  Payments to Minors and Incompetents.** If a Member or beneficiary entitled to receive a benefit under the Plan is a minor or is determined by the Committee in its discretion to be incompetent or is adjudged by a court of competent jurisdiction to be legally incapable of giving valid receipt and discharge for a benefit provided under the Plan, the Committee may pay such benefit to the duly appointed guardian or conservator of such Member or beneficiary or to any third party who is eligible to receive such benefit for the account of such Member or beneficiary. Such payment shall operate as a full discharge of all liabilities and obligations of the Committee, the Trustee, the Employer, and any fiduciary of the Plan with respect to such benefit.

**23.4  Member's Address.** It shall be the affirmative duty of each Member to inform the Committee of, and to keep on file with the Committee, his current mailing address and the current mailing address of his designated beneficiary. If a Member fails to keep the Committee informed of his current mailing address and the current mailing address of his designated beneficiary, neither the Committee, the Trustee, the Employer,

with respect to individuals who were UPG-Falco Division employees on May 31, 1985 and Falco Plan participants on that date:

 (a) Retirement income under the Plan for any Member who was a Falco Plan participant will be whichever of the following produces the larger amount:

  (1) the Plan benefit determined under this Plan using the total service with Employers under both the Plan and the Falco Plan for purposes of computing his Final Average Pay Benefit, or

  (2) the benefit accrued as of May 31, 1985 under the Falco Plan plus the sum of the Cash Balance Benefit and the Final Average Pay Benefit determined under this Plan using for such Final Average Pay Benefit only service after May 31, 1985.

 (b) The benefit accrued under the Falco Plan as of May 31, 1985 may be paid in a single lump sum if elected by a Member who was a participant in such Plan as of such date. For purposes of computing such lump sum, Actuarial Equivalence shall be based upon the interest rate and mortality factors in effect under the Falco Plan as of May 31, 1985.

 23.8 **Severability**. If any provision of this Plan shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining provisions hereof; instead, each provision shall be fully severable and the Plan shall be construed and enforced as if said illegal or invalid provision had never been included herein.

 23.9 **Jurisdiction**. The situs of the Plan hereby created is Texas. All provisions of the Plan shall be construed in accordance with the laws of Texas except to the extent preempted by federal law.

(d) **Aggregation Group**: The group of qualified plans maintained by the Employer and each Controlled Entity consisting of (1) each plan in which a Key Employee participates and each other plan that enables a plan in which a Key Employee participates to meet the requirements of section 401 (a)(4) or 410 of the Code, or (2) each plan in which a Key Employee participates, each other plan that enables a plan in which a Key Employee participates to meet the requirements of section 401(a)(4) or 410 of the Code and any other plan that the Employer elects to include as a part of such group; provided, however, that the Employer may elect to include a plan in such group only if the group will continue to meet the requirements of sections 401(a)(4) and 410 of the Code.

(e) **Annual Retirement Benefit**: A benefit payable annually in the form of a single life annuity for the life of a Member (with no ancillary benefits) beginning at his Normal Retirement Date.

(f) **Average Remuneration for His High Five Years**: The result obtained by dividing the total Remuneration paid to a Member during a considered period by the number of years for which such Remuneration was received. The considered period shall be the five consecutive Years of Service during which the Member was both an active Member in the Plan and had the greatest Remuneration from the Employer; provided, however, that if the Member has less than five consecutive Years of Service, such shorter period shall be deemed his considered period.

(g) **Determination Date**: For the first Plan Year of any plan, the last day of such Plan Year and for each subsequent Plan Year of such plan, the last day of the preceding Plan Year.

(h) **Key Employee**: A "key employee" as defined in section 416(i) of the Code and the Treasury regulations thereunder.

(i) **Plan Year**: With respect to any plan, the annual accounting period used by such plan for annual reporting purposes.

(j) **Remuneration**: Compensation within the meaning of section 415(c)(3) of the Code, as limited by section 401(a)(17) of the Code.

(k) **Valuation Date**: With respect to any Plan Year of any defined contribution plan, the most recent date within the twelve-month period ending on a Determination Date as of which the trust fund established under such plan was valued and the net income (or loss) thereof allocated to participants' accounts. With respect to any Plan Year of any defined benefit plan, the most recent date within a twelve-month period ending on a Determination Date as of which the plan assets were valued for purposes of computing plan costs for purposes of the requirements imposed under section 412 of the Code.

    (1) 2% of his Average Remuneration for His High Five Years multiplied by his Years of Service; or

    (2) 20% of his Average Remuneration for His High Five Years.

The minimum benefit required to be accrued for a Plan Year pursuant to this Paragraph for a Member shall be accrued regardless of whether such Member has terminated his employment with the Employer prior to the end of such Plan Year. Notwithstanding the foregoing, no benefit shall be accrued pursuant to this Paragraph for a Plan Year with respect to a Member who is a participant in another defined benefit plan sponsored by the Employer or a Controlled Entity if such Member accrues under such defined benefit plan (for the plan year of such plan ending with or within the Plan Year of the Plan) a benefit that is at least equal to the benefit described in section 416(c)(1) of the Code. Notwithstanding the foregoing, no benefit shall be accrued pursuant to this Paragraph for a Plan Year with respect to a Member who is a participant in a defined contribution plan sponsored by the Employer or a Controlled Entity if such Member receives under such defined contribution plan (for the plan year of such plan ending with or within the Plan Year of this Plan) a contribution which is equal to or greater than 5% of such Member's Remuneration for such Plan Year. If the preceding sentence is not applicable, the requirements of this Paragraph shall be met by providing a minimum benefit under the Plan which, when considered with the benefit provided under such defined contribution plan as an offset, is at least equal to the minimum benefit provided pursuant to this Paragraph. For this purpose, the actuarial assumptions specified in the Plan shall be utilized to determine the value of such offset as of the applicable Determination Date.

  (d) If the Plan is determined to be top-heavy for a Plan Year, but is not determined to be super top-heavy for such Plan Year, the Committee may elect for the Plan to provide the special minimum benefit described in this Paragraph in order to comply with the provisions of section 416(h)(2) of the Code. If the Committee so elects for the Plan to provide such special minimum benefit, the Plan benefit of each Member who is not a Key Employee shall in no event be less than the Actuarial Equivalent of an Annual Retirement Benefit equal to the lesser of:

    (1) 3% of his Average Remuneration for His High Five Years multiplied by his Years of Service; or

    (2) A percentage (not to exceed 30%) of his Average Remuneration for His High Five Years equal to 20% increased by 1% for each Year of Service credited to such Member.

  (e) If the Plan is determined to be top-heavy for a Plan Year, a Member who receives a distribution from the Plan in such Plan Year or in any Plan Year thereafter pursuant to Section 10.4 which is less than the present value of his entire

EXECUTED on this 12th day of October, 1995.

ENRON CORP.

By: _____
Philip J. Bazelides
Vice President, Corporate Human Resources
Enron Corp

F:\ENR100\CASH\PLAN

(iv)

he was an Eligible Employee because he became Totally and Permanently Disabled, such Member shall be entitled to receive, as of such Member's Normal Retirement Date, a disability retirement, payable at the time and in a form provided in Article X, which is the Actuarial Equivalent of a series of monthly payments for his life commencing on the first day of the month coinciding with or next following the Member's Normal Retirement Date, each monthly payment being equal to the sum of (1) and (2) below:

> (1) the single life monthly amount based upon the Accrual Service determined pursuant to Section 4.1 and calculated in accordance with the disability retirement benefit formula applicable under the Plan (or any predecessor to the Plan) as in effect on the date the Member first became Totally and Permanently Disabled;

> (2) the monthly payment amount derived by converting his Cash Balance Accrual as of his Annuity Starting Date into a single life annuity on an Actuarially Equivalent basis.

(c) With respect to any Member who is to receive his benefit pursuant to Paragraph (a) or (b) above (a "Disabled Member"), such Disabled Member's Annuity Starting Date shall be the first day of the month coincident with or next following his Normal Retirement Date unless such Disabled Member elects an earlier Annuity Starting Date for his total benefit payable under the Plan. Such Disabled Member may elect an earlier Annuity Starting Date for commencement of his disability retirement benefit as follows:

> (1) A Disabled Member may elect as the Annuity Starting Date for his total Cash Balance Benefit the first day of the first month immediately following the date he has been determined to be Totally and Permanently Disabled ("Disability Determination Date") or the first day of any subsequent month which precedes his Normal Retirement Date provided, however, that the Annuity Starting Date for the total Cash Balance Benefit of a Member who has a Disability Determination Date during 1996 shall not be earlier than April 1, 1997;

> (2) A Disabled Member may elect as the Annuity Starting Date for any total Plan benefit payable pursuant to Paragraphs (c) or (d) of Section 10.4 the first day of the first month immediately following his Disability Termination Date or the first day of any subsequent month which precedes his Normal Retirement Date;

terminated his employment as of the date he recovered from his disability with the amount of the Final Average Pay Benefit portion of such benefit being computed based upon his Final Average Pay as of the date of inception of his disability.

(c) In the event a Member ceases to be Totally and Permanently Disabled prior to his Normal Retirement Date and such Member is re-employed:

(1) For purposes of determining eligibility for any Cash Balance Benefit to which such Member may subsequently become entitled, which shall be offset by the Actuarial Equivalent of any amount of disability retirement benefit such Member received pursuant to Section 7.1 as may be required to avoid any duplication of accrued benefits, such Member shall be credited with Vesting Service for the period; and

(2) For purposes of determining eligibility for and the amount of any Final Average Pay Benefit to which such Member may become subsequently entitled, such Member shall be assumed to have received during the period prior to January 1, 1996 Compensation equal to his rate of Compensation in effect on his last day of active employment before he became Totally and Permanently Disabled and credited with Accrual Service for the period during which he was Totally and Permanently Disabled and such Member's benefit shall be the single life monthly amount calculated in accordance with the disability retirement benefit formula applicable under the Plan (or any predecessor to the Plan) as in effect on the date the Member first became Totally and Permanently Disabled, provided, however, the benefit payable pursuant to this Paragraph shall be offset by the Actuarial Equivalent of any amount of disability retirement benefit such Member received pursuant to Section 7.1 as may be required to avoid any duplication of accrued benefits."

2. Paragraph (a) of Section 5.2 of the Plan is deleted and the following paragraph (a) is substituted therefor:

"(a) Actuarially Equivalent Annuity: For purposes of determining the ESOP Offset Amount associated with a particular ESOP Release, the single life annuity commencing at age 65 that is Actuarially Equivalent to the Market Value of the ESOP Release at the Date of Release based upon the Member's age at the Date of Release, an 8.5% per annum interest rate assumption and post-age 65 mortality assumptions determined under the

SECOND AMENDMENT TO
ENRON CORP. CASH BALANCE PLAN

WHEREAS, Enron Corp. (the "Company") and other Employers have heretofore adopted the Enron Corp. Cash Balance Plan (the "Plan"); and

WHEREAS, the Company desires to amend the Plan on behalf of itself and all other Employers to provide for an additional Cash Balance Accrual for Plan Year 1996;

NOW, THEREFORE, the Plan is amended as follows:

1. Section 4.2 of Article IV is amended to add the following new paragraph (e):

   "(e)  As of the last day of Plan Year 1996, each Member who was actively employed by an Employer on December 31, 1995, shall be credited with an additional Cash Balance Accrual equal to 1.223% of such Member's Monthly Plan Compensation for each calendar month in Plan Year 1994.

2. As amended hereby, the Plan is specifically ratified and reaffirmed.

Date:  May 6, 1997

                                    ENRON CORP.

                                    By: _____
                                    Title:  PHILIP J. BAZELIDES
                                            VICE PRESIDENT
ATTEST:                                     COMPENSATION & BENEFITS
                                            ENRON

By _____
Title: Vice President & Secretary

3. Effective as of January 1, 1997, subparagraph (3)(A) of Section 10.1(b) of the Plan is deleted and the following is inserted in its place:

"(A) In the case of a benefit of a Member other than a benefit payable pursuant to Article IX, after April 1 of the calendar year following the later of (A) the calendar year in which such Member attains the age of seventy and one-half or (B) the calendar year in which such Member terminates his employment with the Company (provided, however, that clause (B) of this sentence shall not apply in the case of a Member who is a "five-percent owner" (as defined in section 416 of the Code) with respect to the Plan Year ending in the calendar year in which such Member attains the age of seventy and one-half); and"

4. Effective December 12, 1994, the following new Section 23.10 is added at the end of Article XXIII:

"23.10 <u>Qualified Military Service</u>. Notwithstanding any provision of this plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with section 414(u) of the Code."

5. As amended hereby, the Plan is specifically ratified and reaffirmed.

Date: 8/12/97

ENRON CORP.

By: _____
Title: PHILIP J. BAZELIDES
VICE PRESIDENT
COMPENSATION & BENEFITS
ENRON

ATTEST:

By: _____
Title: Vice President & Secretary

Service by reason of transfer of employment to a Non-Participating Employer, nevertheless, shall have his period of employment with a Non-Participating Employer recognized as Vesting Service under this Article VIII."

5. As amended hereby, the Plan is specifically ratified and reaffirmed.

Date: May 5, 1998

ENRON CORP.

By: /s/ Philip J. Bazelides
Title:
PHILIP J. BAZELIDES
VICE PRESIDENT
COMPENSATION & BENEFITS
ENRON

ATTEST:

By: /s/ Peggy B. Menchaca
Title: Vice President & Secretary

## Enron Cash Balance Plan
## Benefit Examples - Calculation of the Final Average Pay Benefit

### Exhibit II - Retirement before all stock is released

**Facts**

| | |
|---|---|
| Date of Birth: | 05/03/41 |
| Date of Hire: | 08/01/91 |
| Non-Offsetable Benefit, 12/31/94: | $0.00 |
| Offsetable Benefit, 12/31/94: | $3,423.00 |
| Total FAP Benefit, before Offset, 12/31/94: | $13,491.00 |
| ESOP Retirement Account Balance, 12/31/95: | 250 Shares |
| Date of Retirement: | 06/23/98 |

**History of ESOP Releases**

| | Date of Release | # of Shares Released | Share Price at Release | Market Value of Release |
|---|---|---|---|---|
| Release 1: | 01/01/96 | 50.0 | $31.00 | $1,550.00 |
| Release 2: | 01/01/97 | 50.0 | $34.00 | $1,700.00 |
| Release 3: | 01/01/98 | 50.0 | $34.00 | $1,700.00 |
| Release 4: | 06/23/98 | 100.0 | $35.50 | $3,550.00 |

Note: Retirement causes the immediate release of any unrelease amounts in the ESOP Retirement Account

**Calculation of ESOP Offset Amount**

| | (a) Age (CM) at Release | (b) Actuarial Equiv. Annuity Factor* | (c) Market Value of Release | (c) / (b) ESOP Offset Amount |
|---|---|---|---|---|
| Release 1: | 54 and 7 months | 3.478833 | $1,550.00 | $445.55 |
| Release 2: | 55 and 7 months | 3.774534 | $1,700.00 | $450.39 |
| Release 3: | 56 and 7 months | 4.095370 | $1,700.00 | $415.10 |
| Release 4: | 57 and 1 month | 4.263550 | $3,550.00 | $832.64 |

Total ESOP Offset Amount: $2,143.68

**Calculation of Final Average Pay Benefit at Normal Retirement**

| (1) Non-Offsetable Benefit | (2) Offsetable Benefit | (3) Total ESOP Offset Amount |
|---|---|---|
| $0.00 | $3,423.00 | $2,143.68 |

Normal Retirement Benefit = (1) + [ (2) - (3), but not less than zero ]

= $1,279.32

**Calculation of Final Average Pay Benefit for Early Commencement at age 57 and 1 month**

| | (1) Non-Offsetable Benefit | (2) Offsetable Benefit | (3) Total ESOP Offset Amount |
|---|---|---|---|
| Components at Normal Retirement: | $0.00 | $3,423.00 | $2,143.68 |
| Early Commencement Factors: | 72.5000% *** | 72.5000% *** | 45.2182% ** |
| Components at for Age 55 Commencement: | $0.00 | $2,481.68 | $969.33 |

Final Average Pay Benefit at Age 55: (1) + [ (2) - (3), but not less than zero ]

= $1,512.34

\* From Table I
\*\* From Table II
\*\*\* From Table III

```
1997/12/29                    ENRON PensionManager                    13:50:00
   File      Data     penCalc    Reports    Load    Update    System    Help
                                                                        -NOTES-
   ime    LARSEN, JOHN                Part No   L23419    Born    1938/08/27
   SSN    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              EE No  506409927       Cred Svc 1957/05/01
   Company  A-SRP    Empl Stat RA    Ret Date  0000/00/00  Updated 1997/01/10

   Pr Pln 1    00 :              Pr Ben 1      0.00  Pr Svc 1    0.0000
   Pr Pln 2    00 :              Pr Ben 2      0.00  Pr Svc 2    0.0000
   Pr Pln 3    00 :              Pr Ben 3      0.00  Pr Svc 3    0.0000
   Pr P
        ┌─315  Value        Long Description ─────────────────────┐  .0000
   Purc │                                                         │
   Prio │  00         N/A                                         │  0.00
   Enro │  07         Cashed Out                                  │  0.00
        │  20         BELCO                                       │
        │  21         BELCO/PERU                                  │
        │  22         CHEMPLEX                                    │■
        │  23         LLANCO                                      │
        │  24         FALCO                                       │
        │                                                         │▼
        │                   .[ Cancel ]                           │
        └─────────────────────────────────────────────────────────┘

 Select     Quit    Next EE  Prev EE  Next Fn  Prev Fn   Save
 Participant Prior Plan Data
```

# Annual Age 65 ESOP Offset Factors

(Divide Market Value of Stock at Release by Factor based on Age at Release to get ESOP Offset to Annual Age 65 Floor Plan Benefit)

Mortality Table: UP84, Setback 1 year (Post-Commencement Only)  
Single Life Annuity Normal Form  
Interest Rate: 6.50%

| Age | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Completed Months | | | | | | |
| 15 | 0.137612 | 0.138587 | 0.139562 | 0.140536 | 0.141511 | 0.142486 | 0.143461 | 0.144435 | 0.145410 | 0.146385 | 0.147360 | 0.148334 |
| 16 | 0.149309 | 0.150367 | 0.151424 | 0.152482 | 0.153540 | 0.154597 | 0.155655 | 0.156713 | 0.157770 | 0.158828 | 0.159886 | 0.160943 |
| 17 | 0.162001 | 0.163149 | 0.164296 | 0.165444 | 0.166591 | 0.167739 | 0.168886 | 0.170034 | 0.171181 | 0.172329 | 0.173476 | 0.174624 |
| 18 | 0.175771 | 0.177016 | 0.178261 | 0.179506 | 0.180751 | 0.181996 | 0.183241 | 0.184486 | 0.185731 | 0.186976 | 0.188221 | 0.189466 |
| 19 | 0.190711 | 0.192062 | 0.193413 | 0.194764 | 0.196114 | 0.197465 | 0.198816 | 0.200167 | 0.201518 | 0.202869 | 0.204219 | 0.205570 |
| 20 | 0.206921 | 0.208387 | 0.209853 | 0.211319 | 0.212784 | 0.214250 | 0.215716 | 0.217181 | 0.219647 | 0.220113 | 0.221579 | 0.223044 |
| 21 | 0.224510 | 0.226100 | 0.227691 | 0.229281 | 0.230871 | 0.232461 | 0.234052 | 0.235642 | 0.237232 | 0.238822 | 0.240413 | 0.242003 |
| 22 | 0.243593 | 0.245319 | 0.247044 | 0.248770 | 0.250495 | 0.252221 | 0.253946 | 0.255672 | 0.257397 | 0.259123 | 0.260848 | 0.262574 |
| 23 | 0.264299 | 0.266171 | 0.268043 | 0.269915 | 0.271787 | 0.273659 | 0.275532 | 0.277404 | 0.279276 | 0.281148 | 0.283020 | 0.284892 |
| 24 | 0.286764 | 0.288795 | 0.290827 | 0.292858 | 0.294889 | 0.296920 | 0.298952 | 0.300983 | 0.303014 | 0.305045 | 0.307077 | 0.309108 |
| 25 | 0.311139 | 0.313343 | 0.315547 | 0.317751 | 0.319955 | 0.322159 | 0.324363 | 0.326566 | 0.328770 | 0.330974 | 0.333178 | 0.335382 |
| 26 | 0.337586 | 0.339977 | 0.342368 | 0.344760 | 0.347151 | 0.349542 | 0.351933 | 0.354324 | 0.356715 | 0.359106 | 0.361498 | 0.363889 |
| 27 | 0.366280 | 0.368875 | 0.371469 | 0.374064 | 0.376658 | 0.379253 | 0.381847 | 0.384442 | 0.387036 | 0.389630 | 0.392225 | 0.394819 |
| 28 | 0.397414 | 0.400229 | 0.403044 | 0.405859 | 0.408674 | 0.411489 | 0.414305 | 0.417120 | 0.419935 | 0.422750 | 0.425565 | 0.428380 |
| 29 | 0.431195 | 0.434249 | 0.437304 | 0.440358 | 0.443412 | 0.446466 | 0.449521 | 0.452575 | 0.455629 | 0.458683 | 0.461738 | 0.464792 |
| 30 | 0.467846 | 0.471160 | 0.474474 | 0.477788 | 0.481102 | 0.484416 | 0.487730 | 0.491043 | 0.494357 | 0.497671 | 0.500985 | 0.504299 |
| 31 | 0.507613 | 0.511209 | 0.514804 | 0.518400 | 0.521995 | 0.525591 | 0.529187 | 0.532782 | 0.536378 | 0.539973 | 0.543569 | 0.547164 |
| 32 | 0.550760 | 0.554661 | 0.558563 | 0.562464 | 0.566365 | 0.570266 | 0.574168 | 0.578069 | 0.581970 | 0.585871 | 0.589773 | 0.593674 |
| 33 | 0.597575 | 0.601808 | 0.606041 | 0.610274 | 0.614506 | 0.618739 | 0.622972 | 0.627205 | 0.631438 | 0.635671 | 0.639903 | 0.644136 |
| 34 | 0.648369 | 0.652962 | 0.657554 | 0.662147 | 0.666739 | 0.671332 | 0.675925 | 0.680517 | 0.685110 | 0.689702 | 0.694295 | 0.698887 |
| 35 | 0.703480 | 0.708463 | 0.713446 | 0.718429 | 0.723412 | 0.728395 | 0.733378 | 0.738361 | 0.743344 | 0.748327 | 0.753310 | 0.758293 |
| 36 | 0.763276 | 0.768683 | 0.774089 | 0.779496 | 0.784902 | 0.790309 | 0.795715 | 0.801122 | 0.806528 | 0.811935 | 0.817341 | 0.822748 |
| 37 | 0.828154 | 0.834020 | 0.839886 | 0.845752 | 0.851618 | 0.857484 | 0.863351 | 0.869217 | 0.875083 | 0.880949 | 0.886815 | 0.892681 |
| 38 | 0.898547 | 0.904912 | 0.911277 | 0.917641 | 0.924006 | 0.930371 | 0.936736 | 0.943100 | 0.949465 | 0.955830 | 0.962195 | 0.968559 |
| 39 | 0.974924 | 0.981830 | 0.988735 | 0.995641 | 1.002547 | 1.009452 | 1.016358 | 1.023264 | 1.030169 | 1.037075 | 1.043981 | 1.050886 |
| 40 | 1.057792 | 1.065285 | 1.072777 | 1.080270 | 1.087763 | 1.095255 | 1.102748 | 1.110241 | 1.117733 | 1.125226 | 1.132719 | 1.140211 |
| 41 | 1.147704 | 1.155834 | 1.163963 | 1.172093 | 1.180222 | 1.188352 | 1.196481 | 1.204611 | 1.212741 | 1.220870 | 1.229000 | 1.237129 |
| 42 | 1.245259 | 1.254080 | 1.262900 | 1.271721 | 1.280541 | 1.289362 | 1.298183 | 1.307003 | 1.315824 | 1.324644 | 1.333465 | 1.342285 |
| 43 | 1.351106 | 1.360676 | 1.370247 | 1.379817 | 1.389387 | 1.398958 | 1.408528 | 1.418098 | 1.427669 | 1.437239 | 1.446809 | 1.456380 |
| 44 | 1.465950 | 1.476334 | 1.486718 | 1.497102 | 1.507485 | 1.517869 | 1.528253 | 1.538637 | 1.549021 | 1.559405 | 1.569788 | 1.580172 |
| 45 | 1.590556 | 1.601823 | 1.613089 | 1.624356 | 1.635622 | 1.646889 | 1.658155 | 1.669422 | 1.680688 | 1.691955 | 1.703221 | 1.714488 |
| 46 | 1.725754 | 1.737978 | 1.750202 | 1.762426 | 1.774650 | 1.786874 | 1.799099 | 1.811323 | 1.823547 | 1.835771 | 1.847995 | 1.860219 |
| 47 | 1.872443 | 1.885706 | 1.898969 | 1.912232 | 1.925495 | 1.938758 | 1.952022 | 1.965285 | 1.978548 | 1.991811 | 2.005074 | 2.018337 |
| 48 | 2.031600 | 2.045991 | 2.060381 | 2.074772 | 2.089162 | 2.103553 | 2.117943 | 2.132334 | 2.146724 | 2.161115 | 2.175505 | 2.189896 |
| 49 | 2.204286 | 2.219900 | 2.235514 | 2.251127 | 2.266741 | 2.282355 | 2.297969 | 2.313582 | 2.329196 | 2.344810 | 2.360424 | 2.376037 |
| 50 | 2.391651 | 2.408592 | 2.425533 | 2.442474 | 2.459414 | 2.476355 | 2.493296 | 2.510237 | 2.527178 | 2.544119 | 2.561059 | 2.578000 |
| 51 | 2.594941 | 2.613322 | 2.631703 | 2.650084 | 2.668464 | 2.686845 | 2.705226 | 2.723607 | 2.741988 | 2.760368 | 2.778749 | 2.797130 |
| 52 | 2.815511 | 2.835454 | 2.855397 | 2.875341 | 2.895284 | 2.915227 | 2.935170 | 2.955113 | 2.975056 | 2.995000 | 3.014943 | 3.034886 |
| 53 | 3.054829 | 3.076467 | 3.098106 | 3.119744 | 3.141383 | 3.163021 | 3.184660 | 3.206298 | 3.227936 | 3.249575 | 3.271213 | 3.292852 |
| 54 | 3.314490 | 3.337968 | 3.361445 | 3.384923 | 3.408400 | 3.431878 | 3.455356 | 3.478833 | 3.502311 | 3.525788 | 3.549266 | 3.572743 |
| 55 | 3.596221 | 3.621694 | 3.647168 | 3.672641 | 3.698114 | 3.723587 | 3.749061 | 3.774534 | 3.800007 | 3.825480 | 3.850954 | 3.876427 |
| 56 | 3.901900 | 3.929539 | 3.957177 | 3.984816 | 4.012454 | 4.040093 | 4.067731 | 4.095370 | 4.123008 | 4.150647 | 4.178285 | 4.205924 |
| 57 | 4.233562 | 4.263550 | 4.293537 | 4.323525 | 4.353513 | 4.383500 | 4.413488 | 4.443476 | 4.473463 | 4.503451 | 4.533439 | 4.563426 |
| 58 | 4.593414 | 4.625951 | 4.658488 | 4.691024 | 4.723561 | 4.756098 | 4.788635 | 4.821171 | 4.853708 | 4.886245 | 4.918782 | 4.951318 |
| 59 | 4.983855 | 5.019157 | 5.054460 | 5.089762 | 5.125064 | 5.160366 | 5.195669 | 5.230971 | 5.266273 | 5.301575 | 5.336877 | 5.372180 |
| 60 | 5.407482 | 5.445785 | 5.484088 | 5.522391 | 5.560694 | 5.598997 | 5.637300 | 5.675603 | 5.713906 | 5.752209 | 5.790512 | 5.828815 |
| 61 | 5.867118 | 5.908677 | 5.950236 | 5.991794 | 6.033353 | 6.074912 | 6.116471 | 6.158029 | 6.199588 | 6.241147 | 6.282706 | 6.324264 |
| 62 | 6.365823 | 6.410914 | 6.456006 | 6.501097 | 6.546188 | 6.591279 | 6.636371 | 6.681462 | 6.726553 | 6.771644 | 6.816735 | 6.861827 |
| 63 | 6.906918 | 6.955842 | 7.004766 | 7.053690 | 7.102614 | 7.151538 | 7.200462 | 7.249386 | 7.298310 | 7.347234 | 7.396158 | 7.445082 |
| 64 | 7.494006 | 7.547089 | 7.600171 | 7.653254 | 7.706336 | 7.759419 | 7.812502 | 7.865584 | 7.918667 | 7.971749 | 8.024832 | |
| 65 | 8.130997 | | | | | | | | | | | |

Table I