## ENRON CORP. SAVINGS PLAN TRUST

THIS AGREEMENT is made the 1st day of July, 1986, between Enron Corp., a Delaware corporation, herein referred to as the "Company", and THE NORTHERN TRUST COMPANY, an Illinois corporation, of Chicago, Illinois, as Trustee.

The Company has established the Enron Corp. Savings Plan, herein referred to as the "Plan", a certified or executed copy of which has been delivered to the Trustee, for the benefit of certain employees of the Company and its subsidiaries as provided in the Plan. The Company hereby creates and establishes a Trust to be known as the Enron Corp. Savings Trust in order to carry out the purposes of the Plan.

The Trust fund, herein referred to as the "Fund", shall be held as a single fund and shall consist of all assets of the Plan by the Trustee as of the date of this agreement, all investments and reinvestments thereof, together with all contributions, income, earnings and increments of any kind thereto, and shall be held by the Trustee according to the following provisions:

### ARTICLE ONE: DEFINITIONS

For the purpose of this agreement:

1.1 "Company" means Enron Corp. and any corporation which is the successor thereto and which elects to become a party to this agreement by resolution adopted within 90 days after the effective date of the consolidation, merger or sale of assets by which the succession is effected;

1.2 "Board of Directors" means the Board of Directors of the Company;

1.3 "ERISA" means the Employee Retirement Income Security Act of 1974 as in effect from time to time and the regulations issued thereunder;

1.4 "Administrative Committee" means the committee as constituted from time to time (i) which has the responsibility for administering the Plan and shall be deemed for purposes of ERISA to be the Plan Administrator and the named fiduciary for Plan administration and (ii) which has the responsibility for allocating the assets of the Fund among the Separate Accounts, for monitoring the diversification of the investments of the Funds for assuring that the Plan does not violate any provision of ERISA limiting the acquisition or holding of securities or other property of the Company and for the appointment and removal of Investment Advisors and shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments;

1.5 "Plan" means the Enron Corp. Savings Plan;

1.6 "Fund" or "Investment Funds" shall mean all of the following considered collectively: Fund A, Fund B, Fund C and Fund D. Any of Fund A, B, C or D may be composed of a Separate Account or a group of Separate Accounts designated by the Administrative Committee;

1.7 "Trustee" means THE NORTHERN TRUST COMPANY and any successor to it as trustee or trustees of the Fund under this agreement;

1.8 "Participant" means a person who is an employee or former employee of the Company or a subsidiary and who is or was actually participating in the Plan;

1.9 "Beneficiary" means a person designated to receive a benefit under the Plan by reason of the death of a Participant, a provision of the Plan, or operation of law;

1.10 "Investment Manager" means an investment manager registered as an investment advisor under the Investment Advisors Act of 1940, a bank as defined in that Act or an insurance company qualified to manage, acquire or dispose of any asset of the Fund, which is appointed by the Administrative Committee to manage a Separate Investment Account, except that the Trustee shall have no responsibility to determine whether a person or entity acting as an Investment Advisor meets or continues to meet this definition;

1.11 "Investment Trustee" means the trustee appointed by the Administrative Committee to manage a Separate Investment Trust Account;

1.12 "Investment Advisor" means an Investment Manager or an Investment Trustee or, in those cases where the Administrative Committee has assumed investment responsibility for a Separate Account, the Administrative Committee;

1.13 "Separate Investment Account" means assets of the Fund allocated by the Administrative Committee to a Separate Account to be managed by an Investment Manager or the Administrative Committee;

3

1.14 "Subtrust" means assets of a Separate Investment Account which are held by a subtrustee designated by the Administrative Committee and which are subject to the management of an Investment Manager;

1.15 "Separate Investment Trust Account" means assets of the Fund allocated by the Administrative Committee to a Separate Account to be managed by an Investment Trustee;

1.16 "Separate Insurance Contract Account" means assets of the Fund allocated by the Administrative Committee to a Separate Account for investment in insurance contracts directed by the Administrative Committee;

1.17 "Separate Account" means a Separate Investment Account, a Separate Investment Trust Account or a Separate Insurance Contract Account;

1.18 "Company Stock" means common stock of the Company; and

1.19 "Subsidiary" means a subsidiary or affiliate of the Company.

ARTICLE TWO: DISTRIBUTIONS

The Trustee shall make distributions from the Fund in cash, in kind or by purchase of an annuity contract, to such persons, in such amounts, at such times and in such manner as the Administrative Committee shall from time to time direct in writing, or the Administrative Committee may, after written notice to the Trustee of its assumption of the responsibility, make the distributions from the Fund through a commercial banking account held in the name of this Retirement Trust in a federally insured banking institution (including the Trustee) which is used

4

exclusively for that purpose and to which the Trustee shall make such deposits from the Fund as the Administrative Committee may from time to time direct in writing, except that the Trustee may reserve such reasonable amount as the Trustee shall deem necessary to pay any income or death taxes attributable to a distribution or may require such release from a taxing authority of such indemnification from the distributee as the Trustee shall deem necessary for the protection of the Trustee. The Trustee shall have no responsibility to ascertain whether any direction received by the Trustee from the Administrative Committee in accordance with the preceeding sentence is proper and in compliance with the terms of the Plan or to see to the application of any distribution of, with respect to deposits made to a commercial banking account, to account for funds retained therein or disbursed by the Administrative Committee or to prepare any informational returns for tax purposes as to distributions made therefrom.

The Trustee shall not be liable for any distribution made in good faith without actual notice or knowledge of the changed condition or status of any recipient. If any distribution made by the Trustee is returned unclaimed, the Trustee shall notify the Administrative Committee and shall dispose of the distribution as the Administrative Committee shall direct.

ARTICLE THREE: SEPARATE ACCOUNTS AND INVESTMENT ADVISORS

The Administrative Committee may from time to time (and shall with respect to any asset of the Fund as to which the Trustee is for any reason unwilling or unable to act) effect the

establishment of one or more Separate Accounts, and one or more Subtrusts, by written instrument delivered to the Trustee and shall designate assets of the Fund to be allocated thereto, appoint or remove an Investment Advisor with respect thereto and direct the Trustee to transfer assets of the Fund to or from a Separate Account or Subtrust. The following provisions shall apply to the Separate Accounts.

3.1   With respect to each Separate Investment Account where an Investment Manager has been appointed, the Investment Manager thereof shall acknowledge by a writing delivered to the Administrative Committee and to the Trustee that the Investment Manager is a fiduciary with respect to the Fund assets allocated thereto. The Investment Manager shall have custody of any portion of the assets invested in a collective trust fund operated by the Investment Manager, and the subtrustee of a Subtrust shall have custody of any portion of the Fund assets allocated to it by the Administrative Committee; the Trustee shall have custody of all other Fund assets and shall act with respect to those assets of such Separate Investment Account only as directed by the Investment Manager.

3.2   With respect to each Separate Investment Trust Account, the Trustee and the Investment Trustee thereof shall execute an investment trust agreement with respect thereto. The Investment Trustee shall have custody of such portion of the Fund assets as the Administrative Committee may from time to time determine; the Trustee shall have custody of all other Fund assets and shall act with respect to those assets of such

Separate Investment Trust Account only as directed by the Investment Trustee.

3.3  With respect to each Separate Insurance Contract Account, with Fund assets allocated thereto the Trustee shall purchase or continue in effect such fixed income insurance contracts, as the Investment Committee shall direct. The issuing insurance company may credit those Fund assets to its general account or to one or more of its separate accounts, and the Trustee shall act with respect to those contracts only as directed by the Administrative Committee.

3.4  The Administrative Committee may by written notice to the Trustee assume investment responsibility for a Separate Account or for Fund assets held in any cash account maintained by the Trustee. With respect to assets or Separate Accounts over which the Administrative Committee has assumed investment responsibility, the Trustee, acting only as directed by the Administrative Committee, shall enter into such agreements as are necessary to facilitate any investment, including agreements entering into a limited partnership, Subtrust or the participation in real estate funds. The Trustee shall not make any investment review of, or consider the propriety of holding or selling, or vote any Fund assets over which the Administrative Committee has assumed investment responsibility.

3.5  With respect to each Separate Account, the Investment Advisor thereof (or with respect to those Fund assets in a cash account over which the Administrative Committee has assumed investment responsibility, the Administrative Committee) shall

7

have the investment powers granted to the Trustee by ARTICLE FIVE, as limited by 6.1 through 6.3 of ARTICLE SIX, as if all references therein to the Trustee referred to the Investment Advisor (or Administrative Committee).

3.6    The Administrative Committee may also direct the Trustee to lend securities of the Fund held by the Trustee by entering into a written agreement with the Trustee. The terms of the Agreement between the Administrative Committee and the Trustee shall be consistent with Department of Labor Prohibited Transaction Exemption 81-6 or any successor exemption. The written agreement between the Administrative Committee and the Trustee shall direct the Trustee to enter into a Broker Loan Agreement with a borrower or borrowers. The Trustee shall transfer securities to the borrower and invest the collateral received in exchange for the securities. Notwithstanding anything in this agreement to the contrary, the borrower shall have the authority and responsibility to vote securities it has borrowed. The Trustee shall maintain a record of the market value of the loaned securities and shall be paid reasonable compensation as agreed to by the Trustee and the Administrative Committee.

## ARTICLE FOUR: INVESTMENT OF THE FUND

The Fund shall be composed of assets of Fund A, B, C and D which shall be invested as herein provided. The Administrative Committee shall direct the Trustee with respect to the allocation of assets to Funds A, B, C or D and with respect to transfers among such Funds. Pending directions from the Administrative

Committee to allocate contributions among the Investment Funds the Trustee shall hold the contributions in a separate account invested in short term investments, including common or collective short term investment funds of the Trustee.

Fund A shall be funded by (i) a contract or contracts with an insurance company or companies and/or (ii) a money market fund which consists of a diversified portfolio of liquid, money market instruments providing a fixed rate of return as determined by the Administrative Committee. Such contract or contracts shall be guaranteed as to principal and income. Any cash held by the Trustee from time to time in Fund A may be invested in common or collective short term investment funds of the Trustee.

Fund B shall be a common stock fund which consists of a diversified portfolio of common stocks. While awaiting investment in common stocks any cash held by the Trustee may be invested in common or collective short term investment funds of the Trustee.

Fund C shall be composed of investments in Company Stock. While awaiting investment in Company Stock any cash held by the Trustee may be invested in common or collective short term investment funds of the Trustee.

Fund D shall consist of loans made to Participants according to provisions of the Plan. The Trustee is to have no responsibility for the granting, collection of income or principle, or the enforcement of any loans. The Trustee is to act with respect to such loans only as directed by the Administrative Committee.

The Trustee may purchase Company Stock from the Company, in the open market, or from any other source as soon after receipt of funds for such purposes as is practical, provided that the Trustee may, in its discretion, limit the daily volume of purchase of such stock to the extent that such action is deemed by it to be in the best interests of the Participants and may make temporary, short-term investments at its discretion. Brokerage commissions, taxes and other charges and expenses in connection with the purchase of Company Stock shall be added to the cost thereof. All purchases of Company Stock by the Trustee shall be made only at prices which do not exceed the fair market value of Company Stock.

ARTICLE FIVE: POWERS OF TRUSTEE

The Trustee shall hold, manage, care for and protect the assets of the Fund and shall have until distribution thereof the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law:

5.1 To hold any asset originally included in the Fund or subsequently added thereto;

5.2 To invest and reinvest the assets without distinction between income and principal in bonds, stocks, mortgages, notes, options, future contracts, limited partnership interests or other property of any kind, real or personal, foreign or domestic, suitable for the investment of trust funds, and to enter into fixed income insurance contracts;

5.3 To deposit any part or all of the Fund assets with the Trustee or its affiliate as trustee of any collective trust fund

10

which is now or hereafter maintained as a medium for the collective investment of funds of pension, profit sharing or other employee benefit plans, which are qualified under section 401(a) and exempt from taxation under section 501(a) of the Internal Revenue Code of 1954, as amended, and to withdraw any part or all of the Fund assets so deposited; any Fund assets so deposited with the trustee of a collective trust fund shall be held and invested by the trustee thereunder pursuant to all the terms and conditions of the trust agreement or declaration of trust establishing the fund, which are hereby incorporated herein by reference to the extent they are not inconsistent with the provisions hereof.

5.4  To deposit cash in any depository, including the banking department of the Trustee or its affiliate and any organization acting as a fiduciary with respect to the Fund;

5.5  To hold any part of the Fund assets in cash without liability for interest, pending investment thereof or the payment of expenses or making of distribution therewith;

5.6  To cause any Fund asset, real or personal, to be held in a corporate depository or federal book entry account system or registered in the Trustee's name or in the name of a nominee or in such other form as the Trustee deems best without disclosing the trust relationship;

5.7  To vote, either in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose, except that any security as to which the Trustee's possession of voting discretion would subject the issuing company

or the Trustee to any law, rule or regulation adversely affecting either that company or the Trustee's ability to retain or vote that company's securities, shall be voted as directed by the Administrative Committee; to exercise or sell any subscription or conversion rights; to consent to and join in or oppose any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations and in connection therewith to deposit securities and accept and hold other property received therefor;

5.8  To lease any Fund assets for any period of time through commencing in the future or extending beyond the term of the trust;

5.9  To borrow money from any lender, to extend or renew any existing indebtedness and to mortgage or pledge any assets;

5.10  To sell at public or private sale, contract to sell, convey, exchange, transfer and otherwise deal with the Fund assets, and to sell put and covered call options from time to time for such price and upon such terms as the Trustee sees fit;

5.11  To employ agents, attorneys and proxies and to delegate to any one or more of them any power, discretionary or otherwise, granted to the Trustee;

5.12  To compromise, contest, prosecute or abandon claims in favor of or against the Fund;

5.13  To lend securities held by the Trustee and to receive and invest collateral provided by the borrower, all pursuant to a written agreement with the Administrative Committee; and

5.14  To perform other acts necessary or appropriate for the proper administration of the Fund, make, execute, acknowledge and

deliver necessary instruments and give full receipts and discharges.

ARTICLE SIX:   LIMITATIONS ON POWERS

Notwithstanding ARTICLE FIVE:

6.1   The powers of the Trustee shall be exercisable for the exclusive purpose of providing benefits to the Participants and Beneficiaries under the Plan and in accordance with the standards of a prudent man under ERISA;

6.2   Subject to 6.1 and 6.3, the Trustee shall diversify the investments of that portion of the Fund of which it has investment responsibility so as to minimize the risk of large losses;

6.3   Subject to 6.1, the Trustee shall, with the respect to that portion of the Fund for which it has investment responsibility follow the investment guidelines established by the Administrative Committee and shall act in accordance with the direction of the Administrative Committee given in exercise of that Committee's responsibility;

6.4   The Trustee shall not make any investment review of, consider the propriety of holding or selling, or vote other than as directed by the Investment Advisor, any assets of the Fund allocated to a Separate Account in accordance with ARTICLE THREE, except that the restrictions imposed on the Trustee by this 6.4 shall not apply to any agreement pertaining to the lending of securities by the Trustee, and except, further, that if the Trustee shall not have received contrary instructions from the Investment Advisor of a Separate Account, the Trustee shall

13

invest for short term purposes any cash of that Separate Account in its custody in United States Treasury bills, commercial paper, banker's acceptances and certificates of deposit, and undivided interests or participations therein and (if subject to withdrawal on a daily or weekly basis) participations in common or collective funds composed thereof; and

6.5 Each Participant shall be entitled to direct the Trustee as to the manner in which any Company Stock allocated to such Participant's Trust Account under the Plan shall be voted. The Administrative Committee shall furnish to each Participant such proxy statements as are adequate for such purpose and as are furnished to holders of shares of Company Stock generally. The Trustee shall vote specifically in accordance with each Participant's instructions to the extent of the number of whole shares allocated to such Participant's Trust Account and shall, to the extent practicable, vote the remaining allocated shares owned by the Fund in such manner as to reflect the Participant's expressed desires with respect to fractional shares. All Company Stock credited to Participant accounts for which the Trustee does not receive voting instructions, and all unallocated Company Stock held by the Trustee, shall be voted by the Trustee proportionately in the same manner as it votes Company Stock for which the Trustee has received voting instructions as specified above.

If a "cash tender offer" or "exchange offer" for shares of Company Stock is made, shares allocated to each Participant's Trust Account under the Plan shall be tendered or exchanged by

14

the Trustee pursuant to such "cash tender offer" or "exchange offer" only in accordance with the specific written instructions and directions of such Participant to so tender or exchange. If a "cash tender offer" or "exchange offer" for shares of Company Stock is made, the Trustee and the Administrative Committee shall take the steps reasonably necessary to furnish information to, and allow decision by, each Participant with respect to such "cash tender offer" or "exchange offer" and the shares allocated to such Participant's Trust Account under the Plan in substantially the same manner as would be available to holders of shares of Company Stock generally, and, in that connection:

    (a)    the Administrative Committee shall:

    (i)    Inform each Participant as to the existence of such "cash tender offer" or "exchange offer"; and

    (ii)    Transmit to each Participant as soon as practicable such written information, explanation and other materials relative to such "cash tender offer" or "exchange offer" as would be made available by the Company or by the persons or entities making such "cash tender offer" or "exchange offer" to the holders of shares of Company Stock generally; provided, that the Trustee shall not be required to transmit any such written information in violation of the applicable rules and regulations of the Securities and Exchange Commission,

and (b) the Trustee shall

(i) Receive and tabulate detailed written instructions and directions from each Participant as to whether to tender or exchange the shares of Company Stock allocated to such Participant's Trust Account under the Plan and as to the time and manner of such tender or exchange, if so instructed and directed; and

(ii) Tender or exchange Company Stock held under the Plan with respect to such "cash tender offer" or "exchange offer" only in accordance with written instructions and directions received from Participants.

If written instructions or directions are not timely received from a Participant, the shares of Company Stock allocated to his Trust Account under the Plan shall not be tendered or exchanged pursuant to each "cash tender offer" or "exchange offer." As to all unallocated Company Stock held by the Trustee, the Trustee shall tender or exchange the same proportion thereof as the Company Stock for which the Trustee has received instructions from Participants to tender bear to all Company Stock with respect to which the Trustee has received instructions from Participants to tender and not to tender. For purposes of this Subsection 6.5, the term "cash tender offer" shall include a tender offer for, or request or invitation for tenders of, shares of Company Stock in exchange for cash, as made to the Plan or to holders of shares of Company Stock generally; the term "exchange offer" shall include a tender offer for, or

request or invitation for tenders of, any shares of stock in exchange for any consideration other than for all cash, as made to the Plan or to holders of shares of Company Stock generally.

In carrying out its responsibilities under this provision the Trustee may conclusively rely on information furnished to it by the Administrative Committee, including the names and current addresses of Participants, the number of shares of Company Stock credited to Participant accounts, and the number of shares of Company Stock held by the Trustee that have not yet been allocated.

The Company Stock held by the Trustee pursuant to the provisions of the Plan shall be kept separate and apart from all other property belonging to or in the custody of the Trustee.

ARTICLE SEVEN: ACCOUNTS

The Trustee shall maintain accounts of all receipts and disbursements, including contributions and distributions and purchases, sales and other transactions of the Fund. The accounts, and the books and records relating thereto, shall be open to inspection and audit at all reasonable times by any person or persons designated by the Administrative Committee or entitled thereto under ERISA.

Within 120 days after the close of each fiscal year of the Fund and within 15 days after the end of each calendar month, the Trustee shall render to the Administrative Committee a statement of account for the Fund for the applicable period commencing with the close of the last preceding period and a list showing each asset thereof as of the close of the current period and its cost