and fair market value. The Trustee shall rely conclusively upon the determination of the issuing insurance company with respect to the fair market value of each insurance contract and upon the determination of the Investment Advisor of each Separate Account with respect to the fair market value of those assets allocated thereto which the Trustee deems not to have a readily ascertainable value, and the Trustee shall have no responsibility with respect thereto.

An account of the Trustee may be approved by the Administrative Committee by written notice delivered to the Trustee or by failure to object to the account by written notice delivered to the Trustee within six months of the date upon which the account was delivered to the Administrative Committee.

The approval of an account shall constitute a full and complete discharge to the Trustee as to all matters set forth in that account as if the account had been settled by a court of competent jurisdiction in an action or proceeding to which the Trustee, the Company and the Administrative Committee were parties. In no event shall the Trustee be precluded from having the accounts of the Trustee settled by a judicial proceeding. Nothing in this article shall relieve the Trustee of any responsibility, or liability for any responsibility, under ERISA.

ARTICLE EIGHT: TRUSTEE SUCCESSION

The Trustee may resign at any time by written notice to the Administrative Committee, or the Administrative Committee may remove the Trustee by written notice to the Trustee. The resignation or removal shall be effective 60 days after the date

of the Trustee's resignation or receipt of the notice of removal or at such earlier date as the Trustee and the Administrative Committee may agree.

In case of the resignation or removal of the Trustee, the Administrative Committee shall appoint a successor Trustee by delivery to the Trustee of a written instrument executed by the successor Trustee accepting the appointment, whereupon the Trustee shall deliver the assets of the Fund to the successor Trustee but may reserve such reasonable amount as the Trustee may deem necessary for outstanding and accrued charges against the Fund.

The successor Trustee, and any successor to the trust business of the Trustee by merger, consolidation or otherwise, shall have all the powers given the originally named Trustee. No successor Trustee shall be personally liable for any act or omission of any predecessor. Except as otherwise provided in ERISA, the receipt of the successor Trustee and the approval of the Trustee's final account by the Administrative Committee in the manner provided in ARTICLE SEVEN shall constitute a full and complete discharge to the Trustee.

ARTICLE NINE: <u>MISCELLANEOUS</u>

Any action required to be taken by the Company shall be by resolution of its board of directors, the Administrative Committee or by written direction of such one or more of its officers and agents as shall be designated by resolution of its board of directors or the Administrative Committee to act for the Company. The Trustee may rely upon a certified copy of a



DEC-12-2001 17:52 CORPORATE#LEGAL

resolution filed with the Trustee and shall have no responsibility for any action taken by the Trustee in accordance with any such resolution or direction.

The Company shall certify to the Trustee the names of the members of the Administrative Committee acting from time to time, and the Trustee shall not be charged with knowledge of a change in the membership of the Administrative Committee until so notified by the Company. Any action required to be taken by the Administrative Committee shall be by written direction of such one or more of its Secretary and members as shall be designated by the Administrative Committee to act for the Committee.

The Trustee may rely upon an instrument of designation signed by all of the members of the Administrative Committee and filed with the Trustee and shall have no responsibility for any action taken by the Trustee in accordance with any such written direction.

The Trustee may consult with legal counsel, who may also be counsel for the Company, with respect to its responsibilities under this agreement and shall be fully protected in acting or refraining from acting in reliance upon the written advice of legal counsel.

In no event shall the terms of the Plan, either expressly or by implication, be deemed to impose upon the Trustee any power or responsibility other than those set forth in this agreement or in ERISA. The Trustee may assume until advised to the contrary that the Plan and the Trust Fund is qualified under section 401(a) and exempt from taxation under section 501(a) of the Internal Revenue

Code of 1954, as amended, or under corresponding provisions of subsequent federal tax laws. The Trustee shall be accountable for contributions made to the Plan and including among the assets of the Fund but shall have no responsibility to determine whether the contributions comply with the provisions of the Plan or of ERISA.

In any judicial proceeding to settle the accounts of the Trustee, the Company and the Administrative Committee shall be the only necessary parties; in any other judicial proceeding with respect to the Trustee of the Fund, the Trustee and the Company shall be the only necessary parties; and no Participant or Beneficiary shall be entitled to any notice of process. A final judgment in any such proceeding shall be binding upon the parties to the proceeding and upon all Participants and Beneficiaries.

The Trustee shall be reimbursed for all expenses incurred in the management and protection of the Fund, including accounting and legal fees, and shall receive such reasonable compensation for its services as the Trustee and the Company shall from time to time determine.

Those items of expense and compensation shall be paid from the Fund, subject to prior payment or reimbursement by the Company in its discretion.

The Company has allocated fiduciary responsibility among various persons and entities in accordance with the terms of the Plan and of this agreement. The Trustee shall have no responsibility for any error or loss that may result by reason of the exercise or non-exercise of that fiduciary responsibility by

the person to whom or entity to which it is allocated, and the Company (which has the authority to do so under the laws of the State of its incorporation) agrees to indemnify the Trustee from any liability, including legal fees and expenses, arising therefrom.

Except for the short term investment of cash, the Company has limited the investment power of the Trustee in Fund C to the purchase of Company Stock. Except for its own negligence, willful misconduct or fraud, the Trustee shall not be liable for the purchase, retention, tender or sale of Company Stock or for following a direction of the Administrative Committee, and the Company (which has the authority to do so under the laws of the State of its incorporation) agrees to indemnify the Trustee from any liability, loss and expense, including legal fees and expenses which the Trustee may sustain by reason of purchase, retention, tender or sale of Company Stock.

No part of the Fund shall be diverted to any purpose other than the exclusive benefit of the Participants and Beneficiaries or, except as otherwise permitted under the Plan and under ERISA, be remitted to the Company.

Any person dealing with the Trustee shall not see to the application of any money paid or property delivered to the Trustee or inquire into the provisions of this agreement or of the Plan or the Trustee's authority thereunder or compliance therewith, and may rely upon the statement of the Trustee that the Trustee is acting in accordance with this agreement.

Except with respect to a Qualified Domestic Relations Order under the provisions of ERISA, any interest of a Participant or Beneficiary in the Fund or the Plan or in any distribution therefrom shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered.

ARTICLE TEN: GOVERNING LAW

The provisions of ERISA and the law of Illinois shall govern the validity, interpretation and enforcement of this agreement, and in case of conflict, the provisions of ERISA shall prevail. The invalidity of any part of this agreement shall not affect the remaining parts hereof.

ARTICLE ELEVEN: AMENDMENT AND TERMINATION

The Company may at any time or times with the consent of the Trustee amend this agreement in whole or in part by instrument in writing delivered to the Trustee and effective upon the date therein provided.

This agreement shall terminate by action of the Company, or by the failure of a corporate successor to the Company to elect to become a party to this agreement as provided in 1.1 of this agreement. Upon termination the Trustee shall distribute the fund in the manner directed by the Administrative Committee, in cash or in kind or partly in each as the Trustee and the Administrative Committee shall agree, except that the Trustee shall be entitled to prior receipt of such rulings and determinations from such administrative agencies as it may deem



DEC-12-2001 17:53 CORPORATE&LEGAL 7136465847 P.24/37

necessary or advisable to assure itself that the distribution directed is in accordance with law and will not subject the Fund or the Trustee to liability, and except, further, that the Trustee may reserve such reasonably amount as the Trustee may deem necessary for outstanding and accrued charges against the Trust Fund.

This agreement shall terminate in its entirety when there is no asset included in the Fund.

IN WITNESS WHEREOF the Company and the Trustee have executed this agreement by their respective duly authorized officers and have caused their respective corporate seals to be affixed hereto the day and year first above written.

ATTEST:

Secretary

(CORPORATE SEAL)

ENRON CORP.

By

ATTEST:

Assistant Secretary

(CORPORATE SEAL)

THE NORTHERN TRUST COMPANY

By

PDM/055



DEC-12-2001 17:54 CORPORATE#LEGAL

AMENDMENT TO
ENRON CORP. SAVINGS PLAN TRUST

This Agreement dated as of the 12th day of April, 1989, by and between Enron Corp., a Delaware corporation, herein referred to as the "Company", and THE NORTHERN TRUST COMPANY, an Illinois corporation, of Chicago, Illinois as Trustee, is an amendment to that certain Enron Corp. Savings Plan Trust Agreement made the first day of July, 1986 (the "Trust Agreement") between the parties.

WHEREAS, the parties have previously entered into the Trust Agreement; and

WHEREAS, the parties wish to add certain provisions to the Trust Agreement;

NOW, THEREFORE, in consideration thereof and of the mutual provisions contained herein, the parties agree as follows:

1. Section 6.5 of the Trust Agreement is amended to add the following provisions in a separate paragraph immediately before the paragraph beginning, "If written instructions or directions are not timely received from a Participant, ...":

> "Participants shall have the right to determine confidentially whether shares of Company stock allocated to their Trust Accounts and subject to the Plan will be tendered in a "cash tender offer" or "exchange offer". The Trustee shall administer the Trust in such a manner to ensure such confidential determination of Participants, except that after the termination of the cash tender offer or exchange offer the Company and the Administrative Committee shall have a right to information regarding any such determination to the extent necessary for the Company or the Administrative Committee to comply with their respective duties under the Plan, the Trust or applicable law which cannot be performed without that information."

2. This Agreement is an amendment to the Trust Agreement, and the parties agree that all terms and provisions contained in the Trust Agreement shall remain in full force and effect, and without any change or modification, except as provided herein.

IN WITNESS WHEREOF, the parties have fully executed this Agreement as of the date first above written.

ENRON CORP.

By: [signature] PDM
Title: James G. Barnhart
Sr. Vice President, Administration
& Human Resources

THE NORTHERN TRUST COMPANY

By: [signature]
Title: VICE PRESIDENT

PDM/1006

SECOND AMENDMENT
TO
ENRON CORP. SAVINGS PLAN TRUST

This Agreement dated as of the 15th day of JUNE, 1990, by and between Enron Corp., a Delaware corporation, herein referred to as the "Company", and THE NORTHERN TRUST COMPANY, an Illinois corporation, of Chicago, Illinois as Trustee, is an amendment to that certain Enron Corp. Savings Plan Trust Agreement made the first day of July, 1986 and amended as of the 12th day of April, 1989 (the "Trust Agreement") between the parties.

WHEREAS, the parties have previously entered into the Trust Agreement; and

WHEREAS, the parties wish to add certain provisions to and amend the Trust Agreement;

NOW, THEREFORE, in consideration thereof and of the mutual provisions contained herein, the parties agree as follows:

1. Section 1.6 is amended in its entirety to read as follows:

1.6 "Fund" or "Investment Funds" shall mean all of the following considered collectively: Fund A, Fund B, Fund C, Fund D and Fund E. And of Fund A, B, C, D or E may be composed of a Separate Account or a group of Separate Accounts designated by the Administrative Committee.

2. In the fourth line of Section 3.3, "Investment Committee" is changed to read "Administrative Committee".

3. The first two sentences of ARTICLE FOUR are amended to read as follows:

The Fund shall be composed of assets of Funds A, B, C, D and E which shall be invested as herein provided. The Administrative Committee shall direct the Trustee with respect to the allocation of assets to Funds A, B, C, D and E and with respect to transfers among such Funds.

4. ARTICLE FOUR is amended by adding the following paragraph immediately before the last paragraph:

Fund E shall be composed of investments in common stock of Enron Oil & Gas Co. ("Enron Oil Stock"). While awaiting investment in Enron Oil Stock any cash held by the Trustee may be invested for short term purposes by the Trustee.

5. The second sentence of the paragraph in Section 6.5 which begins "If written instructions or directions are not timely received ... " is changed to read as follows:

As to all unallocated Company Stock held by the Trustee, the Trustee shall tender or exchange the same proportion thereof as the Company Stock as to which the Trustee has received instructions from Participants to tender bears to all Company Stock allocated to Participants' Trust Accounts.

6. ARTICLE SIX is amended by adding the following sections after Section 6.5:

6.6 Each Participant shall be entitled to direct the Trustee as to the manner in which any Enron Oil Stock allocated to such Participant's Trust Account under the Plan shall be voted. The Administrative Committee shall furnish to each Participant such proxy statements as are adequate for such purpose and as are furnished to holders of shares of Enron Oil Stock generally. The Trustee shall vote specifically in accordance with each Participant's instructions to the extent of the number of whole shares allocated to such Participant's Trust Account and shall, to the extent practicable, vote the remaining allocated shares owned by Fund E in such manner as to reflect the Participant's expressed desires with respect to fractional shares. All Enron Oil Stock credited to Participant accounts for which the Trustee does not receive voting instructions, and all unallocated Enron Oil Stock held by the Trustee, shall be voted by the Trustee proportionately in the same manner as it votes Enron Oil Stock for which the Trustee has received voting instructions as specified above.

If a "cash tender offer" or "exchange offer" for shares of Enron Oil Stock is made, shares allocated to each Participant's Trust Account under the Plan shall be tendered or exchanged by the Trustee pursuant to such "cash tender offer" or "exchange offer" only in accordance with the specific written instructions and directions of such Participant to so tender or exchange. If a "cash tender offer" or "exchange offer" for shares of Enron Oil Stock is made, the Trustee and the Administrative Committee shall take the steps reasonably necessary to furnish information to, and allow decision by, each Participant with respect to such "cash tender offer" or "exchange offer" and the shares allocated to such Participant's Trust Account under the Plan in substantially the same manner as would be available to holders of shares of Enron Oil Stock generally, and, in that connection:

(a) the Administrative Committee shall:

(i) Inform each Participant as to the existence of such "cash tender offer" or "exchange offer"; and (ii) Transmit to each Participant as soon as practicable such written information, explanation and other materials relative to such "cash tender offer" or "exchange offer" as would be made available by Enron Oil & Gas Co. or by the persons or entities making such "cash tender offer" or "exchange offer" to the holders of shares of Enron Oil



DEC-12-2001 17:54 CORPORATE#LEGAL 7136465847 P.28/57

Stock generally; provided, that the Trustee shall not be required to transmit any such written information in violation of the applicable rules and regulations of the Securities and Exchange Commission, and

(b) the Trustee shall:

(i) Receive and tabulate detailed written instructions and directions from each Participant as to whether to tender or exchange the shares of Enron Oil Stock allocated to such Participant's Trust Account under the Plan and as to the time and manner of such tender or exchange, if so instructed and directed; and (ii) Tender or exchange Enron Oil Stock held under the Plan with respect to such "cash tender offer" or "exchange offer" only in accordance with written instructions and directions received from Participants.

Participants shall have the right to determine confidentially whether shares of Enron Oil Stock allocated to their Participant Trust Accounts and subject to the Plan will be tendered in a "cash tender offer" or "exchange offer". The Trustee shall administer the Trust in such a manner to ensure such confidential determination of Participants, except that after the termination of the cash tender offer or exchange offer the Company and the Administrative Committee shall have a right to information regarding any such determination to the extent necessary for the Company or the Administrative Committee to comply with their respective duties under the Plan, the Trust or applicable law which cannot be performed without that information.

If written instructions or directions are not timely received from a Participant, the shares of Enron Oil Stock allocated to his Trust Account under the Plan shall not be tendered or exchanged pursuant to each "cash tender offer" or "exchange offer". As to all unallocated Enron Oil Stock held by the Trustee, the Trustee shall tender or exchange the same proportion thereof as the Enron Oil Stock for which the Trustee has received instructions from Participants to tender bears to all Enron Oil Stock allocated to Participants' Trust Accounts. For purposes of this Subsection 6.6, the term "cash tender offer" shall include a tender offer for, or request or invitation for tenders of, shares of Enron Oil Stock in exchange for cash, as made to the Plan or to holders of shares of Enron Oil Stock generally; the term "exchange offer" shall include a tender offer for, or request or invitation for tenders of, any shares of stock in exchange for any consideration other than for all cash, as made to the Plan or to holders of shares of Enron Oil Stock generally.

In carrying out its responsibilities under this provision the Trustee may conclusively rely on information furnished to it by the Administrative Committee, including the names and current addresses



DEC-12-2001 17:55 CORPORATE#LEGAL

of Participants, the number of shares of Enron Oil Stock credited to Participant accounts, and the number of shares of Enron Oil Stock held by the Trustee that have not yet been allocated.

The Enron Oil Stock held by the Trustee pursuant to the provisions of the Plan shall be kept separate and apart from all other property belonging to or in the custody of the Trustee.

6.7 No provision of Sections 6.5 or 6.6 shall prevent the Trustee from taking any action relating to its duties under Sections 6.5 or 6.6 if the Trustee determines in its sole discretion that such action is necessary in order for the Trustee to fulfill its fiduciary responsibilities.

7. ARTICLE NINE is amended by adding the following paragraph after the last paragraph:

Except for the short term investment of cash, the Company has limited the investment power of the Trustee in Fund E to the purchase of Enron Oil Stock. The Trustee shall not be liable for the purchase, retention, tender or sale of Enron Oil Stock and the Company (which has the authority to do so under the laws of the state of its incorporation) agrees to indemnify the Trustee from any liability, loss and expense, including legal fees and expenses which the Trustee may sustain by reason of purchase, retention, tender of sale of Enron Oil Stock.

8. This Agreement is an amendment to the Trust Agreement, and the parties agree that all terms and provisions contained in the Trust Agreement shall remain in full force and effect, and without any change or modification, except as provided herein.

IN WITNESS WHEREOF, the parties have fully executed this Agreement as of the date first above written.

ENRON CORP.

By: [signature]

Title: Vice President, Human Resources

PDM

THE NORTHERN TRUST COMPANY

By: [signature]

Title: VICE PRESIDENT

9006338.PDM



DEC-12-2001 17:55 CORPORATE#LEGAL 7136465847 P.30/37

THIRD AMENDMENT TO
ENRON CORP. SAVINGS PLAN TRUST

This Agreement dated as of the lst day of January 1994, by and between Enron Corp., a Delaware corporation, herein referred to as the "Company", and THE NORTHERN TRUST COMPANY, an Illinois corporation, of Chicago, Illinois as Trustee, is an amendment to that certain Enron Corp. Savings Plan Trust Agreement made the first day of July, 1986 (the "Trust Agreement") between the parties.

WHEREAS, the Company and the Trustee have previously entered into the Trust Agreement; and

WHEREAS, Article Eleven provides that the Company may amend this Trust Agreement at any time with the consent of the Trustee and Article Nine provides that any action taken by the Company may be by a resolution of the Administrative Committee; and

WHEREAS, the Administrative Committee and the Trustee desire to amend certain provisions of the Trust Agreement, and agree as follows:

1. Section 1.18 of the Trust Agreement is amended in its entirety to read as follows:

> "1.18 'Company Stock' means any qualifying employer security as defined by Section 407(d)(5) of ERISA."

2. Article Four of the Trust Agreement is amended by adding the following provisions as the last two paragraphs of Article IV:

> "Subject to the provisions of this paragraph, if any shareholder of one class of Company Stock proposes to the Trust an exchange of shares of such stock held by the shareholder ("Shareholder Shares") for shares of another class of Company Stock held in Fund C under the Trust, the Administrative Committee shall have the sole responsibility for determining whether such an exchange will be made, and the number and designation of such shares of Company Stock to be exchanged. The Administrative Committee shall have sole responsibility for determining whether such stock received by the Trust in such an exchange is Company Stock, and for the Trust's compliance with Section 408(e) of ERISA if such an exchange is with a "party in interest" as defined in Section 3(14) of ERISA.

If the Administrative Committee determines that an exchange described in the previous paragraph will be made, the Administrative Committee shall direct the Trustee to make such exchange, and, if necessary to effect the transaction, to execute a written agreement pertaining to such exchange; such direction shall include (a) the number of shares to be exchanged, the price and the timing of such exchange, or (b) a formula using objective, nondiscretionary criteria by which such number of shares, price and/or timing are to be determined. After such an exchange, the Administrative Committee shall have the fiduciary responsibility for any decision to retain, tender, sell, convert or value the shares of Company Stock in Fund C. The Trustee shall not be liable for any action or inaction of the Administrative Committee or a Participant in any of the actions described in this paragraph."

3. Section 6.5 of the Trust Agreement is amended by substituting the following sentence for the eleventh sentence thereof:

"For purposes of this Section 6.5, the term 'cash tender offer' shall include a tender offer for, or request or invitation for tenders of, shares of Company Stock in exchange for cash, as made to the Trust or to holders of Company Stock generally; the term 'exchange offer' shall include a tender offer for, or request or invitation for tenders of, any shares of stock in exchange for any consideration other than for all cash, as made to the Trust or to holders of Company Stock generally, but shall not include any exchange of one class of Company Stock for another class of Company Stock held under the Trust."

4. The second sentence of the tenth paragraph of Article Nine is amended by substituting the following sentence:

"Except for its own negligence, willful misconduct or fraud, the Trustee shall not be liable for the purchase, retention, tender, vote, exchange, sale or valuation of Company Stock or for following a direction of the Administrative Committee or the participants, and the Company (which has the authority to do so under the laws of the state of its incorporation) agrees to indemnify the Trustee from any liability, loss, and expense, including legal fees and expenses which the Trustee may sustain by reason of purchase, retention, tender, vote, exchange, sale or valuation of Company Stock."

5. This Agreement is an amendment to the Trust Agreement, and the parties agree that all terms and provisions contained in the Trust Agreement shall remain in full force and effect, and without any change or modification, except as provided herein.

IN WITNESS WHEREOF, the parties have fully executed this Agreement as of the date first above written.

ADMINISTRATIVE COMMITTEE UNDER THE ENRON CORP. SAVINGS PLAN TRUST

By: [signature]
Title: Chairman

THE NORTHERN TRUST COMPANY

By: [signature]
Title: Vice President
FEB. 2, 1994

# FOURTH AMENDMENT
# TO
# ENRON CORP. SAVINGS PLAN TRUST
(Amended and Restated January 1, 1994.)

**THIS AGREEMENT** dated as of the 30th day of June, 1999, by and between **ENRON CORP.**, a Delaware corporation, herein referred to as the "Company", and **THE NORTHERN TRUST COMPANY**, an Illinois corporation of Chicago, Illinois (the "Trustee") is an amendment to the Enron Corp. Savings Plan Trust Agreement between the parties as amended and restated January 1, 1994 (the "Trust Agreement") and which Trust Agreement is an amendment and restatement of the trust agreement between the parties first made the first day of July, 1986.

**WHEREAS**, the Company and the Trustee have previously entered into the Trust Agreement; and

**WHEREAS**, Article Eleven provides that the Company may amend the Trust Agreement at any time with the consent of the Trustee and Article Nine provides that any action taken by the Company may be by a resolution of the Administrative Committee; and

**WHEREAS**, the Administrative Committee and the Trustee desire to amend certain provisions of the Trust Agreement, and agree as follows:

1. ARTICLE ONE is amended by adding a new Section 1.16 (and all subsequent sections are renumbered accordingly) as follows:

   '1.16 "Participant Directed Broker Account" means an account that is established at a broker which permits a Participant to exercise sole investment responsibility over the assets in such account, including directing the broker to make purchases and sales, as provided in Section 3.8;'

2. ARTICLE ONE, Section 1.18 (formerly Section 1.17) is amended by inserting ", a Participant Directed Broker Account" directly after "a Separate Investment Trust Account" as found on lines one and two thereof.

3. ARTICLE THREE, Section 3.1 is hereby amended by adding a new subsection "c" as follows:

   "(c) The Administrative Committee may direct in writing that the custody of additional assets of a Separate Account, including, but not limited to, a Separate Investment Account (other than those referred to in paragraphs (a) and (b) of this Section 3.1) or a Participant Directed Broker Account, be maintained with a Custodial Agent. In such event, the Administrative Committee shall approve, and direct the Trustee to enter into, a custody agreement with the Custodial Agent (which custody agreement may authorize the Custodial Agent to maintain custody of such assets with one or more subagents, including a broker or dealer registered under the Securities Exchange Act of

1934 or a nominee of such broker or dealer). The Custodial Agent shall have custodial responsibility for any assets maintained with the Custodial Agent or its subagents pursuant to the custody agreement. Notwithstanding any provision of this Agreement to the contrary, the Company agrees to indemnify and hold harmless the Trustee against any liability or loss or expenses which the Trustee may sustain by reason of acting in accordance with any directions of the Administrative Committee given pursuant to this Section 3.1(c) or by reason of acting in accordance with Section 3.8."

4. ARTICLE THREE is hereby amended by adding the following new Section 3.8:

"3.8 The Administrative Committee may choose to make available to Participants one or more Participant Directed Broker Accounts, which shall be subject to the following provisions:

(a) The A[illegible] Committee shall direct the Trustee to open the Participant Directed Broker Account with a broker in the name of the Trustee, for the benefit of the individual Participants who choose to make directed investments in such account. In accordance with Section 3.1(c), the Administrative Committee shall direct that the custody of the assets of the Participant Directed Broker Accounts be maintained by the broker as a Custodial Agent. The Administrative Committee shall be responsible for the choice of the broker, for monitoring the broker and the decision to retain the broker as custodian of the assets pursuant to 3.1(c). The broker shall be a broker or dealer registered under the Securities Exchange Act of 1934 or a nominee of such broker or dealer.

(b) Each Participant Directed Broker Account shall be deemed to be a Separate Investment Account hereunder for which the Participant shall have sole investment responsibility. With respect to his or her Participant Directed Broker Account, the Participant shall have all of the investment authorities and responsibilities which an Investment Advisor would have with respect to a Separate Investment Account, provided, however, that the Administrative Committee may establish restrictions to be applied with respect to the investment of a Participant Directed Broker Account. The Participant shall direct the broker with respect to such investments, provided, however, that notwithstanding any ~~other~~ provisions of this Agreement, with notice to the Participant, the Administrative Committee may direct the Trustee ~~with respect to~~ investments held in a Participant Directed Broker Account. The Trustee shall have no responsibility to make any investment review of, or consider the propriety of holding or selling or the voting of any assets held in a Participant Directed Broker Account.

(c) With respect to assets held in a Participant Directed Broker Account, the Trustee may conclusively rely upon data provided by the Custodial Agent for the Participant Directed Broker Account relating to the valuation of such assets and transactions involving such assets."

**IN WITNESS WHEREOF,** the Company and the Trustee have caused this First Amendment to be executed and their respective corporate seals to be affixed and attested by their respective corporate officers on the day and year first written above.

**ENRON CORP.**

By: THE ADMINISTRATIVE COMMITTEE UNDER THE ENRON CORP. SAVINGS PLAN TRUST AS AMENDED AND RESTATED

By: [signature]

Its: ____________________

ATTEST

[signature]

Its: Sr. Director, Benefit

**THE NORTHERN TRUST COMPANY**

By: ____________________

Its: ____________________

ATTEST:

____________________

Its: Assistant Secretary