Slip Copy                                                                                                                   Page 1
**(Cite as: 2004 WL 407007 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.

In re **SEARS,** ROEBUCK & CO. **ERISA** LITIGATION.

**No. 02 C 8324.**

March 3, 2004.

Marvin Alan Miller, Jennifer Winter Sprengel, Christopher B Sanchez, Miller Faucher and Cafferty, LLP, Chicago, IL, Steven E Cauley, Curtis L Bowman, J Allen Carney, Tiffany Wyatt, Melissa Beard Glover, Cauley Geller Bowman and Coates, LLP, Little Rock, AK, for Plaintiff.

Harold C. Hirshman, Christopher Qualley King, John Claiborne Koski, Elissa Eun Choo Rhee-Lee, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL, Jeffrey C Fourmaux, Samuel M Bayard, Wachtell, Lipton, Rosen & Katz, New York, NY, for Defendants.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

\*1 Plaintiffs, participants in a Sears Employee Retirement Income Security Act of 1974 ("ERISA") plan, sued Defendants, Sears, Roebuck & Co., Alan Lacy, Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter, the Sears Board of Directors, unnamed members of the ERISA plan Investment Committee, and the Investment Committee, for violations of ERISA. Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the following reasons, that motion is granted in part and denied in part.

*LEGAL STANDARD*

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir.2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir.1995).

Generally, matters outside the pleadings cannot be considered on a motion to dismiss. *See, e.g., Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs Local Union 150,* 335 F.3d 643, 647 (7th Cir.2003). However, documents that a defendant attaches to a motion to dismiss may be considered if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir.2002).

*BACKGROUND*

The facts, for the purposes of this motion, are taken as true from Plaintiffs' Complaint. Plaintiffs, Bill Kehr, Michael G. Cheperka, Kenneth Hawkins, and Margaret Villano, are participants in a 401(k) Savings Plan (the "Plan"). Defendant Sears, Roebuck, and Co. ("Sears") sponsored and administered the Plan. Another Defendant, the Investment Committee, had the authority to choose the type of investment options, a particular investment style, and make other investment decisions with respect to the Plan. Defendant Alan Lacy was, at all relevant times, the Chief Executive Officer, President, and Chairman of the Board at Sears. The Investment Committee distributed Summary Plan Descriptions and Plan prospectuses to all Plan participants, pursuant to relevant federal statutes.

Defendants--Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter--who, at all relevant times, were high-ranking Sears executive officers, were members of the Investment Committee, along with thirty unnamed fiduciary Defendants (collectively the "Committee Defendants"). The named members of the Investment Committee had substantial knowledge of Sears' business plans, operations, finances, and access to internal company reports and memoranda. These Defendants were also familiar with Sears' accounting and financial practices.

**\*2** Defendants--Hall Adams, Jr., Brenda Barnes, James Cantalupo, Donald Carty, W. James Farrell, Michael Miles, Hugh Price, Dorthy Terell, and Raul Yzaguire--were, at all relevant times, members of the Sears Board of Directors (collectively the "Director Defendants"). The Sears Board of Directors is the primary personification through which Sears effectuated its Plan-related duties.

*Specific Plan Provisions*

The Plan allows eligible employees to contribute to the Plan through payroll deductions. Participants may then direct their investment into one or more of several funds available under the Plan. One of the available funds is the Company Stock Fund.

The Plan designates Sears as a named fiduciary, but only for the non- investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock fund. The Board of Directors is given the authority to appoint members to the Investment Committee. § 1.3.

The Plan also requires that a Company Stock Fund must exist, which is "designed to invest exclusively in [Sears] Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6.1. Employer matching contributions made in cash must be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund.

The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3. However, to the extent that the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5.

*Sears' Financial Statements*

In financial reports filed with the Securities and Exchange Commission ("SEC"), Sears misrepresented its true financial health and profitability. Specifically, in Sears' 2001 annual report, Sears stated on SEC Form 10-K that its provisions for uncollectible accounts were calculated to be $1.344 billion in 2001. Sears also represented that it maintained an adequate allowance for its uncollectible accounts to reflect losses inherent in the owned portfolio. Sears also filed numerous press reports stating that the company was extremely profitable, revenue was up, and earnings were expected to increase.

On May 7, 2002, Sears then filed its first quarter financial report on SEC Form 10-Q. The report indicated that the provisions for uncollectible accounts increased from $190 million to $371 million in the first quarter. This change was the result of additional credit card receivable balances recorded when Sears consolidated its securitization structure for financial reporting purposes in the second quarter of 2001. Once again, press reports issued by Sears projected substantial growth. Based on all this information, and in spite of a general economic downturn throughout the country, Sears stock reached $59.90 per share in the early summer of 2002.

**\*3** On August 9, 2002, Sears filed another quarterly Form 10-Q report with the SEC. This report stated that Sears was making a conservative accounting change in determining its uncollectible account allowances. In October of 2002, Sears began to issue a series of reports stating that the financial reports as originally reported for the first and second quarters of 2002 were incorrect. Sears explained that it was amending its previous reports, under interpretive guidance from the SEC. The provision for uncollectible accounts were misstated and were required to be significantly increased, while net operating income was significantly reduced. Thereafter, Sears filed public statements attesting to similar facts.

Sears also reported similar problems with its credit card division. On October 4, 2002, Sears issued a press release stating that Defendant Liska would take over the credit card division. On October 7, 2002, Sears unexpectedly warned that its third quarter earnings would fall below expectations because of a profit slowdown in its credit card division. This forecast was true, and Sears' earnings went down significantly in the third quarter of 2002. In reaction to all of Sears' announcements, Sears stock price dropped significantly. On October 17, 2002, Sears stock dropped from $33.95 a share to $23.15 a share, on trading of 36 million shares.

Just before the Class Period began, on January 17, 2002, Sears had over $1.1 billion of assets, representing one-third of all Plan assets, in the

Slip Copy                                                                                                                                   Page 3
**(Cite as: 2004 WL 407007 (N.D.Ill.))**

Company Stock Fund. When the stock price dropped, Plaintiffs suffered losses resulting from their own investments in the Company Stock and matching investments made by Sears.

*ANALYSIS*
*Plan Investment in Sears Stock Claims*

Defendants first argue that Plaintiffs' claims against Sears and the Committee Defendants based on Plan investments in Sears Stock (Counts I, II, and VI) fail to state a claim. According to Defendants, the Amended Complaint fails to establish that Sears was a fiduciary with respect to investment decisions; and the actions claimed to be in breach of the fiduciary duty were expressly permitted by ERISA and required by the Plan. The Defendants also claim that even if the Committee Defendants had some discretion to override the terms of the Plan, the Complaint fails to establish the Committee Defendants abused their discretion in following Plan terms. Finally, the Defendants argue that Plaintiffs failed to state a claim for a breach of the duty of loyalty.

*Sears as a Fiduciary*

A claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary. *Plumb v. Fluid Pump Serv., Inc.,* 124 F.3d 849, 854 (7th Cir.1997) (*Plumb* ). Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

**\*4** 29 U.S.C. § 1002(21)(A). Under this definition, an entity "may be an ERISA fiduciary for some purposes, but not others." The first place courts look to determine whether a defendant is a fiduciary is the plan documents. *Plumb,* 124 F.3d at 854.

The Sears Plan designates Sears as a named fiduciary for the non-investment operations of the Plan. In addition, while Plan § 1.3 delegates responsibility for Plan investment decisions to the Investment Committee, including those related to the Sears Stock Fund, numerous places in the Plan place an "overarching fiduciary duty" on Sears in discharging "its duties," in accordance with Plan § 13.6. Plaintiffs also allege in their Amended Complaint that Sears, as the Plan administrator, was a fiduciary. Thus, the determination of whether Sears was a fiduciary with respect to investment decisions is a question of fact that is not properly resolved by a motion to dismiss. Accordingly, to the extent Defendants seek to dismiss Sears as a fiduciary with respect to investment decisions, in Counts I, II, and VI, that motion is denied.

*Discretion to Override the Plan*

Generally, an Employee Stock Ownership Plan ("ESOP") is an ERISA plan "designed primarily to invest in qualifying employer securities," such as shares of stock in the company sponsoring the plan. 29 U.S.C. § 1106(d)(6)(A). ESOPs are generally exempt from the general duty to diversify plan assets and the duty of prudence insofar as it requires diversification. 29 U.S.C. § 1104(a)(2). Despite this statute, "there may come a time when such investments [in ESOPs] may no longer serve the purpose of the" ERISA plan. *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995) (*Moench* ).

Any inquiry into the investments of an ESOP fiduciary is limited. "[A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Moench,* 62 F.3d at 571. Some amount of discretion by the entity controlling the plan is required to invoke a fiduciary duty. *Pohl v. Nat'l Benefits Consultants, Inc.,* 956 F.2d 126, 129 (7th Cir.1992).

Here, the Plan set up a Company Stock Fund, which was "designed to invest exclusively in Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6.1. Employer matching contributions made in cash are then required to be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund. The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3.

However, to the extent the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock

Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5. Moreover, 29 U.S.C. § 1104(a)(1)(D) only required the Investment Committee to follow the Plan "insofar as such documents and instruments were consistent with the provisions of" ERISA. Plaintiffs allege that "blindly following" the Plan provisions requiring matching contributions to be made in Sears stock would be imprudent, in violation of ERISA fiduciary duties, when the Investment Committee knew or should have known the price of the stock was fraudulently inflated. Accordingly, Plaintiffs have stated a claim against the Investment Committee for causing the Plan to continue to acquire and invest in Company matching contributions of Sears stock.

 *5 Plaintiffs have also stated a claim for their remaining investment plan allegations. Plaintiffs have alleged that the Investment Committee knew or should have known the true financial condition of the Sears credit business and that Sears misrepresented this condition. In contrast to Defendants' authority of *Crowley v. Corning, Inc.,* 234 F.Supp.2d 222, 230 (W.D.N.Y.2002), Plaintiffs have not simply rested on this allegation. Instead, Plaintiffs' Complaint alleges that some of the members of the Investment Committee were senior executives with substantial knowledge of the business plans, operations, and finances of Sears. These executives were in a position to know that Sears stock was not a prudent investment because it was inflated through Sears' inaccurate accounting practices. The Investment Committee thereafter kept this knowledge secret and knowingly disseminated material that was inaccurate and misleading to Plan participants.

 Defendants also rely on *Hull v. Policy Mgmt. Sys. Corp.,* 2001 U.S. Dist. LEXIS 22343, No. 3:00-778-17, at * 25-27 (D.S.C. Feb. 9, 2001), for the proposition that an investment committee cannot be forced to acquire inside information, in violation of federal securities laws, to determine if the stock was irregularly inflated. However, the *Hull* plaintiffs did not allege that the investment committee had actual knowledge of any misinformation. On the contrary, here, the Plaintiffs have specifically alleged that the Investment Committee knew or should have known that investing in Sears stock was imprudent. Under these circumstances, courts have found that defendants "cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin v. Rots,* 278 F.Supp.2d 853, 878 (E.D.Mich.2003) (*"Rankin"*); see also *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 765 (S.D.N.Y.2003) (*"In re WorldCom"*) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

*Duty of Loyalty*

 Plaintiffs have also sufficiently stated a cause of action for breach of the fiduciary duty of loyalty under ERISA. ERISA specifically provides that a sponsor of an employee benefit plan may appoint its own officers to administer the plan. 29 U.S.C. § 1108(c)(3). However, Plaintiffs have alleged that the officers who were appointed to the Investment Committee could not be loyal to Plan participants because the officers' compensation was significantly tied to the price of Sears stock. Therefore, the officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities. Defendants fail to present any authority that these allegations are insufficient to withstand a motion to dismiss.

*Concealment Claims*

 Defendants also argue that the concealment allegations in Count I should be dismissed because those claims have not been pled with particularity, in accordance with Federal Rule of Civil Procedure 9(b), and that any concealment was not made in a fiduciary capacity. Additionally, Defendants state that Plaintiffs' claims alleging that Defendants failed to disclose non- public information fails to state a claim.

 *6 Rule 9(b) applies to ERISA claims that allege misrepresentations. *Cook v. Exelon Corp.,* 2002 U.S. Dist. LEXIS 18125, at *13 (N.D.Ill. Sept. 26, 2002); *Adamczyk v. Lever Bros. Co.,* 991 F.Supp. 931, 939 (N.D.Ill.1997). To satisfy Rule 9(b), Plaintiffs must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Viacom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 777 (7th Cir.1994).

 Plaintiffs' allegations meet these requirements. According to the Complaint, the Investment Committee and its members were making the misrepresentations. The misrepresentations then occurred in public financial statements filed with the SEC during the class period, with key

Slip Copy                                                                                                                  Page 5
**(Cite as: 2004 WL 407007 (N.D.Ill.))**

misrepresentations being made during the first and second quarters of 2002. The alleged misrepresentations stated that Sears' credit card uncollectible accounts method adequately allowed for losses. Finally, the misrepresentations were communicated to Plaintiffs in financial disclosure statements and prospectuses given to Plan participants.

Defendants also contend that any statement made in SEC filings cannot be said to have been made in a fiduciary capacity. However, whether the Investment Committee, based on their status as Sears officers, knew or should have known of the SEC misrepresentations published by Defendants is a question of fact. See In re WorldCom, Inc., 263 F.Supp.2d at 765 ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

*Failure to Disclose Claims*

Defendants argue that absent a specific ERISA requirement mandating a duty to disclose pertinent information, the fiduciary duty provisions of ERISA do not require a plan sponsor to disclose non-public information. See Ehlman v. Kaiser Found. Health Plan, 198 F.3d 552, 555-56 (5th Cir.2000). However, Plaintiffs do not simply allege that Defendants failed to disclose non-public information. Instead, Plaintiffs claim that Defendants kept material information secret, while knowingly conveying misleading information that both incorrectly stated the proper accounting of key accounts, such as account receivables, and misstated financial statements. Federal securities laws require that this information must be disseminated to plan participants, and; as mentioned earlier, Defendants may be subject to ERISA liability if they knowingly fail to disclose adverse information. See In re WorldCom, 263 F.Supp.2d at 767, n. 14.

Defendants, in addition to their previously discussed arguments, seek to dismiss Count VI, Plaintiffs' failure to diversify claim, for lack of loss causation. Specifically, Count VI seeks recovery exclusively for Sears stock held by the Plan on and after January 17, 2002.

Plaintiffs must allege a causal connection between the alleged breach and the alleged losses incurred by the Plan. See, e.g., McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995). According to Defendants, this causal connection is non-existent. If the Investment Committee, or any other Defendant, knew about the allegedly true financial condition of Sears, that information must be disclosed before the Investment Committee could act on it. See generally United States v. O'Hagan, 521 U.S. 642, 651-52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). Nothing in ERISA would exempt Defendants from this requirement. 29 U.S.C. § 1144(d). Therefore, if Defendants legally disclosed the information and then attempted to sell existing Plan holdings in Sears stock, the price would have dropped anyway; and the Plaintiffs would have suffered losses.

*7 This theory, known as the "efficient capital markets hypothesis," has been embraced by both the Supreme Court and the Seventh Circuit. Basic, Inc. v. Levinson, 485 U.S. 224, 246-47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); West v. Prudential Secs., Inc., 282 F.3d 935, 938 (7th Cir.2002). Plaintiffs, however, properly argue that issues of loss causation are factual matters not proper to resolve on a motion to dismiss; thus, Plaintiffs have sufficiently pled loss causation.

Furthermore, Plaintiffs also allege that publicly known macroeconomic facts were available to Defendants before the start of the class period. According to Plaintiffs, these factors, including increased competition and the general downturn of the economy, indicated there was no reason for the Plan to invest so heavily in Sears stock. Whether these macroeconomic factors existed and their effect on Sears stock are questions of fact. Therefore, Defendants' Motion to Dismiss Count VI is denied.

*Failure to Monitor*

Defendants next argue that the Complaint fails to state a claim against Sears, Lacy, or the Director Defendants based on their alleged failure to monitor the Investment Committee defendants and provide them with information. First, Defendants contend that the Amended Complaint fails to show Lacy was a fiduciary with respect to monitoring the Committee Defendants. Second, Defendants claim that Plaintiffs fail to plead any of the relevant Defendants breached their fiduciary duties to monitor the Investment Committee. Finally, Defendants argue Plaintiffs fail to state a claim based on Defendants' failure to provide non-public information to the Investment Committee.

*Lacy as a Fiduciary*

As stated earlier, a claim for a breach of a fiduciary

duty under ERISA is only valid against a fiduciary; and a person may be an ERISA fiduciary for some purposes but not others. *Plumb, 124 F.3d at 854*. Under ERISA guidelines, a fiduciary who delegates responsibility or appoints other fiduciaries has a duty to monitor those delegates. 29 C.F.R. § 2509.75-8, FR-17; *see also Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 736 (7th Cir.1986)* (explaining that corporations may have a duty to monitor the actions of the fiduciaries administering the plan); *Leigh v. Engle, 727 F.2d 113, 135 (7th Cir.1984)* (holding that fiduciaries have a duty to monitor their appointees).

Here, Plaintiffs allege that the Plan gave Sears, who acted through its Board of Directors, the authority to appoint members to the Investment Committee. Plan § 1.3. Defendants argue that Plaintiffs allege no facts that show how Lacy or the other Director Defendants functioned as fiduciaries with regard to the appointment or monitoring of the Investment Committee. However, generally, when considering a motion to dismiss, Plaintiffs only need to place Defendants on notice of the claims. Therefore, Plaintiffs have alleged that Lacy and the other Director Defendants are fiduciaries with respect to monitoring the Investment Committee.

*Breach of Duty to Monitor*

**\*8** Defendants next argue that Plaintiffs failed to state a breach of any duty to monitor the Investment Committee. Under 29 C.F.R. § 2509 .75-8, FR-17, the duty to monitor requires that:

> [a]t reasonable intervals the performance of ... fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

Here, Plaintiffs allege that the relevant Defendants, the fiduciaries who appointed the Investment Committee members, failed to monitor the performance of the Investment Committee. Specifically, Plaintiffs allege that these Defendants, members of the Board of Directors, knew or should have known that offering the Company Stock Fund was an imprudent investment, and that they should have monitored the Investment Committee and its members. Whether the relevant Defendants--Sears, Lacy, and the other Directors--monitored the Investment Committee to determine if the Committee was not acting consistently with ERISA is a question of fact. Accordingly, Plaintiffs have stated a claim for breach of duty for the failure to monitor the Investment Committee.

Defendants also claim that no breach of the duty to monitor can arise from the failure to provide non-public information to the Investment Committee. However, as discussed earlier, defendants "cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin, 278 F.Supp.2d at 878*. This proposition also holds true for Lacy and the other Director Defendants, who Plaintiffs allege had knowledge of the accounting irregularities at Sears. Therefore, Defendants' Motion to Dismiss Count VI on this ground is denied.

*Co-Fiduciary Liability*

A co-fiduciary may be liable for another's breach of fiduciary duty if he: (1) fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; and (2) has knowledge of the breach committed by another fiduciary and takes no reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a)(2)-(3). Thus, as the both sides agree, a primary breach must exist to plead a co-fiduciary liability claim. Here, primary breaches have been upheld against Sears, Lacy, the Director Defendants, the Investment Committee, and the individual Investment Committee members.

Defendants argue that Plaintiffs have impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable efforts to remedy a knowledge of the breach. Plaintiffs allege that all fiduciaries breached their duties, as required under § 1105(a)(2)-(3). However, Count V of Plaintiffs' Complaint does not contain allegations that put Defendants on notice of the particular charges against each Defendant. Accordingly, Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this Count.

*Prohibited Transaction Claim*

**\*9** Defendants next move to dismiss Plaintiffs' prohibited transaction claim, Count III of the Complaint, in that there are no allegations in the Complaint that state the Plan purchased shares of Sears stock for more than the market price. In response, Plaintiffs argue that because Defendants purchased stock with knowledge it was inflated, the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy    Page 7
(Cite as: 2004 WL 407007 (N.D.Ill.))

Plan purchased stock for more than adequate consideration.

Fiduciaries are not permitted to enter into certain prohibited transactions, such as purchasing securities for more than adequate consideration. *See* 29 U.S.C. § 1106-1108. Defendants argue that "in the case of a security for which there is a generally recognized market," adequate consideration means paying "the price of the security prevailing on a national securities exchange." 29 U.S.C. § 1002(18)(A)(i). Defendants further contend the Sears stock was purchased on the New York Stock Exchange. However, Plaintiffs allege the transaction was prohibited because the market price of Sears stock was inflated, without knowledge by the general public of the fair market value of the stock, by Defendants' fraud in manipulating financial reports. This allegation places Defendants on notice of the claim being asserted. Therefore, Defendants' Motion to Dismiss Plaintiffs' prohibited transaction claim is denied.

## *CONCLUSION*

For the foregoing reasons, the Defendants' Motion to Dismiss is denied in part and granted in part. Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this count.

2004 WL 407007 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works