UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


In Re Xcel Energy, Inc.,        Master File: Civil 02-2677(DSD/FLN)
Securities, Derivative &         MDL No. 1511
"ERISA" Litigation
----------------------
This Document Relates to Case
Numbers: 03-2218 & 03-2219, the
"ERISA Actions"


**ORDER**


This matter is before the court upon the joint motions of defendants to dismiss the actions[1] for failure to state a claim upon which relief may be granted.  For the following reasons, defendants' motions are granted in part and denied in part.


**BACKGROUND**

These actions stem from a drastic reduction in the market value of Xcel Energy, Inc. ("Xcel") stock following Xcel's disclosure of adverse information about its financial ties to its subsidiary, NRG Energy, and a Securities Exchange Commission ("SEC") investigation of Xcel and its subsidiaries relating to

---

[1] The two actions at issue here were consolidated with a group of securities fraud actions and a shareholder derivative action and transferred to this district for pretrial adjudication by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407.

alleged round-trip trading of energy.[2] Plaintiffs Gene Barday, Jr., Donald Newcome and Leonard Banks are all employees of an Xcel subsidiary. Barday individually, and Newcome and Banks jointly, filed suit naming Xcel, its directors and certain of its officers as defendants. Plaintiffs claim that their various retirement plans, which were invested entirely or in part in Xcel securities, suffered severe losses as result of the precipitous drop in Xcel share value. They allege defendants breached their fiduciary duties and violated the disclosure requirements of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001 et seq.

**I.    The Parties**

Defendant Xcel is a Minnesota corporation based in Minneapolis, Minnesota that provides electricity and natural gas to residential and commercial customers in twelve western and midwestern states through its regulated utilities companies. Xcel is publicly traded on the New York Stock Exchange. The company administers employee benefit plans as defined by ERISA. See 29 U.S.C. § 1002.

---

[2]  Round-trip trades or wash sales occur when an energy producer or wholesaler purchases energy and then sells it back at the same price. Round trip trades are considered sham transactions because they artificially inflate sales revenue for each company without impacting profitability.

2

Defendant Wayne H. Brunetti has at various times been chairman of the board of directors, president and chief executive officer of Xcel, as well as an officer and director of its subsidiaries New Century Energies and Public Service Company of Colorado ("PSCo").

Defendants Douglas W. Leatherdale, C. Coney Burgess, A. Barry Hirschfield, Margaret R. Preska, Allan L. Schuman and W. Thomas Stephens are directors of Xcel and members of the Xcel Finance Committee, which plaintiffs allege has authority over the plans in question.

Defendants Giannantonio Ferrari, Albert F. Moreno, A. Patricia Sampson, Rodney E. Slifer, James J. Howard, David A. Christensen and Roger R. Hemminghaus are or were directors of Xcel at times relevant to the present litigation.

Defendants Edward J McIntyre and David E. Ripka were chief financial officer and chief accounting officer, respectively, of Xcel during times relevant to the litigation.

Plaintiff Barday is a Colorado resident and an employee of Xcel Subsidiary Public Service Company of Colorado ("PSCo"). Barday is a participant in the Xcel Energy 401(k) Savings Plan ("Xcel 401(k)"). Plaintiff Newcome is also a Colorado resident PSCo employee. He participates in the NCE Energy Employees' Savings and Stock Ownership Plan for Bargaining Unit Employees

and Former Non-Bargaining Unit Employees ("ESOP"). Plaintiff Banks resides in Colorado and is employed by PSCo as well. He is a participant in both the Xcel 401(k) and the ESOP plans.

## II. The Plans

The plans at issue in this litigation are the Xcel 401(k) and the ESOP. Both plans are defined contribution plans and eligible individual account plans. As defined contribution plans, the plans provide an individual account for each plan participant based on that participant's contributions and company matching contributions. See 29 U.S.C. §§ 1002(34) and 1107(d)(3). Each of the plans includes an ESOP component and a non-ESOP component. An ESOP is an employee stock ownership plan that is designed to invest "primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6). The non-ESOP components of the plans allow participants to contribute a portion of their pay to various investment funds, including an Xcel stock fund, on a pre-tax basis to provide for retirement. Participants choose the fund or funds in which their contributions are to be invested.

Each plan also calls for the company to make matching contributions. Company contributions to the ESOPs are made in Xcel stock or cash to be invested in Xcel stock. Contributions to the non-ESOP component are either made in cash or company

4

stock, if the employee has chosen that particular investment.

The Xcel 401(k) plan identifies three plan fiduciaries: the company, an appointed committee and the plan trustee.[3] The ESOP plan identifies two fiduciaries: the company and the trustee. The plans identify the company as plan administrator.

## III. The Dramatic Decline in Xcel Stock Value

On July 25, 2002, Xcel released its second quarter results and made public for the first time the existence of cross default provisions closely tying its fortunes to its financially beleaguered subsidiary, NRG. Xcel stock suffered an immediate price drop of approximately thirty-six percent. Xcel ultimately took a loss of over $2 billion on its NRG investment. It was also forced to renegotiate its own credit facilities on less favorable terms, eventually paying off and closing one of the $400 million credit agreements. Xcel's directors also cut the annual dividend in half.

Immediately after Xcel revealed the existence and possible impact of the cross default provisions, it informed analysts that the SEC and the Commodities Futures Trading Commission ("CTFC") had issued it and others subpoenas in their investigations of the round-trip trades between PSCo and another

---

[3] The trustees of the two plans are not parties in the litigation.

energy trader.  On July 29, 2002, the first day after the investigations were revealed, the trading price of Xcel shares dropped approximately twenty-five percent.  That decline followed the thirty-six percent drop that occurred the previous trading day, July 26, 2002.

## IV.  Xcel's Public Statements

Plaintiffs allege that defendants, or some of them, knew of the significant risks posed to Xcel stock value by the NRG-related cross default provisions and the round-trip trading. Like the plaintiffs in the securities fraud action joined in this multidistrict litigation, plaintiffs allege that defendants failed to disclose material information and through press releases, other public statements and various SEC filings, misled and ultimately defrauded the investment community, including plaintiffs and other plan participants.

## V.  The Claims

The gravamen of plaintiffs' complaint is that defendants knew or should have known of various risks to plan participants who were investing in Xcel stock through the plans.  Plaintiffs allege that as plan fiduciaries, defendants were obligated to invest plan funds prudently and with only the interests of plan participants in mind, diversify plan investments, monitor individuals assigned fiduciary duties, investigate matters

6

posing significant risk to the plans, and disclose material adverse information to plan participants. Plaintiffs claim defendants failed in all of these duties, allowing the plans and the plan participants to continue investing in Xcel stock when it was no longer prudent to do so, thereby breaching their fiduciary duties.

## DISCUSSION

### I. Legal Standards

#### a. Motions to Dismiss

Defendants move to dismiss the complaints for failure to state a claim upon which relief may be granted and related pleading infirmities. On a motion to dismiss for failure to state a claim, the court typically must take the allegations in the complaint as true, view the complaint in the light most favorable to the plaintiff and dismiss the action "'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) (quoting Hishun v. King & Spalding, 467 U.S. 69, 73 (1984)).

Pursuant to Rule 8, the complaint need only set forth the basis of the court's jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for

judgment. Fed. R. Civ. P. 8(a). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct" and all pleadings are to be construed in a manner resulting in substantial justice. See Fed. R. Civ. P. 8(e) & (f). Finally, "factual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests." Mountain View Pharmacy v. Abbott Labs., 630 F.2d 1383, 1388 (10th Cir. 1990).

b.    Count I: Breach of Fiduciary Duty Under ERISA

Count I of each complaint alleges breach of fiduciary duty under 29 U.S.C. §§ 1104 & 1109 and breach of co-fiduciary duty under 29 U.S.C. § 1105. To plead breach of fiduciary duty under ERISA, a plaintiff must allege that 1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty. See 29 U.S.C. § 1109. An ERISA fiduciary may be "named in the plan instrument, or ... identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2). Alternatively, a person may be deemed a fiduciary on the basis of his or her functional authority and control relative to the plan. 29 U.S.C. § 1002(21)(A); Mertens v. Hewitt Assoc., 508 U.S. 248, 262 (1993). Generally, a

8

fiduciary is one who exercises discretionary control over some aspect of the management or administration of an ERISA plan, or any control whatsoever over plan assets.  See <u>Bd. of Trs. of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.</u>, 237 F.3d 270, 273 (3d Cir. 2001) (construing 29 U.S.C. § 1002(21)(A)).  "[A] fiduciary's obligations can apply to managing, advising, and administering an ERISA plan...."  <u>Pegram v. Herdrich</u>, 530 U.S. 211, 223 (2000).

To determine whether a particular act is undertaken within the scope a fiduciary responsibility, the court begins with the common law of trusts.  <u>See</u> <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 342, 447 (1999).  However, unlike the law of trusts, ERISA permits a fiduciary to operate in multiple roles and "wear many hats."  <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 284 F. Supp. 2d 511, 546 (S.D. Tex. 2003).  Thus, not every action of an ERISA fiduciary that affects a plan participant need be undertaken in the participant's best interest.  <u>See</u> <u>id.</u> at 550. "When making fiduciary decisions, however, a fiduciary may wear only his fiduciary hat."  <u>Id.</u>

The principal duties owed by ERISA fiduciaries are loyalty and prudence.  The duty of loyalty requires that the fiduciary discharge his duties "solely in the interests of the

participants and beneficiaries...." 29 U.S.C. § 1104(a)(1).
The duty of prudence requires that the fiduciary act "with the
care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use...." 29 U.S.C. §
1104(a)(1)(B). Prudence is measured by an objective standard.
Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955 (D.C. Cir.
1985).

        Other fiduciary obligations required by ERISA are the duties
to diversify and to comply with plan documents and instruments.
See 29 U.S.C. § 1104(a)(1)(C) and (D). The duty to diversify is
limited in three ways. First, plan investments must be
diversified unless it is clearly prudent not to diversify. 29
U.S.C. § 1104(a)(1)(C). Second, in the case of an ESOP, when
ownership of company stock is a principal purpose of the plan,
fiduciaries are generally not obligated to diversify unless the
failure to diversify would not be in the best interest of plan
participants. See 29 U.S.C. § 1104(a)(2); see also Eaves v.
Penn, 587 F.2d 453, 459 (10th Cir. 1978) ("the structure of
[ERISA] itself requires that in making an investment decision of
whether or not a plan's assets should be invested in employers
[sic] securities, an ESOP fiduciary, just as fiduciaries of
other plans, is governed by the 'solely in the interest' and

'prudence' tests of §§ 404(a)(1)(A) and (B)"). Third, fiduciaries may be absolved of liability where a plan participant's exercise of individual control over the assets of an individual account resulted in a loss. 29 U.S.C. § 1104(c)(1)(B).

The duty to follow the directives of the plan documents is limited only by the general constraints of ERISA. The fiduciary must discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). "[T]rust documents cannot excuse [fiduciaries] from their duties under ERISA, and ... trust documents must generally be construed in light of ERISA's policies." Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 568 (1985).

Two other duties of significance to this action are the power to appoint and remove plan fiduciaries and the duty to disclose relevant information to plan participants. A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996). Implicit in the fiduciary duties attaching to persons empowered to appoint and

11

remove plan fiduciaries is the duty to monitor appointees. <u>See</u> <u>id.</u>; <u>In re Enron</u>, 284 F. Supp. 2d at 553. The scope of the duty to monitor appointees is relatively narrow. <u>See</u> <u>Coyne</u>, 98 F.3d at 1466 n.10; <u>Enron</u>, 284 F. Supp. 2d at 554-55.

The duty of disclosure under ERISA has been described as "an area of developing and controversial law." <u>In re Enron</u>, 284 F. Supp. 2d at 555. Under the common law, a fiduciary's duty to disclose was generally triggered by a specific request from a beneficiary. <u>See</u> Restatement (Second) of Trusts § 173. ERISA expands a fiduciary's duty to disclose. For example, once one who is acting in a fiduciary capacity endeavors to discuss the plan, he may "not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan." <u>In re Enron</u>, 284 F.Supp. 2d at 555. In short, "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1)...." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 506 (1996).

Some courts have gone further, finding that a fiduciary may have an affirmative duty to disclose material information about which a plan participant would be unlikely to inquire. <u>See</u> <u>Watson v. Deaconess Waltham Hosp.</u>, 298 F.3d 102, 114 (1st Cir. 2002); <u>Griggs v. E.I. DuPont DeNemours & Co.</u>, 237 F.3d 371, 380-81 (4th Cir. 2001); <u>Bowerman v. Wal-Mart-Stores, Inc.</u>, 226

12

F.3d 574, 590 (7th Cir. 2000); <u>Bins v. Exxon Co. U.S.A.</u>, 220
F.3d 1042, 1048-49 (9th Cir. 2000) (en banc); <u>Krohn v. Huron
Mem'l Hosp.</u>, 173 F.3d 542, 547-48 (6th Cir. 1999); <u>Schmidt v.
Sheet Metal Workers' Nat. Pension Fund</u>, 128 F.3d 541, 546-47
(7th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1073 (1998); <u>Shea v.
Esenstein</u>, 107 F.3d 625, 629 (8th Cir. 1997), <u>cert. denied</u>, 522
U.S. 914 (1997); <u>Glaziers & Glassworkers Union Local No. 252
Annuity Fund v. Newbridge Sec., Inc.</u>, 93 F.3d 1171, 1181 (3d
Cir. 1996).  One of the strongest assertions of an affirmative
duty to disclose is found in <u>Anweiler v. Am. Elec. Power Svc.
Corp.</u>, 3 F.3d 986, 991 (7th Cir. 1993).  There the court stated
"[f]iduciaries must also communicate material facts affecting
the interests of beneficiaries.  This duty exists when a
beneficiary asks for information, and even when he or she does
not."  <u>Id.</u> (citations omitted).  The Third Circuit has held that
a plan fiduciary has "'an affirmative duty to inform when the
[fiduciary] knows that silence might be harmful.'"  <u>Adams v.
Freedom Forge Corp.</u>, 204 F.3d 475, 480 (3d Cir. 2000) (quoting
<u>In re Unisys Corp. Retiree Med. Benefits "ERISA" Litig.</u>, 57 F.3d
1255, 1262 (3d Cir. 1995), <u>cert. denied</u>, 517 U.S. 1103 (1996)).

Other courts have limited the duty to disclose in the
absence of a specific inquiry to circumstances where the

information in question would have an "extreme impact" on plan beneficiaries. <u>Ehlmann v. Kaiser Found. Health Plan of Tex.</u>, 198 F.3d 552, 556 (5th Cir. 2002) (discussing <u>McDonald v. Provident Indem. Life Ins. Co.</u>, 60 F.3d 234, 237 (5th Cir. 1995), <u>cert. denied</u>, 522 U.S. 811 (1997)).  In other circumstances, courts have applied a "serious consideration" analysis to determine what, when and how much a fiduciary must disclose when a beneficiary inquires about a change or proposed change to the ERISA plan. <u>See Hockett v. Sun Co.</u>, 109 F.3d 1515, 1522-23 (10th Cir. 1997); <u>Muse v. Int'l Bus. Machs. Corp.</u>, 103 F.3d 490, 493-94 (6th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1240 (1997); <u>Wilson v. Southwestern Bell Tel. Co.</u>, 55 F.3d 399, 405 (8th Cir. 1995); <u>Barnes v. Lacy</u>, 927 F.2d 539, 544 (11th Cir.), <u>cert. denied</u>, 502 U.S. 938 (1991).

    c.  **Count II: Failure to Make Disclosures Required By ERISA**

Count II of each complaint alleges violation of ERISA disclosure requirements.  Neither complaint specifies which sections of the statute are alleged to have been violated in this regard.  ERISA expressly requires that plan administrators make certain information available to plan participants and others. <u>See</u> 29 U.S.C. §§ 1021-1026.  These include a summary plan description, a plan description, certain annual and

14

supplementary reports, notice of a plan's failure to meet certain funding standards and notice of certain transfers of excess pension fund assets.  29 U.S.C. § 1021(a)-(e).  ERISA also requires that, upon request, plan administrators provide plan participants a written statement of accrued benefits.  29 U.S.C. § 1025.  However, it does not appear from the complaints that plaintiffs in this case are asserting violations of these statutory disclosure requirements.  The court reads the complaints to allege failures to make disclosures required under ERISA's general fiduciary obligations of loyalty and prudence discussed in the preceding section of this order.

After carefully reviewing the complaints, the court finds that Count II of each complaint fails to state a claim separate and apart from the claims of breach of fiduciary duty set forth in Count I of the complaints.  Therefore, defendants' motion is granted as to Count II of each of the complaints, inasmuch as those counts simply allege breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104, 1105, 1109 and 1132.

## II.  Application of the Law to the Facts

Defendants assert that the complaints fail to state a claim upon which relief may be granted.  They present a number of arguments which the court addresses in turn.