Exhibit
A

Slip Copy
(Cite as: 2004 WL 407007 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.

In re SEARS, ROEBUCK & CO. ERISA
LITIGATION.

No. 02 C 8324.

March 3, 2004.

Marvin Alan Miller, Jennifer Winter Sprengel, Christopher B Sanchez, Miller Faucher and Cafferty, LLP, Chicago, IL, Steven E Cauley, Curtis L Bowman, J Allen Carney, Tiffany Wyatt, Melissa Beard Glover, Cauley Geller Bowman and Coates, LLP, Little Rock, AK, for Plaintiff.

Harold C. Hirshman, Christopher Qualley King, John Claiborne Koski, Elissa Eun Choo Rhee-Lee, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL, Jeffrey C Fourmaux, Samuel M Bayard, Wachtell, Lipton, Rosen & Katz, New York, NY, for Defendants.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

**\*1** Plaintiffs, participants in a Sears Employee Retirement Income Security Act of 1974 ("ERISA") plan, sued Defendants, Sears, Roebuck & Co., Alan Lacy, Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter, the Sears Board of Directors, unnamed members of the ERISA plan Investment Committee, and the Investment Committee, for violations of ERISA. Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the following reasons, that motion is granted in part and denied in part.

*LEGAL STANDARD*

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in

Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir.2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir.1995).

Generally, matters outside the pleadings cannot be considered on a motion to dismiss. *See, e.g., Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs Local Union 150,* 335 F.3d 643, 647 (7th Cir.2003). However, documents that a defendant attaches to a motion to dismiss may be considered if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir.2002).

*BACKGROUND*

The facts, for the purposes of this motion, are taken as true from Plaintiffs' Complaint. Plaintiffs, Bill Kehr, Michael G. Cheperka, Kenneth Hawkins, and Margaret Villano, are participants in a 401(k) Savings Plan (the "Plan"). Defendant Sears, Roebuck, and Co. ("Sears") sponsored and administered the Plan. Another Defendant, the Investment Committee, had the authority to choose the type of investment options, a particular investment style, and make other investment decisions with respect to the Plan. Defendant Alan Lacy was, at all relevant times, the Chief Executive Officer, President, and Chairman of the Board at Sears. The Investment Committee distributed Summary Plan Descriptions and Plan prospectuses to all Plan participants, pursuant to relevant federal statutes.

Defendants--Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter--who, at all relevant times, were high-ranking Sears executive officers, were members of the Investment Committee, along with thirty unnamed fiduciary Defendants (collectively the "Committee Defendants"). The named members of the Investment Committee had substantial knowledge of Sears' business plans, operations, finances, and access to internal company reports and memoranda. These Defendants were also familiar with Sears' accounting and financial practices.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*2 Defendants--Hall Adams, Jr., Brenda Barnes, James Cantalupo, Donald Carty, W. James Farrell, Michael Miles, Hugh Price, Dorthy Terell, and Raul Yzaguire--were, at all relevant times, members of the Sears Board of Directors (collectively the "Director Defendants"). The Sears Board of Directors is the primary personification through which Sears effectuated its Plan-related duties.

### Specific Plan Provisions

The Plan allows eligible employees to contribute to the Plan through payroll deductions. Participants may then direct their investment into one or more of several funds available under the Plan. One of the available funds is the Company Stock Fund.

The Plan designates Sears as a named fiduciary, but only for the non- investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock fund. The Board of Directors is given the authority to appoint members to the Investment Committee. § 1.3.

The Plan also requires that a Company Stock Fund must exist, which is "designed to invest exclusively in [Sears] Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6 .1. Employer matching contributions made in cash must be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund.

The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3. However, to the extent that the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5.

### Sears' Financial Statements

In financial reports filed with the Securities and Exchange Commission ("SEC"), Sears misrepresented its true financial health and profitability. Specifically, in Sears' 2001 annual report, Sears stated on SEC Form 10-K that its provisions for uncollectible accounts were calculated to be $1.344 billion in 2001. Sears also represented that it maintained an adequate allowance for its uncollectible accounts to reflect losses inherent in the owned portfolio. Sears also filed numerous press reports stating that the company was extremely profitable, revenue was up, and earnings were expected to increase.

On May 7, 2002, Sears then filed its first quarter financial report on SEC Form 10-Q. The report indicated that the provisions for uncollectible accounts increased from $190 million to $371 million in the first quarter. This change was the result of additional credit card receivable balances recorded when Sears consolidated its securitization structure for financial reporting purposes in the second quarter of 2001. Once again, press reports issued by Sears projected substantial growth. Based on all this information, and in spite of a general economic downturn throughout the country, Sears stock reached $59.90 per share in the early summer of 2002.

*3 On August 9, 2002, Sears filed another quarterly Form 10-Q report with the SEC. This report stated that Sears was making a conservative accounting change in determining its uncollectible account allowances. In October of 2002, Sears began to issue a series of reports stating that the financial reports as originally reported for the first and second quarters of 2002 were incorrect. Sears explained that it was amending its previous reports, under interpretive guidance from the SEC. The provision for uncollectible accounts were misstated and were required to be significantly increased, while net operating income was significantly reduced. Thereafter, Sears filed public statements attesting to similar facts.

Sears also reported similar problems with its credit card division. On October 4, 2002, Sears issued a press release stating that Defendant Liska would take over the credit card division. On October 7, 2002, Sears unexpectedly warned that its third quarter earnings would fall below expectations because of a profit slowdown in its credit card division. This forecast was true, and Sears' earnings went down significantly in the third quarter of 2002. In reaction to all of Sears' announcements, Sears stock price dropped significantly. On October 17, 2002, Sears stock dropped from $33.95 a share to $23.15 a share, on trading of 36 million shares.

Just before the Class Period began, on January 17, 2002, Sears had over $1.1 billion of assets,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

representing one-third of all Plan assets, in the Company Stock Fund. When the stock price dropped, Plaintiffs suffered losses resulting from their own investments in the Company Stock and matching investments made by Sears.

### ANALYSIS
### Plan Investment in Sears Stock Claims

Defendants first argue that Plaintiffs' claims against Sears and the Committee Defendants based on Plan investments in Sears Stock (Counts I, II, and VI) fail to state a claim. According to Defendants, the Amended Complaint fails to establish that Sears was a fiduciary with respect to investment decisions; and the actions claimed to be in breach of the fiduciary duty were expressly permitted by ERISA and required by the Plan. The Defendants also claim that even if the Committee Defendants had some discretion to override the terms of the Plan, the Complaint fails to establish the Committee Defendants abused their discretion in following Plan terms. Finally, the Defendants argue that Plaintiffs failed to state a claim for a breach of the duty of loyalty.

### Sears as a Fiduciary

A claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary. *Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 854 (7th Cir.1997)* (*Plumb* ). Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

*4 29 U.S.C. § 1002(21)(A). Under this definition, an entity "may be an ERISA fiduciary for some purposes, but not others." The first place courts look to determine whether a defendant is a fiduciary is the plan documents. *Plumb, 124 F.3d at 854.*

The Sears Plan designates Sears as a named fiduciary for the non-investment operations of the Plan. In addition, while Plan § 1.3 delegates responsibility for Plan investment decisions to the Investment Committee, including those related to the Sears Stock

Fund, numerous places in the Plan place an "overarching fiduciary duty" on Sears in discharging "its duties," in accordance with Plan § 13.6. Plaintiffs also allege in their Amended Complaint that Sears, as the Plan administrator, was a fiduciary. Thus, the determination of whether Sears was a fiduciary with respect to investment decisions is a question of fact that is not properly resolved by a motion to dismiss. Accordingly, to the extent Defendants seek to dismiss Sears as a fiduciary with respect to investment decisions, in Counts I, II, and VI, that motion is denied.

### Discretion to Override the Plan

Generally, an Employee Stock Ownership Plan ("ESOP") is an ERISA plan "designed primarily to invest in qualifying employer securities," such as shares of stock in the company sponsoring the plan. 29 U.S.C. § 1106(d)(6)(A). ESOPs are generally exempt from the general duty to diversify plan assets and the duty of prudence insofar as it requires diversification. 29 U.S.C. § 1104(a)(2). Despite this statute, "there may come a time when such investments [in ESOPs] may no longer serve the purpose of the" ERISA plan. *Moench v. Robertson, 62 F.3d 553, 571 (3d Cir.1995)* (*Moench* ).

Any inquiry into the investments of an ESOP fiduciary is limited. "[A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Moench, 62 F.3d at 571.* Some amount of discretion by the entity controlling the plan is required to invoke a fiduciary duty. *Pohl v. Nat'l Benefits Consultants, Inc., 956 F.2d 126, 129 (7th Cir.1992).*

Here, the Plan set up a Company Stock Fund, which was "designed to invest exclusively in Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6.1. Employer matching contributions made in cash are then required to be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund. The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                    Page 4
(Cite as: 2004 WL 407007 (N.D.Ill.))

However, to the extent the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5. Moreover, 29 U.S.C. § 1104(a)(1)(D) only required the Investment Committee to follow the Plan "insofar as such documents and instruments were consistent with the provisions of" ERISA. Plaintiffs allege that "blindly following" the Plan provisions requiring matching contributions to be made in Sears stock would be imprudent, in violation of ERISA fiduciary duties, when the Investment Committee knew or should have known the price of the stock was fraudulently inflated. Accordingly, Plaintiffs have stated a claim against the Investment Committee for causing the Plan to continue to acquire and invest in Company matching contributions of Sears stock.

*5 Plaintiffs have also stated a claim for their remaining investment plan allegations. Plaintiffs have alleged that the Investment Committee knew or should have known the true financial condition of the Sears credit business and that Sears misrepresented this condition. In contrast to Defendants' authority in Crowley v. Corning, Inc., 234 F.Supp.2d 222, 230 (W.D.N.Y.2002), Plaintiffs have not simply rested on this allegation. Instead, Plaintiffs' Complaint alleges that some of the members of the Investment Committee were senior executives with substantial knowledge of the business plans, operations, and finances of Sears. These executives were in a position to know that Sears stock was not a prudent investment because it was inflated through Sears' inaccurate accounting practices. The Investment Committee thereafter kept this knowledge secret and knowingly disseminated material that was inaccurate and misleading to Plan participants.

Defendants also rely on Hull v. Policy Mgmt. Sys. Corp., 2001 U.S. Dist. LEXIS 22343, No. 3:00-778-17, at * 25-27 (D.S.C. Feb. 9, 2001), for the proposition that an investment committee cannot be forced to acquire inside information, in violation of federal securities laws, to determine if the stock was irregularly inflated. However, the Hull plaintiffs did not allege that the investment committee had actual knowledge of any misinformation. On the contrary, here, the Plaintiffs have specifically alleged that the Investment Committee knew or should have known that investing in Sears stock was imprudent. Under these circumstances, courts have found that defendants "cannot escape potential liability on

ERISA breach of duty claims because of any duties they may have under securities laws." Rankin v. Rots, 278 F.Supp.2d 853, 878 (E.D.Mich.2003) ("Rankin" ); see also In re WorldCom, Inc., 263 F.Supp.2d 745, 765 (S.D.N.Y.2003) ("In re WorldCom" ) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

### Duty of Loyalty

Plaintiffs have also sufficiently stated a cause of action for breach of the fiduciary duty of loyalty under ERISA. ERISA specifically provides that a sponsor of an employee benefit plan may appoint its own officers to administer the plan. 29 U.S.C. § 1108(c)(3). However, Plaintiffs have alleged that the officers who were appointed to the Investment Committee could not be loyal to Plan participants because the officers' compensation was significantly tied to the price of Sears stock. Therefore, the officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities. Defendants fail to present any authority that these allegations are insufficient to withstand a motion to dismiss.

### Concealment Claims

Defendants also argue that the concealment allegations in Count I should be dismissed because those claims have not been pled with particularity, in accordance with Federal Rule of Civil Procedure 9(b), and that any concealment was not made in a fiduciary capacity. Additionally, Defendants state that Plaintiffs' claims alleging that Defendants failed to disclose non- public information fails to state a claim.

*6 Rule 9(b) applies to ERISA claims that allege misrepresentations. Cook v. Exelon Corp., 2002 U.S. Dist. LEXIS 18125, at *13 (N.D.Ill. Sept. 26, 2002); Adamczyk v. Lever Bros. Co., 991 F.Supp. 931, 939 (N.D.Ill.1997). To satisfy Rule 9(b), Plaintiffs must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Viacom, Inc. v. Harbridge Merchant Servs., 20 F.3d 771, 777 (7th Cir.1994).

Plaintiffs' allegations meet these requirements. According to the Complaint, the Investment

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Committee and its members were making the misrepresentations. The misrepresentations then occurred in public financial statements filed with the SEC during the class period, with key misrepresentations being made during the first and second quarters of 2002. The alleged misrepresentations stated that Sears' credit card uncollectible accounts method adequately allowed for losses. Finally, the misrepresentations were communicated to Plaintiffs in financial disclosure statements and prospectuses given to Plan participants.

Defendants also contend that any statement made in SEC filings cannot be said to have been made in a fiduciary capacity. However, whether the Investment Committee, based on their status as Sears officers, knew or should have known of the SEC misrepresentations published by Defendants is a question of fact. *See In re WorldCom, Inc., 263 F.Supp.2d at 765* ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

### Failure to Disclose Claims

Defendants argue that absent a specific ERISA requirement mandating a duty to disclose pertinent information, the fiduciary duty provisions of ERISA do not require a plan sponsor to disclose non-public information. *See Ehlman v. Kaiser Found. Health Plan, 198 F.3d 552, 555-56 (5th Cir.2000)*. However, Plaintiffs do not simply allege that Defendants failed to disclose non-public information. Instead, Plaintiffs claim that Defendants kept material information secret, while knowingly conveying misleading information that both incorrectly stated the proper accounting of key accounts, such as account receivables, and misstated financial statements. Federal securities laws require that this information must be disseminated to plan participants, and; as mentioned earlier, Defendants may be subject to ERISA liability if they knowingly fail to disclose adverse information. *See In re WorldCom, 263 F.Supp.2d at 767, n. 14*.

Defendants, in addition to their previously discussed arguments, seek to dismiss Count VI, Plaintiffs' failure to diversify claim, for lack of loss causation. Specifically, Count VI seeks recovery exclusively for Sears stock held by the Plan on and after January 17, 2002.

Plaintiffs must allege a causal connection between the alleged breach and the alleged losses incurred by the Plan. *See, e.g., McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995)*. According to Defendants, this causal connection is non-existent. If the Investment Committee, or any other Defendant, knew about the allegedly true financial condition of Sears, that information must be disclosed before the Investment Committee could act on it. *See generally United States v. O'Hagan, 521 U.S. 642, 651-52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997)*. Nothing in ERISA would exempt Defendants from this requirement. 29 U .S.C. § 1144(d). Therefore, if Defendants legally disclosed the information and then attempted to sell existing Plan holdings in Sears stock, the price would have dropped anyway; and the Plaintiffs would have suffered losses.

*7 This theory, known as the "efficient capital markets hypothesis," has been embraced by both the Supreme Court and the Seventh Circuit. *Basic, Inc. v. Levinson, 485 U.S. 224, 246-47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)*; *West v. Prudential Secs., Inc., 282 F.3d 935, 938 (7th Cir.2002)*. Plaintiffs, however, properly argue that issues of loss causation are factual matters not proper to resolve on a motion to dismiss; thus, Plaintiffs have sufficiently pled loss causation.

Furthermore, Plaintiffs also allege that publicly known macroeconomic facts were available to Defendants before the start of the class period. According to Plaintiffs, these factors, including increased competition and the general downturn of the economy, indicated there was no reason for the Plan to invest so heavily in Sears stock. Whether these macroeconomic factors existed and their effect on Sears stock are questions of fact. Therefore, Defendants' Motion to Dismiss Count VI is denied.

### Failure to Monitor

Defendants next argue that the Complaint fails to state a claim against Sears, Lacy, or the Director Defendants based on their alleged failure to monitor the Investment Committee defendants and provide them with information. First, Defendants contend that the Amended Complaint fails to show Lacy was a fiduciary with respect to monitoring the Committee Defendants. Second, Defendants claim that Plaintiffs fail to plead any of the relevant Defendants breached their fiduciary duties to monitor the Investment Committee. Finally, Defendants argue Plaintiffs fail to state a claim based on Defendants' failure to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 407007 (N.D.Ill.))

provide non-public information to the Investment Committee.

### Lacy as a Fiduciary

As stated earlier, a claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary; and a person may be an ERISA fiduciary for some purposes but not others. *Plumb,* 124 F.3d at 854. Under ERISA guidelines, a fiduciary who delegates responsibility or appoints other fiduciaries has a duty to monitor those delegates. 29 C.F.R. § 2509.75-8, FR-17; *see also Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 736 (7th Cir.1986) (explaining that corporations may have a duty to monitor the actions of the fiduciaries administering the plan); *Leigh v. Engle,* 727 F.2d 113, 135 (7th Cir.1984) (holding that fiduciaries have a duty to monitor their appointees).

Here, Plaintiffs allege that the Plan gave Sears, who acted through its Board of Directors, the authority to appoint members to the Investment Committee. Plan § 1.3. Defendants argue that Plaintiffs allege no facts that show how Lacy or the other Director Defendants functioned as fiduciaries with regard to the appointment or monitoring of the Investment Committee. However, generally, when considering a motion to dismiss, Plaintiffs only need to place Defendants on notice of the claims. Therefore, Plaintiffs have alleged that Lacy and the other Director Defendants are fiduciaries with respect to monitoring the Investment Committee.

### Breach of Duty to Monitor

*8 Defendants next argue that Plaintiffs failed to state a breach of any duty to monitor the Investment Committee. Under 29 C.F.R. § 2509 .75-8, FR-17, the duty to monitor requires that:

[a]t reasonable intervals the performance of ... fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

Here, Plaintiffs allege that the relevant Defendants, the fiduciaries who appointed the Investment Committee members, failed to monitor the performance of the Investment Committee. Specifically, Plaintiffs allege that these Defendants, members of the Board of Directors, knew or should

have known that offering the Company Stock Fund was an imprudent investment, and that they should have monitored the Investment Committee and its members. Whether the relevant Defendants--Sears, Lacy, and the other Directors--monitored the Investment Committee to determine if the Committee was not acting consistently with ERISA is a question of fact. Accordingly, Plaintiffs have stated a claim for breach of duty for the failure to monitor the Investment Committee.

Defendants also claim that no breach of the duty to monitor can arise from the failure to provide non-public information to the Investment Committee. However, as discussed earlier, defendants "cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin,* 278 F.Supp.2d at 878. This proposition also holds true for Lacy and the other Director Defendants, who Plaintiffs allege had knowledge of the accounting irregularities at Sears. Therefore, Defendants' Motion to Dismiss Count VI on this ground is denied.

### Co-Fiduciary Liability

A co-fiduciary may be liable for another's breach of fiduciary duty if he: (1) fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; and (2) has knowledge of the breach committed by another fiduciary and takes no reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a)(2)-(3). Thus, as the both sides agree, a primary breach must exist to plead a co-fiduciary liability claim. Here, primary breaches have been upheld against Sears, Lacy, the Director Defendants, the Investment Committee, and the individual Investment Committee members.

Defendants argue that Plaintiffs have impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable efforts to remedy a knowledge of the breach. Plaintiffs allege that all fiduciaries breached their duties, as required under § 1105(a)(2)-(3). However, Count V of Plaintiffs' Complaint does not contain allegations that put Defendants on notice of the particular charges against each Defendant. Accordingly, Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this Count.

### Prohibited Transaction Claim

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 407007 (N.D.Ill.))

*9 Defendants next move to dismiss Plaintiffs' prohibited transaction claim, Count III of the Complaint, in that there are no allegations in the Complaint that state the Plan purchased shares of Sears stock for more than the market price. In response, Plaintiffs argue that because Defendants purchased stock with knowledge it was inflated, the Plan purchased stock for more than adequate consideration.

Fiduciaries are not permitted to enter into certain prohibited transactions, such as purchasing securities for more than adequate consideration. *See* 29 U.S.C. § 1106-1108. Defendants argue that "in the case of a security for which there is a generally recognized market," adequate consideration means paying "the price of the security prevailing on a national securities exchange." 29 U .S.C. § 1002(18)(A)(i). Defendants further contend the Sears stock was purchased on the New York Stock Exchange. However, Plaintiffs allege the transaction was prohibited because the market price of Sears stock was inflated, without knowledge by the general public of the fair market value of the stock, by Defendants' fraud in manipulating financial reports. This allegation places Defendants on notice of the claim being asserted. Therefore, Defendants' Motion to Dismiss Plaintiffs' prohibited transaction claim is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is denied in part and granted in part. Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this count.

2004 WL 407007 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit
B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


In Re Xcel Energy, Inc.,           Master File: Civil 02-2677(DSD/FLN)
Securities, Derivative &             MDL No. 1511
"ERISA" Litigation
- - - - - - - - - - - - - - - - - - - - - -
This Document Relates to Case
Numbers: 03-2218 & 03-2219, the
"ERISA Actions"


ORDER


This matter is before the court upon the joint motions of

defendants to dismiss the actions[1] for failure to state a claim

upon which relief may be granted.  For the following reasons,

defendants' motions are granted in part and denied in part.


BACKGROUND

These actions stem from a drastic reduction in the market

value of Xcel Energy, Inc. ("Xcel") stock following Xcel's

disclosure of adverse information about its financial ties to

its subsidiary, NRG Energy, and a Securities Exchange Commission

("SEC") investigation of Xcel and its subsidiaries relating to

---

[1] The two actions at issue here were consolidated with a
group of securities fraud actions and a shareholder derivative
action and transferred to this district for pretrial
adjudication by the Judicial Panel on Multidistrict Litigation
pursuant to 28 U.S.C. § 1407.

alleged round-trip trading of energy.[2]  Plaintiffs Gene Barday,
Jr., Donald Newcome and Leonard Banks are all employees of an
Xcel subsidiary.   Barday individually, and Newcome and Banks
jointly, filed suit naming Xcel, its directors and certain of
its officers as defendants.  Plaintiffs claim that their various
retirement plans, which were invested entirely or in part in
Xcel securities, suffered severe losses as result of the
precipitous drop in Xcel share value.   They allege defendants
breached their fiduciary duties and violated the disclosure
requirements of the Employee Retirement Income Security Act of
1974, ("ERISA"), 29 U.S.C. § 1001 et seq.

I.    The Parties

    Defendant Xcel is a Minnesota corporation based in
Minneapolis, Minnesota that provides electricity and natural gas
to residential and commercial customers in twelve western and
midwestern states through its regulated utilities companies.
Xcel is publicly traded on the New York Stock Exchange.   The
company administers employee benefit plans as defined by ERISA.
See 29 U.S.C. § 1002.

---

    [2]  Round-trip trades or wash sales occur when an energy
producer or wholesaler purchases energy and then sells it back
at the same price.   Round trip trades are considered sham
transactions because they artificially inflate sales revenue for
each company without impacting profitability.

Defendant Wayne H. Brunetti has at various times been chairman of the board of directors, president and chief executive officer of Xcel, as well as an officer and director of its subsidiaries New Century Energies and Public Service Company of Colorado ("PSCo").

Defendants Douglas W. Leatherdale, C. Coney Burgess, A. Barry Hirschfield, Margaret R. Preska, Allan L. Schuman and W. Thomas Stephens are directors of Xcel and members of the Xcel Finance Committee, which plaintiffs allege has authority over the plans in question.

Defendants Giannantonio Ferrari, Albert F. Moreno, A. Patricia Sampson, Rodney E. Slifer, James J. Howard, David A. Christensen and Roger R. Hemminghaus are or were directors of Xcel at times relevant to the present litigation.

Defendants Edward J McIntyre and David E. Ripka were chief financial officer and chief accounting officer, respectively, of Xcel during times relevant to the litigation.

Plaintiff Barday is a Colorado resident and an employee of Xcel Subsidiary Public Service Company of Colorado ("PSCo"). Barday is a participant in the Xcel Energy 401(k) Savings Plan ("Xcel 401(k)"). Plaintiff Newcome is also a Colorado resident PSCo employee. He participates in the NCE Energy Employees' Savings and Stock Ownership Plan for Bargaining Unit Employees

3

and Former Non-Bargaining Unit Employees ("ESOP").  Plaintiff Banks resides in Colorado and is employed by PSCo as well.  He is a participant in both the Xcel 401(k) and the ESOP plans.

## II.  The Plans

The plans at issue in this litigation are the Xcel 401(k) and the ESOP.  Both plans are defined contribution plans and eligible individual account plans.  As defined contribution plans, the plans provide an individual account for each plan participant based on that participant's contributions and company matching contributions.  See 29 U.S.C. §§ 1002(34) and 1107(d)(3).  Each of the plans includes an ESOP component and a non-ESOP component.  An ESOP is an employee stock ownership plan that is designed to invest "primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6).  The non-ESOP components of the plans allow participants to contribute a portion of their pay to various investment funds, including an Xcel stock fund, on a pre-tax basis to provide for retirement.  Participants choose the fund or funds in which their contributions are to be invested.

Each plan also calls for the company to make matching contributions.  Company contributions to the ESOPs are made in Xcel stock or cash to be invested in Xcel stock.  Contributions to the non-ESOP component are either made in cash or company

4

stock, if the employee has chosen that particular investment.

The Xcel 401(k) plan identifies three plan fiduciaries: the company, an appointed committee and the plan trustee.[3]  The ESOP plan identifies two fiduciaries: the company and the trustee. The plans identify the company as plan administrator.

## III. The Dramatic Decline in Xcel Stock Value

On July 25, 2002, Xcel released its second quarter results and made public for the first time the existence of cross default provisions closely tying its fortunes to its financially beleaguered subsidiary, NRG.  Xcel stock suffered an immediate price drop of approximately thirty-six percent.  Xcel ultimately took a loss of over $2 billion on its NRG investment.  It was also forced to renegotiate its own credit facilities on less favorable terms, eventually paying off and closing one of the $400 million credit agreements.  Xcel's directors also cut the annual dividend in half.

Immediately after Xcel revealed the existence and possible impact of the cross default provisions, it informed analysts that the SEC and the Commodities Futures Trading Commission ("CTFC") had issued it and others subpoenas in their investigations of the round-trip trades between PSCo and another

---

[3] The trustees of the two plans are not parties in the litigation.

5

energy trader. On July 29, 2002, the first day after the investigations were revealed, the trading price of Xcel shares dropped approximately twenty-five percent. That decline followed the thirty-six percent drop that occurred the previous trading day, July 26, 2002.

## IV. Xcel's Public Statements

Plaintiffs allege that defendants, or some of them, knew of the significant risks posed to Xcel stock value by the NRG-related cross default provisions and the round-trip trading. Like the plaintiffs in the securities fraud action joined in this multidistrict litigation, plaintiffs allege that defendants failed to disclose material information and through press releases, other public statements and various SEC filings, misled and ultimately defrauded the investment community, including plaintiffs and other plan participants.

## V. The Claims

The gravamen of plaintiffs' complaint is that defendants knew or should have known of various risks to plan participants who were investing in Xcel stock through the plans. Plaintiffs allege that as plan fiduciaries, defendants were obligated to invest plan funds prudently and with only the interests of plan participants in mind, diversify plan investments, monitor individuals assigned fiduciary duties, investigate matters

6

posing significant risk to the plans, and disclose material adverse information to plan participants. Plaintiffs claim defendants failed in all of these duties, allowing the plans and the plan participants to continue investing in Xcel stock when it was no longer prudent to do so, thereby breaching their fiduciary duties.

## DISCUSSION

### I. Legal Standards

#### a. Motions to Dismiss

Defendants move to dismiss the complaints for failure to state a claim upon which relief may be granted and related pleading infirmities. On a motion to dismiss for failure to state a claim, the court typically must take the allegations in the complaint as true, view the complaint in the light most favorable to the plaintiff and dismiss the action "'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) (quoting Hishun v. King & Spalding, 467 U.S. 69, 73 (1984)).

Pursuant to Rule 8, the complaint need only set forth the basis of the court's jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for

7

judgment. Fed. R. Civ. P. 8(a). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct" and all pleadings are to be construed in a manner resulting in substantial justice. See Fed. R. Civ. P. 8(e) & (f). Finally, "factual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests." Mountain View Pharmacy v. Abbott Labs., 630 F.2d 1383, 1388 (10th Cir. 1990).

      b.    Count I: Breach of Fiduciary Duty Under ERISA

      Count I of each complaint alleges breach of fiduciary duty under 29 U.S.C. §§ 1104 & 1109 and breach of co-fiduciary duty under 29 U.S.C. § 1105. To plead breach of fiduciary duty under ERISA, a plaintiff must allege that 1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty. See 29 U.S.C. § 1109. An ERISA fiduciary may be "named in the plan instrument, or ... identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2). Alternatively, a person may be deemed a fiduciary on the basis of his or her functional authority and control relative to the plan. 29 U.S.C. § 1002(21)(A); Mertens v. Hewitt Assoc., 508 U.S. 248, 262 (1993). Generally, a

fiduciary is one who exercises discretionary control over some aspect of the management or administration of an ERISA plan, or any control whatsoever over plan assets. See Bd. of Trs. of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 273 (3d Cir. 2001) (construing 29 U.S.C. § 1002(21)(A)). "[A] fiduciary's obligations can apply to managing, advising, and administering an ERISA plan...." Pegram v. Herdrich, 530 U.S. 211, 223 (2000).

To determine whether a particular act is undertaken within the scope a fiduciary responsibility, the court begins with the common law of trusts. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 342, 447 (1999). However, unlike the law of trusts, ERISA permits a fiduciary to operate in multiple roles and "wear many hats." In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 546 (S.D. Tex. 2003). Thus, not every action of an ERISA fiduciary that affects a plan participant need be undertaken in the participant's best interest. See id. at 550. "When making fiduciary decisions, however, a fiduciary may wear only his fiduciary hat." Id.

The principal duties owed by ERISA fiduciaries are loyalty and prudence. The duty of loyalty requires that the fiduciary discharge his duties "solely in the interests of the

9

participants and beneficiaries...."  29 U.S.C. § 1104(a)(1). The duty of prudence requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use...."  29 U.S.C. § 1104(a)(1)(B). Prudence is measured by an objective standard. Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955 (D.C. Cir. 1985).

Other fiduciary obligations required by ERISA are the duties to diversify and to comply with plan documents and instruments. See 29 U.S.C. § 1104(a)(1)(C) and (D). The duty to diversify is limited in three ways. First, plan investments must be diversified unless it is clearly prudent not to diversify. 29 U.S.C. § 1104(a)(1)(C). Second, in the case of an ESOP, when ownership of company stock is a principal purpose of the plan, fiduciaries are generally not obligated to diversify unless the failure to diversify would not be in the best interest of plan participants. See 29 U.S.C. § 1104(a)(2); see also Eaves v. Penn, 587 F.2d 453, 459 (10th Cir. 1978) ("the structure of [ERISA] itself requires that in making an investment decision of whether or not a plan's assets should be invested in employers [sic] securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the 'solely in the interest' and

10

'prudence' tests of §§ 404(a)(1)(A) and (B)"). Third, fiduciaries may be absolved of liability where a plan participant's exercise of individual control over the assets of an individual account resulted in a loss. 29 U.S.C. § 1104(c)(1)(B).

The duty to follow the directives of the plan documents is limited only by the general constraints of ERISA. The fiduciary must discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). "[T]rust documents cannot excuse [fiduciaries] from their duties under ERISA, and ... trust documents must generally be construed in light of ERISA's policies." Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 568 (1985).

Two other duties of significance to this action are the power to appoint and remove plan fiduciaries and the duty to disclose relevant information to plan participants. A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996). Implicit in the fiduciary duties attaching to persons empowered to appoint and

11

remove plan fiduciaries is the duty to monitor appointees. <u>See id.</u>; <u>In re Enron</u>, 284 F. Supp. 2d at 553. The scope of the duty to monitor appointees is relatively narrow. <u>See Coyne</u>, 98 F.3d at 1466 n.10; <u>Enron</u>, 284 F. Supp. 2d at 554-55.

The duty of disclosure under ERISA has been described as "an area of developing and controversial law." <u>In re Enron</u>, 284 F. Supp. 2d at 555. Under the common law, a fiduciary's duty to disclose was generally triggered by a specific request from a beneficiary. <u>See</u> Restatement (Second) of Trusts § 173. ERISA expands a fiduciary's duty to disclose. For example, once one who is acting in a fiduciary capacity endeavors to discuss the plan, he may "not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan." <u>In re Enron</u>, 284 F.Supp. 2d at 555. In short, "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1)...." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 506 (1996).

Some courts have gone further, finding that a fiduciary may have an affirmative duty to disclose material information about which a plan participant would be unlikely to inquire. <u>See</u> <u>Watson v. Deaconess Waltham Hosp.</u>, 298 F.3d 102, 114 (1st Cir. 2002); <u>Griggs v. E.I. DuPont DeNemours & Co.</u>, 237 F.3d 371, 380-81 (4th Cir. 2001); <u>Bowerman v. Wal-Mart-Stores, Inc.</u>, 226

F.3d 574, 590 (7th Cir. 2000); <u>Bins v. Exxon Co. U.S.A.</u>, 220
F.3d 1042, 1048-49 (9th Cir. 2000) (en banc); <u>Krohn v. Huron
Mem'l Hosp.</u>, 173 F.3d 542, 547-48 (6th Cir. 1999); <u>Schmidt v.
Sheet Metal Workers' Nat. Pension Fund</u>, 128 F.3d 541, 546-47
(7th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1073 (1998); <u>Shea v.
Esenstein</u>, 107 F.3d 625, 629 (8th Cir. 1997), <u>cert. denied</u>, 522
U.S. 914 (1997); <u>Glaziers & Glassworkers Union Local No. 252
Annuity Fund v. Newbridge Sec., Inc.</u>, 93 F.3d 1171, 1181 (3d
Cir. 1996). One of the strongest assertions of an affirmative
duty to disclose is found in <u>Anweiler v. Am. Elec. Power Svc.
Corp.</u>, 3 F.3d 986, 991 (7th Cir. 1993). There the court stated
"[f]iduciaries must also communicate material facts affecting
the interests of beneficiaries. This duty exists when a
beneficiary asks for information, and even when he or she does
not." <u>Id.</u> (citations omitted). The Third Circuit has held that
a plan fiduciary has "'an affirmative duty to inform when the
[fiduciary] knows that silence might be harmful.'" <u>Adams v.
Freedom Forge Corp.</u>, 204 F.3d 475, 480 (3d Cir. 2000) (quoting
<u>In re Unisys Corp. Retiree Med. Benefits "ERISA" Litig.</u>, 57 F.3d
1255, 1262 (3d Cir. 1995), <u>cert. denied</u>, 517 U.S. 1103 (1996)).

Other courts have limited the duty to disclose in the
absence of a specific inquiry to circumstances where the

information in question would have an "extreme impact" on plan beneficiaries. <u>Ehlmann v. Kaiser Found. Health Plan of Tex.</u>, 198 F.3d 552, 556 (5th Cir. 2002) (discussing <u>McDonald v. Provident Indem. Life Ins. Co.</u>, 60 F.3d 234, 237 (5th Cir. 1995), <u>cert. denied</u>, 522 U.S. 811 (1997)).  In other circumstances, courts have applied a "serious consideration" analysis to determine what, when and how much a fiduciary must disclose when a beneficiary inquires about a change or proposed change to the ERISA plan.  <u>See</u> <u>Hockett v. Sun Co.</u>, 109 F.3d 1515, 1522-23 (10th Cir. 1997); <u>Muse v. Int'l Bus. Machs. Corp.</u>, 103 F.3d 490, 493-94 (6th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1240 (1997); <u>Wilson v. Southwestern Bell Tel. Co.</u>, 55 F.3d 399, 405 (8th Cir. 1995); <u>Barnes v. Lacy</u>, 927 F.2d 539, 544 (11th Cir.), <u>cert. denied</u>, 502 U.S. 938 (1991).

      c.    **Count II: Failure to Make Disclosures Required By ERISA**

Count II of each complaint alleges violation of ERISA disclosure requirements.  Neither complaint specifies which sections of the statute are alleged to have been violated in this regard.  ERISA expressly requires that plan administrators make certain information available to plan participants and others.  <u>See</u> 29 U.S.C. §§ 1021-1026.  These include a summary plan description, a plan description, certain annual and

14

supplementary reports, notice of a plan's failure to meet certain funding standards and notice of certain transfers of excess pension fund assets. 29 U.S.C. § 1021(a)-(e). ERISA also requires that, upon request, plan administrators provide plan participants a written statement of accrued benefits. 29 U.S.C. § 1025. However, it does not appear from the complaints that plaintiffs in this case are asserting violations of these statutory disclosure requirements. The court reads the complaints to allege failures to make disclosures required under ERISA's general fiduciary obligations of loyalty and prudence discussed in the preceding section of this order.

After carefully reviewing the complaints, the court finds that Count II of each complaint fails to state a claim separate and apart from the claims of breach of fiduciary duty set forth in Count I of the complaints. Therefore, defendants' motion is granted as to Count II of each of the complaints, inasmuch as those counts simply allege breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104, 1105, 1109 and 1132.

**II. Application of the Law to the Facts**

Defendants assert that the complaints fail to state a claim upon which relief may be granted. They present a number of arguments which the court addresses in turn.

15

a.    **Interest in the Action and Standing**

Defendants contend that the complaints fail to allege ownership of or an interest in Xcel securities and therefore plaintiffs lack standing. However, plaintiff Barday alleges that he is an Xcel 401(k) participant. (Barday Compl. ¶ 4.) Newcome alleges participation in the ESSOP. (Newcome Compl ¶ 5.) Banks alleges participation in the Xcel 401(k) and the ESSOP. (Id. ¶ 6.) The complaints further allege that company matching contributions are made in Xcel stock. (Barday Compl. ¶¶ 11 & 18; Newcome Compl. ¶¶ 13, 20 & 21.) Those allegations are sufficient to meet the minimal notice pleading requirements of Fed. R. Civ. P. 8. Standing and jurisdiction are conferred by ERISA, under 29 U.S.C. § 1132 and by the federal question jurisdiction statute, 28 U.S.C. § 1331.

b.    **Identification of Defendants**

Defendants contend that the complaints fail because they treat all defendants as fiduciaries but do not set forth specific facts identifying which defendants breached which fiduciary duties. It is not improper for plaintiffs to assert that each defendant is a fiduciary, since that assertion is a necessary element of plaintiffs' claims. See 29 U.S.C. § 1109. Plaintiffs allege, in straightforward fashion, that defendants are either named fiduciaries or functional fiduciaries under the

applicable ERISA standards. (Barday Compl. ¶¶ 11-16; Newcome Compl. at ¶¶ 13-18.) However, defendants' contention that plaintiffs fail to cite facts showing which defendants breached which duties is well-taken. The court need not accept as true purely conclusory statements in the pleadings. See Moffett v. Halliburton Energy Serv., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).

Plaintiffs respond that the plan documents fail to properly identify the named fiduciaries or to identify their fiduciary responsibilities. Plaintiffs also argue that they should be afforded some latitude in pleading because ERISA's assignment of fiduciary duties on the basis of function requires the development of additional facts in discovery. See 29 U.S.C. § 1002(21) (describing as a fiduciary anyone who (1) exercises authority or control over the management of a plan or its assets, (2) renders investment advice concerning the plan, or (3) has discretionary authority to administer a plan).

In this case, the court agrees with plaintiffs. Notice pleading requires only that defendants be put on notice of the claims so that they may respond to the complaint.[4]    See

---

[4] Defendants' claim that plaintiffs cannot aver "that they lack information to plead with specificity ... [because plaintiffs] should have a summary plan for each plan in which they participated...." (Defs.' Mem. Supp. Mot. Dismiss at 15.)

(continued...)

17

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002); <u>see also</u>
<u>In re Electronic Data Sys. Corp. ERISA Litig.</u>, ___ F. Supp. 2d
____ 2004 WL 253736, at *5 (E.D. Tex. Feb. 2, 2004) (noting that
"courts will typically have insufficient facts at the motion to
dismiss stage from which to make the law/fact analysis necessary
to determine functional or named fiduciary status"). While
discovery may reveal that some of the facts apply only to some
of the defendants, the complaint sufficiently puts all
defendants on notice of the fundamental nature of the claims.[5]

-----

[4](...continued)
The court finds no merit in that argument. Defendants'
assertion is a correct statement of a duty ERISA places upon
them or some of them as plan administrators. 29 U.S.C. § 1021.
It is not, however, a correct statement of a relevant undisputed
fact.

[5] As is the case here, the court in <u>Electronic Data Sys.</u> was
presented with plan documents attached to defendants' brief in
support of its motion to dismiss. <u>See In re Elec. Data Sys.</u>,
2004 WL 253736, at *4-5. Citing Fifth Circuit case law, the
court noted that the inclusion of materials outside the
pleadings did not require the court to convert the motion to a
Rule 56 summary judgment proceeding because the plan documents
were publicly filed, subject to judicial notice, referred to by
plaintiffs and necessary to plaintiffs' claims. <u>Id.</u> at *4. The
court also noted that it would be "inappropriate at [the motion
to dismiss stage] to construe the Plan terms and make factual
findings regarding the extent to which the Plan delegates or
does not delegate different fiduciary duties among the
defendants." <u>Id.</u> at *5. The court also pointed out that
plaintiffs had alleged functional fiduciary status, effectively
mooting the issue of plan designation for purposes of the Rule
12(b)(6) motion. <u>Id.</u> at *5. This court agrees with and adopts
Judge Davis' reasoning in regard to both the appropriateness of
appending purported plan documents to a motion to dismiss and
(continued...)

See Swierkiewicz, 534 U.S. at 513-14.  On the other hand, discovery might yield no material evidence whatsoever as to some, or even all, of the defendants.  Rule 56 provides the appropriate procedural mechanism in that circumstance.  See Fed. R. Civ. P. 56(c).

c.  **Failure to Plead with Particularity**

Defendants next argue that plaintiffs fail to plead their claims with the degree of particularity required by Fed. R. Civ. P. 9(b).  Some courts have applied the heightened pleading standards of Rule 9(b) to ERISA claims.  See, e.g., Thorton v. Evans, 692 F.2d 1064, 1082 (7th Cir. 1982) (expressly requiring plaintiff meet Rule 9(b) pleading requirements); Shaffer v. Eden, 209 F.R.D. 460, 463 (D. Kan. 2002) (same); Vivien v. Worldcom, Inc., 2002 WL 31640557, at *7 (N.D. Cal. July 26, 2002) (same); Adamczyk v. Lever Bros. Co., 991 F. Supp. 931, 939 (N.D. Ill. 1997) (same); Lockhead v. Alcano, 662 F. Supp. 230, 234 (D. Utah 1987) (same).  Other courts have been circumspect in applying Rule 9(b) to ERISA breach of fiduciary duty claims.  See, e.g., In re Elec. Data Sys., 2004 WL 253736, at *11 ("not

---

[5](...continued)
the inappropriateness of making factual findings that are unnecessary at this stage of the proceedings.  The court notes plaintiffs' objection to the submission of the documents and that plaintiffs do not stipulate that they are the plan instruments that were in effect during the relevant time period.

... every breach of a fiduciary duty to inform is a scheme to defraud"); <u>see also</u>, <u>Concha v. London</u>, 62 F.3d 1493, 1503 (9th Cir. 1995), <u>cert. dismissed</u>, 517 U.S. 1183 (1996); <u>Precision Vascular Sys., Inc., v. Sarcos, L.C.</u>, 199 F. Supp. 2d 1181, 1191 (D. Utah 2002) (both holding that Rule 9(b) did not apply to ERISA breach of fiduciary duty claims that involved elements of fraud or misrepresentation).

Plaintiffs are required to plead with particularity when the alleged breach of the fiduciary is the fraudulent act. <u>See</u> <u>Concha</u>, 62 F.3d at 1503. In cases where a fraud, misrepresentation or omission is alleged to have occurred but is not itself the basis of the alleged breach, Rule 9(b) is not applied. <u>See In re Electronic Data Sys.</u>, 2004 WL 253736, at *11. Here, plaintiffs' breach of fiduciary duty claims are premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct. Defendants' duty to act arose as a result of the adverse conditions, not the alleged fraud. Thus, defendants' liability, if any, is based upon a different kind of duty than was owed by the securities fraud defendants to the plaintiffs in that case. In short, plaintiffs do not claim they have been defrauded and Rule 9(b) does not apply in these circumstances.

    d.   **Presumption of Prudence for ESOPs**

Defendants assert that the presumption of prudence afforded to an ESOP's investment in company stock also creates a heightened pleading burden that plaintiffs have failed to meet. Given that one of an ESOP's purposes is to allow employees to acquire equity in their employer's business, several courts have found a presumption of prudence in a fiduciary's investment of plan assets in company stock. See Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995); Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995); Lalonde v. Textron, Inc., 270 F. Supp. 2d 272, 280 (D.R.I. 2003); In re McKesson HBOC, Inc. ERISA Litig., 2002 WL 31431588, at *6 (N.D. Cal. Sept. 30, 2002).  However, presumptions are evidentiary standards that should not be applied to motions to dismiss.  See Swierkiewicz, 534 U.S. at 510-14.  Under the liberal pleading standards of Fed. R. Civ. P. 8(a), plaintiffs are not required to plead every fact necessary to set forth a prima facie claim.[6]  Id. at 511.  Plaintiffs' claims do not fail on this basis.

e.   **No Relief Available For Claims As Pleaded**

Defendants next complain that plaintiffs' claims are not

---

[6] Moreover, the application of the presumption of prudence to an ESOP fiduciary's investment in company stock merely requires plaintiffs to allege that continued investment in the company stock constituted an abuse of discretion in light of the circumstances.  See In re McKesson, 2002 WL 31431588, at *6.  Plaintiffs have alleged exactly that.  (Barday Compl. at ¶¶ 84-85; Newcome Compl. at ¶¶ 87-88.)

appropriately brought under ERISA.  Defendants correctly note that 29 U.S.C. § 1132(a)(2) affords relief to an ERISA plan as a whole, not to individual plan participants.  <u>See</u> <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 142 (1985).  Their contention seems to be that plaintiffs seek individual relief that is not allowed under ERISA.

The complaints clearly demonstrate otherwise, as each purports to seek relief on behalf of the respective plans. (Barday Compl. ¶ 1; Newcome Compl. ¶ 1.)  Further, the complaints are brought under both § 1132(a)(2) and (3).  Section 1132(a)(2) permits a plan participant to bring an action for breach of fiduciary duty to restore losses to the plan.  <u>See</u> <u>Mass. Mut.</u>, 473 U.S. at 142 n.9.  Section 1132(a)(3) permits a plan participant to seek injunctive or equitable relief for violations of the subchapter or of a plan directive.  <u>See</u> <u>Bugher v. Feightner</u>, 722 F.2d 1356, 1358 (7th Cir. 1983).  As a matter of pleading under Fed. R. Civ. P. 8, plaintiffs have asserted legal claims for which relief can be granted.

### f.    Defendants Were Not Acting as Fiduciaries

To adequately assert claims of breach of fiduciary duty, plaintiffs must allege that defendants were fiduciaries acting in a fiduciary capacity.  <u>See</u> 29 U.S.C. § 1002(21); <u>Mertens</u>, 508 U.S. at 262.  Defendants argue, inter alia, that they were not

acting as fiduciaries, that the company is the designated fiduciary, that individuals on committees with fiduciary responsibility such as the Finance Committee were not acting in an individual capacity and that the Finance Committee was responsible only for oversight. These arguments deny factual allegations rather than challenge the sufficiency of the pleadings. Therefore, the court finds them unavailing in the context of the present motion.

Plaintiffs allege that each defendant was acting as a fiduciary with respect to some or all of the factual assertions in the complaints. (Barday Compl. ¶¶ 11-17; Newcome Compl. ¶¶ 13-18.) Because the factual assertions in the complaint must be taken as true and afforded every reasonable inference, defendants' objection fails. See Hishun v. King & Spalding, 467 U.S. 69, 73 (1984). Further, it would be "premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings," because a determination of fiduciary status based on function is a "mixed question of law and fact." Elec. Data Sys., 2004 WL 253736, at *5. Finally, "'fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives.'" Id. (quoting In re Enron, 284 F. Supp. 2d at 544). Thus, the court finds that plaintiffs have sufficiently pleaded fiduciary status.

23

g.    **Plan Design is Not a Fiduciary Function**

Defendants argue that such plan elements as the requirements that ESOP funds be invested in company stock, that participants be restricted from trading in the ESOP until the age of fifty-five and that company stock be offered as an option in the non-ESOP portion of the plan are plan design decisions that are not subject to ERISA's fiduciary standards.  It is well settled that plan design, as opposed to plan administration, is not a fiduciary function.  Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999).

Plaintiffs do not assert that the plan on its face violates a fiduciary duty, as such an assertion would be absurd.  Rather, plaintiffs argue that defendants' subsequent action or inaction falls within ERISA's fiduciary rubric.  Plaintiffs agree that the company was free to design the plan in any manner consistent with ERISA.  See Averhart v. U.S. West Mgmt. Pension Plan, 46 F.3d 1480, 1488 (10th Cir. 1995).  They also agree that there is no general duty to diversify an ESOP.  However, when the failure to do so is not in the best interest of beneficiaries, a fiduciary may be in breach.  See Eaves, 587 F.2d at 459.  Nor can a fiduciary blindly follow plan directives to the obvious detriment of the beneficiary.  See 29 U.S.C. § 1104(a)(1)(D) (stating that fiduciary must comply with plan instruments only

24

to the extent that they are consistent with the other provisions
of § 1104, including the duties of loyalty and prudence).
Plaintiffs also argue that defendants had an affirmative duty to
disclose after they became aware of material adverse information
about the true value of the stock. Since plaintiffs do not
challenge the initial design of the plans, defendants' argument
is unavailing.

### h. No Breach of Fiduciary Duty

Defendants next assert that even if they could be construed
as plan fiduciaries, their actions did not constitute a breach
of duty. First, defendants contend that their fiduciary duties
do not obligate them to violate the securities laws. They argue
that to have revealed the adverse information to plaintiffs
apart from the market at large or to have selectively acted upon
that information to the plans' benefit could have constituted
illegal insider trading. Second, defendants argue that it was
not a breach to invest and to continue to invest in Xcel stock.
Third, defendants note that individual account plans may be
exempt from the statutory diversification requirement. See 29
U.S.C. § 1104(a)(2). Finally, defendants again argue that
plaintiffs have failed to overcome the presumption of prudence
attaching to decisions to invest ESOP funds in company stock.

The court has previously addressed all but the first of

25

these arguments and will not repeat its conclusions here.  As to defendants' insider trading argument, the court joins those courts holding that ERISA plan fiduciaries cannot use the securities laws to shield themselves from potential liability for alleged breaches of their statutory duties.  See In re Elec. Data Sys., 2004 WL 253736, at *12; In re Enron, 284 F. Supp. 2d 511, 565.  As Judge Harmon commented:

> As a matter of public policy, the statutes should be interpreted to require that persons follow the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by [company] officials and plan fiduciaries of [the company's] concealed, material financial status to the investing public generally, including plan participants, whether 'impractical' or not....

In re Enron, 284 F. Supp. 2d at 565-66.  Therefore, defendants' motion will not be granted on the basis of the insider trading argument.[7]

---

[7] Defendants' tender a related argument alleging that plaintiffs cannot show that the alleged breaches of duty caused harm to the plan.  In the context of the insider trading argument, defendants assert that an earlier public disclosure of the adverse information would have resulted in the same decline in stock value, so that the purported breach could not have been the proximate cause of any harm to the plans.  The court addresses the cause argument below.

26

i.   No Duty to Disclose

Defendants argue that the only disclosures required by ERISA are those mandated in sections 1021-1026.  Defendants contend that they had no duty to disclose negative information about the company's financial condition.  See Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564, 581-82 (10th Cir. 1991); see also Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 143-46 (2d Cir. 1997) (holding that ERISA does not mandate disclosure of all information that could conceivably be beneficial to plan participants).

However, a number of courts have held that a fiduciary's duty to disclose goes beyond the specific matters identified in sections 1021-1026 and is not triggered only by a specific inquiry.  See Varity, 516 U.S. at 506 (suggesting but not deciding that the duty to disclose extends beyond sections 1021-1026); Jordan v. Fed. Express Corp., 116 F.3d 1005, 1012-14 (3d Cir. 1997); Shea v. Esensten, 107 F.3d 625, 628 (8th Cir. 1997), cert. denied, 522 U.S. 914 (1997); Glaziers & Glassworkers, 93 F.3d at 1181; Neuma, Inc. v. E.I. Dupont de Nemours & Co., 133 F. Supp. 2d 1082, 1085 (N.D. Ill. 2001).  The law of disclosure under ERISA is both controversial and evolving.  See In re Enron, 284 F. Supp. 2d at 555.  For that reason, the issue is more amenable to resolution on a motion for summary judgment

27

after discovery has shed further light on the facts and circumstances of the case.

### j.    No Showing of Causation or Reliance

Defendants argue that plaintiffs fail to allege that they relied upon omissions or misrepresentations to their detriment. Defendants also argue that plaintiffs cannot show that the alleged misrepresentations or omissions caused their harm because an earlier public disclosure would have resulted in the same market correction that ultimately reduced the value of Xcel stock.

Defendants' may misapprehend the nature of plaintiffs' complaint and the requirements of Fed. R. Civ. P. 8. First, plaintiffs specifically allege harm to the plan stemming from the various breaches of duty asserted in the complaints. (Barday Compl. at ¶ 81; Newcome Compl. ¶ 84.)  Second, plaintiffs offer the omissions and misstatements as indicia of defendants' failure to take affirmative steps to protect the plan in breach of the duties of prudence and loyalty and the duty to disclose. By its terms, ERISA requires that the alleged losses result from the breach. 29 U.S.C. § 1109(a). Plaintiffs allege exactly that. Rule 8 requires nothing more. <u>See</u> Fed. R. Civ. P. 8(a); <u>Swierkiewicz</u>, 534 U.S. at 512.

### k.    No Application of 29 U.S.C. § 1104(c)

28

Defendants complain that plaintiffs' references to 29 U.S.C. § 1104(c) are inappropriate. That section allows plan fiduciaries to avoid liability for breach where plan participants exercised control over assets in individual accounts. See 29 U.S.C. § 1104(c)(1)(B). Defendants contend that section 1104(c) provides an affirmative defense that they have not raised at this point in the litigation. The court agrees and accordingly it has not applied that section in its consideration of the present motion.

## CONCLUSION

Based on the files and pleadings in this matter, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1.   Defendants' motions to dismiss are granted in part and denied in part. The motions are granted inasmuch as Count II of the complaint in Barday v. Xcel Energy, Inc. et al., Civil No. 03-2219 and Count II of the complaint in Newcome & Banks v. Xcel Energy, Inc. et al., Civil No 03-2218, are dismissed. Defendants' motions are denied in all other respects.

29

2.   This order shall be docketed in Master File No. 02-2677 and in files 03-2218 and 03-2219.

Dated:  March 10, 2004

s/David S. Doty
David S. Doty, Judge
United States District Court