Exhibit C

2004 WL 253736 Page 1
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Tyler Division.

In re ELECTRONIC DATA SYSTEMS CORP.
"ERISA" LITIGATION

No. 6:03-MD-01512-LED.

Feb. 2, 2004.

**Background:** Beneficiaries in employee retirement benefits plan covered by Employee Retirement Income Security Act (ERISA) brought multiple suits against corporation, board and chief executive officer (CEO), claiming that retirement fund investments in corporation stock were imprudent and violated Securities Act. Following consolidation for pretrial purposes, defendants moved to dismiss.

**Holdings:** The District Court, Davis, J., held that:
(1) claim was stated that corporation, board and CEO were fiduciaries of retirement funds under ERISA;
(2) claim was stated that fiduciaries failed to monitor activities of committees making investments;
(3) statute of limitations did not bar Securities Act claim;
(4) seller status was adequately alleged; and
(5) control person liability on part of CEO was adequately alleged.

Motion denied.

See, also, 248 F. Supp.2d 544.

[1] Pensions ⚿44

296k44 Most Cited Cases

Under ERISA, a person or entity may be deemed a fiduciary either by the functional or de facto method, involving assumption of the fiduciary obligations, or by express designation by the ERISA plan documents. Employee Retirement Income Security Act of 1974, § 502, as amended, 29 U.S.C.A. § 1132.

[2] Pensions ⚿44

296k44 Most Cited Cases

Beneficiaries under corporation's retirement plan, which was subject to ERISA, stated claim that corporation, its board of directors, and chief executive officer (CEO), and administrators of employees' investment retirement accounts (IRAs) were all "fiduciaries" under plan, through allegations that all took part in decision to have plan invest in corporation's stock. Employee Retirement Income Security Act of 1974, § 402(a)(2), as amended, 29 U.S.C.A. § 1102(a)(2).

[3] Pensions ⚿44

296k44 Most Cited Cases

Provision in employee retirement investment plan, subject to ERISA, that investment committee had full discretion to decide investment of fund proceeds, did not preclude claim that corporation, board of directors, chief executive officers and members of benefits administration committee (BAC) were functional fiduciaries under ERISA, by virtue of exercising control over investment process. Employee Retirement Income Security Act of 1974, § 502, as amended, 29 U.S.C.A. § 1132.

[4] Pensions ⚿48

296k48 Most Cited Cases

[4] Pensions ⚿83.1

296k83.1 Most Cited Cases

In order to state claim that specified individuals were fiduciaries of employee retirement investment plans subject to ERISA, and breached fiduciary duties by making imprudent investments in employer's securities, it was not necessary to plead facts refuting presumption that investments were prudent, by virtue of being made in stock fund that was employee stock option plan. Employee Retirement Income Security Act of 1974, § 502, as amended, 29 U.S.C.A. § 1132.

[5] Pensions ⚿48

296k48 Most Cited Cases

Claim was stated that corporation, board of directors' committee, and chief executive officer (CEO) violated fiduciary duty imposed by ERISA by failing to monitor activities of benefits administration committee (BAC) and investment committee (IC),

2004 WL 253736
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Page 2

resulting in imprudent investments in corporation's stock, by employee retirement plan subject to ERISA. Employee Retirement Income Security Act of 1974, § 502, as amended, 29 U.S.C.A. § 1132.

[6] Pensions ⟲83.1
296k83.1 Most Cited Cases

Heightened pleading requirements of federal procedural rule, imposed when fraud was alleged, were inapplicable to allegations that retirement plan fiduciaries violated ERISA by failing to inform affected parties that allegedly imprudent investments were being made in stock of corporation. Employee Retirement Income Security Act of 1974, § 502, as amended, 29 U.S.C.A. § 1132; Fed. Rules Civ. Proc. Rule 9(b).

[7] Securities Regulation ⟲11.40
349Bk11.40 Most Cited Cases

Claim that Securities Act registration requirements were not complied with does not require statement of facts showing suit was brought within limitations period. Securities Act of 1933, § § 5, 12, 13, 15 U.S.C.A. § § 77e, 77l, 77m.

[8] Limitation of Actions ⟲58(1)
241k58(1) Most Cited Cases

Claim that corporation sold shares that were not registered, as required by Securities Act, was not barred by statute of limitations, despite allegation that sales of unregistered shares began on date outside of three year statute of repose; as corporation possessed 10 million registered shares when period began, it was possible those shares were sold first and no unregistered shares were sold until limitations period began. Securities Act of 1933, § 13, 15 U.S.C.A. § 77m.

[9] Limitation of Actions ⟲104.5
241k104.5 Most Cited Cases

Equitable tolling doctrine did not apply to claim that one year statute of limitations, from date of discovery of facts giving rise to claim, barred suit alleging noncompliance with Securities Act registration requirements, with respect to securities offered, sold or delivered outside of period. Securities Act of 1933, § § 12(a), 13, 15 U.S.C.A. § § 77l(a), 77m.

[10] Limitation of Actions ⟲58(1)
241k58(1) Most Cited Cases

Possibility that securities in question were delivered less than one year prior to commencement of suit precluded dismissal of Securities Act suit on grounds that one year statute of limitations on suit alleging offer, sale or delivery of unregistered securities had expired. Securities Act of 1933, § § 12(a), 13, 15 U.S.C.A. § § 77l(a), 77m.

[11] Securities Regulation ⟲11.40
349Bk11.40 Most Cited Cases

Claimants were not required to substantiate claim that corporation and named individuals were "sellers" of securities allegedly distributed in violation of Securities Act, by detailing specific categories of transactions, establishing they were for value, and showing involvement by corporation and individual defendants; complaint gave necessary fair notice that claimants intended to prove seller status. Securities Act of 1933, § 12(a)(1), 15 U.S.C.A. § 77l(a)(1); Fed. Rules Civ. Proc., Rule 12(b)(6).

[12] Securities Regulation ⟲11.40
349Bk11.40 Most Cited Cases

Investors were not required to substantiate claim that chief executive officer (CEO) controlled corporation, in suit claiming violation of Securities Act by control person; complaint gave sufficient notice that control person liability was being sought. Securities Act of 1933, § 15, 15 U.S.C.A. § 77o.

Howard Shapiro, Attorney at Law, New Orleans, LA, Kirk Alan Parry, Jr., Smith Anderson Blount Dorsett Mitchell & Jernigan, Raleigh, NC, for plaintiff.

Barry C. Barnett, Susman Godfrey LLP, Dallas, TX, Richard P. Keeton, Nickens Keeton Lawless Farrell & Flack, Houston, TX, for defendant.

PRACTICE AND PROCEDURE ORDER NO 5
(ERISA LITIGATION)

DAVIS, District J.

*1 This suit is half of an action transferred to this Court for resolution of preliminary issues in multidistrict litigation ("MDL"). [FN1] In this portion of the MDL case, Plaintiffs have brought a civil enforcement action pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and an action for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

relief pursuant to § 12(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77l (a)(1). [FN2] The Court has received several motions to dismiss. Defendants Electronic Data Systems Corporation ("EDS"), former EDS Chief Executive Officer Richard H. Brown ("CEO Brown"), the EDS Benefits Administration Committee [FN3] ("BAC"), the Investment Committee [FN4] for EDS plans ("IC"), former EDS employee Kim L. McMann, and current EDS employee Joy Chandler (collectively the "EDS Defendants") have filed a Motion to Dismiss ERISA Claims. (Docket No. 47). [FN5] Additionally, Defendants C. Robert Kidder, Ray J. Groves and William H. Gray III, who serve on the EDS Compensation and Benefits Committee, (collectively the "Board Defendants") have also filed a Motion to Dismiss under Rules 12(b)(6) and 9(b). (Docket No. 46). Finally, the Court has also received a Motion to Dismiss Rescission Claims (Docket No. 45) from Defendants EDS and CEO Brown. Having considered the parties' submissions and oral argument the Court DENIES all three motions.

BACKGROUND [FN6]

Defendant EDS is a world-wide provider of information technology services. Although EDS provides a wide range of services to its clients, its Information Solutions business line is by far its largest component. [FN7] The Information Solutions business line, allegedly contributing 75 percent ($16.2 billion) of EDS' total reported revenue in 2001, became the cornerstone of EDS' business model under CEO Brown's direction. [FN8] After being appointed CEO in 1999, Brown restructured the then-"foundering" company around Information Solutions. To anchor the Information Solutions line, Brown based the company's new business model around so called "mega-deals."

The "mega-deals" are multi-year information technology ("IT") outsourcing contracts negotiated for over $250 million each. Mega-deal contracts frequently had terms of 8-10 years and potential revenue streams running into the billions of dollars. In 2000 and 2001 EDS announced a string of new mega-deals and in 2001 the company declared that it had an $80 billion backlog of contracts. [FN9] Based on these mega-deals and EDS' business model, EDS made numerous positive statements during the class period regarding its business prospects. Allegedly, Brown and other Defendants represented that these large IT contracts were safe, annuity-like deals.

However, Plaintiffs allege that in contrast to EDS' representations, the "mega-deals" were inherently risky. Plaintiffs allege that the contracts were subject to substantial risks from benchmarking and milestone contract provisions which, if triggered, negatively affected EDS. Also, the "mega-deal" contracts included early termination provisions that allowed clients to leverage renegotiated terms unfavorable to EDS.

*2 Plaintiffs further allege that EDS' accounting procedures and certain contractual obligations exacerbated the "mega-deal" contracts' inherent risk. EDS employed percentage of completion ("POC") accounting on its large contracts, which allowed it to recognize a dollar of revenue for every dollar of cost incurred. [FN10] Although POC can be a legitimate accounting procedure, it can magnify problems associated with increased costs or pricing reductions. Additionally, some of EDS' exceptionally large government contracts required large up-front capital investments that reduced EDS' liquidity. [FN11] And finally, EDS' exposure to high-risk industries, such as the airline industry, allegedly made the company's investment in the mega-deals a risk.

Plaintiffs further allege that EDS defendants were, or should have been, aware of the company's risks during the proposed class period. Allegedly, CEO Brown and 125 top executives discussed various business units in detail during monthly conference calls. Also, individual Defendants allegedly had constant access to the web-based "Service Excellence Dashboard," which displayed the status of over ninety percent of EDS' accounts.

EDS' business risks are relevant because EDS' stock value affected Plaintiffs' interests in the EDS 401(k) retirement plan ("Plan"). The Plan is allegedly an "eligible individual account plan" under ERISA which allows EDS employees to contribute up to 20 percent of their income into one or more various investment options. One of the offered investment options was the EDS Stock Fund, which invested up to 99 percent of its assets in EDS stock. Not only did the Plan offer the EDS Stock Fund as an investment option, but whenever EDS made matching contributions on employee investments, those matching contributions were invested in the EDS Stock Fund. Plaintiffs allege that the EDS Stock Fund represented over 20.8 percent of total Plan assets on December 31, 2000.

Because of Defendants' access to company information, Plaintiffs allege that Defendants should have foreseen the September 19, 2002 drop in EDS

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 253736
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Page 4

stock price which allegedly harmed Plaintiffs' Plan interests. On September 18, 2002 EDS issued a press release announcing that its earlier estimate of a 4-6 percent revenue increase was incorrect, and that the company would actually suffer a 2- 5 percent revenue decrease. Also, EDS announced that the expected 74 cents earnings per share for third quarter 2002 would actually be 12-15 cents per share. The next day, Plaintiffs allege "EDS's stock price plummeted over fifty percent to close at $17.20, wiping out some $8 billion in market value, including significant Plan value for shares held by Plan participants and beneficiaries in the EDS stock fund."

EDS' business setbacks underpin Plaintiffs' allegations that Defendants breached their fiduciary duties under ERISA by continuing to invest Plan funds in EDS stock despite knowledge that the stock was an inherently risky investment. Plaintiffs allege that all Defendants were ERISA fiduciaries with various duties, including the duty to prudently manage Plan investments. [FN12] Plaintiffs claim that Defendants breached their fiduciary duty of prudence by continuing to invest Plan assets in high-risk EDS stock. Furthermore, Plaintiffs allege that Defendants misled Plaintiffs, and thus breached their fiduciary duties, by issuing false and misleading Summary Plan Descriptions ("SPDs") to Plan beneficiaries. Finally, Plaintiffs allege that Defendants failed to disclose inherent risks in EDS' IT outsourcing contracts and in its association with the airline industry.

*3 To effectuate their claims, Plaintiffs have sued on behalf of a proposed class and subclass. The named plaintiffs are current and former EDS employees who are or were beneficiaries of the EDS 401(k) plan ("Plan"). They have sued on behalf of "all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the EDS Stock Fund between September 7, 1999 and the present" (the "Class"). Additionally, they have brought the Securities Act claims on behalf of a subclass of "all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the Plan purchased EDS stock through the EDS Stock fund between October 20, 2001 and November 18, 2002, inclusive" (the "Rescission Class").

STANDARD OF REVIEW

The Court's standards of review for Defendants' Rule 12(b) motion are well established. [FN13] The Court construes the complaint in Plaintiffs' favor and takes all well-pleaded facts as true. *Kane Enters. v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir.2003). However, conclusory allegations and legal conclusions will not prevent a motion to dismiss. *In re MasterCard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir.2002). Most importantly, the purpose of a plaintiff's pleadings are to provide notice, and "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Because pleadings are only required to give notice of a claim, Federal Rule of Civil Procedure 8 generally does not require plaintiffs to plead every fact that they must ultimately prove. See id.; *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999) (holding that a pleading may give proper "fair notice" even where only the title of the theory is pled); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory...."); *Abdoh v. City of Chicago*, 930 F.Supp. 311, 313 (N.D.Ill.1996). Rule 8's requirement of a "short and plain" statement of a plaintiff's claims is in fact defeated when plaintiffs choose to, or courts require plaintiffs to, plead excessive facts. *Bennett*, 153 F.3d at 518. Indeed, complaints

> are supposed to be succinct.... Any need to plead facts that, if true, establish each element of a "cause of action" was abolished by the Rules of Civil Procedure in 1938, which to signify a radical change from code [fact] pleading also replaced "cause of action" with "claim for relief." One pleads a "claim for relief" by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.

*Sanjuah v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994) (internal citations omitted). The federal notice pleading requirement requires litigants to plead more than mere conclusions. *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir.1995). However, the federal rules have rejected fact pleading in favor of notice pleading, and only require litigants to plead facts sufficient to allow their opponents to prepare a defense. [FN14] See *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999). Defendants' motions to dismiss give the Court cause to consider and apply the federal pleading standards in great detail.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*4 Additionally, the Court applies the standards for a Rule 12(b)(6) motion despite the evidence presented in Defendants' motions because none of the evidence presented transforms them into motions for summary judgment. See FED. R. CIV. P. 12 (requiring courts to treat motions to dismiss as Rule 56 motions for summary judgment where "matters outside the pleading are presented to and not excluded by the court"). Despite the general rule prohibiting the Court from considering outside evidence in this motion to dismiss, the Court may consider (1) documents required to be filed and actually filed with the SEC, and (2) facts of which the Court takes judicial notice. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996). Additionally, the Court may consider documents referred to in the Plaintiffs' Complaint and essential to the Plaintiffs' claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)). These rules allow the Court to consider any evidence referred to in this Opinion.

## DEFENDANTS' FIDUCIARY STATUS

The Court must determine the Defendant's fiduciary status, for purposes of this Rule 12 motion, before it can address Defendants' arguments against each of Plaintiffs' Counts. Because this is an action for breach of fiduciary duty under ERISA, Plaintiffs' claims are necessarily predicated on Defendants' status as fiduciaries. Accordingly, Defendants' primarily argue theories explaining why they are not fiduciaries or do not have the particular fiduciary duty Plaintiffs claim they violated. Therefore, the Court must first determine Defendants' fiduciary status and the scope of Defendants' fiduciary duties for purposes of this motion.

[1] Generally, "under ERISA, a person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations (the functional or *de facto* method) or by express designation by the ERISA plan documents." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 543 (S.D.Tex.2003) (hereafter "*Enron* "). Someone is a functional fiduciary under ERISA:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any discretionary authority or discretionary responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under this definition, fiduciary status is determined "in functional terms of control and authority over the plan. However, a person is a fiduciary only with respect to those aspects of the plan over which he exercises actual authority or control." *Enron*, 284 F.Supp.2d at 544 (citing *Bannistor v. Ullman*, 287 F.3d 394, 401(5th Cir.2002)). Additionally, a named fiduciary under ERISA is:

> *5 a fiduciary who is named in the plan instrument or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such and employee organization acting jointly.

29 U.S.C. § 1102(a)(2).

[2] It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings. The issue of fiduciary status is a mixed question of law and fact. *Kramer v. smith Barney*, 80 F.3d 1080, 1084 n. 2 (5th Cir.1996); *Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir.1995). Moreover, "fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." *Enron*, 284 F.Supp.2d at 544. Thus, under Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status. Although Plaintiffs' factual pleadings make it unnecessary to determine the minimum allegations of fiduciary status necessary to survive a 12(b)(6) motion to dismiss, the Court notes that other jurisdictions have established low pleading thresholds by holding that the allegation that defendants "exercised discretionary authority or control with respect to the management of [the plan]" is sufficient to survive a 12(b)(6) motion. *Smith v. Local 819 IBT Pension Trust*, 291 F.3d 236, 241 (2d Cir.2002); *Maez v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d 1488 (10th Cir.1995).

Plaintiffs have made factual allegations that Defendants are named fiduciaries. Citing to paragraph 58 of the Plan document, Plaintiffs' Complaint alleges that EDS designated itself, its Board of Directors (including the Board Committee Defendants and CEO Brown), the Investment Committee, and the Benefits Administration Committee as Plan fiduciaries. Additionally,

Plaintiffs' Complaint alleges that the Plan documents do not effectively delegate the named fiduciaries' duties to other persons or entities. [FN15] Plaintiffs' Complaint also alleges that all Defendants fall within one of the named fiduciary groups. Considering these allegations as true, the Plan makes Defendants named fiduciaries. Moreover, the Court finds that it is inappropriate at this procedural stage to construe the Plan terms and make factual findings regarding the extent to which the Plan delegates or does not delegate different fiduciary duties among the defendants. However, even if the Plan effectively delegated fiduciary responsibilities, Plaintiffs have also alleged that Defendants are functional ERISA fiduciaries.

Plaintiffs' Complaint declares that "EDS, The Board Committee Defendants, the CEO Defendant [CEO Brown], the Administrator Defendants and the Investment Committee Defendants were all responsible for the selection and monitoring of the Plan's investment options, including the option of Company Stock." First Am. Consolidated Class Action Compl. ¶ 149. Construing this allegation in the light most favorable to Plaintiffs, as the Court must, the Court construes the phrase "were responsible for" to allege that Defendants in fact selected and monitored the investment options rather than to allege only that Defendants had responsibility by the Plan's terms for selecting and monitoring. Thus, Plaintiffs have alleged that CEO Brown, and the other defendants, actually exercised the fiduciary function of managing Plan investments. Considering this one allegation as true, Plaintiffs have pled that Defendants are functional fiduciaries by actually exercising authority and control respecting management of Plan assets. *See* 29 U.S.C. § 1002(21)(A)(i); *Enron,* 284 F.Supp.2d at 544. Moreover, in addition to this one sufficient allegation, Plaintiffs have made specific factual allegations regarding Defendants' functional fiduciary status.

*6 Plaintiffs allege that defendant EDS is a functional ERISA fiduciary. Specifically, the Complaint declares that EDS "was in fact the ultimate decision maker with respect to *all* fiduciary functions other than those effectively delegated to the Trustee... EDS chose to exercise all the fiduciary functions itself... EDS was thus responsible for *all* the fiduciary functions at issue here, including selection of investment options for the Plan, communications with participants, and the monitoring of other fiduciaries." [FN16] Considering the allegation that EDS exercised all fiduciary functions as true, as the Court must, the Court finds that Plaintiffs have pled that EDS is an ERISA fiduciary.

Plaintiffs also allege that Board Defendants were functional ERISA fiduciaries. The Complaint alleges that Board Defendants had the fiduciary authority to appoint other fiduciaries and had "final review and authority over all fiduciary actions taken and decisions made by the Administration Committee Defendants." Defendants' only arguments that Plaintiffs' allegations do not confer fiduciary status on Board Defendants are that Board Defendants' authority is limited to appointing and removing other fiduciaries and that all of Plaintiffs' allegations relate to duties allocated to and exercised by other fiduciaries. Considering Plaintiffs' allegations as true, Board Defendants exercised fiduciary duties beyond the appointment duty by reviewing the Administration Committees' fiduciary functions. Moreover, as a matter of law, courts in the Fifth Circuit have imposed a duty to monitor appointees on fiduciaries with appointment power. *Enron,* 284, F.Supp.2d 511, 659 (S.D.Tex.2003) (holding that "as a matter of law, because Enron...has authority and control over appointments of fiduciaries to administer the plan and control its investments, it also has a fiduciary duty to monitor its appointees"). Thus, although the Court recognizes fact issues regarding the scope of Board Defendants' fiduciary status, at this stage the Court finds that Plaintiffs have adequately alleged that Board Defendants acted as functional fiduciaries with the duty to monitor their appointees.

Finally, Plaintiffs allege, and Defendants do not dispute, that Administration Committee and Investment Committee defendants are functional ERISA fiduciaries. These two committees were primarily responsible for exercising the traditional fiduciary functions. For example, Plaintiffs allege that Administration Committee defendants managed day-to-day Plan operations. Also, Plaintiffs allege that Investment Committee defendants exercised discretionary authority and control over disposition of Plan assets and Plan administration.

BREACH OF FIDUCIARY DUTIES BY COUNT

Having found that Plaintiffs adequately alleged Defendants' fiduciary status, the Court turns to Defendants' attacks on each of Plaintiffs' four counts. Defendants attacks can be summarized as arguments that Plaintiffs cannot state a claim for breach of fiduciary duty because of the manner in which the Plan delegates the fiduciary duties. The Court addresses each count of Plaintiffs' Complaint in turn.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*Count I: Failure to Manage Plan Assets Prudently*

*7 Count I alleges that Defendants breached their fiduciary duties by continuing to offer EDS stock as a Plan investment despite knowledge that EDS was not a prudent investment. Count I begins by reiterating Plaintiffs' allegation that Defendants are fiduciaries "responsible for the selection and monitoring of the Plan's investment options, including the option of Company Stock." Count I further alleges that Defendants knew that EDS stock was an imprudent investment because of EDS allegedly risky business model and accounting practices (discussed *supra* ). Plaintiffs allege that Defendants breached the fiduciary duty of prudence when, despite knowledge of EDS' alleged problems, Defendants: (1) offered EDS stock as an investment option for the plan, (2) directed and approved investment in EDS stock rather than in safer alternatives, (3) invested EDS matching funds for Plan beneficiaries in EDS stock rather than safer alternatives, (4) failed to take adequate steps to prevent the Plan from suffering losses from EDS stock investment, (5) failed to implement any strategy to compensate for the EDS stock's high risk. Count I also alleges that Defendants are subject to co-fiduciary liability for concealing the alleged breach of fiduciary duty and thus enabling each other to further breach the duty of prudence.

[3] Defendants argue that Count I cannot state a claim against EDS, Board Committee, BAC, and CEO Brown for breach of the fiduciary duty of prudent investment because the Plan allocates all investment responsibility to IC. The Plan provides that IC "shall have the discretionary authority to manage, directly or indirectly, all investment of Plan assets." EDS 401(k) Plan, § 9.9. Thus, Defendants argue that as a matter of law only IC can be liable for breaches of duty involving investment of Plan assets.

The Court must reject Defendants' argument because it misses the relevance of Plaintiffs' functional fiduciary allegations. When a defendant is a functional fiduciary, it means that the defendant has become a fiduciary not because of the plan terms, but because the defendant has exercised fiduciary authority. See *Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan* ("*Sommers II*"), 883 F.2d 345, 352 (5th Cir.1989) ("The phrase 'to the extent' [in 29 U.S.C. § 1002(21)(A) ] indicates that a person is a fiduciary only with respect to those aspect of the plan over which he exercises authority and control."); *Enron*, 284 F.Supp.2d at 545 (noting that functional fiduciaries under § 1002(21)(A) are different than named fiduciaries). Here, not only have the Plaintiffs alleged that Defendants are named fiduciaries, but Plaintiffs have also alleged that Defendants are de facto fiduciaries by virtue of controlling Plan investments. Because the Court must accept Plaintiffs' allegations that Defendants have exercised fiduciary authority over Plan investments, delegation of fiduciary duty under the Plan is irrelevant. [FN17] At this stage of the proceedings, Defendants are de facto fiduciaries with respect to Plan investments.

*8 [4] The Court must likewise reject Defendants argument that an "ESOP presumption" bars Plaintiffs' claims. Defendants contend that the EDS Stock Fund is an employee stock option plan ("ESOP") by the Plan's terms. Thus, Defendants rely on cases holding that it is presumed prudent to invest an ESOP in employer stock. See *Moench v. Roberson*, 62 F.3d 553, 568-72 (3d Cir.1995). Those cases hold that "an ESOP trustee is entitled to a presumption that it acted consistently with ERISA in investing plan assets in the employer's securities unless a showing was made that circumstances have arisen that would make such an investment defeat or impair the original purpose of the trust." *Enron*, 284 F.Supp.2d at 534 n. 3. Although courts generally refuse to consider presumptions at the pleading stage, Defendants rely heavily on a district court opinion holding that plaintiffs must affirmatively plead facts sufficient to overcome the ESOP presumption. *Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272, 280 (D.R.I.2003).

The *Lalonde* court adopted the ESOP presumption and made the presumption a pleading requirement. *Id.* In *Lalonde,* defendant Textron had established an ESOP plan for the plaintiff employees' benefit. *Id.* at 275. Under Textron's ESOP, the trustee automatically invested 50% of employee contributions and 100% of employer matching contributions into Textron stock. *Id.* at 276. Plaintiffs alleged that the trustee violated its fiduciary duties by investing in Textron stock when volatile conditions caused Textron stock to lose 43% of its value over one year. *Id.* The court noted that ESOP fiduciaries are in the "unique situation of having to facilitate the ESOP goal of employee ownership, while at the same time being bound by ERISA's rigorous fiduciary obligations." *Id.* at 278. Thus, the court adopted the "reasoning of the Third and Sixth Circuits that an ESOP fiduciary is entitled to a presumption that its decision to remain invested in employer securities was reasonable." *Id.* at 279. However, with no citation or explanation, the *Lalonde* court declared that plaintiffs must plead facts sufficient to overcome the evidentiary presumption or

2004 WL 253736
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Page 8

have their case dismissed on a 12(b)(6) motion. *Id.*

Generally, courts should not apply evidentiary standards at the motion to dismiss stage because doing so conflicts with Federal Rule of Civil Procedure 8(a). [FN18] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Recently, the Supreme Court illustrated this concept when it struck down Second Circuit rulings requiring plaintiffs to plead facts sufficient to establish a *McDonnell Douglas* prima facie case in Title VII cases. *Id.* The Court noted that *McDonnell Douglas* establishes an evidentiary framework regarding the parties burden of proof and consequently held that Rule 8(a)'s notice pleading requirements do not require plaintiffs to affirmatively plead facts satisfying the evidentiary framework. *Id.* at 510-11. Additionally, the Court held that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511. After noting that *McDonnell Douglas* does not apply when there is direct evidence of discrimination, the Court held that because a plaintiff may discover direct evidence of discrimination during discovery, it would be premature to require plaintiffs to plead the *McDonnell Douglas* framework in every case. *Id.* at 511-12 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). Furthermore, the Court held that requiring plaintiffs to plead facts satisfying an evidentiary standard conflicts with Rule 8(a)'s requirement that a complaint "must include only a short and plain statement of the claim showing that the pleader is entitled to relief" that only needs to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (*internal quotations omitted*). In sum, the federal rules of civil procedure establish a liberal notice pleading requirement that allows broad access to discovery and relies on motions for summary judgment to eliminate claims lacking merit. [FN19] *See Id.* at 512-14.

*9 The Court holds that requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement. The *Moench* ESOP presumption is like the *McDonnel Douglas* framework in that it is an evidentiary standard controlling Plaintiffs' ultimate burden of proof. *Stein v. Smith*, 270 F.Supp.2d 157, 172 (D.Mass.2003) (describing the ESOP presumption as an evidentiary matter). As such, the problems the Supreme Court described with applying evidentiary standards at the motion to dismiss stage apply here. For example, just as the Supreme Court noted that revelations in discovery could render *McDonnell Douglas* inapplicable, in this case discovery could establish that the Plan is not an ESOP and thus the ESOP presumption is inapplicable. Indeed, the Court is not certain that the Plan is an ESOP. Although the parties may have properly provided the Court with sufficient evidence to determine the Plan's ESOP status, the Court is reluctant to do so at this early juncture because of the absence of any formal discovery. *See Enron*, 284 F.Supp.2d 511, 534 n. 3 (S.D.Tex.2003) ("A determination as to whether an ESOP fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record."). Furthermore, the Court cannot reconcile *Lalonde* 's requirement that plaintiffs must plead facts rebutting an evidentiary presumption with Rule 8(a)'s requirement that the complaint must only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. Thus, the Court rejects the *Lalonde* holding and Defendants' argument that Plaintiffs must plead facts rebutting the ESOP presumption. *See Stein*, 270 F.Supp.2d at 172 (holding that plaintiffs need not plead facts rebutting the ESOP presumption).

*Count II: Failure to Monitor*

[5] In Count II, Plaintiffs allege that Defendants failed to "monitor appropriately the Administrator Defendants [BAC] and the Investment Committee [IC] Defendants and failed to provide them with accurate information." Plaintiffs allege that the duty to appoint carries with it a duty to monitor appointees, which allegedly "entails both giving information to and reviewing the actions of the monitored fiduciaries." First Am. Consolidated Class Action Compl. ¶¶ 159-160. Count II contends that EDS, the Board Committee Defendants, and CEO Brown breached the duty to monitor by not ensuring that the ERISA fiduciaries they were responsible for monitoring (1) had access to information regarding EDS' alleged financial difficulties and (2) appreciated the risk to beneficiaries that the Plan's undiversified portfolio created. Additionally, Count II contends that EDS, Board Committee, and CEO Brown failed to disclose accurate information about EDS' financial status to BAC and IC as the duty to monitor required. Considering Count II's allegations, the first issue is whether any such duty to monitor exists.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*10 ERISA law imposes a duty to monitor appointees on fiduciaries with appointment power. In *Leigh v. Engle,* the Seventh Circuit held that two fiduciaries responsible for selecting and retaining the plan administrators had a "duty to monitor appropriately the administrators' actions." 727 F.2d 113, 135 (7th Cir.1984). The court explained that the two fiduciaries could not "abdicate their duties under ERISA merely through the device of giving their lieutenants [appointees] primary responsibility for the day to day management of the trust." *Id.* Rather, the two fiduciaries "were obliged to act with an appropriate prudence and reasonableness in overseeing" the appointees' conduct. *Id.* A Department of Labor Interpretive Bulletin further explains: "at reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8 at FR-17. Adopting this reasoning, other courts have imposed a "duty to monitor" appointees. *See e.g., Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465(4th Cir.1996); *Martin v. Feilen,* 965 F.2d 660, 669-70 (8th Cir.1992); *Enron,* 284 F.Supp.2d 511, 553, 661 (S.D.Tex.2003). The Court finds no reason to reject those cases adopting a duty to monitor.

Although the Court accepts the duty to monitor's existence, the Court makes no holding regarding the duty's scope. Courts recognizing the duty to monitor have also given the duty a limited scope. *Selman,* 98 F.3d at 1466 n. 10 ("courts have properly taken a restrictive view of the scope of this duty and its attendant potential for liability"); *Enron,* 284 F.Supp.2d at 554-55. In this case, Plaintiffs have alleged a very broad duty to monitor requiring defendants to take at least seven specific actions in this case. However, at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges. The Court simply holds that some duty to monitor does exist and that Plaintiffs have sufficiently pled a possible cause of action sufficient to allow them access to discovery. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Similarly, Defendants' remaining arguments also fail because of the Court's narrow review on a motion to dismiss. Defendants argue that the Court should dismiss the complaint because it does not allege certain facts: that the Board Committee actually possessed superior information than its appointees, that the IC would have acted differently if given information on EDS' financial condition, or the name of anyone unaware of the EDS Stock Fund's nature. Even without these facts pled, Plaintiffs have given a short and plain statement of their claim sufficient to give Defendants notice. The Federal Rules of Civil Procedure do not subscribe to fact pleading and Defendants' argument must therefore fail.

*Count III: Failure to provide complete and accurate information to Plan participants and beneficiaries*

*11 [6] In Count III, Plaintiffs allege that Defendants breached a fiduciary duty by misstating or concealing EDS' financial status. Plaintiffs allege that the duty of loyalty "requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the Plan." First Am. Consolidated Class Action Compl. ¶ 171. Defendants allegedly breached their fiduciary duties by not disclosing information which would have revealed problems with EDS stock as an investment, when Defendants allegedly knew that EDS stock was overpriced because EDS faced serious financial difficulties unknown to the public. In other words, Plaintiffs allege that Defendants, as fiduciaries, offered their beneficiaries an investment which they knew to be unsound and concealed any information that would have allowed the beneficiaries to discover that the investment was unsound.

First, Defendants argue that Count III is a fraud claim that is not pled with the required specificity under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Without any argument, or on-point citation, Defendants assert that "because Plaintiffs allege the material misrepresentations and omissions referenced in the Summary Plan Description were 'fundamentally deceptive,' Plaintiffs must plead such allegations with particularity under Rule 9(b)."

In this case, Rule 9(b)'s heightened pleading requirements do not apply. Allegations of breach of fiduciary duty are not necessarily fraud allegations. *See Fink v. Nat'l Sav. & Trust Co.,* 772 F.2d 951, 959 (C.A.D.C.1985) (holding that plaintiffs did not plead fraud where the complaint only alleged a breach of fiduciary duty). Only a breach of fiduciary duty claim

2004 WL 253736
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Page 10

which includes a fraud claim implicates Rule 9(b). Concha v. London, 62 F.3d 1493, 1503 (9th Cir.1995), cert. dismissed, 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996) ("Rule 9(b) is applicable where the plaintiffs allege fraud, but not where they simply allege breaches of ERISA fiduciary duties."); Precision Vascular Sys., Inc. v. Sarcos, L.C., 199 F.Supp.2d 1181, (D.Utah 2002) ("Generally, a plaintiff pleading a claim for breach of fiduciary duty need only comply with Rule 8, not Rule 9(b), because this claim is not based on fraud."). In this case, Plaintiffs have alleged breach of a fiduciary duty to inform. The sole basis of Defendants' potential liability is breach of that fiduciary duty, not a common law or statutory fraud theory. Although fraud and breach of a duty to inform may both involve an omission, the Court does not find that every breach of a fiduciary duty to inform is a scheme to defraud. Thus, Rule 9(b) does not apply to these pleadings, and the Court must address Defendants remaining arguments.

*12 First, at this procedural stage, the Court does not accept Defendants' argument that they had no duty to communicate with Plan beneficiaries. Defendants argue that they have no duty to communicate with Plan beneficiaries because the Plan allocated the duty to communicate to BAC. Against Defendants' argument, the Court considers Plaintiffs' allegations that: (1) Defendants are de facto fiduciaries who "were all responsible for the selection and monitoring of the Plan's investment options," [FN20] (2) the Plan does not effectively allocate fiduciary duties, [FN21] and (3) the Plan requires all fiduciaries to "furnish or cause to be furnished to each other Fiduciary *all information* needed for the proper performance of such Fiduciary duties." [FN22] Considering Plaintiffs' allegations as true, the Court cannot hold that Plaintiffs can prove no set of facts consistent with the allegations that would establish a duty to communicate with Plan beneficiaries. *See* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Discovery could reveal improper delegation of fiduciary duty, de facto assumption of the duty to communicate, or imposition of such duty by the Plan.

Assuming that Defendants have a duty to communicate with Plan beneficiaries, the Court must also reject Defendants argument that they could not perform the duty without breaking federal insider trading laws. Defendants claim that they obtained information about EDS' allegedly poor financial situation in their corporate capacity, and that the information was not publicly available. Defendants then argue that, in their fiduciary capacity, if they were to reveal the non-public information to the Plan beneficiaries they would violate federal insider trading laws. Although the Court agrees that ERISA does not require Defendants to violate federal insider trading laws by imposing a so-called "duty to tip," Defendants cannot use the securities laws to shield themselves from their fiduciary duty to protect Plan beneficiaries. The Court adopts Judge Harmon's analysis on this same issue involving the interplay of the ERISA and securities statutes:

> As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investigating public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

Enron, 284 F.Supp.2d 511, 565 (S.D.Tex.2003).

*Count IV: Breach of the Duty of Loyalty*

Count IV alleges that Defendants breached the duty of loyalty to the Plan beneficiaries. Plaintiffs allege that ERISA "imposes on a plan fiduciary a duty of loyalty-that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries." First Am. Consolidated Class Action Compl. ¶ 185. During the proposed class period, Defendants were both Plan fiduciaries and EDS corporate officers who allegedly had duties to protect the company and the Plan beneficiaries. Allegedly, Defendants faced a conflict of interest when as corporate officers they had both an incentive to conceal unknown information about EDS' stock value and a duty to reveal that information to Plan beneficiaries. Claim IV alleges that Defendants breached their "duty to avoid conflicts of interest and to promptly resolve them when they occurred" by: continuing to offer EDS stock as a Plan investment, failing to hire independent fiduciaries and/or advisors who did not face the same conflict of interest as fiduciaries, and failing to take any other steps necessary to eliminate the inherent conflict of interest.

*13 Defendants arguments against Count IV are

more appropriate for a motion for more definite statement than a motion to dismiss. Defendants do not deny that they have a fiduciary duty of loyalty. Instead, they attempt to place un- pled factual restrictions on Count IV. For example, even though Count IV does not mention CEO Brown's incentive-based compensation, Defendants argue that Count IV cannot state a claim because ERISA permits fiduciaries to be paid under incentive-based compensation schemes. Additionally, Board Committee defendants claim that Count IV must fail because it does not allege facts showing a breach of the fiduciary duty to appoint. As this Opinion has discussed at length, Plaintiffs allege that all Defendants have assumed broad fiduciary roles. Taking those allegations as true, Count IV can allege Defendants breached their duty of loyalty in any one of their fiduciary capacities. Defendants arguments improperly try to restrict what Plaintiffs have alleged. If Defendants do not understand Count IV's allegations, they should file a motion for more definite statement, not a motion to dismiss.

RESCISSION CLAIMS

The rescission claims, brought pursuant to § § 5 and 12 of the Securities Act, arise from a somewhat different set of facts than the ERISA claims. Section 5 of the Securities Act requires that all securities sold to members of the investing public be registered with the SEC, with certain limited exceptions. 15 U.S.C. § 77e. Section 12(a)(1) of the Securities Act imposes "a kind of strict liability upon a seller of securities for failure to register securities subject to the 1933 Act's registration requirements before selling them." Dennis v. Gen. Imaging, Inc., 918 F.2d 496, 503 (5th Cir.1990); see also 15 U.S.C. § 77l (a)(1). Plaintiffs allege that between June, 1996 and November 18, 2002 EDS issued unregistered shares of its stock to the Plan. [FN23] Thus, Plaintiffs allege that EDS has violated § § 5 and 12 of the Securities Act, and that CEO Brown is jointly and severally liable as a person who controlled EDS under § 15 of the Securities Act, 15 U.S.C. § 77o. Accordingly, Plaintiffs allege that "all members of the Rescission Subclass have the right to rescind and recover the consideration paid for the EDS stock purchased for their Plan accounts during the Rescission Class Period, less any income derived thereon, or to recover damages in an amount to be proved at trial for any such EDS stock no longer held in such person's Plan account." First Am. Consolidated Class Action Compl. ¶ 204.

Defendants present several arguments why Plaintiffs' complaint fails to state a claim upon which relief can be granted. First, Defendants argue that Plaintiffs' complaint should be dismissed for failure to plead compliance with the statute of limitations. Second, Defendants argue that EDS was not a "seller" under Section 12(a)(1) for some of the shares sold to the Plan. This argument attacks one of the prima facie elements for a Section 12(a)(1) claim: (1) an offer or sale of a security; (2) which security was not registered pursuant to Section 5 of the Securities Act; and (3)the use of U.S. mails or a facility of interstate commerce in connection with the offer or sale. Dennis, 918 F.2d at 503-04. And third, Defendants argue that Plaintiffs have failed to adequately plead that CEO Brown controlled the offers or sales. The Court addresses Defendants' arguments in turn. [FN24]

*Must Plaintiffs affirmatively plead facts demonstrating compliance with the statute of repose?*

*14 [7] First, the Court addresses Defendants' argument that the Complaint is defective because it does not affirmatively plead facts demonstrating that Plaintiffs have sued within the statute of limitations. [FN25] Defendants argue that under the statutory framework, compliance with the statute of limitations is an "essential ingredient of the right of rescission" and not merely an affirmative defense. Therefore, according to Defendants, Plaintiffs must affirmatively plead compliance with the statute of limitations. Defendants have cited non-binding cases requiring plaintiffs to affirmatively plead compliance with the statute of limitations simply because the statute of limitations is an essential element of Plaintiffs' claim under the securities laws: McMerty v. Burtness, 72 F.R.D. 450, 453 (D.Minn.1976); Ingenito v. Bermec Corp., 376 F.Supp. 1154, 1173 (S.D.N.Y.1974); Bryant v. Uland, 327 F.Supp. 439, 446 (S.D.Tex.1971).

Despite the fact that the majority of cases require plaintiffs to affirmatively plead facts showing compliance with the statute of limitations under 15 U.S.C. § 77m, the Court must question those holdings. See P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92, 2004 WL 50787, *7 (2d Cir.2004) (questioning the "preponderance" of precedent where it does not provide compelling analysis). First, none of the authorities requiring plaintiffs to affirmatively plead compliance with the statute of limitations are binding on this court, and therefore are only "persuasive" authorities. Second, none of these "persuasive" authorities give the Court a persuasive reason to ignore Rule 8(a)'s requirement of a short and plain statement in favor of a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

heightened, fact-pleading requirement. As noted above, the great majority of cases requiring plaintiffs to affirmatively plead facts showing compliance with the statue of limitations simply declare "because compliance with Section 13 is an essential element of the rights created under Sections 11 and 12(2) [15 U.S.C. § § 77k and 77l], compliance is a substantive rather than a procedural matter. Therefore a plaintiff must affirmatively plead facts indicating the action has been timely brought." *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. 1028, 1033 (D.Minn.1981) (internal citation omitted); *see also Southwest Investments I v. Midland Energy Co., Inc.*, 596 F.Supp. 219, 222 (E.D.Mo.1984); *McMerty v. Burtness*, 72 F.R.D. 450, 453 (D.Minn.1976); *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1173 (S.D.N.Y.1974); *Bryant v. Uland*, 327 F.Supp. 439, 446 (S.D.Tex.1971). The Court cannot accept those courts' reasoning because Rule 8(a) makes no distinction between pleading requirements for "substantive" and "procedural" elements; Rule 8(a) only requires "fair notice." FED. R. CIV. P. 8(a); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999) (holding that a pleading may give proper "fair notice" even where only the title of the theory is pled); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory...."). The Court must question cases requiring plaintiffs to plead facts establishing every element of their prima facie case.

*15 Only the oldest cases requiring Plaintiffs to plead facts showing compliance with the statute of limitations articulate any reason for doing so. For example, the *Shonts v. Hirliman* court explains that it required Plaintiffs to plead facts showing compliance with the statute of limitations because of a fraudulent concealment allegation. 28 F.Supp. 478, (S.D.Cal.1939). *Shonts* involved a claim under 15 U.S.C. § 77k for filing a *false* registration statement [FN26], which the court concluded was a statutory claim based on fraud. *Id.* at 481-82. The court then turned to the statute of limitations for § 77k found in 15 U.S.C. § 77m, and noted that the statute of limitations contained an inherent discovery rule because the action must be brought within one year of "discovery of the untrue statement or omission." [FN27] *Id.* at 485. The court then concluded that "as the basis of the right to recover under the Securities Act is fraud, and the limitation is made dependent upon discovery, these principles should be applied to it." *Id.* at 486. Thus, the court did nothing more than apply basic fraud pleading principles and require the plaintiff to allege facts in the complaint establishing entitlement to § 77m's fraud-based discovery rule. *Id.* at 487 ("Nor were facts stated in the complaint or proved at the trial explaining why discovery was not made sooner.").

*Shonts* illustrates why the Court should not require Plaintiffs to plead facts establishing that they are within the statute of limitations. *Shonts* simply required plaintiffs, before Federal Rule of Civil Procedure 9(b)'s passage, to plead facts establishing fraud and entitlement to tolling the statute of limitations under a discovery rule claim. In this case, unlike *Shonts*, the statutes under which Plaintiffs sue are not based on fraud. Plaintiffs do not sue under § 77k for filing a false registration statement, but rather under § 77e which, in conjunction with § 77l, creates a "strict liability" for selling securities with *no* registration statement. 15 U.S.C. § § 77e, 77l(a)(1); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 503 (5th Cir.1990). Likewise, whereas the statute of limitations set forth in § 77m includes a discovery rule for suits alleging the filing of a false registration statement under § 77k, the statute of limitations does not include a discovery rule for suits alleging the sale of securities without a registration statement under § 77l (1). Thus, although the *Shonts* court was absolutely correct in requiring plaintiffs to plead facts supporting allegations of fraud inherent in § § 77k and 77m, it does not follow that plaintiffs are required to plead facts showing compliance with the statute of limitations every time § 77m is implicated.

A Ninth Circuit case perhaps illustrates how confusion on plaintiffs' pleading burdens arose. The Ninth Circuit held that: "in asserting a violation of Section 12 [in that case 15 U.S.C. § 77l(a)(1)], the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations." *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir.1985). Even though *Toombs* involved a § 77l(a)(1) violation, which does not involve any fraud, the court relied on cases involving fraudulent concealment: *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 553 n. 26 (S.D.N.Y.1977)("Since actions under s 12(1) [15 U.S.C. § 77l(a)(1)] are not themselves in the nature of fraud, plaintiffs must point to action by [defendant] which fraudulently concealed their claim in order to take advantage of equitable tolling.") and *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975) (requiring plaintiffs to replead their complaint with factual allegations supporting a fraudulent concealment theory). *Toombs*, 777 F.2d at 468. Allegations of fraud do not fall under Rule 8(a) notice pleading, but rather under the Rule 9(b) heightened pleading standard. FED. R.

CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Thus, *Toombs* extended the Rule 9(b) exception to cases with no fraud allegations. Importantly, *Toombs* provided no reason whatsoever for extending Rule 9(b), and the Court cannot determine that the Ninth Circuit even considered its holding's impact on notice pleading.

*16 The Court must reject those cases which require plaintiffs to plead facts showing compliance with the statute of limitations in every suit brought pursuant to § 77l. Rule 8(a) does not require plaintiffs to plead every element that they must ultimately prove simply because plaintiffs carry the burden of proof. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999) (holding that a pleading may give proper "fair notice" even where only the title of the theory is pled); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory...."); *Abdoh v. City of Chicago*, 930 F.Supp. 311, 313 (N.D.Ill.1996). There is no clause in § § 77e, 77k, 77l, or 77m which shows legislative intent to require plaintiffs to plead facts "because compliance with Section 13 [15 U.S.C. § 77m ] is an essential element of the rights created under Sections 11 and 12(2) [15 U.S.C. § § 77k and 77l (a)(2) ]." The correct rule is that a plaintiff's complaint must give fair notice under Federal Rule of Civil Procedure 8(a) unless Rule 9(b) requires factual allegations of fraud. Thus, because § § 77k and 77l (a)(2) contain inherent fraud elements, plaintiffs must plead compliance with those elements pursuant to Rule 9(b). However, because § 77l (a)(1) contains no fraud element, Rule 9(b) does not apply and a plaintiff's complaint must only provide a short and plain statement of the claim sufficient to "give the defendant fair notice of what the plaintiffs claim is and the grounds on which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Therefore, even assuming that the statute of limitations is an essential element of Plaintiffs' claim under the Securities Act, the Court rejects the argument that Plaintiffs failed to state a claim upon which relief can be granted simply because they did not affirmatively plead compliance with the statute of limitations. Plaintiffs' claim under § 77l (a)(1) gives Defendants fair notice.

*Does Plaintiffs' complaint show a statue of limitations bar on its face?*

[8] Although the Court rejects Defendants' argument that Plaintiffs must affirmatively plead compliance with the statute of limitations, the Court will address Defendants' argument that Plaintiffs cannot state a claim under facts affirmatively pled. Despite the general rule that plaintiffs must only plead facts sufficient to give fair notice, plaintiffs who plead substantial facts can "plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Bennett*, 153 F.3d at 519. Within ethical bounds, plaintiffs generally may choose the facts they plead. When a court construes those facts as true and finds that the facts affirmatively pled preclude plaintiffs' recovery, the court may appropriately find that "it is clear that no relief could be granted under any set of facts that could be proved *consistent with* the allegations." See *Swierkiewicz*, 534 U.S. at 513-14 (2002) (emphasis added). Here, Plaintiffs may have pled that EDS issued unregistered stock since June 1996, and continually issued the unregistered stock until the Tolling Agreement fixed the end of the statute of limitations period at December 20, 2002. If, taking those alleged dates as true, it is clear that the statute of limitations bars Plaintiffs' claim, the Court will dismiss the Rescission Claims on this 12(b)(6) motion. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 n. 6 (5th Cir.1977) ("the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim").

*17 Section 13 of the Securities Act [15 U.S.C. § 77m ] includes both three-year and one-year limitations periods that apply to § 12(a)(1) claims [15 U.S.C. § 77l (a)(1) ]. Section 13 states, in relevant part:
> no action shall be maintained to enforce any liability created under ... section 77l (a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability brought under ... section 77l (a)(1) [12(a)(1) ] more than three years after the security was bona fide offered to the public ....
> 15 U.S.C. § 77m. Because the limitations periods must be read cumulatively, Plaintiffs must bring their cause of action "both within one year of the alleged violation and within three years of the time the security was first bona fide offered to the public." *Ballenger v. Applied Digital Solutions, Inc.*, 189 F.Supp.2d 196, 199 (D.Del.2002).

Plaintiffs' Complaint alleges several facts regarding when EDS issued unregistered stock. First, Plaintiffs allege that while General Motors ("GM") owned EDS, it had filed registration statements covering

2004 WL 253736
--- F.Supp.2d ---
(Cite as: 2004 WL 253736 (E.D.Tex.))

Page 14

10,000,000 shares of GM Class E stock. When EDS split off from GM, Plaintiffs allege that "Registration Statements for the GM Class E Stock were amended to become Registration Statements of EDS with respect to the EDS common stock offered under the Plan." First Am. Consolidated Class Action Compl. ¶ 196. Plaintiffs further allege that EDS did not file a new registration statement until November 18, 2002 and that "between June, 1996 and November 18, 2002, EDS issued to the Plan shares of EDS common stock and Plan interests to be issued in connection with the Plan that were not covered by a registration statement and not exempt from registration under the Securities Act of 1933." Id. at ¶ 198. Plaintiffs' Complaint seeks rescission of those unregistered shares the Plan purchased between October 20, 2001 and November 18, 2002 ("Rescission Period"). [FN28] Id. at ¶ 44. Finally, the Tolling Agreement ends limitations periods on December 20, 2002. Because Plaintiffs' Complaint focuses on 1996, Defendants argue that it is barred under both the three-year and one- year periods.

To determine whether the three-year period bars Plaintiffs' claims, the Court may begin the limitations period on one of two dates. In an issue of first impression in this district, the Court has opportunity to consider when a security is "bona fide offered to the public" under § 13 of the Securities Act, 15 U.S.C. § 77m. The vast majority of courts apply the "first-offered" test to § 13 and hold that a security is bona fide offered to the public when it is first publicly traded, even though it may be traded without a registration statement. P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92, 2004 WL 50787, *6 (2d Cir.2004) (citing cases). In contrast, three courts apply the "last-offered" test and hold that the three-year period does not begin to run until the last day that the unregistered securities are offered to the public. Id. at *7 (citing cases). Neither the Fifth Circuit nor any court in this district has chosen between the "first-offered" and the "last- offered" test. And, although the Court may be persuaded to adopt the "first- offered" test by the recent, well-reasoned Second Circuit case P. Stolz Family Partnership L.P. v. Daum, the Court need not adopt either test at this point because even under the "first-offered" test, Plaintiffs' Complaint may state a claim upon which relief can be granted.

*18 Reading Plaintiffs' Complaint with all deference, as the Court must, the Court does not find that Plaintiffs can prove no set of facts which would place them within the three-year limitations period. Plaintiffs have alleged that EDS had 10,000,000 registered securities in June, 1996, and that EDS began issuing unregistered securities sometime "between" June 1996 and November 18, 2002. Defendants urge the Court to interpret "between" as meaning "from" and thus read Plaintiffs' Complaint to allege that Defendants began issuing unregistered shares in June 1996. Under Defendants' interpretation and applying the "first-offered" test, the unregistered securities would have been bona fide offered in 1996, well outside of the three-year repose period. However, the Court, reading the Complaint in Plaintiffs' favor, finds that "between" does not necessarily mean "from," but can also mean "at some point after June 1996 but before November 2002." Consequently, Plaintiffs' allegation that Defendants issued unregistered shares "between" June 1996 and November 2002 can mean that EDS began issuing the unregistered stock at some point after June 1996 but before November 2002. This would be consistent with Plaintiffs' allegations that EDS had 10,000,000 registered shares in June 1996. Discovery could reveal that EDS continued issuing those registered shares well after June 1996, and only issued unregistered shares within the repose period. The Court reads "between" to only show Plaintiffs' factual uncertainty before discovery has begun, and will not dismiss Plaintiffs' Complaint for that uncertainty which is inherent in our pleading system.

[9][10] Having resolved Defendants' challenge under the three-year repose period, the Court now turns to Defendants' argument that the one-year limitations period under § 77m bars Plaintiffs' claim. Unlike the three-year repose period which is measured from the date at which unregistered stock is first offered to the public, the one-year limitations period is measured from the date at which a violation occurred as to each share of stock. See Mason v. Marshall, 412 F.Supp. 294, 299 (N.D.Tex.1974) (implicitly adopted by Mason v. Marshall, 531 F.2d 1274 (5th Cir.1976)); Buchholtz v. Renard, 188 F.Supp. 888, 892 (S.D.N.Y.1960). A violation occurs when there is an offer, sale, or delivery of unregistered stock. Doran v. Petroleum Mgmt. Corp., 576 F.2d 91, 93 (5th Cir.1978). Courts are to begin calculating the statute of limitations when the last of offer, sale, or delivery occurs. Id. Here, Defendants argue that Plaintiffs' Complaint affirmatively bars at least some of the rescission claims because it seeks rescission of stock sold to the Plan beginning October 20, 2001; 14 months before the Tolling Agreement ends limitations. In response, Plaintiffs allege compliance with the one-year statute of limitations due to equitable estoppel and equitable tolling allegations.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The Court finds that equitable estoppel and equitable tolling doctrines cannot save the Plaintiffs' Complaint because they are inapplicable under the one-year limitations period. Although equitable tolling attaches to every federal cause of action as a general rule, it cannot apply in the face of contrary congressional intent. *Hill v. Texaco, Inc.*, 825 F.2d 333, 334 (11th Cir.1987); *Barton v. Peterson*, 733 F.Supp. 1482, 1490 (N.D.Ga.1990); *see also Childers v. U.S.*, 442 F.2d 1299, (5th Cir.1971) (holding that equitable considerations did not toll the statute of limitations under the Tort Claims Act where plaintiffs conduct was not in strict compliance with congressional waiver of immunity). Congress specifically included a discovery rule for the one-year statute of limitations applicable to claims brought under § § 77k or 77l (a)(2). 15 U.S.C. § 77m (requiring suits under 77k and 77l (a)(2) to be "brought within one year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise reasonable diligence"). In contrast, Congress chose not to include a discovery rule for suits brought under § 77l (a)(1). *Id.* (barring a suit under § 77l (a)(1) "unless brought within one year after the violation upon which it is based"). Based on Congress' omission of a discovery rule in § 77m for § 77l (a)(1) claims and express inclusion of a discovery rule for § 77l (a)(2) claims, courts have consistently found congressional intent to exclude equitable tolling doctrines from § 77l (a)(1) actions. *See e.g., Temple v. Gorman*, 201 F.Supp.2d 1238, 1241-42 (S.D.Fla.2002); *Pell v. Weinstein*, 759 F.Supp. 1107, 1111 (M.D.Pa.1991), *aff'd*, 961 F.2d 1568 (3d Cir.1992); *Barton*, 733 F.Supp. at 1490. Based on the well-reasoned opinions the Court has considered, the Court joins the majority and holds that equitable tolling doctrines do not apply to suits brought under § 12(a)(1) of the Securities Act, 15 U.S.C. § 77l (a)(1).

*19 Having found that Plaintiffs cannot avail themselves of equitable tolling doctrines, the Court must now consider whether Plaintiffs' alleged facts establish noncompliance with the one-year limitations period. Plaintiffs seek rescission of unregistered stocks "sold" beginning October 20, 2001. However, the limitations period begins running at the latest date the unregistered stocks were offered, sold, or delivered. *See Doran, 576 F.2d at 93*. Plaintiffs' Complaint does not specifically mention subsequent delivery, but does allege that "at the time the Tolling Agreement was entered into..., no more than one year had elapsed since EDS offered to sell, sold, delivered after the sale, and solicited the purchase of those unregistered securities in violation of law." First Am. Consolidated Class Action Compl. ¶ 202. Reading the allegations in Plaintiffs' favor, the Court finds at least tenuous support for the notion that even though the sales may have occurred October 20, 2001, actual delivery did not occur until after December 20, 2001, and thus within the one-year limitations period. Although this reasoning strains the deference due Plaintiffs' pleadings, the Court simply does not have sufficient alleged "facts" to find that Plaintiffs cannot recover under any set of facts consistent with the allegations in this procedural posture. The Court must deny Defendants' motion to dismiss on the one-year limitations period, but will entertain other dispositive motions on this subject after discovery has begun.

*Does the Complaint adequately plead that EDS is a "seller" of securities under § 12(a)(1)?*

[11] The Court must also reject Defendants' argument that Plaintiffs' Complaint does not adequately allege that EDS is a "seller" of securities under § 12(a)(1) of the Securities Act. Essentially, Defendants argue that the Court should dismiss Plaintiffs' claims, *with prejudice*, for not making fine factual distinctions between certain types of Plan transactions. Alternatively, Defendants aver that for any claims the Court does not dismiss with prejudice, "the court should require a repleading in which the specific categories of transactions are identified by Plaintiffs, along with facts supporting the contention that the transaction type was 'for value' and involved either direct seller or solicitation liability on the part of Defendants." Notably, Defendants provide no authority for their assertion that Plaintiffs must plead facts affirmatively establishing the "seller" element of Plaintiffs' claim under the federal notice pleading system. Accordingly, the Court finds no reason for requiring fact pleading on this issue. The Complaint has certainly given fair notice that Plaintiffs intend to prove Defendants' seller status, and the Court will not resolve this claim under 12(b)(6) on the fact-intensive "seller" status issue. [FN29] If Defendants truly have no notice that Plaintiffs intend to prove EDS' status as a seller, they may move for a more definite statement.

*Does the Complaint adequately plead that CEO Brown controlled offers and sales?*

*20 [12] The Court likewise rejects Defendants' arguments that Plaintiffs' Complaint states no claim against CEO Brown. First, because the Court does not dismiss the Rescission Claims, it must reject Defendants' argument that "because the Rescission Claims must themselves be dismissed for failure to

state a claim, the Section 15 claim must also be dismissed." Second, again the Court declines to accept Defendants' invitation to require fact pleading in this case. Defendants argue that the Complaint fails to plead sufficient facts establishing that CEO Brown had the power to control EDS. Whether a defendant is a control person is "an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir.1994). Plaintiffs have given fair notice that they intend to ultimately prove that CEO Brown was a control person, and the Court will not require them to violate Rule 8(a) by pleading more than a short and plain statement.

CONCLUSION

Having considered the Parties' submissions and oral argument, the Court DENIES Defendants' motions to dismiss (Docket Nos. 45, 46, and 47). To the extent that the Court has rejected Defendants' arguments based on the standard of review applicable to pleadings and Rule 12(b)(6) motions, Defendants may re-urge those arguments in later dispositive motions after an appropriate amount of discovery. Additionally, the Court takes no position on this action's ultimate disposition and this Opinion should be read accordingly. This Opinion simply finds that Plaintiffs have overcome the low pleading hurdle established under the Federal Rules of Civil Procedure and other applicable law.

FN1. The other half of this action is entitled *In re Electronic Data Systems Corp. "Securities" Litigation,* and involves alleged violations of federal securities laws. The actions have both been transferred to this Court by the MDL Panel because they both arise from the alleged overinflation and subsequent decline of EDS stock values. However, the Court has divided the action into halves for administrative purposes.

FN2. Even though this portion of the MDL case has both an ERISA and Securities Act component, it has been styled "ERISA Litigation" because of the ERISA claim's dominance in terms of alleged recovery and complexity of issues. The Securities Act claim in this portion of the MDL case is wholly separate from and should not be confused with the Securities Act claims alleged in *In re Electronic Data Systems Corp. "Securities" Litigation.*

FN3. The BAC defendant includes current and former members: David R. Nixon, Layla Mocio, Karina L. Pettengill, Michael E. Paolucci, Elaine Moore, and Carl Schwendimann.

FN4. The IC defendant includes current and former IC members: Scott J. Krenz, Myrna B. Vance, H. Paulett Eberhart, James E. Daley, and Carl Schwendimann.

FN5. All docket numbers in this opinion refer to the MDL docket at 6:03-md-1512.

FN6. This background section reflects the facts as Plaintiffs allege them. The Court makes no findings of fact in this opinion.

FN7. EDS' Form 10-K for 2002 declares: "EDS is a professional services firm that offers its clients a portfolio of related services worldwide within the broad categories of traditional information technology outsourcing, business process outsourcing, solutions consulting, management consulting, and product lifecycle management software and services. Services include design, construction and/or management of computer networks, information systems, information processing facilities and business processes."

FN8. EDS' Form 10-K for 2001 declares: "Information Solutions, our largest line of business, encompasses our traditional IT outsourcing business. Information Solutions includes network and system operations, data management, applications development and maintenance, desktop management and field services, as well as Internet hosting and Web site management. Our capabilities help clients align IT and operations with business strategy while ensuring predictable performance and costs."

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

FN9. The highlight of EDS' new mega-deals was a contract to provide an intranet to the United States Navy and Marine Corps. That contract, valued at approximately $6.7 billion is at the heart of the *In re Electronic Data Systems Corp. "Securities" Litigation,* --- F.Supp.2d ---- (E.D.Tex.2004) portion of this MDL case.

FN10. The Court discusses the percentage of completion accounting method and U.S. Navy contract in detail in the companion case *In re Electronic Data Systems Corp. "Securities" Litigation,* --- F.Supp.2d ---- (E.D.Tex.2004).

FN11. Specifically, the Plaintiffs point to a contract with the U.S. Navy and the British government which allegedly reduced EDS' free cash flow by $900 million.

FN12. Specifically, Plaintiffs' Complaint declares "as fiduciaries, Defendants were responsible to monitor on an ongoing basis the prudence of the Plan's investments and investment alternatives. Had Defendants reasonably discharged these obligations, they would have discovered that continued investment in EDS stock and the continued offering of EDS stock as a Plan investment alternative were imprudent because of the volatility of EDS stock...."

FN13. Although Defendants generally move to dismiss under Federal Rule of Civil Procedure 12(b), they also move to dismiss Plaintiffs' claims under Count III under Rule 9(b). The Court addresses Defendants' 9(b) argument in the Count III discussion *infra.*

FN14. This is a general rule subject to important exceptions. See e.g., FED R. CIV. P. 9; *Schultea,* 47 F.3d at 1433-34.

FN15. Paragraph 53 of the Complaint declares "with respect to the fiduciary issues involved here, the Plan documents and other materials obtained by Plaintiffs to date do not indicate that, except to the extent identified herein, any such delegation occurred ." Also, ¶ 206 alleges that a Plan provision purporting to shift fiduciary duty to beneficiaries who direct their Plan investments is ineffective because no beneficiaries in fact directed their Plan investments.

FN16. Plaintiffs' First Amended Consolidated Class Action Complaint ¶ ¶ 62-63.

FN17. The Court does not resolve the issue based on Plaintiffs' allegations that the Plan has not effectively delegated fiduciary authority. In a typical Rule 12(b)(6) motions, the Court would simply reject Defendants' assertion that the Plan had delegated fiduciary authority as contrary to Plaintiffs' pleaded facts. This is not a typical Rule 12(b)(6) motion, however, because of the substantial evidence which the court may consider. Here, the parties have submitted the Plan documents to the Court, and the Court may review them as documents referred to in Plaintiffs' Complaint and essential to Plaintiffs' claim. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). Because the Court may have sufficient evidence to interpret the Plan at this juncture the Court hesitates to simply adopt Plaintiffs' delegation allegations as true. However, the Court opines that it would be unwise to attempt a Plan interpretation now because (1) discovery may reveal evidence that should be considered in the Court's interpretation, and (2) the Court can resolve this issue as discussed above. The Court anticipates an opportunity to interpret the Plan later in the proceedings, but finds that it would be unwise to attempt to do so in this procedural posture.

FN18. Rule 8(a) states, in relevant part: "a pleading which sets forth a claim for relief... shall contain... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).

FN19. The Seventh Circuit accurately stated

why this holding is relevant from a practical litigation standpoint in *Bennett v. Schmidt:* Pressure from the flux of cases makes early disposition of weak claims attractive, freeing judicial time for others that appear to have superior prospects. Matters that formerly were tried now are resolved by summary judgment. But the next time-saving step-resolving under Rule 12(b)(6) matters that formerly were handled by summary judgment-is incompatible with the Rules of Civil Procedure. Litigants are entitled to discovery before being put to their proof, and treating allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8.
153 F.3d 516, 519 (7th Cir.1998) (emphasis in original).

FN20. First Am. Consolidated Class Action Compl. ¶ 149.

FN21. *Id.* at ¶ 53.

FN22. Plan § 9.12(c).

FN23. Effective December 20, 2002, EDS, the Plan, and Plan fiduciaries entered into a "Tolling and Standstill Agreement" ("Tolling Agreement") which tolled all limitations defenses.

FN24. Defendants presented a fourth argument, which the Court does not address as moot. Defendants argued that Plaintiffs failed to adequately plead an offer to tender the Plan's shares back to Defendants. After briefing on Defendants' motion, the Court allowed Plaintiffs to file an amended complaint which included an offer of tender. Thus, Defendants' argument on that point is moot.

FN25. The applicable statue of limitations in this case is governed by § 13 of the Securities Act, 15 U.S.C. § 77m. As discussed in detail *infra*, § 13 has both a 1-year and 3-year limitations period. Truly, the 3- year period is a statute of repose, not of limitations. *P. Stolz Family Partnership L.P. v. Daum,* 355 F.3d 92, 2004 WL 50787, *5-11 (2d Cir.2004); *Pacific Mut. Life Ins. Co. v. First Republic Bank Corp.,* 997 F.2d 39, 52 (5th Cir.1993) (judgment vacated on other grounds); *Eureka Homestead Soc. v.. Zirinsky,* 1995 WL 542482, *2 (E.D.La.1995) (holding that "the 3- year limit is a period of repose"). Because the parties have referred to § 13 in general as a "statute of limitations," the Court will also do so for ease of reference. Later, when the Court specifically discusses the 3-year period, it will properly refer to it as a statute of repose.

FN26. Section 77k states in relevant part: "in case any part of the registration statements, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading, any person acquiring such security ... may... sue." 15 U.S.C. § 77k.

FN27. Section 77m, unchanged since *Shonts,* states: "No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale." 15 U.S.C. § 77m.

FN28. Note that the Rescission Period coincides with the period for the proposed Rescission Class.

FN29. The Court would also refer to the well considered analysis by the Southern District of Texas in *In re Paracelsus Corp.*: Plaintiffs' pleading includes allegations that "Paracelsus sold shares of the Company's common stock ... to plaintiffs and the members of the Class in return for proceeds of approximately $360 million." (Document No. 66 at ¶ 85). Whether Paracelsus was a seller within the meaning of Section 12(a)(2) may be susceptible to summary disposition, as Paracelsus argues, but such should be considered in an evidentiary context rather than on a bare pleading, which must be taken as true under Rule 12(b)(6). The determinations of a "seller" under the leading cases that have interpreted Section 12, after all, have been rather fact intensive questions. There were full trials in both *Pinter*, [*Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)] and *Abell* [*Abell v. Potomac Ins. Co.*, 858 F.2d 1104 (5th Cir.1988)] and at that, the Supreme Court remanded *Pinter* for further fact findings by the district court. Thus, the motion to dismiss the Section 12(a)(2) claims against Paracelsus is DENIED. 6 F.Supp.2d 626, 632 (S.D.Tex.1998).

2004 WL 253736, 2004 WL 253736 (E.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works