Exhibit

D

Only the Westlaw citation is currently available.

United States District Court,
S.D. Texas,
Houston Division.

In re: DYNEGY, INC. ERISA LITIGATION
Constance K. SCHIED, on behalf of herself and a class of persons similarly
situated, Plaintiff,
v.
DYNEGY, INC., et al., Defendants.

No. CIV.A.H-02-3076.

March 5, 2004.

**Background:** Participant in employee retirement benefits plan covered by Employment Retirement Income Security Act (ERISA) sued corporation's benefit plans committee (BPC), corporation, board of directors and human resources committee, seeking to recover losses sustained by retirement benefits funds through imprudent investments in corporation's stock. Defendants moved to dismiss.

**Holdings:** The District Court, Lake, J., held that:
(1) claim was stated that BPC breached its fiduciary duty under ERISA by offering corporation's stock as investment option while encouraging participants to read Securities and Exchange Commission (SEC) filings containing misrepresentations and omissions;
(2) failure to allege that members of BPC knew of and failed to disclose accounting irregularities barred claim of ERISA fiduciary duty breach arising from disclosure failure;
(3) BPC did not violate fiduciary duty by accepting corporation's contribution of its shares to match employee contributions, as provided in retirement plan;
(4) claim was stated that BPC offered participants option of investing in corporation's stock with knowledge precluding recognition of stock as suitable investment;
(5) BPC did not breach fiduciary duty by not diversifying corporation's contribution of its own stock;
(6) BPC did not breach fiduciary duty by not directing diversification of employee investment options, not keeping other fiduciaries from conflict of interest situations, and by not reporting negative financial information affecting corporation to Department of Labor;
(7) corporation, its board, and its human resources committee, did not have non fiduciary vicarious liability for BPC's nondisclosures;
(8) assuming corporation was fiduciary, claim was stated that corporation breached fiduciary duty by knowing about and failing to remedy alleged fiduciary breaches by BPC; and
(9) claim for equitable relief was stated against corporation.

Motions granted in part, denied in part.

[1] Pensions ⟶ 44
296k44 Most Cited Cases

Fiduciary status under ERISA is to be determined by looking at the actual authority or power demonstrated, as well as the formal title and duties of the parties at issue. 29 U.S.C.A. §§ 1002(21)(A), 1102(a)(2).

[2] Pensions ⟶ 44
296k44 Most Cited Cases

The issue of fiduciary status, under ERISA, is a mixed question of law and fact. 29 U.S.C.A. §§ 1002(21)(A), 1102(a)(2).

[3] Pensions ⟶ 44
296k44 Most Cited Cases

In every case charging breach of ERISA fiduciary duty, threshold question is not whether actions of some person employed to provide services under a plan adversely affected plan beneficiary's interest, but whether that person was acting as fiduciary, by performing fiduciary function, when taking action subject to complaint. 29 U.S.C.A. §§ 1002(21)(A), 1102(a)(2).

[4] Pensions ⟶ 48
296k48 Most Cited Cases

In determining whether prudent man standard for

fiduciary investments has been satisfied, in ERISA case, focus is on whether fiduciary utilized proper methods to investigate, evaluate and structure investment, acted as others familiar with such matters would act, and exercised independent judgment, rather than whether investment succeeded or failed. 29 U.S.C.A. § 1104(a)(1)(B).

[5] Pensions ⚷48
296k48 Most Cited Cases

Factors to be considered, in determining whether a fiduciary has satisfied the diversification requirement for investments of funds received under plan covered by ERISA, include (1) the purposes of the plan, (2) the amount of the plan assets, (3) the financial and industrial conditions, (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise, (5) distribution as to geographical location, (6) distribution as to industries, (7) dates of maturity, and (8) the time horizon over which the plan will be required to pay out benefits. 29 U.S.C.A. § 1104(a)(1)(C).

[6] Pensions ⚷48
296k48 Most Cited Cases

Investors in employee retirement income plan covered by ERISA stated claim that corporation's benefit plans committee (BPC) breached fiduciary duties imposed under ERISA by offering, in summary plan description (SPD), an investment fund consisting entirely of corporation's stock, while encouraging participants to review corporation's Securities and Exchange Commission filings, which contained alleged misrepresentations concerning corporation's business and financial condition. 29 U.S.C.A. § 1104(a)(1)(A),(B).

[7] Pensions ⚷47
296k47 Most Cited Cases

Corporation's benefit plans committee (BPC), administering retirement benefits plan covered by ERISA, was not required by Department of Labor regulations to call attention of plan participants to corporation's Securities and Exchange Commission (SEC) filings, when making shares of corporation's stock available as investment option, so as to preclude claim that BPC breached fiduciary duties under ERISA by calling attention to filings containing alleged misrepresentations; regulations did not cover situation in present case, as they required only that corporation either provide participants with copies of filings or do so upon request. 29 U.S.C.A. § 1104(a)(1)(A),(B); 29 C.F.R. 2550.404c-1(b)(2)(i)(B)(2)(ii).

[8] Pensions ⚷43.1
296k43.1 Most Cited Cases

Participants in retirement benefits plan covered by ERISA satisfied requirement for stating claim of breach of fiduciary duty, on part of benefit plans committee (BPC), that members knew there were misrepresentations in Securities Exchange Commission (SEC) which they encouraged participants interested in investing in corporation to read, by alleging that committee members must have been aware of misrepresentations as result of their positions within corporation. 29 U.S.C.A. § 1104(a)(1)(A),(B).

[9] Pensions ⚷43.1
296k43.1 Most Cited Cases

Participants in employee retirement plan covered by ERISA could proceed with claim that corporation's benefit plans committee (BPC) breached its fiduciary duty under ERISA by recommending that plan participants considering investing in fund consisting entirely in corporation's stock read corporation's Securities and Exchange Commission (SEC) filings, knowing that filings contained misrepresentations, despite corporation's assertion that allegations were securities fraud claim in "ERISA clothing," which should have been brought as securities claim. 29 U.S.C.A. § 1104(a)(1)(A),(B).

[10] Pensions ⚷43.1
296k43.1 Most Cited Cases

[10] Pensions ⚷47
296k47 Most Cited Cases

First count of complaint, alleging that corporation's benefit plans committee (BPC) breached fiduciary duty under ERISA by failing to tell truth about false representations contained in Securities and Exchange Commission (SEC) filings, which BPC urged plan participants to read if they were interested in acquiring corporation's shares, was not subsumed by second count, claiming that BPC and its predecessor breached duty requiring it to disclose truthful information on its own initiative. 29 U.S.C.A. § 1104(a)(1)(A),(B).

[11] Pensions ⚷47

296k47 Most Cited Cases

Duty of fiduciary, under retirement plan covered by ERISA, to disclose to plan participants information about corporation's earnings and business condition, is governed by general fiduciary principles governing ERISA, and not by any specific portions of ERISA or accompanying regulations. 29 U.S.C.A. § 1104.

[12] Pensions ⟨⟩47
296k47 Most Cited Cases

When corporation's benefit plans committee (BPC) issued summary plan description (SPD) for retirement benefits plan covered by ERISA, and encouraged plan participants to carefully review corporation's Securities and Exchange Commission (SEC) filings, BPC assumed fiduciary duty to disclose material adverse information that BPC members knew or should have known regarding risks and appropriateness of investing in corporation's stock. 29 U.S.C.A. § 1104.

[13] Pensions ⟨⟩47
296k47 Most Cited Cases

Failure to allege that members of corporation's benefit plans committee (BPC) knew of alleged accounting improprieties and did not disclose them precluded claim that members violated their fiduciary duty to participants in ERISA covered retirement plan who invested in corporation's stock, by failing to make disclosures needed to correct misrepresentations made to securities market. 29 U.S.C.A. § 1104.

[14] Pensions ⟨⟩43.1
296k43.1 Most Cited Cases

[14] Pensions ⟨⟩47
296k47 Most Cited Cases

While ERISA imposes a fiduciary duty on employee benefits plan investment option providers to investigate before they speak to plan participants, to speak truthfully, and to correct their own misstatements, ERISA does not impose a fiduciary duty on them to initiate disclosures needed to correct the misstatements of others absent knowledge of material information that they know the plan participants do not know, but need to know, to protect their interests. 29 U.S.C.A. § 1104.

[15] Pensions ⟨⟩48

296k48 Most Cited Cases

Corporation's benefit plans committee (BPC) did not breach any fiduciary duty under ERISA by accepting corporation's tender of its shares, to satisfy requirements under retirement plan that it match employee contributions, despite claim that BPC knew or should have known that shares were bad investment; plan provided that corporation's contribution would be in form of shares, and plan further provided that trustee and not BPC had sole responsibility for plan investments. 29 U.S.C.A. § 1104.

[16] Pensions ⟨⟩48
296k48 Most Cited Cases

Participant in retirement investment plan covered by ERISA stated claim that corporation's benefit plans committee (BPC) breached fiduciary duties under ERISA by offering corporation' stock to participants as investment option, or by failing to eliminate corporation's stock as option, when BPC knew or was in position to discover facts about stock's suitability and fair pricing that could not reasonably have allowed BPC to conclude that stock was a suitable investment for plan. 29 U.S.C.A. § 1104.

[17] Pensions ⟨⟩48
296k48 Most Cited Cases

Corporation's benefit plans committee (BPC) did not breach any fiduciary duty owed to participants in plan covered by ERISA when BPC did not diversify investments consisting of corporation' stock, made by corporation to match investments made by participants; plan mandated that corporation's contributions be in form of stock, and subsequent diversification was at discretion of participant. 29 U.S.C.A. § 1104.

[18] Pensions ⟨⟩48
296k48 Most Cited Cases

Corporation's benefit plans committee (BPC) did not breach any fiduciary duty owed to participants in retirement plan covered by ERISA by failing to direct diversification of employee investments, when plan offered employees ample diversification options. 29 U.S.C.A. § 1104.

[19] Pensions ⟨⟩43.1
296k43.1 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Failure to articulate applicable conflict of interest precluded claim, by participant in retirement plan covered by ERISA, that corporation's benefit plans committee (BPC) violated its fiduciary duty by not taking steps to ensure other fiduciaries did not suffer from conflict of interest, and by failing to report negative corporate business and financial information to Department of Labor (DOL). 29 U.S.C.A. § 1104(a)(1)(A).

[20] Pensions 🗝49
296k49 Most Cited Cases

Corporation, its board of directors, and Human Resources Committee (HRC) of board, did not have non fiduciary vicarious liability for corporation's benefit plans committee's (BPC's) nondisclosure, to participants in retirement plan covered by ERISA, that investments on corporation's stock was undesirable; their responsibilities for plan administration extended only to naming and removal of BPC members, and they did not exercise de facto control over BPC. 29 U.S.C.A. § 1104(a)(1)(A),(B).

[21] Pensions 🗝48
296k48 Most Cited Cases

Assuming that corporation was fiduciary under retirement investment plan covered by ERISA, plan participant stated claim that corporation violated ERISA by knowing about, but failing to take steps to remedy breach by co-fiduciary benefit plans committee (BPC) involving imprudent investments in corporation's stock; as several members of BPC were corporate officers, corporation was charged with knowledge of any wrongful activity. 29 U.S.C.A. § 1105(a).

[22] Pensions 🗝49
296k49 Most Cited Cases

Participant in retirement investment plan covered by ERISA stated claim for equitable relief against corporation, for participation in breach of fiduciary duty on part of benefit plans committee (BPC) through which plan's funds were imprudently invested in stock of corporation; as some members of BPC were also corporate officers, corporation was charged with knowledge of BPC's allegedly wrongful conduct. 29 U.S.C.A. § 1104.

Robin L. Harrison, Justin M. Campbell, III, Campbell Harrison et al, Houston, TX, Ron Kilgard, Gary A. Gotto, Laurie B. Ashton, Keller Rohrback PLC, Phoenix, AZ, Lynn Lincoln Sarko, Derek W. Loeser, Erin M. Riley, Elizabeth A. Leland, Keller Rohrback LLP, Seattle, WA, Marc I. Machiz, Cohen Milstein et al, Marka A. Peterson, Attorney at Law, Washington, DC, for Plaintiff.

David D. Sterling, Baker Botts LLP, Michael M. Wilson, Clements O'Neill et al, Jack C. Nickens, Nickens Keeton et al, Judith Batson Sadler, Sadler & Sykes, Martin Scott Michelman, Shook Hardy et al, Houston, TX, Anthony C. Epstein, Paul J. Ondrasik, Jr., F. Michael Kail, Morgan D. Hodgson, Steptoe and Johnson LLP, Washington, DC, Brian T. Ortelere, Thomas S. Bloom, Joseph J. Costello, Morgan Lewis et al, Philadelphia, PA, for Defendants.

R. Blake Young, pro se.

MEMORANDUM AND ORDER

LAKE, District J.

*1 Plaintiff, Constance K. Schied, brings this civil enforcement action pursuant to § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, on behalf of participants and beneficiaries of the Dynegy Inc. Profit Sharing 401(k) Savings Plan (Plan) who were invested in the common stock of Dynegy Inc. through the Plan during the period from April 27, 1999, through January 30, 2003, [FN1] against defendants, Dynegy, Inc. ("Dynegy" or "the Company"), Dynegy's Board of Directors, [FN2] the Human Resources Committee of Dynegy's Board of Directors, [FN3] Dynegy's Benefit Plans Committee (BPC) [FN4] and its predecessor, the Retirement/Benefit Plans Committee (RBPC), [FN5] and the trustees of the trust that held the assets of the Plan: CG Trust for the period before January 1, 2002, and Vanguard Fiduciary Trust Company for the period after January 1, 2002. Plaintiff seeks to make the Plan whole for losses caused by breach of defendants' fiduciary duties in violation of ERISA § 409, 29 U.S.C. § 1109, during a proposed class period beginning on April 27, 1999, and ending on January 30, 2003. TAC ¶¶ 52 and 314. Pending before the court are the following motions: Defendant Robert D. Doty's Motion to Dismiss (Docket Entry No. 35); Defendant Charles L. Watson's Motion to Dismiss (Docket Entry No. 36); Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, Benefit Plans and Retirement/Benefit Plans Committees (Docket Entry No. 37); Motion to Dismiss on Behalf of Director Defendants Lipton, Mustoe, Poole,

Robertson, Rubenfield, and Woertz and Retirement/Benefit Plans Committee Defendant Barton (Docket Entry No. 41); Motion to Dismiss Third Amended Complaint on Behalf of Defendants Stephen J. Brandon and Paul N. Woollacott for Lack of Service of Process and Personal Jurisdiction (Docket Entry No. 43), as amended and supplemented by Rule 12(b)(6) Motion to Dismiss Third Amended Complaint (Docket Entry No. 54); Defendant CG Trusts' Motion for Summary Judgment, or in the alternative, Motion to Dismiss Count IX of Plaintiff's Third Amended Complaint (Docket Entry No. 61); and Defendant Vanguard Fiduciary Trust Company's Motion to Dismiss Count X of Plaintiff's Third Amended Complaint (Docket Entry No. 52). For the following reasons the pending motions will be ruled upon as stated in the Conclusions and Order, § VI, below.

I. *Standard of Review*

A motion to dismiss for failure to state a claim tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001), *cert. denied sub nom Cloud v. United States*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.* "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

> *2 When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.
>
> *Id.* at 997 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). *See also Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

ERISA does not have heightened pleading requirements. Claims asserted under ERISA are subject to the notice pleading standard of Federal Rule of Civil Procedure 8, which "substitute[d] the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' for the technical formula, such as 'facts constituting a cause of action,' which typified the preexisting codes." *Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 509 (5th Cir.1999), *overruled on other grounds*, *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir.2003) (quoting Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1202 at 68 (2d ed.1990)). *See also Swierkiewicz*, 122 S.Ct. at 998 (Rule 8 is a simplified notice pleading standard that applies to all civil actions, with limited exceptions, *i.e.,* those enumerated in Rule 9(b), and requires merely a statement that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)(citing Fed.R.Civ.P. 12(b)(6)). Documents not attached to the pleadings, but to the motion to dismiss, may be considered "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim ... [because i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 498- 499 (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)). *See also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-314 (5th Cir.2002)(allowing consideration of documents attached to motion to dismiss where as here the plaintiff referenced those documents in her complaint, relied on their contents to assert her claims, and did not object to their consideration by the court).

II. *Introduction to Dynegy and the Events Leading to this Action*

Plaintiff's TAC contains the following factual allegations about Dynegy and the events leading to this action, which for purposes of the pending motions are accepted as true.

A. Dynegy [FN6]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*3 Dynegy was originally known as Natural Gas Clearinghouse, a company that was founded in 1984 to match gas buyers and sellers without taking title. Throughout the 1980s the company grew dramatically as deregulation of the natural gas industry permitted independent marketers to secure larger volumes of gas. By 1990 the company was trading natural gas futures, buying gas gathering and processing facilities, and creating subsidiaries. In 1995 the company changed its name to NGC and went public after buying Trident NGL, an integrated natural gas liquids company. In 1996 NGC bought Chevron's natural gas business and propane dealer LPG Services Group. In 1997 NGC acquired Destec Energy and began forming retail energy market alliances with regional entities. In 1998 the company continued forming alliances with regional entities and changed its name to Dynegy, short for "dynamic energy." Dynegy's current businesses include power generation and wholesale and direct commercial and industrial marketing of power, natural gas, coal, and related products. Dynegy also engages in the transportation, gathering, and processing of natural gas liquids and the transmission and distribution of electricity and natural gas to retail consumers.

B. Events Leading to this Action

Plaintiff alleges that
[t]hroughout the Class Period [April 27, 1999, to January 20, 2003], the Company appeared to grow rapidly and to experience tremendous and sustained growth in revenues. As a result, the Company was able to raise more than $1.7 billion in 2000 and 2001 alone from the issuance and sale of stock to investors, including sales to the Plan. During the Class Period, Dynegy stock experienced a meteoric rise from trading at under $8 per share at the start of the Class Period to trading at over $50 per share.
Throughout the Class Period, Dynegy engaged in ... activities which Defendants knew or should have known resulted in artificially inflating Dynegy's earnings, revenue and stock price: (1) Project Alpha ... (2) Round- Trip Trades ... (3) Energy Price Manipulation ... (4) Financing and Liquidity Constraints ... (5) Intentional Attempt to Manipulate Financial Results.
... Dynegy eventually was forced to restate its financial results for 1999- 2001, twice within a three-month period as ... revelations about the deception during that time-period came to light.
... In response to the disclosure of its misconduct, Dynegy's stock fell ...
... these disclosures eventually revealed ... that during the Class Period those entrusted with responsibility for the investment of or the supervision of those persons responsible for investment of Plan assets were either (a) the same officers and directors involved in misrepresenting and/or the manipulation of Dynegy's earnings or (b) officers and directors in the company in a position to, but who failed to, take the necessary steps to discover the truth of the misrepresentations and financial manipulations. In either case, these fiduciaries of the Plan failed to act appropriately to protect the retirement savings of the Participants.
*4 In short, by no later than the beginning of the Class Period, Dynegy and the other Defendants knew, or should have known, that Dynegy's stock was a highly inappropriate investment for a long-term retirement savings plan such as the Plan because of the use of special purpose entities, round-trip trades and other questionable business practices. Despite this, Defendants continued to offer Dynegy's stock as a Plan investment alternative, continued to cause Dynegy matching contributions to be invested in Dynegy stock, and failed to correct the materially misleading statements that had been made to the market and Plan participants.
As a result, when the market learned that Dynegy's purported spectacular growth was based on sham transactions, phoney trades, price manipulation and overstatement of revenues, what had once been the employees' investment of over $62.8 million in Company stock became essentially worthless.
TAC ¶¶ 81-87.

Paragraphs 88-239 of plaintiff's TAC details statements through which plaintiff alleges that "defendants tout[ed] Dynegy's performance and operations, fostering unwarranted confidence in the company's strength and merits of investment in company stock." (Heading above TAC ¶ 88) The statements include press releases, announcements, Securities and Exchange Commission (SEC) filings, conference calls with analysts, and interviews with corporate officers reported in various media outlets including both general publications such as *The Wall Street Journal* and *The New York Times,* and industry specific publications such as *Megawatt Daily* . Plaintiff alleges that "[t]he Class Period commences on April 27, 1999, when Dynegy issued its first quarter 1999 earnings release, touting the Company's strong performance." TAC ¶ 88. Plaintiff alleges that the Class Period continues until at least January 30, 2003, the day before the company released its earnings statement for 2002, which restated the

company's results for 1999-2001 and the first three quarters of 2002. TAC ¶ 231.

Plaintiff alleges that the following statements were specifically made to Plan participants:

> Dynegy is a widely-held public company, with the retirement savings of thousands of its employees invested heavily in the Company's stock through the Plan. At the height of its business during the Class Period, Dynegy employed over 6,000 people. In retaining existing employees and in recruiting prospective employees, the Company told employees that they would be expected to work hard but that they would be well rewarded for their efforts.
>
> Throughout the Class Period, Defendants touted the purportedly spectacular growth, performance and earnings of the Company and its operations to the market generally and to employees specifically. Both informally, as well as formally, through events such as "town meetings," high level Company officers and representatives highlighted the Company's performance and outlook for employee attendees.
>
> *5 These communications came in various forms, including filings with the Securities and Exchange Commission ("SEC"). For example, the Plan Prospectus dated January 16, 2002, which was provided to Plan participants, expressly incorporates by reference Dynegy's SEC filings. Under the heading "INVESTMENT OPTIONS," the Prospectus states:
>
> Each participant is encouraged to carefully review *Dynegy's* most recent Annual Report on Form 10-K and each Quarterly Report on Form 10-Q and Current Report on Form 8-K relating to Dynegy's current fiscal year for additional information relevant to investments in the Dynegy Stock Fund.
>
> Upon information and belief, the Plan Prospectus dated January 16, 2002, was also the Summary Plan Description ("SPD") within the meaning of ERISA § 102, 29 U.S.C. § 1022, and replaced and superceded the Summary Plan Description provided to Plan participants in 1999.

TAC ¶¶ 78-80. Plaintiff alleges that

> [a]s a result of the fiduciary breaches by the Defendants, the investment of Plaintiff and other members of the Class in Dynegy stock through the Plan has become virtually worthless ... [and that m]eanwhile, certain Defendants netted significant profit by exercising options and then selling stock during the class period.

TAC ¶¶ 238-239. Plaintiff alleges that certain defendants profited from stock sales during the proposed class period by large net sales as follows: Board Chairman and Chief Executive Officer Charles Watson, $12,608,124; Human Resource Committee and Board member Charles Bayless, $2,951,468; and Benefit Plans Committee members Louis J. Dorey who was also Chief Financial Officer, $1,175,460, Andrea Lang who was also Vice-President, $279,824, and Michael R. Mott who was also a Senior Vice-President, $519,930. TAC ¶ 239.

### III. *The Plan*

The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). [FN7] TAC ¶ 57. The terms of the Plan, which includes both employer and employee contribution features, are contained in the NGC Profit Sharing/401k Savings Plan as amended and restated effective January 1, 1998, [FN8] and the Dynegy Profit Sharing/401k Savings Plan as amended and restated May 1, 2001, [FN9] and January 1, 2002. [FN10] TAC ¶ 58.

#### A. Employee Contributions

All Dynegy employees are and were eligible to participate in the Plan except for employees governed by a collective bargaining agreement, non-resident aliens, leased employees, independent contractors, or employees who waive participation. TAC ¶ 59. Subject to Internal Revenue Service (IRS) limitations, participants in the Plan are allowed to contribute both before- and-after-tax payroll deductions to the Plan. Participants designate the manner in which amounts allocated to their accounts will be invested in an array of investment funds. Since January 1, 2002, participants have been entitled to designate a portion of their accounts for investment in the Company Stock Fund. TAC ¶ 62. [FN11]

#### B. Employer Contributions

*6 The Plan allows Dynegy to make voluntary employer matching contributions as well as employer discretionary contributions and specifies that both shall be in Dynegy common stock valued at the closing price of such stock on the New York Stock Exchange for the last day of the month for which the contribution is made. TAC ¶ 63. Prior to January 1, 2002, pursuant to § 5.1 of the Plan's governing documents, plan participants were not permitted to convert any amounts contributed in the form of company stock to any other investment fund. TAC ¶ 64 (citing Ex. A § 5.1). Effective January 1, 2002, participants were permitted to convert the investment

Case 3:02-cv-01138-AWT    Document 112-4    Filed 04/26/2004    Page 9 of 20
2004 WL 540529
--- F.Supp.2d ---
(Cite as: 2004 WL 540529 (S.D.Tex.))

Page 8

designation of such employer contributions to other investment funds without limitation. *Id.* [FN12]

C. Administrative and Fiduciary Provisions

Dynegy is the Plan Sponsor within the meaning of ERISA, 29 U.S.C. § 1002(16)(B). TAC ¶ 65. The BPC was created pursuant to a Resolution of the Compensation Committee of Dynegy's Board of Directors adopted on July 21, 2000, [FN13] and since then, has been the Administrator of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(A). TAC ¶ 69. [FN14] The BPC is also the named fiduciary with respect to the general administration of the Plan having the authority to control and manage the operation and administration of the Plan. [FN15] Prior to July 21, 2000, the NGC Retirement/Benefit Plans Committee (RBPC) was the Plan Administrator within the meaning of ERISA, 29 U.S.C. § 1002(16)(A). TAC ¶ 70. [FN16] Dynegy's Board of Directors has the sole authority to appoint and remove the Plan Trustee. TAC ¶ 66 (citing Ex. A § 15.2). [FN17] From the beginning of the Class Period through the end of 2001 CG Trust served as the Trustee of the Plan's assets. From January 1, 2002, through the end of the Class Period Vanguard served as Trustee of the Plan's assets. TAC ¶¶ 72-73.

IV. *Applicable Law*

The Fifth Circuit has described ERISA as a statutory scheme enacted by Congress to protect employees' rights to benefits while also encouraging employers to develop employee benefits programs. *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003)(citing Edward E. Bintz, *Fiduciary Responsibility Under ERISA: Is There Ever a Fiduciary Duty to Disclose?,* 54 U.Pitt.L.Rev. 979, 979 (1993)). "ERISA assigns to plan fiduciaries 'a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest." ' *Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc.,* 173 F.3d 313, 317 (5th Cir.), cert. denied, 528 U.S. 967, 120 S.Ct. 406, 145 L.Ed.2d 316 (1999)(quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993)). *See also Martinez,* 338 F.3d at 411 (ERISA provides specific rules governing fiduciary duties and information that must be provided to participants as well as to government agencies.).

*7 To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan. "Once the plaintiff has satisfied these burdens, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by ... the breach of duty." *McDonald v. Provident Indem. Life Ins. Co.,* 60 F.3d 234, 237 (5th Cir.1995), cert. denied, 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996)(quoting *Roth v. Sawyer-Cleator Lumber Co.,* 16 F.3d 915, 917 (8th Cir.1994). Disposition of the pending motions turns on ERISA's definition of "fiduciary," the duties that ERISA imposes upon fiduciaries, and the remedies that ERISA provides for breach of those duties.

A. ERISA's Definition of "Fiduciary"

A person or entity becomes an ERISA fiduciary either by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained, or by exercising discretionary authority or control over the management, administration, or assets of a plan. *See Mertens,* 113 S.Ct. at 2066 (citing 29 U.S.C. § 1002(21)(A) and § 1102(a)).

1. *Named Fiduciaries*

ERISA requires every employee benefit plan to be established and maintained pursuant to a written instrument that provides for one or more "named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1).
> [T]he term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(2).

2. *Functional Fiduciaries*

[1][2] Persons or entities who are not named as fiduciaries in plan documents but who exercise discretionary authority and control that amounts to actual decision-making power are nonetheless fiduciaries with respect to the plan:
> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any discretionary authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.' " *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 2151, 147 L.Ed.2d 164 (2000) (citing 29 U.S.C. § 1002(21)(A)(i)-(iii)). " '[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control.' " *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir.2002) (quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc. ("Sommers I")*, 793 F.2d 1456, 1459-60 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987)). *See also Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan ("Sommers II")*, 883 F.2d 345, 352 (5th Cir.1989) (reiterating that "[t]he phrase 'to the extent' indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority and control."). In this circuit "fiduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of the parties at issue." *Landry v. Air Line Pilots Ass'n Inter. AFL-CIO*, 901 F.2d 404, 418 (5th Cir.), *cert. denied*, 111 S.Ct. 244 (1990). The issue of fiduciary status is a mixed question of law and fact. *Reich v. Lancaster*, 55 F.3d 1034, 1044 (5th Cir.1995).

B. Fiduciary Duties under ERISA

*8 "In general terms, fiduciary responsibility under ERISA is simply stated." *Pegram*, 120 S.Ct. at 2151.
 [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan.
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
29 U.S.C. § 1104(a)(1).

1. *Loyalty*

[3] ERISA requires fiduciaries to discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), that is, "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). In *Pegram* the Supreme Court explained that the fiduciary responsibilities imposed by this section of ERISA have their source in the common law of trusts. 120 S.Ct. at 2152 (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility.")). *See also Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 2189, 147 L.Ed.2d 187 (2000) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 765, 142 L.Ed.2d 881 (1999) ("The common law of trusts ... offers a starting point for analysis of [ERISA] ... [unless] it is inconsistent with the language of the statute, its structure, or its purposes.)). "Beyond the threshold statement of responsibility, however, the analogy between ERISA fiduciary and common law trustee becomes problematic ... because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." *Pegram*, 120 S.Ct. at 2152. *See also Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir.2000) ("Although ERISA's duties gain definition from the law of trusts, the usefulness of trust law to decide cases brought under ERISA is constrained by the statute's provisions.").

(a) "Two Hat" Doctrine

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*9 Comparing a traditional trustee to an ERISA fiduciary, the *Pegram* Court explained that while a traditional fiduciary "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries ... [u]nder ERISA ... a fiduciary may have financial interests adverse to beneficiaries." *Pegram*, 120 S.Ct. at 2152 (citing 2A A. Scott & W. Fratcher, Trusts § 170, p. 311 (4th ed.1987)). *See also Bussian*, 223 F.3d at 294-295; *Martinez*, 338 F.3d at 412-413. "Employers, for example, can be ERISA fiduciaries and still take actions that disadvantage employee beneficiaries when they act as employers (*e.g.,* firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.,* modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Id. See also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (recognizing that a plan sponsor may function in a dual capacity as a business employer (*i.e.,* settlor or plan sponsor) whose activity is not regulated by ERISA, and as a fiduciary of its own established ERISA plan whose activity is regulated by ERISA). *Pegram* and other courts recognize that

> [t]he law does not require employers to establish employee benefit plans. Congress sought to encourage employers to set up plans voluntarily by offering tax incentives, methods to limit fiduciary liability, means to contain administrative costs, and giving employers flexibility and control over matters such as whether or when to establish an employee benefit plan, how to design a plan, how to amend a plan, when to terminate a plan, all of which are generally viewed as business decisions of a settlor, not of a fiduciary, and thus not subject to fiduciary obligations.

*In re Enron Corporation Securities, Derivative & "ERISA" Litigation*, 284 F.Supp.2d 511, 551 (S.D.Tex.2003) (citing *Pegram*, 120 S.Ct. at 2153). In *Pegram* the Court also recognized that there exists no "apparent reason in the ERISA provisions to conclude ... that this tension is permissible only for the employer or plan sponsor, to the exclusion of persons who provide services to an ERISA plan." 120 S.Ct. at 2152.

(b) One Hat at a Time

"ERISA does require, however, that a fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.* (citing *Hughes*, 119 S.Ct. at 763, and *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 1070, 134 L.Ed.2d 130 (1996)). Thus, ERISA does not define "fiduciaries simply as administrators of the plan, or managers or advisers... [i]nstead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Id.* (citing 29 U.S.C. § 1002(21)(A)). *See also Martinez*, 338 F.3d at 412-413.

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*10 *Pegram*, 120 S.Ct. at 2152-2153.

2. *Prudence*

ERISA requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The Fifth Circuit has stated:

> In determining compliance with ERISA's prudent man standard, courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions. "[ERISA's] test of prudence ... is one of conduct, and not a test of the result of performance of the investment. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed." Thus, the appropriate inquiry is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.

*Laborers National*, 173 F.3d at 317 (citations omitted).

[4] Regulations promulgated by the Department of Labor (DOL) generally reflect that a fiduciary with investment duties must act as a prudent investment manager under the modern portfolio theory rather than under the common law of trusts standard, which examined each investment with an eye toward its individual riskiness. *Id.* at 317-318 (citing 29 C.F.R. § 2550.404a-1). Because the "prudent man" standard focuses on whether the fiduciary utilized appropriate methods to investigate and evaluate the merits of a

particular investment, the appropriate methods in a particular case depend "on the 'character' and 'aim' of the particular plan and decision at issue and the 'circumstances prevailing' at the time a particular course of action must be investigated and undertaken." *Bussian,* 223 F.3d at 299. Furthermore, the prudent man standard is an objective standard, and good faith is not a defense to a claim of imprudence. *Reich,* 55 F.3d at 1046; *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984) ("this is not a search for subjective good faith-a pure heart and an empty head are not enough").

3. *Diversification*

[5] ERISA requires fiduciaries to diversify "the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). The Fifth Circuit has stated:

> The degree of investment concentration that would violate this requirement to diversify cannot be stated as a fixed percentage, because a fiduciary must consider the facts and circumstances of each case. The factors to be considered include (1) the purposes of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise; (5) distribution as to geographical location; (6) distribution as to industries; (7) dates of maturity.

*11 *Metzler v. Graham,* 112 F.3d 207, 209 (5th Cir.1997) (citing H . R.Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U .S.C.C.A.N. 5038, 5084-85 (Conf. Rpt. at 304)). The court also noted, "[w]e think it is entirely appropriate for a fiduciary to consider the time horizon over which the plan will be required to pay out benefits in evaluating the risk of large loss from an investment strategy." *Id.* at 210 n. 6. Moreover, the court admonished lower courts that "[i]t is clearly imprudent to evaluate diversification solely in hindsight-plan fiduciaries can make honest mistakes that do not detract from a conclusion that their decisions were prudent at the time." *Id.* at 209.

4. *Compliance*

ERISA requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(D). "In case of a conflict, the provisions of the ERISA policies as set forth in the statute and regulations prevail over those of the Fund guidelines." *Laborers National,* 173 F.3d at 322. *See also Central States,* 105 S.Ct. at 2833 ("[T]rust documents cannot excuse trustees from their duties under ERISA, and ... trust documents must generally be construed in light of ERISA's policies ..."); *Donovan,* 716 F.2d at 1467 ("Though freed by Section 408 from the prohibited transaction rules, ESOP fiduciaries remain subject to the general requirements of Section 404."); *Moench v. Robertson,* 62 F.3d 553, 567 (3d Cir.1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996) (where the plan language "constrains the [fiduciaries'] ability to act in the best interest of the beneficiaries," it is inconsistent with ERISA and with the common law of trusts and must not be followed).

C. Remedies for Breach

ERISA makes fiduciaries liable for breach of their duties, and specifies the remedies available against them. *Mertens,* 113 S.Ct. at 2066 (citing 29 U.S.C. § 1109(a)).

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary...

29 U.S.C. § 1109(a). Because this section does not distinguish between fiduciaries who are formally named either by the plan documents or by the procedure established in those documents, and fiduciaries who are informally designated by the functions they perform, § 1109 is applicable to both types of ERISA fiduciary. *See Enron,* 284 F.Supp.2d at 545-546.

*12 ERISA allows any plan participant, beneficiary, or fiduciary to bring a civil action "for appropriate relief under section 1109." *Mertens,* 113 S.Ct. at 2066-2067 (quoting 29 U.S.C. § 1132(a)(2)). ERISA does not permit a civil action for legal damages against a non-fiduciary charged with knowing participation in a fiduciary breach. *Reich v. Rowe,* 20 F.3d 25, 29 (1st Cir.1994) (citing *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). As an alternative to fiduciary liability, a non- fiduciary may be liable as a "party in

interest," but only for "appropriate equitable relief," including injunctions and equitable restitution, in civil actions brought by plan participants under 29 U.S.C. § 1132(a)(3). See *Useden v. Acker*, 947 F.2d 1563, 1581-82 (11th Cir.1991), cert. denied sub nom. *Useden v. Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel*, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). A party in interest of an employee benefit plan is defined in 29 U.S.C. § 1002(14) and includes *inter alia* any fiduciary (administrator, officer, trustee, custodian, *etc.*), a person that provides services to the plan (such as an accountant, attorney), an employer of any employees covered by the plan, and an employee organization, including any members covered by the plan. Such non-fiduciaries may be held liable for such "appropriate equitable relief" if they are "parties in interest" and, if with actual or constructive knowledge, they participate in a fiduciary's breach of its duties in transactions between the plan and a party in interest that are expressly prohibited under 29 U.S.C. § 1106(a). See *Enron*, 284 F.Supp.2d at 570.

V. *Defendants' Motions to Dismiss*

All the named defendants have either submitted or joined in a motion to dismiss all of the claims asserted against them. Because plaintiff's complaint does not identify specific defendants allegedly liable for specific breaches, but contains general allegations asserted against groups of defendants, and because plaintiff has submitted one omnibus Memorandum in Opposition to all but two of the pending motions, the briefing is replete with issues and arguments that overlap. The court will discuss each claim for relief asserted against each group of defendant(s); where possible, arguments raised in opposition to multiple claims will be addressed only once.

A. Claim Asserted Only Against the Benefit Plans Committee

[6] In Count I Plaintiff alleges that the BPC defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) when on or about January 16, 2002, and thereafter, they caused or permitted to be disseminated to plan participants and beneficiaries a Summary Plan Description (SPD) that expressly incorporated and adopted by reference false and material misrepresentations contained in Dynegy's SEC filings. TAC ¶¶ 240-250. Plaintiff specifically alleges that the BPC defendants

> knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information or by virtue of their fiduciary duties to make certain that any affirmative representation, whether directly or incorporated by reference, which they made in a fiduciary capacity was truthful, that the SPD contained affirmative, material misrepresentations.

*13 TAC ¶ 249. Plaintiff also alleges that:

> As of the date of the dissemination of the January 16, 2002, Prospectus and SPD, and for as long thereafter as the SPD was not corrected, the Benefit Plans Committee Defendants breached their fiduciary duties to make truthful, affirmative, material, representations with respect to the Plan's use of employer stock as a Plan investment. Rather than providing truthful information to the Plan's participants and beneficiaries regarding the risks of investing in company stock in the Plan, these Defendants, in breach of their fiduciary duties made affirmative, material misrepresentations to the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock and about Dynegy's earnings and business condition, as detailed herein, through incorporation of the material, untruthful information contained in the Company's SEC filings into the SPD, which they knew or should have know[n] were untruthful, thereby encouraging participants of the Plan to make substantial investments in Company stock in the Plan.

TAC ¶ 250.

The BPC defendants do not dispute the BPC's status as Plan Administrator and named fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1102(a)(2). See Ex. A § 13.1; Ex. F; and TAC ¶ 69. Nor do they dispute plaintiff's assertion that ERISA imposes on plan fiduciaries a duty to speak truthfully. See *Martinez*, 338 F.3d at 425 ("[W]henever an employer exercises a fiduciary function, it must speak truthfully."). See also *Varity*, 116 S.Ct. at 1074-1075 (quoting *Peoria Union Stock Yards Co. v. Penn. Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983) ("[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA"). The BPC defendants argue that Count I should be dismissed because they did not make the alleged misrepresentations, [FN18] plaintiff's allegations of actual or constructive knowledge are insufficient to state a claim for breach of fiduciary duty, [FN19] "Count I is a securities claim in ERISA clothing," [FN20] and Count I is subsumed in Count II. [FN21]

1. *Responsibility for the Alleged Misrepresentations*

Count I is premised on the distribution to plan participants of the 1/02 SPD that plaintiff alleges "expressly incorporated and adopted by reference information contained within ... [Dynegy's] filings with the SEC." TAC ¶ 246. The BPC defendants argue that Count I should be dismissed because the SPD does not incorporate or adopt by reference the misrepresentations contained in Dynegy's SEC filings, [FN22] and because none of the misrepresentations in Dynegy's SEC filings were made by the BPC or any of its members. [FN23]

(a) Incorporation of SEC Filings into Plan Document

The language at issue appears in "Appendix A: Investment Options" attached to the document titled "Dynegy Inc. 401(k) Savings Plan, Plan Prospectus" dated January 16, 2002. [FN24] Appendix A opens with the statement that "[t]he following investment options are available under the Plan as of January 1, 2002," [FN25] followed by short, single-paragraph descriptions of the Plan's 13 available investment funds. The "Dynegy Stock Fund" is described as "seeks capital appreciation by investing entirely in Dynegy Stock." [FN26] After the description of the "Dynegy Stock Fund" the following sentence appears:

> *14 Each participant is encouraged to carefully review Dynegy's most recent Annual Report on Form 10-K and each Quarterly Report on Form 10-Q and Current Report on Form 8-K relating to Dynegy's current fiscal year for additional information relevant to investments in the Dynegy Stock Fund. [FN27]

See also TAC ¶ 80. Although the BPC defendants argue that this sentence is insufficient to incorporate or adopt by reference Dynegy's SEC filings, they do not challenge plaintiff's allegations that the prospectus served as the SPD, that as the Plan administrator the BPC was responsible for preparing and distributing the SPD to plan participants, or that Dynegy's SEC filings misrepresented the company's financial condition.

Plaintiff's allegations that the BPC defendants distributed material that expressly "encouraged" plan participants "to carefully review" Dynegy's SEC filings, which they do not dispute materially misrepresented the company's financial status, sufficiently alleges that the BPC defendants breached the fiduciary duty to speak truthfully to plan participants. See *Worldcom, Inc. Erisa Litigation*, 263 F.Supp.2d 745, 766 (S.D.N.Y.2003) ("Those who are ERISA fiduciaries ... cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings."). Although the BPC defendants attempt to distinguish *Worldcom* on grounds that the plan fiduciary in that case actually distributed copies of the SEC filings to plan participants, while they only encouraged Dynegy's plan participants to review the company's SEC filings, [FN28] the court is not persuaded that this is a meaningful distinction. In both cases the defendants, in the exercise of their fiduciary duties as plan administrators, represented the company's SEC filings as reliable sources of information regarding investment in company stock to plan participants. Following disclosure that the company's SEC filings affirmatively misstated the value of company assets, plaintiffs in both cases filed suit alleging that the defendants breached their fiduciary duties to the plan participants by misrepresenting the SEC filings as reliable sources of information regarding investment in company stock.

(b) Source of the Misrepresentations

[7] Asserting that they did not make any of the misrepresentations contained in Dynegy's SEC filings, the BPC defendants argue that Count I should be dismissed because regulations adopted by the DOL require the Plan to make information contained in the company's SEC filings available to plan participants. In support of this argument, the BPC defendants argue that plaintiff's allegations would necessarily expose "all plan fiduciaries ... to potential liability for any misstatement in the employer's financial reporting merely because they [*i.e.,* the plan fiduciaries] complied with the DOL's regulation-in effect, requiring plan fiduciaries to act as a shadow board of directors." [FN29]

*15 The DOL regulations require the Plan to provide either directly or upon request "[c]opies of any prospectuses, financial statements and reports ... relating to the investment alternatives available under the plan, to the extent such information is provided to the plan." 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(ii). The BPC defendants acknowledge, however, that they did not provide copies of Dynegy's SEC filings to plan participants either directly or upon plaintiff's request. Instead, in the exercise of their discretion, the BPC defendants "encouraged" the plan participants "to carefully review" Dynegy's SEC filings for "additional information relevant to investments in the Dynegy Stock Fund." Because the DOL regulations do not require plan fiduciaries to encourage participants to carefully review SEC filings, the BPC defendants'

decision to do so represents a voluntary exercise of their discretionary authority to communicate with plan participants. In so doing the BPC defendants were bound by fiduciary duties of loyalty and prudence not to communicate information that materially misrepresented Dynegy's financial condition. *See Martinez*, 338 F.3d at 425 ("[W]henever an employer exercises a fiduciary function, it must speak truthfully."). *See also Varity*, 116 S.Ct. at 1074-1075 ("[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA").

2. *Knowledge of the Misrepresentations*

[8] Citing *Crowley v. Corning Inc.*, 234 F.Supp.2d 222 (W.D.N.Y.2002), and *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 314315888 (N.D.Cal.2002), the BPC defendants argue that Count I should be dismissed because plaintiff's allegations of actual or constructive knowledge are insufficient to state a claim for breach of fiduciary duty. [FN30] The BPC defendants argue that plaintiff's allegations that they

> knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information or by virtue of their fiduciary duties to make certain that any affirmative representation, whether directly or incorporated by reference, which they made in a fiduciary capacity was truthful, [and] that the SPD contained affirmative, material misrepresentations,

TAC ¶ 249, is insufficient to state a breach of fiduciary duty claim because these allegations lack facts demonstrating how the BPC defendants should have known closely-held information by virtue of their positions in the company and access to contradictory information, or how the four BPC members whose responsibilities involved only benefits and human resources would have had access to non-public information about Dynegy's allegedly sham transactions, phony trades, price manipulation, and overstatement of revenues. [FN31]

*McKesson* involved allegations that a directed trustee "knew, should have known, or is deemed to have known, that [company stock] had become an unsuitable and imprudent investment as a result of ... improper accounting practices." 2002 WL 314315888, *12. Granting the trustee's motion to dismiss, the court held that it "need not accept conclusory allegations as true on a motion to dismiss where those allegations do not follow from the description of the facts as alleged." *Id.* In *Crowley* the court faced similar allegations that members of the plan's administrative committee "knew or should have known that the [p]lan should not have invested in [company] stock." 234 F.Supp.2d at 230. Asserting that such "conclusory allegations ... fail[ed] even the liberal standard of ... Rule ... 12(b)(6)," the court dismissed the complaint. *Id.* The BPC defendants argue that "[p]laintiff's failure to support her allegations with any facts ... renders them inadequate to state a claim even under the liberal pleading standard of Rule 8." [FN32]

*16 Plaintiff responds that defendants have misstated *McKesson* because that court actually upheld breach of fiduciary duty claims asserted against members of the plan's administrative committee, and that they misconstrue *Crowley* because, unlike that complaint, "which only named the committee members as John Does 1-30 and failed to allege what those members knew or should have known ... [her c]omplaint identifies each of the [c]ommittee members and their relevant, high-level position in the [c]ompany which gave them access to the relevant information." [FN33] Plaintiff argues that her "allegations that the [c]ommittee [d]efendants 'knew or should have known' accurately describe[s] a breach of fiduciary duty," [FN34] because ERISA fiduciaries breach their duties of loyalty and prudence "when they fail to make independent investigations." [FN35] In support plaintiff cites *Donovan*, 716 F.2d at 1473-1474 (failure to conduct sufficient independent investigation of merits of particular investment is a breach), *Laborers' National*, 173 F.3d at 317 (appropriate inquiry is whether the individual trustees at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits and structure of the investment), and *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir.1984) (failing to make an intensive and independent investigation of investment options constitutes breach of fiduciary duty). Plaintiff asserts that defendants' argument regarding her allegations of knowledge are an attempt "to impose heightened pleading standards, akin to Rule 9(b) or higher..." [FN36]

Because the BPC defendants do not dispute that they were plan fiduciaries and that as plan fiduciaries they had a duty of loyalty to speak truthfully to plan participants, or that Dynegy's SEC filings misrepresented the company's financial condition, the court concludes that plaintiff's allegations are sufficient to state a claim for breach of fiduciary duty because they assert the existence of a fiduciary duty of loyalty that the BPC defendants breached by distributing the 1/02 SPD. The court also concludes

that plaintiff's allegations that the BPC defendants "knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information ... that the SPD contained affirmative, material misrepresentations," TAC ¶ 249, is sufficient to state a claim for breach of fiduciary duty because these allegations challenge the adequacy of the investigation that the BPC defendants undertook prior to distributing the 1/02 SPD. Because "[ERISA's] test of prudence ... is one of conduct, and not a test of the result," *Laborers National,* 173 F.3d at 317, plaintiff's allegations are sufficient to challenge whether the BPC defendants undertook an appropriate investigation of the merits of the statements published in the 1/02 SPD before the SPD was distributed to plan participants. *See id.*

\*17 As clarified by *Swierkiewicz,* 122 S.Ct. at 996, Rule 8 does not require a plaintiff to allege facts to support every element of a prima facie case. Unlike the allegations at issue in *McKesson* and *Crowley,* which were not supported by any assertions of how or when defendants knew or should have known the adverse information, plaintiff alleges that the BPC defendants "knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information ... that the SPD contained affirmative, material misrepresentations." TAC ¶ 249. Although very spare, the court is persuaded that these allegations are sufficient to state a claim for breach of ERISA's fiduciary duties of loyalty and prudence regarding statements that undisputedly misrepresented the company's financial condition. Of course, plaintiff will have to demonstrate at trial that by virtue of their positions within the company and access to contradictory information each of the BPC defendants knew or should have known when the SPD was distributed to plan participants that relying on the company's SEC filings was not prudent.

3. *Securities Claim in ERISA Clothing*

[9] The BPC defendants argue that Count I should be dismissed because it "is a transparent attempt to contort ERISA to address conduct fully regulated under a well-established, pre-existing and separate body of law ... [*i.e.,* that] Count I is nothing more than a securities claim in ERISA clothing." [FN37] In response to a similar argument the *Worldcom* court stated

> [t]he defendants have tried to describe a tension between the federal securities laws and ERISA that would require the dismissal of this claim. Their arguments, however, cannot undermine the soundness of the general principle underlying [the c]laim ... that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in [this c]laim ... despite the defendants' suggestions otherwise, that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.
> ...
> In any event, the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory scheme.

*Id.* at 767. The court cannot rule out the possibility of an ERISA recovery at the pleading stage simply because federal securities law may also provide relief.

4. *Subsumed in Count II*

[10] The BPC defendants argue that Count I should be dismissed because "the asserted omissions in Count I are fully addressed in Count II," which alleges that they and their predecessors, the RBPC defendants, breached their duties to disclose and inform. [FN38] Defendants argue that the duty allegedly breached in Count I could have been cured had they corrected the 1/02 SPD "by providing truthful information to negate the material, untruthful information contained in the Company's SEC filings" as plaintiff alleges in Count II they should have done. [FN39]

\*18 Count I alleges that when the BPC defendants distributed the 1/02 SPD they breached their duty to speak truthfully, a duty that the BPC defendants do not dispute ERISA imposes on fiduciaries. *See Martinez,* 338 F.3d at 424 ("With respect to an employer's misrepresentations, we conclude, as have all of the circuits that have considered this issue, that an employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations."). Count II alleges that the BPC defendants breached a fiduciary duty to disclose truthful information on their own initiative, a duty that the BPC defendants argue ERISA does not impose on fiduciaries. Because "[t]he express language of ERISA provides little indication as to whether there is ever a fiduciary duty to disclose information to participants," *Martinez,* 338 F.3d at 412, because in *Varity,* 116 S.Ct. at 1075,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the Court declined to reach the question of whether ERISA fiduciaries have any duty to disclose truthful information on their own initiative, and because in *Martinez,* the Fifth Circuit demonstrated that it analyzes failure to disclose claims on a case-by-case basis, the court is not persuaded that Count I should be dismissed because it is subsumed in Count II. Moreover, even assuming that the BPC defendants have correctly asserted that Count I is subsumed in Count II, the court nevertheless concludes that Count I should not be dismissed because as stated in Rule 8

> [a] party may set forth two or more statements of a claim ... alternatively or hypothetically, either in one count or ... in separate counts... A party may also state as many separate claims ... as the party has regardless of consistency ...
> Fed.R.Civ.P. 8(e).

*5. Conclusions as to Count I*

Because Count I alleges that the BPC was both the plan administrator and a named fiduciary pursuant to ERISA, and that plaintiff has alleged that acting in their fiduciary capacity as plan administrators, the BPC defendants breached the duties of loyalty and prudence owed to plan participants by distributing to them the 1/02 SPD containing a statement that "encouraged" them "to carefully review" Dynegy's SEC filings "for additional information relevant to investments in the Dynegy Stock Fund" when the BPC defendants knew or should have known by virtue of their positions in the company and access to contradictory information, that the company's SEC filings contained affirmative, material misrepresentations of Dynegy's financial condition, the court concludes that Count I should not be dismissed for the failure to state a claim. Because plaintiff does not allege that the BPC defendants encouraged plan participants to carefully review Dynegy's SEC filings for information relevant to investing in the Dynegy Stock Fund at any time before January 16, 2002, the court concludes that Count I is not actionable before that date.

B. Claims Asserted Against Dynegy's Benefit Plans Committee and its Retirement Benefit Plans Committee

\*19 Plaintiff alleges that members of Dynegy's BPC and its predecessor, the RBPC (1) breached their duty to disclose and inform, TAC ¶¶ 251-256 (Count II); (2) breached their duty to eliminate inappropriate investment options, TAC ¶¶ 264-271 (Count IV); (3) breached their duty to comply with documents and instruments governing the Plan, TAC ¶¶ 272-278 (Count V); and (4) breached their duty to avoid conflict of interest, TAC ¶¶ 284-287 (Count VII). The BPC has been the Plan Administrator and a named fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1102(a)(2), since July 21, 2000, when it replaced the RBPC. See Ex. A § 13.1; Ex. F; and TAC ¶¶ 69-79. Neither the BPC nor the RBPC defendants (collectively "the committee defendants") dispute their status as plan administrators and named fiduciaries under ERISA.

1. *Count II*

In Count II plaintiff alleges that the committee defendants breached the duty to disclose and inform. TAC ¶¶ 251-256. Plaintiff specifically alleges that

> [i]n a plan with various funds available for investment, this duty to inform and disclose includes: (1) the duty to impart to plan participants material information of which the fiduciary has or should have knowledge in the exercise of statutorily required care, skill, prudence and diligence that is sufficient to apprise the average plan participant of the risks associated with investing in any particular fund; and (2) the duty to correct material representations made to the market about a plan investment about which the fiduciary knows or should know, in the exercise of statutorily required care, skill, prudence and diligence.
> The duties to disclose and inform by the ... [c]ommittee ... defendants, arose out of their authority and responsibility under the [g]overning [p]lan [d]ocuments and the [t]rust [a]greement to determine the suitability of each investment fund offered by the Plan, including those holding and acquiring Dynegy stock ...

TAC ¶¶ 254-255. Plaintiff alleges that the committee defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B)

> with respect to the Plan's use of employer stock as a Plan investment... [because] these Defendants ... knew or should have known and failed to disclose to the participants and beneficiaries of the Plan material information about the appropriateness of investing in Company stock and about Dynegy's earning and business condition, as detailed herein, thereby encouraging participants of the Plan to make substantial investments in Company stock in the Plan.

TAC ¶ 256.

The committee defendants argue that they are entitled to dismissal of Count II because neither

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ERISA nor the governing plan documents impose on them an affirmative duty to disclose the information sought by the plaintiff and because ERISA imposes no affirmative duty on plan fiduciaries to provide investment advice. Defendants also argue that Count II should be dismissed for any period before January 1, 2002, because prior to that date plan participants could not have acted on any information that allegedly should have been disclosed.

(a) ERISA's Disclosure Requirements

*20 [11] In addition to the strict standards of loyalty and prudence derived from the common law of trusts imposed on ERISA fiduciaries by 29 U.S.C. § 1104(a)(1) and (2), ERISA includes reporting and disclosure requirements that the Fifth Circuit has characterized as "crucial components" of its scheme to govern the operation of privately sponsored employee benefit plans. *Martinez,* 338 F.3d at 411. The specific rules governing the information that must be provided to participants and beneficiaries, as well as to certain government agencies, appear at 29 U.S.C. § § 1021-1031. *Id.* Citing these disclosure provisions, the committee defendants argue that Count II should be dismissed because ERISA does not contain any specific obligation to disclose information about a plan sponsor's earnings and business condition needed either to apprise the average participant of the risks associated with investing in company stock or to correct material representations made to the market. The committee defendants argue that even assuming that such an ERISA duty to disclose does exist, such a duty can only be triggered by a plan participant's written request, and plaintiff has not alleged that she made a written request for information about Dynegy's earnings and business condition. In support of their arguments the committee defendants cite *Ehlmann v. Kaiser Foundation Health Plan of Texas,* 198 F.3d 552 (5th Cir.), cert. dismissed, 530 U.S. 1291, 121 S.Ct. 12, 147 L.Ed.2d 1036 (2000), and *Martinez,* 338 F.3d at 407, two cases in which the Fifth Circuit expressly refused to recognize that ERISA imposes affirmative duties of disclosure beyond those already provided by the statute and the regulations.

In *Ehlmann* the Fifth Circuit held that ERISA does not impose a fiduciary duty on health maintenance organizations (HMOs) to disclose physician compensation and reimbursement schemes to plan participants. 198 F.3d at 554-556. Citing the canon of statutory construction that specific provisions control general provisions, the *Ehlmann* court reasoned that ERISA's general fiduciary provision "makes no reference to any duty to disclose, [and that although] ERISA contains numerous other provisions detailing an HMO's disclosure duties ... [those] provisions do not reference physician reimbursement plans." *Id.* at 555. The court also reasoned that because Congress could have included a physician compensation disclosure requirement among ERISA's HMO-specific provisions, and that because the DOL could have promulgated regulations that required such a disclosure, the absence of such a requirement in both the statute and the regulations was probably intentional. *Id.*

In *Martinez,* 338 F.3d at 416-25, the Fifth Circuit reviewed at length an ERISA fiduciary's duty to disclose future plan benefit changes. The court began its review with the observation that

> ERISA does not expressly enumerate the particular duties of a fiduciary, but rather "relies on the common law of trusts to define the general scope of a fiduciary's responsibilities." As a result, "[t]he express language of ERISA provides little indication as to whether there is ever a fiduciary duty to disclose information to participants and beneficiaries," and "[n]either ERISA's fiduciary duty nor reporting and disclosure rules directly address the relationship between" one another.

*21 *Id.* at 412 (quoting *Bintz* n.9 at 985 and 988). The court observed that "[a]lthough trust principles impose a duty of disclosure upon an ERISA fiduciary when there are 'material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know' but 'needs to know for his protection,' " *id.* (quoting *Restatement (Second) of Trusts* § 173 cmt. d (1959)), this trust principle was not sufficient to resolve the issue then before the court, *i.e.,* whether an employer- administrator has "a duty to truthfully disclose, upon inquiry from plan participants or beneficiaries, whether it is considering amending the benefit plan." *Id.* at 409. The court used a two-step approach to resolve the issue, asking

> [f]irst, should we find that an employer who chooses to speak about prospective plan changes has a fiduciary duty not to misrepresent those changes, and, if so, at what point does that duty arise... [and asking s]econd, should we also place upon the employer an affirmative obligation to disclose a future plan change, and, if so, at what point.

*Id.* at 424. In response to its first query the court stated:

> With respect to an employer's misrepresentations, we conclude, as have all of the circuits that have considered this issue, that an employer, if it chooses to communicate about the future of a

participant's plan benefits, has a fiduciary duty to refrain from misrepresentations... when an employer chooses, in its discretion, to communicate about future plan benefits, it does so as an ERISA fiduciary. In speaking it is exercising discretionary authority in administration of the plan, a specifically enumerated fiduciary function under ERISA.... When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully.

*Id.* at 424-25. Nevertheless, in response to its second query "whether an employer has a fiduciary duty to affirmatively disclose whether it is considering amending its benefit plan," *id.* at 28, the court stated flatly, "we conclude that no such duty exits." *Id.* In conclusion the court reasoned:

> We believe the two views we have promulgated-- that an employer has no affirmative duty to disclose the status of its internal deliberations on future plan changes even if it is seriously considering such changes, but if it chooses in its discretion to speak it must do so truthfully-- coalesce to form a scheme that accomplishes Congress's dual purposes in enacting ERISA of protecting employees' rights to their benefits and encouraging employers to create benefit plans.

*Martinez,* 338 F.3d at 430.

Plaintiff argues that because the *Ehlmann* court reaffirmed the Fifth Circuit's earlier holding in *McDonald,* 60 F.3d at 237, that ERISA required a fiduciary to disclose a change in its rate schedule that caused a prohibitive premium to be set due to the impact that such a premium could have on small employers, that in this circuit, an affirmative duty to disclose "arises when a [n ERISA] fiduciary knows or should know of information that could have an extreme impact on participants' interests of which participants are unaware." [FN40] *See Ehlmann,* 198 F.3d at 554-556. The committee defendants argue that *McDonald* is distinguishable from this case because the disclosure required there concerned information about plan operations that could only have been significant to plan members, while the disclosures that plaintiff argues should have been made in this case concern information about Dynegy's earnings and business condition needed to correct misstatements made to the market and to apprise plan participants of the risks and appropriateness of investing in company stock.

(b) Application of ERISA's Disclosure Requirements

*22 Citing the *Ehlmann* court's reliance on the canon of statutory construction that specific language rules general language, the committee defendants argue that Count II should be dismissed because the specific disclosure requirements mandated by ERISA do not include a need to disclose information about an employer-sponsor's earnings or business condition needed either to correct misstatements made to the market or to apprise plan participants of the risks and appropriateness of investing in company stock. Unlike the physician compensation rates at issue in *Ehlmann,* which constitute a discrete category of information that either Congress or the DOL could plausibly have included in readily related sections of ERISA or the regulations promulgated thereto had either entity intended to so obligate ERISA fiduciaries, the misrepresentations of cash flow, round-trip trading, and other fraudulent business practices that plaintiff alleges should have been disclosed to plan participants are not readily related to any specific sections of ERISA or the DOL's regulations. Consequently, the court concludes that the disclosures at issue in Count II are in fact governed by the general fiduciary duties set forth in 29 U.S.C. § 1104 and the case law interpreting them, and are not governed by any specific provisions of either the statute or the regulations.

(i) Disclosures about Dynegy's Earnings and Business Conditions Needed to Apprise Plan Participants of the Risks and Appropriateness of Investing in Company Stock

[12] Asserting that information about the accounting improprieties and other financial problems at Dynegy constitute special circumstances that could have an extreme impact on plan participants, plaintiff argues that the committee defendants breached their duties of loyalty and prudence by failing to disclose to plan participants that the company engaged in these actions, and that these actions caused its stock price to be inflated and its stock to be a dangerous long-term retirement investment.

The committee defendants argue that plaintiff's claim that they breached an ERISA fiduciary duty to disclose information about Dynegy's earnings and business conditions needed to apprise plan participants about the risks and appropriateness of investing in company stock should be dismissed because ERISA does not obligate plan fiduciaries to provide investment advice to plan participants. In support of this argument the committee defendants cite *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 940 F.2d 564, 582 (10th Cir.), *cert. denied,* 112 S.Ct. 589 (1991), for its conclusion that "ERISA does

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

not, as ... the Securities Acts require, compel the disclosure of 'relevant, accurate information upon which to base an investment decision." ' [FN41] The committee defendants also argue that this claim should be dismissed for any period prior to January 1, 2002, because prior to that date plan participants could not have acted on any information that allegedly should have been disclosed. In support of this argument the committee defendants assert that prior to January 1, 2002, plan participants were neither able to invest their employee contributions in company stock nor to convert Dynegy's employer contributions from company stock.

*23 The few cases in which the Fifth Circuit has addressed the affirmative duty to disclose imposed by ERISA all involved allegations that disclosures were needed to correct and/or clarify representations made to plan participants by plan fiduciaries acting in their fiduciary capacity. See McDonald, 60 F.3d at 237 (recognizing affirmative duty to disclose acceleration feature of new rate schedules); Martinez, 338 F.3d at 425 ("whenever an employer exercises a fiduciary function it must speak truthfully"). These cases establish that when the BPC defendants distributed the 1/02 SPD that encouraged plan participants to carefully review Dynegy's SEC filings, they also triggered an affirmative duty to disclose material adverse information that the BPC defendants knew or should have known regarding the risks and appropriateness of investing in company stock. The court concludes, therefore, that plaintiff has stated a breach of fiduciary duty claim against the BPC defendants for failing to disclose information material to investing in company stock from January 1, 2002. However, because plaintiff has failed to allege that plan fiduciaries made any representations to plan participants regarding investment in company stock prior to publication of the 1/02 SPD, and because both plaintiff's allegations and the arguments that she has submitted in response to the committee defendants' motions to dismiss demonstrate that prior to January of 2002 plan participants could neither invest their own employee contributions in company stock nor convert Dynegy's employer contributions from company stock, [FN42] the court concludes that Count II is not actionable for any period prior to January of 2002.

(ii) Disclosures about Dynegy's Earnings and Business Conditions Needed to Correct Misrepresentations to the Market

[13] Citing McDonald, 60 F.3d at 235-237, plaintiff argues that the Fifth Circuit expressly recognizes that ERISA fiduciaries have an affirmative duty to disclose material information on their own initiative when the fiduciary is aware of special circumstances that could have an extreme impact on the Plan and its participants. [FN43] Asserting that information about the accounting improprieties and other financial problems at Dynegy constitute special circumstances that could have an extreme impact on plan participants, plaintiff argues that her allegations that the committee defendants knew or should have known that the company engaged in these actions are sufficient to state a claim for breach of an affirmative duty to disclose information about Dynegy's earnings and business conditions needed to correct misrepresentations to the market. [FN44] The committee defendants argue that this claim should be dismissed because misrepresentations made to the market do no constitute special circumstances that could have an extreme impact on the Plan and its participants.

In *Varity* the Supreme Court chose not to "reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." 116 S.Ct. at 1075. The few cases in which the Fifth Circuit has discussed ERISA's disclosure duties acknowledged that an affirmative duty to disclose can arise when special circumstances threaten a potentially extreme impact on a plan as a whole, but provide little guidance for determining which circumstances are capable of giving rise to such a duty. See Ehlmann, 198 F.3d at 556 (citing McDonald, 60 F.3d at 234).

*24 Concern for uninformed and vulnerable plan participants has increasingly led some courts to conclude that circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant or beneficiary because that participant or beneficiary "may have no reason to suspect that it should make inquiry into what may appear to be a routine matter." Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1181 (3d Cir.1996). See also Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 380 (4th Cir.2001)("ERISA administrators have a fiduciary obligation 'not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures.' ... Moreover, a fiduciary is at times obligated to affirmatively provide information to the beneficiary ... [including] 'facts affecting the interest of the beneficiary which he knows the beneficiary does not