Exhibit D
Cont'd

Case 3:02-cv-01138-AWT    Document 112-5    Filed 04/26/2004    Page 1 of 19

know and which the beneficiary needs to know for his protection." '); *Bins v. Exxon Co. U.S.A.,* 189 F.3d 929 (9th Cir.1999)("We believe that once an ERISA fiduciary has material information relevant to a plan participant or beneficiary, it must provide that information whether or not it is asked a question."), *on rehearing en banc,* 220 F.3d 1042, 1048-49 (9th Cir.2000)(when a proposed change in retirement benefits becomes sufficiently likely and therefore material, the employer has a duty to provide complete and truthful information); *Schmidt v. Sheet Metal Workers' Nat. Pension Fund,* 128 F.3d 541, 546-47 (7th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1513, 140 L.Ed.2d 667 (1998)("A plan fiduciary may violate its duties ... either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be misleading."). Common to all of these decisions is the requirement that the fiduciary charged with the duty to disclose have actual knowledge of material information, which he knows or should know the plan participants do not know, but need to know, to protect their interests.

Assuming without deciding that plaintiff's allegations regarding accounting improprieties and other financial problems at Dynegy constitute special circumstances capable of having an extreme impact on plan participants, the court nevertheless concludes that plaintiff's allegations are insufficient to state a failure to disclose claim because they do not allege that the committee defendants had actual knowledge of the material information that they allegedly should have disclosed. Plaintiff's failure to allege what the committee defendants allegedly knew, when they allegedly knew it, or why it was material, leaves her allegation of actual knowledge insufficient to state a failure to disclose claim because her allegations fail to put the defendants on notice of what they were allegedly duty bound to disclose, when they were duty bound to disclose it, or why it was material. *See Glaziers,* 93 F.3d at 1181 (circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant). *Accord Enron,* 284 F.Supp.2d at 556. Plaintiff's failure to allege either that an appropriate investigation would have revealed Dynegy's financial improprieties or that the committee defendants had notice of improprieties that they failed to investigate leaves her allegation of constructive knowledge similarly insufficient to state a failure to disclose claim. *See Kuper v. Iovenko,* 66 F.3d 1447, 1460 (6th Cir.1995)(the failure to fulfill an investigatory responsibility will not result in a breach unless an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident); *Barker v. American Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir.1995)(an ERISA fiduciary has a duty to investigate suspicions he has with respect to plan funding and maintenance).

*25 [14] The reason the court has concluded that plaintiff's allegations that the BPC defendants "knew or should have known" are sufficient to support a claim in Count I and in Count II regarding misstatements made to plan participants about investing in company stock, but are insufficient to support a claim in Count II regarding misstatements made to the market about the company's financial condition, is that ERISA imposes a fiduciary duty on the BPC defendants to investigate before they speak, to speak truthfully, and to correct their own misstatements, but does not impose a fiduciary duty on them to initiate disclosures needed to correct the misstatements of others absent knowledge of material information that they know the plan participants do not know, but need to know, to protect their interests. *See McDonald,* 60 F.3d at 237 (duty to disclose does not arise until plan fiduciaries know the information, and either know or should know that plan participants do not know the information, but need to know it to protect their interests). *See also Glaziers,* 93 F.3d at 1181 (circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant).

(c) Conclusions as to Count II

For the reasons explained above, the court concludes that plaintiff has stated a breach of fiduciary duty claim against the committee defendants arising from their failure to disclose information about Dynegy's earnings and business condition needed to prevent plan participants from being misled by the statement contained in Appendix A of the 1/02 SPD that "encouraged" them "to carefully review" Dynegy's SEC filings "for additional information relevant to investing in the Dynegy Stock Fund," [FN45] but has failed to state a breach of fiduciary duty claim against the committee defendants arising from their failure to disclose information about Dynegy's earnings and business condition needed to correct misstatements made to the market. Accordingly, the court concludes that the allegations asserted in Count II are sufficient only to state a claim against those committee defendants who were members of the BPC between January of 2002 and January of 2003 and are insufficient to state a claim against members of the RBPC.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*2. Count IV*

In Count IV plaintiff alleges that the committee defendants breached the duty to eliminate inappropriate investment options. TAC ¶¶ 264-271. Plaintiff specifically alleges that the committee defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)--(B) by failing to investigate and monitor the suitability of Dynegy stock as an investment option for the Plan.

> By no later than the beginning of the Class Period and thereafter during the Class Period, these Defendants could not have reasonably made a determination that Dynegy stock was a suitable investment for the Plan, either for a participant's discretionary account or for Dynegy's match. In fact, by the beginning of the Class Period, if not before, Dynegy stock was an unsuitable investment option for the Plan because it was trading at a price inflated by materially misleading information or omissions concerning (1) Project Alpha, (2) the round-trip wash trades, (3) Dynegy's role in the manipulation of energy prices, (4) financing and liquidity concerns, (5) the manipulation and false reporting of financial results from 1999 to 2001 and other false or misleading information provided to the market ...

*26 TAC ¶ 269 (emphasis added). Plaintiff also alleges that pursuant to the governing plan documents the committee defendants "had the authority to select, add and eliminate investment alternatives," TAC ¶ 267; "knew or were in a position to discover the facts relevant to the suitability and fair pricing of Dynegy stock at all relevant times," TAC ¶ 268; "may not blindly follow the plan document if doing so leads to an imprudent result," TAC ¶ 270; and breached their fiduciary duties of loyalty and prudence by "continuing to accept the match in Dynegy stock or permitting the acquisitions of Dynegy stock as an investment alternative in the Plan during the Class Period without insisting on corrective disclosures to the market," TAC ¶ 271.

The committee defendants argue that Count IV should be dismissed because plaintiff's allegations that they should have eliminated Dynegy stock as the employer match is barred by the settlor doctrine, and because plaintiff's allegations that they should have eliminated Dynegy stock as an investment option for employee contributions is barred by ERISA § 404(c).

(a) Employer Matching Contributions

[15] The committee defendants argue that plaintiff's claim that they breached ERISA's fiduciary duties of loyalty and prudence by "continuing to accept the [c]ompany match in Dynegy stock," TAC ¶ 271, should be dismissed because under the settlor doctrine they had no discretion or fiduciary authority with respect to accepting employer contributions in company stock. [FN46] Plaintiff argues that this claim should not be dismissed because as the plan administrators and named plan fiduciaries charged with managing plan assets, "the [c]ommittee [d]efendants were the parties responsible as fiduciaries for accepting employer stock to satisfy the employer's matching contribution on behalf of the [p]lan." [FN47] Plaintiff also argues that plan administrators always have discretion to disregard the terms of a plan that violate ERISA. [FN48]

The Dynegy Plan provides that

> Employer Matching Contributions *shall* be contributed to the Trust in the form of shares of Company Stock. The shares of Company Stock that are so contributed shall be valued at the closing price of such stock on the New York Stock Exchange, Inc. as reported by The Wall Street Journal in the New York Stock Exchange Composite Transactions for the last day of the month for which the contribution is made ...

Ex. A § 3.3(c)(emphasis added). [FN49] The Dynegy Plan also provides that "the Committee shall be the Plan 'administrator' and shall be the 'named fiduciary' ' with respect to the general administration of the Plan (*except as to the investment of the assets of the Trust Fund* )." Ex. A § 13.1 (emphasis added). *See also* Ex. B § 13.1. Section 15.2 provides that "[e]ach fiduciary ... shall have only those specific ... responsibilities ... as are specifically given him under the [p]lan" and that (with one inapplicable exception) "the Trustee shall have the sole responsibility for the administration, investment, and management of the assets held under the Plan." Ex. A § 15.2.

*27 Because the Dynegy Plan not only required that the employer match be made in the form of shares of company stock contributed directly to the trust fund, but also expressly precluded the committee defendants from serving as plan administrator or named fiduciary with respect to investment of the trust assets, the committee defendants argue that acceptance and investment of employer contributions in the form of company stock is a design feature of the Plan over which they lack fiduciary authority. [FN50] *See Pegram,* 120 S.Ct. at 2153 ("The specific payout detail of the plan was ... a feature that the employer as plan sponsor was free to adopt without

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

breach of any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts."); *Hughes,* 119 S.Ct. at 763 ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.").

Plaintiff does not dispute that the Dynegy Plan requires employer matching contributions to be made solely in the form of company stock, that this requirement is a design feature of the Plan, or that the Plan precludes the committee defendants from serving as plan administrator or named fiduciary with respect to investment of the trust assets. [FN51] Nor does plaintiff dispute that the committee defendants have a duty to adhere to the terms of the Plan. Because the Dynegy Plan not only required the employer match to be made exclusively in company stock contributed directly to the trust fund, but also expressly precluded the committee defendants from serving as plan administrator or named fiduciary with respect to investment of trust funds, the court concludes that plaintiff will not be able to prove any set of facts capable of establishing that the committee defendants breached fiduciary duties of loyalty and prudence owed to the Plan by continuing to accept the employer match in company stock because their fiduciary duties did not extend to either the acceptance or the investment of employer matching contributions. [FN52] See TAC ¶ 271.

(b) Investment Option for Employee Contributions

[16] The committee defendants argue that plaintiff's claim that they breached their fiduciary duties of loyalty and prudence by failing to eliminate the Dynegy Stock Fund as an investment option for employee contributions should be dismissed because 29 U.S.C. § 1104(c) exempts them from liability for any losses stemming from employee-directed investments. Section 1104(c) provides "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." [FN53]

Plaintiff responds that § 1104(c) is not applicable to this claim because the committee defendants prevented plan participants from exercising control by concealing material, non-public facts regarding investment in the Dynegy Stock Fund. [FN54] Asserting that the committee defendants bear the burden of proving § 1104(c)'s applicability, plaintiff argues that this claim should not be dismissed on the pleadings. [FN55]

*28 Although the parties dispute § 1104(c)'s applicability to the Dynegy Plan, they do not dispute that the committee defendants "had the duty to set out the menu of investment options." [FN56] Nor do they dispute that the Dynegy Stock Fund became available as an investment option for employee-directed contributions only in January of 2002. The committee defendants do not dispute that the duty to set out the menu of available investment options is subject to the fiduciary duties of loyalty and prudence, which include the duty to eliminate investment options that pose unreasonable risks of loss to the Plan. [FN57] Plaintiff alleges that the committee defendants breached their fiduciary duties of loyalty and prudence by offering the Dynegy Stock Fund or by failing to eliminate it as an investment option for employee-directed accounts because they either knew or were in a position to discover facts about the stock's suitability and fair pricing that could not reasonably have allowed them to conclude that it was a suitable investment for the Plan. The court concludes that these allegations are sufficient to state a claim for breach of fiduciary duty against the committee defendants regardless of § 1104(c)'s applicability. Because the parties agree that the Dynegy Stock Fund only became an investment option for employee-directed accounts in January of 2002, the court concludes that this claim is not actionable for any period preceding January 1, 2002. [FN58]

(c) Conclusions as to Count IV

The court concludes that plaintiff has not stated a claim for breach of fiduciary duty against the committee defendants for accepting and investing employer matching contributions in Dynegy stock, but has stated a claim for breach of fiduciary duty against them for offering and failing to eliminate the Dynegy Stock Fund as an investment option for employee-directed accounts.

3. *Count V*

In Count V, TAC ¶¶ 272-278, plaintiff alleges that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the plan imposed by 29 U.S.C. § 1104(a)(1)(D) by "failing to direct the diversification of plan assets out of employer stock and into diversified investments throughout the class period." TAC ¶ 278. Plaintiff

alleges that "[p]ursuant to the [g]overning [p]lan [d]ocuments, the [t]rust [a]greement, and the [r]esolutions," the committee defendants "had the authority to direct the [t]rustee with respect to investments in employer stock, including the authority to require the sale and reinvestment of those assets." TAC ¶ 274. Plaintiff alleges that § 15.1 of the Plan provided that Article XV would "control over any contrary, inconsistent or ambiguous provisions contained in the Plan," TAC ¶ 275; that § 15.3 of the Plan provided that "[e]ach fiduciary under the Plan ... shall discharge his duties and responsibilities with respect to the Plan ... (c) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is prudent not to do so ...," TAC ¶ 276; and that "the duty to diversify contained in Article XV of the Plan contained no exception for investments in employer stock." TAC ¶ 276. The committee defendants argue that Count V should be dismissed because the Plan imposes no duty to diversify employer matching contributions, [FN59] and because plaintiff's allegations do not constitute a prima facie showing that the employee-directed contributions were not diversified. [FN60]

(a) Employer Matching Contributions

*29 [17] Asserting that "[t]he [P]lan makes unambiguously clear ... that it 'is specifically authorized to acquire and hold up to 100% of its assets in [c]ompany [s]tock so long as [c]ompany [s]tock is a 'qualifying employer security," ' Ex. A § 19.5, the committee defendants argue that the Plan is an eligible individual account plan under 29 U.S.C. § 1107(d)(3)(B), and that as such, employer stock is exempt from ERISA's general diversification requirement. [FN61]

> In the case of an eligible individual account plan [as defined in § 407(d)(3) ], the diversification requirement of paragraph 1(C) and the prudence requirement (only to the extent it requires diversification) of paragraph 1(B) is not violated by acquisition or holding of qualified real property or qualifying employer securities [as defined in § 407(d)(4) and (5) ].

29 U.S.C. § 1104(a)(2). The committee defendants argue that Count V should be dismissed because "[i]t is inconceivable that a plan designed to exempt employer securities from the *statutory* duty to diversify would re-impose that same duty in the four corners of the agreement itself." [FN62] For the reasons set forth below, the court agrees that the Dynegy plan should not be read to re-impose such a duty.

Asserting that § 15.3 *requires* Plan investments to be diversified unless under the circumstances diversification is not prudent, while § 19.5 merely *authorizes* but does not mandate the investment of Plan assets in Dynegy stock, plaintiff argues that "the [P]lan's plain language makes clear that all plan fiduciaries had a duty to diversify the Plan's holdings." [FN63] Plaintiff argues that because § 19.5 merely permits, but does not require, employer matching contributions to be invested in company stock, Count V should not be dismissed because it challenges the committee defendants' decision to ignore a different and overriding plan requirement. [FN64] In support of her argument plaintiff cites *Enron,* 284 F.Supp.2d 668-669, as a case in which plan terms identical to those at issue here were found to support a similar claim. [FN65] While plaintiff is correct that § 19.5 does not mandate the investment of employer matching contributions in Dynegy stock, other provisions of the plan do, and these provisions distinguish the Dynegy Plan from the *Enron* plan.

Section 3.3(c) unambiguously provides that "Employer Matching Contributions *shall* be contributed to the Trust in the form of *shares of Company Stock.*" Ex. A § 3.3(c) (emphasis added). Section 4.1(c) provides that "Employer Matching Contributions made by the Employer on a Member's behalf *shall* be allocated to such Member's Employer Contribution Account." Ex. A § 4.1(c)(emphasis added). Prior to January of 2002, § 5.1 of the Plan provided that "Employer Matching Contributions made to the Plan ... *shall* be invested in the Company Stock Fund," Ex. B § 5.1, and that "... a Member *may not* convert the investment designation of any amounts allocated to the Company Stock Fund." Ex. B § 5.2(c)(emphasis added). *See also* TAC ¶ 64. Effective January 1, 2002, the Plan was amended to provide that "Employer Matching Contributions ... *shall* initially be invested in the Company Stock Fund," Ex. A § 5.1, and that

> *30 [a] Member *may* elect to convert his investment designation with respect to the amounts already allocated to his Accounts (including, without limitation, the conversion of the investment designation with respect to amounts allocated to the Company Stock Fund pursuant to Section 5.1)(emphasis added).

Ex. A § 5.2(c). These provisions establish that as a matter of plan design, employer contributions were allocated to participants' accounts in the form of shares of company stock invested in the Company Stock Fund, that prior to January of 2002 participants were precluded from converting the investment

Case 3:02-cv-01138-AWT    Document 112-5    Filed 04/26/2004    Page 6 of 19
2004 WL 540529
--- F.Supp.2d ---
(Cite as: 2004 WL 540529 (S.D.Tex.))

Page 24

designation of any amounts allocated to the Company Stock Fund, and that after January of 2002 participants were able to convert the investment designation of amounts allocated to the Company Stock Fund. These provisions make it clear that once employer matching contributions were allocated to participants' accounts the ability to diversify them out of company stock was governed by the investment funds provisions of Article V and not by the fiduciary provisions of Article XV. These provisions of the Dynegy Plan also distinguish it from the plan at issue in *Enron*, 284 F.Supp.2d at 668-670.

The corresponding provision of Enron's plan relied on by that court was "Section V.16 ... [which] provides that Enron's 50% match of employees' contributions would be made 'primarily' in Enron stock." *Enron*, 284 F.Supp.2d at 668. Reasoning "that 'primarily' means 'for the most part,' not 'all,' and that the leeway provides the plan fiduciaries with considerable discretion, which they allegedly did not exercise prudently or loyally," *id. at 670*, the court concluded that the plaintiffs' complaint stated a claim for co-fiduciary liability related to the failure to diversify. *Id*. The *Enron* court's analysis shows that the Enron plan was not, as plaintiff asserts, *identical* to the Dynegy plan. [FN66] Because the terms of the plans differ, the court is not persuaded that plaintiff's allegations warrant the conclusion reached in *Enron*. Instead, the court concludes that the plan documents require the employer match to be made in company stock, that plaintiff is unable to prove any set of facts capable of establishing that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the Plan by failing to direct the diversification of employer matching contributions out of employer stock and into diversified investments, and that plaintiff has failed to state a claim for which relief may be granted regarding this aspect of Count V.

(b) Employee Contributions

[18] Citing *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir.1997), the committee defendants argue that Count V should be dismissed because plaintiff has failed to allege facts demonstrating that the Plan is not diversified "on its face." Because plaintiff alleges that the self-directed portion of the Dynegy Plan has always included an array of investment options and does not, therefore, allege that the Plan was not diversified on its face, TAC ¶¶ 61-62, the court concludes that plaintiff has failed to state a claim that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the Plan imposed by 29 U.S.C. § 1104(a)(1)(D) by failing to direct the diversification of the employee contributions.

4. *Count VII*

*31 [19] In Count VII plaintiff alleges that the committee defendants breached the duty to avoid conflict of interests and promptly resolve them when they occur. TAC ¶¶ 264-271. Plaintiff specifically alleges that the committee defendants breached the fiduciary duty of loyalty imposed by 29 U.S.C. § 1104(a)(1)(A) by
> continuing to allow Company stock as a Plan investment during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it, and generally failing to take whatever steps were necessary to ensure that the Plan fiduciaries did not suffer from a conflict of interest, including notifying the Department of Labor about the information which made employer stock an unsuitable investment for the Plan.

TAC ¶ 287.

The committee defendants argue that Count VII should be dismissed because "[n]owhere in the [c]omplaint does Plaintiff explain the source or nature of the conflict, set forth specific facts demonstrating that an *actual* conflict existed or assert that the supposed conflict benefitted these Defendants." [FN67] Citing 29 U.S.C. § 1108(c)(3), defendants assert that ERISA recognizes that fiduciaries often have dual status as committee member and corporate officer, and that to the extent this count is based on their "continuing to allow [c]ompany stock as a[p]lan investment during the Class Period" and "continuing to accept the [employer] match in Dynegy stock or permitting the acquisitions of Dynegy stock as an investment alternative in the [p]lan," that it should be dismissed for the same reasons that Counts IV and V should be dismissed. [FN68] Defendants also argue that plaintiff's conclusory assertions of a duty to engage independent fiduciaries and/or advisors to make judgments concerning the Plan's investment in company stock, TAC ¶ 287, and a duty to notify the DOL of information that allegedly made the stock an unsuitable investment are not actionable because plaintiff has failed to allege either that the hiring of independent advisors or notice to the DOL would have prevented the loss allegedly suffered by the Plan. [FN69]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Plaintiff's only response in opposition is to assert that "although an ERISA fiduciary 'may wear many hats ... [w]hen making fiduciary decisions ... a fiduciary may wear only his fiduciary hat,' " [FN70] and to argue that Count VII should not be dismissed because it "asserts that the [c]ommittee [d]efendants failed to take necessary steps to ensure that they did not suffer from a conflict of interest." [FN71] Although plaintiff cites *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir.2000), in support of her argument, the *Bussian* court merely commented that

> [t]he presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised... "The level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict." *Metzler*, 112 F.3d at 213. To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to "at a minimum" undertake an "intensive and scrupulous independent investigation of [the fiduciary's] options." *Leigh I*, 727 F.2d at 1250126 (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982)). In some instances, the only open course of action may be to appoint an independent fiduciary.

*32 These comments presuppose the presence of an identifiable conflict of interests and harm stemming therefrom. Because plaintiff has not alleged either an identifiable conflict or harm, and has similarly failed to allege either that the committee defendants benefitted from that conflict or, if so, how they benefitted, and has not cited the court to any case that has recognized allegations like those asserted in Count VII as actionable, the court concludes that plaintiff has failed to state a conflict of interest claim because she has failed to allege an identifiable conflict that either benefitted the defendants or caused an identifiable harm to the Plan.

C. Claims Asserted Against Dynegy, the Director Defendants, and the Human Resource Director Defendants

Plaintiff alleges that Dynegy, Dynegy's Board of Directors, and members of its Human Resources Committee (1) breached their duty to disclose and inform the BPC and/or the RBPC incident to the duty to appoint and monitor their members, TAC ¶ ¶ 257-263 (Count III), and (2) failed to monitor the BBPC and/or the RBPC, TAC ¶ ¶ 284-287 (Count VI). Dynegy's foreign directors, Stephen J. Brandon and Paul N. Woollacott, argue that these claims should be dismissed because the court lacks personal jurisdiction over them. The remaining defendants argue that these claims should be dismissed for failure to state a claim on which relief may be granted.

1. *Foreign Directors*

Director Defendants Brandon and Woollacott argue that the court lacks personal jurisdiction over them because they are not residents of Texas and because plaintiff has not alleged facts establishing that they had any contact with Texas, *i.e.,* the forum state, sufficient to give rise to the court's jurisdiction. Specifically, Brandon and Woollacott argue that they did not serve as directors when any events giving rise to this action occurred. Plaintiff's only response is that Brandon and Woollacott served as Dynegy directors until 2000. [FN72] The court has concluded that the only events alleged by plaintiff that give rise to claims against the committee defendants that are sufficient to state claims against them occurred after 2000, *i.e.,* issuance and distribution of the 01/02 SPD and availability of the Dynegy Stock Fund as an investment option for plan participants beginning in January of 2002. The court therefore concludes that the claims asserted against Brandon and Woollacott should be dismissed because plaintiff's allegations are insufficient to establish the court's personal jurisdiction over them. See *Bannistor*, 287 F.3d at 405 (citing 29 U.S.C. § 1109(b)("No fiduciary shall be liable with respect to a breach of fiduciary duty ... if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.")).

2. *Domestic Directors*

Dynegy, Dynegy's Board of Directors, and the HRC defendants argue that Counts III and VI should be dismissed because they have breached no duties by failing either to inform or to monitor the committee defendants, and because the committee defendants have breached no duties of their own.

(a) Underlying Breaches

*33 The parties do not dispute that absent breaches by the committee defendants there can be no liability for breach of a failure to inform them or to monitor their performance. Because the court has concluded that plaintiff's allegations are sufficient to state claims against the BPC defendants for breach of the

fiduciary duty not to make affirmative material misrepresentations based on representations made in the 01/02 SPD (Count I), breach of the fiduciary duty to disclose and inform based on representations made in the 01/02 SPD (Count II), and breach of the fiduciary duty to eliminate inappropriate investment options based on availability of the Dynegy Stock Fund as an investment option for employee-directed contributions from January of 2002 (Count IV), the court is not persuaded that the committee defendants have breached no duties.

(b) Individual Director Defendants

Individual director defendants, Jeffery M. Lipton, Jack S. Mustoe, A. Terence Poole, Peter J. Robertson, Stanley I. Rubenfeld, and Patricia A. Woertz, argue that the claims asserted against them in Counts III and VI should be dismissed because none of the events underlying the claims recognized as stated against the BPC defendants occurred while they (*i.e.*, these specific individuals) served as plan fiduciaries. Plaintiff responds that she has alleged "that each of the Individual Director Defendants served the Plan in a fiduciary capacity at least 'until 2000." ' [FN73] Because the only events that the court has concluded are sufficient to state claims against the BPC defendants occurred after 2000, *i.e.*, issuance of the 01/02 SPD and availability of the Dynegy Stock Fund as an investment option for employee contributions from January of 2002, the court concludes that Counts III and VI fail to state claims against these individual director defendants. *See Bannistor, 287 F.3d at 405* ("No fiduciary shall be liable with respect to a breach of fiduciary duty ... if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.")).

(c) Dynegy, Dynegy's Board, and HRC Defendants

[20] Unless the remaining corporate defendants are named as fiduciaries in the governing plan documents, their status as fiduciaries is controlled by ERISA's definition of fiduciary, which is functional in nature:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises *any discretionary authority or discretionary control respecting management of such plan* or exercises any authority or control respecting the management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
> 29 U.S.C. § 1002(21)(A)(emphasis added). *See Pegram, 120 S.Ct. at 2152- 2153* ("in every case charging breach of ERISA fiduciary duty ... the threshold question is ... whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"). A company cannot be subject to fiduciary liability simply by virtue of its role as plan sponsor. *Hughes, 119 S.Ct. at 763*. Nor can its officers and directors be regarded as fiduciaries simply because of their corporate position. *Sommers I, 793 F.2d at 1460* (jury could not infer that defendants had control over plan trustees, giving rise to fiduciary obligations merely from their status as an officer and director, or merely from the their power to appoint the trustees). The corporate defendants can be subject to fiduciary liability only if they were acting in a fiduciary, as opposed to a corporate, capacity, and the act-or omission-complained of was within the scope of their fiduciary duties. In *Sommers I* the Fifth Circuit instructed that "if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions. 793 F.2d at 1460. The DOL has expressed the same view, stating that where corporate defendants are charged with the authority to appoint, their "responsibility, and, consequently, their liability, is limited to selection and retention of fiduciaries .." 29 C.F.R. § 2509.75-8, Question D-4. *See also Crowley, 234 F.Supp.2d at 230* (applying this view).

(i) Count III

*34 Plaintiff alleges in Count III that Dynegy, the Director Defendants, and the Human Resource Director Defendants breached their duty to disclose and inform the BPC and/or the RBPC incident to the duty to appoint and monitor them. TAC ¶¶ 257-263. Plaintiff specifically alleges that these defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) when

> Dynegy, acting through the Director Defendants, the Director Defendants acting through the Human Resources Director Defendants, and the Human Resources Director Defendants had a duty pursuant to the aforementioned sections of ERISA to disclose to and inform the Benefit Plans Committee Defendants and/or the Retirement/Benefit Plans Committee Defendants of all material matters which the Benefit Plans Committee and/or the Retirement/Benefit Plans Committee Defendants reasonably needed to know to fulfill their duties to the participants and beneficiaries, including their

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

duties to determine the suitability of the investment funds offered by the Plan, and their duty to disclose and inform the participants and beneficiaries of the Plan of all information material to the suitability of investments under the Plan.
TAC ¶ 260. Plaintiff alleges that
> ... the Director Defendants, in breach of their fiduciary duties ... knew or should have known, and failed to disclose ... material information bearing on Dynegy stock held in the Plan including that the risks associated with Dynegy's business were materially understated by Dynegy due to the misleading statements about its revenues, earnings, operations and its impact on Dynegy's earnings, as detailed herein.

TAC ¶ 261.

Neither Dynegy nor the HRC is designated as a fiduciary in the Plan or mentioned in the fiduciary provisions of Article XV. [FN74] Ex. A Article XV. The directors are mentioned in Article XV only as having "the sole authority to appoint and remove the Trustee." Ex. A § 15.2. Nevertheless, plaintiff alleges that Dynegy is among the fiduciaries responsible to the Plan for the BPC's breaches because Dynegy acts through its board of directors. TAC ¶ 260. Plaintiff alleges that the board of directors is among the fiduciaries responsible to the Plan for the BPC's breaches because it has the power to select members of the HRC, which has the power to appoint members of the BPC. TAC ¶ 260. Plaintiff alleges that the board's fiduciary duty to the Plan derives from the power given to it by § 4 of Dynegy's Bylaws as amended February 1, 2000, to appoint a compensation committee (now the HRC) to review "the salaries, compensation and employee benefits" for the employees. TAC ¶ 67. Plaintiff alleges that the HRC's fiduciary duty to the Plan derives from the power given to it by the April 9, 2002, Proxy Statement and the July 21, 2000, resolutions of its predecessor, the compensation committee, [FN75] to review all aspects of the company's benefit and welfare plans and programs, administer the plan, and appoint a person or persons to oversee the administration and operation of the benefit plans. TAC ¶ 66.

*35 Assuming without deciding that the powers of appointment bestowed upon Dynegy's Board of Directors and the HRC defendants by the company's bylaws and the resolutions of the board's compensation committee and/or the exercise of those powers is capable of giving rise to fiduciary duties owed to the Plan, the court nevertheless concludes that Count III as alleged against Dynegy, Dynegy's Board of Directors, and the HRC defendants fails to state a claim for which relief may be granted because plaintiff has not alleged either that those powers extended beyond the power to appoint and remove, or that, even if they did, any of these defendants exercised de facto control over the BPC defendants whose alleged breaches are necessary predicates to the derivative claims for the failure to inform and disclose asserted in Count III.

The allegations asserted in Count III do not challenge either the corporate defendants' appointment of or failure to remove specific appointees. These allegations challenge the corporate defendants' failure to disclose to their appointees "material information bearing on Dynegy stock held in the [P]lan including that the risks associated with Dynegy's business were materially understated by Dynegy due to the misleading statements about its revenues, earnings, operations and its impact on Dynegy's earnings." TAC ¶ 261. They also challenge the corporate defendants' failure "to ensure that the [committee defendants] ... took the appropriate action with the accurate information, including, as appropriate, informing and disclosing to the [P]lan's participants and beneficiaries the material information and/or discontinuing the [P]lan's investments in Dynegy stock." TAC ¶ 262.

In support of their motion to dismiss Count III the corporate defendants cite *Bannistor*, 287 F.3d at 408, [FN76] in which the Fifth Circuit stated that "in a case such as this in which liability is directly predicated upon breach of the fiduciary duty to exercise proper control ... the issue is whether the [defendants] ... had de facto control over [the actor's] actions ." The court's reasoning is instructive:
> In *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir.1988), we held that non-fiduciary respondeat superior liability attached under ERISA only when the principal "actively and knowingly" participated in the agent's breach. In the instant case, we express no opinion as to whether there was a principal/agent relationship and thus do not rest BT Appellants' liability on a theory of respondeat superior liability. However, *we find it instructive to apply the "actively and knowingly" requirement to BT Appellants' conduct because the ultimate issue in any non-fiduciary respondeat superior theory of liability is virtually identical to a case such as this in which liability is directly predicated upon breach of the fiduciary duty to exercise proper control over plan assets. In the context of*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*respondeat superior liability. the issue is whether the principal, by virtue of its de facto control over the agent, had control over the disposition of plan assets.* Here, the issue is whether BT Appellants, as majority shareholder of the various corporations, had de facto control over Ullman and Villano's actions.

*36 *Id.* (emphasis added). Although the issue in *Bannistor* was control over plan assets, while the issue here is control over the actions of the BPC defendants, the pivotal question to be addressed by the court remains the same, whether Dynegy, Dynegy's Board of Directors, or the HRC defendants had de facto control over the BPC's actions and actively and knowingly participated in the BPC's alleged breaches of fiduciary duties not to misrepresent, to disclose and inform, and to eliminate Dynegy stock as a plan investment option.

Plaintiff alleges in Count III that "[d]efendant Dynegy and the Director Defendants neither made the appropriate disclosures nor ensured that the [committee defendants] .. and/or the Trustee took appropriate action." TAC ¶ 263. In contrast to *Bannistor,* where liability was grounded on the corporate defendants' *control* of their appointees, plaintiff alleges that Dynegy, Dynegy's Board of Directors, and the HRC defendants *did not control* their appointees. Although recognizing the Fifth Circuit's functional approach to the determination of fiduciary status, plaintiff has not mentioned or attempted to distinguish *Bannistor* in her response in opposition. In support of her argument that Count III should not be dismissed against Dynegy, Dynegy's Board of Directors, or the HRC defendants, plaintiff cites *Enron,* 284 F.Supp.2d at 659, as having found analogous allegations sufficient to state a claim against corporate defendants for having "failed to monitor or remove their appointees for incompetence." [FN77] Although the *Enron* court did find that the plaintiffs had stated claims against corporate defendants for having

> exercised, but in specified cases not well, their explicit duty to select and appoint fiduciaries, but, despite knowledge of the threat to the plan participants' retirement assets, failed to investigate adequately, failed to provide material information or correct misleading information essential to prudent administration of the plans, failed to direct the trustee regarding prudent investment of plan assets in both the Savings Plan, including employer matching contributions, and the ESOP, and failed to monitor or remove their appointees for incompetence... [and had i]nstead ... permitted, encouraged, or induced uninformed plan participants to invest in or retain Enron stock in their Savings Plan individual accounts,

*id.* at 659, the court concludes that the allegations asserted in the two cases differ in significant ways.

Unlike the plaintiff in this case, the *Enron* plaintiffs alleged that the corporate defendants either participated in the underlying breaches of their appointees, or had notice of possible breaches by their appointees that they failed to investigate. *See id.* at 555 (citing *Newton v. Van Otterloo,* 756 F.Supp. 1121, 1132 (N.D.Ind.1991))(directors have duties to monitor plan fiduciaries whom they appoint but do not breach duties absent "notice of possible misadventure by their appointees"). Unlike the plaintiff in this case, the *Enron* plaintiffs complained

> *37 of particular employee meetings held in which certain Defendants urged plan participants to continue their employment and purchase or hold Enron stock as part of Defendants' larger scheme to enrich themselves ... [and at these meetings plan] participants were reassured that their 401(k) funds were safely invested and that they should hold and maintain their investments in Enron stock. (Complaint at 281-282, ¶ 796)

284 F.Supp.2d at 561. These allegations led the court to analogize the employee meetings held by the *Enron* corporate defendants to those considered in *Varity,* where the Supreme Court held that corporate representatives who choose to speak to plan participants on plan-related issues do so in a fiduciary capacity and could, therefore, be held liable for fiduciary breaches. *Id.* at 561-563 (citing *Varity,* 116 S.Ct. at 1065). Unlike the plaintiff in this case, the *Enron* plaintiffs "alleged with supporting facts that disclosure was essential to protect the interests (retirement assets) of plan participants and beneficiaries from the threat of substantial depletion." *Id.* at 562. Those supporting facts consisted of a series of "red flags," including notice that a company executive had personally provided to the CEO and at least one benefits committee member "about what she saw as dangerous accounting irregularities that might result in catastrophe for the company." *Id.* at n. 64. The red flags raised by *Enron* plaintiffs also included assertions "that had the fiduciaries cared to investigate, as was their fiduciary duty, regulatory filings would have revealed that Enron was in deep trouble." *Id.*

Because plaintiff has failed to allege (1) that Dynegy, its board of directors, or the HRC actively and knowingly participated in disseminating the 01/02 SPD or in making the Dynegy Stock Fund available as an investment option for employee-

contributions, (2) that there existed any "red flags" capable of having placed the corporate defendants on notice of possible misadventure by their appointees, or (3) that had Dynegy's board of directors or HRC investigated Dynegy's regulatory filings they would have discovered the accounting improprieties and/or financial problems on which plaintiff grounds this case, the court concludes that plaintiff's allegations are distinguishable from those at issue in *Enron*. Because plaintiff has failed to allege that Dynegy, its board or directors, or the HRC exercised de facto control over the BPC or that they had received any notice of possible misadventure either by their appointees or by the BPC that a reasonable investigation would have revealed, the court concludes that Count III fails to state a claim for which relief may be granted. [FN78]

(ii) Count VI

In Count VI plaintiff alleges that Dynegy, its board of directors, and the HRC breached their duty to monitor the committee defendants. TAC ¶¶ 279-283. Plaintiff specifically alleges that these defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) "by failing to replace the members of the ... [BPC and/or the RBPC] with persons who would act to protect the participants and beneficiaries of the Plan from making inappropriate investments in Dynegy stock." TAC ¶ 283. Plaintiff also alleges that these defendants had a duty to monitor the conduct of the committee defendants "to ensure that they were performing their duties consistently with the requirements of ERISA." TAC ¶ 282.

*38 Because the allegations asserted in Count VI challenge the corporate defendants' failure to monitor and replace members of the BPC with persons who would act to protect the participants and beneficiaries of the Plan from making inappropriate investments in Dynegy stock, they at least implicate the fiduciary power to appoint and remove. Nevertheless, the court is not persuaded that these allegations are sufficient to state a claim against any of the corporate defendants because, like the allegations asserted in Count III, the allegations asserted in Count VI do not allege that the corporate defendants failed to remove any specific appointees for incompetence, breach of fiduciary duty, or any other wrongdoing. Nor do they allege that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause. *See Enron,* 284 F.Supp.2d at 555 (citing *Newton,* 756 F.Supp. at 1132 (directors have duties to monitor plan fiduciaries whom they appoint but do not breach duties absent "notice of possible misadventure by their appointees")).

Assuming without deciding that by exercising the powers of appointment granted to them by Dynegy's Bylaws and by resolutions of its compensation committee the corporate defendants were subject to fiduciary duties, the court nevertheless concludes that plaintiff has failed to state a claim against them for breach of the fiduciary duty to monitor because she has failed to allege either that their exercise of fiduciary power extended beyond the power to appoint and remove, or that any of them were on notice of possible misadventure by any of their appointees.

D. Claims for Co-Fiduciary Liability Against Dynegy and Trustees

[21] Plaintiff alleges that (1) Dynegy breached its duty to co-fiduciaries (Count VIII), (2) CG Trust breached its duty to co-fiduciaries (Count IX), and (3) Vanguard breached its duty to co-fiduciaries (Count X).

1. *Dynegy*

In Count VIII plaintiff alleges that Dynegy breached its duty to co-fiduciaries. 99-100 TAC ¶¶ 288-290. Plaintiff specifically alleges that Dynegy breached the fiduciary duty imposed on co-fiduciaries by 29 U.S.C. § 1105
> [b]ecause Defendant Dynegy had knowledge at all relevant times of the factual matters set forth in this Complaint, and was responsible for withholding material information from the market and providing the market with misleading disclosures, by the conduct set forth above Defendant Dynegy knowingly participated in the breaches of its co-fiduciaries (including the Benefit Plans Committee Defendants ... and the Director Defendants), failed to fulfill its own fiduciary responsibilities as set forth in ERISA § 404 so as to enable the breaches of its co-fiduciaries, and failed to take reasonable steps to correct the breaches of its co-fiduciaries of which it had knowledge such that it has liability for the breaches of each of its co-fiduciaries ...
99-100 TAC ¶ 290.

*39 Citing 29 U.S.C. § 1105(a) and *Sommers II,* 883 F.2d at 352, Dynegy argues that it cannot be held liable as a co-fiduciary because it is not a named fiduciary in the Plan, it does not have any discretionary authority allocated to it by the Plan, and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

plaintiff's allegations do not indicate that it functioned as a plan fiduciary. [FN79] Dynegy argues that even if it were a fiduciary that plaintiff has failed to plead facts sufficient to support a co-fiduciary claim because all plaintiff alleges is that Dynegy "was responsible for withholding material information from the market and providing the market with misleading disclosures (TAC 290)." [FN80] Citing *Donovan, 716 F.2d at 1475,* Dynegy argues that this claim should be dismissed because plaintiff fails to allege that Dynegy had actual knowledge that it was participating in the breaches of other fiduciaries. [FN81]

(a) Dynegy's Fiduciary Status

Plaintiff alleges that Dynegy is a plan fiduciary because its board of directors selects from among themselves members of the HRC which, in turn, appoints the members of the BPC. Because a corporation acts through its directors, and plaintiff alleges that Dynegy's Directors select from among themselves the HRC which, in turn, appoints the members of the BPC, the plan administrator and named fiduciary, the court assumes without deciding that these allegations are sufficient to allege Dynegy's status as a plan fiduciary. *See Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524 (5th Cir.1994)* (an employer/plan sponsor is a fiduciary "only when and to the extent that it functions in its capacity as plan administrator, not when it conducts business that is not regulated by ERISA." [FN82] *See also Sommers II, 883 F.2d at 352* (Because a person is a fiduciary only to the extent that he exercises authority or control over the management of a plan or plan assets, in the absence of such authority and control a person cannot be liable as a co-fiduciary.).

(b) Co-Fiduciary Liability

In addition to any liability that a fiduciary may have under any other provision of ERISA, 29 U.S.C. § 1105(a) provides that

a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he participates knowingly in, or undertakes knowingly to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Although plaintiff argues that her allegations state claims against Dynegy pursuant to each of these three provisions, the court has already concluded that plaintiff has not alleged that Dynegy exerted de facto control over the BPC, or that Dynegy breached fiduciary duties stemming from the power of its board to select members of the HRC, and/or from the HRC's appointment of the BPC. These conclusions preclude the court from finding that plaintiff has stated claims under § 1105(a)(1) for knowingly participating in a breach of another fiduciary, or under § 1105(a)(2) for breaching it own duties to the Plan and, thereby, enabling another fiduciary to breach its duties to the Plan. The court concludes, however, that plaintiff has stated a claim against Dynegy for violation of § 1105(a)(3) for knowing about, but failing to take reasonable steps to remedy, the breach of another fiduciary.

*40 Dynegy argues that plaintiff has failed to state a co-fiduciary claim because her allegations fail to explain how Dynegy would have had actual knowledge of the BPC defendant's breaches. [FN83] Because a corporation acts solely through agents, acts of individuals in performing ERISA fiduciary functions while acting in their corporate role are attributable to the corporation. *See Cosgrove v. Circle K Corp., 884 F.Supp. 350, 352-353 (D.Ariz.1995).* Because the BPC defendants include Dorey, Doty, Lang, and Mott, who were officers of the company, [FN84] the court concludes that Dynegy itself had knowledge of the BPC's alleged breaches. Because plaintiff has alleged that Dynegy officers had knowledge of the BPC's alleged breaches but failed to take remedial action, the court concludes that plaintiff has stated a claim against Dynegy for co-fiduciary liability. *See Silverman v. Mutual Ben. Life Ins. Co., 941 F.Supp. 1327, 1337 (E.D.N.Y.1996), aff'd, 138 F.3d 98 (2d Cir.), cert. denied, 525 U.S. 876, 119 S.Ct. 178, 142 L.Ed.2d 145 (1998)* (the elements of a cause of action under 29 U.S.C. § 1105(a)(3) are that the fiduciary had knowledge of the co-fiduciary's breach and that the losses "resulted from" the co-fiduciary defendant's failure to take reasonable steps to remedy the breach).

2. *Trustees*

In Counts IX and X plaintiff alleges that CG Trust and Vanguard are liable as co-fiduciaries for the committee defendants' breaches of their fiduciary

duty to comply with documents and instruments governing the Plan by failing to direct the diversification of employer matching contributions out of employer stock and into diversified investments. TAC ¶¶ 291-295 (CG Trust), ¶¶ 296-300 (Vanguard). [FN85] Because the court has concluded that these allegations against the committee defendants fail to state a claim for which relief may be granted, the court concludes that plaintiff has also failed to state claims against CG Trust and Vanguard for co-fiduciary liability.

E. Claim for Equitable Relief Against Dynegy

[22] In Count XI plaintiff alleges that
> [t]o the extent that Defendant Dynegy is found not to have been [a] fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, [that] Defendant Dynegy knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief.
>
> TAC ¶ 302. Plaintiff also alleges that Dynegy benefitted from the breaches by discharging its obligations to the Plan in shares of Dynegy stock while the value of the stock was inflated as a result of the materially misleading statements and omissions Dynegy made to the market, and that Dynegy may be required to disgorge this benefit or that a constructive trust should be imposed on treasury shares of Dynegy that would have been contributed to the Plan but for Dynegy's participation in the other defendants' breaches. TAC ¶ 303.

Dynegy argues that Count XI should be dismissed because plaintiff fails to allege specific facts indicating that Dynegy knowingly participated in or had actual knowledge of any alleged breaches of fiduciary duty. Like Count VIII, Count XI is simply an attempt to hold Dynegy vicariously liable for the purported breaches of others. [FN86] Because the court has already concluded that plaintiff's allegations that the BPC included Dynegy officers Dorey, Doty, Lang, and Mott, and that by virtue of their presence on the BPC plaintiff has alleged that Dynegy had actual knowledge of the BPC's alleged breaches, the court concludes that plaintiff's allegations are sufficient to state a claim for equitable relief against Dynegy. Although Dynegy also argues that this claim should be dismissed because plaintiff's claim is for damages as opposed to equitable relief, [FN87] the issue of which, if any, equitable remedy would be appropriate must await development of the facts. [FN88]

VI. *Conclusions and Order*

*41 For the reasons set forth above, Robert D. Doty's Motion to Dismiss (Docket Entry No. 35) is GRANTED in part and DENIED in part; Charles L. Watson's Motion to Dismiss (Docket Entry No. 36) is GRANTED; the Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, Benefit Plans and Retirement/Benefit Plans Committees (Docket Entry No. 37) is GRANTED in part and DENIED in part; the Motion to Dismiss on Behalf of Director Defendants Lipton, Mustoe, Poole, Robertson, Rubenfield, and Woertz and Retirement/Benefit Plans Committee Defendant Barton (Docket Entry No. 41) is GRANTED; the Motion to Dismiss Third Amended Complaint on Behalf of Defendants Stephen J. Brandon and Paul N. Woollacott for Lack of Personal Jurisdiction (Docket Entry No. 43) is GRANTED, and the Rule 12(b)(6) Motion urged on behalf of Brandon and Woollacott (Docket Entry No. 54) is DENIED as moot; Defendant Vanguard Fiduciary Trust Company's Motion to Dismiss Count X of Plaintiff's Third Amended Complaint (Docket Entry No. 52) is GRANTED; Defendant CG Trusts' Motion to Dismiss Count IX of Plaintiff's Third Amended Complaint (Docket Entry No. 61) is GRANTED.

Pursuant to these rulings the following claims are DISMISSED: all claims against the Trustees, CG Trust Company and Vanguard Fiduciary, are DISMISSED with prejudice; all claims against members of Dynegy's Retirement/Benefit Plans Committee, Dynegy's Human Resources Committee, and Dynegy's Board of Directors are DISMISSED with prejudice, the claims asserted against defendants Stephen J. Brandon and Paul N. Woollacott are DISMISSED without prejudice, and the claims asserted against the following defendants are DISMISSED with prejudice: J. Joe Adjoran, Michael B. Barton, Charles E. Bayless, Stephen Bergstrom, Darald W. Callahan, Michael D. Capella, Daniel L. Dienstbier, Patricia M. Eckert, John Ford, Jerry L. Johnson, Tom Linton, Jeffrey M. Lipton, C. Steven McMillan, Lisa Q. Metts, Jack D. Mustoe, A. Terence Poole, Robert M. Powers, H. John Riley, Peter J. Robertson, Sheli Z. Rosenberg, Stanley I. Rubenfield, Joe J. Stewart, Glenn F. Tilton, Charles Watson, John Watson, J. Otis Winters, and Patricia A. Woertz.

The claims remaining in the case are: (1) claims asserted against members of Dynegy's Benefit Plans Committee for breach of the fiduciary duty not to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

misrepresent based on distribution of the January 2002 Summary Plan Description (Count I), breach of the fiduciary duty to disclose material information regarding the risks and appropriateness of investing in Dynegy stock needed to correct misrepresentations contained in the January 2002 Summary Plan Description (Count II), and breach of the fiduciary duty not to offer inappropriate investment options to plan participants based on inclusion of the Dynegy Stock Fund in the menu of investment options available for employee contributions beginning on January 1, 2002 (Count IV); and (2) claims asserted against Dynegy for breach of co-fiduciary liability based on the Benefit Plans Committee's breaches (Count VIII) and for equitable relief (Count XI). Because plaintiff alleges that Marian M. Davenport served on the Benefit Plans Committee in 2000 and 2001, but not in 2002, all the claims asserted against her are DISMISSED with prejudice. The defendants remaining in this lawsuit are Dynegy, Inc. and Benefit Plans Committee members Larry Altenbaumer, Robert D. Doty, Louis J. Dorey, Alec G. Dreyer, Andrea Lang, Michael Mott, Milton L. Scott, and R. Black Young. [FN89]

FN1. Third Amended Complaint for Violations of ERISA (TAC), ¶ 1.

FN2. The director defendants are: Charles Watson, Stephen Bergstrom, J. Joe Adjoran, Charles E. Bayless, Darald W. Callahan, Michael D. Capellas, Daniel L. Dienstbier, Patricia M. Eckert, Jerry L. Johnson, C. Steven McMillan, Robert M. Powers, H. John Riley, Jr., Sheli Z. Rosenberg, Joe J. Stewart, Glenn F. Tilton, John Watson, J. Otis Winters, Jeffrey M. Lipton, Jack D. Mustoe, A. Terence Poole, Peter J. Robertson, Stanley I. Rubenfield, Patricia A. Woertz, Stephen J. Brandon, and Paul N. Woollacott. TAC ¶ 48.

FN3. The HRC defendants are: Stephen Bergstrom, Charles E. Bayless, Darald W. Callahan, Michael D. Capellas, Daniel L. Dienstbier, Patricia M. Eckert, Sheli Z. Rosenberg, Joe J. Stewart, Glenn F. Tilton, Jack D. Mustoe, and Stanley I. Rubenfield. TAC ¶ 49.

FN4. The BPC defendants are: Larry Altenbaumer, Marian M. Davenport, Louis J. Dorey, Alec G. Dreyer, Andrea Lang, Michael Mott, Milton L. Scott, R. Blake Young, and Robert D. Doty, Jr. TAC ¶ 51.

FN5. The RBPC defendants are: John E. Ford, Tom Linton, Lisa Q. Metts, Michael B. Barton, and Robert D. Doty, Jr. TAC ¶ 50.

FN6. TAC ¶¶ 74-77.

FN7. There are two broad categories of employee benefit plans: defined benefit plans and defined contributions plans. SEC Release No. 33-6188, 1980 WL 29482, at *6-7 (Feb. 1, 1980), explains the difference:
A defined benefit plan pays fixed or determinable benefits. The benefits ordinarily are described in a formula which specifies the amount payable in monthly or annual installments to participants who retire at a certain age. As long as the plan and the employer(s) contributing to the plan remain solvent, and the plan continues to be operated, vested participants will receive the benefits specified. In the event the investment results of the plan do not meet expectations, the employer(s) usually will be required, on the basis of actuarial computations, to make additional contributions to fund the promised benefits. Conversely, if the plan earnings are better than anticipated, the employer(s) may be permitted to make contributions that are less than the projected amounts.
A defined contribution plan does not pay any fixed or determinable benefits. Instead, benefits will vary depending on the amount of plan contributions, the investment success of the plan, and allocations made of benefits forfeited by non-vested participants who terminate employment. Thus, the amount of benefits is based, in part, on the earnings generated by the plan. Both defined benefit and defined contribution plans can provide for employee contributions. In addition, defined contribution plans maintain individual accounts for all participating employees. These accounts reflect each participant's share in the underlying trust assets and are adjusted annually to take into

Case 3:02-cv-01138-AWT    Document 112-5    Filed 04/26/2004    Page 15 of 19
2004 WL 540529
--- F.Supp.2d ---
(Cite as: 2004 WL 540529 (S.D.Tex.))

Page 33

account plan contributions, earnings, and forfeitures. In contrast, defined benefit plans ordinarily do not maintain individual accounts, except to the extent necessary under the Internal Revenue Code to record benefits attributable to voluntary contributions by employees.

ERISA created the Pension Benefit Guarantee Corporation, which insures minimum pension benefits for defined benefit plans if the employer becomes unable to pay the pension; there is no insurance for the defined contribution plans. The Plan at issue is this case is a defined contribution plan.

FN8. Exhibit C included in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC, and RBPC, Docket Entry No. 39 (Ex. C). Dynegy was formerly known as NGC Corp., and the NGC Plan was amended on December 21, 1998, to reflect the name change to Dynegy. See Memorandum of Law in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 38, p. 6 n.5.

FN9. Exhibit B included in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. B).

FN10. Exhibit A included in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. A). Plaintiff asserts that "[u]nless otherwise indicated the relevant terms of the Plan for purposes of this complaint were identical or substantially similar and are henceforth referred to as 'the Governing Plan Documents." ' TAC ¶ 58. Except as otherwise stated, language quoted is from the 1/02 Plan documents.

FN11. See also Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 6-10.

FN12. See also id. at 10.

FN13. Exhibit F included in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. F).

FN14. See Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 11, Ex. A § 13.1, and Ex. B § 13.1.

FN15. Id., and Ex. A § 15.2.

FN16. Id. at n. 14 (citing Ex. C § 15.2).

FN17. See also id. at 12.

FN18. Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 18-21.

FN19. Id. at pp. 13-15.

FN20. Id. at p. 21.

FN21. Id.

FN22. Id. at pp. 18-20.

FN23. Id. at p. 18.

FN24. See Exhibit D in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. D), p. 30. Defendants do not dispute that this document was the SPD.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

FN25. *Id.*

FN26. *Id.*

FN27. *Id.* See also Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 18-19.

FN28. Defendants' Reply, Docket Entry No. 74, p. 14 & n.15 ("The *Worldcom* court noted that '[t]he misrepresentations are alleged to have been contained in *Worldcom's* SEC filings, which were attached ... to a prospectus given to Worldcom employees.' *Worldcom, 263 F.Supp.2d at 766.*").

FN29. *Id.* at pp. 14-15.

FN30. *Id.* at pp. 13-15.

FN31. See Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 15 n.21 asserting that there is nothing inherent in the positions held by [PC members] Barton, Vice-President of Human Resources (TAC ¶ 34), Ford, Vice-President of Compensation and Benefits (TAC ¶ 39), Davenport, Vice-President of Human Resources (TAC ¶ 37), and Lang, Senior Vice-President of Human Resources (TAC ¶ 40), that suggests they would have access to contradictory information regarding sham transactions, phony trades, price manipulation, and overstatement of revenues. TAC ¶ 87. See also Defendants' Reply, Docket Entry No. 74, p. 11, n.12.

FN32. Defendants' Reply, Docket Entry No. 74, p. 11.

FN33. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 15 (citing TAC ¶¶ 33-45).

FN34. *Id.* at p. 11.

FN35. *Id.*

FN36. *Id.* at p. 13.

FN37. Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 21.

FN38. *Id.*

FN39. *Id.*

FN40. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 29.

FN41. Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 26. Although defendants also cite 29 C.F.R. § 2550.404(c)- 1(c)(4) ("[a] fiduciary has no obligation under part 4 or Title I of the Act to provide investment advice to a participant or beneficiary under an ERISA section 404(c) plan"), in support of this argument, the court finds this argument inapposite because plaintiff has not alleged that the Dynegy Plan was a § 404(c) plan and, in fact, argues in response to defendants' motion to dismiss that it is not. See Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 38.

FN42. See § V.B.3.(a), below; and TAC ¶ 63.

FN43. Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 27-28.

FN44. *Id.* at p. 29.

FN45. Although the committee defendants also argue that Count II should be dismissed

because the Plan itself imposes no obligation on them to provide participants with the kinds of business data and insights the plaintiff seeks, but rather "requires only that the [c]ommittees prepare, file, and distribute 'such information and material as is required by the reporting and disclosure requirements of the Act [*i.e.*, ERISA]," ' Docket Entry No. 38, p. 25 and Ex. A § 13.6(g), assuming without deciding that defendants have correctly characterized the Plan's provisions, those provisions would lead the court to the same conclusions already reached pursuant to its preceding analysis.

FN46. Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 29; Defendants' Reply, Docket Entry No. 74, p. 16.

FN47. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 33.

FN48. *Id.* at p. 35.

FN49. See TAC ¶ 63 (acknowledging that the Plan provided for all employer matching contributions to be made in the form of company stock).

FN50. Defendants' Reply, Docket Entry No. 74, p. 16.

FN51. See TAC ¶ 274 where in Count V plaintiff alleges that the committee defendants had only "the authority *to direct the Trustee* with respect to investments in employer stock" (emphasis added). See also Ex. A § 15.2 giving "the sole authority to appoint and remove the Trustee" to Dynegy's directors.

FN52. Citing *In re Ikon Office Solutions, Inc. Sect. Litig. (Whetman v. Ikon),* 86 F.Supp.2d 481, 492-493 (E.D.Pa.2000), plaintiff argues that where strict adherence to the terms of a plan would result in a breach of fiduciary duty, ERISA requires plan fiduciaries to violate the explicit terms of a plan. In *Ikon* the district court denied a motion to dismiss ERISA fiduciary breach claims based on continued investment in the employer's stock. The court reasoned that although an ESOP [Employee Stock Ownership Plan] fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision ... plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
86 F.Supp.2d at 492. Citing *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995), the court concluded that "it would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption." *Id* . Reading *Moench* broadly the *Ikon* court found it unnecessary to decide whether the plan at issue merely encouraged or actually required the employer contribution to be invested only in company stock. 86 F.Supp.2d at 492-493. Assuming without deciding that the abuse of discretion standard applied in *Ikon* is the correct standard to apply in this case, the court concludes that plaintiff's allegations are insufficient to state a breach of fiduciary duty claim because she alleges only that the continued investment in employer stock was unreasonable, not that it constituted an abuse of discretion. TAC ¶ 269.

FN53. Defendants' Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 30.

FN54. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, pp. 38-39.

FN55. *Id.* at p. 39.

FN56. Defendants' Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 38, stating that "although the Plans Committee Defendants had the duty to set out the menu of investment options, participants decided how to diversify their

contributions among them."

FN57. The DOL has emphasized that the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable. See Letter from the Pension and Welfare Benefits Administration, U.S. Dept. of Labor, to Douglas O. Kant, 1997 WL 1824017, *2 (Nov. 26, 1997)("The responsible plan fiduciaries are also subject to ERISA's general fiduciary standards in initially choosing or continuing to designate investment alternatives offered by a 404(c) plan.")(cited in Enron, 284 F.Supp.2d at 578).

FN58. See Ex. A § 5.1, and TAC ¶ 62 (recognizing that the Dynegy Stock Fund was not an investment option for employee-directed contributions until January of 2002).

FN59. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 33.

FN60. Id. at pp. 32-33.

FN61. Id. at p. 33.

FN62. Id. at p. 34.

FN63. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 42.

FN64. Id. at p. 45.

FN65. Id. at pp. 42-43.

FN66. Id. at p. 42.

FN67. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, pp. 38-39.

FN68. Id. at p. 39.

FN69. Id. at pp. 39-40 n. 58.

FN70. Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 46.

FN71. Id.

FN72. Id. at p. 60.

FN73. Id. at p. 58.

FN74. Defendant's Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 12.

FN75. The Human Resources Committee was formerly the Compensation Committee or the Compensation and Human Resources Committee of the Board of Directors. See TAC ¶ 66.

FN76. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 44.

FN77. Plaintiff's Memorandum in Opposition, Docket Entry No. 69 at pp. 49-50.

FN78. While plaintiff does allege that Dynegy made statements when trying to recruit and retain employees that they would be "well rewarded for their efforts," TAC ¶ 78, and when hosting events such as "town meetings ... highlight[ing] the Company's performance and outlook for employee attendees," TAC ¶ 79, plaintiff does not allege that these statements were made in the context of other statements about the

Plan specifically or benefits generally. See also Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 50, where plaintiff acknowledges that these corporate defendants were "not directly responsible for the investment of Plan assets in employer stock."

FN79. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 53.

FN80. *Id.*

FN81. *Id.* at n. 75.

FN82. *Id.* at p. 42.

FN83. *Id.* at p. 53.

FN84. Plaintiff alleges that Dorey was also Chief Financial Officer from June to December of 2002, that Doty was Executive Vice-President and Chief Financial Officer from 1999 to June of 2002, that Lang was also Vice- President of Human Resources since 2000, and that Mott was Senior Vice-President and Chief Accounting Officer and Controller from March of 2000 to January of 2003. TAC ¶¶ 35, 36, 40, and 43.

FN85. See also Plaintiff's Memorandum in Opposition to the Trustee Defendants' Motions to Dismiss, Docket Entry No. 68, p. 20.

FN86. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 54.

FN87. Defendants' Reply, Docket Entry No. 74, pp. 35-37.

FN88. Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 55.

FN89. The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions. As the length of this Memorandum and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.

2004 WL 540529, 2004 WL 540529 (S.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works