FILED

2004 MAY 20 P 12: 46

U.S. DISTRICT COURT
HARTFORD. CT.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION ) ) ) ) | Master File No. 02-CV-1138 (AWT) <br><br> CLASS ACTION |
| This Document Relates to: ) ) ) | |
| ALL ACTIONS ) ) | MAY 11, 2004 |

### PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING _RANKIN V. ROTS ("KMART")_ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants' primary arguments against class certification have been rejected in several prominent ERISA breach of fiduciary duty cases factually indistinguishable from this case: claims for breach of fiduciary duty in the selection and maintenance of company stock in an individual account ERISA plan. Judge Cohn's decision in _Rankin v. Rots_, --- F. Supp. 2d ---, No. 02-71045, 2004 WL 831124 (E.D. Mich. April 16, 2004) ("_Kmart_") (attached as Tab A hereto), continues this trend by granting class certification in the ERISA suit against the fiduciaries of the Kmart 401(k) Plans.

The claims in the _Kmart_ ERISA case are substantially the same as the claims asserted by Plaintiffs in this ERISA case. There, plaintiffs asserted that the fiduciaries of the Kmart 401(k) Plans "(1) . . . breached their duty of prudence by continuing to retain and invest in Kmart stock and (2) that the defendants breached their duty to disclose by

- 1 -

making material misrepresentations about the strength of Kmart and the propriety of investing in Kmart stock." *Id.* at *1. Those claims were certified under Fed. R. Civ. P. 23(b)(1) – the same relief that Plaintiffs now seek in this case.[1]

For the foregoing reasons, Plaintiffs submit the attached *Kmart* Order as further authority in support of Plaintiffs' Motion for Class Certification.

Dated this 11th day of May, 2004.

Respectfully Submitted By

Goodman, Rosenthal & McKenna, PC
John F. McKenna, Esq. - ct00104
977 Farmington Avenue, Suite 200
West Hartford, Connecticut 06107
860-231-2800
**Plaintiffs' Liaison Counsel**

Keller Rohrback L.L.P.
Lynn Lincoln Sarko
Laurie B. Ashton
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
206-623-1900 (Seattle)
602-248-0088 (Phoenix)
**Plaintiffs' Co-Lead Counsel**

---

[1] In *Kmart*, the plaintiff requested certification under Rule 23(b)(1) or (b)(2), and submitted that certification was also proper under Rule 23(b)(3). In light of the finding that certification was proper under Rule 23(b)(1), the court did not address argument concerning Rule 23(b)(2) or (b)(3). *Kmart*, 2004 WL 831124 at *11.

2

Susman & Watkins
Charles R. Watkins
John R. Wylie
Two First National Plaza, Suite 600
Chicago, Illinois  60603
312-346-3466
**Plaintiffs' Co-Lead Counsel**

**Plaintiffs' Steering Committee Counsel:**

Law Offices of Daniel M. Harris
Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
312-960-1802

Berger & Montague, P.C.
Todd Collins
1622 Locus Street
Philadelphia, PA 19103-6365
(215) 875-3040

Schiffrin & Barroway
Marc A. Topaz
Joseph H. Meltzer
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

Malakoff Doyle & Finberg, P.C.
Ellen M. Doyle
437 Grant Street, Suite 200
Pittsburgh, PA 15219
(412) 481-8400

McTigue Law Firm
Brian McTigue
Bruce Rinaldi
5513 Connecticut Ave., Suite 2200
Washington, D.C. 20015
(202) 364-6900

3

TAB A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION <br><br><br> This Document Relates to: <br><br> ALL ACTIONS | Master File No. 02-CV-1138 (AWT) <br><br> <u>CLASS ACTION</u> <br><br><br> MAY 11, 2004 |

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing, Plaintiff's Notice of Supplemental

Authority Regarding *Rankin v. Rots* ("KMART") In Support Of Plaintiffs' Motion For

Class Certification, was mailed this 11th day of May, 2004, via U.S. First Class mail, to

the following counsel of record:

Charles R. Watkins, Esq.
Susman & Watkins
Two First National Plaza
Suite 600
Chicago, IL 60603

Daniel M. Harris, Esq.
Law Offices of Daniel M. Harris
150 North Wacker Drive
Suite 3000
Chicago, IL 60606

J. Brian McTigue, Esq.
Bruce Rinaldi, Esq.
McTigue Law Firm
5301 Connecticut
Ave.,N.W.Ste 350
Washington, D.C. 20015

Michael D. Ryan
Senior Counsel
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904

5

Lynn Lincoln Sarko
Erin M. Riley
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052

Gary A. Gotto
Laurie B. Ashton
Keller Rohrback, PLC
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012-2600

Joseph H. Meltzer
Marc A. Topaz
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Sherrie R. Savett
Joy Clairmont
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103

Ellen M. Doyle
Malakoff Doyle & Finberg, P.C.
437 Grant Street, Suite 200
Pittsburgh, PA  15219

Steven J. Sacher
Kilpatrick Stockton LLP
607 14th Street, Suite 900
Washington, D.C. 20005

William H. Boice
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309

Benjamin H. Green, Esq.
William J. Egan, Esq.
Brown Raysman Millstein Felder &
Steiner LLP
CityPlace II, 10th Floor
185 Asylum Street
Hartford, CT  06103

Michael T. Hannafan & Associates,
Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL  60601

John F. McKenna, Esq. – ct00104
Goodman, Rosenthal & McKenna, P.C.
977 Farmington Avenue, Suite 200
West Hartford, CT 06107
860-231-28000/Fax-860-523-9235

6

2004 WL 831124
--- F.Supp.2d ---
(Cite as: 2004 WL 831124 (E.D.Mich.))

Page 1

Only the Westlaw citation is currently available.


United States District Court,
E.D. Michigan,
Southern Division.

Quincie RANKIN, individually and on
behalf of others similarly situated;
Plaintiff,
v.
David P. ROTS, et al., Defendants.

No. 02-CV-71045.

April 16, 2004.

I. Mark Steckloff, Sachs Waldman, Mary Ellen Gurewitz, Sachs Waldman, Detroit, MI, for Plaintiff.

Donald R. Bachand, III, Garratt & Bachand, Bloomfield Hills, MI, Robert N. Eccles, O'Melveny & Myers, Washington, DC, Erin E. Kelly, Mark B. Blocker, Scott R. Lassar, Walter C. Carlson, Sidley, Austin, Chicago, IL, Sharon M. Woods, Todd R. Mendel, Barris, Sott, Detroit, MI, Daniel P. Colling, Foley & Lardner, Detroit, MI, Lisa B. Deutsch, Robert C. Myers, Seth C. Farber, Dewey, Ballantine, New York, NY, Walter B. Connolly, Jr., Walter B. Connolly, Jr. Foley & Lardner, Detroit, MI, Cara J. Heflin, Howard & Howard, Ann Arbor, MI, Jon R. Steiger, Quinn, Emanuel, Los Angeles, CA, Philip T. Carter, Howard & Howard, Bloomfield Hills, MI, for Defendants.


### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

AVERN COHN, District Judge.

### I. Introduction

*1 This is a case under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. claiming breach of fiduciary duty which has as its genesis the collapse of Kmart Corporation into bankruptcy. Plaintiff Quince Rankin (Rankin) seeks recovery on behalf of herself and other similarly situated Kmart employees who invested in Kmart stock through participation in Kmart's 401(K) plan under which Kmart matched voluntary participant contributions with investments in Kmart stock. Rankin names as defendants various officers and directors of Kmart which she claims are fiduciaries within the meaning of ERISA and have breached their fiduciary duties with respect to the administration of the 401(K) plan essentially by continuing to invest in Kmart stock at a time when Kmart was in serious decline and which resulted in significant losses to the Plan. Rankin's breach of fiduciary duty claims are broadly divided into two categories: (1) that the defendants breached their duty of prudence by continuing to retain and invest in Kmart stock and (2) that the defendants breached their duty to disclose by making material misrepresentations about the strength of Kmart and the propriety of investing in Kmart stock.

Before the Court is Rankin's motion for class certification under Fed.R.Civ.P. 23, seeking to certify this action as a class action on behalf of the following class:
   All participants and beneficiaries of the Kmart Retirement Savings Plans and their predecessors from March 15,1999 onward

For the reasons that follow, the motion will be CONDITIONALLY GRANTED under Rule 23(b)(1)(A) and (B) subject to further proceedings regarding the class definition.

### II. Background [FN1]

FN1. The background is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

Page 2

substantially taken from the Court's order denying defendants' motion to dismiss.

### A. The parties

There are two Kmart retirement savings plans at issue. Kmart Retirement Savings Plan A and Kmart Retirement Savings Plan B (collectively, the Plan). The plans are virtually identical.

Rankin is a participant in Kmart's Retirement Savings Plan A. She held approximately 160 shares of Kmart stock in the Plan. However, her employment was terminated when the store at which she worked was closed as part of Kmart's reorganization under Chapter 11 of the Bankruptcy code. She was paid her vested interest in the Plan on or about March 13, 2003.

Defendants [FN2] are:

> FN2. David Rots, originally listed as the first defendant in the case, was dismissed by stipulation on February 10, 2003. Also dismissed, on February 6, 2003, was defendant Troy Lindon. Named defendants Marty E. Welch, Tim Crow, John McDonald and James Welch have apparently not been served. Named defendants Stephen Bollenbach and J. Richard Munro (who were not served at the time of the filing of the original motions to dismiss) filed a motion to dismiss, to which Rankin responded. That motion is not yet scheduled, it will be dealt with separately.

Charles Conway former CEO and Director
Jim Defebaugh Vice-President, Associate General Counsel and Secretary and member of the Employee Benefit Plans Investment Committee (hereafter

referred to as the "EBPIC") [FN3]

> FN3. The EBPIC is alleged to be a "committee formed by the Board of Directors whose function, in part, was to assist in the management and investment of Plan assets, as well as other administrative duties." Second Amended Complaint at ¶ 27.

Don Morford Director of Employee Benefits and member of the EBPIC
James Adamson Outside Director and CEO, formerly served on Finance Committee
Lilyan Affinito Outside Director, formerly on Audit Committee
Richard Cline Outside Director, formerly on Compensation and Incentives Committee
Willie Davis Outside Director, formerly on Compensation and Incentives Committee
Joseph Flannery Outside Director, formerly on Finance Committee
**\*2** Robert Kennedy Outside Director, formerly on Compensation and Incentives Committee and Finance Committee
Robin Smith Outside Director, formerly on Audit Committee
Thomas Stallkamp Outside Director, formerly on Finance Committee
Richard Statuto Outside Director, [FN4] formerly on Finance Committee

> FN4. Hereinafter, defendants James B. Adamson, Lilyan Affinito, Richard Cline,
> Willie Davis, Joseph Flannery, Robert Kennedy, Robin Smith, and Thomas Stallkamp, and Richard Statuto will be collectively referred to as "the Outside Directors."

### B. The Plan

The Plan is both defined contribution plan

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124                                                              Page 3
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

and an eligible individual account plan. The Plan maintains an individual account for each participant and provides benefits based solely on the amount contributed. There are two sources for contributions: voluntary contributions by participants and matching contributions by Kmart. The matching or employer contributions are part of an Employee Stock Ownership Plan (an "ESOP") which under ERISA allows the matching contributions to be invested in the company's stock and limits a participant's ability to transfer contributions to other investments. From March 15, 1999 to January 25, 2002, the Plan provided that the ESOP assets at all times shall be invested primarily in [Kmart] stock. See Art. 14.1. [FN5] The Plan also provides that a participant's employer contributions must be in Kmart stock until the participant reaches age 55 and had been a participant for five full years. After January 1, 1999, a participant age 55 who had been a participant for five years could elect to have future employer contributions invested in any of the investment funds [FN6] by making a proper election with Kmart. [FN7] During that time, the Plan held significant amounts of its assets in Kmart stock.

FN5. After January 25, 2002, when Kmart filed for bankruptcy, the Plan was amended to provide that the matching contributions would no longer be made in Kmart stock.

FN6. Article 13 of the Plan, entitled Operation of Investment Funds, contemplates that the Plan will consist of a number of investment funds which shall include a fund consisting only Kmart stock. Indeed, the Plan states that the "Investment Funds shall at all times include a Company Stock Fund." Art.13.1. This Company Stock Fund is defined as "the Investment Fund described in section 13.1 which invests in

Company Stock." Art. 2.11. "Company Stock" is defined as "the common stock of [Kmart]." Art. 2.10. Thus, the term "Company Stock" means Kmart stock and "Company Stock Fund" means a stock fund invested solely in Kmart stock.

The nature and composition of other investment funds actually in the Plan is not clear but the Plan says that such investment funds may consist of "Investments of a short-term nature (such as obligation of the Untied States Government and commercial paper) and deposits with a financial institution, as well as cash, pending investment in an identified Investment Fund or for purposes of carrying out the provisions of the Plan." Art.13.2

FN7. Kmart removed this restriction in February 2002 at which time Kmart stock was essentially worthless.

### C. ERISA Generally

Rankin asserts two types of claims under ERISA: a claim under 29 U.S.C. § 1132(a)(2) and under § 1132(a)(3). [FN8] Section 1132(a)(2) allows "a participant, beneficiary or fiduciary" to bring a civil action for breach of fiduciary duty. Section 1132(a)(3) allows "a participant, beneficiary, or fiduciary" to bring a civil action challenging other violations of ERISA.

FN8. Section 1132 provides in relevant part:
(a) Persons empowered to bring a civil action
A civil action may be brought--
(1) by a participant or beneficiary--
(A) for the relief provided for in subsection (c) of this section, or

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124                                                    Page 4
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

Section 1109 establishes the scope of liability of a fiduciary. It provides in relevant part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
...
(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

Any recovery for a breach of fiduciary duty goes to the ERISA plan. *See Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 91-92 (6th Cir.1997).

D. This Case

*3 On March 18, 2003, Rankin filed a two count complaint running 61 paragraphs, claiming breach of fiduciary duty against all defendants. On October 15, 2002, Rankin filed a First Amended Complaint running 121 paragraphs and again making two claims for breach of fiduciary duty against all defendants.

On February 3, 2003, defendants filed motions to dismiss the First Amended Complaint. Also on that date, Rankin filed a Second Amended Complaint running 144 paragraphs and making six claims for breach of fiduciary duty against defendants. The Court denied defendants' motion to dismiss. *See* Memorandum and Order filed August 20, 2003.

Rankin then filed the instant motion, to which defendants have responded. [FN9]

FN9. Defebaugh and Morford and the Outside Directors filed separate responses. Conaway did not file a separate response, but rather joined in both responses.

III. Analysis
A. Standard for Class Actions-Rule 23(a)

Federal Rule of Civil Procedure 23(a) provides: "One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The Court must conduct a "rigorous analysis" into whether the movant has demonstrated that the action satisfies all of the prerequisites of Rule 23(a). *General Tel. Co. v. Falcon,* 457 U.S. 147, 161

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(1982); _Stout v. J.D. Byrider,_ 228 F.3d 709, 716 (6th Cir.2000). Thus, a plaintiff must show that the action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. See _In re American Med. Sys., Inc.,_ 75 F.3d 1069, 1079 (6th Cir.1996) ("The party seeking the class certification bears the burden of proof."). A district court has broad discretion in determining whether to certify a class; yet, it must exercise that discretion within Rule 23's framework. _Id._ A district court may not inquire into the merits of the class representatives' underlying claims, _Eisen v. Carlisle & Jacquelin,_ 417 U.S. 156, 178 (1974), but should accept the complaint's allegations as true. The district court, however, may only certify a class where "an adequate statement of the basic facts" demonstrates that each of Rule 23's requirements are met. _American Med. Sys.,_ 75 F.3d. at 1079. In making such a determination, a district court may draw reasonable inferences from the facts before it. _Senter v. General Motors Corp.,_ 532 F.2d 511, 520 (6th Cir.1976).

Moreover, when in doubt as to whether to certify a class action, the district court should err in favor of allowing a class. _Eisenberg v. Gagnon,_ 766 F.2d 770, 785 (3d Cir.1985).

Each of the four requirements under Rule 23(a) will be separately considered.

### 1. Numerosity

Rankin says that the class will likely include "thousands" and will include persons located throughout the United States, making joinder impracticable. Defendants do not contest numerosity. Thus, this element is satisfied.

### 2. Commonality

**\*4** "The commonality test is qualitative rather than quantitative" in that "there need be only a single issue common to all members of the class." _American Med._

_Sys.,_ 75 F.3d at 1080. On the other hand, not every common question will suffice because, "at a sufficiently abstract level of generalization, almost any set of claims ... could display commonality." _Sprague v. General Motors Corp.,_ 133 F.3d 388, 397 (6th Cir.1998). Rather, there must be "a common issue the resolution of which will advance the litigation." _Id._

Rankin says there are several common questions of law and fact, as follows:
1. Whether the class members are or have been participants or beneficiaries in the Plan;
2. Whether defendants were fiduciaries of the Plan within the meaning of ERISA;
3. Whether defendants have breached the duties, responsibilities, and obligations imposed upon them by ERISA;
4. Whether, pursuant to ERISA, defendants are personally liable to make good to the participants and beneficiaries any losses resulting from their breaches of fiduciary duties;
5. Whether, pursuant to ERISA, defendants are liable for the breaches of fiduciary duties by other defendants that occurred while they were fiduciaries; and
6. Whether, pursuant to ERISA, defendants are liable for the actions of non- fiduciaries who participated in defendants' breaches of fiduciary duties.

Defendants argue that this requirement is not met because "they have a number of defenses unique to" Rankin. This argument, however, relates to the typicality requirement, not the commonality requirement. To the extent that defendants argue that commonality is lacking because the decision of whether to hold Kmart stock (in the case of voluntary contributions) is individualized, this argument lacks merit. Another district court, in a similar case alleging ERISA breaches of fiduciary duty (disclosure violations) in connection with an ESOP plan, addressed this argument as follows:
    While the decisions as to whether to

2004 WL 831124                                                                    Page 6
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

hold Ikon stock may ultimately be individualized, only one common issue of law or fact must exist to satisfy the commonality requirement of Rule 23. In this case, common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations. .... Other common questions include whether the individual defendants were aware of the alleged improprieties committed by Ikon, whether there were conflicts of interest and what actions were taken if there were, whether the defendants took appropriate steps to protect the plan and recover damages, and whether there might be co-fiduciary liability....
In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 464 (E.D.Pa .2000).

Here, Rankin's listed common factual and legal questions satisfy the commonality requirement. Moreover, this case is based not only on alleged misrepresentations which led Kmart employees to continue to invest in Kmart stock through making voluntary contributions to the Plan, it is also based on defendants' decision to continue investing Kmart's matching portion solely in company stock notwithstanding knowledge of Kmart's financial situation. The latter allegation, which is a claim for breach of the duty of prudence, clearly presents a common issue. Moreover, the complaint alleges that defendants acted similarly with regard to all contributions to the Plan, without regard to whether these contributions were from voluntary employee contributions or employer matching contributions. [FN10]

> FN10. The Court reserves the right to reconsider this issue in the determination of the definition of the class. While the fact that Rankin does not have a claim for disclosure violations because she

never self- directed any investment in Kmart stock does not destroy commonality or otherwise make certification improper at this time, the disclosure violations may be excluded from the class definition for other reasons.

### 3. Typicality

**\*5** The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992). The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." Van Vels v. Premier Athletic Center of Plainfield, Inc., 182 F.R.D. 500, 510 (W.D.Mich .1998). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." Sprague, 133 F.3d 388 (6th Cir.1998). The typicality requirement is met if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." Little Caesar Enterprises, Inc. v. Smith, 172 F.R.D. 236, 242-43 (E.D.Mich.1997) (citing Newberg on Class Actions § 18.08). Typicality may exist where there is a very strong similarity of legal theories, even if substantial factual distinctions exist between the named and unnamed class members. Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir.1985).

Rankin says her claims are typical because "she was a participant and beneficiary of one or more of the Plans during the class period." Furthermore, under ERISA, she is entitled to bring a claim for plan wide relief. See 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Defendants, however, argue that Rankin's claims are not typical for several reasons. First, they say that because she did not make any voluntary contributions to the plan in Kmart's stock, she "has no personal claim for the alleged disclosure violations." The also say that her claim that defendants violated the duty of prudence is limited to her employer matching contributions. This argument is not well-taken. The fact that Rankin did not voluntarily invest in Kmart stock is a minor distinction in relation to the overarching question of whether defendants violated their fiduciary duties under ERISA.

Second, defendants argue that based on Rankin's deposition testimony, they have unique defenses to her claims, *i.e.* ratification and estoppel. These defenses are based on Rankin's statements that she never read the Plan or Plan documents, never read any press releases or Kmart financial statements, never followed Kmart's business practices or financial condition, never followed the performance of her investment, and never apprized herself with investment options under the Plan. The fact that there may be individualized defenses does not necessarily defeat class certification when Rankin must still prove the same core issues of whether defendants acted as fiduciaries and whether they breached their fiduciary duties. This argument "ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *Ikon Office Solutions, 191 F.R.D. at 465.*

**\*6** Defendants also argue that Rankin's claims are not typical because she lacks standing. Defendants argue Rankin has not standing because (1) she is no longer a participant in the Plan and (2) any recovery will go the Plan so her individual losses, if any, is incapable of redress.

To have standing to sue under ERISA § 502(a), a plaintiff must be a "a

participant, beneficiary, or fiduciary" of a plan. 29 U.S.C. § 1132(a) (2000). A "participant" is defined by ERISA as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employ." 29 U.S.C. § 1002(7) (2000). "In order to establish that he or she [is eligible or] 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989).*

The Court of Appeals for the Sixth Circuit, however, has made clear that "[i]n determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of the plaintiffs' claim.... Thus, while the Supreme Court's definition of 'participant' in *Firestone* guides our standing analysis, it is not necessarily dispositive." *Swinney v. General Motors Corp., 46 F.3d 512, 518 (6th Cir.1995)* (citations omitted). The court of appeals also stated that

along with a majority of circuits, [we] have developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach. Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner. .... The enforcement provisions

of ERISA were meant to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due participants."

*Swinney, 46 F.3d at 519* (citations omitted). Similarly, in *Drennan v. General Motors Corp., 977 F.2d 246 (6th Cir.1993)*, the court of appeals held that former GM employees who were eligible for plan benefits at the time of alleged breach of fiduciary duties. Although *Swinney* and *Drennan* involved former GM employees alleging breach of fiduciary duties with respect to GM's representations regarding eligibility for benefits which resulted in some participants giving up their rights under the plan, the result should be no different. Rankin was a participant in the Kmart plan during the time when the alleged breaches of fiduciary duty occurred. She was paid her vested benefit when the Kmart store she was employed at closed. To find that she lacks standing would permit Kmart to exclude potential class members by simply paying them their vested benefits. ERISA should not be interpreted to circumvent a plaintiff's recovery in this manner.

**\*7** Moreover, the cases upon which defendants rely are unpersuasive. In *Bona v. Barasch, 2003 WL 1395932 (S.D.N.Y. Mar. 10, 2003)* (unpublished), the plaintiffs who were dismissed for lack of standing did not have a vested benefit and did not have any future eligibility to receive any benefits regardless of whether the defendants breached their fiduciary duties. Here, Rankin had a vested benefit which, if defendants breached their fiduciary duties, might ave affected her benefit. She therefore has standing to bring this action on behalf of the Plan. If the Plan prevails, then any recovery would likely affect the amount of Rankin's benefit.

In *Renton v. Kaiser Found. Health Plan, Inc., No. C00-5370, 2001 WL 1218773 (W.D.Wash. Sept. 24, 2001)* (unpublished), the district court held that "under the plain language of ERISA's civil enforcement provisions, class members who are former, but not current participants in a ... plan lack standing to bring the claims alleged in the complaint." However, the district court did not engage in any meaningful analysis of ERISA standing, unlike the Sixth Circuit decisions discussed above. The district court was also not presented with the issue of whether a former participant with a vested benefit who was a participant at the alleged time of the breach of fiduciary duty has standing.

Defendants also argue that Rankin lacks standing because any recovery for a breach of fiduciary duty claim will go to the Plan, not the individuals. Thus, defendants argue that Rankin's injury is incapable of redress by a favorable decision. This argument has some merit. "[S]uits under ERISA for breach of fiduciary duty arise under 29 U.S.C. § 1132(a)(2), which allows beneficiaries of a plan ... to seek relief under 29 U.S.C. § 1109." *Bryant v. International Fruit Product Co., 886 F.2d 132, 135 (6th Cir.1989)*. Thus, a plaintiff cannot seek recovery on their own behalf, but rather only on behalf of the plan. To the extent that Rankin is pursing a claim solely on her own behalf, she lacks standing because a cause of action under § 1132(a)(2) allows recovery to inure only to the ERISA plan, not to individual beneficiaries. *Ibid.; Tregoning v. American Community Mut. Ins. Co., 12 F.3d 79, 83 (6th Cir.1993)* (§ 1109 provides relief only for a plan and not for individual participants). Rankin, however, is also suing on behalf of the Plan for breach of fiduciary duty. If successful, as stated above, damages will presumably flow to the Plan and in turn, to class members, including Rankin. Thus, her injuries (a reduction in her vested benefit due to the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124                                                  Page 9
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

decline in Kmart's stock and defendants' breach of fiduciary duties) is capable of redress. Overall, Rankin has established that her claims are typical. Any other considerations as to the precise form of recovery to the Plan and Rankin is premature. Those issues relate to accounting and allocation, not whether Rankin has standing.

### 4. Adequacy

**\*8** In _Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir .1979),_ the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." As one commentator has noted:

> There is disagreement about the extent to which evaluation of the class representatives is part of the "adequate representation" inquiry under _Rule 23(b)(4)_, or whether the inquiry involved only considerations of any conflict between the class representatives and absent members of the class and the experience of counsel.

1 Newberg, _Newberg on Class Actions_ § 3.33 (4th ed.2003). Based on the language in _Senter_, the Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff.

Defendants do not dispute the qualifications of Rankin's counsel, but rather argue that Rankin herself is not an adequate representative because she admitted at deposition to having essentially no knowledge of ERISA, the role of the defendants, or the underlying facts of the case. However, it is inappropriate to attack the adequacy of a class representative simply based on the representative's ignorance of the underlying facts. See _Kock v. Dwyer,_ 2001 WL 289972 (S.D.N.Y. Mar. 23,

2001)(unpublished) (citing _Surowitz v. Hilton Hotels Corp.,_ 383 U.S. 363, 372-74 (1966)). Moreover, a careful review of Rankin's excerpted deposition testimony shows that she understands that she had a retirement plan and believes that defendants failed to protect the money in the Plan. She also understands her obligation to assist her attorneys and testify. This is sufficient. As Rankin points out, the alleged inadequacies of Rankin's knowledge of the case are "consistent with the problems faced where damages occurs to unsophisticated investors." Notably, defendants have not identified any antagonistic interests between Rankin and the proposed class. Rankin is therefore an adequate class representative.

Thus, Rankin has established all of the requirements under _Rule 23(a)._

### B. _Rule 23(b)_

Rankin requests certification under _Rule 23(b)(1) or (b)(2)._ [FN11] In addition to satisfying the requirements under _Rule 23(a),_ a plaintiff must also satisfy at least one of the requirements under _Rule 23(b)._ _Am. Med. Sys.,_ 75 F.3d at 1079.

> FN11. Rankin also says that class certification under _Rule 23(b)(3)_ is proper, but has not briefed the issue. Therefore, certification under _Rule 23(b)(3)_ will not be considered.

### 1. _Rule 23(b)(1)_

_Rule 23(b)(1)_ provides:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124
--- F.Supp.2d ---
(Cite as: 2004 WL 831124 (E.D.Mich.))

the class which would establish incompatible standards of conduct for the party opposing the class, or

**\*9** (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ...

Rankin says that her ERISA claims will adjudicate the interests of all Plan participants therefore making certification under subsection (b)(1)(A) or (B) proper. Defendants first argue that certification under (b)(1)(A) is improper because "the fact that individual participants made individual investment decision for their own individual accounts means that participants' claims will not necessarily rise or fall together." Defendants cite _Nelson v., IPALCO Enter., Inc., 2003 WL 23101792_ (S.D. Ind. Sept. 30, 2003 (unpublished), [FN12] where the district court refused to certify a class in an ERISA breach of fiduciary duty under Rule 23(b)(1) case brought by plan participants. The district court stated:

> FN12. Notably, the court in _IPALCO_ certified a class under Rule 23(b)(3) (after having found that the requirements under Rule 23(a) were met).

This court finds that certification under Rule 23(b)(1) is not appropriate here. The best argument for certification under Rule 23(b)(1) is that ERISA requires that any monetary relief be awarded directly to the Thrift Plan itself rather than to the individual plaintiffs. See _Massachusetts Mutual Life Ins. Co. v. Russell_, 473 U.S. 134, 140 (1985); 29 U.S.C. § 1109(a) (remedy for plan fiduciary's breach of fiduciary duty is to "make good to such plan any losses to the plan resulting from such breach ....") (emphasis added). Rule 23(b)(1) may

apply where the final decisions on the merits for all class members will be the same. The existence of the individual accounts and individual investment decisions, however, means that the correct decisions for different class members may be different. There are individual issues of reliance and causation, as well as some individual issues presented by affirmative defenses. The case therefore fits the profile for Rule 23(b)(3), which requires opt-out rights as well as a showing that common issues predominate and that a class action is the superior method for resolving all claims. The presence of those individual issues and the prospect of different results for different class members means that Rule 23(b)(1) does not fit this case.

Rankin, however, cites _Ikon Office Solutions, supra,_ a similar case challenging an ERISA plan's use of the employer's stock as an option for the participants' self-directed investments and the plan's practice of keeping all employer contributions in the form of employer stock. The district court in _Ikon_ certified a plaintiff class under Rule 23(b)(1)(A) and (B), rejecting defense arguments that individual issues of reliance and causation should bar certification. _Id._ The district court explained:

> The court again finds that the potentially individualized questions do not affect any of the essential aspects of the class action, which are the common course of conduct by the defendants towards the putative class and the significance of the misrepresentations, if any. The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. See, e.g., _Feret, 1998 WL 512933, at \*13; Bunnion, 1998 WL 372644, at \* 14; Kane v. United Indep. Union Welfare Fund_, Civ. A. No. 97-105, 1998 WL 78985, at \*8-9 (E.D.Pa. Feb. 24, 1998). There is also risk of inconsistent dispositions that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124                                                    Page 11
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.
**\*10** *Ikon Office Solutions,* 191 F.R.D. at 466.

The district court in *Bunnion v. Consolidated Rail Corp.,* 1998 WL 372644 (E.D.Pa.1998)(unpublished) reached a similar conclusion in another ERISA breach of fiduciary duty case. The district court stated:

Certifications under both 23(b)(1)(A) and 23(b)(1)(B) are common in labor relations cases. 5 Moore's § § 23.41[4], 23.42[3][c]. "Because a defendant often provides unitary treatment to all members of the putative class [in] such an area, a putative class member's rights may be implicated by litigation brought by other class members." *Id.* § 23.42[3][c].

Defendants dispute the applicability of 23(b)(1)(A) and (B) because they contend that the dissimilarity of plaintiffs' claims preclude it. According to defendants, (b)(1) should be limited to those cases with no or few individual questions.
....
With these principles in mind, we examine the remaining counts to ascertain whether certification under 23(b)(1)(A) or (b)(1)(B) is appropriate. We find that the ERISA actions in Counts I, II, III, VI, VIII, IX, and XIII are appropriate for certification under both of these provisions of Rule 23. All of these claims relate to the interpretation and application of ERISA plans. Conrail treated the proposed class and subclass identically and any equitable relief granted will affect the entire class and subclass. Failure to certify a class would leave future plaintiffs without adequate representation. Moreover, we see a high likelihood of similar lawsuits against

defendants should this class be denied. Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice. While plaintiffs list a variety of relief sought in their amended complaint, ERISA specifically limits the relief available to that of an equitable, that is, declaratory or injunctive, nature. 29 U.S.C. § 1132. To the extent that money damages are awarded or sought, we find them to be incidental.
Bunnion, 1998 WL 372644 at \*13 (footnote omitted).

The Court finds the reasoning in *Ikon* and *Bunnion* more persuasive than the reasoning in *IPALCO*. Rankin's claims relate to defendants unitary actions with regard to the Plan. Defendants treated the entire class identically. Although there may be factual differences as to whether, in the case of voluntary employee contributions, a class member relied on any alleged misrepresentations, the alleged misrepresentations are alleged to have been made to the entire class of participants. This is not a case where defendants are alleged to have had individualized communications with a participant. Rather, this is a case where defendants' uniform communications with its participants and its uniform decisions with respect to the employer matching portion of the Plan forms the basis for Rankin's claims. Thus, individualized issues do not predominate.

In addition, a failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions. Defendants do not deny that there could be multiple lawsuits, but rather argue that liability for breach of fiduciary duty is the type of issue that can carry over into other cases. This argument actually militates in favor of class certification since it shows how adjudication of Rankin's claims will likely be dispositive of the claims of other potential class members-the basis for certification under (b)(1)(B). Defendants also say that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 831124
--- F.Supp.2d ---
**(Cite as: 2004 WL 831124 (E.D.Mich.))**

Page 12

because ERISA provides for recovery of attorney fees to successful plaintiffs, there is little need for class certification. This argument lacks merit. Class certification does not, and should not, turn on statutory attorney fee provisions.

**\*11** Overall, the Court finds that certification under Rule 23(b)(1) is proper. Certification will be under (b)(1)(A) and (B).

Rankin also says that certification is proper under Rule 23(b)(2) because she is primarily seeking equitable relief in the form of making the Plan whole as a result of defendants' alleged breach of fiduciary duty. Defendants argue that Rankin is primarily seeking monetary not equitable relief and therefore certification under (b)(2) is improper. In light of finding that certification is proper under Rule (b)(1), this argument need not be addressed.

### C. Class Definition

As stated above, Rankin seeks to certify a class defined as
> All participants and beneficiaries of the Kmart Retirement Savings Plans and their predecessors from March 15,1999 onward

The March 15, 1999 date is the alleged date when the Plan began investing in Kmart stock though employer matching contributions.

Defendants argue that if a class were certified, it should be narrowed to include only current Kmart participants who received matching contributions from May 17, 2001 until January 22, 2002. Defendants say that the first purported misrepresentation listed in the Amended Complaint occurred on May 17, 2001 and January 22, 2002 is the date when Kmart filed for Bankruptcy and ended matching contributions in Kmart stock. Defendants also say that any class should be divided into subclasses based on the types of contributions.

As stated at the hearing on April 14, 2003, Rankin has ten (10) days in which to submit a proposed order containing a class definition as well as a paper outlining the future procedural steps of the case, including notice. Defendants have five (5) days thereafter to respond, including submitting a proposed order containing a class definition as well as responding to Rankin's proposed procedural steps.

SO ORDERED.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Slip Copy                                                                Page 1
**(Cite as: 2004 WL 793190 (D.Or.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.

Jim HOLMES, as Trustee for and on behalf of the EOFF Electric Company 401(k) Stock Ownership Plan; and Tim Kilmer, as Trustee for and on behalf of the EOFF Electric Company Employee Stock Ownership Plan, Plaintiffs,
v.
Victor BARTLETT; Les A. Williamson; Robert Norton, Jr.; individually and in his professional capacity with Norton & Butler CPAs; Joseph I. Eoff; Kevin Kerstiens, individually and in his professional capacity with Schwabe Williamson & Wyatt, PC; Cam Turner, individually and in his professional capacity with Schwabe Williamson & Wyatt, PC; Richard Phenneger, individually
and in his professional capacity with Phenneger & Morgan, Inc.; Gregory E. Harris, individually and in his professional capacity with Harris & Bowker, LLP; Clark Williams, individually and in his professional capacity with Heltzel, Upjohn, Williams, Yandell, Roth, Smith & Peterson, PC; Mark Pagano, individually and in his professional capacity with Pagano Appraisal Group LLC, Defendants.
**No. Civ. 03-1176-AS.**

March 30, 2004.

Katherine S. Somervell, Robert B. Miller, Bullivant, Houser, Bailey, PC, Stephen F. English, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for Plaintiffs.

Nancie K. Potter, Foster, Pepper, Tooze, LLP, Portland, OR, Michael P. Monaco, Song, Oswald & Mondress PLLC, Seattle, WA, Kelsey Fisher, Schulte, Anderson, Downes, Aronson, et al., Lee S. Aronson, Schulte, Anderson, Downes, Aronson, Bittner, Portland, OR, Christopher J. Rillo, D. Ward Kallstrom, John F. Finston, Sonnenschein, Nath & Rosenthal, LLP, San Francisco, CA, John D. Parsons, Parsons, Farnell & Grein, LLP, Portland, OR, Michael A. Vanic, Reish, Luftman, Reicher & Cohen, Los Angeles, CA, Peter R. Mersereau, Mersereau & Shannon, LLP, Portland, OR, Michael C. McClinton, McClinton & Troutt, LLC, Salem, OR, Michael G. Halligan, Jeffrey C. Misley, Sussman Shank, LLP, Portland, OR, Joseph C. Arellano, Kennedy, Watts, Arellano & Ricks, LLP, Ralph E. Cromwell, Jr., Byrnes & Keller, Seattle, WA, for Defendants.

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate J.

**\*1** Defendants Joseph I. Eoff, Schwabe Williamson and Wyatt PC, and Richard Phenneger, individually and in his professional capacity with Phenneger & Morgan, Inc. (collectively "Defendants"), move to dismiss the claims asserted against them by Jim Holmes, as Trustee for and on behalf of the EoffElectric Company 401(k) Stock Ownership Plan ("Plaintiff"). Defendants argue that the beneficiaries of the Eoff Electric Company 401(k) Stock Ownership Plan (the "Plan") made individual and independent decisions to purchase Eoff Electric Company Stock ("Stock") and that Plaintiff lacks standing to assert claims arising from the purchase of the Stock. In the alternative, Defendants ask the court to join the Plan beneficiaries as parties under Fed.R.Civ.P. 19(a). Also before the court is a motion by Plaintiff for leave to file a sur reply.

*Background*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                        Page 2
**(Cite as: 2004 WL 793190 (D.Or.))**

In 1999, defendant Eoff, the sole shareholder of Eoff Electric Company (the "Company"), decided to sell the Company to his employees through employee stock ownership plans. The Company hired a number of experts to aid in the fully-leveraged buyout of defendant Eoff and the sale was completed in August 1999. Plaintiff alleges that the employees were induced by Defendants to pay more than $13 million for the Company, which had a value of no more than $9.2 million. Less than three years after the sale, it became evident that the Company could not sustain operations at a profitable level given its debt service requirements. In September 2002, the employees equity interest in the Company was sold for $2.85 million, resulting in a loss of more than $5 million.

One of the vehicles used to purchase Stock was the Company's existing 401(k) retirement plan, which was converted to a stock ownership plan as a part of the leveraged buyout. Participants of the Plan were given the right to choose whether to purchase Stock and how much of their existing account would be used to make such purchase. The Company distributed an offering circular to all eligible Oregon [FN1] employees. The employees who were interested in purchasing Stock were required to sign and submit a participation form directing the Plan trustee to purchase a specified amount of Stock using the funds in their existing account. By signing the participation form, the employees represented and warranted that they had sufficient financial sophistication to evaluate the investment and that the investment was speculative and subject to substantial risks. The Plan trustee then purchased the Stock as directed and held the stock in a separate stock account for the plan beneficiaries.

> FN1. The offering was limited to Oregon employees to qualify the offer as an "intra-state offering" which was exempt from registration.

*Preliminary Procedural Matter*

Plaintiff seeks leave to file a sur reply to respond to the authorities cited by Defendants for the first time in their reply. The court has not considered Plaintiff's sur reply in the discussion of the motion to dismiss and rules in Plaintiff's favor on the motion. Accordingly, the sur reply is not outcome determinative and the court recommends the denial of Plaintiff's motion for leave to file a sur reply.

*Legal Standard*

Motion to Dismiss

**\*2** Courts grant motions to dismiss under Rule 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." _Gibson v. United States,_ 781 F.2d 1334, 1347 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. _Cassettari v. County of Nevada,_ 824 F.2d 735, 737 (9th Cir.1987).

Motion for Joinder

If a person is subject to service and joinder of that person will not defeat subject matter jurisdiction, _Fed.R.Civ.P. 19(a)_ mandates joinder where either (1) the person's absence will make complete relief among the parties impossible; or (2) the person claims an interest relating to the subject of the action and that person's absence may impair or impede the ability to protect that interest or may leave any of those already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person should join as a plaintiff but refuses, the person may be joined as a defendant.

*Discussion*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                Page 3
**(Cite as: 2004 WL 793190 (D.Or.))**

Motion to Dismiss

In Counts 1 through 6, Plaintiff asserts claims against the fiduciaries of the Plan, including defendant Eoff, under the provisions of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001, et seq.)("ERISA"). ERISA specifically provides that a civil action may be brought by a plan fiduciary to enforce the provisions of ERISA or the provision of the Plan. 29 U.S.C. § 1132(a). Plaintiff, as the Plan trustee, is clearly a fiduciary under the terms of ERISA and, therefore, has standing to bring the first six counts.

The remaining counts assert claims for violation of Oregon securities laws, professional negligence, negligent misrepresentation, breach of contract, breach of common law fiduciary duty and breach of the duty of good faith and fair dealing. Defendants contend that because the Plan participants made the decision to purchase the Stock with no assistance from Plaintiff, the participants are the true purchasers of the Stock. Defendants then argue that because only purchasers have standing to bring a claim under Oregon securities, Plaintiff is barred from bringing any non-ERISA claim.

Defendants rely on a number of cases in which the courts held that individuals who purchased securities through a trustee have standing as "purchasers" to assert claims under securities laws. Vannest v. Sage, Rutty & Co., Inc., 960 F.Supp. 651 (W.D.N.Y.1997); Atchley v. Qonaar Corp., 1982 U.S. Dist. LEXIS 12178, *5 (N.D.Ill.1982) reversed on other grounds, 704 F.2d 355 (7th Cir.1983); Wendt v. Keenan & Clarey, Inc., 1986 U.S. Dist. LEXIS 17378, *6 (D.Minn.1986). However, these cases do not hold that trustees who purchase securities at the direction of their beneficiaries do not have standing to bring the same claims. To the contrary, the court in Atchley stated that a beneficiary may assert a claim, either "alone or with the trustee" against the seller of the securities, thereby acknowledging that a trustee had standing

to bring a claim against the seller. Atchley, supra, at *5. There is no rule that only one person has standing to bring a claim. In many instances, there may be more than one proper plaintiff. In this case, it appears that both the employees and the trustee have standing to assert a claim based on the purchase of the Stock.

**\*3** Most of the cases relied on by Defendants refer to the "Birnbaum" rule [FN2] which limits those authorized to assert a private right of action for money damages under Rule 10b-5 to actual purchasers or sellers of securities. There is no dispute that Plaintiff purchased the Stock, and actually held the Stock, for the benefit of the Plan participants. Plaintiff was clearly a purchaser under the Birnbaum rule and has standing to bring this action.

> FN2. The Birnbaum Rule was created by the Second Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461, 461064 (2d Cir.1952) and was adopted by the United States Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731-33, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

Defendants also offer a number of SEC no-action letters in which the agency has held that the domicile of a trustee who purchases stock at the direction of plan participants is not considered for the purposes of the intra-state offering exemption. First, the court notes that these no-action letters are not binding on the court. Second, while the no-action letters do hold that a trustee who purchases securities at the direction of beneficiaries and acts as a custodian of the purchased securities are not "purchasers" for the purpose of qualifying for the exemption provided by Section 3(a)(11) of the Securities Act of 1993 and Rule 147 promulgated thereunder, there is no indication that this characterization is applicable or relevant to the issue before

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
**(Cite as: 2004 WL 793190 (D.Or.))**

the court.

 Plaintiff purchased the Stock and retained ownership of the Stock for the benefit of the Plan participants. Plaintiff is a purchaser of securities and has standing to assert claims for improper activity relating to the sale of the securities. Defendants' motion to dismiss should be denied.

 Even assuming the Plaintiff is not a "purchaser" and, therefore, unable to assert claims for securities violations, the court questions whether such a characterization is relevant to the non-securities claims. In all of the non-securities claims, Plaintiff alleges a special or contractual relationship between the professionals hired to assist in the leveraged buyout and the Plan. These allegations support a claim for breach of the contract or a breach of a duty owed to the Plan. It is evident that the Plan has standing and is, in fact, the proper party to bring an action for these breaches.

Motion for Joinder

 Defendants ask the court to require the joinder of the Plan participants based on the fact that they are interested parties and that complete relief cannot be awarded without their presence in the action. Additionally, Defendants assert that discovery will be problematic unless all participants are named as parties. The court disagrees.

 The Plan, and the statutes under which it was created, contemplate that the trustee of the Plan will live up to his fiduciary duties and protect the interests of the Plan beneficiaries. Plaintiff is pursuing this action on behalf of the Plan beneficiaries and all damages awarded in this action

will inure to their benefit. "It has long been the rule that beneficiaries of a trust ordinarily need not be joined as necessary parties under Rule 19." *Arizona Laborers, Teamsters and Cement Masons Local v. Conquer Cartage Company, 753 F.2d 1512, 1521* (9th Cir.1985). This rule applies in this instance.

 **\*4** With regard to Defendants' argument that discovery will be difficult in the absence of the Plan beneficiaries as parties, the court recognizes that the Plan beneficiaries' financial interest in this case will, for the most part, make them willing participants in the discovery process. It is extremely unlikely that they won't fully participate and the slight chance of a meaningful discovery dispute is not sufficient reason to require the joinder of all of the Plan participants.

*Conclusion*

 Defendants' motions (# 35, # 76 and # 83) to dismiss or, in the alternative, for joinder, should be DENIED. Plaintiff's motion (# 103) for leave to file sur reply should be DENIED.

*Scheduling Order*

 The above Findings and Recommendation will referred to a United States District Judge for review. Objections, if any, are due April 14, 2004. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due 10 days from the date of service of the objections, and the review of the Findings and Recommendation will go under advisement on that date.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works