APR - 1 2004CEIVED

APR 0 1 2004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re CMS ENERGY ERISA LITIGATION

Master File No. 02-CV-72834

HON. GEORGE CARAM STEEH

_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDICIAL NOTICE AND GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

INTRODUCTION

Currently before the court in this consolidated ERISA litigation is a Fed. R. Civ.

P. 12(b)(6) motion to dismiss brought by defendants CMS Energy Corporation ("CMS"),

Consumers Energy Company ("Consumers"), CMS Marketing Services and Trading

Company ("CMS MST"), Victor J. Fryling, Laura L. Mountcastle and Preston Hopper; a

Fed. R. Civ. P. 12(b)(6) motion to dismiss brought by individual defendants Preston D.

Hopper, David W. Joos, William T. McCormick, Jr., Tamela W. Pallas, and Allan M.

Wright; and the defendants' request for judicial notice per Fed. R. Evid. 201, in

connection with motions to dismiss, of two versions of defendants' Employees' Savings

and Incentive Plan and Employee Stock Ownership Plan ("Plan").

BACKGROUND

At issue in this ERISA litigation is a retirement plan, established and sponsored

by CMS, Consumers and CMS MST as an employee benefit (the "Plan").  The Plan has

two components, both allowing for investment in CMS stock.  One part is a 401(k)

Savings Plan, allowing for employees' direction of contributions into an investment of

their choosing; the 401(k) plan gives employees 10 investment options, including Fund CS. which consists primarily of CMS stock. Prior to January 1, 2001, participating employees could contribute up to 16% of their pay to the Plan; thereafter, they were permitted to contribute up to 25% of their pay. The other is an Employee Stock Ownership Plan (ESOP), where matching contributions up to 3% of an employee's salary were directed into the participating employee's ESOP account. Incentive contributions were sometimes contributed to employees' ESOP accounts as well.

Under the 401(k) portion of the Plan, according to § 5.5(a), participants decided how to allocate their account assets among the investment options offered to them. According to the Plan terms, the matching contributions made by participants' employers, as well as incentive contributions, were made primarily in the form of CMS stock and allocated to Fund CE. Plan, §§ 5.11; 5.13. According to § 7 of the Plan, Fund CE "consists of CMS Energy Corporation common stock and temporary investments.

The ERISA claims in this litigation. like the securities claims in the court's companion securities action, In re CMS Energy Securities Litigation, #02-72004, stem from certain wholesale electricity trading transactions undertaken by CMS from mid-2000 through January 2002. Specifically, CMS is alleged to have engaged in "round-trip" electricity trades. where purchases and sales of electricity happened simultaneously, with the same parties and at the same price. The Amended Consolicated Complaint in this litigation ("ACC") alleges that these trades, while having no effect on the net earnings of CMS, indicated an increased buying and selling volume (ACC. ¶ 60), by including $4.4 billion of revenues and expenses which "had no

2

economic substance, violated GAAP and rendered the financial statements of CMS materially false." (ACC, ¶ 64).  The CMS stock price is alleged to have dropped after CMS voluntarily stopped making round trip trades in January 2002 and an investigation of the practice become public in May 2002.  (ACC, ¶ 34).

These motions filed by all defendants to this matter seek the dismissal of the entirety of plaintiffs' Amended Consolidated Complaint ("ACC"), filed January 15, 2003, and, in connection with those motions, the taking of judicial notice of the Plan as of the date of January 1, 1997 and, a second version as of the date of January 1, 2001.  The consolidated CMS ERISA cases, accepted as companions to this court's pending CMS Energy litigation, allege the following four causes of action via the ACC:

1.   Failure to Prudently and Loyally Manage Plan Assets (Breaches of fiduciary and co-fiduciary duties in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D), 29 U.S.C. § 1105 by Employer Named Fiduciaries, Insider Director Defendants, and Plan Administrator Defendants)

2.   Failure to Provide Complete and Accurate Information to Participants and Beneficiaries (Breaches of fiduciary and co-fiduciary duties in violation of §§ 404 and 405 of ERISA, 29 U.S.C. § 1104 and 1105 by the Employer Named Fiduciaries, Insider Director Defendants, and Plan Administrator Defendants)

3.   Failure to Monitor the Plan's Fiduciaries (Breaches of fiduciary and co-fiduciary duties in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D), 29 U.S.C. § 105 by Employer Named Fiduciaries and Insider Director Defendants)

4.   Causing the Plan to Engage in a Prohibited Transaction by Acquiring CMS Stock for the Plan for More than Adequate Consideration (Violation of §§ 406 and 407 of ERISA, 29 U.S.C. § 1106 and 1107 by the Employer Named Fiduciaries and Insider Director Defendants)

As seen above, the ACC asserts claims against different fiduciary categories:

Employer Named Fiduciaries (Consumers, CMS and CMS Marketing); Plan

3

Administrator Fiduciaries (the estate of McNish[1] and Mountcastle); and Insider Director Fiduciaries (Victor J. Fryling, David W. Joos, William T. McCormick, Jr., Allan M. Wright, Tamela W. Pallas, and Preston D. Hopper).[2]  Laura Mountcastle, Victor J. Fryling and Preston Hopper are included in the three corporate defendants' motion to dismiss (the "CMS motion"), and Preston Hopper and the remaining individual defendants filed a separate motion to dismiss, in which those defendants both join in the CMS motion and make additional arguments.  The court has now considered the parties' briefings, oral arguments, and supplemental briefings[3] in this matter, and its discussion of and determination on these requests is set forth below.

## STANDARD

In deciding a motion to dismiss, the court must accept the allegations of the complaint as true, and may only dismiss the complaint if plaintiffs "can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The plaintiffs' allegations must be construed in the light most

---

[1] Defendant Estate of Thomas McNish, although not originally included in these motions, has filed his joinder in all defendants' motions to dismiss the ACC.

[2] Note: plaintiffs asserted in a response brief, p. 4, that they had alleged causes of action against a fourth category of defendant, Plan Committee Fiduciaries (Finance and Pension Committees of Consumers and CMS), and defendants' motions, as filed, sought dismissal of the Plan Committee Fiduciaries.  However, following the briefing and hearing on this cause, plaintiffs filed a voluntary dismissal of the finance and pension committees of the boards of directors of CMS and Consumers pursuant to Fed. R. Civ. P. 41(A)(1)(i).

[3] In the months following oral argument, both plaintiffs and defendants submitted substantial proposed "supplemental authority" in this matter, to draw the court's attention to recent cases decided in this area of law.  The court has accepted and considered such supplemental authority; however, to the extent the court did not rule on the parties' motions for leave to file supplemental briefings, those requests are hereby granted.

4

favorable to the plaintiffs. Bower v. Federal Express Corp., 96 F.3d 200 (6th Cir. 1996); Sinay v. Lamson & Sessions, 948 F.2d 1037, 1039 (6th Cir. 1991). In order for dismissal to be proper, it must appear beyond a doubt that the plaintiff could not recover under any set of facts which might be presented consistent with the complaint's allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## ANALYSIS

A.  DEFENDANTS CMS, CONSUMERS, CMS MST, FRYLING, MOUNTCASTLE, AND HOPPER'S REQUEST FOR JUDICIAL NOTICE OF PLANS

Relying on Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001) and other persuasive authority, the above defendants request that the court take judicial notice of two versions of the Employees' Savings and Incentive Plan and Employee Stock Ownership Plan, with respective effective dates of January 1, 1997 ("1997 Plan") and January 1, 2001 ("2001 Plan"). Plaintiffs do not oppose the taking of judicial notice of the 1997 Plan, but oppose such court action as to the 2001 Plan, stating that there is a factual dispute as to whether the Consumers Board ever adopted the 2001 Plan document. Because the parties are in agreement concerning the 1997 Plan, the court will grant the motion for judicial notice as to that document.

In making a determination to consider the 2001 Plan, the court notes that the 2001 Plan is specifically discussed in the ACC, and a copy of the 2001 Plan was attached to the Declaration of Derek Loeser, filed in support of plaintiffs' opposition to defendants' motions to dismiss. Furthermore, defendants show that the Consumers Board approved a resolution adopting the substance of the 2001 Plan in August 2001, attached as Exhibit B to defendant's reply. Plaintiffs indeed rely on the Plan in making

5

such specific reference to it, both in their complaint and argument on these motions to dismiss. Plaintiffs in fact filed a supplemental response to this request, in which they do not object to the court's consideration of the document[4] in connection with this motion to dismiss, but only request that the court leave the "fact issue regarding the effective date of the 2001 Plan Document for another day" (Plaintiffs' supplemental response, p. 4).

This argument of plaintiffs is well-taken. Given plaintiffs' agreement that the document be considered in relation to this motion, the court need not grant defendants' request for judicial notice of the 2001 Plan pending further factual development concerning its effective date. However, although the 2001 Plan is not attached to the plaintiffs' ACC, it is both referenced therein and central to the plaintiffs' claims in this litigation, and will be considered by the court as though it had been attached to the complaint. Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997).

B.    ERISA'S FIDUCIARY STANDARDS

Prior to addressing the defendants' motions to dismiss, the court will briefly discuss fiduciary standards under ERISA. Fiduciary duties are specifically enumerated in ERISA § 404(a)(1):

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;

---

[4] The court notes plaintiffs proviso concerning whether the 2001 Plan Document under consideration here is the same as the draft document referred to in the August 16, 2001. Board minutes, which, for the purposes of this motion, the court assumes it is.

6

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan....

29 U.S.C. § 1104(a)(1). ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). The duties with which an ERISA fiduciary is charged are "the highest known to the law." Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting Donovan v. Bierwirth, 680 F.2d 263, 271 (2nd Cir.), cert. denied, 459 U.S. 1069 (1982).

In the Sixth Circuit Kuper v. Iovenko decision, 66 F.3d 1447 (6th Cir. 1995), the court described the fiduciary duties enumerated under § 404(a) as having "three components:" one is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" Berlin v. Michigan Bell Telephone Co., 858 F.2d 1154, 1162 (6th Cir. 1988) (quoting Bierwirth, 680 F.2d at 271); another is the "prudent man" obligation, imposing "an unwavering duty" to act both "as a prudent person would act in a similar situation," "with single-minded devotion" to the plan participants and beneficiaries. Id. The third component identified by the Kuper court was the responsibility of the ERISA fiduciary to "'act for the exclusive purpose'" of providing benefits to plan beneficiaries. Id. (quoting Bierwirth, 680 F.2d at 271). Kuper, 66 F.3d at 1458. As stated in the case

7

of Chao v. Hall Holding Co., Inc., 285 F.3d 415, 426 (6th Cir. 2002), "[w]hen enforcing these duties, 'the court focuses not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction.'" Chao, 285 F.3d at 426 (quoting Howard, 100 F.3d at 1488). That court also noted that personal liability for the fiduciary can result from a failure to meet these high standards. Id., pointing to 29 U.S.C. § 1109(a).

C.    INDIVIDUAL DEFENDANTS' (PRESTON D. HOPPER, DAVID W. JOOS, WILLIAM T. MCCORMICK, TAMELA W. PALLAS, and ALLAN M. WRIGHT) MOTION TO DISMISS

As stated above, the group of individual defendants moving separately to dismiss the claims lodged against them consists of Preston D. Hopper, David W. Joos, William T. McCormick, Tamela W. Pallas, and Allan M. Wright. These defendants join in the arguments addressed below and assert several additional grounds for dismissal of the ACC claims lodged against them.

Insufficient Allegations to Establish Officers and Directors as Fiduciaries of the Plan

In summary, counts one, two and three allege these defendants' failure to "prudently and loyally manage plan assets," citing 29 U.S.C. §§ 1104(a)(1)(A)-(D), 1105 (Count I), to "provide complete and accurate information to participants and beneficiaries," citing §§ 1104, 1105 (Count II), and to "monitor the Plan's fiduciaries," citing 29 U.S.C. §§ 1104(a)(1)(A)-(D), 1105 (Count III)[5].

The individual defendants first argue in their motion to dismiss that they, who are not specifically mentioned in the Plan, are not made fiduciaries simply by virtue of their

---

[5] This claim is asserted against only the Inside Director and Employer fiduciaries.

8

positions as officers and directors of CMS, Consumers and/or CMS Marketing. The

individual defendants further assert that no specific facts are alleged which might

impose any fiduciary duties on them, and that absent any discretionary authority or

control exercised by these individuals over the Plan, their status as corporate directors

and/or officers does not make them fiduciaries. This latter argument is taken up in

more detail in the individual defendants' third argument, which asserts that there is

nothing in the complaint concerning the origin of the individuals' alleged fiduciary duties

to the Plan, or actions they took which might have made them owe such duties.

Pertinent here, as set forth in the defendants' briefing, a person is a fiduciary

under ERISA to the extent

> (i) he exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or control
> respecting management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct or indirect, with
> respect to any moneys or other property of such plan, or has any authority
> or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Defendants cite to Hamilton v. Carell, 242 F.3d 992, 998 (6th

Cir. 2001) and Hunter v. Caliber Systems, Inc., 220 F.3d 702, 718 (6th Cir. 2000) to

emphasize that the conduct at issue must be examined by the court to determine if an

individual has fiduciary duties under ERISA. Plaintiffs do not dispute this, but assert

that these individual insider director defendants were fiduciaries both 1) because as

board members they had the power to appoint the Plan administrator, and 2) because

as board members they conducted the business of the employer named fiduciaries,

which included the general administration of the Plan. See 1997 Plan Document, p. 22,

§ 11.1; 2001 Plan Document, p. 28, § 11.1. Plaintiffs also contend that the insider

9

director defendants, via board decisions, directed the Trustee regarding investment of

Plan assets. See 1997 Plan Document. § 6.2; 2001 Plan Document. § 6 2.

The Plan states

11.1 Administration of the Plan.  The Employers shall be responsible for
the general administration of the Plan and for carrying out the provisions
thereof.  They may establish rules and regulations to carry out the
provisions of the Plan; and in making any determinations, rules, or
regulations they shall pursue uniform policies and shall not discriminate in
favor of or against any Employee or Member.  The Board of Directors of
Consumers shall appoint such persons, who may be Members under the
Plan, as it determines at any time to act as Plan Administrator in all
dealings under the Plan.  The Employers are hereby designated as the
Named Fiduciaries and Plan sponsors for the Plan.

Plan, § 11.1 (identical in 1997 and 2001 versions).  The substance of §6.2 of the Plan

documents (only slightly different in the two versions) provides that contributions of Plan

participants will be allocated to funds by the Trustee, pursuant to the Employers'

directions.  Plaintiffs distinguish the situation here from Confer v. Custom Engineering

Co., 952 F.2d 34 (3d Cir. 1991), and cite to Vivien v. WorldCom, No. C 02-01329, 2002

WL 31640557 at *3-4 (N.D. Cal. July 26, 2002) to argue that ERISA imposes no

requirement that these defendants be named individually in the Plan to be considered

fiduciaries.

The court agrees with plaintiffs that ERISA law includes no bright line rule that a

Plan itself must use an individual's name to confer fiduciary responsibilities on that

individual.  Moreover, as seen above, § 11 of the Plan gives general and broad Plan

administration responsibilities to the Employers, and specifically gives the Board of

Directors of Consumers the responsibility of naming the Plan Administrator.  Plan, §

11.1.  The court further agrees with plaintiffs that those facts distinguish this matter, in

10

part, from the case of Confer, and agrees with plaintiffs that the Sixth Circuit has yet to address the ruling in Confer that officers are not deemed ERISA fiduciaries in the absence of express individual discretionary authority for plan administration. It is also significant that these issues in Confer were addressed following discovery in a decision on a summary judgment motion, unlike the procedural posture of this motion.

Properly framed, the issue presently before the court as to counts one and two is whether, considering the ACC in a light most favorable to plaintiffs, these defendants are appropriately alleged to have assumed any responsibility to prudently and loyally manage plan assets; provide complete and accurate information to participants and beneficiaries; or to monitor Plan fiduciaries, thereby acting as "discretionary" fiduciaries, Drennan v. General Motors Corp., 977 F.2d 246, 250-51 (6th Cir. 1992), and whether such responsibilities were breached. Additionally, unlike Confer, the allegations here center on the defendants' failure to act, rather than specific acts which were themselves alleged to be breaches of fiduciary duty.

The reply brief of defendnts Wright, Pallas, and Hopper argues that, concerning plaintiffs' contention that defendants should have eliminated CMS stock as a Plan investment option as a part of their asset management duties, such a change in Plan "architecture" could be made only through amendment or termination of the Plan. As that argument goes, made in more than one of the briefs supporting dismissal, making such a change in a Plan is not the function of a fiduciary. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44 (1999); Akers v. Palmer, 71 F.3d 226, 230 (6th Cir. 1995), and the decision to change (or not change) a Plan cannot create liability on the part of such a decision maker. See also In re McKesson HBOC, Inc. ERISA Litigation,

11

No. C00-20030, 2002 WL 31431588 at *8, n.8 (N.D. Cal. 2002). The court is in agreement with this argument, and to the extent Count I hinges on defendants' failure to *amend* the Plan, such claims are hereby dismissed.

Although the court agrees with defendants' position that an amendment of the Plan would not be a fiduciary act, it appears that plaintiffs' claim in Count I that "these fiduciaries continued to offer CMS stock as an investment option for the Plan..." (¶ 85) does not solely complain of a lack of Plan *amendment*, as defendants suggest. Rather, plaintiffs complain of the *lack of any action* taken by Plan fiduciaries, which might include other measures to protect participants' assets, such as a suspension of investment in CMS stock funds, or requiring investments in the ESOP to be held in cash until an assessment of the prudence of CMS stock investment could be made. Therefore, to the extent any of the individual defendants are properly alleged to be fiduciaries, addressed next, the court will not dismiss Count I for failure to state a claim.

The court notes a paucity of precedent for its next determination: whether these individual defendants can be maintained in this action for breach of fiduciary duties under Counts I-III. In the WorldCom litigation cited by plaintiffs, the district court found that the allegations concerning two individual officers and directors' discretionary control over the management and administration of the plan were sufficient under a 12(b)(6) analysis. WorldCom, 2002 WL 31640557 at *4. That case, however, lacks sufficient detail to be of particular help to this court. Defendants' argument is similar to that made by directors in the McKesson ERISA litigation, in which the McKesson plan designated the company as the named fiduciary, and did not identify the board as a fiduciary. McKesson, 2002 WL 31431588 at *28-29. Those facts are analogous to this situation,

12

where the Board of Consumers is specifically given the power to appoint a Plan administrator[6], but the "Employers" *cumulatively* are the "Named Fiduciaries," and have all responsibility for administration and the making of rules, regulations and determinations under the Plan.

The discretion given to the "Employers" in the Plan is broad: as stated above, they are "responsible for general administration of the Plan and for carrying out the provisions thereof," and "may establish rules and regulations to carry out the provisions of the Plan." Plan, § 11.1. Of these individual defendants, Hopper, Pallas and Wright served only on the CMS Marketing Board of Directors, whereas Joos and McCormick sat on the CMS and Consumers Boards of Directors. In the McKesson matter, all but one of the defendant directors was alleged to have been a member of the Compensation Committee, which, under that plan was responsible for "investment policy for the Plan." Id. at *29. No such responsibility is allocated in the Plan under review in this case.[7] In fact, "investment policy" is not a specifically assigned function under the Plan. In the McKesson litigation, the court found that

> [o]n the face of the Plan, it appears that the Compensation Committee is granted responsibility for overall investment policy of the Plan. Accordingly, members of the Compensation Committee are proper

---

[6] The defendants appear to argue, at various points in the briefings, that the Consumers Board's exclusive power to appoint a Plan administrator implies that such appointment is the sum total of powers conferred on Consumers, which the court rejects for the reasons stated herein.

[7] Although, arguably, the portion of § 11.1 stating that the Employers, "in making any determinations, rules, or regulations [they] shall pursue uniform policies and shall not discriminate in favor of or against any Employee or Member," implies that any such investment policy would be made by the Employers.

defendants for a claim for breach of fiduciary duty arising out of investment policy decisions.

Id. at *30. Therefore, the broad discretion giving rise to fiduciary duties for the Compensation Committee in McKesson is analogous to the discretion given to the Employers in this case.

Similarly, in the case of Rankin v. Rots, 278 F.Supp.2d 853 (E.D. Mich. 2003) decided by the Hon. Avern Cohn of this district, where the plan named only the corporation as the plan administrator, the court declined to dismiss the Kmart CEO and Board of Directors, stating "[t]his is not a situation where the Plan Documents simply provide the a (sic) board of directors' powers are limited to appointing, retaining, and removing members of a benefits committee." Rankin, 278 F.Supp.2d at 872. Similarly, in this case, where the Board of Consumers may choose a Plan administrator, and the Employers may choose an Investment Manager, but the Plan does not delegate investment policy or decision making power to such manager, administrator, or any other individual or committee, but in fact reserves the broadest administrative and management responsibility to the Employers, the court is convinced that it is premature to dismiss inside directors of the Employers as non-fiduciaries absent specific findings on what responsibilities were actually assumed by them.

Requirements of Fed. R. Civ. P. 9(b), 8 Not Met By Pleadings

The individuals also argue that the complaint generally lacks the specificity required by Fed. R. Civ. P. 9(b), for fraud claims, citing the WorldCom matter, 2002 WL 31640557 at *6-7 and Crowley v. Corning, Inc., 234 F.Supp. 2d 222, 231 n.7 (W.D.N.Y. 2002), that the ACC identifies Hopper, Joos and Wright only once, in paragraph 19,

14

mentions defendant McCormick there and on only two other occasions, and refers to Pallas on only a few occasions. The court agrees with plaintiffs that the requirements of Fed. R. Civ. P. 9(b) do not apply to this complaint. According to Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In this case, as plaintiffs point out, the claims asserted by individual defendants sounding in fraud have to do with the communication of inaccurate information, and the failure to disclose transactions which "'rendered the financial statements of CMS materially false.'" Defendants' brief at p. 6-7, citing ACC, ¶¶ 50, 60, 64. These general allegations are asserting a breach of fiduciary duty, not an intent to deceive, as plaintiffs contend, citing Concha, 62 F.3d at 1502. The court is not persuaded that plaintiffs have made any claims sounding in fraud.

In addition, defendants argue that even the notice standards of Fed. R. Civ. P. 8 have not been met by the ACC. The court disagrees with this argument also. Clearly in this case it is the *absence* of actions that comprise the bulk of the breach of fiduciary duty allegations. Furthermore, as plaintiffs contend concerning Count II, the misleading information alleged to have been contained in the Summary Plan Descriptions, and times, dates and places relevant thereto are established by the Plan documents themselves. Additionally, each of the individual defendants is described in detail in the plaintiffs' general allegations, and each heading in the complaint identifies which defendants the claim is levied against. The court, also noting the detailed arguments made in the motions to dismiss presently under consideration, is of the opinion that

15

defendants in this matter have sufficient notice of the claims made against them under Fed. R. Civ. P. 8.

Insufficient Facts Alleged for Co-Fiduciary Liability

The individual defendants' final argument is that the complaint does not allege sufficient facts to support an allegation of a primary breach of a duty by a co-fiduciary, and therefore cannot plead a secondary or "co-fiduciary" liability under ERISA. As the defendants assert, ERISA sets forth the three ways in which a fiduciary becomes subject to liability for a co-fiduciary's breaches:

> i) if the defendant knowingly participates in, or undertakes to conceal, an act of a co-fiduciary, knowing that such act or omission is a breach of fiduciary duty;
> ii) if his failure to comply with his own fiduciary obligations enables a co-fiduciary to breach a fiduciary duty owed by that co-fiduciary; or
> iii) if he knows of a breach by a co-fiduciary and does not make reasonable efforts to remedy the breach.

29 U.S.C. § 1105(a). Defendants assert, in particular, that the co-fiduciary liability claims should be dismissed as to Joos and McCormick, because the complaint fails to allege that they participated in or had knowledge of fiduciary breaches. However, plaintiffs point to ACC ¶¶ 19, 66-69, where Joos and McCormick are alleged to have had knowledge of the trading practices complained of here yet "took no action to prevent other fiduciaries from continuing to cause the Plan to invest in CMS stock" (Plaintiffs' response brief, p. 19). More generally, defendants contend that the ACC fails to sufficiently allege a primary breach by a co-fiduciary, and because the co-fiduciary claims would depend on such allegations, they automatically fail. They cite to the McKesson matter, 2002 U.S. Dist. LEXIS 19473, at *56, for this proposition.

16

The court does not agree with defendants' assertion that the claims are deficient against Joos, McCormick, or any of these individual defendants. Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture.

D.    DEFENDANTS CMS ENERGY CORPORATION, CONSUMERS ENERGY COMPANY, CMS MARKETING SERVICES AND TRADING COMPANY, VICTOR J. FRYLING, LAURA L. MOUNTCASTLE AND PRESTON HOPPER'S[8] MOTION TO DISMISS[9]

These defendants assert eight grounds for dismissal of plaintiffs' claims, addressed in turn, below.

1. Claims do not meet required pleading standard, even under Fed. R. Civ. P. 8.

First, it is asserted that plaintiffs' allegations are conclusory, lump the defendants together, and do not give the various defendants fair notice of the claims pending against them. Plaintiffs contend in response that the complaint complies with Fed. R. Civ. P. 8, as it is sufficiently specific, and that each count identifies the defendants it makes allegations against and put those defendants on notice. Plaintiffs distinguish certain cases relied on by defendants, including In re McKesson HBOC, Inc. ERISA Litigation, No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) and Crowley v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002).

---

[8] All individual defendants are represented by this motion, as the individuals addressed above have joined in this motion and merely state additional grounds for dismissal in their separate moving papers. Preston Hopper is a named moving party in both pending motions to dismiss.

[9] The estate of Plan administrator McNish also filed a joinder in all motions to dismiss under consideration here.

17

Plaintiffs argue that the heading of each cause of action describes the defendants against whom that count is asserted, and that the ACC is more specific than either the McKesson or Crowley complaints. Moreover, they assert, defendants' detailed discussion of each of the counts and multiple alternate assertions in support of their motion to dismiss indicates that defendants have been put on notice of the claims against them.

For the reasons given above in the court's decision on the individual defendants' similar argument, it is the court's determination that plaintiffs' complaint complies with Fed. R. Civ. P. 8.

2. Inadequate allegations of fiduciary capacity with respect to alleged conduct

Defendants' argument asserts that ERISA fiduciaries are permitted to wear "two hats" and take some actions as an ERISA fiduciary, and others as an employer, employee, or settlor of a plan, citing Akers, 71 F.3d 266, 230. Defendants assert that a "bald allegation that someone is a fiduciary" does not satisfy pleading requirements concerning breach of fiduciary duty, and that plaintiffs have failed to show how each defendant is a fiduciary in connection with the alleged conduct at issue. Defendants contend that a decision to provide a company stock fund as an investment option, and to make contributions to employees' retirement funds with company stock are not decisions made in a fiduciary capacity but are business decisions concerning plan design. Therefore, defendants state, they had no ERISA fiduciary duty to advise Plan participants concerning whether investment in CMS stock was a sound decision or any duty to refuse the selection of a fund by an employee.

18

Defendants further assert in this context that plaintiffs have not properly alleged that CMS, Consumers and CMS MST were acting in a fiduciary capacity with respect to the conduct at issue, asserting that business practices which may lead to a securities claim do not automatically constitute a breach of fiduciary duty under ERISA. Defendants cite to Hamilton, 243 F.3d at 998, in making the argument that corporate business decisions do not generally implicate fiduciary duties, and state that only actions taken in administrating or managing plan assets, rather than establishment of a plan, are subject to fiduciary standards, citing Akers, 71 F.3d at 230. Further, defendants contend that the allegations are not sufficient with respect to Victor J. Fryling and Preston Hopper, as Fryling resigned before March 31, 2001, before any claimed misleading communications to the SEC or any participant were made. Finally, defendants assert that allegations of fiduciary responsibility are inadequate in lumping together various "Insider Director Fiduciaries," including Fryling and Hopper. Fryling is alleged only to have been a member of the CMS Board of Directors and the Board's Plan Committee until December 22, 2000, and Hopper is alleged only to have held positions (Senior Vice-President, Director and CAP) with CMS MST.

Plaintiffs argue in response that the complaint specifically describes how each defendant acted as a fiduciary with respect to the allegations against them, and the basis for the claims of breach of fiduciary duty. They contend that the alleged failures in this matter—to offer CMS stock to Plan participants, match with CMS stock, and withhold critical information about CMS stock from participants-- during the alleged period of sham trading and securities fraud were not "business decisions" protected by the "two hats" rule, but were discretionary acts squarely within the defendants' fiduciary

responsibilities. Plaintiffs cite to the case of <u>McKesson</u>, 2002 WL 31431588 at *4 in making this argument, and quote from the Supreme Court case of <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225: "ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions."

Defendants correctly argue they may be fiduciaries in connection with certain actions, but not with others, as discussed in <u>Akers</u>, 71 F.3d at 230. However, the court finds that this complaint alleges sufficient facts to put the various defendants on notice of the claims pending against them.

Concerning defendants' arguments about Hopper and Fryling, it is significant that the business practices complained of here are alleged to have begun before Fryling's departure from the companies. Although the overlap may have been relatively brief, as discussed above, and the court acknowledges that Fryling's departure predated particular communications (i.e. SEC filings) complained of via the ACC, the complaint includes strong claims concerning the *inaction* of those with discretionary fiduciary duties. It is the court's conclusion that whether or not plaintiffs can maintain such claims for the time period prior to Fryling's termination is not an appropriate decision on this motion to dismiss.

3. <u>Claims brought under ERISA §§ 409, 502(a)(2) may be brought only for benefit of plan</u>

As defendants contend, plaintiffs' complaint states it is a lawsuit brought "on behalf of the Plan," under ERISA § 409, specifically 29 U.S.C. § 1109(a). <u>See</u> ACC, ¶¶ 2, 90, 100, 109, 116. Civil enforcement actions are specifically authorized by ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for violations of § 409. Defendants assert that such

20

lawsuits are brought on behalf of the plan as a whole and not for individual relief.

Defendants contend that plaintiffs, although purportedly suing on behalf of the Plan

(ACC, ¶1), are really bringing claims for individualized relief, seeking monetary

compensation for the losses suffered by individual participants' accounts (ACC, ¶ 23).

Defendants cite to Varity Corp., 516 U.S. at 509-15, and Massachusetts Mutual Life

Insurance Co. v. Russell, 473 U.S. 134, 140-44 (1985) for these propositions. Because

plaintiffs do not seek a lump sum recovery to benefit the Plan as a whole, but seek

recovery similar to the plaintiffs in the securities litigation, defendants assert a proper §

502(a)(2) claim has not been made and should be dismissed.

    Plaintiffs rely on the Sixth Circuit's Kuper case to defeat defendants' argument.

In that case, the court found that a subclass of plan participants could sue for a breach

of fiduciary duty, and plaintiffs contend that the case is directly on point.  In the Kuper

matter, plaintiffs were a class certified by the district court consisting of

> all former salaried employees of Quantum's Emery Division between the
> dates of December 28, 1988, and November 1, 1990, who participated in
> Quantum's Savings and Stock Ownership Plan and/or Quantum's ESOP,
> and who continued their employment with Henkel after the sale.

Kuper, 66 F.3d at 1451.  Although in the instant litigation, class certification has not

occurred, the court notes that the ACC's Class Action Allegations listed in Count VI

similarly define a class of

> [a]ll participants in the Plan and their beneficiaries, excluding the
> Defendants, for whose accounts the fiduciaries of the Plan made or
> maintained investments in CMS stock through the CMS Stock Funds
> between August 3, 2000, and the present (the "Class Period").

ACC, ¶ 118.

Defendants contend in reply that <u>Kuper</u> is of little value to this court in deciding the matter, because that court did not consider whether the claim was more properly brought under ERISA § 502(a)(2) or § 502(a)(3), and because <u>Kuper</u>, decided one year prior to <u>Varity Corp.</u>, did not have the "benefit" of the instruction of <u>Varity Corp.</u> However, it appears to the court that <u>Varity Corp.</u>'s focus was not the same as the issue at bar here, and that <u>Varity</u> relied on <u>Russell</u> in stating that the "second subsection..., tied to § 409, does not provide a remedy for individual beneficiaries." <u>Varity Corp.</u>, 516 U.S. at 515, citing <u>Russell</u>, 473 U.S. at 144. In <u>Russell</u>, the plaintiff was just that, an individual beneficiary, unlike in this case, where the putative class would extend to every Plan participant whose account held CMS stock during the Class Period. Plaintiffs in this case would, therefore, represent the Plan *as a whole* to the extent the Plan was constituted of CMS stock, the only Plan assets the litigation could impact. Such a claim appears to be consistent with Congressional intent. See <u>Russell</u>, 473 U.S. at 140, n.8. As stated in <u>Kuper</u>, which the court notes was decided after <u>Russell</u>,

> [d]efendants' argument that a breach must harm the entire plan to give rise to liability under § 1109 would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants.

<u>Kuper</u>, 66 F.3d at 1453. The court will not dismiss on this basis.

4. <u>Dismiss alleged failure to prudently and loyally manage Plan assets (Count 1)</u>

Here, defendants argue that plaintiffs cannot state a claim for failure to prudently and loyally manage plan assets where assets were invested exactly as required by explicit plan terms. Defendants cite to <u>Hughes Aircraft Co.</u>, 525 U.S. at 443-45 (1999) and other Supreme Court precedent in arguing that designing a plan is the function of a "settlor" and does not implicate fiduciary duties under ERISA. Plaintiffs

22

respond that ERISA's own provisions, e.g. § 402(a)/29 U.S.C. § 1102(a); § 403(a)/§ 1103(a); § 3(21)(A)/§ 1002(21)(A) addressing fiduciary functions and duties, preclude the possibility that a Plan asset could have been managed or disposed of by a non-fiduciary settlor.  Furthermore, plaintiffs contend, defendants concede that Plan contributions made by the employers were made in a fund that consisted *primarily*, not exclusively, of CMS stock, and that this left the Plan administrator, inside director and employer named Fiduciaries with significant discretion to manage the Plan assets. Plaintiffs also argue that even if the Plan contained absolute requirements, defendants would have been obligated pursuant to 29 U.S.C. § 1104(a)(1)(D) to ignore the Plan to the extent any such term required them to act imprudently, citing Central States Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 568 (1985) and Sixth Circuit precedent.

Defendants then argue, citing cases including Grindstaff v. Green, 133 F.3d 416, 424 (6th Cir. 1998) that the caselaw is well settled that a defendant "does not act in a fiduciary capacity when deciding to amend or terminate an ERISA benefits plan." Therefore, defendants contend, since they had no duty to amend the Plan's investment options, they could have no duty to preclude employees' investment in CMS stock.  In a similar vein, defendants next assert that ERISA requires that a fiduciary follow the Plan terms unless to do so would contravene ERISA, and that any departure from the terms of the Plan would have amounted to a de facto Plan amendment, which is not the role of a fiduciary.  Cases cited by defendants for this proposition include Hunter, 220 F.3d at 721.  The movants further argue that fiduciaries who invest assets in employer stock in accordance with Plan documents are therefore entitled to a presumption that they

23

acted consistently with ERISA in making such a decision. They cite to <u>Kuper</u>, 66 F.3d at 1459 (citing <u>Moench v. Robertson</u>. 62 F.3d 553 (3rd Cir. 1995)), following their assertion that in order to "rebut the presumption." the plaintiff must show that an ERISA fiduciary could not have had a reasonable belief that drafters of a Plan would have intended for the fiduciary to continue to invest in employer stock[10].

Regarding these arguments, as discussed above, the court is in agreement that to the extent this claim alleges breach of fiduciary duty for failure to amend the terms of the Plan itself, such claims are dismissed. However, also as stated above, the court is not convinced that plaintiffs' claims concerning the management of Plan assets end there, as defendants seem to suggest. Rather, as plaintiffs point out, the Plan Administrators are alleged to have "exercised authority and control over Plan assets by advising the Plan Committees with regard to performance of the Plan's investments and investment managers, selecting Plan investment options, and ensuring that Plan assets were prudently managed and protected" (Plaintiffs' response brief, p. 17 (citing ACC, ¶¶ 20-21, 44-45). Furthermore, the Plan reserved broad management and administrative powers for the Employers, who chose and directed the trustee under the Plan, and made incentive and matching contributions to the Plan in the form of CMS stock and/or, under the terms of both Plans, cash or temporary investments. The Sixth Circuit has held that such discretion creates the potential for fiduciary liability. <u>Kuper</u>, 66 F.3d at 1459. The court will not dismiss on these arguments.

---

[10] Concerning this argument, the court notes its agreement that it can be overcome by a showing that a prudent fiduciary would have made a different investment decision. <u>Kuper</u>, 66 F.3d at 1459, and that this argument cannot carry a motion to dismiss made under Fed. R. Civ. P. 12(b)(6).

Defendants also discuss Congress' encouragement of Plans that invest in employer stock, citing Donovan v. Cunningham, 716 F.2d 1455, 1458 (5th Cir. 1983), and argue that such Plan investments are not improper.  Their final two arguments in this section of the motion are that liability can not be imposed on any of these defendants for following the participants' investment directives, as the Plan gave participants a variety of investment fund choices for the Savings Plan. They argue defendants could not have obtained inside information about CMS' financial dealings and lawfully used such information to benefit Plan participants.  Defendants argue that such directives would have constituted "tipping," and that an ERISA fiduciary can not be required to violate securities laws in an attempt to fulfill ERISA fiduciary duties, citing to Hull v. Policy Management Sys. Corp., 2001 U.S.Dist. LEXIS 22343 *26 (D.S.C. Feb. 9, 2001) in support of this idea.

Concerning these arguments, the court recognizes that certain exemptions exist in the law for ESOPs under ERISA, but notes that only a portion of the Plan could fall within this, and that even as to that portion, a fiduciary retains the general responsibilities set forth in § 1104.  Kuper, 66 F.3d at 1458. Turning to the argument that liability cannot exist for following the directions of the participants, the court finds that defendants have mischaracterized the ACC's allegations to an extent. The claim is not that defendants failed to give investment advice, but that defendants breached fiduciary duties by failing to take action through other measures short of amending the Plan in order to protect participants' assets. Finally, concerning the insider trading argument, the court agrees with plaintiffs that the Hull matter is not necessarily analogous to this case, where the plaintiffs had not alleged that fiduciaries actually

25

disseminated the false information, Hull at *9, and that duties owed under ERISA can

exist in harmony with those owed under securities laws.  Judge Cohn applied a

thoughtful analysis to this issue presented by the Hull, McKesson and WorldCom

opinions, emphasizing the following language from the WorldCom decision:

> Those who prepare and sign SEC filings do not become ERISA fiduciaries
> through those acts, and consequently, do not violate ERISA if the filings
> contain misrepresentations.  Those who are ERISA fiduciaries, however,
> cannot in violation of their fiduciary obligations disseminate false
> information to plan participants, including false information contained in
> SEC filings.

Worldcom, 2003 WL 21385870 at *14-15.  That decision also pointed out that

> [i]n any event, the existence of duties under one federal statute does not,
> absent express congressional intent to the contrary, preclude the
> imposition of overlapping duties under another federal statutory regime.

Id., citing United States v. Sforza, 326 F.3d 107, 111 (2nd Cir. 2003).  This court shares

the opinion of Judge Cohn in the Rankin matter that the securities law does not bar any

portion of the plaintiffs' claims asserted in Count II.

5.  Dismissal of Count II's Claims of Failure to Provide Information to Participants

Defendants contend that they did not have a duty under ERISA to disclose any

inside information they might have learned about CMS which might have impacted

CMS stock values.  Defendants point out that the Plan itself precludes the named

fiduciaries' representatives from making recommendations as to the investment options

given by the Plan.  Plan, § 5.5(a).  Even more generally, defendants assert, Plan

participants "had the same right and same access to public corporate financial

information as any of the other shareholders of CMS stock," and that any claim

concerning non-disclosure by the company of round-trip trading practices is properly litigated via the pending securities class action.

Defendants' second argument concerning Count II addresses plaintiffs' allegations that defendants breached fiduciary duties by conveying misleading information about the soundness of CMS stock and the prudence of investing in that security, through the "SEC and other filings...in the Summary Plan Description, and by directing participants to review the reports in order to educate themselves regarding the risks and benefits of investing in CMS stock in the Plan" (ACC, ¶ 70). Defendants contend that plaintiffs have made only conclusory allegations which do not support a breach of fiduciary duty claim, because the "two hat" rule means that communication of business information through SEC filings does not implicate a fiduciary duty (citing Akers, 71 F.3d at 231), and because the defendants, in making such communication, were specifically satisfying securities law requirements, i.e. 17 C.F.R. § 230.428(b). In fact, defendants point out, the CMS Summary Plan Description stated exactly that: that it was incorporating SEC and other filings to comply with Securities Act requirements (Plan, p. 21). Finally, defendants underscore their contention that these claims are actually "repackaged securities fraud claims," for which plaintiffs have an adequate remedy in the pending securities litigation.

These arguments made by defendants, following the theme set forth in the arguments on Count I, do not convince the court that plaintiffs have failed to state a claim in Count II. The court agrees that the ACC has not alleged that defendants had any duty to provide the participants with investment advice, but that its allegations concern the fiduciary duties surrounding disclosure found in ERISA; i.e. that they could

27

not mislead or fail to disclose information that they knew or should have known would be needed by participants to prevent losses. Absent factual development, these claims survive defendants' motion to dismiss.

6.  Dismissal of Count III Claims of Failure to Monitor the Plan's Fiduciaries

Here, defendants assert that plaintiffs do not have a cognizable claim against the Employer or Inside Director defendants for failure to monitor other fiduciaries, citing the McKesson case, 2002 U.S. Dist. LEXIS 19473, *51-52 (Sept. 30, 2002).  The court in that matter did dismiss the duty to monitor claims made against corporate directors, stating that the claims were "wholly conclusory."  McKesson, 2002 U.S. Dist. LEXIS 19473, * 52  That example is not of any assistance here.  Furthermore, the court notes that the McKesson court granted plaintiffs leave to amend to correct their deficiencies in pleading that claim.  In contrast, plaintiffs have cited to a number of district and circuit court cases addressing claims of breach of the duty to monitor, stating that these defendants

> had the obligation to take appropriate action if their appointee fiduciaries were not adequately protecting the interests of the Plan's participants and beneficiaries, particularly if their own failure to provide critical information contributed to their appointees' mismanagement.

Plaintiffs' response brief, p. 37.  The recent In re Enron decision considered the Seventh Circuit case of Leigh v. Engle, 727 F.2d 113, 133-35 (7th Cir. 1984) in its discussion of the duty to monitor appointed fiduciaries:

> As the fiduciaries responsible for selecting and retaining their close business associates as plan administrators, Engle and Libco had a duty to monitor appropriately the administrators' actions.  Engle and Libco could not abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management of the trust.  Engle and Libco were obliged to operate with appropriate

28

prudence and reasonableness in overseeing their appointees'
management of the trust.

In re Enron Corp., 2003 WL 22245394, *14 (S.D. Tex.) (quoting Leigh, 727 F.2d at 134-

45).

Plaintiffs' claims of the breach of the duty to monitor are found in the ACC, at ¶¶

67, 102-108. The claims are not limited to actions taken by the Plan administrator,

whom the court notes was appointed by the Board of Consumers pursuant to Plan

provisions (Plan, § 11.1). Rather, the allegations are that the

> Employer Named Fiduciaries and the Insider Director Defendants
> breached their fiduciary duties by failing to adequately monitor the Plan
> Committees, the Plan Administrators, and other persons, if any, to whom
> management of Plan assets was delegated. These Defendants knew or
> should have known that the other fiduciaries were imprudently allowing
> the Plan to continue offering CMS stock as an investment option and
> investing Plan assets in CMS stock when it no longer was prudent to do
> so, yet failed to take action to protect the participants from the
> consequences of the other fiduciaries' failures.

ACC, ¶ 104. By virtue of the status of this litigation, development of what fiduciary

duties were delegated by defendants has not occurred. However, as noted repeatedly

herein, the administrative and management responsibilities reserved to the Employers

are very broad. It is the court's determination that plaintiffs have successfully stated a

claim for breach of the duty to monitor pursuant to 29 U.S.C. §§ 1104(a)(1)(A)-(D),

1105.

7. Co-Fiduciary Claims Fail to State a Claim

In a similar vein, defendants assert that plaintiffs' "catch-all co-fiduciary liability

allegations" in the first three counts merely repeat the failure to monitor allegations

made in Count III, and that these claims should be dismissed for the same reasons

discussed above. Defendants also assert dismissal is appropriate for the reason that the primary failure to monitor claims fail, because a co-fiduciary liability claim cannot succeed where a primary ERISA breach of fiduciary duty claim has not been properly pled. Because the court has addressed these arguments, above, and has allowed the maintenance of the fiduciary liability claims, this portion of the motion will also be denied.

8.  Dismissal of Count IV Because Purchase of CMS Stock was for Adequate Consideration

ACC allegations in Count IV, which asserts claims pursuant to 29 U.S.C. §§ 1106, 1107, state that defendants were not permitted to allow the Plan to acquire CMS stock for more than adequate consideration, and that they violated this provision through their permission of the acquisition of artificially inflated CMS shares. Thus, they claim that the Plan engaged in a prohibited transaction. Defendants claim that plaintiffs do not acknowledge the statutory definition of "adequate consideration," as used in ERISA § 408, 29 U.S.C. § 1008(e). Because "adequate consideration," as used therein, means "the price of the security prevailing on a national securities exchange," 29 U.S.C. § 1002(18), and plaintiffs are in fact alleging it was the *NYSE* price that was inflated, defendants contend that Count IV must be dismissed.

Plaintiffs, in response, agree that the fair market value of a publicly traded security is the price prevailing on a national exchange, and concede that this is the definition set forth in ERISA. However, plaintiffs contend that in a case such as this, where defendants "in fact knew that the national exchange price was artificially inflated by fraud. ERISA does not rule out a claim that more than adequate consideration was

30

paid" (Plaintiff's response brief, p. 40). Plaintiffs' have supported their contention with no legal authority.

The court agrees with defendants' reply brief that the cases cited by plaintiffs in their response do not support their contention that "adequate consideration," as that term is used in ERISA and defined at 29 U.S.C. § 1002(18), may have an alternative definition under certain circumstances. It is therefore the court's determination that in this issue under ERISA , "[a]s in any case of statutory construction, our analysis begins with the language of the statute ... And where the statutory language provides a clear answer, it ends there as well." Harris Trust and Savings Bank v. Salomon Smith Barney, 530 U.S. 238, 254 (2000), quoting Hughes Aircraft Co., 525 U.S. at 438 (1999). Because no one disputes that a price other than that set by the New York Stock Exchange was paid for shares of CMS stock during time periods relevant hereto, a claim pursuant to 29 U.S.C. § 1106(a) is inappropriate here and the court will dismiss this count.

## CONCLUSION

For the reasons given above, defendants' motion for judicial notice of the 1997 and 2001 Plan documents is GRANTED IN PART and DENIED IN PART, although the court has considered both documents in connection with the instant motion.

Defendants' motions to dismiss are GRANTED IN PART, as to Count I to the extent it is making a claim against defendants for failing to amend the Plan, and as to

31

Count IV in its entirety.  The remaining requests contained in defendants' motions to

dismiss are hereby DENIED.

     IT IS SO ORDERED.

                                           GEORGE CARAM STEEH
                                         United States District Judge

Dated:   MAR 3 1 2004
         Detroit, Michigan

                       **A TRUE COPY**
                 CLERK, U.S. DISTRICT COURT
             EASTERN/DISTRICT OF MICHIGAN

        BY
                                  DEPUTY CLERK