Westlaw.

2004 WL 1039844                                                                                                            Page 1
--- F.3d ---
(Cite as: 2004 WL 1039844 (1st Cir.(R.I.)))

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
First Circuit.

Linda L. LALONDE, et al., Plaintiff, Appellant,
v.
TEXTRON, INC.; Textron Savings Plan; Textron
Savings Plan Committee; Putnam
Fiduciary Trust Company and John Does 1-10,
Defendants, Appellees.
Machelle A. Simon-Grech, et al., Plaintiff,
Appellant,
v.
Textron, Inc.; Textron Savings Plan; Textron
Savings Plan Committee; Putnam
Fiduciary Trust Company and John Does 1-10,
Defendants, Appellees.

Nos. 03-2033, 03-2039.

Heard Jan. 9, 2004.
Decided May 7, 2004.

**Background:** Participants brought class action against employer, employee stock ownership plan (ESOP), ESOP committee, and plan's trustee, alleging violations of Employee Retirement Income Security Act (**ERISA**) in connection with ESOP's investment in employer's stock as stock fell in value. The United States District Court for The District of Rhode Island, William E. Smith, J., 270 F.Supp.2d 272, dismissed action. Participants appealed.

**Holdings:** The Court of Appeals, Howard, Circuit Judge, held that:
(1) participants stated cause of action against employer for breach of fiduciary duty, and
(2) trustee did not breach its fiduciary duty under **ERISA**.

Affirmed in part; vacated in part.

**[1] Pensions** ☞48

296k48 Most Cited Cases

Employee stock ownership plan (ESOP) participants stated cause of action in complaint against employer for breach of fiduciary duty in violation of **ERISA**, by alleging that ESOP continued to invest heavily in employer's stock as it fell in value, and that employer artificially inflated its stock price by concealing disparate problems throughout employer's segments and their adverse effect on employer which were subject of federal securities lawsuit by shareholders against employer and certain of its officers and directors. 29 U.S.C.A. § 1104(a); Fed.Rules Civ.Proc.Rule 8(a), 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☞1773
170Ak1773 Most Cited Cases

A complaint should be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☞1771
170Ak1771 Most Cited Cases

Whether the odds of plaintiffs succeeding on their claims are very long is not the test for whether the plaintiffs have stated a cause of action in their complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Pensions** ☞48
296k48 Most Cited Cases

Even if employee stock ownership plan (ESOP) trustee was not directed fiduciary, and thus was not shielded from liability for following directives in plan documents, trustee did not breach its fiduciary duty under **ERISA** in connection with ESOP's heavy investment in employer's stock as stock fell in value, where trustee had no knowledge of any malfeasance within employer, but, at most, learned

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1039844
--- F.3d ---
(Cite as: 2004 WL 1039844 (1st Cir.(R.I.)))

Page 2

only as events were unfolding that employer's stock price and profits were declining and that employer was undergoing restructuring. 29 U.S.C. §§ 1103(a)(1), 1104(a).

[5] Federal Courts ⇒714
170Bk714 Most Cited Cases

Dismissal of claims under ERISA's anti-inurement provision for failure to state claim would be affirmed, where appellate attacks on dismissal were set forth in a few sentences, appellant sought only to differentiate facts of instant case from those of cases relied upon by district court, and appellant made no effort to explain how alleged scheme caused plan assets to inure to benefit of employer. 29 U.S.C.A. § 1103(c)(1); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Appeal from the United States District Court for The District of Rhode Island, William E. Smith, U.S. District Judge.

Lee Squitieri, with whom Squitieri & Fearon, LLP, David J. Strachman, McIntyre, Tate, Lynch & Holt, LLP, Charles J. Piven, Law Offices of Charles Piven P.A., Joe R. Whatley, Jr., Whatley Drake LLC, Kenneth A. Wexler, and The Wexler Firm, were on brief, for appellants.

Karl G. Nelson, with whom William J. Kilberg, Mitchell A. Karlan, Gibson, Dunn & Crutcher LLP, John A. Tarantino, Paul V. Curcio, and Adler, Pollock & Sheehan P.C., were on brief, for Textron Inc., Textron Savings Plan, and Textron Savings Plan Committee.

James S. Dittmar, P.C., with whom James O. Fleckner, John J. Cleary, P.C. (Of Counsel), Daniel P. Condon (Of Counsel), and Goodwin Procter, LLP, were on brief, for Putnam Fiduciary Trust Company.

Before TORRUELLA, LOURIE [FN*] and HOWARD, Circuit Judges.

HOWARD, Circuit Judge.

*1 Linda L. Lalonde and Machelle A. Simon-Grech, acting on behalf of a putative class of participants in and beneficiaries of an employee stock ownership plan ("ESOP") known as the Textron Savings Plan, brought lawsuits (that were eventually consolidated) against the plan; Textron, Inc. (the plan's sponsor); the Textron executives who allegedly administered the plan (the "Textron Savings Plan Committee"); and the plan's trustee, the Putnam Fiduciary Trust Company. Insofar as is relevant, [FN1] the operative complaint asserts that, between January 1, 2000, and December 31, 2001, defendants violated the Employee Retirement Income Security Act (ERISA) by breaching fiduciary duties owed to the class, see 29 U.S.C. § 1104(a), and by violating ERISA's anti-inurement provision, see 29 U.S.C. § 1103(c)(1). [FN2] Plaintiffs seek to remedy these statutory lapses through ERISA's enforcement provisions, 29 U.S.C. § 1132(a)(1) and (3), which authorize certain actions by plan participants and beneficiaries.

Throughout the class period, defendants directed 50% of employee contributions and 100% of employer matching contributions [FN3] into a stock fund that held only Textron common stock. Plaintiffs claim that, in investing so much of the class's funds in Textron stock during the class period, defendants violated duties of loyalty owed to the class and acted in an unlawfully self-aggrandizing manner because defendants knew or had reason to know that Textron faced troubles that were certain to cause (and did in fact cause) a significant decline in the value of its stock. In support of these claims, plaintiffs allege (with varying degrees of specificity) that, during the class period, defendants were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A); Textron's earnings per share declined by over 70%; Textron initiated a restructuring that was expected to culminate in the termination of over 10% of its workforce; Textron artificially inflated the price of its stock by concealing internal problems that led to its lost earnings and restructuring (malfeasance that was alleged to have been the subject of a federal securities lawsuit brought by Textron's shareholders); and Textron common stock significantly underperformed in comparison to the market as a whole (measured in terms of the Standard & Poor's 500) and Textron's peer group. Despite this bleak scenario and in dereliction of their duties, plaintiffs say, defendants continued to fund the Textron stock fund and prohibited the class

2004 WL 1039844
--- F.3d ---
(Cite as: 2004 WL 1039844 (1st Cir.(R.I.)))

Page 3

from diversifying its retirement accounts. [FN4]

Defendants elected to challenge these claims under Fed.R.Civ.P. 12(b)(6). In support of their arguments that the claims were not viable, defendants asserted that plaintiffs had pleaded insufficient facts to establish that any one of them was an **ERISA** fiduciary and/or that any one of them breached any fiduciary duties owed to the class. [FN5] Putnam additionally argued that, as a so-called "directed fiduciary," see 29 U.S.C. § 1103(a)(1), it lacked the investment discretion that must be found to have been abused if a viable breach of fiduciary duty claim is to lie. Central to defendants' arguments was the fact that the plan was an ESOP and, as such, designed to invest primarily in qualifying employer securities. See 26 U.S.C. § 4975(e)(7)(A); 29 U.S.C. § 1107(d)(6)(A). In essence, defendants' pleading rhetorically asked, how can defendants be found to have violated **ERISA** in connection with the Textron ESOP when they did nothing more than what Congress contemplated would happen when an employer establishes an ESOP?

*2 In a thorough opinion and order, the district court granted defendants' motions to dismiss. With respect to the breach of fiduciary duty claims against the Textron defendants, the court adopted the reasoning of *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995), and *Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir .1995), and held that an ESOP fiduciary [FN6] "is entitled to a presumption that its decision to remain invested in employer securities was reasonable." 270 F.Supp.2d at 279. "Accordingly," the court continued, "in order to state a viable claim, Plaintiffs must plead facts that, if proven at trial, would establish that [the Textron defendants] abused their discretion in failing to diversify Textron stock during the years 2000 and 2001." *Id.*

In defining the boundaries of the Textron defendants' discretion, the district court attempted to reconcile Congress's concern that **ERISA**-plan fiduciaries must always act in the interests of plan beneficiaries with Congress's endorsement of employee stock ownership through the ESOP mechanism. See *id.* at 278-79. [FN7] In doing so, the district court looked to *Moench, Kuper,* and *Wright v. Oregon Metallurgical Corp.,* 222 F.Supp.2d 1224, 1233-34 (D.Or.2002), aff'd 360 F.3d 1090 (9th Cir.2004), all of which grappled with this same problem. See 270 F.Supp.2d at 280. Building from the facts and holdings of these cases, the court concluded that, in exercising its discretion to continue purchasing company stock, an ESOP fiduciary enjoys a presumption of reasonableness that "may be overcome when a precipitous decline in the employer's stock is combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Id.* The court then granted the Textron defendants' motion to dismiss because "[t]his is not one of those cases." *Id.* In support of its ruling, the court stated that the complaint had alleged only a drop in stock price, a decline in corporate profits, and a restructuring of the company during the class period. See *id.* The court also speculated that, had the Textron defendants decided not to remain fully invested in Textron stock per the terms of the plan, they might have triggered an even steeper sell-off and/or invited a lawsuit when the stock later appreciated. See *id.*

Although this line of reasoning applies with equal force to the breach of fiduciary duty claims against Putnam, the district court also went on to analyze whether Putnam was a "directed fiduciary" within the meaning of 29 U.S.C. § 1103(a)(1). See *id.* at 280-82. Following the course charted in *Beddall,* 137 F.3d at 19-21, the court parsed the plan documents and concluded that Putnam was a directed fiduciary as a matter of law. See 270 F.Supp.2d at 281-82. As such, the court reasoned, Putnam lacked the discretionary authority to do what plaintiffs say it should have done: ignore the directions of the plan administrator to keep investing (and to remain invested in) Textron stock. See *id.* at 282. The court did not, however, go on to discuss plaintiffs' alternative argument that, even if Putnam were a directed trustee, it still could be held to have violated 29 U.S.C. 1103(a)(1) if it followed directions from the Textron defendants that were "contrary to [**ERISA**]." *Id.*

*3 With respect to plaintiffs' anti-inurement claims, the district court granted Textron's motion to dismiss on the basis of a line of cases holding that 29 U.S.C. § 1103(c)(1) "does not prevent an employer from enjoying indirect benefits associated with plan investment decisions." *Id.* at 284 (collecting cases). The court granted Putnam's motion on the basis of its prior ruling that Putnam lacked discretion with respect to investment

decisions and therefore was not a fiduciary subject to liability under **ERISA's** anti-inurement provision. *Id.* at 284 n. 9.

On appeal, plaintiffs contend that the district court erroneously scrutinized their allegations as if defendants had moved not to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), but rather for summary judgment under Fed.R.Civ.P. 56. In pressing this claim, plaintiffs make a subsidiary argument that the court defined an ESOP fiduciary's duty too narrowly when it stated that a discontinuation of plan funding is required only where there is a precipitous decline in the value of the company's stock combined with evidence of an impending collapse or serious internal mismanagement. [FN8] Textron responds by suggesting in a footnote that the court's formulation of an ESOP fiduciary's duty "is not ... adequately deferential to Congress's intent to foster ESOP investment in employer stock," [FN9] but otherwise is content to defend the court's dismissal under the rule the court derived from *Moench, Kuper,* and *Wright.*

We turn first to plaintiffs' breach of fiduciary duty claims against Textron. As set forth above, the district court concluded that the allegations in the complaint (and the reasonable inferences they give rise to) were insufficient because the facts alleged--declines in stock price and corporate profits and a significant corporate restructuring--never could support a finding that the *Moench/Kuper/Wright* rule had been satisfied. *See Lalonde,* 270 F.Supp.2d at 280. As an initial matter, we share the parties' concerns about the court's distillation of the breach of fiduciary standard into the more specific decisional principle extracted from *Moench, Kuper,* and *Wright* and applied to plaintiffs' pleading. Because the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform, *see supra* n. 9, we believe that we would run a very high risk of error were we to lay down a hard- and-fast rule (or to endorse the district court's rule) based only on the statute's text and history, the sparse pleadings, and the few and discordant judicial decisions discussing the issue we face. Under the circumstances, further record development--and particularly input from those with expertise in the arcane area of the law where **ERISA's** ESOP provisions intersect with its fiduciary duty requirements--seems to us essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context. *Cf. Doe v. Walker,* 193 F.3d 42, 46 (1st Cir.1999) (vacating a Fed.R.Civ.P. 12(b)(6) dismissal on an issue with "important social and moral implications" and with an undeveloped factual background "in part because further facts may make it unnecessary to decide the hard case but also because the facts are likely to contribute to a more sensitive assessment of what the law 'is' (which, absent decisive precedent, means what it 'should be')").

*4 [1][2] In any event, we believe that the breach of fiduciary duty judgment in favor of the Textron defendants cannot withstand conventional Fed.R.Civ.P. 12(b)(6) scrutiny. A complaint should be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also id.* at 511 ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (internal quotation marks omitted)). Here, the district court's analysis, while perhaps convincing on its own terms, failed to take account of plaintiffs' allegation that, during the period identified in the complaint, Textron artificially inflated its stock price by concealing "the disparate problems throughout Textron's segments and their adverse effect on Textron which are the subject of a federal securities lawsuit by shareholders against Textron and certain of its officers and directors." While this allegation is not terribly specific, Textron surely is aware of the nature of the charges it faces in the separate lawsuit. [FN10] The allegation is thus sufficient to play its part in effectuating the purposes of Fed.R.Civ.P. 8(a): to give Textron "fair notice of what [plaintiffs'] claim is and the grounds upon which it rests." *Id.* at 512 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (internal quotation marks omitted)). And, when combined with the other allegations, it is sufficient to clear the Rule 12(b)(6) hurdle.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Consider, for example, a (purely hypothetical) scenario under which plaintiffs unearth during discovery documents showing that, during the class period, the Textron officials responsible for administration of the ESOP were concerned that Textron was not going to survive its downsizing and wanted the plan documents to be amended so as to keep their employees from investing in a dying venture. Consider further a scenario under which the plaintiffs uncover evidence that these officials were dissuaded from so acting by higher-ups concerned about sustaining the company's stock price until stock options that they held could vest. Such evidence certainly would be entirely consistent with plaintiffs' allegations. Moreover, it might well be sufficient (much would depend on the nature of the additional factual development to which we previously alluded) to support a finding that the Textron defendants had breached their fiduciary duty to the class.

[3] The odds of plaintiffs succeeding on their breach of fiduciary duty claims against the Textron defendants might be very long, but "that is not the test." *Swierkiewicz,* 534 U.S. at 515 (quoting *Scheuer,* 416 U.S. at 236) (internal quotation marks omitted). Accordingly, we shall vacate the judgment in favor of the Textron defendants and remand for further proceedings consistent with this opinion.

*5 [4][5] Plaintiffs' breach of fiduciary duty claims against Putnam, and their anti-inurement claims against all defendants, stand on different footing. Even if we were to assume *arguendo* that the district court erred in concluding that Putnam was a directed fiduciary and that directed fiduciaries are shielded from liability for following the directives in the plan documents, there is absolutely nothing in the complaint which permits an inference that Putnam abused any discretion it might have had. Putnam is not alleged to have knowledge of any malfeasance within Textron; it is alleged only to have learned (as the events were unfolding) that Textron's stock price and profits were declining and that the company was undergoing a restructuring. As the district court aptly observed, this simply is not enough to ground a finding that Putnam violated any duties it might have owed to the class. It would subvert the purposes of **ERISA** to permit lawsuits against plan fiduciaries (again, assuming that Putnam is a plan fiduciary) every time a company's fortunes took a relatively unexceptional turn for the worse. We therefore decline to upset the judgment in favor of Putnam on plaintiff's breach of fiduciary duty claims. So too do we decline to upset the judgments in favor of all defendants on plaintiffs' anti-inurement claims, the appellate attacks on which are set forth in a few sentences which seek only to differentiate the facts of this case from those of the cases relied upon by the district court and which make no effort at all to explain how the scheme alleged caused plan assets to inure to the benefit of Textron itself. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990).

***Affirmed in part; vacated in part.*** No costs.

STATUTORY APPENDIX
1. 29 U.S.C. § 1104(a) states:

(a) Prudent man standard of care
 (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
 (2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).
*6 2. In relevant part, 29 U.S.C. § 1103(c)(1)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1039844
--- F.3d ---
(Cite as: 2004 WL 1039844 (1st Cir.(R.I.)))

Page 6

states:
  [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
3. In relevant part, 29 U.S.C. § 1002(21)(A) states:
  [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
4. In relevant part, 29 U.S.C. § 1103(a) states:
  (a) Benefit plan assets to be held in trust; authority of trustees
  [A]ll assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument ... or appointed by a person who is a named fiduciary, and upon acceptance being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that--
  (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter....
5. In relevant part, 26 U.S.C. § 4975(e)(7)(A) states:
  The term "employee stock ownership plan" means a defined contribution plan--
  (A) which is a stock bonus plan which is qualified, or a stock bonus plan and a money purchase plan both of which are qualified under section 401(a) [of title 26] and which are designed to invest primarily in qualifying employer securities....
6. In relevant part, 29 U.S.C. § 1107(d)(6)(A) states:
  The term "employee stock ownership plan" means an individual account plan--
  (A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of title 26, and which is designed to invest primarily in qualifying employer securities....

FN* Of the Federal Circuit, sitting by designation.

FN1. We confine ourselves to essentials in setting the stage for our discussion of the issues in this appeal. Readers interested in greater detail may consult the district court's published opinion. See Lalonde v. Textron, Inc., 270 F.Supp.2d 272 (D.R.I.2003).

FN2. Relevant statutory provisions are reproduced in a statutory appendix to this opinion in the order in which we cite them.

FN3. Textron contributed $0.50 or an equivalent amount of Textron stock for each $1.00 an employee contributed.

FN4. Defendants lifted the prohibition on diversification on January 1, 2002 (the date that corresponds with the closing of the class period), at which point approximately 20% of the plan's 35,000 or so participants "almost immediately" (in the words of the complaint) divested themselves of some or all of their Textron stock.

FN5. Defendants attached to their motions and relied upon in their arguments the summary plan description, the plan documents, and the trust and service agreements between Textron and Putnam. The district court treated these documents as merged into the complaint because the complaint's allegations depended on them and plaintiffs made a number of references

to them at oral argument on defendants' motions. *See Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998) (documents on which a complaint depends and to which it refers "merge[ ] into the pleadings and the trial court can review [them] in deciding [a Rule 12(b)(6) ] motion"). Plaintiffs do not argue that the court erred in considering these documents or dispute that these documents are properly before us for purposes of our review.

FN6. The district court decided that factual issues precluded dismissal under Rule 12(b)(6) on the ground that the Textron defendants were not fiduciaries of the class with respect to the conduct in question. *See* 270 F.Supp.2d at 277 n. 4. The Textron defendants do not argue that the court's ruling was erroneous in this respect except to suggest that there is no such thing as the Textron Savings Plan Committee and to contend that the plan is not a proper defendant because (1) there are no allegations that the plan acted as a fiduciary with respect to its own assets, and (2) plaintiffs are seeking relief on the plan's behalf (and not from the plan). The point about the Textron Savings Plan Committee is not susceptible to resolution on the pleadings and may be taken up following the limited remand that we order at the conclusion of this opinion. The point about the plan not being a proper defendant is effectively conceded by the plaintiffs, who make no response to it in their reply brief. We therefore affirm the dismissal of plaintiffs' breach of fiduciary duty and anti-inurement claims against the plan. Henceforth, the phrase "the Textron defendants" should be understood to encompass only Textron and the Textron Savings Plan Committee.

FN7. The court explained the difficulty an ESOP fiduciary faces in performing this reconciliation:
An ESOP is an **ERISA** plan that invests primarily in "qualifying employer securities," which typically are shares of stock in the employer that creates the plan. 29 U.S.C. § 1107(d)(6)(A). In creating ESOPs, Congress sought to develop plans that would function as both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership of a company. As a result of these dual purposes, ESOPs are not intended to guarantee retirement funds, and they place employee retirement assets at a greater risk than the typical diversified, **ERISA**- regulated plan....
Nonetheless, ESOPs are governed by **ERISA's** requirements for fiduciaries. An **ERISA** fiduciary must employ within the defined domain "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." [29 U.S.C. § 1104(a)(1)(B) ]. If a fiduciary fails to meet these stringent requirements, it may be held liable for losses to the plan that result from breaches of that duty. 29 U.S.C. § 1109(a). Consequently, ESOP fiduciaries are in the unique situation of having to facilitate the ESOP goal of employee ownership, while at the same time being bound by **ERISA's** rigorous fiduciary obligations.
*Id.* at 278 (citations and internal quotation marks omitted).

FN8. Plaintiffs also take issue with the court's conclusions that Putnam lacked discretion with respect to the funds and that the absence of such discretion automatically rendered non-viable their breach of fiduciary duty and anti-inurement claims. We do not reach these arguments (or the responses to them) because, as we shall explain, plaintiffs failed to allege facts sufficient to ground a judgment in their favor even if disputes about the plan documents and the law were resolved in their favor.

FN9. The Ninth Circuit recently expressed sympathy for Textron's position in its

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1039844
--- F.3d ---
(Cite as: 2004 WL 1039844 (1st Cir.(R.I.)))

Page 8

opinion affirming the *Wright* decision that was relied upon by the district court. *See* 360 F.3d at 1097-98 (questioning in dicta whether *Moench* and *Kuper* undermine congressional purpose in holding that ESOP fiduciaries sometimes must diversify plan investments); *id.* at 1098 n. 4 (suggesting in dicta that *Moench* and *Kuper* are "problematic [under the federal securities laws] to the extent that [they] inadvertently encourage[ ] corporate officers to utilize inside information for the exclusive benefit of the corporation and its employees").

FN10. If it were not, the proper response should have been a motion for a more definite statement under Fed.R.Civ.P. 12(e) and not a motion for dismissal on the merits. *See Swierkiewicz,* 534 U.S. at 514.

2004 WL 1039844 (1st Cir.(R.I.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works