**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION | ) Master File No. 02-CV-1138 (AWT) |
| | ) <u>CLASS ACTION</u> |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| This Document Relates to: | ) |
| | **DECEMBER 3, 2004** |
| ALL ACTIONS | ) |
| | ) |
| | ) |
| | ) |

<u>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO**</u>

**<u>DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED CLASS</u>**

**<u>ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT ...........................................................................................................................4

    A.    PLAINTIFFS PROPERLY ALLEGE THAT THE DEFENDANT FIDUCIARIES WERE RESPONSIBLE FOR THE PRUDENT INVESTMENT OF ALL PLAN ASSETS, INCLUDING XEROX STOCK. ....................................4

    B.    PLAINTIFFS HAVE STATED A CLAIM FOR THE IMPRUDENT INVESTMENT OF PLAN ASSETS.................7

        1.    *The Plans Did Not Require Imprudent Investment in Xerox Stock.* ....................................7

        2.    *Defendants' "Participant Direction" Argument Also Fails*........................................10

        3.    *Defendants' "Insider Trading" Argument Fails As Well.* ........................................11

    C.    PLAINTIFFS HAVE STATED A CLAIM THAT DEFENDANTS BREACHED THEIR DUTY TO MONITOR, STANDING IDLY BY WHILE THE POTENTIAL FOR DISASTER MOUNTED.........................................14

    D.    PLAINTIFFS HAVE STATED A CLAIM FOR DEFENDANTS' FAILURE TO PROVIDE COMPLETE AND ACCURATE INFORMATION CONCERNING XEROX STOCK AS A RETIREMENT INVESTMENT OPTION. ............16

    E.    PLAINTIFFS HAVE PROPERLY STATED A CONFLICT OF INTEREST CLAIM. ........................................18

    F.    PLAINTIFFS SEEK PLAN-WIDE RELIEF AVAILABLE UNDER ERISA §§ 502(A)(2)................................20

    G.    THE COMPLAINT PROPERLY PLEADS THE FIDUCIARY STATUS OF, AND FIDUCIARY BREACHES BY, ALL DEFENDANTS.......................................................................................................22

        1.    *Plaintiffs have Stated Claims Against Xerox.*........................................................22

        2.    *Plaintiffs Have Stated Fiduciary Claims Against All Individual Defendants.* ....................................23

III. CONCLUSION.......................................................................................................................24

iii

# TABLE OF AUTHORITIES

## CASES

*Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985)...................................................................................................................................9

*Furstenau v. AT&T Corporation*, No. 02-5409 (D.N.J. Sept. 2, 2004) .......................................21

*Howell v. Motorola, Inc.,* 337 F. Supp. 2d 1079 (N.D. Ill. 2004 ) ...............................................2

*Hull v. Policy Mgmt. Sys. Corp.*, No. 00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) and *McKesson*, 2002 WL 31431588, have been flatly rejected by the courts that have since carefully ..........................14

*In re ADC Telecomm., Inc., ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) passim

*In re AEP ERISA Litig.*, 327 F. Supp. 2d 812 (S.D. Ohio 2004)...........................................passim

*In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004) ...............................passim

*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003) .......................................3

*In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004)........................................2

*In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 284 F. Supp. 2d 511 (S.D. Tex. 2003)................passim

*In re Honeywell Int'l ERISA Litig.,*  No. 03-1214 (D.N.J. June 14, 2004) .............................passim

*Kuper v. Iovenko*, 66 F.3d 1447, 1459, 1453 (6th Cir. 1995)20*In re La.-Pac. Corp. ERISA Litig.*, No. 02-1023, 2003 WL 21087593 (D. Or. Apr. 24, 2003)..............................................................................3

*In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *5 (N.D. Cal. Sept. 30, 2002).................................................................................................................................7, 14

*In re Qwest Savings and Investment Plan ERISA Litig.*, No. 02-RB-464 (D. Colo. Sept. 24, 2004) ...........21

*In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646 (S.D. Tex. 2004) ................................passim

*In re Schering-Plough Corp. ERISA Litig.*, 2004 WL 1774760 (D.N.J. June 28, 2004) ..........................4, 21

*In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) ....passim

*In re Sprint Corp. ERISA Litig.*, No. 03-2202, 2004 WL 1179371 (D. Kan. May 27, 2004).............2, 15, 16

*In re Sprint Corp. ERISA Litig.*, No. 03-2202, 2004 WL 2182186 (D. Kan. Sept. 24, 2004) ...............passim

*In re Syncor ERISA Litig.*, No. 03-2446 (C.D. Cal. Aug. 24, 2004)...............................2, 13, 14, 22

*In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003)....................................3

*In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...............................passim

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165 (D. Minn. 2004)........passim

*Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121 (D. Mass. 2003)........................................3

*Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004)....................................2, 20, 23, 24

*LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) .......................................................1, 3, 4

*Moench v. Robertson*,62 F.3d 553, 568-71 (3d Cir. 1995)........................................................8

*Nelson v. Brinson Partners, Inc.*, No. 03-C-6446, 2004 WL 178180 (N.D. Ill. Jan. 16, 2004) ...................20

*Pa. Fed'n, Bhd. of Maint. of Way Employees v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan, No. 02-9049*, 2004 WL 228685 (E.D. Pa. Feb. 4, 2004) ....................................................................2

*Pa. Fed'n., Bhd. of Maint. of Way Employees v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan,* No. 02-9049, 2004 WL 2315795 (E.D. Pa. Oct. 12, 2004)....................................................................2, 23

*Rankin v. Rots*, 278 F. Supp. 2d 853 (E.D. Mich. 2003) ...............................................passim

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) .................................................3, 4

*Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003) ...........................................20, 21

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) .......................................3

## STATUTES

29 U.S.C. § 1102(a)(1) ........................................................................................................5
29 U.S.C. § 1104(a)(1)(B) ..................................................................................................8
29 U.S.C. § 1104(a)(1)(D) ..................................................................................................8
29 U.S.C. § 1109 .............................................................................................................20
29 U.S.C. § 1110 ...............................................................................................................5
29 U.S.C. § 1132(a)(3 .....................................................................................................22
ERISA § 402(a)(1) .............................................................................................................5
ERISA § 404(c) .........................................................................................................10, 11
ERISA § 409 ...................................................................................................................20
ERISA § 410 .....................................................................................................................5
ERISA § 502(a)(3) ...........................................................................................................22
Rule 8(a), Fed. R. Civ. P. ................................................................................................4, 5
Rule 12(e) .......................................................................................................................24

# I.  INTRODUCTION

The Defendants in this case – each of whom was an ERISA fiduciary of the Plaintiffs – either caused or did nothing to prevent hundreds of millions of dollars of retirement losses to thousands of Xerox employees and retirees, whose plan assets continued to be invested in Xerox stock long after such an investment had ceased to be prudent.  Recent case law confirms that ERISA allows Plaintiffs to recover their losses from the Xerox Corp. and the other Defendants, and accordingly Plaintiffs' Complaint should not be dismissed.

Throughout the opening and supplemental briefing in this matter, Defendants have insisted that although ERISA requires that pension plans be managed by fiduciaries, the Xerox Plans[1] are somehow devoid of fiduciaries responsible for the Plans' massive investments in Company stock, and that, therefore, Plaintiffs' claims should be dismissed in their entirety.  In the twenty-one months that have passed since Plaintiffs first responded to this remarkable argument, however, courts have overwhelmingly rejected it in a landslide of opinions supporting Plaintiffs' claims. Since Plaintiffs' Opposition was filed on February 28, 2003, rulings on motions to dismiss similar ERISA complaints have been issued by twenty-seven courts, twenty-three of which have sustained the complaints. *LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) ("*LaLonde II*"); *Pa. Fed'n., Bhd. of Maint. of Way Employees v.*

---

[1] Plaintiffs' claims are brought on behalf of the Xerox Corporation Profit Sharing and Savings Plan (the "Salaried Plan") and the Profit Sharing Plan of Xerox Corporation and the Xerographic

1

*Norfolk S. Corp. Thoroughbred Ret. Inv. Plan,* No. 02-9049, 2004 WL 2315795 (E.D.

Pa. Oct. 12, 2004); *In re Sprint Corp. ERISA Litig.*, No. 03-2202, 2004 WL 2182186

(D. Kan. Sept. 24, 2004); *Howell v. Motorola, Inc.,* 337 F. Supp. 2d 1079 (N.D. Ill.

2004 ); *In re Syncor ERISA Litig.*, No. 03-2446 (C.D. Cal. Aug. 24, 2004); *In re AEP

ERISA Litig.*, 327 F. Supp. 2d 812 (S.D. Ohio 2004); *In re ADC Telecomm., Inc.,

ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); *Kling v.

Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132 (D. Mass. 2004); *In re Honeywell Int'l

ERISA Litig.,*  No. 03-1214 (D.N.J. June 14, 2004*); In re Sprint Corp. ERISA Litig.*,

No. 03-2202, 2004 WL 1179371 (D. Kan. May 27, 2004); *In re CMS Energy ERISA

Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004); *Cokenour v. Household Int'l, Inc.*, No.

02-7921, 2004 WL 725973 (N.D. Ill. Mar. 31, 2004); *Hill v. BellSouth Corp.*, 313 F.

Supp. 2d 1361 (N.D. Ga. 2004); *In re Xcel Energy, Inc., Sec., Derivative & ERISA

Litig.*, 312 F. Supp. 2d 1165 (D. Minn. 2004); *In re Dynegy, Inc. ERISA Litig.*, 309 F.

Supp. 2d 861 (S.D. Tex. 2004); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-

8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004); *Pa. Fed'n, Bhd. of Maint. of Way

Employees v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan, No. 02-9049*, 2001 WL

228685 (E.D. Pa. Feb. 4, 2004); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.

Supp. 2d 658 (E.D. Tex. 2004) ("*EDS*"); *In re Reliant Energy ERISA Litig.*, 336 F.

Supp. 2d 646 (S.D. Tex. 2004); *In re Enron Corp. Sec., Derivative, & ERISA Litig.*,

284 F. Supp. 2d 511 (S.D. Tex. 2003); *Rankin v. Rots*, 278 F. Supp. 2d 853 (E.D.

---

Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the

Mich. 2003) ("*Kmart*"); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003); *Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003); *Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121 (D. Mass. 2003); *In re La.-Pac. Corp. ERISA Litig.*, No. 02-1023, 2003 WL 21087593 (D. Or. Apr. 24, 2003).[2]  The remaining four opinions are readily distinguished and offer Defendants no refuge.[3]

These decisions confirm, as Plaintiffs' Opposition also established, that Defendants had well-established fiduciary duties to the Plans' participants, which they breached by (1) failing to prudently and loyally manage the Plans' enormous investments in Xerox stock (Count I); (2) failing to appropriately monitor other fiduciaries in carrying out their ERISA fiduciary responsibilities (Count III); (3) failing to provide complete and accurate information to participants regarding Xerox stock (Count IV); and (4) failing to properly protect the Plans and their participants

---

"Union Plan") (collectively, the "Plans").

[2] *Nelson v. IPALCO Enters., Inc.*, No. 02-0477, 2003 WL 402253 (S.D. Ind. Feb. 13, 2003), which also denies defendants' motion to dismiss, was filed after the date of Xerox Defendants' opening brief but before the date of Plaintiffs' Opposition.

[3] Of the four courts in which motions were granted or sustained, the *LaLonde* case was reversed by the First Circuit on appeal. *LaLonde v. Textron, Inc.*, 270 F. Supp. 2d 272 (D.R.I. 2003), *rev'd*, 369 F.3d 1 (1st Cir. 2004). The second case, *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003), is inapposite. In that case the court found that the accounting irregularities at issue were not material as a matter of law, an argument not even remotely raised by Defendants on the facts here. The third opinion, *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), relies heavily (and erroneously) on the now-reversed district court opinion in *LaLonde*, and fails to address the district court's impropriety in imposing summary judgment standards – a premature application of an evidentiary burden – at the pleading stage. *Wright*, 360 F.2d at 1090, 1098. Lastly, *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204, 2004 WL 1774760 (D.N.J. June 28, 2004), misstates the facts and the law, is currently on appeal, and the Department of Labor has revealed its errors in an amicus brief in favor of the Schering plaintiffs. *See* Brief of Amicus Curiae Elaine L. Chao, Secretary of the United States Department of Labor Supporting the Plaintiffs-Appellants and

and beneficiaries from Defendants' disloyalty and conflicts of interest (Count V).[4]
*See*, Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss
Consolidated Amended Class Action Complaint ("Plaintiffs' Opposition") at 14-30;
Complaint at ¶¶ 146-153, 158-181.

## II.   ARGUMENT

A.   **PLAINTIFFS PROPERLY ALLEGE THAT THE DEFENDANT
FIDUCIARIES WERE RESPONSIBLE FOR THE PRUDENT
INVESTMENT OF ALL PLAN ASSETS, INCLUDING XEROX
STOCK.**

Rule 8(a), Fed. R. Civ. P., provides that a complaint should contain a "short
and plain statement" of the claim.   Recent cases confirm that this is the standard
properly applied on a motion to dismiss ERISA breach of fiduciary duty claims such
as those here.  *Motorola*, 337 F. Supp. 2d at 1088-89; *CMS*, 312 F. Supp. 2d at 909;
*Xcel*, 312 F. Supp. 2d at 1175, 1179; *EDS*, 305 F. Supp. 2d at 664, 672; *Reliant*, 336
F. Supp. 2d at 651-52; *Enron*, 284 F. Supp. 2d at 652-53; *Kmart*, 278 F. Supp. 2d at
866; *Stein*, 270 F. Supp. 2d at 167; *La.-Pac.*, 2003 WL 21087593 at *8; *see also*
Plaintiffs' Opposition at 4-5.   Plaintiffs have more than met the requisite pleading
standard of Rule 8 in alleging Defendants' fiduciary status.

This is especially so in that the recent opinions we now address consistently
reinforce the well-established rule that, under ERISA, fiduciary status is broadly
defined.   *CMS*, 312 F. Supp. 2d at 910, 913-14; *Xcel*, 312 F. Supp. 2d at 1181
("fiduciary status under ERISA is to be construed liberally, consistent with ERISA's
policies and objectives," quoting *Enron*); *Sears*, 2004 WL 407007, at *3-4; *EDS*, 305

---

Requesting Reversal of the District Court's Decision, *In re Schering-Plough Corp. ERISA Litig.*, No.
04-3073 (3d Cir. filed Oct. 20, 2004) ("DOL *Schering-Plough* Brief").

[4] Plaintiffs have stipulated to dismissal of Count II, which they believe is already encompassed within
Count I.  *See* Plaintiffs' Opposition at 20.

F. Supp. 2d at 665; *Enron*, 284 F. Supp. 2d at 544; *see also* Plaintiffs' Opposition at 5-6. They also reiterate that whether a defendant served as a fiduciary is a question of fact, which cannot be resolved on a motion to dismiss. *Xcel*, 312 F. Supp. 2d at 1178-79, 1181; *Sears*, 2004 WL 407007, at *4; *Norfolk S. Corp.*, 2004 WL 228685 at *11 (E.D. Pa. Feb. 4, 2004); *EDS*, 305 F. Supp. 2d at 665.[5] Even allegations of fiduciary status that merely "track the statutory definition of a fiduciary" or plead "boilerplate and conclusory allegations without pleading facts" satisfy Rule 8(a)'s simplified pleading standard. *WorldCom*, 263 F. Supp. 2d at 756, 759-760.

ERISA § 402(a)(1) requires that every ERISA plan "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). *See also* Plaintiffs' Opposition at 5. ERISA § 410 renders any document purporting to relieve a person of ERISA's fiduciary standards ineffective. 29 U.S.C. § 1110.

Defendants argue, however, that because Xerox established the Xerox Stock Fund as an investment alternative for the Plans with participants initially making the decision to invest in Xerox stock, there either are no fiduciaries with respect to the Xerox Stock Fund, or the fiduciaries are absolved of any responsibility for investment therein. *See*, *e.g.,* Memorandum in Support of Motion to Dismiss Consolidated Amended Complaint ("Def. Br.") at 8, 11-13. This is so, Defendants assert, even

---

[5] ERISA company stock cases such as this one present many issues of fact, the resolution of which is premature on a motion to dismiss. *See Sears*, 2004 WL 407007, at *6-8 (finding that issues of loss causation, whether defendants' monitored fiduciaries, and whether certain defendants, based on their status as company officers, knew or should have known of published misrepresentations are questions of fact); *Xcel*, 312 F. Supp. 2d at 1178-1179, 1180-1181 (determinations of fiduciary status, application of evidentiary standards, and the determination of whether a defendant was acting as a fiduciary were factual issues not to be determined on a motion to dismiss); *CMS*, 312 F. Supp. 2d at 909, 916 (the scope of a defendants' fiduciary duties, as well as issues related to plaintiffs' disclosure claim, were entitled to factual development and thus, premature at the motion to dismiss stage.); *Lalonde II*, 369 F.3d at 6 (further factual development was needed on the issue of what constitutes a fiduciary breach); *see also*, Plaintiffs' Opposition at 1, 11-12, 16 n. 18, 17, 27 n. 29.

though the Xerox Stock Fund is an integral part of the Plan, holding enormous sums of retirement dollars. Defendants' interpretation of the Plans is wrong, directly contrary to ERISA, and continues to be rejected by the courts.

The court in the *Kmart* ERISA litigation issued one of the strongest rebukes yet of the "fiduciary-less plan" argument, stating:

> The Plan documents imbue all of the defendants with some degree of authority over the Plan. However, the manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case. *To accept defendants' positions that they are not fiduciaries would mean that there was no one responsible for discretionary decision making. Their position is reminiscent of the "old shell game."*

*Kmart*, 278 F. Supp. 2d at 879 (emphasis added). The *Kmart* Court sustained ERISA claims nearly identical to those brought here in their entirety. *Id.*

The *Kmart* ruling was followed by the *Enron* decision, in which Judge Harmon found that plaintiffs stated ERISA breach of fiduciary and co-fiduciary claims against the Enron fiduciaries for*, inter alia*, (1) imprudently investing Plan assets in Enron stock; (2) failing to disclose truthful and accurate information to participants regarding Enron's financial condition; and (3) failing to monitor fiduciaries and provide them with the information regarding Enron's financial condition that they needed to adequately protect the Plans. *Enron*, 284 F. Supp. 2d at 655, 660-61. In a 331-page decision, the *Enron* Court rejected the same argument that Defendants make here -- that there was no fiduciary responsible because plaintiffs' claims were really an impermissible attack on Plan design. *Id.* at 655.

6

In short, there is no support for the Defendants' argument that the Xerox Plans were designed in a manner that exempts them from ERISA's requirement that all aspects of a plan be watched over by a fiduciary, 29 U.S.C. §1102(a)(1), nor for the Defendants' claim that these Plans "carved out" certain aspects of their operation from ERISA's overriding fiduciary strictures. *See,* 29 U.S.C. §1110. [6]

**B.    PLAINTIFFS HAVE STATED A CLAIM FOR THE IMPRUDENT INVESTMENT OF PLAN ASSETS.**

   **1.    The Plans Did Not Require Imprudent Investment in Xerox Stock.**

While fiduciaries of plans that are authorized to invest in employer securities are to some extent exempt from ERISA's *diversification* requirements, they are not thereby exempt from the *prudence* requirements of ERISA.   Accordingly, under ERISA's prudence requirement, Defendants had a duty to offer and maintain only prudent investment alternatives and to refrain from offering or continuing to offer imprudent alternatives.   Plaintiffs' Opposition at 11, 13-15.   Consequently, even assuming, *arguendo*, that the Plans' language required the fiduciaries to invest in the Xerox Stock Fund,[7] such language had to be disregarded when it became imprudent

---

[6] Defendants will likely attempt, as they have previously, to distinguish the new opinions as based on different underlying plan designs and therefore lacking precedential value.   While certain plans may contain what the defendants characterize as an "ESOP" component for employee matching contributions, the cases cited address plans that also contain a participant-directed component, one of the investment options of which is company stock.   Any attempt by the Xerox Defendants to argue that the "participant-directed" Plans here are somehow exempt from these holdings is wholly unpersuasive.

[7] Under the recent authorities, the language of the Xerox Plans, each of which stated that the fund "shall be invested by the Trustee in the Common Stock of Xerox Corporation, hereafter called 'Xerox Stock' and may hold some cash for administrative purposes," did indeed provide the fiduciaries with the ability to invest in other than company stock through the fund.   *See, e.g., AEP*, 327 F. Supp. 2d at 823; *Sprint*, 2004 WL 1179371, at *8-9 (the fact that the fund was to be invested "primarily" in Company stock provided discretion regarding investment options, as do terms allowing investment in cash or stock at the company's election, and finding that with that discretion comes potential fiduciary liability) (*citing Enron*); *CMS*, 312 F. Supp. 2d at 914 (same); *Enron*, 284 F. Supp. 2d at 668-70 (same); *see also In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *5 (N.D. Cal. Sept. 30, 2002) (noting that plan terms requiring company

to follow it.  This is the duty the law imposes on fiduciaries.  Plaintiffs' Opposition at 11, 13-15.[8]  Defendants' contention that the Plans' participants had the power to direct their investments does not help their cause.  See Def. Br. at 11.  Even if Defendants *could* establish factually that participants exercised *fully-informed* control over their accounts, which cannot even be attempted on a motion to dismiss, the fiduciaries are still, at the very least, responsible for the imprudence of continuing *to offer* each investment alternative.  Plaintiffs' Opposition at 11, 13-15.

Many courts have forcefully rejected Defendants' argument that they cannot be liable for imprudent investment in company stock because the plans' language purported to  require such investment.  In *Kmart,* the court explained, "the fact that the Plan requires investment in Kmart stock will not *ipso facto* relieve the Outside Directors of their fiduciary obligations to prudently invest or diversify."  *Kmart* 278 F.Supp. 2d at 879 (emphasis added).  "[A] fiduciary is not required to blindly follow the Plan's terms," when to do so would be inconsistent with ERISA's prudence requirement.  *Id.* at 878 (internal citations and quotations omitted).

Judge Harmon concurred in *Enron*, holding that the overarching duties of prudence that govern all plan fiduciaries override any plan provisions that would purport to require fiduciaries to continue to imprudently invest plan assets in company stock.  *Enron*, 284 F. Supp. 2d at 668-70 (defendants "*had an overriding*

---

contributions to be invested "*primarily*" in company stock provided "some discretion regarding investment options," as do terms allowing investment in cash or stock at the company's election, and finding that "with that discretion comes potential fiduciary liability") (emphasis in original) (citing *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *Moench v. Robertson*, 62 F.3d 553, 568-71 (3d Cir. 1995)).

[8] *See also* 29 U.S.C. § 1104(a)(1)(D) (fiduciaries are required to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . .); 29 U.S.C. § 1104(a)(1)(B) (a fiduciary must discharge his or her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .")

*fiduciary duty* to monitor the prudence" of allowing continued investment in company stock) (Emphasis added); s*ee also Enron's* discussion of prudence standard and duty to disregard directions to invest in company stock when such stock no longer is a prudent investment option for the plan, at 546-50 and 669-70.

Other courts have followed *Kmart* and *Enron* and rejected "settlor" arguments similar to Defendants' arguments here. For instance, the *Sprint* court found, on facts similar to those here, that "the settlor could not have reasonably anticipated that a fiduciary would continue to adhere to the plan under [the] circumstances." *Sprint*, 2004 WL 1179371 at *12 (D.Kan. May 27, 2004). *See also, Honeywell*, slip op. at 21; *AEP*, 327 F. Supp. 2d at 828; *ADC*, 2004 WL 1683144, at *6; *CMS*, 312 F. Supp. 2d at 913-14; *Cokenour v. Household Int'l., Inc.*, 2004 WL 725973, at *5 ("the Committee Defendants cannot hide behind the provisions of the Plan," citing *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985), for the proposition that trust documents cannot excuse trustees from their duties under ERISA, and must be construed in light of ERISA's policies); *BellSouth*, 313 F. Supp. 2d at 1367 ("While normally fiduciaries are to follow the requirements set forth in governing plan documents, fiduciaries must exercise their judgment and refuse to do so if their analysis leads them to believe that the plan-directed investment would be imprudent and inconsistent with ERISA," citing *Enron*, 284 F. Supp. 2d at 549; additional citations omitted); *Xcel*, 312 F. Supp. 2d 1165 ("nor can a fiduciary blindly follow plan directives to the obvious detriment of the beneficiary"); *WorldCom*, 263 F. Supp. 2d at 764-65 (rejecting argument that eliminating company stock as an investment option is a non-fiduciary matter of plan design, and holding that an investment fiduciary – in this case the trustee – must disregard plan documents if following them would be imprudent).

In this case, Plaintiffs have stated a claim that Xerox stock ceased to be a prudent investment for the Plans, and the Defendants breached their fiduciary duties under ERISA by nevertheless continuing to make and maintain such investments. Whether Plaintiffs ultimately prevail on this claim is "another matter to be determined later." *Kmart*, 278 F. Supp. 2d at 879. Just as in *Kmart*, Defendants' "veiled attempt to obtain summary judgment at the pleading stage" should be rejected. *Id.*

### 2.    Defendants' "Participant Direction" Argument Also Fails.

Equally unpersuasive is Defendants' contention that because the Xerox Stock Fund operated with the participants selecting Xerox stock as an investment, no fiduciary, no matter what he or she knew, said or did, no matter how careless, self-interested or imprudent, can ever be liable for anything with regard to investment in the Xerox Stock Fund. Def. Br. at 10-11. This argument, which condones fiduciary misconduct, has been overwhelmingly rejected by the many courts that have recently addressed it.

In *WorldCom*, for example, Judge Cote rejected defendants' argument that plaintiffs' claims must be dismissed because participants exercised "exclusive control" over their investment decisions. *WorldCom*, 263 F. Supp. 2d at 764 n.12. The *Kmart* Court concurred, first rejecting Defendants' argument that a plan's fiduciaries cannot be liable for imprudently offering company stock as a plan investment option because the plan is a § 404(c) plan and participants directed their own investments, and then finding the issue premature on a motion to dismiss anyway. *Kmart*, 278 F. Supp. 2d at 872-73.

The *Enron* Court similarly ruled that ERISA § 404(c), which protects fiduciaries from liability for losses when participants exercise fully-informed control over investment decisions, does not apply to the *selection* of investment options by

Plan fiduciaries, nor does it apply where, as here, participants are not provided complete and accurate information about investment in company stock. The court further found that whether § 404(c) applies is an issue of fact on which defendants carry the burden, and that it cannot be resolved on a motion to dismiss. *Enron*, 284 F. Supp. at 574-79, 655; *See also AEP*, 327 F. Supp. 2d at 830-31; *Reliant*, 336 F. Supp. 2d at 669.

### 3. Defendants' "Insider Trading" Argument Fails As Well.

Defendants assert that they cannot be held liable for mis-investing hundreds of millions of retirement dollars because compliance with their voluntarily-assumed ERISA duties would have required them to engage in insider trading in violation of the federal securities laws. Def. Br. at 13 (Count I), 19 (Count IV). In effect, Defendants argue, one great remedial statute—the Securities Exchange Act of 1934—reaches out and nullifies another great remedial statute—ERISA. Nothing could be more absurd. Plaintiffs have already rebutted this argument, at pages 16-20 of Plaintiffs' Opposition, and the weight of recent authority conclusively confirms Plaintiffs' position: fiduciaries cannot use the federal securities laws as a shield against liability for imprudent investment of Plan assets and misleading disclosures to Plaintiffs. In *WorldCom*, for example, Judge Cote held that that the securities laws do not trump ERISA:

> The defendants have tried to describe a tension between the federal securities laws and ERISA that would require dismissal of this claim. Their arguments, however, cannot undermine the soundness of the general principle underlying Claim Three that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false. Nor is there anything in Claim Three, despite the defendants' suggestions otherwise, that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in

11

compliance with the standard of care that applies to ERISA fiduciaries.

\*        \*        \*

[T]he existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory regime.

*WorldCom*, 263 F. Supp. 2d at 767.[9]

Subsequently, in *Enron*, Judge Harmon provided an emphatic rejection of the defendants' "two wrongs make a right" insider trading argument:

Defendants' argument that…a fiduciary should make no disclosure to the plan participants, because under the securities laws he cannot selectively disclose nonpublic information, translates in essence into an argument that the fiduciary should both breach his duty under ERISA and, in violation of the securities laws, become part of the alleged fraudulent scheme to conceal Enron's financial condition to the continuing detriment of current and prospective Enron shareholders, which include his plan's participants. This Court does not believe that

---

[9] Plaintiffs note that Judge Cote found that plaintiffs had not established that the WorldCom Board of Director members (other than Mr. Ebbers) were fiduciaries. *WorldCom*, 263 F. Supp. 2d at 759. Unlike the Plan at issue here, however, the WorldCom plan neither named the WorldCom Board as a fiduciary nor provided it with authority to appoint other fiduciaries. *Compare WorldCom*, 263 F. Supp. 2d at 759 with Plaintiffs' Opposition at 7-11; Complaint ¶ 47.

Judge Cote also granted certain officers' and employees' motions to dismiss. Again, the basis for these dismissals is not applicable to this case. Judge Cote found that the *WorldCom* complaint did not allege that the dismissed employees in fact "had or exercised any discretionary authority or control over the administration or management of the Plan or its assets." *WorldCom*, 263 F. Supp. 2d at 759. Here, however, Plaintiffs allege that the defendant members of the Joint Administrative Board (Defendants Drucker, Russell, Strusz, Conkright, Roscoe, Becker, Kaster and Davis) were named fiduciaries of the UNITE Plan, and had or exercised discretionary authority or control over the administration or management of the Plan or its assets. Plaintiffs' Opposition at 10-11; Complaint ¶ 48. Similarly, Plaintiffs allege here that the defendant members of the Fiduciary Investment Review Committee (Defendants Tayler, Clayton, Kabureck, Davis, Zimmerman, and Filter) had or exercised discretionary authority or control over the administration or management of the Plan's assets. Plaintiffs' Opposition at 9; Complaint ¶¶ 47, 48. Additionally, Plaintiffs allege here that the Plan Administrator Defendants (Defendants Becker, Conkright, Nazemetz, and Kaster) were designated to have "full authority to control and manage the operation and administration of the Plan." Plaintiffs' Opposition at 7; Complaint ¶ 44. Finally, Plaintiffs allege here that the company had or exercised discretionary authority or control over the administration or management of the Plan or its assets. Plaintiffs' Opposition at 8; Complaint ¶¶ 44, 48.

> Congress, ERISA or the federal securities statutes sanction such conduct or such a solution, *i.e.*, violating all the statutes and conning the public. As a matter of public policy, the statutes should be interpreted to require that persons *follow* the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether "impractical" or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury.

*Enron*, 284 F. Supp. 2d at 565 (emphasis in original).

The *Honeywell* court followed suit, finding defendants' insider trading arguments to be "flawed on the merits" and recognizing that defendants' disclosure of corporate misdeeds:

> would have prevented the Plan from acquiring (through Plaintiffs' uninformed investment decisions and through continued investment of matching contributions) additional shares of overpriced Honeywell stock; the longer the fraud continued, the more of the Plan's good money went into a bad investment; and full disclosure would have cut short the period in which the Plan bought at inflated prices.

*Honeywell*, slip op. at 25.

Numerous other courts have recently agreed that defendants cannot use the securities laws to shield their breaches of fiduciary duties.[10]  In this case as well, Defendants' insider trading arguments provide no support for their motion to dismiss.[11]

---

[10]  *See, e.g., Syncor*, slip op. at 24 (finding *Enron* persuasive and holding that "Defendants may not avoid any duty they might have to disclose by hiding behind the securities laws"); *AEP*, 327 F. Supp. 2d at 824 ("The Court does not find this [insider trading] argument persuasive, however, where the information that Plaintiffs contend should have been disclosed, here, arguably was required by both the federal securities laws and ERISA."); *CMS,* 312 F. Supp. 2d at 915 ("This court shares the opinion of Judge Cohn in the [*Kmart*] matter that the securities law does not bar any portion of the plaintiffs' claims..."); *Xcel*, 312 F. Supp. 2d at 1181-1182 (finding that "[a]s to defendants' insider trading argument, the court joins those courts holding that ERISA plan fiduciaries cannot use the securities laws to shield themselves from potential liability for alleged breaches of their statutory

**C.    PLAINTIFFS HAVE STATED A CLAIM THAT DEFENDANTS
       BREACHED THEIR DUTY TO MONITOR, STANDING IDLY BY
       WHILE THE POTENTIAL FOR DISASTER MOUNTED.**

Those Defendants with appointment responsibilities are alleged to have
breached their duty to monitor their appointees. See Plaintiffs' Opposition at 21-22.
This claim cannot be dismissed.  Defendants in their papers concede that an
appointing fiduciary has a duty to monitor his or her appointees, but argue that
because no fiduciaries had any duties with respect to investment in Company Stock,
no fiduciaries had any duties to monitor their appointees with respect to investment in
Company Stock.  See Def. Br. at 15.  Plaintiffs have established already the obvious
fallacy in Defendants' position.

Moreover, the duty to monitor has become even more firmly entrenched in the
past twenty-one months.  *See* Brief of the Secretary of Labor as Amicus Curiae in
Opposition to Motion to Dismiss, *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ.
4816 (S.D.N.Y. filed Jan. 15, 2004) ("*DOL WorldCom Amicus*") at 4; *Motorola*, 337

---

duties."); *Sears*, 2004 WL 407007, at *5 (defendants "cannot escape potential liability on ERISA breach of fiduciary duty claims because of any duties they may have had under the securities laws") (citations omitted); *EDS*, 305 F. Supp. at 673 ("Defendants cannot use the securities laws to shield themselves from their fiduciary duty to protect Plan beneficiaries."); *Kmart*, 278 F. Supp. at 874–75 (following *WorldCom*, holding that "the duties under ERISA and duties under securities law can exist concomitantly").

[11] The cases Defendants cited in their opening brief in support of their "insider trading" argument, *Hull v. Policy Mgmt. Sys. Corp.*, No. 00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) and *McKesson*, 2002 WL 31431588, have been flatly rejected by the courts that have carefully considered the interaction of ERISA and the federal securities laws.  *See, e.g. Syncor*, slip op. at 24  (rejecting *McKesson*); *Xcel*, 2004 WL 758990, at *10; *Sears*, 2004 WL 407007 at *5 (D. Minn. March 10, 2004) (rejecting *Hull*); *Enron*, 284 F. Supp. 2d at 564–67 (rejecting *McKesson's* discussion of the interplay between ERISA and the securities laws as "misguided"); *Kmart*, 278 F. Supp. 2d at 874–77.  Moreover, though overlooked by the Defendants, the facts of *McKesson* are readily distinguishable.  The case involves a merger between two companies – McKesson and HBOC – where, after the merger occurred, the McKesson fiduciaries discovered that HBOC previously had engaged in securities fraud.  *McKesson*, 2002 WL 31431588, at *1.  *McKesson's* facts are a far cry from those presented here, where the Complaint alleges that the breaches occurred while all Defendants were responsible for the Plan and Plan assets, and where Defendants could have taken action to protect the Plan, but failed to do so.

F. Supp. 2d at 1098-99; *AEP*, 327 F. Supp. 2d at 832-33; *ADC*, 2004 WL 1683144, at
*7; *Honeywell*, slip op. at 28-29; *Sprint*, 2004 WL 1179371 at *19; *CMS*, 312 F.
Supp. 2d at 916-17; *BellSouth*, 313 F. Supp. 2d at 1370; *Xcel*, 312 F. Supp. 2d at
1176; *Sears*, 2004 WL 407007, at *7; *EDS*, 305 F. Supp. 2d at 670-71 ; *Kmart*, 278 F.
Supp. 2d at 871-72; *Enron*, 284 F. Supp. 2d at 552-53, 659-61; *WorldCom*, 263 F.
Supp. 2d at 765.   These cases further support Plaintiffs' claim that the Count III
Monitoring Defendants breached their  duty to provide their fiduciary appointees with
information regarding Xerox stock that the appointees needed to effectively discharge
their duty to prudently and loyally manage the investment.  *See, e.g., Motorola*, 337
F. Supp. 2d at 1098-99; *Sprint*, 2004 WL 1179371, at *20 ("the court simply rejects
the Sprint defendants' argument that the directors were free to appoint the committee
members, then turn a blind eye to the appointees' performance of their duties.");
*BellSouth*, 313 F. Supp. 2d at 1370 (upholding claim that directors breached their
duty to monitor by failing to disclose information to the investment committee "that
would have led it to discover the imprudence of investing in Company stock.");
*Enron*, 284 F. Supp. 2d at 659-61 (upholding monitoring claims against Enron
directors for failing to investigate and failing to provide other fiduciaries with
material information regarding Enron's financial condition); *WorldCom*, 263 F. Supp.
2d at 765.

Because the appropriate ERISA-mandated monitoring procedures may vary
according to the nature of the plan and other facts and circumstances, and since there
has been no substantive discovery taken in this action, an analysis of the precise
contours of the Count III Defendants' duty to monitor at this 12(b)(6) stage is
premature.  The lack of factual development is, however, simply another reason to
deny Defendants' motion.  *See, e.g., Sprint*, 2004 WL 1179371 at *19 (D. Kan. May

27, 2004) (the determination of the precise contours of the duty to monitor is one that would "more appropriately be resolved on the facts of the case"); *CMS*, 2004 WL 737335, at \*28-29 ("By virtue of the status of this litigation, development of what fiduciary duties were delegated by defendants has not occurred . . . It is the court's determination that plaintiffs have successfully stated a claim for breach of the duty to monitor"); *EDS*, 305 F. Supp. 2d at 671 ("at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges").

**D.      PLAINTIFFS HAVE STATED A CLAIM FOR DEFENDANTS' FAILURE TO PROVIDE COMPLETE AND ACCURATE INFORMATION CONCERNING XEROX STOCK AS A RETIREMENT INVESTMENT OPTION.**

Since the initial briefing on Defendants' motion to dismiss, courts have repeatedly confirmed that Plaintiffs are correct in asserting that plan fiduciaries like the Defendants have a duty to provide complete and accurate information to participants and beneficiaries, also referred to as the "duty to disclose and inform." *CMS*, 312 F. Supp. 2d at 915-16; *BellSouth*, 313 F. Supp. 2d at 1368-69; *Sears*, 2004 WL 407007, at \*6-7; *Norfolk S. Corp.*, 2004 WL 228685, at \*2; *EDS*, 305 F. Supp. 2d at 672-73; *Enron*, 284 F. Supp. 2d at 559 n.63; *Kmart*, 258 F. Supp. 2d at 876-878; *WorldCom*, 263 F. Supp. 2d at 765-766.   While Defendants seek to avoid their disclosure duties in this case, it is clear that whenever material information is needed to protect the interests of the plan participants and beneficiaries, the duty to disclose and inform arises, and that Defendants breached this duty.  *AEP*, 327 F. Supp. 2d at 832; *Sprint*, 2004 WL at \*14-16 (Plaintiffs stated disclosure claims for alleged misrepresentations contained in SEC filings, as well as in company newsletter disseminated to employees); *BellSouth*, 313 F. Supp. 2d at 1368 ("a growing number

of circuits have found that the distinction between the employer and fiduciary 'hats' begins to blur when company circumstances are such that business details directly impact the administration of the ERISA plan"); *EDS*, 305 F. Supp. 2d at 662 (the company's "business risks are relevant because EDS' stock value affected Plaintiffs' interests in the EDS 401(k) retirement plan"); *Enron*, 284 F. Supp. 2d at 555 n.63.[12]

Defendants try to claim that Plaintiffs here are attempting to impose on them a duty to provide "investment advice." *See* Def. Br. at 18-19. Contrary to Defendants' argument, however, the duty to inform participants does not equate with a duty to provide "investment advice," and Plaintiffs are not complaining about Defendants' failure to provide it. In an identical situation, the *CMS* court rejected the defendants' attempts to absolve themselves of responsibility by arguing that the plan prohibited fiduciaries from rendering investment advice. *CMS*, 312 F. Supp. 2d at 915-916. The *CMS* Court found that a nondisclosure claim like Plaintiffs bring is not a claim for failure to provide investment advice. Rather, such allegations concern "the fiduciary duties surrounding disclosure found in ERISA; i.e., that they could not mislead or fail to disclose information that they knew or should have known would be needed by

---

[12] Accordingly, while the preparation and filing SEC of documents is not necessarily a fiduciary act in and of itself, the fact that documents are filed with the SEC does not mean such documents cannot become fiduciary representations if they are disseminated to Plan participants. As the *WorldCom* court explained:

> Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings. Claim Three adequately pleads that Ebbers and Miller, each of whom is alleged to have been a fiduciary through *inter alia* his or her administration of the WorldCom Plan, breached their fiduciary obligations under ERISA by at the very least transmitting material containing misrepresentations to Plan participants.

263 F. Supp. 2d at 766-67.

participants to prevent losses." *Id.* at 916. That a fiduciary is not required to provide investment advice does not mean he is at liberty to mislead his beneficiaries. [13]

Ultimately, whether Defendants "knew or should have known of the SEC misrepresentations [and other misrepresentations and omissions] published by Defendants is a question of fact." *Sears*, 2004 WL 407007, at *6; *see also, AEP*, 327 F. Supp. 2d at 832 (quoting *Xcel*); *Xcel*, 312 F. Supp. 2d at 1182 ("the issue is more amenable to resolution on a motion for summary judgment after discovery has shed further light on the facts and circumstances of the case"). For now, however, Plaintiffs have more than sufficiently stated their claim that the Defendants breached their duty to inform by failing to provide complete and accurate information regarding Xerox stock, Xerox's accounting and business improprieties, the consequent inflation of the stock price and, generally, by conveying inaccurate information regarding the soundness of Xerox stock as a prudent retirement investment. *Complaint* ¶¶ 138-140, 178-192.

## E.    PLAINTIFFS HAVE PROPERLY STATED A CONFLICT OF INTEREST CLAIM.

Plaintiffs allege in Count IV that Defendants failed to properly protect the Plans and their participants from Defendants' own disloyalty and conflicts of interest. Numerous courts presiding over analogous ERISA actions have upheld similar claims for breach of the duty to avoid and ameliorate conflicts of interest. *See, e.g.*, *ADC*, 2004 WL 1683144 at *8 ("The averments that because of this inherent conflict, Defendants breached their fiduciary responsibilities by failing to engage independent advisors and otherwise protect Plan funds state a claim for breach of the duty of

---

[13] To the extent that Defendants contend that federal securities laws barred them from disclosing complete and accurate information to the Plans' participants and beneficiaries, Plaintiffs incorporate their arguments contained in Section II.C.3 above.

loyalty,"*citing Sears*, *EDS*); *Honeywell*, slip op. at 26 ("Plaintiffs have sufficiently alleged that Defendants breached their fiduciary duty of loyalty to the Plan by allowing their conduct as fiduciaries to be influenced by interests in conflict with those of the Plan."); *Household,* 2004 WL 725973, at *6 (plaintiffs stated a claim based on conflicts of interest by alleging that "the compensation of the Committee Defendants was tied into the Household stock price"); *BellSouth,* 313 F. Supp. 2d at 1370 ("Plaintiffs' facts, accepted here as true, show that fiduciaries had insider knowledge, knowledge which affected the price of stock that they held and in some cases sold, and acted in a way that benefited them personally, yet did not protect the trust."); *Sears*, 2004 WL 407007 at *5 (upholding allegations of breach of duty of loyalty to the plan due to conflict created by tie of defendants' compensation to company stock price); *EDS*, 305 F. Supp. 2d at 674 ("Plaintiffs allege that all Defendants have assumed broad fiduciary roles.  Taking those allegations as true, Count IV can allege Defendants breached their duty of loyalty in any one of their fiduciary capacities."); *Sprint* ("heightened risk of a conflict of interest . . . called for the directors to monitor the committees more closely than would otherwise be required").

While Defendants claim they labored under no conflict, it is too early to decide.  The determination of an impermissible conflict is a question of fact that can only be resolved upon a full record, rendering it inappropriate for disposition at this stage of the pleadings.  *BellSouth*, 313 F. Supp. 2d at 1369-70.  *See also, Household*, 2004 WL 725973, at *6.  The Complaint in this case states that Defendants had insider knowledge that affected the Xerox stock price, and used it for  their benefit, rather than in the interests of Plan beneficiaries.  Nothing more is required.

19

**F.    PLAINTIFFS SEEK PLAN-WIDE RELIEF AVAILABLE UNDER ERISA §§ 502(a)(2).**

The Department of Labor and the overwhelming case authority have established that Plaintiffs' claims here are proper claims for plan-wide relief.  Relying on *Kuper v. Iovenko*, 66 F.3d 1447, 1459, 1453 (6th Cir. 1995), the *Kling* Court succinctly summarized the law:

> Kling does sue on behalf of the Plan, and thus meets the requirements of § 409 as interpreted by the Supreme Court in *Russell*.  That the harm alleged did not affect every single participant does not alter this conclusion.  To read …into…§ 409 that the harm alleged must affect every plan participant would, as the Sixth Circuit observed, "insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants."  *Kuper*, 66 F.3d at 1453….  Kling's complaint raises issues that lie at the very heart of the concerns that prompted passage of ERISA: considering ERISA's legislative history, the *Russell* court observed that "[t]he floor debate…reveals that *the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators* and that ERISA was designed to prevent these abuses in the future."

*Kling*, 270 F. Supp. 2d at 126-7 (D. Mass. 2003)(emphasis added).  *See also*, *Nelson v. Brinson Partners, Inc.*, No. 03-C-6446, 2004 WL 178180 (N.D. Ill. Jan. 16, 2004) at *5; *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003); *Xcel*, 312 F. Supp. 2d at 1180; *CMS*, 312 F. Supp. 2d at 913, 915 ("[D]efendants' argument that a breach must harm the entire plan to give rise to liability under § 1109 would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants . . . . The Court will not dismiss on this basis.") (*citing Kuper*, 66 F.3d at 1453); *Honeywell*, slip op. at 29-32 (sustaining claims).

The single case Defendants cited in their reply memorandum in support of their argument here was appealed, and the Seventh Circuit found  that the plan

participant's claims were, in fact, "expressly authorized" under Section 502 as claims for plan-wide relief. *Steinman,* 352 F.3d at 1102.

In certifying classes similar to the one sought here, several courts likewise have held that claims similar to Plaintiffs', based on a breach of the duty to properly disclose information, are properly brought on a plan-wide basis. *See Furstenau v. AT&T Corporation*, No. 02-5409 (D.N.J. Sept. 2, 2004) (certifying class and finding that, in spite of defense arguments, reliance does not defeat certification on communication claims because plaintiffs do not allege individual-by-individual communications, but the same communication to each class member); *Rankin,* 220 F.R.D. at 522-23 (certifying class under Rule 23(b)(1) against defense arguments of "individual" issues and finding that "individual issues do not predominate" when communications were made to all plan participants); *In re Qwest Savings and Investment Plan ERISA Litig.*, No. 02-RB-464 (D. Colo. Sept. 24, 2004) at 6-7 (finding that disclosure claims were plan-wide claims; "[A] key issue in this case is whether the defendants' alleged breaches of their ERISA fiduciary duties caused losses to the Plan, its participants, and its beneficiaries. The fact that other sources of information and advice were considered relevant by the named plaintiffs does not mean that this key issue cannot efficiently be resolved in a class action setting."); *see also*, Plaintiffs' Opposition at 29-32.

There is one case – and only one – where a court has dismissed a complaint on the basis that a 401(k) participant may not seek plan wide relief. That decision, *In re Schering-Plough Corp. ERISA Litig.*, 2004 WL 1774760 (D.N.J. June 28, 2004), however, (i) is contrary to the great weight of authority on this issue, (ii) has been rejected by other courts, as noted above; (iii) is up on appeal; and (iv) is revealed as error by the Department of Labor in its Amicus Brief on appeal. See DOL *Schering-*

*Plough Brief* at 7 ("[t]he erroneous result reached by the district court in this case appears to have resulted from the courts' fundamental misconception of the structure, under ERISA, of defined contribution plans, such as this one, and the nature of such plan's assets.").[14]   This Court should not follow the lonely and much-criticized holding of *Schering-Plough*.[15]

## G.    THE COMPLAINT PROPERLY PLEADS THE FIDUCIARY STATUS OF, AND FIDUCIARY BREACHES BY, ALL DEFENDANTS.

The Complaint properly alleges claims against Xerox and the other Defendants, every one of which was a fiduciary for the Plans. *See*, e.g., Complaint ¶¶ 44, 48, 147-48, 152, 164, 175-76; *see also* Plaintiffs' Opposition at 7, 10, 36-39 (re: Xerox); Complaint ¶¶ 45-49, 147-48, Plaintiffs' Opposition at 6-7, 9-10, 22-23, 26, 39 (re: individual defendants).   Contrary to Defendants' efforts to shield themselves from their obligations with respect to plan assets in the form of Company Stock, the Plans' documents specifically provide for Defendants' fiduciary involvement in and management of the Xerox Stock Fund.   Plaintiffs' Opposition at 6-9.

### 1.    Plaintiffs have Stated Claims Against Xerox.

Xerox is clearly a fiduciary here.   But even if it were ultimately found not to be a fiduciary, Xerox still would be liable under the doctrine of *respondeat superior*.

---

[14] "To interpret section 409(a) as disallowing relief where losses will be allocated to the individual accounts that make up all defined benefit plans, or as limiting relief to losses that affect every participants' account, would contradict the Supreme Courts' admonition in Russell that courts should be 'reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.'" DOL *Syncor* Br., at 15-16 (*citing Mass. Mut. Life Ins. Co. Russell*, 473 U.S. 134 (1985)). The court went on to explain that "[t]he fact that the plan, like all defined contribution plans, provides for individual accounts, does not remove it from the protection of ERISA, or make any less applicable Congress' goal to protect retirement plans and their participants." *Id.* at 17.

[15] Plaintiffs' claims for appropriate equitable relief against all Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)), Complaint at 81, ¶¶ 4-5, have also been upheld by recent decisions. *E.g.*, *Xcel*, 2004 WL 758990, at *8 ("Section 1132(a)(3) permits a plan participant to seek injunctive or equitable relief for violations of the subchapter or of a plan directive."); *Syncor*, slip op. at 36-37 (court would not dismiss or hold moot plaintiffs' claims for equitable relief, particularly at the early stage of litigation of a motion to dismiss).

Recent cases demonstrate courts' willingness to apply *respondeat superior* to ERISA claims such as the ones presented here.  *See Motorola*, 337 F. Supp. 2d at 1093-95 (sustaining Plaintiffs' claims of fiduciary status based upon the doctrine of *respondeat superior*); *Reliant*, 336 F. Supp. 2d at 657-58 ("The Fifth Circuit has explicitly held that *respondeat superior* is a viable theory of liability under ERISA, and Plaintiff has given REI sufficient notice that he claims that REI had *de facto* control over the Plan, by virtue of its control over and/or relationships with the REI Benefit Committee members.  Accordingly, dismissal of Plaintiff's breach of fiduciary claims based on a *respondeat superior* theory against REI is not warranted"); *Kling*, 323 F. Supp. 2d at 144-47 ("a claim may be stated under ERISA for respondeat superior liability.") (citing cases).[16]

### 2.    Plaintiffs Have Stated Fiduciary Claims Against All Individual Defendants.

Recent decisions have also rejected the oft-heard defense argument that a complaint is deficient because it "lumps the defendants together" when referring to fiduciary breaches. *See CMS*, 312 F. Supp. 2d at 910-11; *Xcel*, 312 F. Supp. 2d at 1178-79.  *Kmart*, 278 F. Supp. 2d at 868, 872 ("[T]he manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box.  To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case.").  The majority of the recent ERISA company stock opinions have upheld co-fiduciary liability claims nearly identical to those alleged here. *See, e.g., Pa. Fed.*, 2004 WL 2315795, at *3; *Enron*, 284 F. Supp.

---

[16] Regardless of its fiduciary status, Xerox is also responsible for its knowing participation in the fiduciary breaches of the other Defendants, as explained at pages 23-24 of Plaintiffs' Opposition.

2d at 661-62; *AEP*, 327 F. Supp. 2d at 833; *ADC*, 2004 WL 1683144, at *8; *Honeywell*, slip op. at 28-29 *CMS*, 312 F. Supp. 2d at 910; *Dynegy*, 309 F. Supp. 2d at 861; *Reliant*, 336 F. Supp. 2d at 666 n. 50; *Kling*, 323 F. Supp. 2d at  144-145.

If the Complaint is found to lack enough specificity, recent decisions confirm that the proper remedy is to order a more definite statement, not dismiss the claim. *LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004)(proper response to imprecise complaint is Rule 12(e) motion for more definite statement); *Sprint*, 2004 WL 2182186 at *6; *Motorola*, 337 F. Supp. 2d at 1102; *Reliant*, 336 F. Supp. 2d at 665.

### III.  CONCLUSION

The recent authorities only serve to validate the arguments in Plaintiffs' Opposition; Defendants' Motion should be denied.

DATED this 3rd day of December, 2004.

Respectfully Submitted By

_____
Goodman, Rosenthal & McKenna, PC
John F. McKenna, Esq. - ct00104
68 South Main Street
West Hartford, Connecticut  06106
860-231-2800
Liaison Counsel

Keller Rohrback L.L.P.
Lynn Lincoln Sarko
Laurie B. Ashton
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, Washington  98101-3052
206-623-1900 (Seattle)
602-248-0088 (Phoenix)
Co-Lead Counsel

Susman & Watkins
Charles R. Watkins
John R. Wylie
Two First National Plaza, Suite 600
Chicago, Illinois  60603
312-346-3466
Co-Lead Counsel
Steering Committee Counsel:

Law Offices of Daniel M. Harris
Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, Illinois  60606
312-960-1802
Counsel for Plaintiffs

Berger & Montague, P.C.
Todd Collins
1622 Locus Street
Philadelphia, Pennsylvania  19103-6365
(215) 875-3040

Schiffrin & Barroway
Marc A. Topaz
Joseph H. Meltzer
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania  19004
(610) 667-7706

Malakoff Doyle & Finberg, P.C.
Ellen M. Doyle
437 Grant Street, Suite 200
Pittsburgh, Pennsylvania  15219
(412) 481-8400

McTigue Law Firm
Brian McTigue
Bruce Rinaldi
5513 Connecticut Ave., Suite 2200
Washington, D.C.  20015
(202) 364-6900