F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 27 2004

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 02-RB-464 (CBS)
(Consolidated with Civil Action Nos. 02-RB-470, 02-RB-482, 02-RB-602, 02-RB-714, 02-RB-2120)

In re QWEST SAVINGS AND INVESTMENT PLAN ERISA LITIGATION

---

## ORDER ON PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION

---

**Blackburn, J.**

This matter is before me on the Plaintiffs' Motion for Class Certification [# 110], filed January 15, 2003. The matter is fully briefed. For the reasons discussed below, the motion is **DENIED**, with leave to re-file the motion addressing the issue of the proper definition of the class and any sub-classes.

This case concerns the plaintiffs' allegation that the defendants breached their fiduciary duties under the Employee Retirement Income and Security Act (ERISA). 29 U.S.C. §§ 1001 - 1461. The plaintiffs allege that the defendants took a variety of actions that constitute violations of the defendants' ERISA fiduciary duties. For example, the plaintiffs allege that some of the defendants violated their fiduciary duties when they maintained the Qwest Shares Fund as an investment option in the Savings Plan, and delayed lifting restrictions on the sale of certain Fund Shares, despite the defendants knowledge that Qwest stock was a highly risky investment. The plaintiffs further claim some defendants breached their duties when they provided Qwest stock to the Plan, or directed the Plan to purchase Qwest stock, when they knew that Qwest stock was a highly risky investment. The plaintiffs allege that various defendants repeatedly communicated false and misleading material information relevant to the value of Qwest stock to Plan

participants, in violation of the defendants' duties. According to the plaintiffs, these and a
variety of other breaches of the defendants' duties caused substantial losses to the Qwest
Savings and Investment Plan (Plan), an ERISA plan, and its predecessor plans.

The plaintiffs seek to have this case certified as a class action, pursuant to FED. R.
CIV. P. 23. Under Rule 23, a class may be certified if several requirements are met. Rule
23(a) includes the following requirements: 1) the class is so numerous that joinder of all
members is impracticable; 2) there are questions of law or fact common to the class; 3)
the claims or defenses of the representative parties are typical of those of the class, and;
4) the representative parties adequately will protect the interests of the class. If the
requirements of Rule 23(a) are satisfied, then one of the alternative requirements outlined
in Rule 23(b) also must be met. Class certification is a matter committed to the discretion
of the trial court. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).
A certified class may be altered, expanded, subdivided, or abandoned as the case
develops. *See, e.g., Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D. Colo. 1990); *Dubin v.
Miller*, 132 F.R.D. 269, 270-75 (D. Colo. 1990).

The plaintiffs ask the court to certify a class action on behalf of the following class:

All participants and beneficiaries of the Qwest Savings and Investment Plan,
and its predecessor Plans, including the US West Savings Plan/ESOP and
Qwest Communications 401(k) Savings Plan, from March 7, 1999 onward.

*Plaintiff's Motion for Class Certification*, p. 1. The two predecessor plans were merged
into the Qwest Savings and Investment Plan (Plan) when Qwest and US West merged.

In general, I find that this case likely is appropriate for class certification. I outline
the basis for that finding in this order. However, I also find that the class definition
proposed by the plaintiffs is too broad and imprecise. The defendants' alleged breaches
of duty took place during a certain period of time. The allegations in the Second Amended

2

Consolidated Complaint (Complaint) do not indicate that any of the alleged breaches have continued to the present time. All of the alleged breaches relate to the Plan's investment in Qwest stock during the relevant period. In short, the plaintiffs' allegations are limited to alleged breaches that took place during a certain period of time, and breaches that are relevant to one Plan asset, Qwest stock. However, the plaintiffs' proposed class definition includes Plan participants who were not Plan participants when the alleged breaches of duty occurred, and who did not hold Qwest stock, the only Plan asset at issue in this case. The plaintiffs' class definition is over-inclusive.

For example, a person who joined the Plan for the first time on September 1, 2004, was not subject to the defendants' alleged breaches of duty and was not harmed by those alleged breaches. However, such a person would be included in the proposed class, as defined by the plaintiffs. It appears that at least some Plan participants could elect not to hold Qwest stock as part of their Plan account. The harm alleged by the plaintiffs occurred when the value of Qwest stock plummeted. A Plan participant who chose not to hold Qwest stock would not have been harmed by the defendants' alleged breaches of duty because those alleged breaches concerned only Qwest stock. However, a Plan participant who chose not to hold Qwest stock would be included in the in the proposed class, as currently defined by the plaintiffs.

In short, the plaintiffs' proposed class definition is overly broad because it seems to include Plan participants who could not have been harmed by the defendants' alleged breaches of duty. Absent the proper definition of the relevant class of Plan participants, class certification is not appropriate. In this order, I direct the plaintiffs to propose a more focused class definition which includes only those Plan participants who arguably were

harmed by the defendants' alleged breaches of duty.  Assuming the plaintiffs provide such a definition, I conclude class certification otherwise is appropriate.

## I.  RULE 23(a)

### 23(a)(1) - Numerosity

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all members of the class is impracticable.  There is no minimum numerical threshold which must be exceeded to satisfy this requirement.  Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical.  *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 274-76 (10th Cir. 1977).

The plaintiffs estimate that the proposed class would number in the tens of thousands of persons.  They say the proposed class would include virtually all employees of U.S. West and Qwest for the period from March, 1999, to the present.  Again, that definition appears to be too broad.  However, considering the nature of the plaintiffs allegations, I conclude that any reasonably defined class in this case would include thousands of plaintiffs.  Joinder of all such parties is not practical.  This case satisfies the numerosity requirement of Rule 23(a)(1).

### 23(a)(2) - Common Questions of Law or Fact
### & 23(a)(3) - Typicality

Rule 23(a)(2) requires that the claims of members of a proposed class present "common questions of law or fact."  Complete identity of legal claims among class members is not required.  Rather, the provision requires that there be two or more issues whose resolution will affect all or a significant number of the members of the proposed class.  *See Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982).  Rule 23(a)(3) requires

that the claims of a proposed class representative be typical of the claims of the class.
"The commonality and typicality requirements tend to merge," but both "serve as
guideposts for determining whether . . . maintenance of a class action is economical and
whether the named plaintiff's claim and the class claims are [sufficiently] interrelated . . . ."
*General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).
The United States Court of Appeals for the Tenth Circuit has said that the typicality
requirement is satisfied if there are common questions of law or fact. *Milonas v.
Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983);
*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

It is not difficult to find common factual and legal questions within a class of
plaintiffs who may have been harmed by the defendants' alleged breaches of duty.
Among the common questions of law and fact are

> 1) Whether each of the defendants were fiduciaries of the Plan within the
> meaning of ERISA;
>
> 2) Whether the defendants have breached the fiduciary imposed on them by
> ERISA;
>
> 3) Whether the defendants alleged breaches of their ERISA fiduciary duties
> caused losses to the Plan and the plaintiffs;
>
> 4) Whether the defendants are personally liable to make good to the Plan, its
> participants and beneficiaries any losses resulting from their alleged breaches
> of their ERISA fiduciary duties; and
>
> 5) Whether the defendants are liable for the breaches of fiduciary duties
> allegedly committed by other defendant fiduciaries.

Resolution of each of these issues would affect all or a significant number of the members
of a class of plaintiffs who may have been harmed by the defendants' alleged breaches of
duty, and resolution of these issues will advance this litigation as to all or a significant
number of the members of such a class.  Again, the class definition proposed by the

plaintiffs appears to be too broad because it includes Plan participants who would not have any claim against the defendants for breach of ERISA fiduciary duty. Of course, the plaintiffs' claims are not typical of Plan participants who simply have no claim against the defendants.

Some of the plaintiffs' claims are based on their allegation that the defendants breached their ERISA fiduciary duties by imposing and maintaining trading restrictions on Qwest stock held by the Plan. The defendants note that the various named plaintiffs were subject to materially different restrictions on their ability to sell Qwest stock held by the Plan. I find that such differences do not make this case inappropriate for class certification. The fact that members of the proposed class faced varying types of restrictions does not mean that it is improper or inefficient to resolve the plaintiffs' claims about the propriety of the restrictions in a class action setting. A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See, e.g., In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 463 (E.D. Pa. 2000). Factual differences among individual claims do not defeat typicality, as long as the legal theory underlying the plaintiffs claims is the same. *Id*. Of course, the varying restrictions may present a challenge in calculating the losses suffered by various class members, but there is no indication that this challenge cannot be overcome.

Some of the plaintiffs' claims are based on their allegation that the defendants made misrepresentations about the Plan, its administration, and the value of Qwest stock owned by the Plan. The defendants note that the named plaintiffs have indicated that they also relied on outside advice in making their investment decisions. Because the plaintiffs relied on different sources of advice, the defendants argue, their claims lack commonality and typicality. I find that such differences do not make this case inappropriate for class

6

certification.  As noted above, a key issue in this case is whether the defendants' alleged breaches of their ERISA fiduciary duties caused losses to the Plan, its participants, and its beneficiaries.  The fact that other sources of information and advice were considered relevant by the named plaintiffs does not mean that this key issue cannot efficiently be resolved in a class action setting.

Further, the defendants argue that different plaintiffs were exposed to different alleged misrepresentations, and these differences make each plaintiff's claim substantially different that the claims of other plaintiffs.  To some extent this appears to be true.  However, the Complaint alleges that the defendants made material representations to large numbers of Plan participants who would be members of the proposed class.  Although different groups of plaintiffs may have been exposed to different alleged misrepresentations, those differences do not destroy the large foundation of commonality among the plaintiffs' misrepresentation allegations.  The tool of a class action can be adapted to accommodate differences among these groups.

The defendants also argue that the differences between the terms of the two predecessor plans, which were merged into the Plan, and the different terms applicable to management employees versus unionized employees, illustrates a lack of commonality and typicality among members of the proposed class.  These differences likely are real, but they do not destroy commonality and typicality in this case.  The ERISA claims asserted by the plaintiffs on behalf of the proposed class have a large number of common questions of law and fact.  The different plan terms noted by the defendants may require the creation of sub-classes, but those differing terms do not destroy the common questions of law and fact that are present in this case.

The defendants also argue that the defenses unique to various class representatives make them atypical of the proposed class. One defendant is said to have released her ERISA claims, some were not subject to transfer restrictions on their Plan shares, some were sophisticated investors while others were not. I have resolved the defendants arguments concerning the release of ERISA claims in a separate order. To the extent other class members are subject to a similar argument, those class members can be addressed as a group. Again, different transfer restrictions applicable to different class members, and differing information available to class members, does not destroy the underlying commonality and typicality of the basic claims asserted by the plaintiffs, on behalf of the proposed class.

Finally, I note that the primary relief ERISA plan participants can obtain in an action for breach of fiduciary duty under ERISA is plan-wide relief. 29 U.S.C. § 1132(a)(2). The plaintiffs in this case seek Plan wide relief. Plan-wide relief would affect all persons who were participants or beneficiaries of the Plan at relevant times. Such relief is well-suited to a class action.

<u>23(a)(4) - Adequate Representation</u>

Rule 23(a)(4) requires that a proposed class representative adequately protect the interests of the class as a whole. This requirement is intended to ensure that a class representative has sufficient interests in common with the class that the representative adequately will assert and protect the interests of the class. The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel, and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole. *See, e.g., Horton v. Goose Creek Independent School District*, 690 F.2d 470, 484 (5th Cir. 1982).

8

The expertise and qualifications of proposed class counsel are set forth in the plaintiff's motion for appointment of leadership structure [# 13], filed May 15, 2002. The defendants do not challenge the qualifications of the plaintiffs counsel. Based on counsels' specialized experience in the relevant areas of law, and the conduct of plaintiffs' counsel to date, I conclude that the plaintiffs' counsel is amply qualified to act as counsel for a plaintiff class. Further, I have concluded that the representative plaintiffs' claims have sufficient commonality and typicality with the claims of a reasonably defined class. Thus, I find that the plaintiffs will fairly and adequately protect the interests of the class.

## II.  RULE 23(b)

The plaintiffs seek class certification under Rule 23(b)(1) or (b)(2). They also argue that certification under Rule 23(b)(3) would be appropriate, but they have not outlined that argument. Rule 23(b)(1) and (2) provide

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Again, I note that the primary relief ERISA plan participants can obtain in an action for breach of fiduciary duty under ERISA is plan-wide relief. 29 U.S.C. § 1132(a)(2). The

availability of such relief makes this case well-suited to certification under Rule 23(b)(1). Plaintiffs seeking plan-wide relief are acting as representatives of the plan, presumably on behalf of the participants and beneficiaries of the plan. Pursuit of separate actions for plan-wide relief would create a risk of varying adjudications concerning the bases and availability of such relief. Further, such an adjudication based on the claims of a few Plan participants may impede the ability of others to protect their interests. On the other hand, resolving this case as a class action will permit a determination of whether the Plan as a whole is entitled to relief and, if so, the nature of the appropriate plan-wide relief. Of course, plan-wide relief will, indirectly, affect the interests of all relevant Plan participants and beneficiaries. In short, it is best to consider the interests of a class of relevant Plan participants and beneficiaries, as opposed to the interests of a few representative Plan participants, in determining whether the defendants breached their duties, whether plan-wide relief is appropriate, and, if so, what relief is proper. I find that class certification under Rule 23(b)(1) is appropriate.

## CONCLUSION

The class definition proposed by the plaintiffs is overly broad because it appears to include Plan participants who would have no claim against the defendants based on the defendants' alleged breaches of their ERISA fiduciary duties. The plaintiffs must propose a class definition which includes only those Plan participants who arguably were harmed by the defendants' alleged breaches of duty. Assuming the plaintiffs provide such a definition, I find that the class action proposed by the plaintiffs otherwise satisfies the requirements of Rule 23 (a) and (b)(1). Class certification is denied pending approval of an appropriately defined class.

**THEREFORE IT IS ORDERED** as follows:

1) That the Plaintiffs' Motion for Class Certification [# 110], filed January 15, 2003, is **DENIED**, with leave to re-file the motion on or before **October 29, 2004**;

2) That any re-filed motion shall address only the question of the appropriate definition of the class, and any proposed sub-classes; and

3) That the deadlines for filing a response and reply concerning a re-filed motion for class certification shall be governed by D.C.COLO.LCivR 7.1(C).

Dated this 24th day of September, 2004, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### CERTIFICATE OF SERVICE

Civil Case No. 02-RB-464 (CBS)
(Consolidated with Civil Action Nos. 02-RB-470, 02-RB-482, 02-RB-602, 02-RB-714)

The undersigned certifies that a copy of the foregoing _Order_ was served on _October 27_, 2004, by:

(X) delivery to:

Magistrate Judge Craig B. Shaffer

William T. Hankinson, Esq.
William A. Wright, Esq.
Sherman & Howard
**DC Box 12**

George B. Curtis, Esq.
Gregory J. Kerwin, Esq.
Jessica Bolger Lee, Esq.
Gibson, Dunn & Crutcher
**DC Box 18**

Alan D. Schuchman, Esq.
Geraldine A. Brimmer, Esq.
Holland & Hart, LLP
**DC Box 6**

James M. Lyons, Esq.
Frederick J. Baumann, Esq.
Cindy C. Oliver, Esq.
Rothgerber Johnson & Lyons, LLP
**DC Box 11**

Bruce F. Black, Esq.
Michael J. Hofmann, Esq.
Martin D. Litt, Esq.
Holme Roberts & Owen, LLP
**DC Box 7**

(X) by electronic mail to the addressed to:

bhankinson@sah.com
ahefty@steptoe.com
jgs@branstetterlaw.com
jbs@branstetterlaw.com
ekelman@brauerfirm.com
tvr@birdmarella.com
mtd@birdmarella.com
jlc@birdmarella.com
horton@nqwlaw.com
jquinn@cwa-union.org


(X) depositing the same in the United States Mail, postage prepaid, addressed to:

Ellen M. Kelman, Esq.
Brauer, Buescher, Goldhammer &
  Kelman, & Dodge, P.C.
1563 Gaylord Street
Denver, CO 80206

Richard Rosenblatt, Esq.
Richard Rosenblatt & Associates, LLC
8085 East Prentice Ave.
Greenwood Village, CO 80111-2745

Stephen Kirk Ingebretsen, Esq.
Moye, Giles, O'Keefe, Vermeire &
  Gorrell
1225 - 17th Street, Ste. 2900
Denver, CO 80202-5529

Gerald L. Bader, Jr, Esq.
Bader & Associates, PC
14426 East Evans Ave., Ste. 200
Denver, CO 80014-1160

Michael S. Beaver, Esq.
Holland & Hart, LLP
8390 East Crescent Parkway, Ste. 400
Greenwood Village, CO 80111

Robert A. Izard, Esq.
Shatz & Nobel, PC
330 Main Street
Hartford, CT 06106

Marc L. Ackerman, Esq.
Scott & Scott, LLC
2 Bala Plaza
333 E. City Ave., Ste. 602
Bala Cynwyd, PA 19004-1516

Gordon E. Krischer, Esq.
Matthew P. Eastus, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Joe R. Whatley, Jr., Esq.
Whatley Drake, LLC
2323 2nd Ave., North
P.O. Box 10647
Birmingham, AL 35202–0647

James G. Stranch, III, Esq.
C. Dewey Branstetter, Jr., Esq.
Jane B. Stranch, Esq.
Branstetter, Kilgore, Stranch & Jennings
227 Second Avenue, North, 4th Floor
Nashville, TN 37201-1631

James D. Baskin, Esq.
The Baskin Law Firm
300 West 6th Street, Ste. 1950
Austin, TX 78701

F. Michael Kail, Esq.
Anthony C. Epstein, Esq.
Paul J. Ondrasik, Jr., Esq.
Steptoe & Johnson, LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036

John Carroll, Esq.
David Meister, Esq.
Clifford Chance US LLP
200 Park Avenue
New York, NY 10166-0153

Terry W. Bird, Esq.
Vincent J. Marella, Esq.
Mark T. Drooks, Esq.
Thomas V. Reichert, Esq.
Jennifer L. Coon, Esq.
Bird, Marella, Boxer & Wolpert, PC
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561

James Raborn, Esq.
Maria Boyce, Esq.
Shira Yoshor, Esq.
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995

Lee Squitieri, Esq.
Squitieri & Fearon, LLP
32 East 57th Street, 12th Floor
New York, NY 10022

Charles A. Stillman, Esq.
Michael J. Grudberg, Esq.
Kimo S. Peluso, Esq.
Stillman & Friedman, PC
425 Park Ave.
New York, NY 10017

Joseph Haver
5332 Roundup Drive
Colorado Springs, CO 80918

John L. Quinn, Esq.
Leslie J. Horton, Esq.
2204 Lakeshore Drive, Ste. 130
Birmingham, AL 35209

Wesley R. Powell, Esq.
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019

_____
Deputy Clerk