

ENTERED
CLERK, U.S. DISTRICT COURT

AUG 24 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 3 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority _____
Send ✓
Enter ✓
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SYNCOR ERISA Lititgation | Master File No.<br>CV 03-2446 LGB (RCx)<br>[CV 03-6503, CV 04-247] |
| This order relates to: ALL ACTIONS | CLASS ACTION<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT; DENYING DEFENDANT SYNCOR'S MOTION TO DISMISS OR STRIKE MONETARY RELIEF** |

## I.  INTRODUCTION

This is a class action brought on behalf of all persons who were participants in Syncor International Corporation's ("Syncor's") ERISA plan.  The class alleges that Defendants violated their duties to Plaintiffs by investing in Syncor stock while the company was engaged in an international bribery scheme.  Currently before the Court are Defendants' motions to dismiss the consolidated amended class action complaint ("complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs in this case were all persons employed at Syncor between July 26, 2000 and January 1, 2003 (the "class period") and participated in Syncor's "Employees' Savings and Stock Ownership Plan" (the "Plan").[1] Consolidated Complaint ("CC"), ¶¶ 1, 12-19. The Plan is a 401(k) plan that permits participants to save for retirement and it is an ERISA plan. Id. ¶ 2, 39.  It also contains a employee stock ownership plan (ESOP), which is designed to invest primarily in the common stock of the company.[2] Id., Exh. A, "Introduction."

Plaintiffs filed the consolidated class action complaint on February 24, 2004 against fiduciaries of the Plan. CC ¶ 7. Specifically, Syncor, Syncor's board of directors, and the Plan committee are defendants.  Syncor provided high technology health care services and was acquired by or merged with Cardinal Health, Inc. on January 1, 2003.  Id. ¶ 20.  Syncor was the Plan sponsor, a Plan administrator, and a fiduciary.  Id. ¶ 21.  It relied on its board of directors and acted through its officers and employees who were appointed to perform plan-related functions.  Id. ¶ 22.

The Board of Directors was responsible for appointing the Plan's committee members, and it had final decision making authority regarding all aspects of plan administration.  Id. ¶ 23.  The Board members included: Monty Fu (Syncor's co-founder and chairman of the Board); Robert Funari (Syncor's chief executive officer, president, and Board member); George Oki; Benard Puckett; Ronald Williams;

---

1    The individual plaintiffs are: Carol Pilkington, Donna Brown, Cynthia Dunn, Antoinette Hart, Shirley Nobrega, Deborah Pinner, Pamela Thomson, and Cherie Brannan.

2    An ESOP is an eligible individual account plan (EIAP) within the meaning of ERISA § 407(d)(3)(A).  29 U.S.C. § 1107(d)(3)(A).

1  Steven Gerber; Arnold Spangler; and Gail Wilensky.  Id. ¶¶ 24-31.

2  These defendants are referred to as the "Director Defendants."

3      The "Committee Defendants" were members of the committee

4  appointed to oversee the Plan's operation and carry out certain

5  delegated Plan administrative duties.  Id. ¶ 34.  The committee

6  members are Edwin Burgon, Sheila Coop, and other individual members

7  whose names are currently unknown.  Id. ¶¶ 34-36.

8      Plaintiffs allege that all of the defendants were fiduciaries

9  of the plan.  Id. ¶¶ 64-74.  During the class period, Syncor stock

10  constituted between 66 and 77 percent of the Plan's assets.  Id. ¶

11  63.  There were three separate parts of the plan. First, the Plan

12  permitted participants to contribute between 1 and 14 percent of

13  their compensation to the Plan each pay period in a "Fund Deferral

14  Account."  Id. ¶ 53.  Plaintiffs could invest in any of nine

15  available investment funds chosen by Syncor.  Id., Exh. B, "Summary

16  Plan Description" ("SPD"), at 272, 274.  In a separate account,

17  participants could invest up to an additional two percent of pre-tax

18  contributions in Syncor Common Stock.  Id.  This account was the

19  Syncor Stock Deferral Account and was used to purchase Syncor Common

20  Stock.  Id.  Third, Syncor established accounts in which Syncor made

21  employer contributions in the form of Syncor stock.  Id. at 272.

22  These contributions were made in the "Stock Investment Company

23  Account."  CC ¶ 59; Exh. B, SPD, at 281.

24      Plaintiffs allege that Syncor stock was an imprudent investment

25  because throughout the class period Syncor was engaging in an

26  illegal foreign bribery scheme in order to increase overseas sales

27  of its radiopharmaceutical services.  Id. ¶¶ 79-107.  The bribery

28  scheme spanned at least seven different countries and was approved

3

1  of and implemented by the highest levels of company management.  Id.

2  ¶ 82.  To increase business, Syncor's international subsidiaries

3  made illegal payments to doctors.  Id. ¶ 85.  The payments violated

4  the Foreign Corrupt Practice Act and resulted in the Securities and

5  Exchange Commission (SEC) and the Department of Justice (DOJ)

6  bringing actions against Syncor.  Id. ¶¶ 84, 87.  Prior to and

7  throughout the class period, Defendants emphasized to Plan

8  participants and beneficiaries that international business was a key

9  source of growth for the Company.  Id. ¶¶ 81, 108-117.  Because plan

10 participants did not know about the bribery scheme, Defendants

11 misled them about the appropriateness of investing in Syncor stock.

12 Id. ¶ 117.

13     On June 14, 2002, Syncor and Cardinal Health announced that

14 Cardinal would acquire Syncor in a stock-for-stock merger valued at

15 approximately $1.1 billion.  Id. ¶ 118.  Cardinal announced on

16 November 6, 2002, that while doing its due diligence investigation

17 related to the merger it had uncovered illegal payments made in

18 Taiwan and China.  Id. ¶ 121.  Upon disclosure of the payments, the

19 price of Syncor stock plummeted.  Id.  By November 8, 2002, the

20 stock had hit a 52-week low, and devalued more than 50 percent in

21 just two trading days.  Id. ¶ 122.  The plummeting share values

22 created losses to the Plan which was heavily weighted in Syncor

23 stock.  As a result of the allegations, Cardinal reduced the

24 exchange rate of 0.52 shares of Cardinal stock for each Syncor share

25 to 0.47.  Id. 124.  This reduced the consideration to be paid to

26 Syncor shareholders by at least $63 million.  Id.

27     As of January 1, 2003 2,895,292.487 common shares of Syncor

28 were in the Plan's stock fund investment option, with a total value

of $80,584,348. _Id._ ¶ 47. These shares were exchanged on that date for 1,361,452.073 shares of Cardinal common stock. _Id._ There were no other changes to the provisions of the Plan. _Id._ ¶ 48. Cardinal represented to the Securities and Exchange Commission in an S-8 submission that Cardinal would continue to maintain Syncor's Plan, substituting Cardinal Health shares as the Plan's Company Stock investment alternative and Company matching contribution. _Id._ ¶ 49.

Plaintiffs contend that Defendants either knew or should have known that Syncor stock was not a prudent Plan investment. _Id._ ¶¶ 127-137. Defendants failed to monitor the Plan, to investigate whether Syncor stock was a prudent investment, and to provide Plan participants with information regarding Syncor's improper practices so that the Plan participants could make informed decisions. _Id._ ¶¶ 130, 133, 138-140.

In addition, Plaintiffs allege that Defendants suffered from a conflict of interest because a significant percentage of their compensation was tied to Syncor stock. _Id._ ¶ 141. As such, Defendants had an incentive to keep the Plan's assets in the Syncor plan and to keep the Syncor Stock Fund investing in Syncor stock. _Id._ ¶ 142. This investment elevated the demand for Syncor stock in the market and retained a favorable impression of the stock with Wall Street analysts. _Id._

Plaintiffs bring the following causes of action: 1) failure by Syncor and the Committee Defendants to prudently and loyally manage Plan assets in violation of ERISA §§ 404(a)(1)(A)-(D) and 409; 2) failure by Syncor and the Director Defendants to monitor the Committee Defendants and provide them with accurate information in violation of ERISA §§ 404(a)(1)(A)-(D) and 405; 3) failure to

5

1   provide complete and accurate information to plan participants in

2   violation of ERISA §§ 404 and 405 by Syncor and the Committee

3   Defendants; and 4) breach of duty to avoid conflicts of interest,

4   against all defendants, in violation of ERISA §§ 404 and 405.

5       Plaintiffs seek the following relief: 1) a declaration that the

6   Defendants have breached their ERISA fiduciary duties to the

7   participants; 2) a declaration that the Defendants are not entitled

8   to the protections of ERISA section 404(c)(1)(B); 3) an order

9   compelling Defendants to make good to the Plan all losses to the

10  Plan resulting from Defendants' breaches of their fiduciary duties,

11  including losses to the Plan resulting from imprudent investments;

12  to restore to the Plan all profits the Defendants made through use

13  of the Plan assets; and to restore all profits the Plan would have

14  made if the Defendants had fulfilled their fiduciary obligations; 4)

15  imposition of a constructive trust on any amounts by which the

16  Defendants were unjustly enriched at the expense of the Plan; 5) an

17  order enjoining Defendants from any further violations of their

18  ERISA fiduciary obligations; 6) actual damages in the amount of any

19  losses the Plan suffered to be allocated among the Participants'

20  individual accounts in proportion to the accounts' losses; 7) an

21  order that Defendants allocate the Plan's recoveries to the accounts

22  of all Participants who had any portion of their account balances

23  invested in the common stock of Syncor maintained by the Plan in

24  proportion to the accounts' losses; 8-10) costs, attorney's fees and

25  other equitable relief.  CC, at 60-61.

26      Plaintiffs attach four documents to the complaint.  These are:

27  Syncor's Employees' Savings and Stock Ownership Plan (Exhibit A);

28  the Summary Plan Description, (Exhibit B); the Plan Recordkeeping

6

1  Agreement Between Syncor International Corporation and T. Rowe Price

2  Retirement Plan Services (Exhibit C); and a trustee agreement

3  between Syncor and North Star ESOP & Fiduciary Services, LLC

4  (Exhibit D).

5      On April 26, 2004 three sets of defendants filed motions to

6  dismiss Plaintiffs' complaint: 1) Monty Fu; 2) Syncor; 3) Robert

7  Funari and Edwin Burgos.  Syncor and Funari and Burgos also

8  submitted requests for judicial notice.  All three sets of

9  defendants joined in each others' motions to dismiss.  On July 6,

10  2004, Shiela Coop joined in all three motions to dismiss.  The other

11  defendants have not yet appeared in the action.[3]  Because of the

12  overlapping factual and legal issues, the Court will consider all

13  three motions to dismiss in this order.

14

15  **III.  Legal Standard**

16      Federal Rule of Civil Procedure 12(b)(6) provides for dismissal

17  when a complaint fails to state a claim upon which relief can be

18  granted.  See Fed. R. Civ. P. 12(b)(6).  A complaint fails to state a

19  claim if it does not allege facts necessary to support a cognizable

20  legal claim.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696,

21  699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749

22  F.2d 530, 533-34 (9th Cir. 1984).

23      In reviewing a Rule 12(b)(6) motion, the court must presume the

24  truth of the factual allegations in the complaint and draw all

25  reasonable inferences.  See Parks Sch. of Bus., Inc. v. Symington,

26  51 F.3d 1480, 1484 (9th Cir. 1995); see also Usher v. City of Los

27

28  _____

   3  The docket does not indicate that Plaintiffs have served the
   other Defendants.

1 <u>Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal under 12(b)(6)

2 is appropriate "only if it is clear that no relief could be granted

3 under any set of facts that could be proved consistent with the

4 allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)

5 (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)) (dismissal

6 appropriate only where "plaintiff can prove no set of facts in

7 support of his claim which would entitle him to relief"); <u>see</u> <u>also</u>

8 <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1152 (9th

9 Cir. 1989).

10      A Plaintiff may attach documents to a complaint and incorporate

11 them by reference. Fed. R. Civ. Pr. 10(c). Documents not attached

12 to the complaint may be considered by the Court on a motion to

13 dismiss if the complaint refers to such document, the document forms

14 the basis for plaintiff's claim, and the authenticity of the

15 document is not questioned. *See* <u>Branch v. Tunnell</u>, 14 F.3d 449, 454

16 (9th Cir. 1994). The Court is not required to accept as true

17 conclusory allegations which are contradicted by documents referred

18 to in the complaint. <u>Wright v. Oregon Metallurgical Corp.</u>, 360 F.3d

19 1090, 1096 (9th Cir. 2004). Also, documents not mentioned in the

20 complaint, but which are essential to a plaintiff's case and the

21 authenticity of which is uncontested, can be considered by the Court

22 in ruling on a motion. <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th

23 Cir. 1998).

24

25 **IV.  ANALYSIS**

26      **A.  Failure to Plead Fraud with Specificity**

27      Defendants allege that Plaintiffs' claims are based on

28 allegations of fraud and must be pled with the particularity

8

1  required by Federal Rule of Civil Procedure 9(b).  <u>Motion Funari</u>, at

2  10-11, 17-19; <u>Motion Syncor</u>, at 11-12.  Plaintiffs claim that Rule

3  9(b) is inapplicable to ERISA claims not based on fraud.

4  <u>Opposition</u>, at 43-45.  Plaintiffs contend that Rule 8(a)'s more

5  lenient pleading standards apply.  <u>Id.</u>

6       In the non-ERISA context, the Ninth Circuit recently elaborated

7  on the standard for pleading fraud in which a plaintiff's complaint

8  contains "averments of fraud."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317

9  F.3d 1097, 1103-1105 (9th Cir. 2003).  In some cases, plaintiffs may

10  allege that defendants engaged in fraudulent conduct and may rely

11  entirely upon that course of conduct as the basis of a claim.  <u>Id.</u>

12  In those situations, the claim is "grounded in fraud" and the

13  pleading must satisfy the heightened pleading requirement of Rule

14  9(b).  <u>Id.</u> at 1103-04.  In other cases, plaintiffs may allege some

15  fraudulent and some non-fraudulent conduct as the basis of a claim.

16  <u>Id.</u> at 1104.  In those cases, only the averments of fraud are

17  subject to Rule 9(b)'s heightened pleading requirement.  <u>Id.</u>  The

18  non-fraudulent conduct must only satisfy the ordinary notice

19  requirements of Rule 8(a).  <u>Id.</u> at 1105.  If allegations of fraud

20  are insufficiently pled, the court should disregard those averments

21  and determine if the remaining allegations state a claim.  <u>Id.</u>

22       Rule 9(b) states that "in all averments of fraud or mistake,

23  the circumstances constituting fraud or mistake shall be stated with

24  particularity.  Malice, intent, knowledge, and other condition of

25  mind of a person may be averred generally."  Fed. R. Civ. Pr. 9(b).

26  In support of their motion to dismiss, Defendants rely upon this

27  Court's order issued on July 6, 2004 dismissing the related

28  securities case.  <i>See</i> <u>Reply Funari</u>, at 3; <u>Id.</u>, Exh. A, <i>In re Syncor</i>

1  *Erisa Litigation*, 03-CV-2446 LGB.  In that action, the Court found

2  that Plaintiffs had failed to meet the heightened pleading standard

3  of the Private Securities Litigation Reform Act (PSLRA).  The PSLRA

4  pleading requirement is more stringent than Rule 9(b).  *See* No. 84

5  Employer-Teamster v. America West Holding, 320 F.3d 920, 931 (9th

6  Cir. 2003).  Therefore, the Court's ruling in the securities

7  litigation does not indicate whether Plaintiffs satisfied the

8  pleading requirements under Rule 9(b).[4]

9      Plaintiffs' claims are grounded generally on Syncor's bribery

10  scheme, alleged misstatements, and omissions.  Plaintiffs plead

11  specific details regarding the underlying conduct, including details

12  regarding the bribery scheme, and specific misleading or incomplete

13  information.  The purpose of Rule 9(b) is to ensure that the

14  defendants accused of the conduct specified have adequate notice of

15  the allegations so that they might defend against them.  Concha v.

16  London, 62 F.3d 1493, 1502 (9th Cir. 1005).  Plaintiffs' complaint

17  sufficiently apprises Defendants of the allegations against them

18  unless otherwise noted below.

19  **B.    Claim One:  Failure to Prudently and Loyally Manage Plan**

20          **Assets**

21      Plaintiffs' first cause of action is for failure to prudently

22  and loyally manage the plan assets pursuant to ERISA §§

23  404(a)(1)(A)-(D) and 405, 29 U.S.C. §§ 1104(a)(1)(A)-(D) and 1105.

24  Plaintiffs bring this claim against Syncor and the Committee

25  Defendants.  They allege that Syncor and the Committee Defendants

26  were fiduciaries and had a responsibility of ensuring that all

27  _____

28      4  The Court rejects Defendants' allegations that Plaintiffs'
    claims are essentially securities fraud claims.  Motion Funari, at
    17.  Plaintiffs clearly seek relief for alleged violations of ERISA.

1  investments in Syncor stock in the Plan were prudent.  CC ¶ 156.

2  Defendants allegedly knew or should have known that Syncor was not a

3  suitable and appropriate investment because of the bribery scheme.

4  Id. ¶ 159.  During the class period the fiduciaries offered Syncor

5  stock as an investment option; approved the Plan's investment in

6  Syncor stock; and provided Company matching funds in Syncor stock.

7  Id.  Plaintiffs contend that these actions violated Defendants' duty

8  to act with prudence and loyalty.  Defendants move to dismiss this

9  claim because Syncor was not on the verge of bankruptcy and the plan

10  language required investment in company stock.  Motion Funari, at

11  11-16; Motion Fu, at 6.

12       Section 404(a) of ERISA requires fiduciaries to discharge their

13  duties with prudence, to diversify investments, to act solely in the

14  interest of the participants, and to comply with the terms of the

15  plan in so far as they don't conflict with other ERISA laws.  29

16  U.S.C. § 1104(a)(1).  With regard to prudence, ERISA states, "[A]

17  fiduciary shall discharge his duties ... with the care, skill,

18  prudence, and diligence under the circumstances then prevailing that

19  a prudent man acting in a like capacity and familiar with such

20  matters would use in the conduct of an enterprise of a like

21  character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

22       EIAPs are exempt from ERISA's diversification requirements and

23  the prudence requirement to the extent it requires diversification.[5]

24  29 U.S.C. § 1104(a)(2).  Employee stock ownership plans, a type of

25  EIAP, are designed to invest primarily in qualifying employer

26  securities.  29 U.S.C. § 1107(d)(6)(A).  The purpose behind ESOP's

27

28
_____

    5  ESOPs and EIAPs are treated the same for a fiduciary duty
analysis.  Wright, 360 F.3d at 1098, n. 3.

1    is to increase employee ownership interest in companies. Moench v.

2    Robertson, 62 F.3d 553, 568 (3rd Cir. 1995). This goal sometimes

3    conflicts with ERISA's policy of safeguarding the interests of plan

4    beneficiaries through the enforcement of fiduciary responsibility.

5    Id. at 569; see also Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir.

6    1995).

7        In an effort to reconcile these goals, the Third and Sixth

8    Circuits have adopted a prudence standard which requires

9    diversification of employer stock in some circumstances. See Wright

10   v. Oregon Metallurgical Corp., 360 F.3d 1090, 1097 (9th Cir. 2004).

11   A presumption exists that a fiduciary who invests in employer stock

12   for EIAP or ESOP plans acted consistently with ERISA. Id.; Kuper,

13   66 F.3d at 1459; Moench, 62 F.3d at 571. The plaintiff may rebut

14   the presumption by showing that the ERISA fiduciary could not have

15   reasonably believed that continuing adherence to the plan's terms

16   was in keeping with the plan drafter's intent. Id.

17       In Wright, the Ninth Circuit expressed doubt that the prudence

18   standard comports with the plain language of ERISA section

19   404(a)(2), which exempts EIAPs from ERISA's diversification

20   requirements. Wright, 360 F.3d at 1097-98. However, the Ninth

21   Circuit declined to answer that question definitively, or to

22   establish a different standard. Id. Instead, the Wright Court

23   assumed that the Moench standard applied and considered whether the

24   plaintiffs had rebutted the presumption of prudence. Id. The court

25   found that they had not because the case did not "present a

26   situation where a company's financial situation is seriously

27   deteriorating and there is a genuine risk of insider self-dealing."

28   Id. at 1098.

12

1    "Mere stock fluctuations, even those that trend downward

2    significantly, are insufficient to establish the requisite

3    imprudence to rebut the *Moench* presumption." <u>Id.</u> at 1099; <u>Kuper</u>, 66

4    F.3d at 1459.  A causal link must exist between the failure to

5    investigate and the harm suffered by the plan.  To establish a

6    causal link, a plaintiff must demonstrate that an adequate

7    investigation would have revealed to a reasonable fiduciary that the

8    investment was improvident.  <u>Kuper</u>, 66 F.3d at 1460.

9        Defendants allege that the Plan's terms require the fiduciaries

10   to invest in Syncor stock.  <u>Motion Fu</u>, at 5-6.  Plaintiffs counter

11   that the Plan bestowed discretion upon the fiduciaries.  <u>Opposition</u>,

12   at 20-21.  Plaintiffs rely on language granting Syncor and the

13   Committee the discretionary authority to "[e]stablish and review at

14   least annually a funding policy bearing in mind both the short-run

15   and long-run needs and goals of the Plan." <u>Opposition</u>, at 20-21;

16   <u>CC</u>, ¶ 71; <u>Id.</u>, Exh. A, ¶ 16.4.  In addition, section 17.2 grants the

17   administrator authority to direct the Trustee to invest Trust Fund

18   assets in one or more Investment Funds or in Company Stock.

19   <u>Opposition</u>, at 21; <u>CC</u>, Exh. A, ¶ 17.2.  Citing to the same section

20   of the Plan, Plaintiffs note that Defendants had discretion to

21   change the composition of Investment Funds without amending the

22   Plan.  <u>Id.</u>

23       The heading of paragraph 17.2 of the Plan states that it refers

24   to the investment funds.  <u>CC</u>, Exh. A, ¶ 17.2.  The plain language of

25   section 17.2 states that a trustee can invest the trust assets in

26   Investment Funds **or** Company Stock.  <u>Id.</u> (emphasis added).  The word

27   "or" indicates that the investment funds do not include Company

28   Stock.  Plan participants invest their Fund Deferral Accounts in the

13

investment funds.  CC, Exh. B, SPD, at 273.  Accordingly, the Fund

Deferral Accounts do not contain company stock.

Rather, investments in Syncor stock were deposited in either

the Stock Deferral Account or the Stock Investment Company Account.

CC, ¶¶ 54-59.  The Plan specifically required these accounts to

consist of company stock.  The Plan states: "A Participant's Stock

Investment Company Accounts and Stock Investment Participant Account

shall be entirely invested in shares of Company Stock except to the

extent of any deposit or money market type assets pending investment

in shares of Company Stock."  CC, Exh. A, ¶ 17.8; see also ¶ 8.1.

Because these are the accounts which contained company stock, they

are also the only two accounts which are at issue in this

litigation. See Motion Fu, at 5-6.

When employers adopt, modify, or terminate welfare plans, they

do not act as a fiduciary.  Curtiss-Wright Corp. v. Schoonejongen,

514 U.S. 73, 78, 115 S. Ct. 1223 (1995).  To the extent Plaintiffs

allege the defendants breached their fiduciary duties by not

amending the plans, Plaintiffs' claims cannot stand because

Defendants are not acting as fiduciaries in that context.  In re

Sprint Corp. ERISA Litig., 2004 WL 1179371, *8 (D. Kan. May 27,

2004).  Accordingly, Plaintiffs' prudence claim is dismissed to the

extent it alleges that Defendants should have amended the express

terms of the Plan.  Id.

Under the Moench standard, a presumption of prudence applies.

Moench, 62 F.3d at 571.  Plaintiffs argue that a Court may not

resolve prudence issues on a motion to dismiss.  Opposition, 26-29.

However, the Ninth Circuit clearly rejected this argument in Wright

when it affirmed the district court's grant of a motion to dismiss a

1  prudence claim. <u>Wright</u>, 360 F.3d at 1098 ("A plaintiff may plead

2  herself out of court...."). The Ninth Circuit is binding precedent

3  in this Court. "A district judge may not respectfully ... disagree

4  with his learned colleagues on his own court of appeals who have

5  ruled on a controlling legal issue, or with Supreme Court Justices

6  writing for a majority of the Court. Binding authority within this

7  regime cannot be considered and cast aside; it is not merely

8  evidence of what the law is. Rather, caselaw on point is the law. If

9  a court must decide an issue governed by a prior opinion that

10 constitutes binding authority, the later court is bound to reach the

11 same result, even if it considers the rule unwise or incorrect."

12 <u>Hart v. Massanari</u>, 266 F.3d 1155, 1169-70 (9th Cir. 2001).

13      The *Wright* court held that a downturn in stock is not

14 sufficient to rebut the presumption of prudence.  <u>Wright</u>, 360 F.3d

15 at 1099.  Unlike in *Wright*, Plaintiffs have not merely alleged stock

16 fluctuations.  <u>Id.</u>  Plaintiffs have also alleged that Defendants

17 seriously mismanaged the company. *See* <u>Id.</u>; <u>Wright v. Oregon</u>

18 <u>Metallurgical Corp.</u>, 222 F. Supp. 2d 1224, 1234 (D. Or. 2002) *aff'd*

19 *by* <u>Wright</u>, 360 F.3d 1090.   Plaintiffs allege that Defendants

20 mismanaged the company by engaging in a bribery scheme which

21 violated the Foreign Corrupt Practices Act and resulted in the SEC

22 and DOJ filing charges.  This conduct put the company and Syncor

23 stock at risk.  Plaintiffs allege that Syncor's stock dropped

24 significantly as a result of the bribery scheme. <u>CC</u>, ¶ 122 (the

25 stock value dropped  by more than 50 percent in two days).

26      Defendants argue that Plaintiffs cannot overcome the prudence

27 presumption because Syncor was not on the brink of collapse.  <u>Motion</u>

28 <u>Funari</u>, at 11-13.  On June 14, 2002, Syncor and Cardinal announced

15

that Cardinal would acquire Syncor for $1.1 billion.[6] <u>CC</u>, at ¶ 118. Defendants rely on this figure to support that investment in Syncor stock was not imprudent because the company remained viable throughout its lifetime. According to Defendants, any sort of mismanagement must effect the viability of the company in order to make the investment imprudent.

Defendants rely upon *In re Duke Energy*, 281 F. Supp. 2d 786 (D.N.C. 2003) to support their argument that the mismanagement must impact the viability of the company in order to overcome the prudence presumption. <u>Motion Funari</u>, at 13-14. In *Duke*, the court noted that the decline in stock was attributable to something other than the disclosure of the improper conduct. <u>In re Duke Energy</u>, 281 F. Supp. 2d 786, 795 (D.N.C. 2003). In addition, the stock price had rebounded, and the company was "viable, far from 'impending collapse,' and not in 'dire circumstances.'" <u>Id.</u> Accordingly, the Court found that Plaintiff's prudence claim did not survive. <u>Id.</u>

Although some cases, such as *Duke Energy*, have required a finding that the company was on the brink of collapse, many other cases have not. *See* <u>In re ADC Telecomms., Inc., ERISA Litig.</u>, 2004 WL 1683144 (D. Minn. July 26, 2004) (declining to apply the prudence presumption at the motion to dismiss stage of the litigation); <u>In re AEP ERISA Litig.</u>, 2004 WL 1776001 (S.D. Ohio Aug. 10, 2004) (denying motion to dismiss because prudence standard should not be applied on a motion to dismiss); <u>In re Sprint</u>, 2004 WL 1179371, *19-20 (rejecting the impending collapse theory, and denying motion to dismiss imprudent investment claim); <u>Pennsylvania Fed'n v. Norfolk</u>

---

6   This amount was later decreased as a result of the allegations against Syncor. <u>CC</u>, ¶ 124.

16

1  S. Corp. Thoroughbred Ret. Inv. Plan, 2004 WL 228685, *7 (E.D. PA

2  Feb. 4, 2004) ("Although a drop in stock price is not sufficient to

3  win judgment on the breach of the duty of prudence, it is enough to

4  survive a motion to dismiss."); In re Sears Roebuck & Co. ERISA

5  Litig., 2004 WL 407007 (N.D. Ill. March 3, 2004) (denying motion to

6  dismiss where fiduciaries knew or should have known of financial

7  problems and misrepresented those problems).

8      The Court in Wright did not state that a company must be on the

9  brink of collapse.  Wright, 360 F.3d at 1098.  Wright cites to the

10 LaLonde district court case which was subsequently overruled by the

11 First Circuit.  Id. citing LaLonde v. Textron, Inc., 270 F. Supp.

12 2d 272, 280 (D.R.I. 2003) overruled by LaLonde v. Textron, Inc., 369

13 F.3d 1 (1st Cir. 2004) (finding that Plaintiffs had sufficiently

14 given "fair notice" to the defendants under Rule 8(a) and the

15 district court improperly granted the motion to dismiss).  The Ninth

16 Circuit relies on language in LaLonde stating that the presumption

17 of reasonableness may be overcome when a decline in employer stock

18 is combined with "evidence that the company is on the brink of

19 collapse or undergoing serious mismanagement."  Wright, 360 F.3d at

20 1098 (emphasis added).  The word "or" indicates that the company may

21 be on the brink of collapse or facing mismanagement.  In this case,

22 Plaintiffs have pled that the company was facing mismanagement (i.e.

23 the bribery scheme) which resulted in a steep decline in the value

24 of the company stock.  Plaintiffs have adequately pled facts in

25 addition to "mere stock fluctuations" which suggest that continued

26 investment in Syncor stock might not have been a prudent investment.

27 Wright, 360 F.3d at 1098-99.  The Court finds the analysis in Sprint

28 persuasive and declines to impose an impending collapse requirement.

1

2   Defendants argue that the company was outperforming the Nasdaq

3   and S&P 500 over the alleged class period, and has rebounded after

4   the one-time drop.  <u>Motion Funari</u>, at 14.   This argument is

5   evidentiary in nature and not properly considered on a motion to

6   dismiss.  <i>See, e.g.</i>, <u>In re McKesson HBOC, Inc. ERISA Litig.</u>, 2002 WL

7   31431588, *8 (N.D. Cal. Sept. 30, 2002).  This is not a situation

8   where financial statements are attached to the complaint.  <i>Cf.</i>

9   <u>Wright</u>, 360 F.3d at 1098.  The Court will not consider the stock's

10  performance at this stage in the litigation.[7]

11  Defendants further argue that the illegal bribery scheme does

12  not impact the prudence analysis.  <u>Motion Funari</u>, at 14-16.

13  Defendants rely upon <i>McKesson</i>, a case in which plaintiffs brought

14  ERISA prudence claims against defendants for undisclosed illegal

15  activity which allegedly inflated the company's stock price.

16  <u>McKesson</u>, 2002 WL 31431588.  The Northern District of California

17  granted the defendants' motion to dismiss the complaint.  <u>Id.</u>  In so

18  doing, the court noted that it found the logic of <i>Moench</i> not

19  compelling.  <u>Id.</u> at *5 ("If there is no duty to diversify ESOP plan

20  assets under the statute, it logically follows that there can be no

21  claim for breach of fiduciary duty arising out of a failure to

22  diversify.").  However, the court went on to apply the <i>Moench</i>

23  standard and found that the plaintiffs' prudence claim lacked

24  sufficient factual details to withstand a motion to dismiss.  <u>Id.</u> *

25

26      7   The Court may consider documents not mentioned in the
    complaint, but which are essential to a plaintiff's case and the
27  authenticity of which is uncontested.  <u>Parrino</u>, 146 F.3d at 706.
    The Court declines to take judicial notice of the documents at this
28  stage in the proceedings.  <i>See</i> <u>Request For Judicial Notice</u>, at 17,
    Exh. B.

1  3, 6 ("[P]laintiffs have taken the 'short and plain statement'

2  language too literally for the complaint contains little factual

3  detail and is replete with overly general allegations....").

4       Contrary to *McKesson*, the Court has found that Plaintiffs'

5  detailed allegations of Defendants' illegal bribery scheme alleges

6  more than a mere stock fluctuation.  Therefore, this case is

7  distinguishable from *McKesson*.  The Court finds that the illegal

8  conduct does impact the prudence analysis under the *Moench* standard.

9       However, a plaintiff must also establish a causal link between

10  a defendant's failure to investigate allegations and the harm

11  suffered by the plan.  Kuper, 66 F.3d at 1459-60.  "In order to

12  establish this causal link, a plaintiff must demonstrate that an

13  adequate investigation would have revealed to a reasonable fiduciary

14  that the investment at issue was improvident."  Id.

15       Plaintiffs allege that the illegal payments were made with the

16  knowledge and approval of senior officers at the relevant Syncor

17  subsidiaries, and in some cases with the knowledge and approval of

18  defendant Fu, who is Syncor's founder, Chairman of the Board, and

19  Plan Fiduciary, among others at Syncor.  *See e.g.*, CC, ¶¶ 86, 94.

20  These allegations support that Syncor knew of the payments, or

21  should have known of them.  However, the complaint fails to allege

22  any facts that support that the Committee Defendants either knew or

23  should have known of the allegations.  There is no indication that

24  the Committee Defendants could have discovered the bribery scheme

25  through a reasonable investigation.  This is not a situation in

26  which there was information available to the committee defendants if

27  they would have investigated.  *Cf.* Hill v. Bellsouth Corp., 313 F.

28  Supp. 2d 1361, 1367 (N.D. Ga. 2004) (denying motion to dismiss

prudence claim where there were press releases and SEC reports showing accounting errors, and there was evidence of economic and political instability in Latin America where the company was targeting 10 percent of its business).  Therefore, the Court finds that Plaintiffs fail to plead facts sufficient to establish a causal link with regard to the Committee Defendants.

Accordingly, Plaintiffs fail to rebut the presumption of reasonableness as to the Committee Defendants, and this claim is dismissed against them.  Plaintiffs have sufficiently pled facts to overcome the presumption of prudence with regard to Syncor to survive a motion to dismiss under Rule 12(b)(6).

**C.  Claim Two: Failure to Monitor**

Plaintiffs' second claim is for failure to monitor the Committee Defendants and provide them with accurate information in violation of ERISA sections 404(a)(1)(A)-(D) and 405.  Plaintiffs bring this claim against Syncor and the Director Defendants. Plaintiffs state that Syncor and the Director Defendants were responsible for appointing and monitoring the Committee Defendants. CC, ¶ 166.  Plaintiffs contend that the duty to monitor required that Defendants:

> (a)  Ensure that the monitored fiduciaries possessed the needed credentials and experience ... They must be knowledgeable about the operations of the Plan, the goals of the Plans, and the behavior of Plan participants.
>
> (b)  Ensure that the monitored fiduciaries had ready access to such outside, impartial advisors, counsel and experts when needed;
>
> (c)  Ensure that the monitored fiduciaries were provided with adequate financial resources to do their job;
>
> (d)  Ensure that the monitored fiduciaries had adequate information to do their job of overseeing the Plan investments, especially with respect to ... Company

1    stock;

2    (e)    Ensure that the monitored fiduciaries maintained
3           adequate records of the information on which they
       base their decisions and analysis with respect to
       Plan investment options; and

4
5    (f)    Ensure that the monitored fiduciaries reported
       regularly to the monitoring fiduciaries.

6    CC, ¶ 167.  Plaintiffs contend that the monitoring fiduciaries had

7    an obligation to provide the monitored fiduciaries with complete and

8    accurate information in their possession that they knew or should

9    have known that the monitored fiduciaries must have in order to

10   prudently manage the plan and the plan assets.  Id. ¶¶ 169, 171.  In

11   addition, the monitoring fiduciaries had a duty  to ensure that

12   procedures were in place to review the performance of the investing

13   fiduciaries.  Id. ¶ 170.  Plaintiffs allege that Syncor and the

14   Director Defendants breached their fiduciary monitoring duties by

15   failing to ensure that the fiduciaries had knowledge about the

16   Company's business problems, and failing to ensure that the

17   monitoring fiduciaries appreciated the huge risk of investing in

18   Syncor stock.  Id. ¶¶ 172-174.

19       Monty Fu moves to dismiss this claim on the ground that the

20   administrative committee's appreciation of the huge risk inherent in

21   an undiversified stock fund is not a basis for fiduciary liability.

22   Motion Fu, at 13-14.  Generally, there is no duty to diversify

23   ESOPs.  29 U.S.C. § 1104(a)(2).  Congress enacted laws relating to

24   ESOPs to encourage employee ownership in companies, not to guarantee

25   retirement benefits.  Moench, 62 F.3d at 568.  Therefore, by their

26   very nature ESOPs place employee retirement assets at much greater

27   risk than does the typical diversified ERISA plan.  Id.  Therefore,

28   the allegation that the monitoring fiduciaries did not appreciate

21

1  the "high risk" does not, without more, support Plaintiffs' breach

2  of the duty to monitor claim.

3      Monty Fu argues that the Plan unambiguously requires the

4  Committee Defendants to invest in Syncor Stock.  Fu contends that

5  because the Committee had no discretion to diversify the Stock

6  Deferral Account or the Stock Investment Company Account, Fu had no

7  responsibility to provide the committee members with information

8  about the bribery scheme.  Motion Fu, at 10-12.  Similarly, Fu

9  argues that no causal link exists between the failure to disclose

10 and the alleged harm because the plan fiduciaries had no discretion

11 to diversify the stock.  Id. at 12-13.

12     The Court's adoption of the Moench prudence standard, supra,

13 precludes this argument.  A fiduciary is required to follow the plan

14 terms only to the extent that the terms do not conflict with ERISA.

15 29 U.S.C. § 1104(a)(1); Kuper, 66 F.3d at 1456; In re Enron Corp.

16 Secs. Derivative & ERISA Litig., 284 F. Supp. 2d 511, 549 (S.D. Tex.

17 2003).  The Court previously found that Plaintiffs sufficiently pled

18 facts to support that Syncor breached its fiduciary duty of prudence

19 to the Plan fiduciaries.  ERISA imposes a fiduciary duty of loyalty

20 and prudence.  Defendants are required to comply with the Plan

21 terms, only to the extent that they do not conflict with ERISA.  Id.

22 Therefore, Defendants cannot escape a duty to monitor by stating

23 that the administrative committee complied with the Plan terms.

24     Fu and the other Director Defendants argue that securities laws

25 prevented them from providing "non-public information" about the on-

26 going bribery scheme to the Committee Members.  Motion Fu, at 9-10;

27 Reply Fu, at 8-9; Motion Funari, at 22.  The securities laws make it

28 illegal in some circumstances for those possessing inside

22

1  information about a company to trade on that company's securities

2  unless they first disclose the information.  <u>Wright</u>, 360 F.3d at

3  1098, n.4.

4      Defendants rely on dicta in <u>Wright</u>, in which the Court noted in

5  a footnote that the "*Moench* standard seems problematic to the extent

6  that it inadvertently encourages corporate officers to utilize

7  inside information for the exclusive benefit of the corporation and

8  its employees.  Such activity could potentially run afoul of the

9  federal securities laws." <u>Wright</u>, 360 F.3d at 1098, n. 4.  The

10  footnote in *Wright* is dicta and the *Wright* Court did not apply it to

11  the facts of the case.  The Court finds that the dicta in *Wright* is

12  not binding.

13      Defendants also rely upon <u>In re McKesson</u>, a situation in which

14  the defendants had engaged in illegal accounting practices and

15  materially misrepresented the state of the financial condition of

16  the company.  <u>McKesson</u>, 2002 WL 31431588, *2.  The Court held that

17  ERISA fiduciaries did not have a duty under ERISA to violate insider

18  trading laws in order to protect the interests of the Plan

19  beneficiaries.  <u>Id.</u> at *6-8.

20      This same argument was addressed by the court in *Enron*.  <u>In re</u>

21  <u>Enron</u>, 284 F. Supp. 2d at 563-67.  The *Enron* court rejected the idea

22  that the defendants could avoid disclosing relevant information in

23  violation of their duty of loyalty because of possible conflicts

24  with the securities laws.  <u>Id.</u>  The court stated that the argument

25  essentially translated into a contention that defendants could both

26  breach their duty under ERISA and become part of the alleged

27  fraudulent scheme under the securities laws.  <u>Id.</u>  The Court

28  rejected this argument: "This Court does not believe that Congress,

23

1  ERISA, or the federal securities statutes sanction such conduct or

2  such a solution, i.e., violating all the statutes and conning the

3  public.  As a matter of public policy, the statutes should be

4  interpreted to require that persons *follow* the laws, not undermine

5  them."  Id.

6       The *Enron* court relied in part on an *amicus curiae* brief filed

7  by the Department of Labor, the agency responsible for interpreting

8  and enforcing ERISA.  Id. at 566.  The Department of Labor flatly

9  rejected the *McKesson* court's position on the interaction between

10  ERISA and the securities laws.  Id.  The *Enron* court found that the

11  Department of Labor's brief suggested practical ways in which

12  companies can comply with both ERISA and the federal securities

13  statutes simultaneously – starting with disclosing the information

14  to the public at large as well as the shareholders, or forcing the

15  company to do so.  Id.

16       The Court finds the analysis in *Enron* persuasive, and declines

17  to follow *McKesson*.  Defendants may not avoid any duty they might

18  have to disclose by hiding behind the securities laws.

19       Monty Fu also seeks to dismiss the claim on the basis that Fu

20  did not have any obligation to force the administrative committee to

21  stop all investments in Syncor stock.  Motion Fu, at 16.  Fu

22  contends that the complaint's statement that defendants "failed to

23  take action" essentially alleges "that Fu should have taken action

24  to require the Administrative Committee to close down the Plan's

25  investments in Syncor stock."  Id.  The Court does not believe that

26  this is the only form of action which Fu or the other Director

27  Defendants could have taken under their duty to monitor.  Therefore,

28  this argument does not support dismissal of the claim.

1    In support of the motion to dismiss, Fu and the other Director

2  Defendants argue that the duty to monitor did not entail managing

3  the investments, deciding how Plan assets were to be invested, or a

4  duty to communicate information about business practices.  _Id._ at

5  16-17; _Motion Funari_, at 20.  Defendants argue that the Director

6  Defendants only had a duty to appoint the Committee Defendants and

7  that such a duty does not include the duty to disclose information.

8  Defendants cite to several cases for this proposition.  _Id._ _citing_

9  _In re Reliant Energy ERISA Litig._, 2004 U.S. Dist. LEXIS 1450 * 24

10 (S.D. Tex. Jan. 30, 2004) (duty to appoint does not "give rise to

11 the expansive duty to disclose all allegedly pertinent

12 information"); _McKesson_, 2002 WL 31431588; _Crowley v. Corning Inc._,

13 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002); _In re Williams Cos. ERISA_

14 _Litig._, 271 F. Supp. 2d 1328, 1339 (N.D. Ok. 2003).

15    Other courts have either distinguished the cases relied on by

16 the Defendants or declined to follow them.  _See_ _In re Sprint_, 2004

17 WL 1179371, *19-21.  In _In re Sprint_, the Sprint Defendants only had

18 a duty to appoint and remove the committee members.  _Id._  The _Sprint_

19 court stated that courts have widely held that an appointing

20 fiduciary has an ongoing duty to monitor its fiduciary appointees.

21 _Id._  The court noted that several cases holding otherwise dealt only

22 with breach of fiduciary duty claims and not the duty to monitor.

23 _Id._ _citing_ _Crowley v. Corning, Inc._, 234 F. Supp. 2d 222, 229-30

24 (W.D.N.Y. 2002).  The Court declined to follow _In re Williams Cos._

25 _ERISA Lit._, 217 F. Supp. 2d 1328 (N.D. Okla. 2003).  The Court finds

26 the reasoning in _Sprint_ persuasive.

27    Courts have repeatedly acknowledged that a board of directors

28 may have a duty to monitor investments, and that the duty sometimes

25

1   includes a duty to disclose information to committee members.  Id.;

2   Hill v. Bellsouth Corp., 313 F. Supp. 2d 1361 (N.D. Ga. 2004); In re

3   WorldCom, Inc., 263 F. Supp. 2d 745 (S.D.N.Y. 2003); In re Sears,

4   2004 WL 407007, *8.  Although the scope of the duty to monitor is

5   often unclear, many courts have declined to dismiss a duty to

6   monitor claim on a motion to dismiss.  See In re ADC Telecomms.,

7   2004 WL 1683144, *7 ("Though Plaintiffs make broad allegations under

8   the rubric of the ill-defined and limited duty to monitor, courts

9   have been unwilling to delineate and probe the scope of defendants'

10  monitoring duties on motions to dismiss...."); In re Sprint, 2004 WL

11  1179371, * 20 (finding it unnecessary to define the precise contours

12  of the duty to monitor "at this early phase of the litigation,"

13  noting that the issue would more appropriately be resolved on the

14  facts of the case).

15      The Department of Labor's regulations describe the duty to

16  monitor as follows:

17          At reasonable intervals the performance of trustees and
            other fiduciaries should be reviewed by the appointing
18          fiduciary in such manner as may be reasonably expected to
            ensure that their performance has been in compliance with
19          the terms of the plan and statutory standards, and
            satisfies the needs of the plan.  No single procedure will
20          be appropriate in all cases; *the procedure adopted may
            vary in accordance with the nature of the plan and other*
21          *facts and circumstances relevant to the choice of the
            procedure.*
22
    29 C.F.R. § 2509.75-8, FR-17 (emphasis added).  The scope of the
23
    duty to monitor will require a factually intense analysis. Id.; In
24
    re Sprint, 2004 WL 1179371, * 20.  The Court declines to determine
25
    the scope of the duty at this stage of the litigation.
26
        The Director Defendants seek to impose a reliance requirement
27
    on Plaintiffs' complaint.  Motion Funari, at 17-18.  The Court has
28
    already determined that Rule 9(b) applies only to portions of the

26

1  Plaintiffs' complaint, and that Plaintiffs have satisfied Rule

2  9(b)'s pleading requirements. In the absence of binding authority to

3  the contrary, the Court declines to require Plaintiffs to plead

4  reliance with specificity at the pleading stage of the litigation.

5  Plaintiffs have sufficiently pled that Defendants violated their

6  duty to monitor the Committee.

7      **D.    Claim Three: Failure to Provide Complete and Accurate**

8          **Information to Plan Participants and Beneficiaries**

9      Plaintiffs' third claim alleges that the duty of loyalty under

10  ERISA requires fiduciaries to speak truthfully to participants, not

11  to mislead them, and to disclose information that participants need.

12  CC, ¶¶ 181-82.  The SPD must be "scrupulously even-handed" in

13  describing plan risks to the participants.  Id. ¶ 184. Plaintiffs

14  allege that Defendants breached their duty by failing to provide

15  complete and accurate information to Syncor participants regarding

16  Syncor stock, Syncor's business improprieties, the "consequent

17  artificial inflation of Syncor Stock," and information regarding the

18  risks of investing in employer stock.  Id. ¶¶ 185-186.  Plaintiffs

19  bring this claim against the Committee Defendants and Syncor.

20      The Court has determined that Plaintiffs have failed to plead

21  that the Committee Defendants knew of the bribery scheme.  As such,

22  Plaintiffs cannot support a claim against the Committee Defendants

23  for a failure to provide complete and accurate information about the

24  scheme.

25      Syncor, through its officers, allegedly made various misleading

26  statements on several dates.  These statements related to the

27  success of Syncor and attributed the company's success to overseas'

28  growth.  CC, ¶¶ 108-116.  Defendants argue that these statements

1   were made when the officers were wearing employer, rather than

2   fiduciary, hats.  Motion Syncor, at 19-20.  A defendant may be

3   charged with an ERISA breach only when performing a fiduciary

4   function.  Pegram v. Herdrich, 530 U.S. 211, 225-26, 120 S. Ct. 2143

5   (2000); Varity Corp. v. Howe, 516 U.S. 489, 116 S. Ct. 1065 (1996).

6   In this case, the statements pled by Plaintiffs do not support that

7   Defendants made them with the intent to communicate about the

8   security of the benefits plan.  See Varity, 516 U.S. at 505-506, 116

9   S. Ct. 1065.  A defendant does not act as a fiduciary simply because

10  it made statements about its expected financial condition.  Id.

11  Although Funari commented on the company's success on June 30, 2000

12  by saying that the company took a number of steps to continue

13  profitable growth and increase shareholder value, the complaint does

14  not support that this statement was made for the benefit of the

15  shareholders.  CC, ¶ 113.  It appears to have been made primarily to

16  trumpet the company's growth to the public. Therefore, the complaint

17  does not support that statements made by the defendants were done in

18  their fiduciary capacity.

19       Plaintiffs also allege that defendants omitted to state

20  material information.  CC, ¶ 188.  A growing number of courts have

21  required an affirmative duty to disclose information to plan

22  participants in certain circumstances.  See Hill, 313 F. Supp. 2d at

23  1368-69; In re Enron, 284 F. Supp. 2d at 555-61 (for overview of

24  growing trend).  The Ninth Circuit has required plans to disclose

25  information about plan amendments upon questioning by participants.

26  Wayne v. Pacific Bell, 238 F.3d 1048, 1050-51 (9th Cir. 2001).  In

27  other contexts, the affirmative duty to disclose has only been

28  imposed in "special circumstances with a potentially extreme impact

28

1  on a plan as a whole, where plan participants generally could be

2  materially and negatively affected." <u>Hill</u>, 313 F. Supp. 2d at 1368-

3  69.

4  In this case, Plaintiffs have alleged that Syncor stock

5  constituted up to 77 percent of the plan, that the value of the

6  stock dropped by more than 50 percent upon publication of the

7  bribery scheme, and that the shareholders lost millions of dollars

8  on the Cardinal/Syncor exchange rate.  However, a Plan's investment

9  in employer stock is not sufficient to trigger a special

10  circumstance.  <u>Id.</u> at 1369.  In this case, Plaintiffs have not pled

11  that Defendants encouraged investment in company stock knowing that

12  it was imprudent.  <i>Cf.</i> <u>Varity</u>, 516 U.S. at 505, 116 S. Ct. 1065;

13  <u>Hill</u>, 313 F. Supp. 2d at 1369.  Nor have Plaintiffs pled other facts

14  giving rise to a special circumstance.  As such, Plaintiffs have

15  failed to plead that Syncor breached its duty to accurately provide

16  information to Plaintiffs.

17  **E.  Claim Four: Breach of Duty to Avoid Conflict of Interest**

18  Plaintiffs allege that Defendants breached their duty to

19  administer the plan with an "eye single" to the interests of the

20  Plan participants.  CC, ¶ 196-97.  Plaintiffs bring this action

21  against all defendants.  Plaintiffs allege that Defendants had a

22  conflict of interest because a significant portion of their

23  compensation was in the form of stock grants or stock options.  <u>Id.</u>

24  ¶¶ 141-146.  Under this theory, corporate defendants would always

25  have a conflict of interest.  <i>See e.g.</i> <u>In re WorldCom</u>, 263 F. Supp.

26  2d at 768 (allegations that defendant held WorldCom stock was

27  insufficient by itself to create conflict of interest).  Plaintiffs

28  make conclusory allegations that Funari and other insiders engaged

29

1  in insider trading.  <u>CC</u>, ¶ 144.  Plaintiffs plead no facts to

2  support this allegation.  Plaintiffs have failed to plead that

3  Defendants suffered from a conflict of interest.  The Court grants

4  Defendants' motion to dismiss this claim against all defendants.

5      **F.  Breach of Co-Fiduciary Duty**

6      Throughout the complaint, Plaintiffs allege that Defendants are

7  liable as co-fiduciaries.  <u>CC</u>, ¶¶ 161, 174, 187.  ERISA section 405

8  imposes liability against co-fiduciaries only when the co-fiduciary

9  has knowledge of another fiduciary's breach, knowingly participates

10  in or conceals a breach by another person, or enables such a breach

11  by an active failure to comply with his own fiduciary obligations

12  under the plan.  29 U.S.C. § 1105(a); <u>McKesson</u>, 2002 WL 31431588,

13  *17. Defendants move to dismiss the co-fiduciary claims.  <u>Motion Fu</u>,

14  at 24-25.

15      Plaintiffs repeat that Defendants knew of the breaches,

16  participated in the breaches, or made no effort to remedy them.  <u>CC</u>,

17  ¶¶ 161, 174, 187.  Plaintiffs provide no facts to support these

18  allegations.  In their opposition to the motion to dismiss,

19  Plaintiffs state that the defendants "clearly had knowledge" because

20  they had a duty to monitor.  <u>Opposition</u>, at 58.  A duty to monitor

21  does not support that defendants possessed knowledge. As such, the

22  co-fiduciary allegations do not state sufficient facts to support a

23  claim on which relief can be granted.

24      **G. Appropriate Relief**

25      Defendant Syncor moves to dismiss the complaint on the basis

26  that Plaintiffs do not have standing to seek the remedies they plead

27  under ERISA.  In the alternative, Syncor moves to strike Plaintiffs'

28  requests for monetary relief.

1    Plaintiffs seek the following relief: 1) a declaration that the

2  Defendants have breached their ERISA fiduciary duties to the

3  participants; 2) a declaration that the Defendants are not entitled

4  to the protections of ERISA section 404(c)(1)(B); 3) an order to

5  make good to the Plan all losses to the Plan; 4) imposition of a

6  constructive trust on any amounts by which the Defendants were

7  unjustly enriched at the expense of the Plan; 5) an order enjoining

8  Defendants from any further violations of their ERISA fiduciary

9  obligations; 6) actual damages in the amount of any losses the Plan

10  suffered to be allocated among the Participants' individual accounts

11  in proportion to the Plan losses; 7) an order that Defendants

12  allocate the Plan's recoveries to the accounts of all Participants

13  who had any portion of their account balances invested in the common

14  stock of Syncor in proportion to the accounts' losses; 8-10) costs,

15  attorney's fees and other equitable relief.  CC, at 60-61.

16  Defendants argue that this relief is not available under either

17  ERISA section 502(a)(2) or section 502(a)(3).  Motion Syncor, at 12-

18  13.

19          ii.   Section 502(a)(2)

20      Section 502(a)(2) provides that a person may bring a civil

21  action for appropriate relief for a breach of fiduciary duty under

22  section 409.   29 U.S.C. § 1132(a)(2).   Section 409 provides:

23          Any person who is a fiduciary with respect to a plan who
          breaches any of the responsibilities, obligations, or
24          duties imposed upon fiduciaries by this subchapter shall
          be personally liable to make good to such plan any losses
25          to the plan resulting from each such breach, and to
          restore to such plan any profits of such fiduciary which
26          have been made through use of assets of the plan by the
          fiduciary ...

27

28
    29 U.S.C. § 1109(a).  An individual beneficiary may bring a breach

                                    31

1  of fiduciary duty claim but must do so for the benefit of the plan.

2  Massachusetts Mut. Life Ins. v. Russell, 473 U.S. 134, 144, 105 S.

3  Ct. 1085 (1981).  Any recovery for violation of section 409 and

4  502(a)(2) "must be on behalf of the plan as a whole, rather than

5  inuring to individual beneficiaries."  Horan v. Kaiser Steel Ret.

6  Plan, 947 F.2d 1412, 1418 (9th Cir. 1991).  Defendants contend that

7  Plaintiffs essentially seek individual relief, rather than relief

8  for the Plan.  Motion Syncor, at 12-18.

9       The parties dispute whether a group of individuals within a

10  plan, constituting less than all of the beneficiaries, may seek

11  relief.  Id. at 17; Opposition, at 9-11.  The Courts that have

12  refused to allow sub-classes of a plan to recover money damages have

13  done so when the damages benefitted only the individuals and not the

14  plan.  See, e.g., Matassarin v. Lynch, 174 F.3d 549, 566 (5th Cir.

15  1999) (holding that plaintiff's claims benefitted only herself or at

16  most, the sixty-seven Plan participants who had been offered lump-

17  sum distributions); Horan, 947 F.2d at 1417-1418 (suit on behalf of

18  24 plan participants seeking to obtain annuities for each individual

19  defendant did not benefit the Plan and was not appropriate under

20  section 409 and 502(a)(2)).  The Court agrees with Defendants that

21  the relevant inquiry is not the size of the purported class, but

22  whether Plaintiffs seek recovery for themselves or on behalf of the

23  Plan.  Reply, at 10-11.

24       Plaintiffs bring this action on behalf of all persons who were

25  participants in or beneficiaries of the Plan at any time between

26  July 26, 2000 and January 1, 2003 and whose accounts included

27  investments in Syncor Common Stock.  CC, ¶ 1.  The Court has already

28  concluded that the Fund Deferral Accounts are not in dispute because

1  they did not include Syncor stock.  However, individuals who

2  invested in Fund Deferral Accounts are still impacted by Syncor

3  stock.  That is because Syncor matched 50 percent of employees'

4  contributions in these Fund Deferral Accounts up to four percent of

5  an employees' regular pay.  CC, Exh. B, "SPD" at 272.  Syncor's

6  contributions were made with Syncor common stock.  Id. at 275.

7  Plan participants could also invest an additional one to two

8  percent of their income in Syncor common stock in the Stock Deferral

9  Account.  Id. at 274-275.  Syncor would contribute one matching

10 share of common stock for each whole share an employee purchased.

11 Id. at 275.  For all Plan participants, Syncor had the discretion to

12 contribute "special allocations" of Syncor stock to Plan

13 participants' accounts.  Id.

14 Therefore, every Plan beneficiary possessed Syncor stock.

15 They could have acquired the stock by purchasing it as part of the

16 Syncor Stock Deferral Account, or Syncor could have deposited it in

17 their account as either a matching contribution or as a special

18 allocation.

19 Plaintiffs ask for relief in the form of money damages as

20 follows:

21     C.  An Order compelling Defendants to make good to the
        Plan all losses to the Plan ... ; to restore to the Plan
22      all profits the Defendants made ... ; to restore to the
        Plan all profits that the Plan would have made ...;
23
        F.  Actual damages in the amount of any losses the Plan
24      suffered, to be allocated among the Participants'
        individual accounts in proportion to the accounts' losses;
25
        G.  An Order that Defendants allocate the Plan's
26      recoveries to the accounts of all Participants who had any
        portion of their account balances invested in the common
27      stock of Syncor maintained by the Plan in proportion to
        the accounts' losses attributable to the steep decline in
28      the stock price of Syncor.

1  CC, at 60. The first provision clearly seeks relief on behalf of the

2  Plan.  Defendants argue that the second two provisions essentially

3  seek individual relief which is not permitted under section

4  502(a)(2).  *Motion Syncor*, and 14-17.  Defendants state that the

5  monetary relief sought is really damages on behalf of individual

6  participants which would require individual determinations.  Id. at

7  17.

8    Defendants rely upon *Milofsky v. American Airlines, Inc.*, in

9  which the court found that the plaintiffs lacked standing to bring

10  the claims because they sought reimbursement to their individual

11  accounts rather than benefits to the Plan.  Milofsky v. American

12  Airlines, Inc., 2003 WL 22398799 (N.D. Tex. Sept. 24, 2003).

13  Although plaintiffs filed a "class action complaint," the court

14  found that the plaintiffs were ultimately asserting individual

15  claims, seeking to reimburse losses to their individual accounts.

16  Id. at * 4.

17    In *Milofsky*, the plaintiffs did not seek relief on behalf of

18  the plan, and there was no indication that the entire plan was

19  impacted.  In this case, the entire plan is impacted because all

20  beneficiaries have Syncor stock - acquired either through their

21  individual investments or the company's matching stock.

22  Plaintiffs seek relief for the entire plan.  However, they seek to

23  have the damages allocated to the individual accounts of all Plan

24  participants who have any investment in Syncor common stock,

25  proportionately to the account losses.  Defendants contend that this

26  essentially constitutes individual relief.

27    Syncor has attached an unpublished opinion from the district

28  court of New Jersey in support of this assertion.  Reply Syncor,

1  Exh. A, <u>In re Schering-Plough Corp. ERISA Litig.</u>, No. 03-1204.    In

2  <i>Schering-Plough</i>, plaintiffs sought relief in the form of "[a]ctual

3  damages in the amount of any losses the Plan suffered, to be

4  allocated among the Participants' individual accounts in proportion

5  to the accounts' losses." <u>Id.</u> at 9.    The New Jersey court relied on

6  this language and found that the suit was on behalf of individuals.

7  <u>Id.</u> at 9-14.    Not all plan beneficiaries possessed stock in the

8  company.    Investing in company stock was just one of several

9  investment alternatives available to plan participants, and the

10  company did not invest in company stock for the benefit of the

11  savings plan.    <u>Id.</u> at 12.

12      Here, the company did invest in company stock in the form of

13  matching contributions.    Therefore, all plan participants were

14  impacted by Syncor stock.    The Court finds that the relief sought

15  would benefit the plan.    The Court declines to find that a request

16  to allocate relief among the Participants' individual accounts in

17  proportion to the accounts' losses constitutes individual relief.

18  The Court agrees with Plaintiffs that such a finding would leave

19  401(k) plan participants without a remedy for money damages under

20  ERISA.[8]    As such, the Court finds that Plaintiffs seek relief on

21  behalf of the Plan as required under ERISA section 502(a)(2).

22          <i>b.    Section 503(a)(3)</i>

23      Because the Court finds that Plaintiffs may seek monetary

24  relief under section 502(a)(2), the Court need not determine whether

25  monetary relief is appropriate under section 503(a)(3).

26

27  _____

        8    Defendants argue that this finding might result in a single
28  beneficiary bringing a class action every time the stock prices
    drop.  <u>Reply Syncor</u>, at 13.    The Court finds that sufficient
    procedural safeguards exist to prevent this from occurring.

c. *Injunctive Relief*

Plaintiffs seek equitable relief in the form of either, i) elimination of the Company stock fund as a plan investment alternative; or ii) alternatively a) the appointment to the Committee of a qualified person unaffiliated with Syncor or Cardinal Health, and b) the distribution to Plan participants appropriate materials addressing fully and accurately the risks associated with investment in company stock. Complaint, ¶ 209. Defendants argue that all of Plaintiffs' claims for equitable relief are moot. Motion Syncor, at 21-22. Defendants state that because of the merger with Cardinal Health, the Syncor Plan, in essence, no longer exists. There are no allegations that Cardinal Health is an imprudent investment. Id. Further, Defendants contend that the relief sought is too broad and essentially orders defendants to obey the law. Reply, at 20.

Plaintiffs argue that the claims are not moot because changes made to the plan by Defendants were voluntary and the Defendants may resume the conduct at issue. Opposition, at 15. Plaintiffs also argue that there is overlap between the class period, the amendment of the Plan, and Cardinal's ratification of actions related to the Plan. Id. Plaintiffs contend that they should be entitled to conduct discovery regarding events that have transpired with regard to Syncor's transition to Cardinal Health. Id.

Plaintiffs' complaint alleges that no changes were made to the Plan other than the exchange of Cardinal stock for Syncor. See CC, ¶ 47-49. Defendants request the Court take judicial notice in support of their contentions that the equitable relief sought is moot. Motion Syncor, at 22. Although the Court finds Defendants'

36

1   arguments convincing, it is unwilling at this stage in the

2   litigation to determine what equitable relief is appropriate.

3       Because the Court has determined that Plaintiffs may seek

4   monetary damages, the Court will not dismiss the complaint for lack

5   of standing.  Similarly, the Court will not strike the request for

6   monetary damages or hold Plaintiffs' requests for equitable relief

7   moot.

8

9   **V.   CONCLUSION**

10      The Court hereby:

11  **1.**   **DENIES** Syncor's motion to dismiss or in the alternative motion

12       to strike monetary damages;

13  2.   **GRANTS** Defendants' motion to dismiss **Claim One** as to the

14       Committee Defendants, but not as to Syncor;

15  3.   **DENIES** Defendants' motion to dismiss **Claim Two;**

16  4.   **GRANTS** Defendants' motion to dismiss **Claim Three** against the

17       Committee Defendants and Syncor;

18  5.   **GRANTS** Defendants' motion to dismiss **Claim Four** against all

19       Defendants;

20  6.   **GRANTS** Defendants' motion to dismiss all **co-fiduciary claims**

21       against the defendants.

22

23  **IT IS SO ORDERED.**

24  **DATED:  August 23, 2004**

25                                        **LOURDES G. BAIRD**

26                                        **United States District Judge**

27

28