

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

CASE NO. 04-3073

———

IN RE SCHERING-PLOUGH CORPORATION ERISA LITIGATION

JINGDONG ZHU, on behalf of himself and all others similarly situated;
ADRIAN FIELDS, on behalf of himself and all others similarly situated,

Appellants.

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
OF NEW JERSEY

———

BRIEF OF AMICUS CURIAE ELAINE L. CHAO, SECRETARY OF THE
UNITED STATES DEPARTMENT OF LABOR SUPPORTING THE
PLAINTIFFS-APPELLANTS AND REQUESTING REVERSAL OF
THE DISTRICT COURT'S DECISION

———

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

ELIZABETH HOPKINS
Counsel for Appellate and
 Special Litigation

THERESA S. GEE
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Room N-4611
Washington, D.C. 20210
(202) 693-5600  Telephone
(202) 693-5610  Facsimile

## STATEMENT OF SECRETARY OF LABOR AS AMICUS CURIAE

Elaine L. Chao, Secretary of Labor, United States Department of Labor, is entitled to file a brief as amicus curiae without the consent of the parties or leave of court, pursuant to Fed. R. App. P. 29(a).

# TABLE OF CONTENTS

Page

Statement of Secretary of Labor as Amicus Curiae ............................. i

Statement of Issue.................................................................................. 1

Interest of the Secretary of Labor ......................................................... 1

Statement of the Case .......................................................................... 2

Summary of Argument.......................................................................... 6

Argument............................................................................................... 7

    I.     Contributions To The Plan, Including Employee
          Contributions, Are Allocated to Individual
          Accounts, But Remain Plan Assets ................................. 7

    II.    The Plaintiffs Seek Appropriate Relief for Losses
          To The Plan Within The Meaning Of Sections
          409(a) And 502(a)(2)....................................................... 12

    III.   The District Court's Opinion Eviscerates The
          Protections Of Sections 409(a) And 502(a)(2)
          For 401(k) Plans And Could Leave Participants
          In Such Plans Without Any Means To Remedy
          Fiduciary Breaches ......................................................... 20

Conclusion............................................................................................ 24

Certificate of Service............................................................................ 25

Certificate of Compliance .................................................................... 26

ii

## TABLE OF AUTHORITIES

**Cases**:                                                                          Page

Allison v. Bank One-Denver,
    289 F.3d 1223 (10th Cir. 2002) ..................................... 17

Bowerman v. Wal-Mart Stores, Inc.,
    226 F.3d 574 (7th Cir. 2000) ......................................... 23

Brandon v. Aetna Servs., Inc.,
    156 F. Supp. 2d 167 (D. Conn. 2000)............................ 22

Carducci v. Aetna U.S. Healthcare,
    247 F. Supp. 2d 596 (D.N.J. 2003)................................ 21

Courson v. Bert Bell NFL Player Retirement Plan,
    214 F.3d 136 (3d Cir. 2000) .......................................... 21

In re: Dynegy, Inc. ERISA Litig.,
    309 F. Supp. 2d 861 (S.D. Tex. 2004)........................... 11,12

In re Enron Corp. Sec., Derivative & ERISA Litig.,
    284 F. Supp. 2d 511 (S.D. Tex. 2003)........................... 11,12,17

FMC Med. Plan v. Owens,
    122 F.3d 1258 (9th Cir. 1997) ....................................... 23

Franklin v. First Union,
    84 F. Supp. 2d 720 (E.D. Va. 2000) .............................. 17

Great-West Life & Annuity Ins. Co. v. Knudson,
    534 U.S. 204 (2002)....................................................... 23

Helfrich v. PNC Bank, Kentucky, Inc.,
    267 F.3d 477 (6th Cir. 2001), cert. denied,
    535 U.S. 928 (2002)....................................................... 23

Kerr v. Charles F. Vatterott & Co.,
    184 F.3d 938 (8th Cir. 1999) ......................................... 23

Kling v. Fid. Mgmt. Trust Co.,
    270 F. Supp. 2d 121, modified, 291 F. Supp. 2d 1
    (D. Mass. 2003) ............................................................ 18,20

Kuper v. Iovenko,
    66 F.3d 1447 (6th Cir. 1995) ......................................... 7,18

Livers v. Wu,
    6 F. Supp. 2d 921 (N.D. Ill. 1998) ................................. 12

McLeod v. Hartford Life & Accident Ins. Co.,
    372 F.3d 618 (3d Cir. 2004) ........................................... 21

Massachusetts Mut. Life Ins. Co v. Russell,
    473 U.S. 134 (1985)........................................... 7,13,14,15,16,18,21

Matassarin v. Lynch,
    174 F.3d 549 (5th Cir. 1999) ......................................... 19,20

Mertens v. Hewitt Assocs.,
    508 U.S. 248 (1993)........................................................ 23

Mitchell v. Eastman Kodak Co.,
    113 F.3d 433 (3d Cir. 1997) ........................................... 21

PBGC v. Solmsen,
    671 F. Supp. 938 (E.D.N.Y. 1987) ................................. 12

Professional Helicopter Pilots Ass'n v. Denison,
    804 F. Supp. 1447 (M.D. Ala. 1992)............................... 12

Rego v. Westvaco Corp.,
    319 F.3d 140 (4th Cir. 2003) ......................................... 23

In re Schering-Plough Corp. ERISA Litig.,
    No. 03-1204, 2004 WL 1774760
    D.N.J. June 28, 2004) ..................................................... 4,5,11,19,21

In re Sears, Roebuck & Co. ERISA Litig.,
   No. 02 C 8324, 2004 WL 407007
   (N.D. Ill. Mar. 3, 2004)................................................... 11,12

Steinman v. Hicks,
   352 F.3d 1101 (7th Cir. 2003) ........................................ 19

Strom v. Goldman, Sachs & Co.,
   202 F.3d 138 (2d Cir. 1999) .......................................... 23

Turner v. Fallon Cmty. Health Plan,
   127 F.3d 196, 198 (1st Cir. 1997).................................. 21-22

In re Unisys Sav. Plan Litig.,
   74 F.3d 420 (3d Cir. 1996) ........................................... 16,17

U.S. v. Grizzle,
   933 F.2d 943 (11th Cir. 1991) ....................................... 12

Varity Corp. v. Howe,
   516 U.S. 489 (1996)....................................................... 15,23

In re WorldCom, Inc. ERISA Litig.,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ............................ 19

**Statutes and Regulations**:

Employee Retirement Income Security Act of 1974, as
   amended, 29 U.S.C. § 1001, et seq. ................................ 1

   Section 3(34), 29 U.S.C. § 1102(34) ............................... 8,20

   Section 403, 29 U.S.C. § 1103......................................... 11,20

   Section 403(a), 29 U.S.C. § 1103(a)................................. 9

   Sections 404-409, 29 U.S.C. §§ 1104-1109 .................... 11

   Section 404(c), 29 U.S.C. § 1104(c)................................. 17

Section 409, 29 U.S.C. § 1109.......................................... passim

Section 409(a), 29 U.S.C. § 1109(a)................................. passim

Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ........... 21,22

Section 502(a)(2), 29 U.S.C. § 1132(a)(2) ...................... passim

Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ...................... 22,23

Section 502(a)(5), 29 U.S.C. § 1132(a)(5) ...................... 22,23

29 C.F.R. § 2510.3-102.............................................. 8

29 C.F.R. § 2510.3-102(a), (b).................................... 11

29 C.F.R. § 2510.3-102(f)(1)-(3) ................................. 12

29 C.F.R. § 2550.404c-1 ........................................... 17

Internal Revenue Code § 401(a) ................................. 9

Internal Revenue Code § 401(k) ................................. 3

Fed. R. App. P. 29 .................................................... 2

Rev. Rul. 89-52, 1989-1 C.B. 110, 1989 WL 572038
(Apr. 10, 1989)................................................. 10

**Other Authorities**:

Fed. Res. Bd., Flow of Funds Accounts of the United
States:  Flows and Outstandings, Second
Quarter 2004, Fed. Res. Statistical Release Z.1,
at 113 (Sept. 16, 2004)....................................... 1

47th Annual Survey of Profit Sharing and
401(k) Plans, Profit Sharing/401k Council of
America, Overview of Survey Results,
www.psca.org/DATA/47th.html ...................... 2

Dana Muir, ERISA and Investment Issues,
     65 Ohio St. L. J. 199 (2004) ............................................ 10

Dan M. McGill, et al., Fundamentals of Private
     Pensions (7th ed. 1996)...................................................... 8

See 1 Michael J. Canan, Qualified Retirement
     Plans, ¶ 3.1 (Practitioner ed. 1999)................................... 9

David A. Littell, et al., Retirement Savings Plans:
     Design, Regulation, and Administration of
     Cash or Deferred Arrangements (1993) ........................... 9

## STATEMENT OF ISSUE

Whether participants in a defined contribution pension plan have standing to sue plan fiduciaries under sections 409(a) and 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109(a) and 1132(a)(2), to recover losses sustained by the plan as a result of fiduciary breaches, where such losses will be allocated to individual accounts within the defined contribution plan.

## INTEREST OF THE SECRETARY OF LABOR

The Department of Labor is the federal agency with primary interpretation and enforcement authority over the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq. As such, the Department of Labor has a strong interest in ensuring that courts correctly interpret ERISA. This case presents an important and recurring issue – whether participants in individual account plans may obtain relief to the plan under sections 409(a) and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109(a) and 1132(a)(2), when the alleged fiduciary violations affected some, but not all, of the plan participants' accounts. At the end of 2003, over $2 trillion of all private pension plan assets were held in individual account plans, representing well over half of all pension plan assets. Fed. Res. Bd., <u>Flow of Funds Accounts of the United States: Flows and Outstandings, Second Quarter 2004</u>, Fed. Res. Statistical Release Z.1, at 113 (Sept. 16, 2004). In fact, according to one major survey

1

conducted in 2003, 82.2 percent of eligible employees participated in 401(k) plans. 47th Annual Survey of Profit Sharing and 401(k) Plans, Profit Sharing/401k Council of America, Overview of Survey Results, www.psca.org/DATA/47th.html. If the district court opinion is affirmed, scores of participants in individual account plans, including many who have been harmed by plan investments in employer stock, may be unable to recover losses caused by fiduciary breaches.[1]

The Secretary believes that the district court erred in dismissing the case below and, therefore, pursuant to Fed. R. App. P. 29, respectfully submits this brief as amicus curiae.

### STATEMENT OF THE CASE

The plaintiffs were former employees of Schering-Plough Corporation ("Schering-Plough" or "Company"), a pharmaceutical research, development and production company.[2] Appellants' Appendix ("A") A48, ¶ 3; A49, ¶¶ 9, 10; A69-70, ¶¶ 69, 70. The Company sponsored the Schering-Plough Corporation Employees' Savings Plan ("Plan"), a defined contribution plan within the meaning

---

[1] If relief is not available under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), private plaintiffs and the Secretary may well be without an adequate remedy in cases involving individual account plans. *See infra*.

[2] The Secretary takes no position on the factual matters presented by this case. Nor does she take a position on the merits of the case. The Statement of the Case is taken from the plaintiffs' complaint and is not intended to express the Secretary's opinion about how the Court should rule on any particular fact.

of ERISA and Internal Revenue Code section 401(k). A47-48, ¶¶ 1, 2; A56-57, ¶¶ 31, 32, 34. The Plan offered a variety of investment options, including a fund comprised of Company stock. A48, ¶ 2; A56-57, ¶ 34. Plan participants contributed a portion of their compensation to the Plan and directed the Plan to place the funds in the investments selected by the participants, which included the Company stock fund. A56-57, ¶ 34. The Consolidated Complaint does not allege whether Schering-Plough made any employer contributions to the Plan.

The plaintiffs allege that the Company's struggle to develop and introduce a new allergy medication to the public resulted in considerable capital expenditures, substantial losses in revenue and extensive fines imposed by the Food and Drug Administration and the Securities and Exchange Commission. A72-73, ¶¶ 76-78; A78, ¶ 91; A78-79, ¶ 95; A83-84, ¶ 106. As a result, the plaintiffs allege that the value of Schering-Plough's stock fell from over $60 per share to less than $20 per share. A84-85, ¶ 109. As of December 31, 2001, employer stock constituted approximately 31 percent of Plan assets, and accounted for more than 87 percent of the reduction in the value of the Plan's investments for that fiscal year. A57, ¶ 36. The following year, the Plan lost another $110,000,000, with more than half of that amount due to losses from Company stock. A57, ¶ 36.

Through the Complaint, the plaintiffs seek to recover the losses suffered by the Plan as a result of the investments in Company stock during the period in

3

question.  A48, ¶ 4; A110, ¶ 168; A111, ¶ 172; A112, ¶ 175; A113-14, Prayer for

Relief.  The plaintiffs brought suit on behalf of the Plan and a class consisting of

its participants and beneficiaries.  A48, ¶¶ 1, 3; A48-49, ¶¶ 6, 9, 10; A67, ¶ 62.

The class members consist of all plan participants whose accounts included

employer stock after July 28, 1998.[3]  A67, ¶ 62.  The defendants are the Company;

its individual officers and directors, in their corporate capacities and as Plan

fiduciaries; and The Vanguard Group, as directed trustee of the Plan.  A49-56, ¶¶

11-29.

The plaintiffs alleged that the defendants made material misrepresentations

or omitted or concealed material facts about the Company's profitability that

induced Plan participants to buy or continue to hold employer stock.  A66-67, ¶¶

59-60; A85-89, ¶¶ 111-122.  Additionally, the plaintiffs alleged that although

defendants knew or should have known that the value of the Company stock was

---

[3]  The defendants have latched on to language in Paragraph 62 of the Consolidated
Complaint that appears to exclude from the class current employees who are Plan
participants.  Defendants' Amended Memorandum of Law in Support of
Defendants' Motion to Dismiss the Consolidated Complaint, pp. 5, 6-7; Reply
Memorandum of Law in Support of Defendants' Motion to Dismiss the
Consolidated Complaint, pp. 2-3; Transcript of Oral Argument ("Transcript"), p.
52:6-26.  The Plaintiffs insist that current employees are members of the class and,
to the extent necessary, intend to seek leave to amend the Complaint.  Plaintiffs'
Memorandum of Law in Response to the Schering Defendants' Motion to Dismiss,
pp. 3-4 and n.4; Transcript, pp. 54:9-55:11.  In its opinion, the district court did not
address the discrepancy.  In re Schering-Plough Corp. ERISA Litig., No. 03-1204,
2004 WL 1774760 (D.N.J. June 28, 2004).  Regardless of whether current
employees are members of the class, the complaint is clearly brought on behalf of
the Plan to recover losses to the Plan.

4

inflated, they continued to offer it as an investment option. A66-67, ¶¶ 59-60; A85-89, ¶¶ 111-122.

Based on this conduct, the plaintiffs asserted that the defendants breached their fiduciary duties of loyalty and prudence, and their duty to diversify plan investments. A91-112, ¶¶ 131-176. The plaintiffs sought, inter alia, an "[o]rder compelling the defendants to make good to the Plan all losses to the Plan resulting from defendants' breaches of their fiduciary duties, . . . all profits the defendants made through use of the Plan's assets, and . . . all profits which the Participants would have made if the defendants had fulfilled their fiduciary obligations." A113, Prayer for Relief.

The defendants filed a motion to dismiss the entire complaint, arguing that, although the complaint was brought under section 502(a)(2), the plaintiffs only sought individual, not plan-wide relief. The defendants also made a number of other arguments for dismissal of the complaint. On June 28, 2004, the district court granted the defendants' motion to dismiss, ruling that the plaintiffs lacked standing to bring their claim under sections 409 and 502(a)(2) of ERISA because they sought recovery of individualized losses, not Plan-wide relief. In re Schering-Plough Corp. ERISA Litig., 2004 WL 1774760, at **8, 14, 15. Based on this ruling, the district court did not reach the defendants' other arguments in favor of dismissal. Id. at *15.

5

## SUMMARY OF ARGUMENT

All defined contribution plans hold assets of the plans in trust for the benefit of their participants and beneficiaries. The amount of plan assets fluctuates as a result of contributions, gains, losses, expenses and distributions. Plan assets are allocated among individual accounts as a means of accounting for each participant's retirement benefit. Any contributions to the plan, whether made by the employer or the employees, once received by the plan, become and remain plan assets for as long as they are held in the plan, without regard to any subsequent allocation among "individual accounts." Similarly, whether investment decisions are made by the plan or its participants, the monies held in the plan and its accounts are plan assets. A loss to those funds constitutes a loss to the plan.

ERISA section 409(a) expressly provides for recovery of "any losses" to the plan caused by a fiduciary breach. ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), in turn, permits an action to be brought for "appropriate relief under §409," 29 U.S.C. § 1109(a). Thus, a plan fiduciary who breaches his duties and causes a loss to the plan is subject to liability under ERISA sections 409(a) and 502(a)(2), and must restore the losses to the plan. In this case, assuming the allegations in the complaint to be true, the plaintiffs' action under section 502(a)(2) to recover losses for the Plan is proper and the district court erred in dismissing the complaint.

6

The Supreme Court's decision in <u>Massachusetts Mut. Life Ins. Co v. Russell</u>, 473 U.S. 134 (1985), made clear that sections 409 and 502(a)(2) were intended to give relief directed to the plan, rather than to individual plan participants, for fiduciary violations. <u>Id.</u> at 140 (the relief must "inure[] to the benefit of the plan as a whole"). The Supreme Court did not hold that losses are only recoverable under sections 409 and 502(a)(2) if they are allocated to every participant in the plan. It would be contrary to the intent and text of those sections to hold that plan fiduciaries who violate ERISA's fiduciary standards are not liable simply because their violation did not affect the accounts of every single (or even most) plan participants. That result would leave participants in 401(k) plans covered by ERISA potentially unprotected from fiduciary violations.

## ARGUMENT

I.    <u>Contributions To The Plan, Including Employee Contributions, Are Allocated To Individual Accounts, But Remain Plan Assets</u>

The erroneous result reached by the district court in this case appears to have resulted from the court's fundamental misconception of the structure, under ERISA, of defined contribution plans, such as this one, and the nature of such plans' assets. First, the existence of individual accounts within defined contribution plans does not change the nature of the assets as plan assets. <u>See</u> <u>Kuper v. Iovenko</u>, 66 F.3d 1447 (6th Cir. 1995). Defined contribution plans hold assets in trust for the participants and beneficiaries and, in all such plans, the value

of those plan assets increase or decrease as a result of contributions, gains, losses, expenses or benefit distributions. The individual accounts do not provide for individual ownership, but rather serve the administrative purpose of accounting for each participant's retirement benefit within the plan. Second, the district court was under the misperception that only employer contributions to a defined contribution plan constitute plan assets. To the contrary, all contributions from the employer and the employee alike, as well as all income and gains, constitute assets of and belong to the plan. See 29 C.F.R. § 2510.3-102. Any reduction in those assets is a loss to the plan.

Under section 3(34) of ERISA, 29 U.S.C. § 1102(34), a defined contribution pension plan is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Although each participant in a defined contribution pension plan has his own "account," the account is simply a bookkeeping device to record the participant's interest in the plan. The actual plan assets consist of the total of the amounts recorded in each individual "account." Dan M. McGill, et al., Fundamentals of Private Pensions, p. 247 (7th ed. 1996) ("the sum of all of the account balances . . . equals the total market value of the

8

plan's assets"). For example, employee contributions may be invested in one mutual fund or certificate of deposit, yet are allocated among separate individual "accounts." See 1 Michael J. Canan, Qualified Retirement Plans, ¶ 3.1 (Practitioner ed. 1999) ("even though employer contributions . . . [are] credited to separate accounts for each employee, the trustee invests all of the funds in one certificate of deposit.").

The plan's assets – consisting of all contributions and earnings – are required to be held in trust by one or more trustees who have authority and discretion to manage and control the assets of the plan. See ERISA § 403(a), 29 U.S.C. § 1103(a); IRC § 401(a). Upon receipt of the employee contributions weekly, bi-weekly or monthly, the plan fiduciary or custodian allocates, through accounting or bookkeeping entries, the plan assets to the various individual participant "accounts." Regardless of the allocation, these assets retain their nature as plan assets and the plan fiduciary retains its obligation to perform its fiduciary duties with respect to those assets. Thus, "contributions are made to a single funding vehicle, usually a trust," and "as amounts are contributed to the trust, they are allocated to the participant's account." David A. Littell, et al., Retirement Savings Plans: Design, Regulation, and Administration of Cash or Deferred Arrangements, p. 6 (1993).

9

Although the plan assets are allocated to individual "accounts," the participants do not have ownership of their accounts; legal title to all of the trust assets is held by the trustee. <u>See</u> Rev. Rul. 89-52, 1989-1 C.B. 110, 1989 WL 572038 (Apr. 10, 1989) ("While a qualified trust may permit a participant to elect how amounts attributable to the participant's account-balance will be invested, it may not allow the participant to have the right to acquire, hold and dispose of amounts attributable to the participant's account balance at will.") (citations omitted). The total amount of assets held in the plan are not only used to pay plan benefits, but are also used to defray the cost of operating the plan, including recordkeeping, legal, auditing, annual reporting, claims processing and similar administrative expenses. Accordingly, whenever there is a loss to an individual "account" in a defined contribution benefit plan, such as the Plan here, there is a corresponding loss to the plan as a whole. As Professor Dana Muir, a noted commentator on ERISA, has pointed out, "[i]n [defined contribution] plans, fiduciary breaches that cause loss to the plan typically cause that loss by affecting the value of individual participants' accounts." Dana Muir, <u>ERISA and Investment Issues</u>, 65 Ohio St. L. J. 199, 235 (2004).

10

Nor does the fact that the contributions came solely from employees mean that there were no plan assets at issue, as the district court mistakenly concluded.[4] To the contrary, company stock or any other asset held in an individual account plan is a plan asset, subject to the trust requirement in section 403 of ERISA, 29 U.S.C. § 1103, and to all ERISA fiduciary duties unless specifically exempted. See generally 29 U.S.C. §§ 1104-1109. This is clearly stated in the DOL regulation providing that participant contributions (such as those withheld from wages) become plan assets subject to ERISA "as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets," and no later than the time frame set forth in the regulation. 29 C.F.R. § 2510.3-102(a), (b). Most of the examples contained in that regulation involve 401(k) plans, the type of individual account plan at issue here, and those examples plainly state that participant contributions become plan assets as soon as the employer's

---

[4] On this basis, the court distinguished In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511 (S.D. Tex. 2003), In re Sears, Roebuck & Co. ERISA Litig., No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) and In re: Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861 (S.D. Tex. 2004), all of which involved allegations of fiduciary breaches in connection with employer stock. The court reasoned that in those cases, "the company's investment of company stock created plan assets," and that the plan "could recover for the loss of the value of those assets." Schering-Plough, 2004 WL 1774760, at *7. In contrast, here, according to the district court, "the only contributions were those made by employees, which remained in individual accounts and never [became] assets of the . . . Plan." Id. As argued above, however, all of the assets held in trust for the plan, its participants, and beneficiaries are plan assets regardless of their source.

11

payroll system allows them to be identified and segregated from the general assets of the employer. 29 C.F.R. § 2510.3-102(f)(1)-(3). The swiftness with which employee contributions become plan assets and therefore protected under ERISA acknowledges how seriously plan fiduciaries must conduct themselves in handling those assets. Thus, rather than losing their character as plan assets when allocated to individual accounts, employee contributions become plan assets precisely when they are or can be so allocated.[5] Therefore, the participants' contributions to the Schering-Plough Plan are without doubt assets of the Plan, and the district court's basis for distinguishing the opinions in the Enron, Sears, Roebuck and Dynegy cases was in error.

II.    The Plaintiffs Seek Appropriate Relief For Losses To The Plan Within The Meaning Of Sections 409(a) And 502(a)(2)

Given this understanding of the nature of defined contribution plans, it is clear that the relief sought by the plaintiffs in this case falls within the express language of sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2), which require a plan fiduciary that breaches its duties to make good

---

[5] Indeed, employee contributions that are withheld by the employer and not received by the plan are nonetheless plan assets and may be recovered as a loss to the plan. See e.g., U.S. v. Grizzle, 933 F.2d 943, 947 (11th Cir. 1991); Livers v. Wu, 6 F. Supp. 2d 921, 928 (N.D. Ill. 1998); Professional Helicopter Pilots Ass'n v. Denison, 804 F. Supp. 1447, 1453 (M.D. Ala. 1992); PBGC v. Solmsen, 671 F. Supp. 938, 945-46 (E.D.N.Y. 1987).

12

"any losses" to the plan, not only losses that affect every participant's account.[6]
Section 502(a)(2) provides that an action may be brought "for appropriate relief
under §409." 29 U.S.C. § 1132(a)(2). The Complaint here seeks millions of
dollars in losses to the Plan allegedly stemming from fiduciary breaches under
these provisions. Nothing in sections 409 or 502(a)(2) exempts defined
contribution pension plans from their scope.

The Supreme Court's decision in Massachusetts Mut. Life Ins. Co v. Russell,
473 U.S. 134, is not to the contrary. Unlike this case, Russell involved a claim by
a plaintiff for a direct recovery of individual damages stemming from a denial of
benefits. In Russell, a plan's disability committee terminated and then reinstated a
participant's disability benefits. Claiming losses as a result of the interruption in
benefit payments, the participant brought suit under section 502(a)(2) for
compensatory and punitive damages, payable not to the plan for a loss of plan
assets, but directly to the individual participant for injuries she personally
sustained. Id. at 137-38. After reviewing the text of section 409, the provisions

---

[6]  ERISA section 409(a), 29 U.S.C. § 1109(a), reads:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this title
> shall be personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any profits of
> such fiduciary which have been made through use of assets of the plan by
> the fiduciary, and shall be subject to such other equitable or remedial relief
> as the court may deem appropriate, including removal of such fiduciary.

13

defining the duties of a fiduciary and the provisions defining the rights of a
beneficiary, the Supreme Court held that the participant did not have standing to
seek extra-contractual compensatory or punitive damages for improper or untimely
processing of a benefit claim under sections 409 and 502(a)(2) of ERISA.
Although sections 409 and 502(a)(2) of ERISA provide for the recovery of plan
losses, those remedial provisions did not create an extra-contractual remedy for the
individual injuries sustained by the participant in connection with her benefit
claim.  In so holding, the court stated "that recovery for a violation of § 409 inures
to the benefit of the plan as a whole."  Id. at 140.

Russell carefully distinguished relief to be paid to a plan as damages for the
mismanagement of plan assets, as sought here, from relief to be paid to an
individual as damages for personal pain and suffering caused by a benefit payment
delay, as sought in Russell.  473 U.S. at 143-44.  In Russell, the plaintiff sought
individualized relief, payable to herself, for alleged injuries that she personally
incurred without regard to whether the plan had suffered any loss or diminution of
assets.  She did not allege any injury to the plan or reduction of its assets, nor did
she seek a recovery payable to the plan.  Thus, Russell cannot in any way be read
to exclude from the scope of section 409(a) an action on behalf of a plan to recover
losses caused by fiduciary breaches related to plan management.

14

Indeed, as the Supreme Court noted in <u>Russell</u>, "the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of . . . assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." 473 U.S. at 142-43. Thus, the Court pointed out in <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), that the specific purpose of section 502(a)(2) is to allow suits to enforce "fiduciary obligations related to the plan's financial integrity," <u>id.</u> at 512, in accordance with "a special congressional concern about plan asset management" reflected in section 409, <u>id.</u> at 511; <u>see also</u> <u>Russell</u>, 473 U.S. at 140 n.8 ("the crucible of congressional concern was [the] misuse and mismanagement of plan assets by plan administrators and . . . ERISA was designed to prevent abuses in the future").

In this case, the allegations of the complaint fall precisely within this area of special congressional concern at which sections 409 and 502(a)(2) of ERISA are aimed. The complaint alleges that the Plan fiduciaries mismanaged plan assets and abused their fiduciary positions by placing corporate interests above those of the Plan. As a direct result of their misconduct, the Plan holds millions of dollars less in trust for its participants and beneficiaries. To interpret section 409(a) as disallowing relief where losses will be allocated to the individual accounts that make up all defined benefit plans, or as limiting relief to losses that affect every participant's account, would contradict the Supreme Court's admonition in <u>Russell</u>

15

that courts should be "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." 473 U.S. at 147.

There is, therefore, no basis for reading Russell so broadly that losses caused by fiduciary mismanagement, that significantly diminish the retirement security of participants or the amount of assets held in trust, cannot be recovered unless all of the participants are affected. Here, as in the typical 401(k) plan, participants are given several investment options with differing degrees of risk and return. See, e.g., In re Unisys Sav. Plan Litig., 74 F.3d 420, 426 (3d Cir. 1996) (describing the various investment options in the Unisys Savings Plan). If the district court and the defendants' broad arguments are correct, participants in 401(k) plans and other individual account plans, such as the Enron plans, would be unable to recover losses to the plan caused by fiduciary breaches, at least under section 502(a)(2), even if the majority of the plans' participants lost most of their retirement savings as a direct result of such breaches.

Thus, although the participants in defined contribution plans are given a measure of control over investment decisions, the plan fiduciaries nevertheless retain the duty to choose those options prudently, to monitor the options, and to communicate truthfully with plan participants and beneficiaries concerning the

16

options.[7]  See In re Unisys, 74 F.3d at 442 (the duty to speak truthfully and to

convey complete and accurate information about investment options applies when

participants are charged with directing the investment of their contributions among

a plans' various funds); Franklin v. First Union, 84 F. Supp. 2d 720, 735 (E.D. Va.

2000) (fiduciary had "a duty to notify the plaintiffs of the changes in the

investment funds in such a manner as to prevent any misinformation to and

misleading of the plaintiffs regarding their options"); Enron, 284 F. Supp. 2d 511.

If, as the plaintiffs allege, the fiduciaries have breached those duties, the plaintiffs

have the right, as determined by Congress, to seek relief on behalf of the Plan

under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).  The fact that the Plan,

like all defined contribution plans, provides for individual accounts, does not

remove it from the protection of ERISA, or make any less applicable Congress'

goal to protect retirement plans and their participants.

---

[7]  This is true even if the Plan here meets the requirements of ERISA section
404(c), 29 U.S.C. § 1104(c), and its implementing regulation, 29 C.F.R. §
2550.404c-1, which govern plans that are designed and operated to allow
participants to exercise independent control over the assets in their account.
Although in such a case the fiduciaries are given a limited pass on liability
stemming from the participant's exercise of control over their investment decisions,
section 404(c) fiduciaries are still obligated to prudently select the available
investment options and to monitor their performance.  Moreover, whether this Plan
meets the requirements of section 404(c) and the regulation is a factual issue,
which has not yet been decided and on which the defendants bear the burden of
proof.  See In re Unisys, 74 F.3d at 446; Allison v. Bank One-Denver, 289 F.3d
1223, 1238 (10th Cir. 2002).

The Sixth Circuit's analysis in <u>Kuper v. Iovenko</u>, 66 F.3d 1447 is precisely on

point. In <u>Kuper</u>, the defendants alleged that the plaintiff class failed to state a

claim for breach of fiduciary duty under section 409 because the class did not

include all of the plan's beneficiaries. <u>Id.</u> at 1452. The Sixth Circuit cited cases

holding that recovery under section 409 must go to the plan, and stated that the

cases "distinguish between a plaintiff's attempt to recover on his own behalf and a

plaintiff's attempt to have the fiduciary reimburse the plan." <u>Id.</u> at 1452-53. The

Sixth Circuit concluded that a subclass of plan participants may sue for a breach of

fiduciary duty under section 409 and noted the policy reasons for the result:

> Defendants' argument that a breach must harm the entire plan to
> give rise to liability under § 1109 would insulate fiduciaries
> who breach their duty so long as the breach does not harm all of
> a plan's participants. Such a result clearly would contravene
> ERISA's imposition of a fiduciary duty that has been
> characterized as "the highest known to law."

<u>Id.</u> at 1453 (citations omitted). <u>Accord</u> <u>Kling v. Fid. Mgmt. Trust Co.</u>, 270 F.

Supp. 2d 121, 126-27, modified, 291 F. Supp. 2d 1 (D. Mass. 2003) ("Kling does

sue on behalf of the Plan, and thus meets the requirements of § 409 as interpreted

by the Supreme Court in <u>Russell</u>. That the harm alleged did not affect every single

participant does not alter this conclusion. To read such a requirement into § 409

that the harm alleged must affect every plan participant would, as the Sixth Circuit

observed, 'insulate fiduciaries who breach their duty so long as the breach does not

18

harm all of a plan's participants.'"). See also Steinman v. Hicks, 352 F.3d 1101

(7th Cir. 2003) (clarifying that a claim for losses relating to financial

mismanagement is properly brought under section 502(a)(2) even if the relief

ultimately flows to individuals); In re WorldCom, Inc. ERISA Litig., 263 F. Supp.

2d 745, 765 (S.D.N.Y. 2003) (allowing claim under section 502(a)(2) based on

allegations that 401(k) plan fiduciaries "were obligated to but failed to act with

prudence regarding the Plan's continued offer of WorldCom stock as a Plan

investment").[8]

   Nor is the Fifth Circuit opinion in Matassarin v. Lynch, 174 F.3d 549 (5th

Cir. 1999), to the contrary. The plaintiff in Matassarin brought suit under section

502(a)(2) alleging that her account balance was miscalculated, that she should be

entitled to an immediate cash distribution and that the plan fiduciaries had

breached their duties by failing to comply with the tax code, which jeopardized the

plan's tax qualified status. As the court correctly noted, only the allegation

concerning the tax-qualified status of the plan was properly brought under section

502(a)(2) because it involved the interest of the plan as a whole. Id. at 565-66.

The other allegations could not be brought under section 502(a)(2) because, unlike

---

[8] The district court below misread WorldCom as an action that did "not seek plan-wide relief," and erroneously distinguished the case on that basis. Schering-Plough, 2004 WL 1774760, at *7. To the contrary, the WorldCom litigation was brought on behalf of the plan for plan-wide relief under section 502(a)(2). See WorldCom, 263 F. Supp. 2d at 753, 759.

in this case, they did not concern an alleged injury to the plan, such as the diminution of current participants' accounts and the resulting diminution of the amount of plan assets held in trust. Id. at 567-78; see Kling, 270 F. Supp. 2d at 126 (distinguishing Matassarin as involving "a group of plaintiffs who had been treated differently than other participants in the same plan").

Accordingly, Matassarin provides no support for the proposition that relief under section 502(a)(2) for fiduciary mismanagement of plan assets must inure to the benefit of every participant in a 401(k) plan. Instead, because any recovery here will increase the overall assets of the pension plan, such recovery will inure to the benefit of the plan and must be allowed under section 502(a)(2), even if the recovery is allocated to individual accounts and not every participant benefits.

III.    The District Court's Opinion Eviscerates The Protections Of Sections 409(a) And 502(a)(2) For 401(k) Plans And Could Leave Participants In Such Plans Without Any Means To Remedy Fiduciary Breaches

The majority of pension plan assets today, over $2 trillion in such assets, are held by defined contribution, or individual account plans – pension plans in which the entire trust corpus is held in trust by one or more trustees, see section 403, 29 U.S.C. § 1103, and the plan's investment income, expenses, gains, and losses are allocated to participant accounts. See section 3(34) of ERISA, 29 U.S.C. § 1002(34). Of eligible employees, 82.2 percent participate in 401(k) plans. If the district court's view of the law is correct, participants of these plans would be left

without a loss remedy under section 502(a)(2). This result is unsupported by the statute and could leave untold numbers of plan participants with no legal protection from plan losses caused by breaching fiduciaries, a result Congress could not have intended.

The district court below mistakenly suggests that the plaintiffs here could have brought an action under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). <u>Schering-Plough</u>, 2004 WL 1774760, at *9. Section 502(a)(1)(B) permits actions "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

This court has repeatedly recognized that a benefits claim under section 502(a)(1)(B) must be brought against a plan or plan administrator for recovery <u>from the plan</u> for benefits due under the Plan. <u>See</u> <u>e.g.</u>, <u>McLeod v. Hartford Life & Accident Ins. Co.</u>, 372 F.3d 618 (3d Cir. 2004) (section 502(a)(1)(B) claim for benefits to be paid from plan); <u>Courson v. Bert Bell NFL Player Retirement Plan</u>, 214 F.3d 136 (3d Cir. 2000) (same); <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433 (3d Cir. 1997) (same); <u>Carducci v. Aetna U.S. Healthcare</u>, 247 F. Supp. 2d 596 (D.N.J. 2003) (502(a)(1)(B) claim can be brought against a plan and plan administrator); <u>see also</u> <u>Russell</u>, 473 U.S. at 143-44; <u>Turner v. Fallon Cmty. Health</u>

Plan, 127 F.3d 196, 198 (1st Cir. 1997) ("The relief expressly provided is to secure

benefits under the plan rather than damages for a breach of the plan."); Brandon v.

Aetna Servs., Inc., 156 F. Supp. 2d 167, 171 (D. Conn. 2000) ("§ 1132(a)(1)(B)

only permits a participant to recover benefits directly from the Plan as an entity.").

These cases make clear that claims brought under section 502(a)(1)(B), 29

U.S.C. § 1132(a)(1)(B), must either challenge a determination of benefits, as

decided by the plan administrator or fiduciary, or seek an adjudication of benefits

under the terms of a plan. A recovery in such a case would come from the plan. In

this case, the plaintiffs are not contesting a benefit determination under the Plan

and do not seek recovery from the Plan. Rather, they seek relief for losses to the

Plan resulting from a fiduciary breach, and request the court to award the losses to

the Plan. Accordingly, the plaintiffs' claim here is properly brought under section

502(a)(2), not section 502(a)(1)(B).

Apart from section 502(a)(2), the only other basis for relief from a fiduciary

breach would be ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) (or section

502(a)(5), 29 U.S.C. § 1132(a)(5), in a case brought by the Secretary). The

Secretary contends that participants can recover under sections 502(a)(2) for losses

to a plan and also under section 502(a)(3) for direct monetary losses caused by a

fiduciary breach. The Secretary can also sue for losses resulting from a fiduciary

breach under section 502(a)(5). The courts, however, have not been uniform in

their approach to such relief under section 502(a)(3).  This court has not considered

the question.  The Fourth, Sixth, Eighth and Ninth Circuits, relying on the Supreme

Court decisions in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204

(2002) and <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248 (1993), have held that

participants cannot obtain such relief.  <u>Rego v. Westvaco Corp.</u>, 319 F.3d 140 (4th

Cir. 2003); <u>Helfrich v. PNC Bank, Kentucky, Inc.</u>, 267 F.3d 477 (6th Cir. 2001),

<u>cert</u>. <u>denied</u>, 535 U.S. 928 (2002); <u>Kerr v. Charles F. Vatterott & Co.</u>, 184 F.3d 938

(8th Cir. 1999); <u>FMC Med. Plan v. Owens</u>, 122 F.3d 1258 (9th Cir. 1997).  The

Second and Seventh Circuits, however, have held that such relief is available.

<u>Strom v. Goldman, Sachs & Co.</u>, 202 F.3d 138, 144 (2d Cir. 1999); <u>Bowerman v.</u>

<u>Wal-Mart Stores, Inc.</u>, 226 F.3d 574, 592 (7th Cir. 2000).  If this court were to find

that a section 502(a)(2) action is not permitted in this case, private plaintiffs and

the Secretary would be without a remedy unless this court holds that make-whole

relief of this kind is available under sections 502(a)(3) and 502(a)(5).

However, regardless of whether there may be an available remedy under

section 502(a)(3), ERISA's "catch-all" provision, ERISA sections 409(a) and

502(a)(2) expressly provide that plan participants may bring suit for losses to the

plan resulting from fiduciary breaches.  There is simply no basis for the denial of

such a remedy here.  <u>See</u> <u>Varity</u>, 516 U.S. at 515 ("We are not aware of any

ERISA-related purpose that denial of a remedy would serve.").

23

CONCLUSION

For the reasons stated above, the decision of the district court should be reversed.

Respectfully submitted,

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

ELIZABETH HOPKINS
Counsel for Appellate and
Special Litigation

THERESA S. GEE
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Room N-4611
Washington, D.C. 20210
(202) 693-5600  Telephone
(202) 693-5610  Facsimile

Dated: October 20, 2004

## CERTIFICATE OF SERVICE

I hereby certify that two (2) copies of the Brief of Amicus Curiae Elaine L.

Chao, Secretary of the United States Department of Labor Supporting the

Plaintiffs-Appellants and Requesting Reversal of the District Court's Decision were

mailed, via federal express overnight delivery or courier service, on this 20th day

of October, 2004, to the following parties:

By Federal Express:

Richard S. Schiffrin
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Schiffrin & Barroway LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004

Joseph DePalma
Lite DePalma Greenberg
& Rivas, LLC
Two Gateway Center
12th Floor
Newark, New Jersey 07102

Douglas S. Eakeley
Lowenstein Sandler
65 Livingston Avenue
Roseland, New Jersey 07068

By Courier Service:

Ethan M. Posner
Covington & Burling
1201 Pennsylvania Avenue
Washington, D.C. 20004

Theresa S. Gee

25

<u>Certificate Of Compliance With Type-Volume Limitation,
Typeface Requirements, And Type Style Requirements</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

    This brief contains 6012 words, excluding the parts of the brief exempted by

    Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally-spaced typeface using

    Microsoft XP in Times New Roman 14-point font size.


_____
Theresa S. Gee


Attorney for Amicus Curiae
ELAINE L. CHAO, Secretary of Labor
U.S. DEPARTMENT OF LABOR

Dated:  October 20, 2004

26