# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

*IN RE XEROX CORPORATION ERISA LITIGATION*
*Master File No. 02-CV-1138 (AWT)*
*CLASS ACTION*

*This Document Relates to:  ALL ACTIONS*

## UPDATED MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

Steven J. Sacher – ct 24024
William H. Boice – ct 01908
Kilpatrick Stockton LLP
607 – 14th Street, N.W.
Suite 900
Washington, D.C.  20005-2018
(202) 508-5800
**Counsel for All Defendants**
**Except Ms. Myra Drucker**

Benjamin H. Green – ct 2332
William J. Egan – ct 07975
Brown Raysman Millstein
 Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT  06103
(860) 275-6400
**Counsel for All Defendants**

## <u>TABLE OF CONTENTS</u>

Table of Contents ...................................................................................................................i

Table of Authorities.............................................................................................................iii

I.     INTRODUCTION ...........................................................................................1

II.    ARGUMENT ....................................................................................................2

     A.    Summary of Argument .....................................................................2

     B.    Governing Law .................................................................................3

          1.    Standard for a Motion to Dismiss .......................................3

          2.    Scope of Fiduciary Responsibility under ERISA ...............5

          3.    Plan Design is Not Subject to ERISA's Fiduciary Standards;
Plan Management is Distinct From Corporate Management..............7

          4.    Unique Role of EIAPs.........................................................7

          5.    Participant Direction; Company Stock.................................8

     C.    Specific Counts.................................................................................8

          1.    Count I (Alleged Imprudent Investment of Plans' Assets) Fails
to State a Claim Because No Defendant Had Authority or
Control With Respect to Investment in Company Stock ....................8

          2.    Count II – Voluntarily Dismissed .....................................11

          3.    Count III (Alleged Failure to Monitor) Fails to State a
Claim Because No Defendant Had Authority or
Control Respecting Investment in Company Stock ..........................11

          4.    Count IV (Alleged Furnishing of Incomplete and Inaccurate
Information to Participants and Defendants' Failure to Advise
Participants as to the Soundness and Prudence of Xerox Stock)
Fails to State a Claim for the Reasons Described Below in
Paragraphs (a)-(e)...........................................................................12

              (a)    Allegedly incomplete and inaccurate information ...............12

(b)     No defendant had a duty to furnish investment advice
        to participants ................................................................................ 12

(c)     ERISA does not impose on any defendant an obligation
        to disclose inside information ......................................................... 13

(d)     Disclosures made to the general public cannot form the
        basis of a disclosure fiduciary breach claim under ERISA ............... 14

(e)     Plaintiffs have failed to plead Claim IV with the
        specificity required by Rule 9(b) ..................................................... 14

5.      Count V (Alleged Failure to Avoid Conflicts of Interest) Fails to State a
        Claim Because No Defendant Had Authority or Control Respecting
        Investment in Company Stock and Because Plaintiffs Have Not Alleged
        that Any Defendant Breached the ERISA Duty of Loyalty ......................... 15

III.    DISMISSAL OF CLAIMS SEEKING IMPERMISSIBLE ERISA REMEDIES .... 15

IV.     DISMISSAL OF CLAIMS AGAINST SPECIFIC DEFENDANTS ...................... 16

V.      PLAINTIFFS' NOTICES OF SUPPLEMENTAL AUTHORITY ARE INAPPOSITE
        AND, IN ONE INSTANCE, FILED IN ERROR ................................................... 17

VI.     CONCLUSION ...................................................................................................... 19

## **TABLE OF AUTHORITIES**

## <u>CASES</u>

*Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995)...............................................................7

*Cokenour v. Household Int'l., Inc.*, 2004 WL 725973 (N.D. Ill.)........................................4, 5, 11, 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................3

*Crowley v. Corning, Inc.*, 234 F.Supp.2d 222  (W.D.N.Y. 2002) ...............................................................4

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ...............................................................3

*Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922 (2d Cir. 1983) ...............................................................3

*Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir. 1985)...............................................................6

*Great-West Life & Annuity Ins. Co. & Knudson*, 534 U.S. 204, 122 S.Ct. 708 (2002)...................15

*Green v. Maraio*, 722 F.2d 1013 (2d Cir. 1983)...............................................................3

*Gryl ex rel Shire Pharm. Group PLC v. Shire Pharm. Group PLC*,
298 F.3d 136 (2d Cir. 2002) ...............................................................4

*Hull v. Policy Mgmt. Sys. Corp.*, 2001 WL 1836286  (D.S.C. Feb. 9, 2001) ...............................................................13

*Hunter v. Caliber Sys., Inc.*, 220 F.3d 702 (6th Cir. 2000)...............................................................6, 8, 9

*In re Dynegy, Inc. ERISA Litigation,* 309 F.Supp.2d 861 (S.D. Tex. 2004)...............................................................4, 9

*In re Enron Securities, Derivative & ERISA Litigation*,
284 F.Supp.2d 511 (S.D. Tex. 2003) ...............................................................17

*In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588 (N.D.Cal.)...............................................................13, 14

*In re Schering-Plough Corp. ERISA Litigation*, 2004 WL 1774760 (D.N.J.)...............................................................15-16

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir.1996) ...............................................................12

*In re Williams Companies ERISA Litigation*, 271 F.Supp.2d 1328
(N.D. Okla. 2003) ...............................................................5, 10, 11, 14

*In re WorldCom, Inc. ERISA Litigation*, 263 F.Supp.2d 745 (S.D.N.Y. 2003)...............................................................6, 15, 17

*Johnson v. Georgia-Pacific Corporation*, 19 F.3d 1184 (7th Cir.1994)...............................................................6

*Kling v. Fidelity Management & Trust, Co.*, 323 F.Supp.2d 132 (D. Mass. 2004) ...............................................................6

*Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors*, 173 F.3d 313
(5th Cir. 1999) ...............................................................6

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ...................................................................... 3

*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997) ...................................................... 6

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .............................................. 15

*Pegram v. Herdrich*, 530 U.S. 211 (2000) .................................................................. 6, 10

*Penn. Fed. V. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan of Norfolk Southern Corp.*, 2004 WL 228685 (E.D. Pa.) ............................................. 12

*Peregrine Myanmar Ltd. V. Segal*, 89 F.3d 41 (2d Cir. 1996) ...................................... 15

*Rothman v. Gregor*, 220 F.3d. 81 (2d Cir. 2000) ........................................................... 4

*Scheur v. Rhodes*, 416 U.S. 232 (1974) ........................................................................ 3

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) .................................................. 14

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ......................... 7

*Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065 (1996) ................................................. 14

*Vivien v. WorldCom*, 2002 WL 31640557 (N.D. Cal.) ..................................................... 5

*York v. Assoc. of the Bar of the City of New York*, 286 F.3d 122 (2d Cir. 2002) .............................. 4

*Zito v. SBC Pension Benefit Plan*, No. 3:02CV277(JBA), 2002 WL 31060363 (D. Conn.) ............. 4

**STATUTES**

ERISA § 3(9) ................................................................................................................ 19

ERISA § 3(14) .............................................................................................................. 19

ERISA § 3(21) ..................................................................................................... 5, 6, 12, 19

ERISA § 402 ................................................................................................................. 19

ERISA § 404 ................................................................................................................... 9

ERISA § 405 ................................................................................................................... 6

ERISA § 408 ................................................................................................................... 6

ERISA § 502 ..................................................................................................... 3, 13, 15, 18

ERISA § 514 ................................................................................................................. 13

29 U.S.C. § 1002 ................................................................................................ 5, 6, 12, 19

29 U.S.C. § 1102 ........................................................................................................... 19

29 U.S.C. § 1104 ........................................................................................................... 9

29 U.S.C. § 1105 ........................................................................................................... 6

29 U.S.C. § 1108 ........................................................................................................... 6

29 U.S.C. § 1132 ........................................................................................... 3, 13, 15, 16

29 U.S.C. § 1144 ........................................................................................................... 13

## **REGULATIONS**

29 C.F.R. § 2509.75-8 ................................................................................................ 5, 6

29 C.F.R. § 2509.94-2 ............................................................................................... 6, 10

29 C.F.R. § 2509.96-1 ................................................................................................... 12

Preamble to Prop. Reg. 29 C.F.R. § 2510.3, 44 Fed. Reg. 50363 ...................................... 7

## **RULES**

Fed. R. Civ. P., 9 ............................................................................................3, 4, 5, 11, 14

Fed. R. Civ. P., 12 ......................................................................................................... 4

Fed. R. Civ. P., 65 ......................................................................................................... 15

# I.    INTRODUCTION

At the Court's request, defendants Xerox Corporation ("Xerox" or "Company") and all individual defendants, including Ms. Drucker, submit this updated brief.  On January 14, 2003, defendants filed a motion to dismiss plaintiffs' Consolidated Amended Complaint ("Complaint") for failure to state a claim, and a memorandum in support of the motion ("Def. Mem.").  Plaintiffs filed a memorandum in opposition ("Op. Mem.," February 28, 2003), to which defendants replied ("Def. Rep.," March 31, 2003).  Since that time, plaintiffs have filed numerous notices of supplemental authority, to which defendants have responded.[1]

This update brief generally follows the format of the Memorandum.  However, portions of the Memorandum that are not affected by recent case law are merely summarized briefly and are incorporated by reference.

The two employee benefit plans involved in this litigation are the Xerox Corporation Savings Plan, which covers salaried employees ("Salaried Plan"), and the Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C., which covers union employees ("Union Plan") (each a "Plan" and collectively, "Plans").  Each Plan is tax-qualified and subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),[2] and each is a participant directed, eligible individual account plan ("EIAP") with a salary reduction feature under section 401(k) of the Internal Revenue

---

[1] The only other substantive pleadings have been plaintiffs' motions to certify a class and to commence formal discovery, both of which defendants opposed as premature before the Court rules on the motion to dismiss.

[2] Except as otherwise noted, all statutory references herein are to ERISA.  Parallel cites to the U.S. Code are added for ease of reference.

1

Code of 1986.[3]  Unlike all other types of plans that are subject to ERISA, an EIAP is expressly permitted to invest up to 100% of its assets in "company stock," *i.e.,* stock issued by the company that sponsors the plan or by an affiliate of the company.

Under the Plans, participants may invest in a range of independently managed mutual funds, in several Company managed strategy-focused funds, and in Xerox common stock.  Each of the Plans *requires* that Xerox stock be offered as one option in which participants may invest their account assets.[4]  In contrast, the particular mutual fund offerings and the composition of the strategy-focused funds are determined by plan fiduciaries.[5]  Significantly, while the Plans require that Company stock be offered as an investment, no participant was required to invest any of his account assets, including the company's matching contributions, in Company stock.

## II.    ARGUMENT

### A.    Summary of Argument.

Each of the surviving counts in the Complaint fails to state a claim upon which relief can be granted.  As further discussed below, Counts I, III and V fail because no defendant had authority or control with respect to investment in Company stock, nor was any required by virtue of any other fiduciary duty he may have had, to seize such

---

[3] In a 401(k) plan, participants elect to have a portion of their pay deferred into the plan on a pre-tax basis (*i.e.,* not subject to either income tax or employment taxes, such as the taxes for Social Security retirement benefits and Medicare); the employer often matches the participant's pre-tax contribution with an employer contribution. Contributions to the 401(k) plan and any related earnings are not taxed until received.  For participants, 401(k) plans provide a savings vehicle that is tax efficient and frequently enhanced by employer matching contributions. For employers, 401(k) plans provide a means to encourage participants to save, *e.g.,* so that the participant becomes an investor in the company and/or becomes engaged in preparing for retirement.

[4] In an EIAP, each participant has an account consisting of the participant's contributions and the company's contributions.  In the Xerox plans, all of the company contributions are made in cash and are invested by each participant as desired in one or more of the menu choices offered under the plan.

[5] Further detail about the Plans, the statutory framework for EIAPs, and plaintiffs' fundamental misconceptions in this suit may be found on pp. 1-4 of the Memorandum.

authority from the participants.  Count V also fails because plaintiffs have not alleged that any defendant breached the ERISA duty of loyalty.   Count IV fails because the characteristics and features of the Xerox Stock Fund were fully disclosed to participants, no defendant was rendering or was obligated by fiduciary duty to render investment advice, nor was any required to disclose inside information.   Further, none of the claims differentiate sufficiently among the defendants, and therefore all fail to put each defendant on notice of the claims against him, and two claims, III and V, allege intentionally misleading disclosures and therefore fail because they were not pleaded with the particularity required by Rule 9(b) of the Fed. R. Civ. P.  Finally, plaintiffs are not entitled to plan-wide relief but only individualized relief, and therefore may not proceed under section 502(a)(2), 29 U.S.C. § 1132(a)(2).

### B.    Governing Law.

### 1.    Standard for a Motion to Dismiss.

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. *Green v. Maraio*, 722 F.2d 1013, 1015 (2d Cir. 1983).  If, accepting the alleged facts as true, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," his complaint must be dismissed.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).[6]   "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice," and conclusory allegations not supported by factual assertions are not sufficient to survive a motion to dismiss. *Leeds v.*

---

[6] *See also Scheur v. Rhodes*, 416 U.S. 232,  94 S.Ct. 1683 (1974).

3

*Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).[7]

A plaintiff's failure to allege the required elements of a claim authorizes a court to dismiss that claim.[8]   To avoid dismissal of an ERISA breach of fiduciary duty case, a plaintiff must allege facts adequate to show that (1) the defendant is a fiduciary with respect to a plan subject to ERISA, (2) the defendant breached an ERISA fiduciary duty for which he was responsible, (3) the breach caused a loss to the plan and, (4) if money damages are sought (as here), that any recovery will be on behalf of the plan as a whole. *See Crowley v. Corning, Inc.*, 234 F.Supp.2d 222 (W.D.N.Y. 2002).  A court analyzing a complaint under Fed. R. Civ. P. 12(b)(6) is "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint." *Gryl ex rel Shire Pharm. Group PLC v. Shire Pharm. Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002)  (citation omitted).   In this case, where the terms and effect of the Plans are explicitly referred to in the Complaint, the Court may consider the applicable Plan documents.[9]

---

[7] *See also Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 927 (2d Cir. 1983) (noting that while "*Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations.").

[8] *York v. Assoc. of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); *accord, Cokenour v. Household Int'l, Inc.*, 2004 WL 725973 ** 3 & 10 (N.D. Ill.) (even under the liberal pleading standards of Rule 8(a), plaintiffs' allegations in employer stock cases under ERISA must include *operative facts* upon which each claim is based).  (Emphasis supplied.)

[9] *See, e.g. Rothman v. Gregor*, 220 F.3d. 81, 88-89 (2d Cir. 2000) (holding that "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (citations omitted); *In re Dynegy ERISA Litigation* ("*Dynegy*"), 309 F.Supp.2d 861, 866-67 (S.D. Tex. 2004) ("Documents not attached to the pleadings, but to the motion to dismiss, may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim . . . [because i]n so attaching, the defendant merely assists

4

In addition, the heightened pleading standard of Rule 9(b) of the Fed. R. Civ. P. applies to Counts III and IV of the Complaint. These counts essentially assert fraud on the part of the defendants by relying upon the allegation that the defendants intentionally misled the Plan participants for personal gain. *See* Complaint, ¶ 180. Courts have held that this type of allegation amounts to fraud, and therefore triggers Rule 9(b). *See Cokenour v. Household, Int'l., Inc.* ("*Cokenour*"), 2004 WL 725973 **6-7 (N.D. Ill.) ("The core of the parties' arguments on this point stem [sic] from how they characterize the alleged misrepresentations [by the committee to the plan participants] . . . the allegations in the complaint clearly allege intentional misrepresentations and that Rule 9(b) is applicable"); *Vivien v. WorldCom* ("*WorldCom*"), 2002 WL 31640557 **6-7 (N.D. Cal.) (unpublished opinion) (holding that a complaint alleging "[b]y making false, misleading, incomplete, and inaccurate disclosures and representations to the Plans' participants, defendants breached their fiduciary duties to act solely in the interests of the participants and to act prudently" triggered Rule 9(b)). Since the Complaint alleges that the defendants' intentionally mislead the plan participants, Rule 9(b) applies.

## 2.    Scope of Fiduciary Responsibility under ERISA.

The ERISA fiduciary definition states:

> A person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)

---

the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.") (citations omitted); and *Zito v. SBC Pension Benefit Plan*, 2002 WL 31060363, at *3, n. 4 (D. Conn. 2002) ("Although this motion is before the Court as a motion to dismiss, the SPD for the SBC Pension Benefit Plan is properly considered here because it is a document incorporated into the complaint by reference, and plaintiff does not object to the Court's consideration of this document.") (citation omitted).

he has any discretionary authority or discretionary responsibility in the administration of such plan.[10]

Because ERISA makes clear that the same person may function sometimes as a fiduciary and sometimes in another capacity,[11] a plaintiff alleging fiduciary breach must establish that the person alleged to have breached his duty was acting as a fiduciary when he took the action that is the subject of complaint.[12]

The definition is "functional," *i.e.*, one is not a fiduciary unless performing a function described in section 3(21)(A).[13]  Fiduciary status depends on function, not on title.[14]  Most importantly, as is suggested by the "to the extent" clause that precedes the three categories of fiduciary responsibility, being a fiduciary under one category does not make one a fiduciary under another category.[15]

---

[10] Section 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis supplied).  *See In re Williams Companies ERISA Litigation* ("*Williams*"), 271 F.Supp.2d 1328, 1339 (N.D. Okla. 2003) (holding that "[w]hile the Board does have a fiduciary responsibility with respect to the Plan, it is a limited one . . . the only power the Board had under the Plan was to appoint, retain, or remove members of the Benefits Committee.  Thus, the Board's fiduciary obligations can extend only to those acts.") (citations omitted).  *See also* 29 C.F.R. § 2509.75-8, FR-16 (liability of fiduciaries is limited to the particular function performed.).

[11] *See* § 408(c)(3), 29 U.S.C. § 1108(c)(3); *see also In re WorldCom, Inc. ERISA Litigation* ("*In re WorldCom*"), 263 F.Supp.2d 745, 760-61 (S.D.N.Y. 2003) (holding with respect to the Board's power to appoint *corporate* officers, "plaintiffs' argument goes too far.  It would make any supervisor of an ERISA fiduciary also an ERISA fiduciary.  They have provided no statutory or decisional support for that proposition.  The regulatory advice on which they rely gives guidance for those who are *already ERISA fiduciaries*; it does not purport to make supervisors of fiduciaries also fiduciaries.") (emphasis supplied).

[12] *Pegram v. Herdrich* ("*Pegram*"), 530 U.S. 211, 226, 120 S.Ct. 2143, 2152-53 (2000).

[13] *See* 29 C.F.R. § 2509.75-8, Q&A D-4; D-5.  In the case of the investment advice and plan administration categories, a person who *has* authority to perform the function is a fiduciary, even if not exercising the authority.

[14] *See, e.g., LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).

[15] For example, one may be a fiduciary with respect to plan administration but not with respect to management of plan assets.  *See Hunter v. Caliber Sys., Inc.* ("*Hunter*"), 220 F.3d 702, 721-23 (6th Cir. 2000) (employer that was plan administrator had no fiduciary obligation to diversify plan assets); *Johnson v. Georgia-Pacific Corporation,* 19 F.3d 1184, 1188 (7th Cir. 1994) (ERISA fiduciary definition "does not make a person who is a fiduciary for one purpose a fiduciary for every purpose.  A person 'is a fiduciary to the extent that' he performs one of the described duties; people may be fiduciaries when they do certain things *but be entitled to act in their own interest* when they do others") (emphasis supplied) and *Kling v. Fidelity Management & Trust Co.*, 323 F.Supp.2d 132, 139 (D. Mass. 2004) (holding that fiduciary status is not an all or nothing concept; a court must ask whether a person is a fiduciary with respect to the particular activity in question.).  This principle also applies within a category of fiduciary status, and thus one may be a fiduciary under section 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), with respect to, *e.g.*, one asset of a plan but not another asset, *see* ERISA § 405(b)(1)(B), 29 U.S.C. § 1105(b)(1)(B) and, *e.g., Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (employer may be a fiduciary with respect to appointing a plan administrator but not with respect to plan administration itself); *Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors*, 173 F.3d 313, 316 (5th

### 3.    Plan Design is Not Subject to ERISA's Fiduciary Standards; Plan Management is Distinct From Corporate Management.

*See* Memorandum, p. 8.[16]  As to the point made in the Memorandum about the significance of the Labor Department's "plan assets" regulation, the preamble to the proposed regulation, 44 Fed. Reg. 50363, 50364-65 (Aug. 28, 1979) articulated the basis for the exclusion from plan asset status of publicly traded securities:  "[I]t seems clear that [ERISA] does not contemplate that its fiduciary responsibility provisions will govern the management of every business in which the plan happens to have an interest. . . . [M]anagement of [a publicly traded] company is generally subject to oversight by a large number of investors in addition to the plan, and such oversight is facilitated by the . . . Securities Act of 1933 and the Securities Exchange Act of 1934."

### 4.    Unique Role of EIAPs.

Eligible Individual Account Plans were designated by Congress as "special purpose" plans, designed to give participants an equity interest in their companies.  *See* Memorandum, pp. 9-10.[17]

---

Cir. 1999), or may be a fiduciary respecting one aspect of management of a particular asset, but not another aspect, *e.g.*, a fiduciary with respect to purchases and sales of equity securities, but not with respect to voting the proxies appurtenant to such securities. *See* 29 C.F.R. § 2509.94-2(1).

[16] *See also Akers v. Palmer,* 71 F.3d 226, 231 (6th Cir. 1995) ("Competing concerns will always arise between the creators of a plan and the interests of potential beneficiaries.  However, '[i]f these competing concerns give rise to a fiduciary duty, . . the distinction . . . the law makes between settlor and fiduciary functions would be obliterated.'") (citation omitted).

[17] *See also Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090 n. 2 (9th Cir. 2004) ("Unlike traditional pension plans governed by ERISA, EIAPs . . . are not intended to guarantee retirement benefits and indeed, by their very nature, place employee retirement assets at much greater risk than does the typical diversified ERISA plan.") (citations omitted).

**5.    Participant Direction; Company Stock.**

The Xerox Stock Fund is part of the Plans' architecture, as is the feature of participant direction; yet no participant was required by the Plans to invest in Xerox stock. *See* Memorandum, pp. 10-11.

**C.    Specific Counts.**

**1.    Count I (Alleged Imprudent Investment of Plans' Assets) Fails to State a Claim Because No Defendant Had Authority or Control with Respect to Investment in Company Stock.**

In essence, Plaintiffs allege in ¶¶ 149, 151 and 153 of the Complaint that all defendants (1) failed to assess the performance of the Xerox Stock Fund as an investment option under the Plans, (2) failed to take certain actions plaintiffs claim they should have taken, and (3) are responsible for Plan losses.

However, Count I is fatally deficient because no defendant had fiduciary authority or control with respect to investment in the Xerox Stock Fund.  No defendant had an ERISA duty to "manage, direct or approve" investment of Plan assets in Company stock[18] under the terms of the Plans or otherwise, nor did any defendant have an ERISA duty to assess the "Company's performance and prospects" or otherwise evaluate the Xerox Stock Fund as an investment option.[19]  Specifically, the members of the Xerox Board's Finance Committee and the members of the JAB, who may have exercised authority and control vis-à-vis the other investment options under the Salaried Plan and the Union Plan respectively (because they decided which particular mutual funds should be available and determined the composition of the strategy-focused funds that were available), had no

---

[18] Complaint, ¶ 151.
[19] *Ibid.*

authority or control to exercise regarding investment in the Xerox Stock Fund.[20]  It was not given to them by the terms of the Plans,[21] nor did they assume it by virtue of the authority and control that they did have.[22]  Nor was it imposed on them — or on any of the other defendants — by operation by law.  ERISA plainly requires prudence only in a fiduciary's "discharge [of] *his duties* under a plan."[23]  If there is no duty to begin with, *i.e.*, if no defendant had authority or control as to investment in Company stock, there can be no obligation of prudence on the part of any defendant with respect to such investment.[24]

This is a critical point that bears emphasis.  Plaintiffs have asserted that ERISA does not permit a "fiduciary-less plan," and that a fiduciary "may not hide behind" the terms of a plan.  First, there is a wide chasm between defendants' contention that they had no fiduciary responsibility for investment in Xerox stock and plaintiffs' dramatic, "fiduciary-less plan" rhetoric.  Defendants' position is that no defendant chose the Xerox Stock Fund as an investment option (because that Fund's presence on the Plans' investment menus was part of the design of the Plans, built into them by the Company acting in its settlor, non-fiduciary capacity), and no defendant exercised authority or control with respect to investment in the Xerox Stock Fund (because those decisions were

---

[20] *See Hunter*, 220 F.3d at 722-23.

[21] *See* Union Plan, 1998 Restatement § 6.02(a)(1)(ii) *and* 1994 Union Plan SPD at 172 (mandating the composition of the Xerox Stock Fund – Xerox stock, plus small amount of cash to maintain liquidity) *and* Union Plan, 1998 Restatement §§ 2.03 and 2.04 (setting forth the duties of the JAB; Salaried Plan, 1997 Restatement § 6.02(a)(ii); Salaried Plan, 1998 Restatement § 6.02(a)(ii); 1993 Salaried Plan SPD at 144 *and* 1998 Salaried Plan SPD, at 23 (all mandating the composition of the Xerox Stock Fund – Xerox stock, plus small amount of cash to maintain liquidity) *and* Salaried Plan, 2002 Restatement §§ 2.01, 2.04 and 2.05 (setting forth the duties of the Plan Administrator, the Board and Xerox as employer).  *See also* 1998 Investment Objectives and Policies.

[22] *Hunter*, 220 F.3d at 721-23 (plan administrator had no fiduciary obligation to diversify plan assets).

[23] Section 404(A)(1), 29 U.S.C. § 1104(a)(1), emphasis added.

[24] *See, e.g., Dynegy*, 309 F.Supp.2d at 892 (plaintiff cannot prove any set of facts to establish defendants' breach of ERISA fiduciary duties with respect to the company stock fund, when plan does not extend their duties to that fund).

made by the participants themselves). Hence, under the ERISA fiduciary definition, no defendant had responsibility for the continued maintenance of the Xerox Stock Fund or for investment in it. Neither of the Plans lacked for fiduciaries, but none of the defendants had any fiduciary authority or control with respect to these two things under the Plans.

Second, while a fiduciary may be obligated to disobey the terms of a plan where following those terms would contravene the statute, that is true *only* where the objectionable plan terms have to do with a subject that is within the ambit of that fiduciary's responsibility under the plan.[25] For example, a plan's investment policy[26] gives authority to an investment manager to purchase and sell equity securities but states that a named fiduciary shall direct the trustee on the voting of proxies appurtenant to those securities. If the named fiduciary breaches his duty by voting a proxy contrary to the interest of the plan's participants, this will not visit liability on the investment manager, whose fiduciary duty extends only to purchases and sales of the securities. *See* Department of Labor Interpretive Bulletin 94-2(1), 29 C.F.R. § 2509.94-2(1).

The Bulletin recognizes the functionality of the ERISA fiduciary definition and slices very finely between the responsibility for acquisition and disposition of an equity security and responsibility for voting the proxy appurtenant to that same security. Here, assuming for the sake of argument that some of the defendants had fiduciary responsibility for the mutual funds because they chose those particular funds for the

---

[25] *See Pegram,* 530 U.S. at 226, 120 S.Ct. at 2152-53, and *Williams,* 271 F.Supp.2d at 1339 ("Here, the only power the Board had under the Plan was to appoint, retain, or remove members of the Benefits Committee. Thus, the Board's fiduciary obligations can extend only to those acts."). The co-fiduciary liability rules are an exception to this rule, but as noted in Part II.C.3., below, there cannot be co-fiduciary liability for a fiduciary absent a breach of duty by another fiduciary.

[26] An investment policy is a plan document that would, in the normal course, need to adhered to by plan fiduciaries. Department of Labor Interpretive Bulletin 94-2(2), 29 C.F. R. § 2509.94-2(2).

Plans' respective investment menus and for the strategy-focused funds because they determined the composition of each of those funds, those facts do not confer fiduciary responsibility on them for investment in the Xerox Stock Fund, which they did not place on the menus and over which they did not exercise the requisite authority or control.

> **2.    Count II – Voluntarily Dismissed.[27]**
>
> **3.    Count III (Alleged Failure to Monitor) Fails to State a Claim Because No Defendant Had Authority or Control Respecting Investment in Company Stock and Plaintiffs Failed to Satisfy the Heightened Pleading Requirements of Rule 9(b).**

The Company's plan design decisions are made in its corporate or "settlor" capacity and are not subject to ERISA's fiduciary standards. *See* Memorandum, pp. 15-17. Regarding the claims of knowing participation in a fiduciary breach, *see Williams*, 271 F.Supp.2d at 1339 (dismissing claims alleging company's derivative liability where claims alleging direct fiduciary liability against company and others also dismissed). Regarding the pleading standard for claims of co-fiduciary liability, *see Cokenour* at *10 (allegation of co-fiduciary liability based on defendants' "knowingly undertaking to conceal [co-fiduciary's] failure to prudently and loyally manage Plan assets" held conclusory, not meeting even the requirements under the liberal notice pleading standard and lacking notice of the operative facts which would pertain to the claim). Further, plaintiffs' allegation that defendants failed to disclose information to appointees fails because it is not pleaded with the specificity required by Rule 9(b), Fed. R. Civ. P.

---

[27] *See* Op. Mem., p. 20.

4. **Count IV (Alleged Furnishing of Incomplete and Inaccurate Information to Participants and Defendants' Failure to Advise Participants as to the Soundness and Prudence of Xerox Stock) Fails to State a Claim for the Reasons Described Below in Paragraphs (a)-(e).**

    (a)    **Allegedly incomplete and inaccurate information.**

Plan Participants were fully advised about the characteristics and features of the Xerox Stock Fund as an investment. *See* Def. Rep., pp. 5-6.

    (b)    **No defendant had a duty to furnish investment advice to participants.**

Count IV contains 12 paragraphs, but the only one that describes the plaintiffs' claim against defendants states, in relevant part, that they misled participants "regarding the soundness of Xerox stock and the prudence of investing their retirement benefits in Xerox stock."[28] The information to which plaintiffs claim they were entitled is "investment advice" within the meaning of the ERISA fiduciary definition[29] because it would have been "advice to the participant or beneficiary as to the value of securities or other property, or . . . [a recommendation] as to the advisability of investing in, purchasing, or selling securities or other property."[30] Assuming for the sake of argument that defendants had a duty to disclose certain information to participants and beneficiaries "[i]t is . . . clear . . . that such a duty does not extend to the point of requiring plan

---

[28] Complaint, ¶ 172.
[29] *See* § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii). As noted above, a person who is a fiduciary under one category of the definition does not thereby become a fiduciary under the other categories. Further, one may become a fiduciary *only* by being conferred authority under the terms of a plan (categories (ii) and (iii)) or by exercising authority (categories (i) and (ii)). Nothing in the Plans conferred the responsibility to render investment advice on any of the defendants, and there is no issue between the parties about whether the defendants became a fiduciary by providing investment advice since defendants deny giving it and plaintiffs claim they never received it.
[30] 29 C.F.R. § 2509.96-1(c).

fiduciaries to give investment advice to plan participants,"[31] and thereby become a

fiduciary under the investment advice category of the ERISA definition.[32]

   **(c)**  **ERISA does not impose on any defendant an obligation to disclose inside information.**

   Just as ERISA does not require a fiduciary to trade on inside information in

violation of the federal securities laws,[33] it also does not require a fiduciary to disclose

inside information to participants so that they may trade on it.[34]  Plaintiffs allege that

defendants had both public information and material, non-public information about Xerox

and that they should have sold the Plans' holdings of Xerox stock in light of that

information.  (Complaint, ¶ 151).  But ERISA fiduciaries are not exempted from the

federal securities laws and, like all others, may not disclose or trade on inside

information.[35]

   In this regard, even under the express statutory disclosure provisions of

ERISA, a fiduciary is absolved from liability for failure or refusal to fulfill his disclosure

---

[31] *Penn. Fed. v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan of Norfolk Southern Corp.*, 2004 WL 228685 *4 (E.D. Pa.) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 441, 443 (3d Cir. 1996). *See also* Def. Rep., pp. 6-8.

[32] *See* § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii).

[33] *See In re McKesson HBOC, Inc. ERISA Litig.* ("*McKesson*"), 2002 WL 31431588 *7 (N.D. Cal.) (dismissing claim that fiduciaries violated ERISA by failing to divest EIAP of employer stock where fiduciaries allegedly knew inside information adverse to the employer, because fiduciaries could not legally sell employer stock under such circumstances); *see also Hull v. Policy Mgmt. Sys. Corp.*, 2001 WL 1836286, *9 (D. S.C. 2001) (rejecting as unacceptable and illegal claim that EIAP fiduciaries should have sold employer stock based on inside information).

[34] SEC Release Nos. 33-7881 & 34-43154 at Prt. III (A)(2) (Final Rule Selective Disclosure and Insider Trading) (Oct. 23, 2000), making clear the SEC's view that providing inside information to a "tippee," who then trades on that information, violates the law.

[35] This same point applies to several of the other causes of action plaintiffs list in ¶ 151 of the Complaint.  It is somewhat duplicitous for plaintiffs to assert that defendants breached fiduciary duties because they failed to adopt a *policy* for divestment of company stock or for limiting the amount of company stock in the Plans.  Absent implementation, mere adoption of either policy would have been ineffective.  Defendants therefore interpret these items on the list as requiring *implementation*, which implicates the same insider information and insider trading concerns as those described above with respect to selling the company stock.

obligations due to "matters reasonably beyond [his] control.[36]    Given that Congress

provided an exception where it directly addressed the disclosure obligation, logic suggests

that the same standard be applied when analyzing obligations read into the statute by the

judiciary, particularly where the reason for the failure or refusal is another federal law.[37]

> **(d)    Disclosures made to the general public cannot form the basis of a disclosure fiduciary breach claim under ERISA.**

Many of the statements alleged in Count IV to have been misleading were

made in press releases, periodicals of general publication and periodic filings with the

Securities and Exchange Commission.    These statements were made in a corporate

capacity to the market in general, not in a fiduciary capacity to Plan participants and

beneficiaries, and cannot be the basis for an ESISA breach of fiduciary duty claim.[38]

> **(e)    Plaintiffs have failed to plead Claim IV with the specificity required by Rule 9(b).**

Finally, plaintiffs' disclosure claim must be dismissed due to their failure to

plead it with the specificity required by Rule 9(b) of the Fed. R. Civ. P.    Rule 9(b) applies

because plaintiffs allege intentional misrepresentation of the Company's financial status

---

[36] Section 502(c)(1); 29 U.S.C. § 1132(c)(1).

[37] ERISA's broad preemption rule expressly saves both state securities laws and all federal laws.    Sections 514(b)(1) and (d); 29 U.S.C. § 1144(b)(1) and (d).    In addition, notifying the Secretary of Labor as plaintiffs suggest (Complaint, ¶ 151) would have accelerated the alleged harm by adversely impacting participants who disposed of Xerox stock before the actual disclosure that was made via federal securities laws.    *See, e.g., McKesson*, at *6; and *Cokenour*, at *5.

[38] In *Varity v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 1074 (1996), the Supreme Court carefully considered the distinction between statements by an officer wearing his "employer hat" versus his "fiduciary hat," and concluded that the context made all the difference.    *See also Williams*, 271 F.Supp.2d at 1337 (ERISA breach claims based on disclosures to the public "must fail, since the record reflects that such statements, regardless of truth or falsity, were not made by Williams in any fiduciary capacity regarding the Plan.") and *Stein v. Smith*, 270 F.Supp.2d 157, 172-173 (D. Mass. 2003) ("Many of the statements alleged to have been lacking were made not by Smith, but by S & W--*e.g.*, press releases and periodic filings with the Securities and Exchange Commission.    With respect to these statements, no fiduciary liability can be implicated: these were statements made to the market in general, not to Plan participants specifically.").

and intentional failure to provide complete and accurate information due to the alleged link between the price of Xerox stock and defendants' compensation.[39]

> ### 5. Count V (Alleged Failure to Avoid Conflicts of Interest) Fails to State a Claim Because No Defendant Had Authority or Control Respecting Investment in Company Stock and Because Plaintiffs Have Not Alleged that Any Defendant Breached the ERISA Duty of Loyalty.

The scope of each defendant's duty of loyalty is not wider than the scope of his fiduciary responsibility; further, plaintiffs have confused the ERISA duty of loyalty with the common law duty of loyalty. *See* Memorandum, pp. 19-21.[40]

## III. DISMISSAL OF CLAIMS SEEKING IMPERMISSIBLE ERISA REMEDIES.

*See* Memorandum, pp. 21-23. Two of the three remedies plaintiffs seek are impermissible under ERISA. An injunction to prohibit defendants from "continuing to violate their fiduciary duties under ERISA and the plan documents" is too generalized under Rule 65, Fed. R. Civ. P.,[41] and money damages are not permissible.[42] Here, despite casual references

---

[39] Complaint, ¶ 180. *See Cokenour*, at **6-7, involving precisely the same allegation, which the court characterized as an intentional misrepresentation and dismissed the claim for failing to satisfy the 9(b) pleading requirements.

[40] Regarding the key point that Plaintiffs materially mischaracterize the ERISA duty of loyalty as an obligation to avoid conflict, *see In re WorldCom*, 263 F.Supp.2d at 768 ("Plaintiffs' allegations that [defendant's] holding of WorldCom stock and participation in its compensation program created a conflict of interest are insufficient by themselves to state a claim under ERISA.").

[41] Complaint, p. 81. *See, e.g., Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (stating that "an injunction must be more specific than a simple command that the defendant obey the law"); *and In re Schering-Plough Corp. ERISA Litigation* ("*Schering-Plough*"), 2004 WL 1774760 *11 (D. N.J.) (holding that an injunction was improper where claim stated "from any further violation of their ERISA fiduciary obligations.").

[42] Under § 502(a)(2), 29 U.S.C § 1132(a)(2), a participant may seek "appropriate relief under section 409," *i.e.*, "mak[ing] good to such plan any losses to the plan resulting from each such breach." Recovery under this section, however, is not permitted unless it "*inures to the benefit of the plan as a whole.*" *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (emphasis added). In contrast, § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a participant to bring a claim "to obtain . . . appropriate equitable relief . . . to redress" violations of ERISA. But such relief does not include money damages. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214-17, 122 S. Ct. 708, 715-17 (2002).

15

in the Complaint to "plan-wide" relief (*e.g.,* ¶¶ 5 and 7), it is clear that plaintiffs do not seek relief that will inure to the benefit of either Plan as a whole.[43]

This is precisely the conclusion reached by the court in *Schering-Plough*.[44] In ruling to dismiss the claim, the court noted that the complaint was drafted so as to redress harm suffered by specific participants and beneficiaries – not the plan as a whole. There is no substantive distinction between the allegations in *Schering-Plough* and the allegations in the Complaint in this case. The *Schering-Plough* court was struck by the inherent inconsistency of the fact that each participant's account balance was independent of all others, while plaintiffs asserted that defendants' liability to the Savings Plan as a whole for losses resulting from participants' investment decisions, which affected only their own individual accounts.[45]

For the above stated reasons, plaintiffs claims must be dismissed to the extent they seek impermissible relief in the form of an injunction to obey the law or money damages.

## IV.    DISMISSAL OF CLAIMS AGAINST SPECIFIC DEFENDANTS

The Complaint's undifferentiated allegations as to defendants' fiduciary status are inadequate to provide each defendant with sufficient notice of the specific claims against him. *See* Memorandum, pp. 24-26.[46]

---

[43] Although plaintiffs allege that the breaches caused "the Plans, *and indirectly Plaintiffs and the Plans' other participants and beneficiaries*" to lose millions of dollars. (Complaint ¶¶ 157, 165, 177 & 181, emphasis added), the reality is that every cent of any recovery obtained in this suit net of counsels fees and expenses will go only to a sub-group (participants who purchased Xerox shares or held them under the plan during the Class Period) of the relatively small percentage of participants who had company stock in their accounts.

[44] 2004 WL 1774760 *6 (D. N.J.) ("While carefully framed in terms of ERISA and its Section 1132(a)(2) civil remedy, plaintiffs' complaint alleges harm suffered by the individual Plan Participants and not the Savings Plan, and seeks relief measured by the harm to individuals and tailored for the benefit of individuals, and not the Savings Plan.").

[45] *Id.* at *14.

[46] *See also* defendants' Response to Plaintiffs' *Kmart I* Notice of Supplemental Authority, p. 8 (filed October 6, 2003).

## V.    PLAINTIFFS' NOTICES OF SUPPLEMENTAL AUTHORITY ARE INAPPOSITE AND, IN ONE INSTANCE, APPARENTLY FILED IN ERROR

After the initial round of briefing on defendants' motion to dismiss, plaintiffs filed six notices of supplemental authority.[47]  For the most part, these decisions stand for the unremarkable proposition that facts — in this instance, facts about plan design that are apparent from plan documents — can be important on a motion to dismiss.  Thus, for example, plaintiffs assert that *In re WorldCom* and *Enron* are relevant to the issue of whether defendants had fiduciary responsibility for investment in the Xerox Stock Fund.  But unlike the Xerox Plans, the plans in *In re WorldCom* and *Enron* did not mandate the availability of company stock as an investment choice.[48]  It became an investment choice in those plans in the only other way that it could.  Someone, almost certainly one or more of the defendants in those cases, chose it as an investment option.

Choosing an investment for inclusion on a plan's menu of investment choices may be an exercise of authority or control over that investment and may confer fiduciary responsibility for that investment on the chooser.  In those circumstances, the *In re WorldCom* and *Enron* courts ruled that they could not determine that there were no facts under which plaintiffs might be able to prove up their claims relating to the continuance of the company stock as an investment choice in those plans.  Under the Xerox Plans, by

---

[47] The six notices are, by order of filing: (1) *In re WorldCom* (July 3, 2003), *Response to In re WorldCom* (July 24, 2003); (2) *First Rankin v. Rotts ("Kmart I")*, which included the DOL amicus brief on reconsideration of the decision on the motion to dismiss the complaint in *Williams*, *Response to Kmart I* (Oct. 6, 2003); (3) *Enron* (Nov. 21, 2003), *Response to Enron* (Jan. 12, 2004); (4) *Sears, Xcel, and EDS* (Mar. 29, 2004), *Response to Sears, Xcel, and EDS* (April 20, 2004);  (5) *Second Rankin v. Rotts ("Kmart II")* (May 11, 2004), *Response to Kmart II* (June 14, 2004); and (6) *BellSouth, CMS and Lalonde* (May 25, 2004), *Response to BellSouth, CMS and Lalonde* (June 14, 2004).

[48] *See In re WorldCom*, 263 F.Supp.2d at 764.  *See also In re Enron Securities, Derivative & ERISA Litigation ("Enron"),* 284 F.Supp.2d 511, 654 (S.D. Tex. 2003) (finding that under the plan documents the "Administrative Committee [had a] duty to designate the investment funds, such as the Company Stock Investment Fund.").

contrast, Company stock was required to be available as a choice. No defendant chose it or in any other way exercised authority or control over investment in it. Thus, *In re WorldCom* and *Enron* are inapposite.

Plaintiffs' notices regarding *Sears, Xcel, EDS, BellSouth, CMS, Lalonde* and *Kmart I* purportedly address a number of defendants' arguments.[49] However, all of this noticed authority is inapposite because each of the plans in the noticed decisions (or the parts of the plans relating to company stock or to company matching contributions made in company stock) were employee stock ownership plans ("ESOPs") under which there is no participant direction and under which, therefore, one or more officers or employees of the plan sponsor (typically, an ESOP committee) *always* exercises authority or control over the plan's investment in company stock. By contrast, no parts of the Xerox Plans were ESOPs. They were plain-vanilla, participant directed 401(k) plans and the Company's matching contributions were made in cash and were not required to be invested in Xerox stock.

---

[49] Plaintiffs submit these decisions in support of their claims that: (1) plaintiffs have sufficiently pled their claims (addressed herein at II.B.1, II.C.3 & 4(e) and IV; *see also, Response to In re WorldCom* (July 24, 2003); *Response to Kmart I* (Oct. 6, 2003), and *Response to Sears, Xcel, and EDS* (April 20, 2004); and Def. Mem. at II.B.1 & IV (Jan. 14, 2003)); (2) the resolution of facts is premature at the motion to dismiss stage (addressed herein at II.B.1; *see also, Response to Kmart I* (Oct. 6, 2003); and Def. Mem. at II.B.1 (Jan. 14, 2003)); (3) defendants had a duty to override the Plans' terms (addressed herein at II.C.1; *see also, Response to In re WorldCom* (July 24, 2003); *Defendants Surreply to Enron* (Feb. 19, 2004); and Def. Mem. at II.C.1 (Jan. 14, 2003)); (4) defendants breached their duty of disclosure (addressed herein at II.C.4; *see also Response to Kmart I* (Oct. 6, 2003); *Response to Enron* (Jan. 12, 2004); *Response to Sears, Xcel, and EDS* (April 20, 2004); and Def. Mem. at II.C.4 (Jan. 14, 2003)); (5) securities laws are not a shield against liability for breach of the duty of disclosure (addressed herein at II.C.4 and Def. Mem. at II.C.4 (Jan. 14, 2003)); (6) defendants had a duty to monitor appointed fiduciaries (addressed herein at II.C.3; *see also, Response to Kmart I* (Oct. 6, 2003); *Response to Enron* (Jan. 12, 2004); *Response to Sears, Xcel, and EDS* (April 20, 2004); and Def. Mem. at II.C.3 (Jan. 14, 2003)); (7) relief is appropriate under section 502(a)(2) of ERISA (addressed herein at III; *see also,* Def. Mem. at III (Jan. 14, 2003)); (8) defendants are liable as co-fiduciaries under ERISA (addressed herein at II.C.3; *see also,* Def. Mem. at II.C.3 (Jan. 14, 2003)); and (9) defendants breached their duty of loyalty (addressed herein at II.C.5; *see also, Response to In re WorldCom* (July 24, 2003); and Def. Mem. at II.C.5 (Jan. 14, 2003)).

*Kmart II* appears to have been filed in error. Plaintiffs assert in that Notice that the *Kmart* decision negates defendants' "primary arguments" against class certification. However, defendants have not filed a substantive response to plaintiffs' motion to certify a class. Rather, defendants have merely asserted that class briefing is premature given the pendency of the motion to dismiss.[50] Defendants will fashion a substantive response to plaintiffs' motion, if necessary.

## VI.    CONCLUSION

Defendants respectfully submit that this case presently is not about fiduciary duty but rather about fiduciary *status*. Fiduciary status under ERISA is weighty and fraught with consequence for those who occupy it. When the statute says "exercise,"[51] it does not mean "has." When it says "fiduciary," it does not mean "person."[52]

The core of plaintiffs' disclosure claim is that they were not advised about the "soundness" of the Xerox Stock Fund and about the "prudence" of investing in it. Such advice would have been investment advice, yet there is nothing in any Plan document requiring or authorizing any defendant to render investment advice, and a ruling that would draft corporate management into fiduciary service will have a major chilling effect on company willingness to sponsor plans that offer company stock as an investment choice, contrary to clear congressional intent. Further, the disclosure that plaintiffs claim should have been made but was not made would have consisted of inside information improperly furnished for trading purposes.

---

[50]  *See Response to Kmart II* (June 14, 2004.).
[51]  *Compare* § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) with §§ 3(21)(A)(ii) and (A)(iii), 29 U.S.C. §§ 1002(21)(A)(ii) and (iii).
[52]  *See* § 402(a)(2), 29 U.S.C. § 1102(a)(2). Congress knew how to use "person" in ERISA when it wanted to. *See* §§ 3(9) and 3(14)(B) and (H), 29 U.S.C. §§ 1002(9) and 1002 (14) (B) and (H).

Finally, plaintiffs are seeking individualized relief, not plan-wide relief. Under plaintiffs' reading of ERISA's remedies, a breach of fiduciary duty that diminishes the account of a single participant would result in damages deemed to be plan-wide. There is a difference between the relief afforded by the two ERISA remedy provisions, and plaintiffs' interpretation would obliterate it.

Respectfully submitted,


Steven J. Sacher – ct 24024
William H. Boice – ct 01908
Kilpatrick Stockton LLP
607 – 14th Street, N.W.
Suite 900
Washington, D.C. 20005-2018
(202) 508-5800
**Counsel for All Defendants**
**Except Ms. Myra Drucker**


Benjamin H. Green – ct 2332
William J. Egan – ct07975
Brown Raysman Millstein
  Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT 06103
(860) 275-6400
**Counsel for All Defendants**

20

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing to all counsel of record on this

3rd day of December, 2004, postage prepaid and properly addressed to:

John F. McKenna
Goodman, Rosenthal & McKenna, PC
68 South Main Street
West Hartford, CT  06106
**Liaison Counsel for Plaintiffs**

Daniel M. Harris
Law Offices of Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, IL  60606
**Co-Counsel for Plaintiffs**

Charles R. Watkins
John R. Wylie
Sussman & Watkins
Two First National Plaza, Suite 600
Chicago, IL  60603
**Co-Lead Counsel for Plaintiffs**

Derek W. Loeser
Lynn Sarko
Erin Riley
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101
**Co-Lead Counsel for Plaintiffs**

Garry Gotto
Laurie Ashton
Dalton, Gotto, Samson & Kilgard
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012-2600
**Co-Counsel for Plaintiffs**

Sherrie R. Savett
Stuart Guber
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103-6365
**Co-Counsel for Plaintiffs**

Joseph H. Meltzer
Schiffrin & Barroway, LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA  19004
**Co-Counsel for Plaintiffs**

J. Brian McTigue
Bruce F. Rinaldi
McTigue Law Firm
5513 Connecticut Avenue, Suite 220
Washington, D.C.  20014
**Counsel for Plaintiffs**

Michael D. Ryan
Xerox Corporation
800 Long Ridge Road
Stamford, CT  06904
**In-House Counsel for
Defendant Xerox**

Michael T. Hannafan
Michael T. Hannafan Associates, Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL  60601
**Counsel for Defendant
Myra Drucker**

_____
Benjamin H. Green

21