# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## IN RE XEROX CORPORATION ERISA LITIGATION
Master File No. 02-CV-1138 (AWT)
CLASS ACTION

*This Document Relates to:  ALL ACTIONS*

## DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

Steven J. Sacher – ct 24024
William H. Boice – ct 01908
Kilpatrick Stockton LLP
607 – 14th Street, N.W.
Suite 900
Washington, D.C.  20005-2018
(202) 508-5800

Benjamin H. Green – ct 02332
William J. Egan – ct 07975
Brown Raysman Millstein
  Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT  06103
(860) 275-6400

## <u>TABLE OF CONTENTS</u>

Table of Contents .................................................................................................... i

Table of Authorities.................................................................................................. ii

I.      INTRODUCTION ..........................................................................................1

II.     OBLIGATIONS OF NAMED FIDUCIARIES .............................................2

III.    INSIDER TRADING ......................................................................................5

IV.     INDIVIDUALIZED RELIEF..........................................................................6

V.      FAILURE TO PROVIDE DEFENDANTS WITH SUFFICIENT NOTICE...................6

VI.     RESPONDEAT SUPERIOR IS INCONSISTENT WITH ERISA...................................7

VII.    PLAINTIFFS' INCOMPREHENSIBLE ASSERTIONS .................................................8

## TABLE OF AUTHORITIES

## CASES

*Crocco v. Xerox Corporation*, 137 F.3d 105 (2d Cir. 1998) ..................................................... 8

*Hunt v. Hawthorne Assoc. Inc.*, 119 F.3d 888 (11th Cir. 1997).............................................. 4

*In re Dynegy, Inc. ERISA Litigation*, 309 F.Supp.2d 861 (S.D. Tex. 2004) .......................... 4

*In re Tyco Litigation*, 2004 MDL-02-1335 (D. Mass.) ....................................................... 5, 6

*Lee v. Burkhart*, 991 F.2d 1005 (2d Cir. 1993) ...................................................................... 8

*Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ............................................... 6, 8

*Pegram v. Herdrich*, 530 U.S. 211 (2000) .............................................................................. 8

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549 (1987)....................................... 8

*Rankin v. Rotts (Kmart I)*, 278 F.Supp.2d 853 (E.D. Mich. 2003)......................................... 7

*Sears, Roebuck & Co. ERISA Litigation*, 2004 WL 407007 (N.D. Ill.) .................................. 4

*Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065 (1996) ............................................................ 8

## STATUTES

ERISA § 3(14)........................................................................................................................ 7

ERISA § 3(21)..................................................................................................................... 3, 7

ERISA § 3(37)........................................................................................................................ 3

ERISA § 101.......................................................................................................................... 5

ERISA § 104.......................................................................................................................... 5

ERISA § 402....................................................................................................................... 2, 3

ERISA § 404.......................................................................................................................... 5

ERISA § 405.......................................................................................................................... 7

ERISA § 407.......................................................................................................................... 1

ERISA § 409 .................................................................................................................. 6

ERISA § 502 ............................................................................................................... 5, 6

29 U.S.C. § 186 ............................................................................................................. 3

29 U.S.C. § 1002 ........................................................................................................ 3, 7

29 U.S.C. § 1021 ........................................................................................................... 5

29 U.S.C. § 1024 ........................................................................................................... 5

29 U.S.C. § 1104 ........................................................................................................... 5

29 U.S.C. § 1105 ........................................................................................................... 7

29 U.S.C. § 1107 ........................................................................................................... 1

29 U.S.C. § 1109 ........................................................................................................... 6

29 U.S.C. § 1132 ....................................................................................................... 5, 6

Taft-Hartley Act § 302 .................................................................................................. 3

**REGULATIONS**

29 C.F.R. § 2550.404 .................................................................................................... 4

**REFERENCES**

Black's Law Dictionary 1406 (8th ed. 2004) ................................................................ 3

## I.    INTRODUCTION

As a prelude to the arguments in their Supplemental Memorandum ("Pl. Sup. Mem."), plaintiffs assert that numerous recent decisions reject defendants' position that no defendant had fiduciary responsibility for investment in Xerox stock under the Xerox Plans.[1]    However, every one of these decisions involved plans that are different from the Xerox Plans in ways that have definitive legal significance with respect to the claims in the Complaint.  In a word, all of the decisions string-cited by plaintiffs are inapposite.  Many involved ESOPs or were 401(k) plans that had an ESOP component under which company stock is by statute a mandatory investment[2] and under which decisions to purchase or sell company stock are always made by someone other than the plan participants, typically a committee of officers or employees of the corporation that sponsors the plan.  In so doing, that committee exercises authority or control over the investment in company stock and thereby becomes a fiduciary for it.[3]

In some of the decisions, the plan being addressed, while not containing an ESOP within it, nevertheless called for the company's contributions to be made in company stock (or required that the company contribution in cash could be invested only in the company stock fund), and did not allow participants to diversify out of company stock until, typically, age 55 with at least five years of service under the plan.  Others decisions involved plans in which a fiduciary or committee of fiduciaries chose company stock as an investment option along with all of the other options on the plan's investment menu.

---

[1] Pl. Sup. Mem., pp. 1-3.

[2] *See* § 407(d)(6), 29 U.S.C. § 1107(d)(6): an ESOP is a plan "designed to invest primarily in [company stock]."

[3] *See* Def. Resp. to Pl. Notice of Sup. Auth. *CMS, BellSouth & Lalonde*, June 25, 2004, p. 2; Def. Resp. to Pl. Notice of Sup. Auth. *Sears, EDS* and *Xcel*, April 20, 2004, pp. 1-3; Def. Surreply to Pl. Notice of Sup. Auth. *Enron*, Feb. 19, 2004, pp. 1-2 and n. 1; and Def. Resp. to Pl. Notice of Sup. Auth. *Rankin v. Rotts (Def. Kmart I Resp.)*, Oct. 6, 2003, pp. 3-4.

The Xerox Plans had none of these design features. The Xerox Plans were not ESOPs, nor did they have an ESOP component. They were plain vanilla 401(k) plans, fully participant directed. Xerox stock was required by the terms of the Plans to be one investment option available to participants. The Company's matching contributions were made in cash, to be invested by participants as they wished in any of the Plans' investment options. And every participant was free at all times to diversify out of any investments he might have in the Xerox Stock Fund. The legal effect of this combination of features was that no defendant exercised authority or control over investment in Xerox stock under the Plans, and no participant in the Plans was compelled to invest any of his plan assets in Xerox stock.

Many of the points made in Pl. Sup. Mem. are reiterations to which a further response is unnecessary. As in previous briefs on certain of plaintiffs' notices of supplemental authority, defendants' decision to not explicitly refute in this brief a particular point made in Pl. Sup. Mem. is not to be interpreted as acquiescence. However, there are a few points defendants wish to address.

## II.    OBLIGATIONS OF NAMED FIDUCIARIES

Plaintiffs appear to claim that if a person is a named fiduciary under a plan, that party is responsible for all aspects of a plan's investments and all aspects of plan administration. Plaintiffs quote a passage from Section 402(a)(1), then describe defendants' position, and then conclude that defendants' position is "directly contrary to ERISA."[4] Plaintiffs' conclusion is incorrect.

---

[4] Pl. Sup. Mem., pp. 5-6.

Section 402(a) has two parts. Paragraph (1) requires that plans be written and that each written plan provide for one or more named fiduciaries, who *"jointly or severally"* shall have authority to control and manage the plan's "operation and administration." Paragraph (2) defines "named fiduciary" as a *"fiduciary"* who is named in the plan or who, by a procedure specified in the plan, is identified as a fiduciary.

Two things are apparent from these provisions. The first is that Congress defined a named fiduciary as a "fiduciary," not, as plaintiffs appear to claim, a "person." Thus, one cannot be a "named fiduciary" unless one is an ERISA fiduciary. Under the relevant parts of the statutory definition, one must either *exercise* authority or control over a plan asset or one must *have* discretionary authority or responsibility for plan administration.[5]

Second, Congress used the disjunctive in attributing authority to named fiduciaries, not the conjunctive. "Jointly *or* severally" recognizes the difference between various types of plan designs. Commonly, a plan sponsored by a large corporation allocates such authority *severally,*[6] dividing it among at least two fiduciaries (typically committees), one responsible for administration and another exercising investment authority.[7] The plan administration committee does not exercise asset management authority, and the investment committee has no authority or responsibility for plan administration.

Where the two categories of fiduciary authority — administration and investment — are severally allocated by the terms of the plan (as in the Xerox Plans), those with authority for plan administration are not liable for an investment unless they have exercised authority

---

[5] Section 3(21)(A), 29 U.S.C. 1002(21)(A).
[6] "Distinctly, severally, apart from others." BLACK'S LAW DICTIONARY 1406 (8th ed. 2004).
[7] Jointly administered multiemployer ("Taft-Hartley") plans are an example of a type of plan in which all authority is centered jointly in a group of labor and management "trustees." *See* Taft-Hartley Act, § 302(c)(5), 29 U.S.C. § 186(c)(5), and the ERISA definition of "multiemployer plan," § 3(37)(A), 29 U.S.C. § 1002(37)(A).

with respect to that investment.[8]  Those exercising investment authority are not liable for failures of plan administration.[9]  Further, the authority of the investment committee does not extend to an investment over which it is not exercising authority or control because, as to such an investment, it is not a fiduciary.[10]

Here, no defendant exercised authority or control over investment in the Xerox Stock Fund.  The Plans themselves, reflecting the design of Xerox Corporation acting in its settlor capacity, require that Xerox stock be one available investment option.  As noted in defendants' update brief and previously, this means that no defendant exercised authority or control with respect to Xerox stock by choosing the Xerox Stock Fund for either of the Plan's menu of investment options.  Nor did any defendant exercise authority or control with respect to investment in Xerox stock.  Plaintiffs recognize this in the Complaint when they aver, correctly, that *"[p]articipants directed* the investment of their contributions to various investment options available in the plans."[11]

---

[8] *See In re Dynegy, Inc. ERISA Litigation*, 309 F.Supp.2d 861, 892 (S.D. Tex. 2004) (responsibilities of named fiduciary committee did not extend to investment of trust funds; plaintiff therefore not able to prove any set of facts to establish claim that committee defendants breached fiduciary duties by continuing to accept employer match in company stock); *see also Sears, Roebuck & Co. ERISA Litigation*, 2004 WL 407007 * 2 (N.D. Ill.) (recognizing that "Plan designates Sears as a named fiduciary, but only for the non-investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock fund.").

[9] *Hunt v. Hawthorne Assoc. Inc.*, 119 F.3d 888, 908-09 (11th Cir. 1997) (committee, a named fiduciary, could not be ordered to pay participant's lump-sum benefit; its authority did not extend beyond management and supervision of plan's assets and it lacked power under plan to issue or deny benefit payments).  As noted in Defendants' Update Memorandum, Dec. 3, 2004 ("Def. Update Mem."), n. 26, ERISA's co-fiduciary liability rules can be an exception to the principle that any fiduciary, "named" or not, cannot be liable for matters outside the ambit of its authority, but only where there is a breach by another fiduciary.

[10] *See* ERISA definition of fiduciary:  ". . . a person is a fiduciary with respect to a plan *to the extent* (i) he . . . *exercises* any authority or control respecting management or disposition of its assets. ─ ." (Emphasis supplied.) This principle is recognized in the Labor Department regulation on investment duties, which states that the ERISA prudence requirement is satisfied "if the fiduciary: (i) has given appropriate consideration to those facts and circumstances that, *given the scope of such fiduciary's investment duties,* the fiduciary knows or should know are relevant to the particular investment or investment course of action involved . . . and (ii) has acted accordingly." 29 C.F.R. § 2550.404a-1 (emphasis supplied).

[11] Complaint, ¶ 35 (emphasis supplied).  The Complaint goes on to say, in ¶ 36, that "the options included the Xerox Stock Fund."

## III.    INSIDER TRADING[12]

Plaintiffs' characterizations notwithstanding, the question is not one of the securities laws "trump[ing]" ERISA or *vice-versa.* ERISA's preemption rules make clear that the question is one of *reconciling* two bodies of federal law that are put in conflict by plaintiffs' allegations.[13] Accurately characterized, defendants' position is that (1) ERISA cannot be interpreted to compel a person to violate the insider trading rules and (2) in construing an *implied* disclosure duty under Section 404, 29 U.S.C. § 1104, this Court should take note of the exception for matters beyond a person's control (here, the obligation to comply with the insider trading prohibitions) that Congress built into ERISA's *express* disclosure obligations.[14] Moreover, press releases, periodicals of general publication and periodic filings with the Securities and Exchange Commission cannot form the basis of a claim of breach of the duty of disclosure, as these disclosures are made in a corporate capacity and not in an ERISA fiduciary capacity.[15]

> There is little evidence in the legislative history of either the Securities Act, which is the source of the disclosure requirements, or ERISA to support the view that an issuer of stock necessarily assumes fiduciary responsibility in complying with its obligations under the securities laws if it chooses to allow its employees to invest in its stock as part of an individual account plan. Although plaintiffs plainly had a right to expect that Tyco International would refrain from making material misrepresentations in its SEC filings, that

---

[12] *See* Pl. Sup. Mem., pp. 11-13.

[13] *See* Def. Update Mem. at n. 37 and Defendants' Memorandum in Support of their Motion to Dismiss, Jan. 14, 2003 ("Def. Mem."), at n. 49.

[14] *See* §§ 101(e)(1), 104(b)(4), and 502(c)(1), 29 U.S.C. §§ 1021(e)(1), 1024(b)(4), and 1132(c)(1). This same reasoning applies with respect to plaintiffs' allegation that an appointing fiduciary is obligated to provide material non-public information to the appointee fiduciary (Pl. Sup. Mem., pp. 14-15).

[15] *In re Tyco Litigation*, MDL-02-1335, Case No. 02-1357-PB (Op. No. 2004 DNH 177) at pp. 14-19 (D. Mass. Dec. 2, 2004) (dissemination to plan participants of filings required under the securities laws, if done by persons who are not the fiduciaries responsible for making statutorily mandated disclosures under ERISA, will not confer fiduciary status on those persons), attached as Exhibit 1. *See also* Def. Sup. Mem. at n. 38.

expectation must be enforced under the securities laws rather than ERISA.[16]

## IV.    INDIVIDUALIZED RELIEF

The Supreme Court in *Mass. Mutual Life Ins. Co. v. Russell* limited relief available under Sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), to a "recovery [that] inures to the benefit of the plan *as a whole.*"[17]    In that case, the plaintiff was seeking damages for herself.  Had she prevailed, the plan would have received nothing; no plan asset was involved.  If the Supreme Court thought that Section 409 applies whenever there is a plan asset involved, as plaintiffs suggest, it could have ended the quoted passage before the clause "as a whole," because if a recovery inures to the benefit of a plan (whether or not to the plan as a whole), it is a plan asset.[18]    The logic of the *Russell* Court's adoption of "as a whole" is that unless the accounts of all participants are affected, a claim does not lie under Sections 409 and 502(a)(2) but rather under Section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Simply alleging that there is a plan asset is not enough.  Nor is there an analogy to be made to the federal rules for class certification.  Commonality and typicality are not a proxy for a recovery that inures to the benefit of the plan as a whole.    Finally, relegation to Section 502(a)(3) is most decidedly not a "remov[al] from the protection of ERISA."[19]

---

[16] *Tyco*, pp. 18-19.
[17] 473 U.S. 134, 139, 105 S.Ct 3085, 3089 (1985) (emphasis supplied).
[18] Further, the clause is not a fluke, because it appears again in the opinion in a footnote describing the classes of persons authorized to bring suits under § 502(a)(2).  *Id.*, at 142, n. 9 ("on behalf of the plan as a whole.").
[19] Pl. Sup. Mem., p.22 n. 14.  While defendants appreciate plaintiffs' affinity for certain of the Labor Department's views, referring to the Department as "the court" is a bit much.

## V.    FAILURE TO PROVIDE DEFENDANTS WITH SUFFICIENT NOTICE

The Complaint's global allegations of defendants' fiduciary status, lumping the numerous defendants into an undifferentiated mass, fail to provide each defendant with sufficient notice of the specific claims against him or her.[20]  Plaintiffs cite *Rankin v. Rotts* in support of their erroneous assertion that they have adequately pleaded each defendant's alleged fiduciary capacity.[21]  Plaintiffs extract an isolated sentence from the opinion and use that sentence out of context.  When read in context, *Rankin v. Rotts* supports defendants' position:

> Rankin filed a Second Amended Complaint running 144 paragraphs and making six claims for breach of fiduciary duty against defendants.    Suffice to say, with each complaint Rankin has further defined and expanded her allegations against defendants.   In the Second Amended Complaint, for example, *Rankin for the first time delineates the breach of fiduciary duty claims and identifies the discrete defendant or defendants against whom it is asserted.   No doubt the Second Amended Complaint was filed in hopes of curing some of the defects* (sic) *in defendants' motion to dismiss the First Amended Complaint.*[22]

## VI.    RESPONDEAT SUPERIOR IS INCONSISTENT WITH ERISA

The doctrine of *respondeat superior* is inherently inconsistent with well-established principles of fiduciary status and liability under ERISA, and it makes a mockery of the care with which the statute was drafted.[23]  When Congress wanted to attribute status under ERISA, it did so explicitly.[24]  Similarly, it expressly mandated joint liability when it wished

---

[20] *See* Def. Mem., pp. 24-26; *Def. Kmart I Resp.*, Oct. 6, 2003, p. 8 and Def. Update Mem., p. 16.
[21] Pl. Sup. Mem., at II.G.2. (quoting the "black box" dicta in *Rankin v. Rotts*, 278 F.Supp.2d 853, 879 (E.D. Mich. 2003)).
[22] *Rankin*, 861 (emphasis supplied).
[23] *See* § 3(21)(A), 29 U.S.C. § 1002(21)(A).
[24] *See, e.g.*, § 3(14), 29 U.S.C. § 1002(14) (expressly attributing "party in interest" status up and down organizational chains based on percentages of ownership).

to do so.[25]  Imposing the doctrine of *respondeat superior* on ERISA's carefully contoured rules of fiduciary status inappropriately enlarges the group of persons who occupy that status,[26] creates a liability trap for the unwary and impermissibly broadens ERISA's remedies.[27]

## VII.  PLAINTIFFS' INCOMPREHENSIBLE ASSERTIONS

Plaintiffs state that defendants maintain that "there was no fiduciary responsible because plaintiffs' claims were really an impermissible attack on Plan design."[28] Defendants have noted repeatedly that the Xerox Plans require that Xerox stock be offered as one investment option, and believe that is one of several legally significant facts having to do with plan design that distinguishes this case from all on which plaintiffs rely, but defendants have never characterized plaintiffs' claims as an impermissible attack on plan design.

Plaintiffs also state that defendants' "claim they labored under no conflict."[29] Defendants have never made such an assertion.  In fact, defendants' position throughout has been that ERISA does not prohibit conflicts of interest on the part of fiduciaries; it simply requires a fiduciary acting as such to do so in the interest of the participants, whether

---

[25] *See, e.g.*, § 405, 29 U.S.C. § 1105 (pertaining to co-fiduciary liability).

[26] *See Crocco v. Xerox Corporation*, 137 F.3d 105, 107-08 (2d Cir. 1998)  (rejecting notion that plan sponsor corporation is a *de facto* plan administrator under ERISA where another fiduciary is identified in the plan as a named fiduciary plan administrator); *Lee v. Burkhart*, 991 F.2d 1005, 1010 (2d Cir. 1993) (disclosure duty rests with plan administrator unless plan terms designate someone else; plan sponsor company not a fiduciary).

[27] *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3093 (1985) ("[ERISA's civil enforcement scheme] provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. . . .  We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA."); *accord, Pilot Life Ins.Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556 (1987); *see also dissent* in *Varity v. Howe*, 516 U.S. 489, 516-518, 116 S.Ct. 1065, 1080 (1996) ("Nowhere is the care with which ERISA was crafted more evident than in the Act's mechanism for the enforcement of fiduciary duties.") (internal citations omitted).

[28] Pl. Sup. Mem., p. 6.

[29] Pl. Sup. Mem., p. 19.

conflicted or not.[30]  Plaintiffs' incorrect assumption that the ERISA duty of loyalty is the same as the common law duty of loyalty caused them to draft a breach of loyalty count that is utterly deficient.[31]  Defendants' pleadings with respect to Count V of the Complaint make clear the inconsistency between plaintiffs' characterization of defendants' position and defendants' actual position.  It appears that plaintiffs have recycled text lifted from other briefs in other cases.  This is not a mortal sin.  It is however, symptomatic of plaintiffs' unwillingness to address the application of ERISA to the design of the Xerox Plans.  Instead, plaintiffs rely on rhetoric and decisions in other cases that are inapposite because they involve plans with significantly different plan designs.

Respectfully submitted,

Steven J. Sacher – ct 24024
William H. Boice – ct 01908
Kilpatrick Stockton LLP
607 – 14th Street, N.W.
Suite 900
Washington, D.C.  20005-2018
(202) 508-5800
**Counsel for All Defendants
Except Ms. Myra Drucker**

Benjamin H. Green – ct 02332
William J. Egan – ct07975
Brown Raysman Millstein
 Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT  06103
(860) 275-6400
**Counsel for All Defendants**

---

[30] *See Pegram v. Herdrich*, 530 U.S. 211, 225, 120 S.Ct. 2143, 2152 (2000); Def. Mem., pp. 19-21 and Def. Update Mem., p. 15.
[31] Complaint, Count V.

9

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing Defendants' Reply to

Plaintiffs' Supplemental Memorandum Opposing Defendants' Motion to Dismiss

Consolidated Amended Complaint to all counsel of record on this 16th day of December, 2004,

postage prepaid and properly addressed to:

John F. McKenna
Goodman, Rosenthal & McKenna, PC
68 South Main Street
West Hartford, CT 06106
**Liaison Counsel for Plaintiffs**

Daniel M. Harris
Law Offices of Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, IL 60606
**Co-Counsel for Plaintiffs**

Charles R. Watkins
John R. Wylie
Sussman & Watkins
Two First National Plaza, Suite 600
Chicago, IL 60603
**Co-Lead Counsel for Plaintiffs**

Derek W. Loeser
Lynn Sarko
Erin Riley
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
**Co-Lead Counsel for Plaintiffs**

Garry Gotto
Laurie Ashton
Dalton, Gotto, Samson & Kilgard
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012-2600
**Co-Counsel for Plaintiffs**

Sherrie R. Savett
Stuart Guber
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
**Co-Counsel for Plaintiffs**

Joseph H. Meltzer
Schiffrin & Barroway, LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
**Co-Counsel for Plaintiffs**

J. Brian McTigue
Bruce F. Rinaldi
McTigue Law Firm
5513 Connecticut Avenue, Suite 220
Washington, D.C. 20014
**Counsel for Plaintiffs**

Michael D. Ryan
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
**In-House Counsel for Defendant Xerox**

Michael T. Hannafan
Michael T. Hannafan Associates, Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL 60601
**Counsel for Defendant Myra Drucker**

_____
Benjamin H. Green

10

In re Tyco Litigation                    MDL-02-1335   12/02/04

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**In re Tyco International. Ltd.**
**Multidistrict Litigation (MDL 1335)**

MDL DOCKET NO. 02-1335-PB
**ERISA Action**
Case No. 02-1357-PB
**Opinion No. 2004 DNH 177**

### MEMORANDOM AND ORDER

The named plaintiffs in this class action are participants
in retirement plans ("Plans") sponsored by Tyco International
(US) Inc. ("Tyco US").  Plaintiffs invoke the Employee Retirement
Income Security Act ("ERISA") in asserting breach of fiduciary
duty claims against Tyco US, its parent corporation, Tyco
International Ltd. ("Tyco International"), the committee that
administered the Plans, and several former officers and directors
of Tyco US and its parent corporation.  The claims concern the
Tyco Stock Fund, which holds Tyco International stock and is one
of the Plans' investment options.  Plaintiffs charge in Count I
that defendants made material misstatements and omissions to
participants concerning Tyco International's financial condition
and the risk characteristics of the fund.  They allege in Count

II that defendants were negligent in allowing participants to invest in the fund.

Defendants attack the complaint's sufficiency on several grounds. They first argue that only the committee that administered the Plans was a fiduciary. Second, they assert that plaintiffs' claims are barred by Section 404(c) of ERISA, which precludes certain breach of fiduciary claims for losses that were caused by a participant's own investment decisions. Next, they contend that Count I fails because it does not allege any actionable misstatements or omissions and Count II is deficient because it does not sufficiently allege that defendants acted imprudently. Finally, they contend that the complaint must be dismissed because ERISA does not authorize Plan participants to recover monetary relief for fiduciary breaches.

## I.  **BACKGROUND**

Tyco US sponsors the seven retirement plans that are at issue in this case. All seven plans are "individual account plans." 29 U.S.C. § 1002(34). Accordingly, each participant is assigned an individual account and the participant's benefits are

-2-

"based solely upon the amount contributed to the account, and any income, expenses, gains or losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  Id.  Participants are permitted to contribute to their accounts and Tyco US is required to make matching contributions in amounts equal to a specified percentage of a participant's regular compensation.  Participants may choose from among several different investment options and may transfer funds from one investment to another at any time.

The Tyco Stock Fund is one of several investment options that are available under the Plans.  The fund holds shares in Tyco International stock.  Because it is a "unitized fund," a trustee designated by Tyco US holds title to the stock and participants are assigned units in the fund.  The trustee acquires stock by purchasing it on the open market.  Participants are not permitted to invest more than 25% of their Plan assets in the fund.

The Tyco US Retirement Committee ("Committee") is both the administrator and a "named fiduciary" for all seven Plans.  The Board of Directors of Tyco US is responsible for appointing and

-3-

removing members of the Committee.  The Plans describe the

respective powers and duties of the Board and the Committee by

stating that

> [t]he Board of Directors of the Plan Sponsor and the
> Committee shall have only those specific powers,
> duties, responsibilities, and obligations as are
> specifically given them under this Plan and the Trust
> Agreement.  In general, the Board of Directors of the
> Plan Sponsor shall have the sole responsibility for the
> appointment of the Retirement Committee.  The Committee
> shall have the sole responsibility for the general
> administration of the Plan and for carrying out its
> provisions.

See, e.g., Plan II ¶ 8.1.  Each Plan also states that

> [t]he Board of Directors of the Plan Sponsor and the
> Committee and any other person who, by reason of his
> involvement in and under this Plan, shall be deemed to
> be a fiduciary within the meaning of Title I, Section
> 3(21) of ERISA, shall discharge their Plan-related
> duties and responsibilities solely in the interests of
> the participants and their beneficiaries and with the
> care, skill, prudence and diligence under the
> circumstances then prevailing that a prudent man acting
> in like capacity and familiar with such matters would
> use in the conduct of an enterprise of like character
> and with like aims.

See, e.g., Plan II Art. XIII.

Plaintiffs claim that the price of Tyco International's

stock was grossly inflated during the class period as a result of

undisclosed looting and pervasive accounting fraud by its senior

-4-

management.  As a result, class members who held units in the
Tyco Stock Fund during the class period allegedly suffered
substantial losses when the company's true financial condition
was exposed.

## II.  <u>STANDARD OF REVIEW</u>

"[A] complaint should be dismissed [pursuant to Fed. R. Civ.
P. 12(b)(a)]. . . 'only if it is clear that no relief could be
granted under any set of facts that could be proved consistent
with the allegations.'" <u>Gorski v. N.H. Dep't of Corr.</u>, 290 F.3d
466, 473 (1st Cir. 2002) (quoting <u>Hishon v. King & Spalding</u>, 467
U.S. 69, 73 (1984)).  Accordingly, I must accept the complaint's
factual allegations as true and draw all reasonable inferences
from those alleged facts in favor of the plaintiffs.  <u>Id.</u>
Although the complaint is governed by the liberal pleading
standards of Fed. R. Civ. P. 8(a), it nevertheless "must set
forth factual allegations, either direct or inferential,
respecting each material element necessary to sustain recovery
under some actionable legal theory." <u>United States ex rel.</u>
<u>Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 240 (1st Cir.
2004).

### III.  ANALYSIS[1]

**A.  Fiduciary Status**

Defendants first argue that only the Committee and its members can be held liable for a breach of fiduciary duty because the Committee is the only entity that was named as a fiduciary under the Plans.

Retirement plans regulated under ERISA must have one or more named fiduciaries.  29 U.S.C. § 1102(a).  In addition, Section 3(21)(a) of ERISA provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or respon-

---

[1] Defendants contend that the named plaintiffs lack standing to assert claims on behalf of participants in Plans I, VI, and VII because none of the named plaintiffs was a participant in these Plans.  The short answer to this argument is that it should be raised in an objection to a motion for class certification rather than in a motion to dismiss.  Plaintiffs plainly have standing to seek relief for their own injuries.  Whether they also should be permitted to represent a class that includes participants in related plans implicates prudential concerns that must be analyzed under Fed. R. Civ. P. 23.  See Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998).

sibility to do so, or (iii) he has any discretionary
authority or discretionary responsibility in the
administration of such plan.

29 U.S.C. § 1002(21).  Several aspects of Section 3(21)(a)

require emphasis.  First, the section provides a functional

rather than formal test of fiduciary status.  Accordingly, a

person may owe fiduciary duties to a participant even though the

plan documents do not designate the person as a fiduciary.

Second, a person will be deemed to be a fiduciary only if he

either: (1) has or exercises discretion in administering the plan

or managing its assets; or (2) provides investment advice

concerning plan assets in exchange for compensation.  Finally, as

the First Circuit has recognized, "[f]iduciary status is not an

all or nothing proposition; the statutory language indicates that

a person is a plan fiduciary only 'to the extent' that he

possesses or exercises the requisite discretion and control."

Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir.

1998).

Plaintiffs argue that defendants other than the Committee

are liable because they qualify as fiduciaries under Section

3(21)(a).  Defendants respond by contending that they cannot be

considered fiduciaries under this section either because they did

-7-

not exercise discretion or they were not administering the Plans when they allegedly committed the acts on which plaintiffs' claims are based.  I address this argument with respect to each group of defendants in turn.

### 1.  Bent and Heffernan

Robert Bent and Kelly Heffernan were employees of Tyco US. Plaintiffs have sued them in their respective capacities as the Clerk and an authorized signatory of the Committee.

I agree with defendants that the complaint does not sufficiently allege that either Bent or Heffernan owed fiduciary duties to the plaintiffs.  While the Committee plainly is a named fiduciary, the complaint does not allege that either Bent or Heffernan were members of the Committee.  Nor is it reasonable to assume that they were members simply because they allegedly performed services on behalf of the Committee.  Finally, I cannot accept plaintiffs' argument that Bent and Heffernan acted in a fiduciary capacity because they signed SEC filings on behalf of the Committee.  The complaint does not claim that either defendant exercised discretionary control over the administration of the Plans when they signed the documents in question.

Ministerial actions of this sort do not give rise to fiduciary responsibilities.  See Beddall, 137 F.3d at 20.  Accordingly, I dismiss all claims against Bent and Heffernan.

**2.  Tyco US**

Plaintiffs offer three arguments to support their claims against Tyco US.  First, they contend that it was a fiduciary because the Plans assign it discretionary authority with respect to matters of Plan administration.  Next, they argue that it was a fiduciary because it actually exercised such authority.  Finally, they contend that it is vicariously liable for the fiduciary breaches of its employees who served on the Committee based on the doctrine of *respondeat superior*.

a.  Plan Documents

The Plans identify Tyco US as the Plan Sponsor and state that "the Plan Sponsor hereunder shall have and exercise all rights, powers, and duties thereof with respect to the Plan and the assets of the Plan."  See, e.g., Plan II ¶ 10.2.  Plaintiffs claim that this passage makes Tyco US a fiduciary because it gives the company discretionary authority with respect to matters of Plan administration.

-9-

Plaintiffs' argument is based on a misreading of the above-quoted passage. Paragraph 10.2 merely recognizes that Tyco US has the powers and duties of a Plan Sponsor. The only power that the Plans specifically assign to Tyco US in that capacity is the power to amend the Plans. See Plan II ¶ 10.1. A Plan sponsor generally does not act in a fiduciary capacity when it exercises such power. See Lockheed Corp. v. Spink, 517 U.S. 882, 889-90 (1996). Accordingly, the complaint does not sufficiently allege that the Plan documents assign Tyco US discretionary authority with respect to matters of Plan administration.

> b. Exercise of Discretionary Authority

Plaintiffs alternatively claim that Tyco US was a fiduciary because it actually exercised discretionary authority in administering the Plans. Plaintiffs base this argument on actions that Tyco US allegedly took while operating the Tyco Benefits Center. Several Plan documents advise participants to contact the Center if they have questions concerning the Plans. The documents also designate the Center as the point of contact for participants who wish to reallocate investments, modify contributions, or obtain distributions. Plaintiffs charge that Tyco US necessarily engaged in discretionary acts of Plan

-10-

administration when, acting through the Center, it assisted
participants with such matters.  I disagree.

A Plan Sponsor does not become a fiduciary merely because it
performs ministerial duties with respect to matters of Plan
administration.  See Beddall, 137 F.3d at 20.  Responding to
routine requests for information and processing requests to
reallocate investments, change contributions, or make
distributions, ordinarily does not involve the kind of discretion
that is required to give rise to fiduciary responsibilities.
Plaintiffs thus do not identify any conduct by Tyco US that
supports the view that it engaged in discretionary acts of Plan
administration.

> c.  *Respondeat Superior*

Plaintiffs alternatively invoke the doctrine of *respondeat
superior* in claiming that Tyco US is vicariously liable for the
fiduciary breaches of its employees who served on the Committee.

The First Circuit has not identified the circumstances under
which an employer will be held vicariously liable for the
fiduciary breaches of its employees, and the few courts that have
addressed the question have taken divergent paths in doing so.
The Fifth Circuit has suggested that an employer will be

-11-

vicariously liable for its employee's actions only if it "actively and knowingly" participated in an employee's fiduciary breaches. See Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S., 841 F.2d 658, 665 (5th Cir. 1988). The Sixth Circuit has concluded that an employer can be held liable for an employee's breaches of fiduciary duty even if it was unaware of its employee's misconduct. See Hamilton v. Carell, 243 F.3d 992, 1002 (6th Cir. 2001)(dictum); see also Nat'l Football Scouting, Inc. v. Cont'l Assur. Co., 931 F.2d 646, 649 (10th Cir. 1991) (assuming that respondeat superior doctrine applies to ERISA claims). In contrast, the Ninth Circuit has declined to hold an employer who sponsors an ERISA plan liable for breaches of fiduciary duty committed by employees who served on the Committee that administered the Plan. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985). District courts that have addressed the issue are similarly split. Compare In re Reliant Energy ERISA Litig., 336 F. Supp. 2d. 646, 657-58 (S.D. Tex. 2004) (applying respondeat superior), Howell v. Motorola, Inc., 337 F. Supp. 2d 1079, 1093-94 (N.D. Ill. 2004) and Kling v. Fidelity Mgmt. Trust Co., 323 F. Supp. 2d. 132, 146-47 (D. Mass.

-12-

2004) <u>with</u> <u>Crowley ex rel. Corning Inc. Inv. Plan v. Corning,</u>

<u>Inc.</u>, 234 F. Supp. 2d. 222, 228-29 (W.D.N.Y. 2002) (rejecting

*respondeat superior*) <u>and</u> <u>Tool v. Nat'l Employee Benefit Servs,</u>

<u>Inc.</u>, 957 F. Supp. 1114, 1117 (N.D. Cal. 1996).

I am not able to resolve defendants' challenge to

plaintiffs' *respondeat superior* claim on the present record.

While I do not doubt that an employer can be held vicariously

liable for the fiduciary breaches of its employees under certain

circumstances, I cannot determine how the doctrine applies in

this case without knowing more about the underlying facts.

Accordingly, I decline to dismiss plaintiffs' claims against Tyco

US to the extent that they are based on a *respondeat superior*

theory.

### 3.   Tyco US Board Members

Plaintiffs argue that the Board of Directors of Tyco US owed

fiduciary duties to the Plans and their participants because it

acted in a fiduciary capacity when it appointed and retained

members of the Committee.  I agree.

When an entity is given the power to appoint and retain a

plan administrator, it is subject to a fiduciary duty to use

reasonable care in exercising that power.  See Am. Fed'n of Unions Local 102, 841 F.2d at 665; Leigh v. Engle, 727 F.2d 113, 135 (7th Cir. 1984); In re Reliant Energy ERISA Litig., 336 F. Supp. 2d. at 656; In re Enron Corp. Sec., Derivative, & "ERISA" Litig., 284 F. Supp. 2d 511, 552 (S.D. Tex. 2003).  Whether the directors of Tyco US breached this duty is a question of fact that must be resolved at a later date.

### 4.  Tyco International

Plaintiffs offer three arguments to support their contention that Tyco International was a fiduciary.  First, they claim that Tyco International assumed fiduciary duties by disseminating documents that it was required to either file with the SEC or make available to Plan participants in order to comply with federal securities laws.  Second, they argue that it was a fiduciary because it is the alter ego of Tyco US.  Third, they allege that it is vicariously liable for Kozlowski's fiduciary breaches under the doctrine of respondeat superior.

### a.  SEC Documents

Plaintiffs claim that Tyco acted in a fiduciary capacity when it disseminated SEC Form S-8s and Section 10(a) prospectuses that incorporated by reference other allegedly misleading SEC

-14-

documents.[2]  Defendants respond by arguing that Tyco was acting

in a corporate capacity rather than a fiduciary capacity when it

disseminated the documents.  To understand this issue, one must

know more about the relevant documents.

The Securities Act of 1933 ("Securities Act") requires

issuers of certain securities to file registration statements.

See 15 U.S.C. § 77e.  Form S-8 is the statement that covers

"securities to be offered to employees pursuant to employee

benefit plans."  17 C.F.R. § 239.16(b)(a).  The form is used to

register: (1) securities that an employer issues to its own

employees or employees of a parent or subsidiary; and (2)

interests in plans that offer such securities.  See id.  A

registrant is required to incorporate certain prior SEC filings

---

[2]  Plaintiffs also allege that Tyco International acted in a
fiduciary capacity when it filed SEC Form 11-Ks on behalf of the
Committee.  A Form 11-K is an annual report "with respect to
employee stock purchase, savings and similar plans, investments
in which constitute securities regulated under the Securities Act
of 1933."  Form 11-K at 1.  The form is signed by the plan's
administrator and must be filed with the SEC.  See id. at 2.
Plaintiffs do not allege that Tyco International prepared or
signed the Form 11-Ks.  Instead, they merely assert that Tyco
International filed the forms with the SEC on behalf of the
Committee.  Such conduct does not involve the exercise of
discretion.  Thus, Tyco International was not acting in a
fiduciary capacity when it filed the Form 11-Ks on behalf of the
Committee.

by reference in a Form S-8.  See Form S-8 at 8.  A Form S-8 must be signed by the registrant, designated officers of the registrant, and at least a majority of its directors.  See id. at 10 n.1.  The Plan is also required to sign the form if the security consists of interests in the Plan.  See id.  Plaintiffs charge that Tyco International prepared, signed, and filed the Form S-8s at issue in this case.[3]

Section 10(a) of the Securities Act requires issuers of certain securities to prepare prospectuses.  See 15 U.S.C. § 77J(a).  Special rules apply if a Form S-8 is used to register the securities.  For example, a prospectus need not be filed with the SEC and the registrant may rely on Plan documents such as an SPD to serve as the prospectus.  See SEC Release No. 280924 *5-6 (June 6, 1990).  A Section 10(a) prospectus must incorporate by reference the same SEC filings that must be incorporated by reference in a Form S-8.  See 17 C.F.R. § 230.428.  The

---

[3]  Plaintiffs also argue that Tyco International's former directors and several of its officers are liable because they signed the Form S-8s and were involved in the preparation of other SEC filings.  This argument fails for the same reason that it is unavailing against Tyco International:  the former directors and officers were not administering the Plans when they signed the forms.

prospectuses at issue consisted of SPDs and Plan Information

Statements.

Whether Tyco International acted in a fiduciary capacity

when it disseminated Form S-8s and Section 10(a) prospectuses

depends upon whether it engaged in plan "management" or

"administration" when it disseminated the documents.  The Supreme

Court addressed a somewhat similar question in Varity Corp. v.

Howe, 516 U.S. 489, 502 (1996).  There, the Court considered,

among other things, whether deceptive statements that an employer

and plan administrator made to its employees concerning the

security of their benefits could support a breach of fiduciary

duty claim.  In upholding the district court's determination that

the defendant could be held liable for a breach of fiduciary

duty, the Court reasoned that the defendant was administering the

plan when it made the statements because: (1) the provision of

detailed information concerning the security of plan benefits is

a plan-related activity; (2) the statements at issue were made by

agents of the employer who were authorized to communicate to

participants in a fiduciary capacity; and (3) the participants

reasonably could have believed under the circumstances that the

employer was acting in a fiduciary capacity when its agents made

-17-

the statements.  Id. at 502-03.

Plaintiffs argue that Varity requires a similar conclusion here because the Form S-8s and Section 10(a) prospectuses, like the employer's statements in Varity, provided participants with detailed information concerning the security of their benefits. This argument misreads Varity.  As I have explained, Varity holds only that such statements may qualify as acts of plan administration if they are made by a person who is authorized to act in a fiduciary capacity.  This was not the case here because Tyco International was acting solely as an issuer of stock rather than a fiduciary when it disseminated the documents.

There are also good reasons why the court's reasoning in Varity should not be extended to the present case.  First, it would be difficult to reconcile such a result within the language of Section 3(21)(a), which rests a finding of fiduciary status in this type of case on a determination that the defendant actively participated in the administration of the Plan.  Second, there is little evidence in the legislative history of either the Securities Act, which is the source of the disclosure requirements, or ERISA to support the view that an issuer of stock necessarily assumes fiduciary responsibilities in complying

-18-

with its obligations under the securities laws if it chooses to

allow its employees to invest in its stock as a part of an

individual account plan.  Although plaintiffs plainly had a right

to expect that Tyco International would refrain from making

material misstatements in its SEC filings, that expectation must

be enforced under the securities laws rather than ERISA.

Accordingly, I reject plaintiffs' argument that Tyco

International was engaged in discretionary acts of Plan

administration when it disseminated the Form S-8s and Section

10(a) prospectuses.[4]

> b.  Alter Ego Liability

Plaintiffs next argue that Tyco International is vicariously

liable for the fiduciary breaches of Tyco US because it is the

---

[4]  Plaintiffs specifically cite statements that Tyco
allegedly made in a prospectus update that it prepared in
response to the merger of Mallinkrodt, Inc. and a subsidiary of
Tyco International.  The prospectus update explained to
participants in the prior Mallinkrodt plan that the plan's option
to invest in the Mallinkrodt Fund would be replaced by the option
to invest in the Tyco Stock Fund following the merger.
Plaintiffs attach special significance to this document because
it states that Tyco International will be responsible for
disseminating the prospectus update to participants.  This
argument is unavailing because, as I have explained, Tyco
International did not engage in discretionary acts of Plan
administration when it disseminated the prospectuses.

alter ego of its subsidiary.

Although the First Circuit has yet to apply the alter ego doctrine to a breach of fiduciary duty claim, it has identified the conditions under which a parent corporation may be held vicariously liable for its subsidiary's obligation pursuant to an ERISA-regulated plan to pay its retirees' health insurance premiums. In United Elect., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir. 1992), the court explained that "litigants who insist that the corporate veil be brushed aside must prove three things:  lack of corporate independence, fraudulent intent, and manifest injustice."[5]  Id. at 1093.

---

[5]  The court held in a later opinion that proof of a wrongful anti-union motive was not always required to prove an ERISA alter ego claim if the corporations in question shared common ownership but were not in a parent-subsidiary relationship.  See Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 308 (1st Cir. 1992).  In reaching this decision, however, the court stated that "we leave to another day the issue of what role anti-union animus would play in an ERISA suit for contributions to an employee benefit fund where liability is sought to be imposed on a parent company for the acts of its subsidiary on a veil piercing theory."  Id. at 308 n.8.  Thus, United Electrical remains good law and continues to be relied on by the circuit as a correct description of the federal common law veil piercing test.  See, e.g., InterGen N.V. v. Grina, 344 F.3d 134, 148-49 (1st Cir. 2003).

-20-

Construing the complaint in light of First Circuit precedent, it is evident that plaintiffs have not pled sufficient facts to state a claim that Tyco International is the alter ego of Tyco US.  Plaintiffs do not allege a lack of corporate independence between Tyco International and its subsidiary except in conclusory terms.  They do not assert that Tyco International acted with fraudulent intent when it adopted its corporate structure.  Nor do they assert that Tyco US lacks sufficient assets to pay any judgment that might be entered against it.  Instead, plaintiffs base their argument entirely on allegations that several officers of Tyco US also served as officers of either Tyco International or one of its other subsidiaries.  Such allegations are not sufficient to state a viable alter ego claim.  See InterGen, 344 F.3d at 149 ("[c]ommon ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability").

### 5.  Kozlowski's Statements

Plaintiffs assert that Tyco International is liable on a *respondeat superior* theory for misstatements and omissions that Dennis Kozlowski, its former chief executive officer, allegedly

-21-

made to participants.  I have reserved judgment as to when an

ERISA breach of fiduciary claim may be maintained using a

*respondeat superior* theory.  Accordingly, I decline to dismiss

plaintiffs' claims against Tyco International to the extent that

they are based on Kozlowski's alleged misstatements.[6]

**B.    Section 404(c) Defense**

_____Section 404(c) of ERISA provides fiduciaries with an

affirmative defense to liability for injuries that are caused by

a participant's exercise of control over assets in an individual

account plan.  See 29 U.S.C. § 1104(c)(1).  Defendants argue that

section 404(c) bars plaintiffs' claims because their losses were

the result of their own poor investment decisions rather than

defendants' misconduct.

A section 404(c) defense has four elements:  (1) the plan at

issue must provide for individual accounts; (2) the plan must

permit a participant to exercise control over the assets in his

account; (3) the participant must actually exercise control over

the assets; and (4) the loss or fiduciary breach on which the

_____

[6]  I also decline to dismiss plaintiffs' claims against
Kozlowski.  Whether he was acting in a fiduciary capacity when he
made the statements that plaintiffs attribute to him presents a
question of fact that must be resolved at a later date.

-22-

claim is based must result from the participant's exercise of control.  See id.

Regulations issued by the Department of Labor elaborate on the defense.  See 29 C.F.R. § 2550.404c-1.  These regulations state that the defense is unavailable if the fiduciary either exercised "improper influence" over the participant or concealed "material non-public facts" that it could have disclosed without violating federal or state law.  See 29 U.S.C. § 2550.404c-1(c)(2).

Although a defendant may raise an affirmative defense in a Rule 12(b)(6) motion, the court may not grant the motion unless the facts on which the defense is based are clear on the face of the complaint.  See Blackstone Realty, LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001).  Defendants cannot satisfy this standard here because I cannot determine from the complaint whether defendants exercised improper influence over the participants or concealed material nonpublic information from them.  Accordingly, I decline to dismiss the complaint pursuant to Section 404(c).

C.    **Count I**

Plaintiffs charge in Count I that defendants breached their fiduciary duties by negligently making material misstatements and

-23-

omissions concerning the Tyco Stock Fund.  They base their claim

in large part on statements concerning Tyco International's

financial condition that the company made in its SEC filings.

Plaintiffs contend that these filings are attributable to the

Committee because the Committee incorporated the filings by

reference into Form S-8s, Form 11-Ks, Section 10(a) prospectuses,

and SPDs.  Plaintiffs also rely on statements that Kozlowski

allegedly made to participants concerning Tyco International's

financial condition and certain statements concerning the risk

characteristics of the Tyco Stock Fund that defendants allegedly

made in several different Plan documents.  Defendants challenge

Count I by arguing that the alleged misstatements and omissions

are not actionable under ERISA.[7]

_____

[7] Defendants also argue that plaintiffs have attempted to
attribute statements made by one defendant to other defendants
who played no role in making or disseminating the statements.  29
U.S.C. § 1105 allows a fiduciary to be held liable for the
misconduct of a co-fiduciary in certain circumstances but
plaintiffs have not relied on this provision.  Nevertheless, as I
have explained, it is conceivable that Tyco US could be held
liable for the Committee's fiduciary breaches and Tyco
International could be held liable for Kozlowski's fiduciary
breaches on a *respondeat superior* theory.  Further, I have
determined that the directors of Tyco US may be held liable for
the Committee's fiduciary breaches under certain circumstances if
they failed to properly oversee appointees to the Committee.
Whether a particular misstatement or omission should be

-24-

I cannot evaluate defendants' argument on the present record.  Although the Supreme Court has determined that a fiduciary can be held liable if it intentionally makes material misstatements to participants in an effort to profit at their expense, see Varity Corp., 516 U.S. at 502, neither the Supreme Court nor the First Circuit has yet determined whether a breach of fiduciary duty claim can be premised on negligent misrepresentations.  Although other courts have recognized such claims in certain circumstances, see, e.g., Mathews v. Chevron Corp., 362 F.3d 1172, 1183 (9th Cir. 2004); Krohn v. Huron Mem. Hosp., 173 F.3d 542, 547 (6th Cir. 1999), I am reluctant to express a view on this issue without the benefit of an evidentiary record.

I am also uncertain as to whether defendants can be held liable for a failure to disclose material information.  The First Circuit has suggested that a fiduciary may have a duty to disclose material information if he has reason to know that the failure to disclose the information would be harmful and either a

---

attributed to a particular defendant under one of these theories is a question that can be resolved more reliably after the evidentiary record has been developed.

-25-

participant has specifically requested the information or the information concerns the plan as a whole.  See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 114-15 (1st Cir. 2002).  I cannot determine whether the First Circuit's reasoning is applicable in this case because the parties have not attempted to address the issue by applying the criteria that the First Circuit suggests are dispositive.  Accordingly, I decline to dismiss Count I.

**D.    Count II**

Plaintiffs claim in Count II that defendants are liable because they negligently allowed participants to invest in the Tyco Stock Fund even though they knew or reasonably should have known that it was an unreasonably risky investment.  Defendants challenge Count II on two grounds.  First, they argue that they cannot be charged with a breach of fiduciary duty for allowing participants to invest in the Tyco Stock Fund because the Plans did not give them the discretion to prevent such investments.  Second, they argue that the complaint does not sufficiently allege that defendants acted imprudently.[8]

---

[8]  Defendants also claim that only the Committee can be held liable for the conduct on which the claim is based.  I agree that

-26-

## 1.  **Discretion to permit investments**

Defendants contend that they could not have prevented participants from investing in the Tyco Stock Fund because the Plans required the Committee to offer the Fund as an investment option.   Defendants base this argument on the Plan's definition of the term "investment fund," which states that "[t]he term 'investment fund' shall include a fund established by the trustee at the direction of the Committee, which shall be invested primarily in common shares of . . . Tyco International, Ltd. and short-term interest income vehicles."  Plan II ¶ 1.23.  In making this argument, however, defendants overlook the Plan provision that specifically describes the Committee's powers and responsibilities.  That provision states that the Committee has the power "to select appropriate investment vehicles, which may

_____

the complaint does not sufficiently allege that either Tyco International or Kozlowski were responsible for allowing participants to invest in the Tyco Stock Fund.  However, as I have explained, Tyco US could be held vicariously liable for the Committee's actions on a *respondeat superior* theory.  Similarly, the directors of Tyco US could be liable for the Committee's actions if they breached their fiduciary duties with respect to the appointment and retention of Committee members.  Accordingly, I dismiss Count II insofar as it asserts claims against Tyco International and Kozlowski but otherwise deny defendants' motions to dismiss this count.

-27-

include the Tyco Stock Fund . . . ."  Plan II ¶ 8.4(J) (emphasis

added).  When these two provisions are read together, it is

apparent that while the Tyco Stock Fund is an "investment fund,"

the Committee retains the power to determine whether participants

should be permitted to invest in the fund.  Thus, I reject

defendants' contention that the Plans required that the Committee

give participants the opportunity to invest in the fund.

### 2.  **Negligence**

The complaint charges that defendants should have prevented

participants from investing in the Tyco Stock Fund because they

either knew or reasonably should have known that it was an

imprudent investment.  Plaintiffs support this claim by relying

on multiple references in the public record during the class

period in which commentators raised questions concerning Tyco

International's accounting practices.  They also base their claim

in part on allegations that defendants either knew or should have

known of the undisclosed looting and accounting fraud that

allegedly was occurring at the company.  According to plaintiffs,

this combination of public and nonpublic information should have

caused the defendants to realize that the Tyco Stock Fund was an

imprudent investment.

-28-

Defendants argue that the evidence cited in the complaint will not support an imprudent investment claim. In making this argument they cite to case law that applies a presumption of reasonableness to a plan administrator's decision to invest in employer securities.[9] See, e.g., Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995); see also, Lalonde v. Textron, Inc., 369 F.3d 1, 3-4 (1st Cir. 2004). They also argue that plaintiffs cannot base their claim on nonpublic information because defendants could not authorize trading on the basis of such information without violating insider trading laws. I reject these arguments because the complaint is sufficient even if the presumption of reasonableness applies and plaintiffs are forced to support their claim solely with publicly available information.

---

[9] Plaintiffs argue that the presumption of reasonableness applies only to Employee Stock Ownership Plans ("ESOPs"). Because the Tyco Stock Fund is not an ESOP, they argue that the presumption does not apply. Defendants respond by arguing that the presumption applies to all "eligible individual account plans," see 29 U.S.C. § 1107(d)(3)(A), because all such plans are exempt from ERISA's diversification requirement. See 29 U.S.C. § 1104(a)(2); see also Wright v. Or. Metallurgical Corp., 222 F. Supp. 2d 1224, 1233 (D. Or. 2002). Because I would not dismiss Count II even if the presumption applies, I decline to resolve this dispute at the present time.

**E.    Available Relief**

Defendants next argue that plaintiffs' claims must be dismissed because they seek a form of relief that is not available under ERISA.

ERISA authorizes participants to sue fiduciaries on behalf of a plan to recover losses to the plan that are caused by a breach of fiduciary duty.  See 29 U.S.C. §§ 1109 (a) and 1132(a)(2); see also Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985).  Although defendants argue that the complaint seeks to recover for losses suffered by participants rather than by the Plans, the complaint plainly seeks to recover on behalf of both the Plans and their participants.  Because the complaint seeks a form of relief that is available under ERISA, I decline to dismiss the complaint on this basis.  Whether plaintiffs will be able to prove that the Plans suffered cognizable losses and whether ERISA also permits plaintiffs to recover for losses that were suffered only by participants are questions for another day.

**IV.    CONCLUSION**

For the reasons set forth in this Memorandum and Order I

-30-

grant defendants' motions to dismiss all claims against Bent,

Heffernan, the former directors of Tyco International and the

former officers of Tyco International other than Kozlowski.  I

also dismiss Count II insofar as it asserts claims against Tyco

International and Kozlowski.  Defendants' motions to dismiss

(doc. nos. 8, 9, 10, 12, 13, and 14) are denied in all other

respects without prejudice to their right to renew their

arguments in properly supported motions for summary judgment

after discovery has been completed.

    SO ORDERED.


                                      _____
                                      Paul Barbadoro
                                      United States District Judge

December 2, 2004

cc:  Counsel of Record