## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re XEROX CORPORATION ERISA LITIGATION | ) ) ) ) ) ) ) ) | Master File No. 02-CV-1138 (AWT) <br><br> <u>CLASS ACTION</u> <br><br> DECEMBER 17, 2004 |
| This Document Relates to: <br> ALL ACTIONS | | |

### **PLAINTIFFS' RESPONSE TO DEFENDANTS' UPDATED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

# INTRODUCTION

Ignoring recent decisions that reject the very arguments Defendants present here, Defendants' Updated Memorandum In Support of Motion to Dismiss Consolidated Amended Complaint ("Defs' Mem.") mainly rehashes arguments made in their earlier briefs. Having previously disposed of these arguments, Plaintiffs will discuss here only those issues Plaintiffs believe merit further response.[1]

## I. Defendants Incorrectly State That No Fiduciary Could Be Responsible For Investment of the Plan's Assets In the Xerox Stock Fund

Defendants' principal argument here is merely a repeat of the same one made before:

> [N]o defendant chose the Xerox Stock Fund as an investment option (because that Fund's presence on the Plans' investment menus was part of the design of he Plans, built into them by the Company acting in its settlor, non-fiduciary capacity), and no defendant exercised authority or control with respect to investment in the Xerox Stock Fund (because those decisions were made by the participants themselves). Hence, under the ERISA fiduciary definition, no defendant had responsibility for the continued maintenance of the Xerox Stock Fund or for investment in it.

---

[1] Defendants' Updated Memorandum also raises issues that Plaintiffs believe they have adequately dealt with elsewhere, including: (1) whether Fed. R. Civ. P. 9(b) is applicable to Plaintiffs' Complaint, *see* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint ("Plaintiffs' Opposition") at 4-5 and Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint ("Plaintiffs' Supplement") at 4-5; (2) Defendants' insider trading argument, *see* Plaintiffs' Opposition at 16-20; 25-27; Plaintiffs' Supplement at 14 n.11; (3) Plaintiffs' monitoring claim, *see* Plaintiffs' Opposition at 20-22; Plaintiffs' Supplement at 14-16; and (4) whether Plaintiffs' claims involve the rendering of investment advice as opposed to the fiduciary duty of disclosure, *see* Plaintiffs' Opposition at 25-27; Plaintiffs' Supplement at 17-18.

Defs' Mem. at 9-10.

It is true that the Plan documents do not go as far as they might in spelling out fiduciary responsibilities, in that they do not, for example, state "Fiduciaries, this means you!" Nor do they say "this means all assets, not just some of them." The meaning of the Plans is, nonetheless, perfectly clear in imposing fiduciary duties on the Defendants.

As shown in greater detail in Plaintiffs' Opposition at 5-10, the Plan documents specifically provide for Defendants' fiduciary involvement in and management of the Xerox Stock Fund. For example, the Xerox Board of Directors had discretionary authority over the Xerox Stock Fund in both the Xerox Corporation Profit Sharing and Savings Plan, 1998 Restatement ("Salaried Plan") (the Board had "authority to control and manage the assets of the Plan" and also "the authority to appoint another named fiduciary or fiduciaries or an investment manager or managers ... to manage ... all or any part of the assets of the Plan.") and the Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. ("Union Plan") (the Board had the authority to establish the Xerox Stock Fund and the authority to adopt guidelines under which the Xerox Stock Fund would be invested). *See* Salaried Plan at §2.04 and Union Plan, Amendment No. 1 to 1998 Restatement at §6.02(a)(1)(B), respectively. The Defendant members of the Finance Committee of the Board of Directors had discretionary authority over the Xerox Stock

Fund because they approved "the overall investment strategy for the Master Trust investments, including the broad guidelines under which they are managed." *See* Plan Form 11-K for year ending December 31, 1002 at 11. The Defendant members of the Fiduciary Investment Review Committee had discretionary authority over the Xerox Stock Fund because they oversaw the management of the funds on a regular basis, and Xerox itself had discretionary authority over the Xerox Stock Fund because it had the obligation to "at least annually establish and review the investment guidelines of the Plan." *See* Salaried Plan at §2.05. The Plan Administrator Defendants had discretionary authority over the Xerox Stock Fund because the Salaried Plan documents expressly authorized them "to have full authority to control and manage the operation and administration of the Plan," of which the Xerox Stock Fund was a part, *see* Salaried Plan at §2.03, and the JAB Defendants had like authority because the Union Plan documents expressly authorized the JAB to "have the authority to control and manage the assets of the [Union] Plan," *see* Union Plan at §2.13. Thus, contrary to Defendants' continued protestations, they were Plan fiduciaries, and so, as alleged, had a continuing fiduciary duty to monitor the prudence of the Xerox Stock Fund as an investment alternative.

Moreover, under ERISA, fiduciary status can arise in two ways. One can be named as a fiduciary, or one can be a fiduciary by virtue of one's function, that is, what one does with respect to the Plans. *Lopresti v. Terwilliger*, 126 F. 3d 34, 40 (2d Cir.

1997); *Custer v. Sweeney*, 89 F. 3d 1156, 1161 (4th Cir. 1996).  Here, Plaintiffs have alleged that each Defendant was a functional fiduciary in addition to being, in some cases, a named fiduciary.  Because the question of whether one is a functional fiduciary is fact-intensive, and the Court must accept well-plead allegations as true when ruling on a motion to dismiss, the Court should not, prior to discovery, conclude that no Defendant functioned as a fiduciary with respect to the Xerox Stock Fund.

It is also significant that Defendants still fail to cite a single case that has adopted their novel "fiduciary-less plan" argument, let alone one that has dismissed a complaint based on that argument.

**II.     An ERISA Plan Cannot, and These Plans Do Not, "Carve Out" Certain Plan Assets From Fiduciary Oversight**

Defendants' argument is, in effect, that participant-direction removes the assets in question from fiduciary oversight.  The Court should reject this argument because it is premised on the notion that, contrary to ERISA's explicit requirements, Defendants have designed an ERISA plan that exists without a fiduciary responsible for one of its primary investments, and that no matter how imprudent that investment became, no fiduciary was responsible to remove that option or to monitor others who did have such responsibility, or to provide adequate disclosure of the stock's imprudence.  Both the facts, as seen in the Plan documents themselves, and the law, as expressed most recently in the opinions

issued since the filing of Plaintiffs' Opposition, establish the error of Defendants' arguments.

In *Rankin v. Rots,* 278 F. Supp.2d 853 (E.D Mich. 2003)("*Kmart*"), for example, the Court rejected an argument that, despite being named fiduciaries under Plan documents and having fiduciary responsibilities, and having performed fiduciary functions, defendants could not be held liable because the plan documents did not assign them the precise fiduciary duties which plaintiffs alleged they had breached. The *Kmart* Court held that the plan documents cannot be read so narrowly so as to limit the scope of a fiduciary's duties, and that fiduciaries cannot blindly follow the plan when to do so would be imprudent. Moreover, the *Kmart* Court noted that:

> Because of Conaway's and the Board of Directors['] broad authority in regards to the Plan, they simply cannot be dismissed at this time. Rankin has sufficiently alleged Conaway and the Outside Directors' fiduciary status. It also follows that she has also properly alleged their liability as co-fiduciaries. While it may turn out that Conaway and/or the Outside Directors were not fiduciaries regarding some aspects of the Plan decisions and operation at issue, this issue is not ripe for consideration at this early stage. . .

*Id*. at *48-49.

A similar result obtained in *In re Xcel Energy, Inc., Sec., Derivative, & ERISA Litig.,* 312 F. Supp 2d 1165 (D. Minn 2004), in which the Court recognized a fiduciary's continuing overarching obligation to act prudently with respect to the plan's investments.

> Plaintiffs do not assert that the plan on its face violates a fiduciary duty, as such an assertion would be absurd. Rather plaintiffs argue that defendants' subsequent action or inaction falls within ERISA's fiduciary rubric. Plaintiffs agree that the company was free to design the plan in any manner consistent with ERISA. They also agree that there is no general duty to diversify an ESOP. However, when the failure to do so is not in the best interest of beneficiaries, a fiduciary may be in breach.

*Id*. at 24-25.

And in *In re CMS Energy ERISA Litigation*, 312 F. Supp. 898 (E.D. Mich. 2004), the defendants argued that the "plaintiffs cannot state a claim for failure to prudently and loyally manage plan assets where assets were invested exactly as required by explicit plan terms." The Court there rejected any plan-design "carve out" argument.

> [T]he court is in agreement that to the extent this claim alleges breach of fiduciary duty for failure to amend the terms of the Plan itself, such claims are dismissed. However, also as stated above, the court is not convinced that plaintiffs' claims concerning the management of Plan assets end there, as defendants seem to suggest. Rather, as plaintiffs point out, the Plan Administrators are alleged to have "exercised authority and control over Plan assets by advising the Plan Committees with regard to the performance of the Plan's investments and investment managers, selecting Plan investment options, and ensuring that Plan assets were prudently managed and protected." Furthermore, the Plan reserved broad management and administrative powers for the Employers, who chose and directed the trustee under the Plan, and made incentive and matching contributions to the Plan in the form of CMS stock and/or, under the terms of both Plans, cash or temporary investments. The Sixth Circuit has held that such discretion creates the potential for fiduciary liability. The court will not dismiss on these arguments.

*Id.*, at 914 (citations omitted).

Recent decisions from other courts also have held the same. *See*, *e.g.*, *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1367 (N.D. Ga. 2004)(fiduciaries must refuse to follow plan documents when imprudent and inconsistent with ERISA); *In re Sears, Roebuck & Co. ERISA Litigation*, 2004 WL 407007, *4-6 (N.D. Ill. March 3, 2004)(same); *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 284 F.Supp.2d 511, 670 (S.D. Tex. 2003)(holding that "an investment fiduciary must disregard plan documents if following their terms would be imprudent.") Defendants cannot hide behind empty references to "plan design" to insulate themselves from fiduciary liability.

### III.  Defendants' Efforts to Distinguish Certain Recent Cases Are Unavailing

Defendants argue that because their Plans are "plain-vanilla, participant directed 401(k) plans," and not ESOPs, decisions concerning other plans that contain both ESOP components and "plain-vanilla" employee-directed components must not apply to them. Nonsense. Nothing in those opinions limits the defendants' fiduciary status therein to only the plans' ESOP portions. Indeed, the opinions clearly apply to the employee-directed portions of the plans, and clearly apply to the Xerox Plans here.[2]

---

[2] *See, e.g.*, *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 827-28 (S.D. Ohio 2004) (sustaining breach of fiduciary duty of prudence claim regardless of whether the plan qualified as an ESOP, the determination of which is premature at the pleading stage); *BellSouth*, 313 F. Supp. 2d at 1364, 1367-68 (sustaining claims for breach of the duty of prudence with respect to company stock invested in alleged ESOP and non-ESOP portions of plan); *Xcel*, 312 F. Supp. 2d at 1180-81 (rejecting argument that the offering of company stock as an investment option in the non-ESOP portion of the plan was a matter of plan design and refusing to apply a heightened pleading standard or presumption to ESOP vs. non-ESOP investments in company stock); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 670 (E.D. Tex. 2004) (sustaining claims and declining to determine on motion to dismiss whether company stock fund even qualified as an

Moreover, the Department of Labor has emphasized that fiduciaries in employee-directed plans, such as those here, have responsibility to monitor the prudence of the investment alternatives (including the Xerox Stock Fund here). *See*, for example, DOL Advisory Opinion No. 98-04(A), 1998 WL 326300, at *2 and n.1:

> [Fiduciary duties] apply to the selection and monitoring of both plan investments and designated investment alternatives in a participant directed individual account plan. . . . In connection with the publication of the final rule regarding participant directed individual account plans, the Department emphasized that the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function . . . .

And in a Letter from the Pension and Welfare Benefits Administration, U.S. Department of Labor to Douglas O. Kant, 1997 WL 1824017, at *2 (Nov. 26, 1997), attached to Plaintiffs' Opposition, DOL stated that "responsible plan fiduciaries are also subject to ERISA's general fiduciary standards in initially choosing *or continuing to designate investment alternatives* offered by a 404(c) plan." (Emphasis supplied.).[3]

Defendants' argument that Xerox changed an ERISA-mandated fiduciary function (reviewing and continuing the designation of investment alternatives) into a settlor

---

ESOP); *Enron*, 284 F. Supp.2d at 655-66 (allegations by savings plan as well as ESOP participants that fiduciaries breached their duties of prudence were sufficient to state claim for breach of fiduciary duties of loyalty and prudence under ERISA); *Kmart*, 278 F. Supp. 2d at 878 (fact that company stock was held in an ESOP did not relieve defendants of their fiduciary duty of prudence); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 764 and n.12 (S.D.N.Y. 2003) (rejecting argument that plaintiffs' claims must be dismissed because participants exercised "exclusive control" over their investment decisions).

[3] While Defendants have disclaimed any defense under ERISA § 404(c) (presumably because compliance with 404(c) is fact intensive and inappropriate at this stage in the case), the Xerox Plans specifically provide that they are "designed to qualify as a participant-directed account plan under Section 404(c) of ERISA." Salaried Plan at §1.01; Union Plan at §1.01.

function, clearly fails; that the Xerox Plans are not ESOP's is irrelevant here.  *In fact, no Court has dismissed claims like those here on the basis that a "plain-vanilla," employee-directed plan, had no fiduciaries responsible for monitoring the prudence of the Plan's investment in company stock.*

**IV.     Plaintiffs Properly Seek Plan-Wide Relief Under Section 502(a)(2)**

Defendants rely on *In re Schering-Plough ERISA Litig.*, No. Civ. A. 03-1204, 2004 WL 1774760 (D.N.J. June 28, 2004) in arguing that Plaintiffs' claim will not provide "relief that will inure to the benefit of either Plan as a whole."  Defs' Mem. at 16.  Plaintiffs have previously refuted this argument.  *See*, Plaintiffs' Opposition at 29-32, and Plaintiffs' Supplement at 20-22.

Moreover, the *Schering-Plough* decision cuts against the great weight of authority that holds claims such as Plaintiffs' here are properly characterized as seeking plan-wide relief under § 502(a)(2).  *See*, Plaintiffs' Supplement at 20-21.  Defendants have not even mentioned these decisions, let alone tried to distinguish them.

In fact, one of the principle cases upon which the Court relied in *Schering-Plough* to support its conclusion, *WorldCom*, found that plan-wide relief *was* available under that section.  As pointed out in the Department of Labor's Amicus Brief to the Third Circuit in *Schering-Plough*, attached to Plaintiffs' Supplement, at 19 n.8:

> The district court below misread *WorldCom* as an action that did "not seek plan-wide relief," and erroneously distinguished the case on that basis.

>*Schering-Plough*, 2004 WL 1774760, at *7. To the contrary, the *WorldCom* litigation was brought on behalf of the plan for plan-wide relief under section 502(a)(2). See *WorldCom*, 263 F. Supp. 2d at 753, 759.

Plaintiffs' claims here *do* seek relief on a plan-wide basis and are proper under §502(a)(2).

## V. The Court Should Disregard the Exhibit Attached to Defense Counsel's Declaration

Finally, Defendants improperly ask the Court to review an unauthenticated document which purports to be the Plans' investment objectives. *See*, Declaration of Steven Sacher. On a motion to dismiss, the Court's review is restricted to the complaint and those documents that are referred to in, or which are integrally related to, the complaint. *Goldman v. Belden,* 754 F. 2d 1059, 1065-66 (2d Cir. 1985). The document Defendants seek to put before the Court is neither. And, quite apart from the fact that the document does not even help the Defendants, as the Court is aware, the Defendants have successfully resisted Plaintiffs' efforts to engage in discovery. In the face of Defendants' refusal, it would therefore be patently unfair to allow Defendants to use an unproduced, surprise document to support their motion.

## CONCLUSION

The Court should deny Defendants' motions, and order Defendants to answer.

Dated this 17th day of December 2004.

Respectfully Submitted By

_____
Goodman, Rosenthal & McKenna, PC
John F. McKenna, Esq. - ct00104
977 Farmington Avenue
Suite 200
West Hartford, Connecticut 06107
860-231-2800

SUSMAN & WATKINS
Charles R. Watkins
John R. Wylie
Two First National Plaza, Suite 600
Chicago, Illinois  60603
312-346-3466
Co-Lead Counsel

KELLER ROHRBACK LLP
Lynn Lincoln Sarko
Laurie B. Ashton
Elizabeth Leland
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, Washington  98101-3052
206-623-1900 (Seattle)
602-248-0088 (Phoenix)
Co-Lead Counsel

Steering Committee Counsel:

LAW OFFICES OF DANIEL M. HARRIS
Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, Illinois  60606
312-960-1802

       BERGER & MONTAGUE, P.C.
       Todd Collins
       1622 Locus Street
       Philadelphia, Pennsylvania 19103-6365
       (215) 875-3040

       SCHIFFRIN & BARROWAY
       Marc A. Topaz
       Joseph H. Meltzer
       Three Bala Plaza East, Suite 400
       Bala Cynwyd, Pennsylvania 19004
       (610) 667-7706

       MALAKOFF DOYLE & FINBERG, P.C.
       Ellen M. Doyle
       437 Grant Street, Suite 200
       Pittsburgh, Pennsylvania 15219
       (412) 481-8400

       MCTIGUE LAW FIRM
       Brian McTigue
       Bruce Rinaldi
       5301 Wisconsin Ave., N.W., Suite 350
       Washington, D.C. 20015
       (202) 364-6900