UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION (AWT) | Master File No. 02-CV-1138 |
| | **CLASS ACTION** |
| This Document Relates to: | |
| ALL ACTIONS | SEPTEMBER 30, 2005 |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' SIXTH NOTICE OF SUPPLEMENTAL AUTHORITY

**The Third Circuit's *Schering-Plough* Decision Is Flawed And, In Any Event, Is Not Binding On This Court; Indeed, Better Reasoning Is Found In Other Cases**

On August 31, 2005, Plaintiffs filed their sixth Notice of Supplemental Authority, this time regarding *In re Schering-Plough Corp. ERISA Litigation*, 430 F.3d 231 (3d Cir. 2005) ("*Schering-Plough*"). In *Schering-Plough*, the Third Circuit reversed the decision below and held that in the circumstances of that action, a claim for relief lies under sections 502(a)(2) and 409(a) of ERISA, 29 U.S.C. §§1132(a)(2) and 1109(a).[1] This Court, however, is not bound by the *Schering-Plough* decision or by the reasoning employed by the Third Circuit which, Defendants respectfully assert, is fundamentally flawed. Other courts, including the Second and Ninth Circuits, have reasoned in cases similar to the present case ("*Xerox*") that a claim under sections 1132(a)(2) and 1109(a) may not be asserted.[2]

---

[1] Hereinafter, unless otherwise specified, all citations to provisions of ERISA shall be to those provisions as codified in Title 29 of the United States Code.

[2] Section 1132(a)(2) empowers plan participants and beneficiaries, plan fiduciaries, and the Secretary of Labor to bring civil actions in the federal courts for "appropriate relief" under section 1109(a). Section 1109(a) provides in relevant part that a fiduciary to a plan who breaches an ERISA fiduciary duty shall be personally liable to make good to the plan any resultant losses and to restore to the plan any profits made through use of the plan's assets, and shall be subject to other equitable or remedial relief, as the court may deem appropriate.

HARTFORD 127356v1

### 1. The *Schering-Plough* Reasoning Is Fatally Flawed

*Schering-Plough* involves allegations similar to those in *Xerox*. In both cases, the defendants contended in motions to dismiss that the plaintiffs cannot maintain a claim under sections 1132(a)(2) and 1109(a) if the relief sought will inure to only a sub-group of the plan's participants and will not inure to the "plan as a whole" as required under *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ("*Russell*"). In *Schering-Plough*, the Third Circuit distinguished *Russell* on circumstantial grounds, observing that the issue of whether a subgroup of plan participants can assert a claim under sections 1132(a)(2) and 1109(a) where "the fiduciaries' alleged breach did not affect the investments of participants in other subgroups . . . [was] simply not before the [*Russell*] Court." *Schering-Plough*, 420 F.3d at 241.

Respectfully, Defendants note that the Third Circuit failed to address a fundamental question in determining the applicability of *Russell* to the *Schering-Plough* facts and the facts of similar cases. In *Russell*, each time the Supreme Court articulated the standard for a claim to lie under sections 1132(a)(2) and 1109(a), it used the phrase "plan as a whole."[3] On the facts before it (individual health care plan participant seeking recovery for herself for damages caused by the plan fiduciary's alleged breach of duty), the Court could have disposed of the issue completely by simply referring to "the plan." The addition of "as a whole" was unnecessary to decide the matter before the Court, yet it added those words each time it articulated the standard.[4]

---

[3] *Russell*, 473 U.S. at 140, 142 n.9.

[4] The significance of the Court's phraseology in describing the threshold standard for invoking §§ 1132(a)(2) and 1109(a) is driven home by other language in the opinion. For example (in describing the focus of the drafters of ERISA), "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with . . . remedies that would protect the *entire plan*, rather than with the rights of an individual beneficiary." *Russell*, 474 U.S. at 142 (emphasis added).

2

Defendants suggest that the Court used the phrase "plan as a whole" rather than merely "plan" in order to convey its view that claims under sections 1132(a)(2) and 1109(a) must seek relief that, in a defined benefit plan (*i.e.*, a plan that does not entail a separate account for each participant, such as the health care plan at issue in *Russell* or a defined benefit pension plan), inures to the entire plan as opposed to the benefit of only one or more, but not all, of the plan's participants, and, in a defined contribution plan (in which, by definition, there is a separate account for each participant),[5] inures to all of the plan participants rather than to only a subgroup of participants.

Of equal significance, the Third Circuit appears to have lost sight of the broader context of the *Russell* decision, which is brought into sharp focus by Justice Brennan's concurring opinion (in which three other justices joined). Justice Stevens' unanimous opinion stressed the Court's "reluctan[ce] to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Russell*, 473 U.S. at 147. This is a theme that has cropped up repeatedly in ERISA jurisprudence.[6] Justice Brennan's 10-page concurrence spotlights numerous reasons why, in his view, a narrow reading of the ERISA enforcement provisions is unwarranted, erroneous, and bad policy. Three of his colleagues agreed with him. In context, this means that the Supreme Court carefully considered the pros and cons of reading ERISA's relief provisions narrowly or broadly. Even the minority that was uncomfortable with a narrow reading signed off on Justice Stevens' opinion applying that view to the facts before the Court. This suggests that the words "as a whole" were very deliberate. Because those words were not necessary to a holding against Ms.

---

[5] *See* §§1002(34) and 1002(35).
[6] *E.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) ("Indeed, we have noted that ERISA's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' ") (quoting *Russell*, 473 U.S. at 146-47, and *Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993)) (emphasis in original).

3

Russell, they must have been intended to guide future courts considering fact patterns different than that before the *Russell* Court. Yet the Third Circuit's *Schering-Plough* discussion of *Russell* evidences no recognition of this. It merely states the obvious: the issue before it is different than the issue before the *Russell* Court. The Third Circuit then discounts to zero the *Schering-Plough* district court's reliance on *Russell*. *Schering-Plough*, 420 F.3d at 240-41. The Third Circuit's failure to recognize and apply the Supreme Court's edict in *Russell* fatally undermines its reasoning and conclusion.

2. **Authority in the Second and Ninth Circuits Is Better Reasoned**

Significantly, the Third Circuit's decision is not binding on this Court. Moreover, better reasoning is found in the decisions of other circuit courts and of district courts in this circuit. For example, in *Fisher v. J.P. Morgan Chase & Co.*, No. 03 Civ. 3252, 2005 WL 2063813 (S.D.N.Y. August 26, 2005), a 401(k) plan company stock case very much like *Schering-Plough* and *Xerox*, plaintiffs moved to certify a class and defendants challenged the standing of the class representatives to bring their claims on behalf of the plan under sections 1132(a)(2) and 1109(a). Observing that "participants in a plan possess standing to sue under section 1132(a)(2) only when they assert a cause of action on behalf of the plan itself," *Id.* at *3, Judge Stein held that "plaintiffs may not invoke the right of action ... in section [1132(a)(2)]" where they are seeking recovery on behalf of a subclass of participants and not on behalf of the plan itself. *Id.* at *4.

The *Fisher* plaintiffs acknowledged that they sought damages to individuals, but asserted that section 1132(a)(2) should nevertheless be available to them because the damages they sought would "flow through the Plan to them." *Id.* at *3. Judge Stein rejected that reasoning as "formalistic." *Id.* at *4. Quoting from *Milofsky v. American*

4

*Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005), *vacated pending reh'g en banc*, 418 F.3d 429 (5th Cir. 2005),[7] he held that the plaintiffs lacked standing under section 1132(a)(2) "because this case in essence is about an alleged particularized harm targeting a specific subset of plan beneficiaries . . . only, and not the plan generally." *Id.* at *4.

Because the matching contributions made to the Xerox plans by the Company were made in cash and not in stock, and could be invested in any fund offered under the plans (Defendants' Memorandum in Support of their Motion to Dismiss, at 2-3), the only participants who had units of the Xerox Stock Fund during the putative class period were those who had personally decided to acquire them with their own contributions or with Xerox's matching cash contributions.[8] Thus, the harm alleged in the Consolidated Amended Complaint and the recovery requested therein do not relate to either of the Xerox Plans "as a whole," but rather to the individual plan participants who chose the Xerox Stock Fund as one of their investment options.

Similarly, other courts in the Second Circuit have held that where plaintiffs are actually seeking damages for themselves and not on behalf of the plan as a whole, relief under section 1132(a)(2) will be unavailable. *See, e.g., Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (finding no claim under section 1132(a)(2) in a suit by health care plan participants seeking reimbursement for covered medical costs from an insurance company that was the plan's third party administrator and that ceased making benefit payments when the plan sponsor employer went into bankruptcy, "because plaintiffs are seeking damages

---

[7] Fifth Circuit Rule 41.3 states that "unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."

[8] Even if the class is certified and there is judgment in favor of Plaintiffs, only those plan participants who invested in the Xerox Stock Fund during the putative class period — May 12, 1997 to November 15, 2002 — will get the proceeds of any recovery. They are the only ones whose plan accounts were affected by any of the breaches of fiduciary duty alleged in the Consolidated Amended Complaint.

on their own behalf, not on behalf of the Plan"). Moreover, a nominal declaration that plaintiffs are suing on behalf of the plan is not enough. Even though plaintiffs employ the mechanism of a class action, this does not mean that they are seeking relief for the plan as a whole. In one case, the court remarked "[the plaintiff] has commenced a class action — which is not at all the same thing as a representative action — and she seeks, on behalf of herself and unnamed others, to recover benefits to which the class members believe they are *individually* entitled." *Nechis v. Oxford Health Plans, Inc.*, 328 F. Supp. 2d 469, 477 (S.D.N.Y. 2004) (emphasis added). The court found that the "alleged harm can only be redressed by awarding relief to those individual plaintiffs who have suffered a reduction of their benefits," and held the section 1132(a)(2) claim unavailable. *Id.*

In *Coan v. Kaufman*, 333 F. Supp. 2d 14, 16 (D. Conn. 2004), a plaintiff brought an action individually and on behalf of two plans that were terminated after their assets were combined with those of a plan maintained by an acquiring company. The plaintiff claimed the fiduciaries breached their duties by failing to forward the old plans' assets to the new company's plan until the acquisition was fully completed — some three years after it began. *Id.* at 17. During those three years, the old plans suffered investment losses. *Id.* Judge Kravitz found that the plaintiff had done nothing to evidence an intent to benefit "the entire plan," as required in actions brought pursuant to section 1132(a)(2). *Id.* at 25. The Court observed that "merely labeling one's lawsuit a 'derivative suit' or 'representative action' does not make it so." *Id.* at 24. The principle articulated in these cases is that suits under section 1132(a)(2) must be brought for the entire plan rather than for one or more, but less than all, participants. Labeling the case otherwise or filing a class certification

6

motion does not change who actually will benefit from the relief requested. This principle is not limited to the Second Circuit.[9]

In the Ninth Circuit, the principle that a claim for relief under section 1132(a)(2) will not lie where relief inures to only some participants and not to the plan as a whole was recognized in *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412 (9th Cir. 1991), where 24 retiree beneficiaries under the Kaiser Retirement Plan sued the plan and members of the plan's investment committee to obtain an annuity for each plaintiff. Historically, the plan had satisfied its benefit obligations by purchasing annuities for employees as they retired but, facing a cash shortage under the plan in early 1985, the committee resolved to begin paying benefits as they became due directly out of the plan trust fund.

In 1987, the plan terminated and was taken over by the Pension Benefit Guaranty Corporation. Monthly benefit payments made directly from the trust to the plaintiffs were reduced, while payments under the annuities to those who had retired earlier were unaffected. The fiduciary breach claim in *Horan* sought to impose personal liability on the defendants under sections 1132(a)(2) and 1132(a)(3).[10] The claim under section 1132(a)(2) was rejected because "[a]ny recovery for a violation of sections 1109 and 1132(a)(2) must

---

[9] *Accord, e.g., Ramsey v. Formica Corp.*, 2004 WL 1146334 (S.D. Ohio 2004). In *Ramsey*, a company offered an early retirement buyout, and distributed estimates of the monthly benefit that participants would receive if they took early retirement. Some years later, an audit revealed that the early retirement benefits had been miscalculated, and 300 participants were being overpaid (some as long as sixteen years). *Id.* at *1. The company adjusted benefit payments to the properly calculated level, triggering the law suit. The putative class sought a temporary restraining order to restore their pension benefits to a level equal to what it would have been had their company not "breached its fiduciary duty by misrepresenting what their monthly pension benefits would be, thereby inducing them to accept the early retirement buyout." *Id.* at *4. In ruling on the temporary restraining order, the court found there to be no likelihood of success on their § 1132(a)(2) claim, as relief "is available only to the plan" and the court could not "grant the relief as [to] individual participants and beneficiaries." *Id.* Just like the 300 participants in *Ramsey*, the Plaintiffs here sued, and are seeking class certification, on allegations of fiduciary breach that affected some, but not all of the participants in the Xerox Plans.

[10] The plaintiffs also brought a claim for benefits due under § 1132(a)(1)(B). That claim was tested under an "arbitrary and capricious" standard applicable in plan administration matters and rejected because the court concluded that the fiduciary committee did not abuse its discretion.

7

be on behalf of the plan as a whole, rather than inuring to individual beneficiaries." *Horan*, 947 F.2d at 1418 (quoting *Russell*, 473 U.S. at 140). The *Horan* court also observed that "[i]f the individual defendants were required to purchase an annuity for the plaintiffs, this remedy would only benefit the plaintiffs and not the Plan." *Horan*, 947 F.2d at 1418.[11]

### 3. Relief Sought In The Case At Bar Will Not Inure To The Plan As A Whole

If the Xerox Defendants were required to provide the relief Plaintiffs seek under sections 1132(a)(2) and 1109(a), only the Plaintiffs – not the plan - will benefit.[12] When the dust settles, each Plaintiff who invested in the Xerox Stock Fund during the putative class period will have more in his/her account. The fact that the accounts are maintained in the Xerox Plans is insignificant where every cent of any recovery will be allocated to the separate accounts of certain (and only certain) Plan participants, and once that allocation is made, no excess damages will remain to spread throughout the Plans. Neither the Plans as entities ("as a whole") nor any Plan participant who did not choose to invest in Xerox stock will benefit from any such recovery.

---

[11] *See also Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (holding section 1132(a)(2) unavailable in a suit by a plan beneficiary alleging fiduciary breaches with consequences to herself and to the plan because claims under section 1109(a) must "inure to the benefit of the plan as a whole and not to the benefit only of individual plan beneficiaries").

[12] *See* n.8, above.

8

Accordingly, Defendants respectfully ask this Court to apply the reasoning of *Russell* and the other cases cited in Part 2 of this Response, and to dismiss the Consolidated Amended Complaint.

Respectfully submitted,

Benjamin H. Green (ct2332)
William J. Egan (ct07975)
Brown Raysman Millstein Felder & Steiner, LLP
CityPlace II, 185 Asylum Street
Hartford, CT 06103
860/275-6400

Steven J. Sacher (ct24024)
Kilpatrick Stockton LLP
607 14th Street, Suite 900
Washington, DC 20005-2018
202/508-5800

Attorneys for all Defendants except
Myra R. Drucker

## CERTIFICATE OF SERVICE

    This is to certify that I have served a copy of the foregoing on all counsel of record on this 30th day of September, 2005, postage prepaid and properly addressed to:

Michael T Hannafan
**Michael T. Hannafan & Associates, Ltd.**
One East Wacker Drive, Suite 1208
Chicago, Il 60601
**Counsel for Defendant Myra R. Drucker**

John F. McKenna
**Goodman, Rosenthal & McKenna, PC**
977 Farmington Avenue, Suite 200
West Hartford Connecticut, 06107-2119
**Liaison Counsel for Plaintiffs**

Daniel M. Harris
**Law Offices of Daniel M. Harris**
150 North Wacker Drive, Suite 3000
Chicago, IL 60606
**Co-Counsel for Plaintiffs**

Joseph H. Meltzer
**Schiffrin & Barroway, LLP**
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
**Co-Counsel for Plaintiffs**

Michael D. Ryan
Senior Counsel
**Xerox Corporation**
800 Long Ridge Road
Stamford, CT 06904
**In-House Counsel for Xerox**

J. Brian McTigue
Bruce F. Rinaldi
**McTigue Law Firm**
5513 Connecticut Avenue, Suite 220
Washington, D.C. 20014
**Counsel for Plaintiff**

Gary Gotto
Laurie Ashton
**Dalton, Gotto, Samson & Kilgard**
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012-2600
**Co-Counsel for Plaintiffs**

Charles R. Watkins
John R. Wylie
**Susman & Watkins**
Two First National Plaza, Suite 600
Chicago, IL 60603
**Co-Lead Counsel for Plaintiffs**

Sherrie R. Savett
Stuart Guber
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA 19103-6365
**Co-Counsel for Plaintiffs**

Derek W. Loeser
Lynn Sarko
Erin Riley
**Keller Rohrback L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
**Co-Lead Counsel for Plaintiffs**

Steven J. Sacher
Kilpatrick Stockton LLP
607 – 14th Street, N.W.
Suite 900
Washington, DC 20005-2018
**Counsel for Defendants**

_____
Benjamin H. Green

HARTFORD 127356v1



2005 WL 2063813                                                                                          Page 1

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Isadore FISHER, Janna M. Wooten, Kelli M. Bunn,
Tammy T. Soileau and Amy K.
Harvey, on Behalf of Themselves and a Class of
Persons Similarly Situated, and
on Behalf of the JP Morgan Chase 401(k) Savings
Plan, Plaintiffs,
v.
J.P. MORGAN CHASE & CO., J.P. Morgan
Investment Services, the Plan Investment
Management Committee, the Benefits Fiduciary
Committee, Ina R. Drew, Dina
Dublon, Patrick L. Edsparr, John J. Farrell, Peter H.
Kopp, Maria Elena
Lagomasino, Blythe S. Master, Edward L. McGann,
Marc J. Shapiro, John C.
Wilmot, Richard Donaldson Jr., William B.
Harrison, Marc J. Shapiro, Hans W.
Becherer, Riley P. Bechtel, Frank A. Bennack, Jr.,
Lawrence A. Bossidy, M.
Anthony Burns, H. Laurance Fuller, Ellen V. Futter,
William H. Gray, III,
William B. Harrison, Jr., Helene L. Kaplan, Lee R.
Raymond, John R. Stafford,
Lloyd D. Ward and John Does 1-30, Defendants.
No. 03 Civ. 3252(SHS).

Aug. 26, 2005.

**Background:** Present and former participants of 401(k) savings plan brought actions for alleged breaches of fiduciary duty under Employee Retirement Income Security Act (ERISA) in connection with investment of plan funds in employer's stock. Participants moved for certification of proposed class of plan participants whose personal accounts included units of funds that held shares of common stock of their employer.

**Holdings:** The District Court, Stein, J., held that:
(1) participants lacked standing to extent their claims were purportedly brought pursuant to subsection of ERISA civil enforcement provision regarding claims for "appropriate relief" for breach of fiduciary duty because they were asserting claims for damages to individuals on behalf of subset of plan participants, and
(2) although the had standing to bring claims pursuant to subsection regarding "other appropriate equitable relief," they failed to meet burden of establishing compliance with requirements for class certification.
Motion denied.

**[1] Federal Civil Procedure ☞174**

170Ak174 Most Cited Cases
When considering motion for class certification, court should not address whether plaintiffs have stated cause of action or will prevail on the merits, but whether requirements of class certification rule are met. 23, 28 U.S.C.A.4.

**[2] Federal Civil Procedure ☞172**
170Ak172 Most Cited Cases
Burden is on proponents of class to establish compliance with certification rule. Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A.

**[3] Federal Civil Procedure ☞171**
170Ak171 Most Cited Cases
Although determination of whether to certify class is not occasion for examination of merits of case, court must conduct rigorous analysis to decide if plaintiffs have met their burden of establishing prerequisites for certification. Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure ☞103.7**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                                                Page 2

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

170Ak103.7 Most Cited Cases
District court cannot certify proposed class if proposed representatives lack standing to sue. Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A.

[5] Federal Civil Procedure ⚖103.2
170Ak103.2 Most Cited Cases
There are generally two aspects to standing, constitutional standing pursuant
to Article III of the Constitution and "prudential standing," which involves judicially self-imposed limits on exercise of federal jurisdiction. U.S.C.A. Const.Art. 3, § 2, cl. 1.

[6] Federal Civil Procedure ⚖103.2
170Ak103.2 Most Cited Cases

[6] Federal Civil Procedure ⚖103.4
170Ak103.4 Most Cited Cases
The "prudential standing" considerations include general prohibitions on litigant's raising another person's legal rights, rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and requirement that plaintiff's complaint fall within zone of interests protected by law invoked; included among prudential considerations is principle of statutory standing.

[7] Federal Civil Procedure ⚖103.2
170Ak103.2 Most Cited Cases
Just as requirement of constitutional standing imposes jurisdictional prerequisite to suit, so too prudential standing considerations are generally treated as jurisdictional; exception to that general rule exists if merits issues are so intertwined with standing issue that any distinction becomes exceedingly artificial.

[8] Labor and Employment ⚖647
231Hk647 Most Cited Cases
Right of action contained in ERISA civil enforcement subsection regarding claims for "appropriate relief" under section governing liability for breach of fiduciary duty permits individual participant to sue plan fiduciary for breach of fiduciary duty on behalf of relevant plan itself for losses plan has suffered. Employee Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2).

[9] Labor and Employment ⚖630
231Hk630 Most Cited Cases
ERISA civil enforcement subsection permitting "other appropriate equitable relief" is not limited to circumstances in which claims are brought on behalf
of relevant plan itself; it may only be invoked, however, to bring suit for traditional equitable remedies. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

[10] Labor and Employment ⚖646
231Hk646 Most Cited Cases
Participants lacked standing to sue under subsection of ERISA civil enforcement provision regarding claims for "appropriate relief" for breach of fiduciary duty because they were subset of plan participants seeking recovery for individualized injuries; formalistic passage of damages through plan on their way to individual plan participants did not transmute individual recoveries into recovery on behalf of plan as whole. Employee Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2).

[11] Federal Civil Procedure ⚖184.5
170Ak184.5 Most Cited Cases

[11] Federal Civil Procedure ⚖1742(2)
170Ak1742(2) Most Cited Cases
Without standing to pursue their ERISA claims for "appropriate relief" under section governing liability for breach of fiduciary duty, plan participants could not achieve certification of proposed class, and in light of absence of standing, those claims had to be dismissed for apparent lack of subject matter jurisdiction. Fed. Rules Civ. Proc. Rules 12(h)(3), 23, 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2).

[12] Labor and Employment ⚖630
231Hk630 Most Cited Cases
ERISA civil enforcement subsection permitting actions for "other appropriate equitable relief"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                                  Page 3

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

contemplates only the type of relief typically available in equity such as injunction, mandamus, and restitution, but not compensatory damages. Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[13] Federal Civil Procedure ⚙︎163**
170Ak163 Most Cited Cases
To meet "numerosity" requirement for class certification, plaintiffs need not show that joinder is impossible, nor need they know the exact number of class members; rather, "numerosity" depends upon examination of specific facts of each case and imposes no absolute limitations, and certification is appropriate when number of class members is sufficiently large such that joinder of all members would make litigation needlessly complicated and inefficient. Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[14] Federal Civil Procedure ⚙︎165**
170Ak165 Most Cited Cases
The "commonality" requirement for class certification is established if the plaintiffs' and proposed class members' grievances share common question of law or fact; "commonality" is essential, because class action device is meant to conserve resources by allowing for efficient adjudication of common disputes. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[15] Federal Civil Procedure ⚙︎164**
170Ak164 Most Cited Cases
The "typicality" requirement for class certification is met when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability; class representative must be part of the class and possess the same interest and suffer the same injury as the class members. Fed. Rules Civ. Proc. Rule 23(a)(3), 28 U.S.C.A.

**[16] Federal Civil Procedure ⚙︎164**
170Ak164 Most Cited Cases
The "adequacy of representation" requirement for class certification entails two-pronged inquiry: (1) class counsel must be qualified, experienced, and generally able to conduct litigation and (2) class members must not have interests antagonistic to those of other class members. Fed. Rules Civ. Proc. Rule 23(a)(4), 28 U.S.C.A.

**[17] Federal Civil Procedure ⚙︎172**
170Ak172 Most Cited Cases
Although district court should not engage in evaluation of merits of action when determining whether to certify class, plaintiffs cannot evade their obligation to demonstrate that the numerosity, commonality, typicality and adequacy of representation requirements for certification have been met by failing to support their claims with any substantive allegations. Fed. Rules Civ. Proc. Rule 23(a), 28 U.S.C.A.

**[18] Federal Civil Procedure ⚙︎184.5**
170Ak184.5 Most Cited Cases
Plan participants seeking class certification of their ERISA claims for "other appropriate equitable relief" failed to discharge their burden to establish commonality, typicality, and adequacy of representation; vague, conclusory requests for equitable relief coupled with contention that circumstances justifying equitable relief would become evident as litigation progressed were insufficient. Fed. Rules Civ. Proc. Rule 23(a), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[19] Federal Civil Procedure ⚙︎184.5**
170Ak184.5 Most Cited Cases
ERISA plan participants seeking class certification of their ERISA claims for "other appropriate equitable relief" failed to establish that any of the four requirements for maintaining class action were met; because their theory of entitlement to traditional equitable remedies was wholly unclear, district court could not determine whether maintenance of separate actions by class members would create possibility of inconsistent or varying adjudications, how adjudications respecting interests of proposed certain class members would impacts of other proposed class members, and whether defendants had acted or failed to act on grounds generally applicable to class in manner that would warrant final injunctive relief with respect to class as whole, and to extent participants were

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                    Page 4

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

entitled to traditional equitable remedies it seemed likely that individualized issues, such as tracing of specific, identifiable sums of money for equitable restitution, would predominate. Fed. Rules Civ. Proc. Rule 23(b), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

*OPINION & ORDER*

STEIN, J.

*1 Plaintiffs Isadore Fisher, Janna M. Wooten, Kelli M. Bunn, Tammy T. Soileau and Amy K. Harvey have brought this action for alleged breaches of fiduciary duty in violation of section 409(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1109(a). Plaintiffs, who are present and former participants in JP Morgan Chase & Co.'s 401(k) Savings Plan (the "Plan"), contend that defendants are fiduciaries with respect to the Plan who have breached their fiduciary duties in connection with the investment of Plan funds in JP Morgan Chase & Co. ("JPM Chase") stock. Plaintiffs have now moved for certification of the proposed class of Plan participants whose personal accounts included units of funds that held shares of common stock of JPM Chase. To the extent plaintiffs' claims are purportedly brought pursuant to the right of action contained in ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), plaintiffs lack standing, because they are asserting claims for damages to individuals on behalf of a subset of Plan participants. Insofar as plaintiffs bring their claims pursuant to the right of action contained in ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), they have failed to satisfy their burden to establish compliance with the requirements of Fed.R.Civ.P. 23. Accordingly, plaintiffs' motion for class certification is denied.

I. The Proposed Class

Individual participants in the Plan maintained personal accounts and chose from among a menu of investment options, including the JP Morgan Chase Stock Fund, which in turn made investments in the common stock of JPM Chase. (*Id.* ¶¶ 35-37).

Defendants allegedly violated their fiduciary duties to those Plan participants whose personal accounts contained units of the JP Morgan Chase Stock Fund. Accordingly, plaintiffs seek to certify a class comprised of the following members:

All current and former participants and beneficiaries of the JP Morgan Chase 401(k) Saving Plan ("Plan") for whose individual accounts the Plan held shares of common stock of the Chase Manhattan Corporation ("Chase") and/or JP Morgan Chase & Co. ("JPMC" or the "Company") (such shares of common stock being held in the form of units of the J.P. Morgan Stock Fund and/or the JP Morgan Chase Stock Fund) at any time from April 1, 1999 to and including January 2, 2003. Excluded from the Class are Defendants herein, officers and directors of Defendant JPMC, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

(Pls.' Supplemental Submission in Supp. of Mot. for Class Cert. at 8).

II. Legal Standard for Certification

[1][2][3] When considering a motion for class certification, a court should not address whether the plaintiffs have "stated a cause of action or will prevail on the merits, but whether the requirements of [Federal] Rule [of Civil Procedure] 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (citation and quotation marks omitted). The burden is on the proponents of the class to establish compliance with Rule 23. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). "Although the determination of whether to certify a class is not an occasion for an examination of the merits of the case, a court must conduct a 'rigorous analysis' to decide if the plaintiffs have met their burden of establishing the prerequisites for certification under Rule 23." *Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 315 (S.D.N.Y.2003) (quoting *In re Visa Check/Master Money,* 280 F.3d 124, 135 (2d Cir.2001) (citation omitted), and *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813

Page 5

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

*& Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)).

*2 Fed.R.Civ.P. 23 provides a two-tiered process for determining whether certification of a proposed class is appropriate. First, the Court must examine whether the four threshold requirements of Fed.R.Civ.P. 23(a) have been met. To achieve certification, the proponents of the class must show that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The proponents must also demonstrate that the action fits into one of the categories set forth in Fed.R.Civ.P. 23(b).

[4] Before determining whether a proposed class satisfies the requirements of Fed.R.Civ.P. 23, the Court must be satisfied that plaintiffs possess standing to assert their claims, since the Court cannot certify a proposed class if the proposed representatives lack standing to sue. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1289 n. 7 (11th Cir.2004); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir.2001); *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1267 (11th Cir.2000); *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 56 (S.D.N.Y.2000); *In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1531 (D.Mass.1991); *The Canadian St. Regis Band of Mohawk Indians v. The State of N.Y.*, 573 F.Supp. 1530, 1533 (N.D.N.Y.1983).

[5][6] There are generally two aspects to standing, constitutional standing pursuant to Article III of the Constitution and prudential standing, which involves " 'judicially self-imposed limits on the exercise of federal jurisdiction....' " *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir.2003) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "Prudential considerations include 'the general prohibitions on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.' " *Lerner*, 318 F.3d at 126 (quoting *Allen*, 468 U.S. at 751). Included among prudential considerations is the principle of statutory standing. *Id.*

[7] Just as the requirement of constitutional standing imposes a jurisdictional prerequisite to suit, *id.* at 126-27, so too prudential standing considerations are generally treated as jurisdictional. *Id.* at 127; *see also Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir.1994). The U.S. Court of Appeals for the Second Circuit has held that an exception to that general rule exists "if merits issues are so intertwined with the standing issue that any distinction becomes 'exceedingly artificial" ' *Lerner*, 318 F.3d at 127-28 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Plaintiffs have not argued that that exception applies here. The statutory standing question addressed below is sufficiently distinct from questions relating to the merits of plaintiffs' causes of action that the Court may properly adhere to the general rule that prudential standing considerations constrict the Court's power to entertain certain actions. The Court has therefore treated plaintiffs' establishment of statutory standing as a jurisdictional prerequisite to the perpetuation of this action. *See id.* at 127.

III. Plaintiffs' Claims

*3 [8] Plaintiffs have brought three breach of fiduciary duty claims-- one for imprudent investment, one for misrepresentation or omission and one for improper supervision of other fiduciaries. Plaintiffs assert these claims pursuant to two distinct statutory provisions. The first is contained in ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), and allows a participant to bring an action for appropriate relief pursuant to ERISA

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                                           Page 6

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

section 409(a), 29 U.S.C. § 1109(a), which provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ... shall be personally liable to make good to such plan any losses to the plan resulting from such breach...." In other words, the right of action contained in section 502(a)(2) permits an individual participant to sue a plan fiduciary for breach of fiduciary duty on behalf of the relevant plan itself for losses *the plan* has suffered. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (explaining that "the entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). Section 502(a)(2) does not provide individual plan participants a personal right of recovery. *See id.*

[9] The second statutory provision pursuant to which plaintiffs bring their claims is ERISA section 502(a)(3). That section does create a personal right to sue, but only for an injunction against a violation of ERISA or the terms of the plan, on the one hand, or for "other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan[,]" on the other. 29 U.S.C. § 1132(a)(3). Section 502(a)(3) does not refer to section 409, and it is therefore not limited to circumstances in which claims are brought on behalf of the relevant plan itself. *See Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 346 (5th Cir.2005). Section 502(a)(3) may only be invoked, however, to bring suit for traditional equitable remedies *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

Plaintiffs' motion to certify the proposed class is addressed below first to the extent their claims are purportedly brought on behalf of the Plan pursuant to ERISA section 502(a)(2) and second to the extent their claims are brought in their personal capacities pursuant to ERISA section 502(a)(3).

IV. Claims Brought Pursuant to ERISA Section 502(a)(2)

[10] As discussed above, ERISA section 502(a)(2) does not provide for the recovery of damages to individuals. Rather, participants in a plan possess standing to sue pursuant to section 502(a)(2) only insofar as they assert a cause of action on behalf of the plan itself. *See Russell*, 473 U.S. at 144, 105 S.Ct. 3085. Here, defendants urge that plaintiffs lack standing to bring their claims on behalf of the Plan, because plaintiffs are a subset of Plan participants--i.e, those who included units of the JP Morgan Chase Stock Fund in their Plan investments--who seek recovery for individualized injuries. Plaintiffs do not dispute that they seek damages to individuals, but they insist that section 502(a)(2) is available to them nonetheless, because the damages they seek will flow through the Plan to them on an individual basis. Because the damages flow through the Plan, plaintiffs argue, they meet the standing requirements of section 502(a)(2).

*4 The Supreme Court has made plain that liability pursuant to ERISA section 502(a)(2) is meant to allow for recovery to "the benefit of the plan as a whole." *Russell*, 473 U.S. at 140, 105 S.Ct. 3085; *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (*Russell* ... bars plaintiffs from suing under § 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."). This Court will not contravene that interpretation by accepting plaintiffs' contention that when damages formalistically pass through a plan on their way to individual plan participants, they transmute individual recoveries into a recovery on behalf of the plan as a whole. *See Milofsky*, 404 F.3d at 343-44. The Court declines to adopt that strained position, particularly in light of the Second Circuit's admonition that the Supreme Court "has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir.2003) (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 375-76, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), and *Great-West*, 534 U.S. at 209).

Because plaintiffs seek recovery on behalf of a "specific subclass of participants" and not on behalf of the Plan itself, they may not invoke the right of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

action contained in section 502(a)(2). *Milofsky,* 404 F.3d at 347; *see also Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993); *Nechis v. Oxford Health Plans, Inc.,* 328 F.Supp.2d 469, 477 (S.D.N.Y.2004); *In re Schering-Plough Corp. ERISA Litig.,* No. Civ. A. 03-1204, 2004 WL 1774760, at *8 (D.N.J. June 28, 2004); *Ramsey v. Formica,* No. 1:04-CV-149, 2004 U.S. Dist. LEXIS 9558, at *9-10 (S.D.Ohio Apr. 6, 2004); *Bona v. Barasch,* No. 01 Civ. 2289, 2003 U.S. Dist. LEXIS 4186, at *27-28 (S.D.N.Y. March 30, 2003); *Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 442 (S.D.N.Y.2002); *Gruby v. Brady,* 838 F.Supp. 820, 827 (S.D.N.Y.1993). [FN1]

Plaintiffs are not suing to recoup plan assets, but rather "to recover benefits to which the class members believe they are individually entitled." *Nechis,* 328 F.Supp.2d at 477. The injuries of which plaintiffs complain "can only be redressed by awarding relief to those individual plaintiffs who have suffered...." *Id.* As plaintiffs seek to recover for personalized injuries, they lack standing, "because this case in essence is about an alleged particularized harm targeting a specific subset of plan beneficiaries ... only, and not the plan generally." *Milofsky,* 404 F.3d at 347; *see also Bona,* 2003 U.S. Dist. LEXIS 4186, at *28 (" Section 502(a)(2) ... gives Individual Plaintiffs standing to seek monetary relief on behalf of the respective Employee Benefit Funds, but not on their own behalf."); *Kulesza v. New York Univ. Med. Ctr.,* 129 F.Supp.2d 267, 271 (S.D.N.Y.2001) ("[A] beneficiary suing in his or her individual capacity lacks standing to seek damages for breach of fiduciary duty under ERISA.").

*5 [11] Without standing to pursue their claims pursuant to section 502(a)(2), plaintiffs cannot achieve certification of the proposed class pursuant to Fed.R.Civ.P. 23. Indeed, in light of the absence of standing, plaintiffs' claims must be dismissed to the extent they are purportedly brought pursuant to the right of action contained in ERISA section 502(a)(2). *See* Fed.R.Civ.P. 12(h)(3); *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 127 (2d Cir.2003).

V. Claims Brought Pursuant to ERISA Section 502(a)(3)

[12] Section 502(a)(3) of ERISA, on the other hand, does provide individual participants a personal right of action to bring claims to enjoin practices that violate ERISA or the relevant plan, or to "obtain other appropriate equitable relief...." 29 U.S.C. § 1132(a)(3). The Supreme Court has interpreted section 502(a)(3) to contemplate only the type of relief *"typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original); *see also Great-West Life & Annuity Ins. Co. v. Knudsen,* 534 U.S. 204, 210, 122 S.Ct. 708, 115 L.Ed.2d 635 (2002). Compensatory damages--historically legal, not equitable, relief--are unavailable pursuant to section 502(a)(3). *See Great-West,* 534 U.S. at 210; *Gerosa v. Savasta & Co., Inc.,* 329 F.3d 317, 321 (2d Cir.2003) ("Classic compensatory and punitive damages are never included within 'other appropriate equitable relief.' ") (quoting 29 U.S.C. § 1132(a)(3)); *Caffey v. Unum Life Ins. Co.,* 302 F.3d 576, 583 (6th Cir.2002); *Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir.1993). According to the Supreme Court, plaintiffs may invoke section 502(a)(3) "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession ." *Great-West,* 534 U.S. at 216.

Insofar as plaintiffs' claims are brought for traditional equitable remedies pursuant to the right of action contained in section 502(a)(3), the court must now determine whether plaintiffs have satisfied the four prerequisites set forth in Fed.R.Civ.P. 23.

A. Fed.R.Civ.P. 23(a) Factors

To merit certification as a class, the proposed class must comply with Fed. R Civ. P. 23. Both the proposed class and its representatives must meet all the requirements included in Fed.R.Civ.P. 23(a), and the action must fit into at least one of the categories set forth in Fed.R.Civ.P. 23(b). Fed.R.Civ.P. 23(a)'s four requirements are usually

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                                         Page 8

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

given the shorthand titles of numerosity, commonality, typicality and adequacy of representation.

1. Fed.R.Civ.P. 23(a)(1): Numerosity

[13] Fed.R.Civ.P. 23(a)(1) mandates that a class may only be certified when it is "so numerous that joinder of all members is impracticable." Plaintiffs need not show that joinder is impossible, see *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993), nor need they know the exact number of class members, see *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y.2002). Rather, numerosity depends upon "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Certification is appropriate when the number of class members is sufficiently large such that joinder of all members would make litigation needlessly complicated and inefficient. See *Banyai*, 205 F.R.D. at 163.

2. Fed.R.Civ.P. 23(a)(2): Commonality

*6 [14] The second prerequisite for certification pursuant to Fed.R.Civ.P. 23(a) is that there be "questions of law or fact common to the class." Commonality is established if the plaintiffs' and proposed class members' grievances share a common question of law or fact. See *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997). Commonality is essential, because the class action device is meant to conserve resources by allowing for efficient adjudication of common disputes. See *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

3. Fed.R.Civ.P. 23(a)(3): Typicality

[15] The third precondition to certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Plaintiffs are typical of the class when " 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability." ' *Marisol A.*, 126 F.3d at 376 (quoting *In re The Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). It is axiomatic that the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364 (quotation marks and citations omitted).

4. Fed.R.Civ.P. 23(a)(4): Adequacy of Representation

[16] The fourth prerequisite to class certification contained in Fed.R.Civ.P. 23(a) is that representative parties "will fairly and adequately protect the interests of the class." Adequacy of representation entails a two-pronged inquiry: (1) class counsel must be "qualified, experienced, and generally able to conduct the litigation" and (2) class members must not have interests antagonistic to those of other class members. *Drexel Burnham*, 960 F.2d at 291 (quotation marks and citations omitted).

B. Application of the Fed.R.Civ.P. 23(a) Factors

Plaintiffs have demonstrated that the proposed class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). They have represented that the proposed class includes "at least thousands, and more likely tens of thousands of members" (Pl.'s Mem. in Supp. of Mot. for Class Certification at 9), and defendants have not disputed that assertion. The Court concludes that the proposed class is sufficiently numerous to satisfy the requirement of Fed.R.Civ.P. 23(a)(1).

Plaintiffs have failed, however, to make a proper showing of commonality, typicality or adequacy of representation. The Court cannot gauge the degree to which plaintiffs are similarly situated to the members of the proposed class and able to represent them adequately vis-à-vis any right to obtain traditional equitable relief, because plaintiffs' complaint sounds entirely in recovery of compensatory damages to individuals for alleged breaches of fiduciary duty. Plaintiffs simply state that they "seek[ ] equitable relief" (Am.Compl.¶ 2)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813

Page 9

— F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

and "the Court should award equitable relief" (Am. Compl. ¶¶ 74, 84; *see also* Prayer for Relief ¶¶ C, D, E, J), but they have not alleged any facts that set forth a theory of entitlement to that relief. In spite of the vague requests, "neither plaintiff[s'] nor the court's own ingenuity suggest a form of ... equitable relief that would be appropriate." *Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 446 (S.D.N.Y.2002). Plaintiffs have failed to cure that deficiency in their motion for class certification.

*7 [17][18] Although the Court should not engage in an evaluation of the merits of the action when determining whether to certify a class, *see Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 315 (S.D.N.Y.2003), plaintiffs cannot evade their obligation to demonstrate that the requirements of Fed.R.Civ.P. 23(a) have been met by failing to support their claims with any substantive allegations. *See Thomas v. Aris Corp. of America,* 219 F.R.D. 338, 340 (M.D.Pa.2003) ("[W]ithout reasonable specificity the court cannot ... determine whether the representation is adequate ....") (citations and quotation marks omitted); *see also* 2 Newberg on Class Actions § 6:21 (4th ed.) ("If the pleadings are vague or conclusory, or if they are so generally drawn that they fail to demonstrate typicality, of if they show no relation between the interests of the plaintiff and of the class, then class certification will be denied."). Plaintiffs' vague, conclusory requests for equitable relief coupled with their contention that the circumstances justifying equitable relief will become evident as the litigation progresses (*see* Pls.' Supplemental Submission in Supp. of Mot. for Class Cert. at 7-8) do not satisfy plaintiffs' burden to show that certification of the proposed class is warranted. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 597-98 (2d Cir.1986). There may be highly specific, individualized fact issues relating to whether or not each plaintiff is entitled to the vaguely requested equitable relief. *See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65 (D.N.J.1993). Accordingly, plaintiffs have failed to discharge their burden to establish commonality, typicality and adequacy of representation. *See* Fed.R.Civ.P. 23(a); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 573 (2d Cir.2000)

C. Fed.R.Civ.P. 23(b) Factors

[19] Plaintiffs have not only failed to meet their burden with respect to the Fed.R.Civ.P. 23(a) factors, but have also failed to make an adequate showing that this action fits into one of the categories set forth in Fed.R.Civ.P. 23(b). Plaintiffs contend that each of the Rule 23(b) categories is applicable to this action, but have failed to substantiate that contention with respect to any of the Rule 23(b) categories.

Fed.R.Civ.P. 23(b)(1) permits a class to be certified when the prosecution of separate actions by class members would create the risk of either inconsistent adjudications or obligations on the party opposing the class on the one hand, *see* Fed.R.Civ.P. 23(b)(1)(A), or "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[,]" on the other hand, *see* Fed.R.Civ.P. 23(b)(1)(B). Fed.R.Civ.P. 23(b)(2) allows for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Fed.R.Civ.P. 23(b)(3) provides for certification when:

*8 the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2063813                                                                                                    Page 10

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

(Cite as: 2005 WL 2063813 (S.D.N.Y.))

management of a class action.

As plaintiffs' theory of entitlement to traditional equitable remedies is wholly unclear, the Court cannot assess whether the maintenance of separate actions by class members would create the possibility of "inconsistent or varying adjudications[.]" See Fed.R.Civ.P. 23(b)(1)(A); see also Spann, 219 F.R.D. at 321. Moreover, it cannot be determined how adjudications respecting the interests of proposed certain class members will impact the interests of other proposed class members. See Fed.R.Civ.P. 23(b)(1)(B). Cf. Banyai, 205 F.R.D. at 165. Similarly, the Court cannot ascertain whether defendants have acted or failed to act on grounds generally applicable to the class in a manner that would warrant final injunctive relief with respect to the class as a whole. See Fed.R.Civ.P. 23(b)(2); see also Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162 (2d Cir.2001). Lastly, plaintiffs have failed to establish that common issues will likely predominate over individualized issues. See Fed.R.Civ.P. 23(b)(3); see also Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Indeed, to the extent that participants are entitled to traditional equitable remedies, it seems likely that individualized issues--such as for example the tracing of specific, identifiable sums of money for equitable restitution purposes--will predominate.

Plaintiffs have failed to demonstrate that any of the Fed.R.Civ.P. 23(b) categories applies to the claims in this action insofar as they are brought for traditional equitable remedies pursuant to ERISA section 502(a)(3).

VI. Conclusion

To the extent plaintiffs purport to bring their claims pursuant to ERISA section 502(a)(2), they lack standing, and their claims must be dismissed. To the extent plaintiffs assert their claims pursuant to ERISA section 502(a)(3), they have failed to satisfy their burden to show compliance with the requirements of Fed.R.Civ.P. 23. Accordingly, plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23 is denied.

> FN1. A few courts have accepted the interpretation of ERISA sections 409(a) and 502(a)(2) that plaintiffs propose here. See, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1453 (6th Cir.1995); Rankin v. Rots, 220 F.R.D. 511, 520 (E.D.Mich.2004); Kling v. Fidelity Mgmt., Trust Co., 270 F.Supp.2d 121, 126 (D.Mass.2003). None of those courts, however, has reconciled that interpretation with the Supreme Court's reasoning in Russell. See Milofsky, 404 F.3d at 346.

--- F.R.D. ----, 2005 WL 2063813 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv03252 (Docket)

(May. 08, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.