**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION, | ) <br> ) <br> ) Master File No. 02-CV-1138 (AWT) <br> ) |
| This Document Relates to: | ) CLASS ACTION <br> ) <br> ) |
| ALL ACTIONS. | ) OCTOBER 13, 2005 <br> ) |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S
SIXTH NOTICE OF SUPPLEMENT AUTHORITY**

Defendants' Response To Plaintiffs' Sixth Notice of Supplemental Authority ("Defendants' Response") cannot undercut the persuasive authority of the Third Circuit's decision in *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) ("*Schering-Plough*"), the correctness of which was recently confirmed by the decision in *Woods v. Southern Company*, rendered on October 4, 2005 (2005 WL 2462038 (N.D. Ga.)). Rather than face that fact, Defendants rehash the same irrelevant argument they have made before, based on what can only be termed a fanciful "overreading" of *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) ("*Russell*"), and dredge up other old cases that, like *Russell*, were available to them to use, if they really were on point, well before even the original briefing on Defendants' motion to dismiss. The only "new" authority Defendants present is *Fisher v. J.P. Morgan Chase & Co.*, No. 03 Civ. 3252, 2005 WL 2063813 (S.D.N.Y. August 25, 2005) ("*J.P. Morgan*"),

but that decision, which was based on the now-overruled and discredited district court opinion in *Schering-Plough*, should be disregarded.[1]

## I.    Defendants' Improper Effort To Expand Their Argument Using Inapplicable Pre—*Schering-Plough* Authority Should Be Rejected

Plaintiffs' Notice of Supplemental Authority, submitted to the Court on August 31, 2005, was limited to the Third Circuit's recent and well-reasoned decision in *Schering-Plough*. Defendants' Response goes well beyond, or perhaps more accurately, behind, that decision, citing a number of cases they could have cited (and would have cited if they truly were relevant) in their original brief in support of their motion to dismiss. These "newly-discovered" cases simply demonstrate the Defendants' inability to reply meaningfully to *Schering-Plough;* they need not, and should not, be considered by the Court.

## II.    Defendants' Effort to Distinguish the Third Circuit's Recent *Schering-Plough* Decision Is Unavailing

In their Updated Memorandum in Support of Motion to Dismiss Consolidated Amended Complaint ("Updated Memorandum"), filed on December 3, 2004, Defendants offered the now reversed district court opinion in *In re Schering-Plough ERISA Litig.*, No. Civ. A. 03-1204, 2004 WL 1774760 (D.N.J., June 28, 2004) as their primary authority for arguing that Plaintiffs could not proceed under ERISA §§409 and 502(a)(2), 29 U. S. C. §§ 1109 and 1132(a)(2).

---

[1] *In re Schering-Plough ERISA Litig.*, No. Civ. A. 03-1204, 2004 WL 1774760 (D.N.J., June 28, 2004).

As shown in Plaintiffs' most recent Notice of Supplemental Authority, however, that decision was soundly discredited and then reversed by the Third Circuit. *See Schering-Plough*. The Third Circuit's decision effectively closes the door on the argument that plaintiffs comprising less than 100% of a plan's participants lack standing to bring company stock cases under §§ 409 and 502(a)(2), holding that

> [t]he fiduciary's liability is not limited to plan "losses that will ultimately redound to the benefit of all participants." The Plan held Schering-Plough stock as an asset and that asset was greatly reduced in value allegedly because of breaches of fiduciary duty. This clearly was a "loss" to the Plan within the meaning of § 1109.

*Id*. at 235. Defendants admit that the claim in *Schering-Plough* is identical to that brought by Plaintiffs here. The Third Circuit's well-reasoned decision—the most recent on-point appellate opinion that exists—is, standing alone, compelling authority to reject Defendants' argument in this case.[2] *See also Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995); *Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999).

Defendants suggest that the Third Circuit "misinterpreted" the decision in *Russell*, overlooking, Defendants claim, the fact that the phrase "plan as a whole" was used by the Supreme Court to mean that every plan participant must benefit before an action can lie under §§ 409 and 502(a)(2). There is no suggestion anywhere, however, that the phrase

---

[2] In their Updated Memorandum, Defendants stated that "[t]here is no substantive distinction between the allegations in *Schering-Plough* and the allegations in this case." Updated Memorandum at [    ]. After the Third Circuit's decision, Defendants understandably tried to retreat from their prior position, yet they are still compelled to agree that "*Schering-Plough* involves allegations similar to those in Xerox." Defendants' Response at 2.

"as a whole" was intended to mean the "plan and every participant in it," rather than the

plan in its capacity as such, as distinguished from an individual participant, in his/her

capacity as such. In dismissing the *Schering-Plough* district court's analysis of *Russell*,

which interpreted the phrase "plan as a whole" in the manner Defendants suggest, the

Third Circuit found that the Supreme Court in *Russell* made no such holding, noting,

"[t]hat issue was simply not before the Court." *Id.* at 241.

Defendants speculate, notwithstanding the Third Circuit's contrary conclusion,

that the Supreme Court "must have meant something" when in *Russell* it used the phrase

"plan as a whole," and that what it "must have meant" was that unless every plan

participant is affected by the fiduciary breach complained of, suit cannot be brought. But

in *Russell*, the Supreme Court had no reason, nor any occasion, to elaborate on the

meaning of the "plan as a whole" language, for that case involved a claim by a plaintiff

plan participant for a direct recovery by her of individual punitive and compensatory

damages stemming from termination of her individual disability benefits. And even if it

were proper to speculate on what the Supreme Court meant by the phrase in question,

there is no reason to believe it meant what Defendants claim it meant and good reason to

disbelieve Defendants' speculative interpretation. Had the Court intended *Russell* to stand

for the proposition advanced by Defendants, it would have enunciated it directly. There is

simply no reason to think the Supreme Court would have conveyed that message in the

elliptical and obscure fashion Defendants suggest it employed. *See Kuper*, *supra,* at 1453;

*Kling v. Fidelity Mgt. Tr. Co.*, 270 F.Supp.2d 121, 124-7 (D.Mass. 2003); *Stock Market Volatility and 401(k) Plans*, 34 U. Mich. J. L. Ref 469, 538-9 (2001) (all standing for the proposition that "plan as a whole" does not mean "every single participant of the plan").

Defendants' argument that Second and Ninth Circuit authority casts doubt on the Third Circuit decision in *Schering-Plough* is devoid of merit. As noted, Defendants' argument is largely based on cases that long predate even the initial briefing on Defendants' motion to dismiss. And in any event, Defendants' "newly-discovered" old cases have little relevance to this case. The only circuit court cases that *have* dealt with Defendants' argument in the context of a similar case have both rejected the argument raised in Defendants' motion to dismiss. *See Schering-Plough*, *supra*, and *Kuper, supra*. No circuit court has sustained it.

### III.     The Rule Defendants Advocate Would Seriously Undermine ERISA's Goal Of Protecting Retirees

It is beyond question that one of Congress' principal concerns in ERISA was fiduciary mismanagement of plan assets. Defendants' position, if accepted, would frustrate Congress's purpose. Defendants' position on the meaning of "plan as a whole," if accepted, would arbitrarily render many fiduciaries who breach their duties to 401(k) defined contribution plans immune from suit, no matter how serious the injury or egregious their misconduct. Seldom does fiduciary misconduct injure *all* participants in a plan. It is a fact of life that new hires are constantly joining 401(k) plans, but under Defendants' theory, the first new participant to enter such a plan would destroy the plan's

and its participants' ability to redress injuries the plan suffered, in direct contradiction of 29 U.S.C. § 1109(a). If Defendants' position were the law, more than $1.75 trillion now held in 401(k) plans, *see Profit Sharing/401(k) Council of America, 47th Annual Survey of Profit Sharing and 401(k) Plans: Overview of Survey Results, http://www.psca.org/DATA/47th.html*, would be at risk of harm by fiduciaries who are effectively immune from suit, and meritorious cases against misbehaving fiduciaries will no longer be able to be brought. *E.g., In re Unisys Sav. Plan Lit.*, 74 F.3d 420 (3d Cir. 1996) (imprudent investment in Executive Life Ins. Co. contracts); *Banniston v. Ullman*, 287 F.3d 394 (5th Cir. 2002) (fiduciaries who failed to forward employee contributions to plans); *In re Worldcom ERISA Lit.*, 263 F.Supp.2d 754 (S.D.N.Y. 2003) (criminal fraud by fiduciaries).

## IV.    Defendants' Reliance on *Fisher v. J.P. Morgan Chase & Co.* Is Misplaced

Defendants' argument that the Court should be guided by *J.P. Morgan* should be rejected for a number of reasons.

First, the court in *J. P. Morgan* relied primarily on the Fifth Circuit panel decision in *Milofsky v. American Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005). *J.P. Morgan*, 2005 WL 2063813, at *3-*4. But the *Milofsky* panel opinion was vacated on July 19, 2005, more than one month *before* the August 26, 2005, *J.P. Morgan* decision was issued.

*Milofsky v. American Airlines, Inc.*, 418 F.3d 429 (5th Cir. 2005).[3] Thus, the panel's

*Milofsky* decision is not only not good law now, it was not good law when the court relied

upon it in *J. P. Morgan*.[4]

Second, the only other similar case the district court relied on in *J.P. Morgan* was

the now-overruled district court decision in *Schering-Plough*. The Third Circuit in

*Schering-Plough* rejected the *J.P. Morgan* court's interpretation of *Russell*, confirming

that in *Russell*, the Supreme Court never considered, much less rejected, claims in a

401(k), defined contribution context, such as those brought here.

> Unlike the circumstances presented in this matter, in *Russell*, the plaintiff
> did not file a class action on behalf of an ERISA employee benefits plan to
> require the defendants to pay damages to the health benefit plan because
> of their alleged breach of their fiduciary duty. Instead, she filed a private
> cause of action for extracontractual and punitive damages. [fn] The court
> did not hold in *Russell* that a subgroup of plan participants cannot file
> derivative action on behalf of an ERISA employee benefits plan if the
> fiduciaries' alleged breach did not affect the investments of participants in
> other subgroups. That issue was simply not before the Court.

*Schering-Plough*, 2005 WL 1993990, at *9 (footnote omitted).

---

[3] Under Fifth Circuit Rule 41.3, "[u]nless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."

[4] In addition, apart from *J. P. Morgan,* the decision of the panel in *Milofsky*, which was not a company stock case, has been cited in only one other district court opinion involving a company stock case – the now rejected district court *Schering-Plough* decision. As the Third Circuit explained, *Milofsky* is inapplicable to company stock cases in part because it is based on dissimilar facts involving claims for damages arising from the delay in transfer of assets from one 401(k) plan to another when a small airline was acquired by a defendant's subsidiary. *See Schering-Plough*, 2005 WL 1993990 at *5-*7. And even *Milofsky* makes clear that § 502(a)(2) relief may be available even if less than 100% of plan participants suffered economic loss.

The basis for *J.P. Morgan* has been completely undermined. This Court should not accept Defendants' invitation to rely on it.

## V.    The October 4, 2005, Decision In *Woods v. Southern Company* Confirms The Merit Of Plaintiffs' Position

On October 4, 2005, the United States District Court for the District of Georgia decided *Woods v. Southern Company*, Civil No. 1:04-CV-1912-RWS, 2005 WL 2462038 (N.D. Ga., Oct. 4, 2005) (attached hereto as Exhibit A). There, in a company stock case like this one, the court denied a motion to dismiss to the extent it was predicated on the claim that the phrase "plan as a whole" is synonymous with "all participants of the plan." Instead, the court adopted the reasoning of the Third Circuit in *Schering-Plough* and, joining "the majority of courts that have addressed the issue," *id.* at *6, rejected the "Defendants' assertion that a participant cannot be said to seek redress for 'losses to the plan' unless *every* participant in the Plan was affected by the challenged breach of fiduciary duty." *Id.* (Emphasis in original.) The court reasoned that although the language of 29 U.S.C. § 1109(a)

> clearly indicates that Congress wanted to ensure that any claims for fiduciary breach would seek to enrich the plan, rather than an individual participant . . . it does not purport to limit suits to circumstances where the recovery would necessarily and without exception inure to the benefit of *all* plan participants.

*Id.* at *7. (Emphasis in original.) In other words, the court reasoned, limiting suits in the manner Defendants suggest would be contrary to the terms of ERISA itself. Concluding

its analysis, the court found the distinction that Defendants seek to draw between a "loss

'to the plan' and that to a large subset of participants unsustainably artificial." *Id.*

## CONCLUSION

The Third Circuit's *Schering-Plough* decision confirms a participant's standing to

bring an action on behalf of the plan, even where, as will usually be true, the case does

not directly affect the interests of all current participants. Nothing in Defendants' papers

supports their motion to dismiss, and the Court should deny that motion.

Respectfully submitted,

_____

Goodman, Rosenthal & McKenna, PC
John F. McKenna, Esq. - ct00104
977 Farmington Avenue, Suite #200
West Hartford, Connecticut 06106
860-231-2800/Fax-860-523-9235
*Liaison Counsel*

Susman, Watkins & Wylie, LLP
Charles R. Watkins
John R. Wylie
Two First National Plaza, Suite 600
Chicago, Illinois 60603
312-346-3466
*Co-Lead Counsel*

Keller Rohrback LLP
Lynn Lincoln Sarko
Laurie B. Ashton
T. David Copley
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
206-623-1900 (Seattle)
602-248-0088 (Phoenix)
*Co-Lead Counsel*

*Steering Committee Counsel:*

Law Offices of Daniel M. Harris
Daniel M. Harris
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
312-960-1802

Berger & Montague, P.C.
Todd Collins
1622 Locus Street
Philadelphia, Pennsylvania 19103-6365
(215) 875-3040

Schiffrin & Barroway
Marc A. Topaz
Joseph H. Meltzer
Three Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania 19004
(610) 667-7706

Malakoff Doyle & Finberg, P.C.
Ellen M. Doyle
437 Grant Street, Suite 200
Pittsburgh, Pennsylvania 15219
(412) 481-8400

McTigue Law Firm
Brian McTigue
Bruce Rinaldi
5513 Connecticut Ave., Suite 2200
Washington, D.C. 20015
(202) 364-6900

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION, | ) |
| | ) |
| | ) Master File No. 02-CV-1138 (AWT) |
| | ) |
| This Document Relates to: | ) CLASS ACTION |
| | ) |
| | ) |
| ALL ACTIONS. | ) OCTOBER 13, 2005 |
| | ) |

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing, Plaintiffs' Reply To

Defendants' Response To Plaintiff's Sixth Notice Of Supplement Authority,

was mailed this 13th day of October, 2005, via U.S. First Class mail, to the

following counsel of record:


Charles R. Watkins, Esq.
Susman, Watkins & Wylie, LLP
Two First National Plaza
Suite 600
Chicago, IL  60603

J. Brian McTigue, Esq.
Bruce Rinaldi, Esq.
McTigue Law Firm
5301 Wisconsin Ave.
N.W.Ste 350
Washington, D.C.  20015


Daniel M. Harris, Esq.
Law Offices of Daniel M. Harris
150 North Wacker Drive
Suite 3000
Chicago, IL  60606

Michael D. Ryan
Senior Counsel
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904

Lynn Lincoln Sarko
Erin M. Riley
Elizabeth A. Leland
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98l0l-3052

Laurie B. Ashton
Keller Rohrback, PLC
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012-2600

Joseph H. Meltzer
Marc A. Topaz
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

Sherrie R. Savett
Joy Clairmont
Todd Collins
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103

Ellen M. Doyle
Malakoff Doyle & Finberg, P.C.
437 Grant Street, Suite 200
Pittsburgh, PA  15219

Steven J. Sacher
Kilpatrick Stockton LLP
607 14th Street, Suite 900
Washington, D.C. 20005

William H. Boice
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309

Benjamin H. Green, Esq.
William J. Egan, Esq.
Brown Raysman Millstein Felder &
Steiner LLP
CityPlace II, 10th Floor
185 Asylum Street
Hartford, CT  06103

Michael T. Hannafan & Associates,
Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL  60601

---

John F. McKenna, Esq. – ct00104
Goodman, Rosenthal & McKenna, P.C.
977 Farmington Avenue, Suite 200
West Hartford, CT 06107
860-231-2800/Fax-860-523-9235