# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION | Master File No. 02-CV-1138 (AWT) |
| This Document Relates to: | **CLASS ACTION** |
| ALL ACTIONS | FEBRUARY 6, 2006 |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants respectfully hereby submit as supplemental authority in support of their Motion to Dismiss the recent decision in *In re Reliant Energy ERISA Litigation*, No. Civ. A. H-02-2051, 2006 WL 148898 (S.D. Tex. January 18, 2006) ("*Reliant*"), a case dealing with the offering of company stock in a 401(k) savings plan while the company was engaged in Enron-like round-trip energy trading. In this decision, Judge Atlas found that the fiduciaries (the company and the members of the benefits committee) had no authority or control with respect to the plan's company stock fund option because the terms of the plan required that Reliant stock be one of the investment options offered thereunder. Therefore, the defendants did not breach their fiduciary duties when they continued to offer company stock as an investment option, despite the plaintiffs' claims that both public and non-public information showed that Reliant stock was an imprudent investment option. Further, the court found that merely complying with Securities and Exchange Commission ("SEC") mandated filing requirements—including providing plan participants with Form S-8s that

{00148003.DOC;2}

"incorporated by reference" SEC filings that included alleged material misstatements—was not a fiduciary act subject to ERISA's fiduciary duty provisions. The opinion is attached as Exhibit A to this Motion.

### I. As Recognized In The *Reliant* Decision, The Xerox Defendants Had No Discretion To Remove The Xerox Stock Fund From The Xerox Plan's Investment Menu

The court in *Reliant* was faced with claims that mirror the allegations against the Xerox Defendants—namely, that the defendant fiduciaries should have known that company stock was not a prudent investment option for the company's 401(k) plan.[1] In evaluating this claim, Judge Atlas first recognized that one is a fiduciary "only with respect to those duties under the plan for which he has discretionary authority or control." *Reliant*, 2006 WL 148898, at *2. Next, the court examined the plan document to determine the extent of the defendants' discretionary authority under the plan, and found that the plan expressly required a company stock fund option, and did not authorize the defendants to remove that option from the plan. *Id.* at *3. The court also rejected the contention that the defendants were required to "override" the terms of the plan, because not only did the plan give them no discretion to do so, but "overriding" the terms of the plan is tantamount to amending or terminating a plan—clear plan-design, settlor functions that do not implicate ERISA fiduciary duties. *Id.* at *3 & n.3. The court summarized its findings, stating that "[b]ecause the REI Savings Plan was originally designed to require the REI Stock Fund to be offered as an investment option . . . REI

---

[1] The *Reliant* decision was decided on a motion for summary judgment. However, the court based its decision solely on the terms of the plan document. As in *Reliant*, the terms of the Xerox plan are clear. On a motion to dismiss, a court may consider, without the need for additional discovery, any written document, such as an ERISA plan, which underlies the allegations made in the complaint. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Crowley v. Corning*, 234 F. Supp. 2d 222, 228 & n.6 (W.D.N.Y. 2002).

and its Benefits Committee had no discretion, and therefore no fiduciary duty, to act otherwise." *Id.* *3.

The Xerox Plaintiffs contend that the "Defendants were responsible for the prudence of the Plans' investments . . . includ[ing] the responsibility for evaluating, on an ongoing basis, the prudence of continuing to offer the Xerox Stock Fund as an investment alternative." Compl. ¶ 149. Plaintiffs allege that the Defendants "knew or should have known" that Xerox stock was not a prudent investment, Compl. ¶ 122-23, and that the Defendants breached their fiduciary duty to the Plan by "maintain[ing] the Xerox Stock Fund as an investment alternative," and permitting the investment of assets in the Xerox Stock Fund. Compl. ¶ 151. However, as in *Reliant*, the Xerox Stock Fund is an investment option required to be made available by the terms of the Plans. By their terms, the Xerox Plans, like the *Reliant* plan, did not confer authority or control for investments in Xerox stock on any defendant, nor did any defendant exercise such authority or control.

The Xerox Plans are clear in requiring that the Xerox Stock Fund is to be an investment option available to participants in the Plans. *See* Salaried Plan, 2002 Restatement § 6.02(1)(B); Salaried Plan, 1998 Restatement § 6.02(a)(ii); Salaried Plan, 1997 Restatement § 6.02(a)(ii); Union Plan, 1998 Restatement § 6.02(a)(1)(ii).[2] Indeed, it is crucial to note where the Xerox Plans do and do not convey discretionary authority to the Defendants. Under the 1997 and 1998 Plans, a number of asset styles (termed "Separate Funds") are required to be offered to participants. Each Separate Fund permitted under the plan, except the Xerox Stock Fund, conveys discretionary authority to the Defendants, requiring them to choose an investment choice, of that asset style, "*as determined in*

---

[2] The Plan Documents are attached as Exhibits B-E to the January 14, 2003 Declaration of David Pickle.

{ 00148003.DOC;2}                              3

*accordance with guidelines* adopted from time to time by the Board of Directors of Xerox Corporation." *See* § 6.02(a) (emphasis added). In contrast, as to the single company stock option, the Plans mandated a "'Xerox Stock Fund,' which *shall* be invested by the Trustee in the Common Stock of Xerox Corporation." *See* § 6.02(a) (emphasis added). The 2002 Salaried Plan operated similarly.[3]

Therefore, as in *Reliant*, the Defendants were constrained by the express requirements of the Plans, and had no discretion, and therefore no fiduciary duty, to remove the Xerox stock option—a feature of plan design imposed by the settlor—or to otherwise alter or disturb a participant's choices respecting investment in Xerox stock.

## II. ERISA Is Not Implicated When Information Not Required By ERISA, Such As SEC-Mandated Filings, Is Provided To Participants

As in the allegations of the Xerox Complaint, the *Reliant* plaintiffs claimed that the company breached its fiduciary duties by making misrepresentations in SEC filings, which were incorporated by reference into the S-8 forms provided to plan participants. Judge Atlas dismissed this claim, finding that such actions were not made in connection with the management or administration of the plan. Her opinion emphasizes that a public company has no discretion as to whether or not to file information with the SEC, and that when Reliant complied with the SEC regulations, such as the

---

[3] Subsequent amendments to the Plan document changed the language used, but the requirement remained the same. The 2002 Salaried Plan Restatement states that for the "Tier II Focused Strategy Funds" offered under the Plan, "each such fund [is] to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors, *and the Xerox Stock Fund.*" Salaried Plan, 2002 Restatement § 6.02(1)(B). While the Plan conveys discretion to the Board of Directors to establish funds and the guidelines for those funds, the Plan specifically separates out the Xerox Stock Fund, removing any discretion to remove or alter it as a Tier II Fund.

filing of the Form S-8, Reliant "was not acting in connection with the management or administration of the REI Savings Plan and, therefore, was acting solely as the issuer of stock rather than in a fiduciary capacity." *Reliant*, 2006 WL 148898, at *4. Only if SEC filings are disseminated in a way that is "meaningfully" related to the plan, or if participants are encouraged to read or rely on the SEC filings, will they implicate fiduciary duties. But "where, as here, the corporation does nothing more than comply with SEC filing requirements," any alleged wrong must be pursued under the securities laws, not ERISA. *Id.*

*Reliant* is the latest in a number of recent decisions to hold that ERISA disclosure violations must be premised either on a violation of ERISA's explicit reporting and disclosure requirements, or on actions taken in a fiduciary capacity with plan participants.[4] For instance, on December 5, 2005, the Northern District of California dismissed claims that a company provided "misleading, incomplete, and inaccurate information" through press releases and in filings with the SEC, concerning the value of its stock, some of which was held in the company's 401(k) plan. The court stated that for SEC filings to give rise to liability under ERISA, they would have had to have been "disseminated to the Plan participants in a way that was meaningfully related to the Plan itself[;] the mere fact that [the company] filed such documents is not enough to establish ERISA liability. . . . Indeed, other courts . . . have also held that corporate SEC filings and press releases are, as a matter of law, directed at the market as a whole and not at ERISA Plan participants." *In re Calpine Corp.*

---

[4] Of course, as a January 10, 2006 decision in a company stock case makes clear, where a fiduciary is not liable for an alleged imprudent investment in company stock, a claim "for failure to monitor and provide accurate information" is moot, as it is derivative of the prudence claim. *See In re Syncor ERISA Litig.*, __ F. Supp. 2d __, 2006 WL 162699, at *7 (C.D. Cal. Jan. 10, 2006) (granting summary judgment in a company stock case where an ESOP was a component of the 401(k) savings plan, and all company stock was invested in the ESOP).

*ERISA Litig.*, No. C 03-1685, 2005 WL 3288469, at *10 (N.D. Cal. Dec. 5, 2005).[5] On October 19, 2005, in another case centering upon disclosure allegations connected with company stock in a 401(k) plan, the court in *DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 758, 769 (E.D. Va. 2005), stated that, in general, "a fiduciary fulfills its duty to disclose information if it complies with ERISA's [statutory] disclosure requirements." Thus, only under limited circumstances, does a fiduciary need to disclose information beyond what is required under Title I, Part I of ERISA.[6] *Id.* at 770.

Finally, on August 24, 2005, the Second Circuit recognized, in the context of a health plan participant's allegations of disclosure violations for refusing to provide certain internal operating information, a similar limitation on a fiduciary's duty of disclosure: "Oxford has no duty to disclose to plan participants information additional to that required by ERISA; Oxford is not bound to inform participants either that it has adopted cost-containment mechanisms or that it offers financial incentives for cost savings." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102-03 (2d Cir. 2005).

The Xerox Plaintiffs allege that Defendants breached their ERISA fiduciary duties by failing to provide "complete and accurate" information to participants in the Xerox Plans. *See* Compl. Count IV (¶¶ 166-177) and supporting allegations in, *e.g.*, ¶¶ 49, 52-56, 62, 69, 72, 75, 81, 88, 90,

---

[5] The decision in *In re Calpine Corp. ERISA Litigation* is attached as Exhibit B.
[6] The "limited circumstances" identified by the court in *US Airways* was where a fiduciary materially misleads participants in disclosures mandated by Title I, Part I of ERISA, or as a fiduciary in responding to a participant inquiry. *Id.* at 769-70. For although ERISA's disclosure requirements "may not be a foolproof information scheme . . . it is the scheme that Congress devised. And we do not think Congress intended it to be supplemented by a faraway provision [in the Title I, Part IV—Fiduciary Responsibility] part of the statute." *Id.* at 769 (quoting *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 84 (1995)).

101, 120, and 125-145. All of these allegations center on information made available to the general public by Xerox in its corporate capacity (*e.g.*, Compl. ¶ 72, SEC filings), information made available to all employees by Xerox in its corporate capacity (*e.g.*, Compl. ¶ 134, "voicemail broadcasts to all employees"), and information incorporated by reference in the SEC Form S-8 (*e.g.*, Compl. ¶ 49). Inasmuch as Plaintiffs' ERISA claims of material misrepresentations and omissions are based on allegedly misleading SEC filings incorporated by reference into the Form S-8, *Reliant* and other recent cases squarely reject such a construction of ERISA. Likewise, information provided by Xerox in its corporate capacity, either to the general public or to all employees, is not an ERISA fiduciary act that can trigger liability.

For these reasons, the Defendants respectfully request the Court to consider the reasoning of the *Reliant* decision in support of the Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Benjamin H. Green

Benjamin H. Green (ct2332)
Dreier LLP
One Landmark Sq.
20th Floor
Stamford, CT 06901
Attorney for All Defendants

Steven J. Sacher (ct24024)
Kilpatrick Stockton LLP
607 14th Street, Suite 900
Washington, DC 20005-2018
202/508-5800
Attorneys for all Defendants except
Myra R. Drucker

**EXHIBIT A**

Westlaw.

Slip Copy
Slip Copy, 2006 WL 148898 (S.D.Tex.)
(Cite as: Slip Copy)

Page 1

**H**
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.
In re: RELIANT ENERGY ERISA LITIGATION
No. Civ.A. H-02-2051.

Jan. 18, 2006.

Amanda Frances Bell, Brant C. Martin, Puls Taylor et. al., Fort Worth, TX, Eric L. Palmquest, Robert A. Izard, Schatz & Nobel PC, Hartford, CT, John G. Emerson, Emerson Poynter LLP, Houston, TX, Paul Paradis, Abbey Gardy LLP, New York, NY, Scott E. Poynter, Emerson Poynter LLP, Little Rock, AR, for Plaintiff.
James Edward Maloney, Baker & Botts, William Edward Matthews, Gardere Wynne et. al., Houston, TX, Lawrence H. Hunt, Jr., R. Rene Pengra, Sidley Austin et. al., Chicago, IL, M. Sean Royall, Gibson Dunn & Crutcher LLP, Dallas, TX, for Defendants.

MEMORANDUM AND ORDER

ATLAS, J.
*1 This Document Relates To All Actions

This Employee Retirement Income Security Act ("ERISA") case is before the Court on the Motion for Summary Judgment [Doc. # 153] filed by Defendants CenterPoint Energy, Inc. (formerly known as Reliant Energy, Incorporated) ("REI"), and the individual members of the REI Savings Plan Benefits Committee ("Benefits Committee"). Also pending is Plaintiffs' Motion for Partial Summary Judgment [Doc. # 149]. The Court has reviewed the thorough briefing by the parties, the full record including the REI Savings Plan documents, and the relevant legal authorities. Based on this review and its consideration of the arguments presented by counsel at the hearing on December 1, 2005, the Court grants Defendants' Motion and denies Plaintiffs' Motion.

I. *FACTUAL AND PROCEDURAL BACKGROUND*[FN1]

FN1. Additional factual background is set forth in the Court's Memorandum and Order entered January 30, 2004 ("January 2004 Opinion") [Doc. # 96].

Plaintiffs are current and former REI employees who are participants in the REI Savings Plan. The REI Savings Plan offered participants the opportunity to contribute up to 16% of their compensation in pre-tax 401(k) contributions and/or after-tax contributions. The REI Plan offered a number of investment options in which to invest their contributions. One investment option under the REI Plan was the Reliant Energy Common Stock Fund (the "REI Stock Fund") which is comprised of REI common stock and a minimal amount of cash.

The REI Plan also contained an Employee Stock Ownership Plan ("ESOP"). Under the ESOP, the company matched between a minimum of 75% and a maximum of 125% of the first 6% of a participant's contributions to the REI Plan. The matching contributions were paid in REI stock from the ESOP, and were allocated to the REI Stock Fund. The terms of the REI Savings Plan will be discussed in more detail later in this Memorandum and Order.

In the January 2004 Memorandum and Order, the Court granted in part and denied in part Defendants' Motion to Dismiss. The moving Defendants are the only remaining Defendants in the case.

In a Memorandum and Order entered August 18, 2005 [Doc. # 182], the Court certified a class of plaintiffs consisting of:
All participants in the REI Savings Plan, as amended and restated April 1, 1999, for whose individual accounts the Plan purchased and/or held shares of Reliant Energy Common Stock Fund during the period from August 2, 1999 through May 16, 2002.

Notice has been given to the potential class members.

Plaintiffs allege that the REI common stock was an imprudent investment, based both on public information and non-public information,[FN2] and that Defendants violated their fiduciary duties under ERISA by continuing to offer REI stock (through the REI Stock Fund) as an investment option in their employees' defined contribution plans, despite REI stock being an imprudent investment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. The non-public information to which Plaintiff refers are the widely-publicized "round-trip trades" executed by several energy traders during the 1999-2001 time frame. These round-trip trades were simultaneous purchases and sales of power or natural gas of the same volume with the same counterparty at the same price at the same delivery point. Plaintiffs allege that these transactions had the effect of artificially increasing revenues and trading volumes.

Following an adequate time for discovery, Defendants moved for summary judgment and Plaintiffs moved for partial summary judgment. The motions have been fully briefed and are now ripe for decision.

II. ANALYSIS

A. *Summary Judgment Standard*

*2 Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111, 154 L.Ed.2d 34 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir.2003).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir.2004). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998). If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1998)).

B. *Counts I and II*

In Counts I and II, Plaintiffs allege that Defendants breached their fiduciary duty by offering the REI Stock Fund as an investment option when they knew or should have known that REI stock was an imprudent investment. Count I involves information that was publicly available, while Count II relates to non-public information. Defendants argue that they did not have a fiduciary duty to remove the REI Stock Fund as an investment option or, alternatively, that their failure to remove the REI Stock Fund as an option did not breach any fiduciary duty they may have owed to Plaintiffs.

Plaintiffs asserting a breach of fiduciary duty claim under ERISA must first show that Defendants had a fiduciary duty with respect to the challenged conduct. See *Pegram v. Herdrich*, 530 U.S. 211, 216, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). A person is a fiduciary and has a fiduciary duty only with respect to those duties under the plan for which he has discretionary authority or control. See *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir.2002); 29 U.S.C. § 1002(21)(A).

The REI Savings Plan is a profit-sharing plan and an employee stock ownership plan. See REI Savings Plan, Exh. A to Defendants' Motion, ¶ 1.37. The stated express purpose of the REI Savings Plan is "to invest substantial sums in Company Stock for the benefit of the Participants in the Plan." *Id.*, ¶ 5.6. Consistent with Fifth Circuit authority, the REI Savings Plan provides that REI and the Benefits Committee are fiduciaries of the Plan "only with respect to the specific responsibilities of each as described" in the Plan. *Id.*, ¶ 1.26.

*3 The REI Savings Plan requires that the REI Stock Fund be an investment option, stating specifically that investment funds could be added or deleted "with the exception of the [REI Stock Fund]." See REI Savings Plan, Attachment A, p. 2. Amounts in a Participant's Employer Matching Account, ESOP Account, or Prior Plan 1999 Matching Account

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 3
Slip Copy, 2006 WL 148898 (S.D.Tex.)
**(Cite as: Slip Copy)**

cannot be invested in any investment fund other than the REI Stock Fund. *See* REI Savings Plan, ¶ 8.1. The contributions to the REI Stock Fund are required to be "primarily invested and reinvested" in REI stock. *See* REI Savings Plan, Attachment A, p. 1. The Plan's Statement of Investment Policy permits a cash reserve in the REI Stock Fund not to exceed 1.25% of the total value of that fund. *See* Statement of Investment Policy, Exh. K to Defendants' Motion, p. 2. The target allocation of company stock in the REI Stock Fund, however, is 100%. *Id.* at 3.

In this case, the Benefits Committee members had no discretion whether to offer the REI Stock Fund as an investment option. The Benefits Committee is required to "enforce th[e] Plan in accordance with its terms" and may make rules and regulations only to the extent they are "not inconsistent with the terms set forth" in the Plan. *See* REI Savings Plan, ¶ 2.7. They warranted that any actions they took would be "in accordance with the provisions of the Plan." *Id.*, ¶ 2.13. And, as set forth above, the Benefits Committee can delete any of the investment options *except for* the REI Stock Fund, and the Plan requires certain employer matching and other funds to be invested in the REI Stock Fund. The Benefits Committee had no discretion to do otherwise and, therefore, they did not have a fiduciary duty to delete the REI Stock Fund as an investment option or to invest employer matching funds anywhere other than the REI Stock Fund.

The REI Savings Plan does permit REI to amend or terminate the Plan. [FN3] Terminating the Plan or amending it to eliminate the REI Stock Fund, however, would be entirely inconsistent with the Plan's stated purpose of investing substantial sums in REI stock. REI's decisions made in connection with designing the Plan itself, including decisions whether and how to amend or terminate the Plan, do not implicate ERISA fiduciary duties. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). [FN4] Indeed, Plaintiffs do not argue to the contrary.

> FN3. Plaintiffs are clear that it is not their position that Defendants should have amended or terminated the REI Savings Plan. Instead, Plaintiffs argue that Defendants had a duty to "override" the terms of the Plan. As discussed above, however, Defendants had no discretion to "override" the terms of the REI Savings Plan.

> FN4. In *Hughes Aircraft*, the employer amended its defined benefit plan to provide an early retirement option and to create a new, noncontributory benefit structure for new participants. *Hughes Aircraft*, 525 U.S. at 436. The District Court had dismissed Plaintiffs' complaint, which included a breach of fiduciary duty claim. The Ninth Circuit reversed, and the United States Supreme Court reversed the Court of Appeals, holding that the employer's decision to amend the plan did not implicate ERISA fiduciary duties. *Id.* at 443-44.

Because the REI Savings Plan was originally designed to require the REI Stock Fund to be offered as an investment option and to require employer matching funds be invested in that fund, REI and its Benefits Committee had no discretion, and therefore no fiduciary duty, to act otherwise. Defendants are entitled to summary judgment on Counts I and II.

### C. *Count III*

In Count III, Plaintiffs allege that REI breached its fiduciary duty by negligently making misrepresentations in the REI filings with the Securities and Exchange Commission ("SEC"), which were incorporated by reference into the Form S-8 provided to Plan participants. Defendants argue that the SEC filings were made only in REI's corporate capacity, not in its fiduciary capacity.

*4 Only those communications made in a fiduciary capacity are actionable under ERISA. *See Varity Corp. v. Howe*, 516 U.S. 489, 502, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). A communication is fiduciary in nature only if it is made in connection with the "management" or "administration" of an ERISA plan. *See id.*; *In re Tyco International, Ltd.*, 2004 WL 2903889, *6 (D.N.H. Dec.2, 2004).

The Form S-8 is a registration statement which the SEC requires be filed by employers that offer their company stock to employees under an employee benefit plan. *See* 17 C.F.R. § 239.16(b)(a). The employer has no discretion whether to file the Form S-8 if it offers company stock under an ERISA plan. *See* 15 U.S.C. § 77e(a)(1). Unless the SEC filings, including the Form S-8, are disseminated to the plan participants "in a way that was meaningfully related to the Plan itself, the mere fact that the employer filed such documents is not enough to establish ERISA liability." *In re Calpine Corp. ERISA Litigation*, 2005

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WL 3288469, *10 (N.D.Cal.2005).

In this case, there is no evidence that REI took any action other than that required by the SEC for issuers of stock. REI did not incorporate the SEC filings in the Summary Plan Description ("SPD"). REI did not encourage plan participants to read the SEC filings or to rely on them in making any investment decisions. Cf. *In re Dynegy, Inc. ERISA Litigation*, 309 F.Supp.2d 861, 880 (S.D.Tex.2004) (holding that defendants' decision to encourage plan participants to review SEC filings represented a "voluntary exercise of their discretionary authority to communicate with plan participants"). There is no evidence that REI issued press releases regarding the SEC filings and the information therein. Cf. *Gee v. UnumProvident Corp.*, 2005 WL 534873, *16 (E.D.Tenn. Jan.13, 2005).

In this case, REI-as the issuer of stock to be provided to employees under an employee benefit plan-complied with the SEC requirement that it file a Form S-8. REI was not acting in connection with the management or administration of the REI Savings Plan and, therefore, was acting solely as the issuer of stock rather than in a fiduciary capacity. Although the Plan and its participants "plainly had the right to expect that [REI] would refrain from making material misstatements in its SEC filings," where, as here, the corporation does nothing more than comply with SEC filing requirements, "that expectation must be enforced under the securities law rather than ERISA." See *Tyco*, 2004 WL 2903889, *6. Defendants are entitled to summary judgment on Count III, without prejudice to the securities fraud litigation which is currently pending in this judicial district.

### III. CONCLUSION AND ORDER

For the reasons discussed above, Defendants are entitled to summary judgment on each count in Plaintiffs' complaint. Defendants do not have a fiduciary duty for areas in which they do not have any discretion. Plaintiffs' claim regarding the alleged misrepresentations in Reliant's SEC filings are not properly the subject of this ERISA case and, instead, are to be resolved in the securities fraud litigation currently pending before another judge in this district.[FN5] Accordingly, it is hereby

> FN5. The parties submitted thorough and extensive briefing of other issues, such as whether Plaintiffs have standing to assert the misrepresentation claim in Count III and whether there are any presumptions or varying standards for Plaintiffs' breach of fiduciary duty claims in Counts I and II. Based on the Court's ruling as set forth in this Memorandum and Order, those issues need not be addressed.

*5 ORDERED that Defendants' Motion for Summary Judgment [Doc. # 153] is GRANTED and Plaintiffs' Motion for Partial Summary Judgment [Doc. # 149] is DENIED. The Court will issue a separate Final Judgment.

S.D.Tex.,2006.
In re Reliant Energy Erisa Litigation
Slip Copy, 2006 WL 148898 (S.D.Tex.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing on all counsel of record on the 6th day of February, 2006, postage prepaid and properly addressed to:

John F. McKenna
**Goodman, Rosenthal & McKenna, PC**
997 Farmington Avenue, Suite 200
West Hartford, CT 06107
**Liaison Counsel for Plaintiffs**

Daniel M. Harris
**Law Offices of Daniel M. Harris**
150 North Wacker Drive, Suite 3000
Chicago, IL 60606
**Co-Counsel for Plaintiffs**

Joseph H. Meltzer
**Schiffrin & Barroway, LLP**
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
**Co-Counsel for Plaintiffs**

Michael D. Ryan
Senior Counsel
**Xerox Corporation**
800 Long Ridge Road
Stamford, CT 06904
**In-House Counsel for Xerox**

J. Brian McTigue
Bruce F. Rinaldi
**McTigue Law Firm**
5301 Wisconsin Ave., NW, Suite 350
Washington, DC 20015
**Co-Counsel for Plaintiffs**

Charles R. Watkins
John R. Wylie
**Susman & Watkins**
Two First National Plaza, Suite 600
Chicago, IL 60603
**Co-Lead Counsel for Plaintiffs**

Gary Gotto
Laurie Ashton
**Dalton, Gotto, Samson & Kilgard**
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012-2600
**Co-Counsel for Plaintiffs**

Sherrie R. Savett
Stuart Guber
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA 19103-6365
**Co-Counsel for Plaintiffs**

Derek W. Loeser
Lynn Sarko
Erin Riley
**Keller Rohrback L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
**Co-Lead Counsel for Plaintiffs**

Steven J. Sacher
**Kilpatrick Stockton LLP**
607 – 14th Street, N.W.
Suite 900
Washington, DC 20005-2018
**Counsel for Defendants**

{00137614.DOC;}

Michael T Hannafan
**Michael T. Hannafan & Associates, Ltd.**
One East Wacker Drive, Suite 1208
Chicago, Il 60601
(312)527-0055
**Counsel for Defendant Myra R. Drucker**

                                                                    _____
                                                                    Benjamin H. Green (ct 2332)

{00137614.DOC;}