# EXHIBIT B

No. 07-2073

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

DENNIS LIVELY, WILLIS HARMS, and LARRY GRAB,

Plaintiffs-Appellees

v.

DYNEGY INC.; ILLINOIS POWER COMPANY; DYNEGY MIDWEST GENERATION,
INC.; DYNEGY, INC. BENEFIT PLANS COMMITTEE; LOUIS DOREY, ROBERT D.
DOTY, MARIAN M. DAVENPORT, ALEC G. DREYER, JOHN E. FORD, ANDREA
LANG, TOM LINTON, LISA Q. METTS, MICHAEL MOTT, MILTON L. SCOTT,
R.BLAKE YOUNG, LARRY ALTENBAUMER, CRISTIN CRACRAFT, MELISSA FOX,
PRIOR LINDSEY, and NICHOLAS CARUSO,

Defendants-Appellants.

---

On Appeal By Petition From The United States District Court For The Southern District Of
Illinois (Reagan, J.)
Civil Action No. 05-cv-00063-MJR

---

Brief Of The Secretary Of Labor, Elaine L. Chao, As Amicus Curiae In Support Of
Plaintiffs-Appellees

---

JONATHAN L. SNARE
Acting Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

NATHANIEL I. SPILLER
Counsel for Appellate and Special Litigation

MELISSA BOWMAN
United States Department of Labor
200 Constitution Ave., NW, Suite N-4611
Washington, DC 20210
Phone: (202) 693-5600

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................ I

TABLE OF AUTHORITIES .................................................................. II

INTEREST OF THE SECRETARY ....................................................... 1

STATEMENT OF THE CASE.................................................................2

SUMMARY OF THE ARGUMENT ....................................................... 7

ARGUMENT ........................................................................................... 9

I.  Plaintiffs' Claim Alleging That The Defendants' Imprudence With Regard To The Company Stock Fund Caused Plan Losses Is A Derivative Claim On Behalf Of The Plan Under ERISA Sections 409 and 502(a)(2)............................................ 9

II.  Given The Nature Of A Section 502(a)(2) Claim, Purported Intra-Class Conflicts Do Not Defeat A Finding Under Fed. R. Civ. P. 23(a) That The Prerequisites Of A Class Action Have Been Met ..................................................... 16

III.  ERISA Section 404(c) Does Not Provide A Defense To Plaintiffs' Allegations That The Fiduciaries Imprudently Maintained The Dynegy Stock Fund................ 21

CONCLUSION........................................................................................ 28

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................................... 29

CERTIFICATE OF VIRUS CHECK ................................................................. 29

CERTIFICATE OF SERVICE ............................................................................ 30

## TABLE OF AUTHORITIES

Cases:

*Auer v. Robbins,*
    519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Brieger v. Tellabs, Inc.,*
    No. C 1882, 2007 WL 2712106 (Sept. 19, 2007) . . . . . . . . . . . . . . 15

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*DiFelice v. U.S. Airways, Inc.,*
    235 F.R.D. 70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*DiFelice v. U.S. Airways, Inc.*
    2007 WL 2192896 (4th Cir. Aug. 1, 2007) . . . . . . . . . . . . . . . . . . . .24

*Geier v. Am. Honda Motor Co., Inc.,*
    529 U.S. 861 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*Harzewski v. Guidant Corp.,*
    489 F.3d 799 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Enron Corp., Sec. Derivative & "ERISA" Litig.,*
    2006 WL 1662596 (S.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . .18, 23

*In re Schering-Plough Corp. ERISA Litig.,*
    420 F.3d 231 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*In re Unisys Savings Plan Litigation,*
    74 F.3d 420 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Langbecker v. Elec. Data Sys. Corp.,*
    476 F.3d 299 (5th Cir. 2007) . . . . . 9, 13, 15, 17, 18, 20, 23, 24, 25, 26

*LaRue v. DeWolff, Broberg & Assocs., Inc.,*
    No. 06-856 (U.S., cert. granted June 18, 2007) . . . . . . . . . . . . . . . .12

Cases (cont'd)

     *Lively v. Dynegy Inc.*,
        420 F.Supp.2d 949 (S.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

     *Lively v. Dynegy Inc.*,
        2007 WL 685861 (S.D.Ill.) . . . . . . . . . . . . . . . . . . . 5, 6, 7, 12, 16, 20

     *Long Island Care at Home v. Coke*,
        127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

     *Massachusetts Mut. Life Ins. Co. v. Russell*,
        473 U.S. 134 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 14, 15

     *Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*,
        545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

     *Plumb v. Fluid Pump Serv.*,
        124 F.3d.849 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

     *Secretary of Labor v. Fitzsimmons*,
        805 F.2d 682 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     *Steinman v. Hicks*,
        352 F.3d 1101 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     *United States v. Mead Corp.*,
        533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26, 27

Statutes and regulations:

     29 C.F.R. § 2550.404c-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21

     29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(i) . . . . . . . . . . . . . . . . . . . . . . . .22

     29 C.F.R. § 2550.404c-1(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

     29 C.F.R. § 2550.404c-1(d)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Employee Retirement Income Security Act of 1974,

      Section 3, 29 U.S.C. § 1002(34) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Section 403(a), 29 U.S.C. § 1103(a) . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Section 404, 29 U.S.C. § 1104(a)(1)(b) . . . . . . . . . . . . . . . . . . . . . . .10

      Section 404(c), 29 U.S.C. § 1104(c) . . . . . . . . . . . . . . . . . . . . . . . . . .
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 6, 9, 21, 22, 23, 24, 25, 26, 27

      Section 404(c)(1), 29. U.S.C. § 1104(c)(1) . . . . . . . . . . . . . . . . . 21, 25

      Section 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B) . . . . . . . . . . . . 6, 21

      Section 407(d)(3), 29 U.S.C. § 1107(d)(3) . . . . . . . . . . . . . . . . . . . . . 3

      Section 409, 29 U.S.C. § 1109 . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 15

      Section 409(a), 29 U.S.C. § 1109(a) . . . . . . . . . . . . . . . . . . . . . . . . . 10

      Section 502(a)(2), 29 U.S.C. § 1132(a)(2) . . . . . . . . . . . . . . . . . . . . . .
      . . . . . . . . . . . . . . . . . . . . . . . . .10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 27

      Section 502(a)(3), 29 U.S.C. § 1132(a)(3) . . . . . . . . . . . .12, 13, 15, 16

      57 Fed. Reg. 46, 906 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

      57 Fed. Reg. 46,922 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22, 25

      57 Fed. Reg. 46,924 n.27 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Internal Revenue Code,

      26 U.S.C. § 401(a) (2000 & Supp. IV 2004) . . . . . . . . . . . . . . . . . .11

      26 U.S.C. § 406(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Miscellaneous:

Appellee's Supplemental Appendix (SA) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

Board of Governors of the Fed. Reserve Sys., Statistical Release Z.1 (12)
(Sept. 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brief for the United States as Amicus Curiae Supporting Petitioner in LaRue*
*v. DeWolff, Broberg & Assocs., Inc.*
No. 06-856 (U.S., filed Aug. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . .13

*Brief of the Secretary of Labor as Amicus Curiae in Support of the Plaintiffs*
*in Harzewski v. Guidant Corp.*
489 F.3d 799 (7th Cir. 2007) (filed Dec. 28, 2006) . . . . . . . . . . . . . .2

*Brief of the Secretary of Labor as Amicus Curiae in Support of the Plaintiffs*
*in Rogers v. Baxter Int'l, Inc.*
No. 06-3241 (7th Cir.) (filed Dec. 8, 2006) . . . . . . . . . . . . . . . . . . . .2

Department of Labor Class Exemption 2003-39 . . . . . . . . . . . . . . . . . . . . . 20

Department of Labor Field Assistance Bulletin 2006-01 (Apr. 19, 2006) . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Department of Labor Field Assistance Bulletin 2003-3 (May 19, 2003) . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Department of Labor Field Assistance Bulletin 2002-1 (September 26, 2002)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Department of Labor Opinion Letter No. 98-04A, 1998 WL 326300 (May
29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Edward Zelinsky, THE DEFINED CONTRIBUTION PARADIGM
114 Yale L. J. 451, 470 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P.:

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Miscellaneous (cont'd)

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 20

Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 8

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 23(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

H.R. CONF. REP. NO. 93-1280 (1974)
    *reprinted in* 1974 U.S.C.C.A.N. 5038 . . . . . . . . . . . . . . . . . . . . . . . .25

Letter from the Pension and Welfare Benefits Administration, U.S.
    Department of labor, to Douglas O. Kant, 1997 WL 1824017 . . . . . . .
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

Rev. Rul. 89-52, 1989-1 C.B. 110 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATEMENT OF THE ISSUES

The questions addressed by the Secretary of Labor in this amicus brief are:

1.  Whether the district court correctly held that the Plaintiffs' class complaint properly states a representational or derivative action under sections 409 and 502(a)(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1109 and 1132(a)(2).

2.  Whether the district court correctly held that purported intra-class conflicts do not defeat findings under Fed. R. Civ. P. 23(a) that the prerequisites of a class action have been met.

3.  Whether the district court correctly held that the Defendants' intent to invoke a defense under ERISA § 404(c), 29 U.S.C. § 1104(c), does not defeat findings under Fed. R. Civ. P. 23(a) that the prerequisites of a class action have been met.

## INTEREST OF THE SECRETARY

The Secretary of Labor has the primary responsibility for interpreting and enforcing Title I of ERISA. *See Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 692-93 (7th Cir. 1986) (en banc) (the Secretary's interests include promoting the uniform application of the Act, protecting plan participants and beneficiaries, and ensuring the financial stability of plan assets). Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), gives the Secretary enforcement authority to remedy losses to

plans caused by fiduciary breaches. The Secretary therefore has a strong interest in how courts construe that provision and has frequently participated as amicus curiae in private litigation cases that address its meaning and scope. *See, e.g., Brief of the Secretary of Labor As Amicus Curiae in Support of the Plaintiffs in Rogers v. Baxter Int'l, Inc.*, No. 06-3241 (7th Cir, filed Dec. 8, 2006); *Brief of the Secretary of Labor as Amicus Curiae in Support of the Plaintiffs in Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) (filed Dec. 28, 2006).

The Secretary also has a strong interest in the class certification issues in this case insofar as they are closely intertwined with questions about the nature of section 502(a)(2) claims. In filing this amicus brief, the Secretary takes no position on the ultimate merits of the claims asserted. The Secretary believes, however, that it is important for the Court to have the benefit of our views on why we think the district court correctly decided that the Plaintiffs' claim under ERISA section 502(a)(2) to restore losses to their retirement savings plan is suitable for class action treatment under Fed. R. Civ. P. 23.

## STATEMENT OF THE CASE

1. Defendant Dynegy Inc. produces and delivers energy, including natural gas, power, coal, and natural gas liquids. Appellee's Supplemental Appendix (SA) 4.

It sponsors a retirement savings Plan.[1] *Id.* at 1. The Plan is an "eligible individual account plan" under ERISA section 407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified cash or deferred" arrangement under I.R.C. § 401(k), 26 U.S.C. § 406(k). *Id.* at 12. As such, the Plan, among an array of other investment options, "explicitly provides for acquisition or holding of ... qualifying employer securities." 29 U.S.C. § 1107(d)(3).

Under the Plan, the employees could invest a percentage of their salary in the Plan, and could direct the Plan fiduciaries to invest these funds in one or more of the offered investment options, including the Dynegy Stock Fund which invested its assets in Dynegy stock.[2] *Id.* at 12. The company made all matching contributions to employee investments in Dynegy stock during the class period, but employees could redirect those assets to other investments offered in the Plan. *Id.* at 13.

---

[1] Dynegy is the successor-in-interest to the Illinois Power Company, a subsidiary of Illinova Corp., which was the administrator and named fiduciary of the Plan until 2000. After the merger of Dynegy and the Illinois Power Company, Dynegy BPC assumed the role of administrator and named fiduciary of the Plan in July 2000. SA at 4.

[2] Before the merger, company stock was stock of Illinova Corporation, the parent company of Illinois Power Company; beginning February 1, 2000, when the Illinois Power Company merged with Dynegy, company stock in all company stock funds became Dynegy stock. *Id.* at 12.

2. The Plaintiffs are Plan participants and beneficiaries. The Defendants are

Dynegy, Inc. ("Dynegy"), Illinois Power Company ("IPCO"), Dynegy Midwest

Generation, Inc., and the Dynegy Benefit Plan Committee ("Dynegy BPC") and its

members (collectively, the "Defendants"). *Id.* at 4. The Plaintiffs brought suit in

the Southern District of Illinois under ERISA after Dynegy stock steeply declined

in value following public disclosure that Dynegy had been accused of falsifying its

SEC filings and illegally manipulating energy prices for which it paid $8 million in

penalties. *Id.* at 15.

Count I of the Complaint – the only one before the Court in this appeal – alleges

that the Defendants "knew or should have known that the price of Dynegy stock

was artificially inflated and that Dynegy stock constituted an imprudent investment

for the plan", but nevertheless continued to permit the Plan to invest participant

contributions in the Dynegy Stock Fund. *Id.* at 17. Plaintiffs seek to have

investment losses on Dynegy stock during the class period restored to the Plan and

then allocated to the participants' accounts in accordance with the losses each

participant suffered. *Id.* at 22-23.

3. On February 15, 2006, the district court issued a decision denying in part

and granting in part the Defendants' motion to dismiss under Fed. R. Civ. P.

12(b)(6). *Lively v. Dynegy Inc.*, 420 F. Supp. 2d 949 (S.D. Ill. 2006). The court

held that the Plaintiffs could bring a section 502(a)(2) suit pursuant to section 409

of ERISA because they were seeking relief for the Plan rather than individual relief. *Id.* at 953.

4. The Plaintiffs then moved for class certification under Fed. R. Civ. P. 23. SA 19. The Defendants objected, arguing that intra-class conflicts precluded compliance with the typicality, adequacy and commonality requirements of Rule 23(a). *Lively v. Dynegy Inc.*, 2007 WL 685861 (S.D.Ill.) ("Order").

5. On March 2, 2007, the district court certified the class action for the purposes of the prudence claim. (Order at *6.) In analyzing the certification issues, the court held that all four prerequisites of Rule 23(a) were satisfied.

First, the court held that the numerosity requirement was satisfied because most of the Plan's 2,300 participants in a given Plan year were within the scope of the protected class due to the Plan's provisions for automatic investment of employer matching and discretionary contributions of employer stock. (Order at *7.)

Second, the court held that the commonality requirement was satisfied, rejecting the Defendants' argument that resolution of the claims in the case required inquiry into the individual investment decisions of Plan participants. (Order at *8.) Focusing on the conduct of the Defendants, the court concluded that the commonality requirement was easily met because individual investment

behavior has no bearing on whether the Defendants satisfied their duty of prudence. (Order at *8.)

Third, the court likewise concluded that the typicality requirement was met. The court determined that the Plaintiffs' claims are necessarily typical because the action was being brought on behalf of the Plan and not the individual participants; that given the overarching focus of the case on the prudence of the Defendants' investment decisions, the Plaintiffs' investment histories were not likely to become a focus of this case; and that the section 404(c) defense was not an impediment to class certification, especially since, in its prior ruling, the court had deferred to the Department's position that section 404(c) does not shield fiduciaries from liability resulting from the selection of imprudent investment options in a plan. (Order at *10.)[3]

Fourth, the court similarly held that the named Plaintiffs' claims did not conflict with those of the class and otherwise met the adequacy of representation requirement of Rule 23(a)(4). (Order at *13.) The court determined that "recovery ... is on behalf of the Plan and is the same with respect to each Plaintiff and

---

[3]   Section 404(c) states, in relevant part, that "[i]n the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over assets in his account . . . no person who is otherwise a fiduciary shall be liable ... for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(B).

unnamed class member," and concluded "that Plaintiffs have no conflicts of interest with the members of the proposed class that prevent them from serving as adequate class representatives."  (Order at *13.)

Pursuant to Fed. R. Civ. P. 23(b)(1), the court then certified a class of all participants in the Plan for whose individual accounts the Plan held shares of Dynegy stock at any time from February 1, 2000 to the present.  (Order at *18.)[4]

6.  The Defendants sought interlocutory review of the class certification ruling pursuant to Fed. R. Civ. P. 23(f).  The Court accepted the appeal on April 25, 2007.

## SUMMARY OF THE ARGUMENT

I.  As the district court decided, the Plaintiffs' claim that losses caused by the defendants' fiduciary breach should be restored to the Plan and then allocated to the participants' individual accounts constitutes an appropriate claim for plan relief under section 502(a)(2).  Contrary to the Defendants' argument, allocation of the recovery under section 502(a)(2) to individual accounts does not mean that the relief being sought is individual in nature.  The Plan is a trust, with assets owned

---

[4]  The Secretary does not take a position on the duration of the class period, which is a fact-based issue separate from the nature of the fiduciary-breach claim, except to note that if the trial court determines that, due to curative public disclosures, there is a date within the class period when it became prudent to once again offer Dynegy stock, losses incurred from stock purchases made after that date cannot be part of the Plan's recovery. The inclusion of all participants in the class at the outset of the litigation, however, will not affect the outcome of the action or the analysis of the issues addressed in this brief.

by a trustee and individual accounts established for bookkeeping purposes, and the Plaintiffs are seeking compensation for an injury to that trust, as compared to a recovery for a purely personal injury with no impact on the value of the assets held in trust. The district court's determination that the plaintiffs' prudence claim is a derivative action under 502(a)(2) should therefore be affirmed as a predicate to certifying the Plaintiffs as a class.

II. The derivative nature of suits under 502(a)(2) renders differences in class members' investment histories irrelevant for purposes of class certification under Rule 23(a). In both individual and class suits under section 502(a)(2) for a breach of fiduciary duty in the context of a defined contribution plan, each plaintiff is, in effect, making the same claim of fiduciary breach resulting in a loss to the plan, and, if such liability is established, relief goes to the plan. Individual issues of loss causation are not relevant, unless and until it becomes necessary to allocate any plan recovery to participants' individual accounts reflecting their investment choices. As the district court correctly noted, the focus of a 502(a)(2) suit for a fiduciary breach is the behavior of the defendants as fiduciaries, not the behavior of the plan participants as investors. Thus, the plaintiffs in a section 502(a)(2) suit are necessarily raising issues that are common to the class, and that, for similar reasons, meet the typicality and adequacy of representation requirements. Having appropriately decided that the Count I prudence claim is properly brought as a

8

section 502(a)(2) cause of action, the conclusion that the prerequisites for a class action are met notwithstanding purported intra-class conflicts was well within the court's discretion and should be affirmed.

III. Similarly, the district court's decision to grant deference to the Secretary's view of the scope of section 404(c) should be affirmed. The Secretary reasonably interprets section 404(c) as not providing a defense to the imprudent selection or retention of an investment option by the fiduciary of an individual account plan that otherwise provides for participant-directed investments. The interpretation to that effect is expressed in the preamble to her regulation at 29 C.F.R. § 2550.404c-1, 57 Fed. Reg. 46,906, 46,922, and 46,924 n.27 (1992), in briefs (*e.g.*, in *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) (*EDS*), and in Department of Labor Opinion Letters.   As such, the court was correct to defer to the Secretary's construction of the statute and correct to hold that section 404(c) does not provide a basis for the denial of the certification of a class of participants alleging a breach of fiduciary duty under section 502(a)(2).

## ARGUMENT

*I. Plaintiffs' Claim Alleging That The Defendants' Imprudence With Regard To The Company Stock Fund Caused Plan Losses Is A Derivative Claim On Behalf Of The Plan Under ERISA Sections 409 and 502(a)(2)*

9

The Plaintiffs seek appropriate relief under ERISA section 409(a) because they are asking that losses caused by a fiduciary's imprudence be restored to the Plan.[5]

ERISA section 409(a) provides, inter alia:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a).  ERISA section 502(a)(2) provides that, "A civil action may be brought ... by a participant ... for appropriate relief under § 409." 29 U.S.C. §132(a)(2).  Thus, section 502(a)(2) authorizes a plan participant to bring an action to recover plan losses against a fiduciary who has violated section 409. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).  Such claims are "brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n.9.

The Plan in this case is a defined contribution, or individual account, plan, which ERISA defines as "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to

---

[5]  Section 404 of ERISA, 29 U.S.C. § 1104(a)(1)(b), requires that a fiduciary of an employee benefit plan act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

the participant's account, and any income, expenses, gains and losses, and any

forfeitures of accounts of other participants which may be allocated to such

participant's account." 29 U.S.C. § 1002(34). The assets of a defined contribution

plan are allocated, as a bookkeeping matter, to individual accounts within the plan.

*Id.* Although the participants have a beneficial interest in the assets so allocated,

the assets are nevertheless held in a unitary trust and legally owned by one or more

trustees. *See* 29 U.S.C. 1103(a); 26 U.S.C. 401(a) (2000 & Supp. IV 2004); Rev.

Rul. 89-52, 1989-1 C.B. 110.

        The Plaintiffs claim that the Defendants breached their fiduciary duty when

they continued to make Dynegy stock available as an investment option despite

knowledge of accounting and reporting improprieties that had a material,

inflationary effect on the price of the stock, and they seek for the Plan millions of

dollars in losses stemming from these alleged fiduciary breaches. As the district

court previously held in denying Defendants' motion to dismiss, the claim clearly

falls within the express language of section 409, 29 U.S.C. § 1109, which requires

a plan fiduciary that breaches its duties to make good "any losses" to the plan, and

section 502(a)(2), which provides that an action may be brought "for appropriate

11

relief under § 1109." 29 U.S.C. § 1132(a)(2).[6] *See Lively v. Dynegy, Inc.*, 420 F.Supp.2d 949, 953 (S.D.Ill. 2006). (Order at *2.)[7]

The Defendants nonetheless continue to argue (as they did in their unsuccessful motion to dismiss) that because the Plan, like any defined contribution plan, allocates any money it holds into individual accounts, the Plaintiffs are in fact seeking individualized relief. From this premise, the Defendants argue that the Plaintiffs could only bring their claim under section 502(a)(3), 29 U.S.C. § 1132(a)(3), which would entitle them solely to equitable relief. Def. Br. 31-32.[8] Nothing in section 409 or 502(a)(2), however, is limited to

---

[6] The Plaintiffs claim that the Defendants "knew or should have known" that the employer stock was not a suitable and appropriate investment for the Plan in light of the accounting and reporting improprieties, which allegedly concealed serious wrongdoing on the part of the company and resulted in artificial inflation of the stock price. (Order at *9.) We take no position on the facts of this case regarding what the legal standard is for determining when or whether allegations that fiduciaries "should have known" that company stock was illegally or artificially inflated are sufficient to state a fiduciary-breach claim. In any event, that issue is not before the Court in this interlocutory appeal; the only issue to be decided is whether the 502(a)(2) claim – which survived a motion to dismiss in a prior decision not on appeal – is the type of collective action that may be certified as a Rule 23 class action.

[7] The issue of whether a participant may recover, under section 502(a)(2), losses to a plan that affected a single account within the plan is pending before the Supreme Court. *LaRue v. DeWolff, Broberg & Assocs., Inc.*, No. 06-856 (U.S., cert. granted June 18, 2007).

[8] Section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable

defined benefit plans or excludes from their scope any category of defined contribution plans.[9] *See EDS*, 476 F.3d at 307. In keeping with the statute's central concern that plan assets be prudently managed, section 409 explicitly renders fiduciaries liable for "any losses to the plan," and contains no requirement that losses flow to all or most of the plan accounts. The reduction in the total amount of assets held by the Plan resulting from the fiduciaries' alleged imprudent investment in Dynegy stock therefore falls within the literal language of the statute and comports with the remedial purposes of ERISA.

---

relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Defendants apparently assume that equitable relief under section 502(a)(3) excludes recovery of monetary losses caused by a fiduciary breach. That issue is also pending before the Supreme Court in the *LaRue* case. The United States, on behalf of the Secretary, has refuted that position in its brief in that case. *See Brief for the United States As Amicus Curiae Supporting Petitioner in LaRue v. DeWolff, Broberg & Assocs., Inc.*, No. 06-856 (U.S. filed Aug. 6, 2007). This is not an issue that needs to be addressed in this interlocutory appeal, however.

[9]  Defined contribution plans currently hold the majority of all pension plan assets. *See* Edward Zelinsky, THE DEFINED CONTRIBUTION PARADIGM, 114 Yale L. J. 451, 470 (2004); Board of Governors of the Fed. Reserve Sys., Flow of Funds Accounts of the United States, Second Quarter 2007, Statistical Release Z.1, at 113 (Sept. 17, 2007) (http://www.federalreserve.gov/releases/z1/Current/z1.pdf). Removal of defined contribution plans from the scope of relief under 502(a)(2), the key remedial provision of ERISA, would thus leave trillions of dollars in plan assets potentially at risk and millions of defined contribution plan participants unable to recover losses to their accounts resulting from plan fiduciaries' imprudent decisions.

13

The Defendants' argument that the Plaintiffs are seeking individualized relief
unavailable under 502(a)(2) not only fundamentally misconstrues the nature of
defined contribution plans under ERISA, but also mistakenly relies on the Supreme
Court's opinion in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134
(1985), as well as two Seventh Circuit opinions. In *Russell*, the plaintiff sought
extra-contractual damages, payable to herself, for alleged injuries that she
personally incurred when her benefits were delayed, without regard to whether the
plan had suffered any loss of assets. The Supreme Court held that such
individualized relief was not available under section 502(a)(2), which applies only
to claims seeking relief on behalf of, and going to, a plan. *Id.* at 143-44. The
Court also emphasized that the crux of the statutory concern under ERISA was the
proper management of plan assets. *Id.* at 143-44. Thus, *Russell* cannot in any way
be read to exclude from the scope of section 409(a) an action on behalf of a plan to
recover losses caused by fiduciary breaches related to plan management.

*Plumb v. Fluid Pump Serv.*, 124 F.3d. 849 (7th Cir. 1997), is similarly
distinguishable. There, the plaintiff sought the recovery of money damages for a
health plan fiduciary's denial of medical benefits to a plan participant. The suit
thus did not claim any injury to the plan or diminution of the plan's total assets.
As in *Russell*, the court properly held that the suit could not be brought under

section 502(a)(2) since any recovery would go directly to the participant for her personal benefit. *Id.* at 863.

By contrast, in *Steinman v. Hicks*, 352 F.3d 1101 (7th Cir. 2003), the plaintiff sought relief for the plan trustees' alleged failure to diversify plan assets. The court stated that it was clear that the suit should be brought under section 502(a)(2), as opposed to 502(a)(3), "because the Plaintiffs are asking that the trustees be ordered to make good the losses to the Plan caused by their having breached fiduciary obligations." *Id.* at 1102. The court clarified that a claim for losses to a plan relating to financial mismanagement is properly brought under section 502(a)(2) even if the relief ultimately flows to individuals, and is not simply a 502(a)(3) claim for individual relief. *See also*, *e.g.*, *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 241 (3d Cir. 2005) ("The fact that damages paid to the Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 1132(a)(2)."); *Brieger v. Tellabs, Inc.*, No. C 1882, 2007 WL 2712106 (Sept. 19, 2007); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78-80 (E.D. Va. 2006), aff'd on other grounds, 497 F.3d 410 (4th Cir. Aug. 1, 2007); *cf. Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007). Thus, *Russell* and *Plumb* are easily distinguishable as cases for individual relief and *Steinman* is entirely consistent with this case. Moreover, *EDS*—the decision upon which the Defendants most heavily rely for its

other arguments—is also consistent on this issue, as it determined that an action

seeking relief on behalf of the plan could be brought under 502(a)(2) despite the

fact that any recovery would be allocated among individual participants' 401(k)

accounts. 476 F.3d at 308-09. As a predicate to deciding the class certification

issue that is the focus of this appeal, the district court was therefore correct that this

action is properly brought as a representational or derivative suit under section

502(a)(2).

*II. Given The Nature Of A Section 502(a)(2) Claim, Purported Intra-Class*
*Conflicts Do Not Defeat A Finding Under Fed. R. Civ. P. 23(a) That The*
*Prerequisites Of A Class Action Have Been Met*

While also arguing that this case is really a collection of individual claims that

should have been brought under section 502(a)(3), the Defendants' primary

argument on appeal is that even if the suit were properly brought under section

502(a)(2), participants' individualized investment behavior gives rise to intra-class

conflicts that defeat the commonality, typicality, and adequacy requirements of

Fed. R. Civ. P. 23(a) and consequently render the prudence claim inappropriate for

class treatment. Def. Br. 16-22. In the Secretary's view, the district court correctly

rejected this argument. The court held that purported intra-class conflicts are

essentially irrelevant to the class certification issue and do not render the prudence

claim inappropriate for class treatment. (Order at *10.)

16

The Defendants rely on the court's analysis in *EDS* to support their argument. The *EDS* majority believed that it would be problematic under class action principles to find that the named plaintiffs were adequate representatives when plan participants, particularly those who continued investing in company stock after curative disclosures were made about the company's condition, might have different theories or preferences for when the fiduciary breach occurred so as to maximize their individual recoveries. *EDS*, 476 F.3d at 315-16. The court directed the district court to consider these "intra-class conflicts" on remand.[10]

The Defendants also rely on the report of their expert, David Ross, who was also the defendants' expert in *EDS*. He analyzed data concerning each class member's plan investments in Dynegy stock from February 1 2000, the beginning of the class period, to August 8, 2005 (approximately six months after the date suit was brought). Similar to what he reported in *EDS*, Ross reported that, unlike the named Plaintiffs here who had suffered a loss on their investments in Dynegy stock, 30 percent of the participants profited from their plan investments in Dynegy stock during the period. He further reported finding that there were "44 distinct optimal breach dates" that different groups of class members would choose to establish

---

[10] Judge Reavley dissented. In his view, it is irrelevant to class suitability in a section 502(a)(2) suit that the recovery to the plan may ultimately be allocated to the accounts of only some of the participants or that certain individual participants continued to trade in the stock after the prior improprieties were disclosed to investors. *EDS* at 323-24.

17

their prudence claims.[11]  The Defendants highlight these findings as support for

their contention that intra-class conflicts defeat the commonality, typicality, and

adequacy requirements for class treatment.  Def. Br. 11.

In our view, the *EDS* decision and the Defendants are wrong on this point, and

the better view is that expressed by the district court in this case.  The district court

here held that class certification should not be precluded on the basis of purported

intra-class conflicts because the derivative nature of section 502(a)(2) claims

means that "each plan participant/class member's claims are 'necessarily typical of

those of the rest of the class' ... In effect, class members, as the Plan's advocates,

are each bringing the exact same suit." (citing *In re Enron Corp., Sec. Derivative &

"ERISA" Litig.*, 2006 WL 1662596, at *11 (S.D. Tex. 2006)).

---

[11]  Ross analogizes the intra-class conflicts among plan participants to the "seller-purchaser" conflicts that characterize securities fraud class actions.  In the securities fraud context, however, there is no plan to which recovery redounds.  Instead, each investor receives his or her own recovery according to his or her investment histories.  Thus, whatever relevance the conduct of each investor has in securities-fraud litigation, it is irrelevant in ERISA cases where the court initially makes a determination about the defendant's fiduciary breach to the plan itself, with allocation to individual accounts taking place only after liability is determined.  Application of the theory of seller-purchaser conflicts to ERISA lawsuits would render it impossible to maintain a class action based on a fiduciary's imprudent investment decisions since plan participants will always have significantly different investment patterns. (Order at *13.)  Moreover, as the decision below noted, the theory of seller-purchaser conflicts has been widely discredited in securities-fraud class actions. (*Id.* at *12.)

In an individual account plan, substantial differences in the investment behavior of plan participants do not amount to legally relevant conflicts that go to class suitability. Under section 502(a)(2), the only relief participants can seek is relief to the plan. Therefore, differences in participants' investment behavior are irrelevant at least until after fiduciary liability has been determined and assets restored to the plan; only then are allocations made to individual accounts. As a result, in determining whether to certify a class, the district court correctly focused on the conduct of the Defendants' behavior in offering and holding Dynegy stock rather than on the individual investment behaviors of the participants.

Moreover, the issues relating to the allocation of losses among plan participants are similar to the sort of issues commonly resolved by plan fiduciaries who must routinely balance the interests of different participants. Accordingly, they fall far short of creating an insurmountable hurdle to class certification. *See, e.g.,* Department of Labor Field Assistance Bulletin 2006-01 (April 19, 2006) (discussing the plan fiduciary's obligations with respect to the allocation of mutual fund settlement proceeds between various plan participants' accounts); Department of Labor Field Assistance Bulletin 2003-3 (May 19, 2003) (discussing the plan fiduciary's obligations with respect to the allocation of expenses between the accounts of participants in defined contribution plans); Department of Labor Field Assistance Bulletin 2002-1 (September 26, 2002) (discussing the plan fiduciary's

consideration of the competing interests of current and future plan participants in connection with ESOP refinancing).

The district court correctly concluded, therefore, that to the extent individual investment histories may be relevant, common issues among class members predominate, particularly on the issue of a defendant's liability. (Order at *8-9.) Indeed, the district court's supervision of any recovery, together with the assent and participation of an independent fiduciary for the Plan in accordance with the terms of the Department of Labor's class exemption for settlements with ERISA-covered plans, provides ample safeguards to protect the interests of all of the individual plan participants, and the Plan as a whole. See Department of Labor Class Exemption 2003-39 (attached).[12] Because the court can use the management tools at its disposal under Rule 23 (*e.g.*, creation of sub-classes, see *EDS*, 476 F.3d at 316.) and its equitable powers under ERISA (*e.g.*, appointment of an independent fiduciary) to deal with any intra-class differences that may emerge when the allocation of losses and relief are being determined, it did not abuse its discretion in granting class certification at this early stage of the litigation.

---

[12]  The Department of Labor's Class Exemption requires the appointment of an independent fiduciary to review for fairness the terms of settlement agreements between plan participants and plan fiduciaries.

*III. ERISA Section 404(c) Does Not Provide A Defense To Plaintiffs' Allegations*
*That The Fiduciaries Imprudently Maintained The Dynegy Stock Fund As An*
*Investment Option For The Plan And Therefore Is Irrelevant To Class Certification*

ERISA section 404(c) applies to individual account plans that are designed and
operated so that participants exercise independent control over the assets in their
accounts, as determined under regulations of the Secretary. 29 U.S.C. 1104(c)(1).
*See* 29 C.F.R. § 2550.404c-1. If the plan qualifies for 404(c) treatment under the
regulations, a "person who is otherwise a fiduciary" is not liable for losses to the
plan resulting from the participant's selection of investments in his own account
over which he or she exercises the requisite control. 29 U.S.C. § 1104(c)(1)(B).
Here, the Defendants, asserting the Plan is so qualified, invoke section 404(c) to
argue that the Plaintiffs' Count I prudence claim is not suitable for class treatment
because the court must make individual determinations as to the applicability of
this 404(c) defense. Def. Br. 22-28.[13]

By its terms, section 404(c) shields plan fiduciaries from liability only for losses
or breaches "which resulted from" the participant's exercise of control. 29 U.S.C.
1104(c)(1)(B). Section 404(c) plan fiduciaries are still responsible for fiduciary
breaches that do not "result from" such individual participant's exercise of control.
Consequently, section 404(c) is not a defense to imprudent selection of investment

_____

options available under the plan since the selection logically precedes (and thus

cannot "result [] from") a participant's decision to invest in that option.

This straightforward interpretation of the statute is reflected in the 404(c)

regulation, which states: "If a plan participant or beneficiary of an ERISA section

404(c) plan exercises independent control over assets in his individual account in

the manner described in [the regulation]," then the fiduciaries may not be held

liable for any loss or fiduciary breach "that is the direct and necessary result of that

participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2);

*see also id.* at (b)(2)(i)(B)(1)(i).

The preamble to the regulation explains that:

> the act of designating investment alternatives ... in an ERISA section 404(c)
> plan is a fiduciary function to which the limitation on liability provided by
> section 404(c) is not applicable. All of the fiduciary provisions of ERISA
> remain applicable to both the initial designation of investment alternatives
> and investment managers and the ongoing determination that such
> alternatives and managers remain suitable and prudent investment
> alternatives for the plan.

57 Fed. Reg. 46,922 (Oct. 13, 1992). The preamble further explains, in a footnote,

that the fiduciary act of making a plan investment option available is not a direct

and necessary result of any participant direction:

> Thus, ... the plan fiduciary has a fiduciary obligation to prudently select ...
> [and] periodically evaluate the performance of [investment] vehicles to
> determine ... whether [they] should continue to be available as participant
> investment options.

*Id.* at n.27. Thus, although the participants in such defined contribution plans are given control over investment decisions among the options presented to them, the plan fiduciaries nevertheless retain the duty in the first instance to prudently choose and monitor the investment options – a duty that includes withdrawing options that cease to be prudent.[14]

Despite the Department's regulations and guidance to the contrary, the Defendants rely on the Fifth Circuit's *EDS* decision to support their position that the 404(c) defense is available to plan fiduciaries that imprudently choose or maintain investment options that a reasonable fiduciary would not offer.[15]  The *EDS* majority held that the Department's interpretation of the defense was not reasonable because the explanatory footnote to the regulatory text of the preamble

---

[14] The Secretary has consistently adhered to this interpretation.  See, *e.g.*, Department of Labor Opinion Letter No. 98-04A, 1998 WL 326300, at *3, n.1 (May 28, 1998); Letter from the Pension and Welfare Benefits Administration, U.S. Department of Labor, to Douglas O. Kant, 1997 WL 1824017, at *2 (Nov. 26, 1997); *see also* amicus briefs in *EDS*, and in *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005); *In re Enron Corp. Securities Derivative & ERISA Litig.*, 284 F. Supp. 2d 511 (S.D. Tex. 2003).

[15] The Defendants also rely on the decision in *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443-46 (3d Cir. 1996), which suggested that if a plan is section 404(c)-qualified, a plaintiff may not recover his investment losses, even if the investment option was imprudently selected by the fiduciary. Def. Br. 26.  Because the *Unisys* case arose before the effective date of the Secretary's 404(c) regulation, which as we argue below is entitled to the highest deference, the *Unisys* decision should not be followed. *EDS*, 476 F.3d at 322 (Reavley dissenting) (5th Cir. 2007); *cf. Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

23

"contradict[ed] the governing statutory language" in that, in the court's view, it provided for liability even when an individual account plan fully complied with the provisions set out in section 404(c). *EDS*, 476 F.3d at 311. The majority also held that the footnote was not part of the regulation published in the Code of Federal Regulations, and as such, might not deserve the highest degree of deference. *Id.*

As explained in Judge Reavley's *EDS* dissent, *EDS*, 476 F.3d at 320-22, however, the Department's interpretation of section 404(c) as allowing lawsuits against fiduciaries for imprudent investment choices is entirely reasonable. *See also id.* at 322 n.6 (Reavley dissent, collecting cases holding that the fiduciary retains the duty to prudently select and monitor investment options even if a plan qualifies as a 404(c) plan); *accord DiFelice v. U.S. Airways, Inc.*, 2007 WL 2192896, at *12 n.3 (4th Cir. Aug. 1, 2007). The purpose of the statute and the regulation is to relieve a fiduciary of liability for a participant's independent investment choices, but not from the fiduciary's imprudent decisions. This purpose is particularly well served when, as alleged in this case, only the fiduciary has material knowledge that a stock is overpriced and that the company's true financial condition is significantly worse than was portrayed in public financial disclosures. However, a fiduciary may not ordinarily be held liable for executing the participant's direction to excessively invest in one fund among the various plan options prudently chosen by the plan's fiduciaries, such as the participant's decision

24

to invest all of his funds in one undiversified option or a high-risk investment choice wholly incompatible with the participant's risk profile.

Accordingly, the regulation calling for the use of the 404(c) defense only when a loss is a "direct and necessary result" of a participant's exercise of control, 29 C.F.R. 2550.404c-1(d)(2)(i), and the interpretive footnote stating that "selecting investment options in a plan is not a function in the exercise of which plan fiduciaries are shielded from liability by the statute," 57 Fed. Reg. 46,922 n.27, *see also* 57 Fed. Reg. 46,922 (cited *supra*, p. 27, but overlooked by *EDS*), neither contradict each other nor render the section 404(c) liability limitation superfluous. Rather, the Secretary's interpretation simply draws the line where the statute does, between losses that "result from" a participant's own imprudence while exercising independent control and those that do not.[16]  The regulation, as explicated by the

---

[16] To the extent the Secretary's interpretation is narrowly drawn, strict construction of the 404(c) defense is appropriate in light of the legislative history initially suggesting that employer stock funds would never meet the participant control test because participants are likely to be subject to pressure from their employer when making a decision about whether to invest in employer stock funds. H.R. CONF. REP. NO. 93-1280, at 305 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5086. We disagree, however, with the argument of the otherwise supportive amicus brief submitted by the AARP that this legislative history renders the Secretary's interpretation invalid. AARP Br. 5. Rather than foreclose such investments by 404(c) plans altogether, Congress delegated authority to the Secretary to issue regulations delimiting participant control, without designating employer investments to be outside the purview of 404(c) or the Secretary's rulemaking authority. *See* 29 U.S.C. 1104(c)(1). In issuing her 404(c) regulation, therefore, the Secretary has acted well within that authority.

preamble, is clearly a reasonable interpretation of the statute, and may well be the only rational way to read it.

The *EDS* majority's conclusion that the Secretary's interpretation is not entitled to the highest degree of deference because the regulatory preamble does not constitute a regulation is also incorrect. The regulation, which interprets "results from" to mean "direct and necessary result," was issued pursuant to express delegated authority and after notice-and-comment rulemaking, and thus is entitled to controlling deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See Long Island Care at Home v. Coke*, 127 S. Ct. 2339, 2349-50 (2007); *United States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001). The preamble language explaining the regulation and applying it specifically to exclude the selection and monitoring of investment options from the section 404(c) limitation on fiduciary liability is likewise entitled to controlling deference, insofar as it represents the Secretary's authoritative and contemporaneous interpretation of her own regulation and was itself the product of the same notice-and-comment rulemaking. *Long Island Care*, 127 S.Ct. at 2349 (2007) (controlling deference to agency's interpretation of regulation set out in an advisory memorandum in response to litigation); *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (controlling deference to an interpretation made for the first time in a

legal brief); *cf. Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 877-80 (2000) (relying on preamble); *United States v. Mead Corp.*, 533 U.S. at 229-30.

Consequently, if, as alleged, the Defendants violated their fiduciary duties when they continued to offer Dynegy stock as an investment option, section 404(c) provides no defense to their fiduciary misconduct, and the district court was correct to disregard section 404(c) in determining whether the Count I prudence claim should be certified as a class action. Although the Defendants argue that the Department's reading of section 404(c) does not deserve deference and is contradictory to the statutory language, in fact their reading of section 404(c) (and indeed sections 409 and 502(a)(2)) is inconsistent with the policy of fiduciary responsibility that is the cornerstone of ERISA. In any event, consideration of the common issues relating to the alleged fiduciary misconduct will predominate over any consideration of individual investment histories, making the case suitable for class treatment, as the district court found.

CONCLUSION

For the reasons discussed above, the Secretary, as amicus curiae, requests that this Court affirm the decision of the District Court.

Respectfully submitted,

JONATHAN L. SNARE
Acting Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

NATHANIEL I. SPILLER
Counsel for Appellate and Special Litigation

_/s/ Melissa Bowman_____
MELISSA BOWMAN
Attorney
United States Department of Labor
Plan Benefits Security Division
200 Constitution Ave., N.W., Suit N-4611
Washington, DC 20210
Phone: (202) 693-5600

28

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
  Typeface Requirements, and Type Style Requirements

### FOR CASE NUMBER 07-2073

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

> This brief contains 6,796
> words, excluding the parts of
> the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> This brief has been prepared in a proportionally spaced
> typeface using Microsoft Word 2000, Times New Roman
> 14 point font.

## CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check, using McAfee Security VirusScan

Enterprise 8.0, was performed on the PDF file and paper version of this brief, and

no viruses were found.

(s) _____/s/ Melissa Bowman

Attorney for _U.S. Department of Labor

Dated:  ___10/10/07_____

29

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2007, two copies of the foregoing

Brief for the Secretary of Labor as Amicus Curiae were served using Federal

Express, postage prepaid, upon the following:

Theresa S. Renaker
Jeffrey Lewis
Margaret E. Hasselman
Lewis, Feinberg, Renaker & Jackson, P.C.
1330 Broadway
Suite 1800
Oakland, CA  94612

James I. Singer
Matthew B. Leppert
Schuchat, Cook, & Werner
1221 Locust Street, Second Floor
St. Louis, MO 63103

Michael M. Wilson
Akin, Gump, Strauss, Hauer & Feld LLP
1111 Louisiana St., 44th Floor
Houston, TX 77002-5200

Paul J. Ondrasik, Jr.
Morgan D. Hodgson
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, DC 200036

Thomas E. Wack
Jeffrey S. Russell
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Missouri 63101

Mary Ellen Signorille
AARP Foundation Litigation
601 E Street, NW
Washington, DC 20049

                                         __ /s/ Melissa Bowman
                                         Melissa Bowman
                                         Attorney