**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE XEROX CORPORATION<br>ERISA LITIGATION<br><br>This Document Relates To:<br>　　ALL ACTIONS | Master File No. 02-CV-1138 (AWT)<br><br><u>CLASS ACTION</u><br><br>August 25, 2008 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL HEWITT ASSOCIATES, L.L.C. TO COMPLY WITH SUBPOENA DUCES TECUM</u>**

Plaintiffs served Hewitt Associates, L.L.C. ("Hewitt"), a non-party, with a subpoena duces tecum on October 3, 2007, with a return date of November 2, 2007. After much delay, Hewitt produced some responsive documents on February 15, 2008. But Hewitt has never produced any documents responsive to subpoena request numbers 6 and 9 (which seek emails and other communications) or number 14 (which seeks documents pertaining to the Plans' purchase, sale, and holding of Xerox stock), despite dozens of follow-up requests, letters, and (false) assurances that the documents would be produced. Almost a year has elapsed, and Hewitt has not provided any excuse for its refusal to comply with the Court's subpoena. Meet and confer attempts have failed. Plaintiffs now seek judicial assistance to enforce the subpoena.

**STATEMENT OF FACTS**

This case is a class action brought under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.* filed on behalf of the Xerox Corporation Profit Sharing and Savings Plan and the Profit Sharing and Savings Plans of Xerox Corporation and the Xerographic Division, Union Needletrades, Industrial and

1

Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Plans") and participants and beneficiaries of the Plans, whose accounts held common stock of Xerox Corporation ("Xerox") between January 1, 1997 and June 30, 2002. In their Third Amended Class Action Complaint Plaintiffs allege, among other things, that the Defendants, who include Xerox and certain of its officers, directors and employees, breached their fiduciary duties under ERISA by causing the Plans to invest imprudently in Xerox stock. The Plans and their participants suffered injury when the price of Xerox stock collapsed in the wake of SEC and other allegations of accounting fraud in the late 1990s, and continuing into 2002. Plaintiffs seek to recover the hundreds of millions of dollars in losses that resulted from Defendant's breaches of fiduciary duty.

Hewitt, a benefits administration consulting firm, served as an administrator and record keeper for the Plans during the relevant class period.

On October 3, 2007, as part of their overall effort to complete discovery in this case, Plaintiffs properly served a subpoena *duces tecum* on Hewitt. A copy of the subpoena is attached as Exhibit A to the accompanying Declaration of Elizabeth A. Leland ("Leland Decl."). Service was obtained on Hewitt through its appointed agent for service of process, located at One Corporate Center, Floor 111, Hartford, CT 06103-3220. The subpoena's return date was November 2, 2007.

On November 2, 2007, Hewitt simply ignored the subpoena. It did not file an objection or seek a protective order. Leland Decl. ¶ 4.

On November 14, 2007, Plaintiffs' counsel spoke with counsel for Hewitt. Hewitt agreed to produce hard-copy documents on a "rolling" basis, to produce e-mails as requested in the subpoena, and to investigate the logistics involved in producing plan-

2

wide transactional data, which it purportedly maintains in a database. Hewitt asked Plaintiffs' counsel to provide a copy of the Second Amended Complaint and a list of "search terms" to facilitate the production of responsive emails. *Id.*

On November 15, 2007, Plaintiffs' counsel sent Hewitt a copy of the Second Amended Complaint and a list of "search terms" to facilitate the production of responsive emails, along with some technical specifications to further facilitate the production of responsive emails. *Id.*

On November 30, 2007, after several unsuccessful attempts to reach Hewitt's counsel, Plaintiffs' counsel contacted another member of Hewitt's legal department. That person informed Plaintiffs' counsel that that hard-copy documents would be produced "next week" (i.e., *the first week of December 2007*). *Id.*

By December 11, 2007, the promised hard-copy documents had not been produced, nor had Hewitt provided a report concerning Hewitt's promised production of emails, and so Plaintiffs' counsel again called Hewitt's counsel. *Id.*

On December 13, 2007, Plaintiffs' counsel conferred with Hewitt's counsel once again. Hewitt asked for additional "search terms" to facilitate the production of responsive emails, which Plaintiffs' counsel provided on December 19, 2007. Plaintiffs' counsel and Hewitt also agreed to a protocol that would simplify Hewitt's production effort: Hewitt would electronically search its servers for a list of agreed upon names and terms, review the documents that contained those terms to (double) check for responsiveness, and withhold those documents that were privileged, work product or otherwise protected from discovery. *Id.*

3

On January 4, 2008, Plaintiffs' counsel again called Hewitt to inquire concerning Hewitt's compliance with the subpoena. No documents had been received, although the subpoena return date was (then) two months ago. Plaintiffs' counsel left a message, which was never returned. *Id.*

On January 14, 2008, Plaintiffs' counsel sent a letter noting that Hewitt's counsel had ignored several phone messages, and demanding that Hewitt immediately produce all responsive documents. *Id.*

On January 15, 2008, Plaintiffs' counsel left a phone message reiterating the letter dated January 14, 2008. *Id.*

On January 30, 2008, Hewitt informed Plaintiffs' counsel that Hewitt would produce hard-copy documents no later than *February 1, 2008*. Those documents were not produced on February 1, 2008. *Id.*

On February 15, 2008, Plaintiffs' counsel again spoke with Hewitt, at which time Hewitt's counsel advised Plaintiffs' counsel that its initial production was going out that day and that Hewitt would provide Plaintiffs' counsel the fields and related information from the database maintained by Hewitt that contained the Plans' Xerox stock transactional information, after which Plaintiffs and Hewitt would attempt to determine the most efficient means of producing the requested transactional information. After this conversation, Hewitt finally produced the *first responsive documents* (more than 4 months after the subpoena was served, and more than 3 months after the subpoena's return date). *This production did not include any emails. Id.* Nor did Hewitt provide the promised database information.

On June 10, 2008, Hewitt still had not produced any of the promised responsive emails, so Plaintiffs' counsel contacted Hewitt again, leaving detailed messages which were not returned. *Id.*

On June 12, 2008, Plaintiffs' counsel left another message for Hewitt which was not returned. *Id.*

On June 17, 2008, Plaintiffs' counsel left another message for Hewitt which was not returned. *Id.*

On June 20, 2008, Plaintiffs' counsel sent a letter to Hewitt noting that they had ignored several phone messages, and once again demanding that Hewitt immediately produce all responsive documents. The letter stated: "Absent a response, we will be forced to submit the matter to the Court." Hewitt ignored this letter, too. *Id.*

On June 27, 2008, Plaintiffs' counsel again left messages for Hewitt informing them that Plaintiffs intended to move to compel, and asking them to contact Plaintiffs' counsel immediately to meet and confer concerning Hewitt's non-compliance with the subpoena to the extent it calls for emails and other responsive correspondence. Hewitt ignored these messages, and refused to further meet and confer. *Id.*

It is undisputed that additional non-privileged responsive documents exist. Hewitt's limited production, for example, did not include any documents responsive to Plaintiffs' request numbers 6 and 9, which ask for production of the emails, letters or other non-privileged communications relating to the Plans. Nor did Hewitt provide responsive documents or electronically stored information responsive to Plaintiffs' request 14, which seeks documents and information pertaining to the Plans' purchase, sale, and holding of Xerox stock. Hewitt has never provided Plaintiffs with written

objections of any kind. Moreover, Hewitt has not asserted any claim that it would be overly burdensome for it to comply with Plaintiffs' subpoena, nor does it claim any of the documents are privileged or irrelevant.

## ARGUMENT

The Federal Rules of Civil Procedure contemplate discovery from nonparties. Rule 45(c)(2)(B) specifically empowers "the party serving the subpoena, upon notice to the person commanded to produce, [to] move at any time for an order to compel the production."

It is well settled that Rule 45 must be viewed in conjunction with the scope of discovery permissible under Rule 26, and thus discovery is allowed if it seeks documents relevant to the proceeding or reasonably calculated to lead to the discovery of evidence that would be admissible. *See Chamberlain v. Farmington Sav. Bank,* No. 06-01437, 2007 WL 2786421, at *2 (D. Conn. Sept. 22, 2007) (quoting Fed. R. Civ. P. 26(b)(1)); Fed. R. Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); 9A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 2459, at 41-42 (2d ed. 1995) (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34). The court, therefore, should consider this motion in view of the standards set forth in Rule 26.

Hewitt, although a non-party to this action, is quite closely tied to this case. During the relevant class period, Hewitt served as an administrator and record keeper for the Plans. As such, Hewitt analyzed and evaluated the performance of the Plans and provided professional advice or opinions concerning the Plans to Xerox and certain of its

6

officers, directors and employees who were fiduciaries of the Plans. There is no dispute that Hewitt has relevant, non-privileged emails and correspondence responsive to subpoena request numbers 6 and 9, and documents and electronically stored information responsive to request number 14. And there is no dispute that Plaintiffs have fully complied with Hewitt's requests to simplify the production process by agreeing to a protocol and search terms to narrow the universe of possibly-responsive emails in Hewitt's archives. The documents Plaintiffs seek are properly discoverable, and Hewitt must comply with Plaintiffs' request.

Hewitt has never denied that responsive emails and other non-privileged correspondence, as well as the requested Plan transactional data, exist. Plaintiffs have learned through other discovery that Hewitt, as an administrator to the Plans, corresponded with defendants, Xerox and other individuals concerning the Plans. Similarly, discovery also indicates that Hewitt maintained records and provided reports pertaining to the Plans' Xerox stock transactions – a fact also admitted by Hewitt. These documents fall squarely within the scope of Rule 26. As stated above, Plaintiffs allege that the Defendants in this case, who include Xerox and certain other fiduciaries of the Plans, breached their fiduciary duties under ERISA. Hewitt served as the recordkeeper to the Plans. Hewitt evaluated the Plans' holdings and performance and corresponded with Xerox and other parties regarding the Plans during the relevant class period. Accordingly, discovery concerning Hewitt's emails and other communications relating to the Plans is reasonably calculated to lead to the discovery of admissible evidence on the core liability issues in the case: the identities of the Plans' fiduciaries and the manner in

which those individuals exercised their fiduciary obligations. The subpoenaed documents are highly relevant to this matter, and should be produced.

## CONCLUSION

Plaintiffs respectfully request that this Court (1) enter an Order that Hewitt fully comply with the subpoena duces tecum served on October 3, 2007, and specifically, that Hewitt produce all documents (including electronic records) responsive to subpoena document request numbers 6 and 9 (which seek emails and other communications) and request number 14 (which seeks documents pertaining to the Plans' purchase, sale, and holding of Xerox stock); (2) enter an Order that Hewitt comply with the subpoena on or before a date certain, and in no event more than ten (10) days after the filing of the Court's Order (*see* D. Conn. Local Civ. R. 37(d)); and (3) enter an Order that Hewitt is in contempt of Court (*see* Fed. R. Civ. P. 45(e)) and that appropriate sanctions be imposed.

DATED this 25th day of August, 2008.

Submitted By

/s/Elizabeth A. Leland
KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Gary A. Gotto
ggotto@kellerrohback.com
Elizabeth A. Leland
bleland@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
**Co-Lead Counsel**

FUTTERMAN HOWARD WATKINS WYLIE & ASHLEY, CHTD.
Charles R. Watkins
cwatkins@futtermanhoward.com
John R. Wylie
jwylie@futtermanhoward.com
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-3600
Facsimile: (312) 427-1850
**Co-Lead Counsel**

LAW OFFICES OF DANIEL M. HARRIS
Daniel M. Harris
lawofficedh@yahoo.com
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936
**Steering Committee Counsel**

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
ssavett@bm.net
Joy Clairmont
jclairmont@bm.net
1622 Locust Street
Philadelphia, PA 19103-6365
Telephone: (215) 875-3000
Facsimile: (215) 875-4503
**Steering Committee Counsel**

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Marc A. Topaz
mtopaz@sbclasslaw.com
Joseph H. Meltzer
jmeltzer@sbclasslaw.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
**Steering Committee Counsel**

S<small>TEMBER</small> F<small>EINSTEIN</small> D<small>OYLE</small> &
P<small>AYNE</small>, LLC
Ellen M. Doyle
edoyle@stemberfeinstein.com
The Allegheny Building, 17th floor
429 Forbes Avenue
Pittsburgh  PA  15219
Telephone: (412) 281-8400
Facsimile:  (412) 232-3730
**Steering Committee Counsel for the Union Plan**

M<small>C</small>T<small>IGUE</small> & P<small>ORTER</small> LLP
Brian McTigue
bmctigue@mctiguelaw.com
Jennifer H. Strouf
jstrouf@mctiguelaw.com
5301 Wisconsin Avenue, N.W.
Ste. 350
Washington, DC  20015
Telephone: (202) 364-6900
Facsimile:  (202) 364-9960
**Steering Committee Counsel for the Union Plan**

G<small>OODMAN</small> R<small>OSENTHAL</small> & M<small>C</small>K<small>ENNA</small>
PC
John F. McKenna, Esq. - ct00104
jmckenna@grmattorneys.com
977 Farmington Avenue, Suite 200
West Hartford, Connecticut  06107
Telephone:  (860) 231-2800
Facsimile:  (860) 523-9235
**Liaison Counsel**