## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

In re: XEROX CORPORATION ERISA
LITIGATION

This Document Relates To:

ALL ACTIONS

Master File No. 02-cv-1138 (AWT).

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Michael T. Hannafan (ct11859)
Blake T. Hannafan (ct24594)
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 2800
Chicago, IL 60601

*Counsel for Myra Drucker*

John A. Valentine (ct25941)
Elizabeth Canizares (phv02306)
Felipe Mendoza (phv02242)
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006

*Counsel for Defendants Paul A. Allaire,
William F. Buehler, Barry D. Romeril and
Gregory B. Tayler*

Benjamin H. Green (ct05166)
DREIER LLP
One Landmark Square, 20th Floor
Stamford, CT 06901

*Counsel for the Xerox Defendants*

Steven J. Sacher (ct24024)
Evan Miller (phv01958)
Shay Dvoretzky (*pro hac vice* mot. pending)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Arthur J. Margulies (phv02256)
Robert T. Smith (*pro hav vice* mot. pending)
JONES DAY
222 E. 41st Street
New York, NY 10017-6702

*Counsel for all Defendants except Myra
Drucker, Paul Allaire, William Buehler,
Barry Romeril, Gregory Tayler*

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Rosemary Q. Barry (ct20273)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901

*Co-counsel for G. Richard Thoman*

### TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 5

    A.    The Plans .................................................................................................. 5

    B.    Plaintiffs' Claims ................................................................................... 7

    C.    Motion for Class Certification ............................................................... 9

    D.    David Ross's Expert Report .................................................................... 9

ARGUMENT ..................................................................................................... 10

I.    PLAINTIFFS' DISCLOSURE AND PRUDENCE CLAIMS ARE NOT
    SUSCEPTIBLE TO CLASSWIDE TREATMENT ..................................... 11

    A.    The Proposed Salaried and Union Plan Classes Fail Rule 23(a)'s
        Commonality, Typicality, And Adequacy Requirements .................... 11

        1.    Plaintiffs' Proposed Classes Fail To Satisfy the Adequacy
            Requirement Under Rule 23(a)(4) ........................................... 11

        2.    Plaintiffs' Proposed Classes Also Fail To Satisfy The
            Commonality And Typicality Requirements Under Rule 23(a)(2)
            and (3) ....................................................................................... 17

            (a)    The proposed representatives' claims are not typical of
                 those that they seek to represent, neither as to the disclosure
                 claim nor the prudence claim ......................................... 19

                (i)  None of the representatives relied on any of the
                     allegedly incomplete and misleading disclosures ................. 19

                (ii) The proposed representatives' disclosure and prudence
                    claims are also subject to the ERISA § 404(c) defense
                    based on the unique control that they exercised over
                    their investments ................................................... 22

            (b)    Contrary to Plaintiffs' argument, an ERISA § 502(a)(2)
                 claim is not inherently typical ....................................... 28

    B.    The Proposed Classes Do Not Satisfy Any Of The Criteria For
        Certification Under Rule 23(b) ........................................................... 29

        1.    Plaintiffs' Proposed No-Notice, No-Opt-Out Class Cannot Be
            Maintained Under Rule 23(b)(1) ............................................. 29

            (a)    Separate adjudications would not prejudice absent class
                 members within the meaning of Rule 23(b)(1)(B) ..................... 30

# TABLE OF CONTENTS
(continued)

Page

(b)    Separate adjudications would not prejudice the Defendants within the meaning of Rule 23(b)(1)(A) ...................................... 31

(c)    Plaintiffs fail to offer a persuasive theory in favor of certification under Rule 23(b)(1) ................................. 33

2.    The Proposed Class Cannot Satisfy Rule 23(b)(3)'s Predominance And Superiority Requirements ................................................ 36

(a)    A host of individual issues will predominate over common questions ...................................................................... 36

(b)    Classwide treatment is not superior to individual actions ........... 38

II.    BECAUSE THE MONITORING CLAIM IS DERIVATIVE, AND BECAUSE THE PRIMARY CLAIMS ARE NOT SUSCEPTIBLE TO CLASSWIDE TREATMENT, THE MONITORING CLAIM ALSO SHOULD NOT BE CERTIFIED ............................................................................. 40

CONCLUSION ..................................................................................... 40

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abramovitz v. Ahern*,
96 F.R.D. 208 (D. Conn. 1982)..................................................................................31, 32

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................11, 12, 36

*Babcock v. Computer Assocs. Int'l, Inc.*,
212 F.R.D. 126 (E.D.N.Y. 2003) ......................................................................................4

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..............................................................................................18, 23

*Bazemore v. Friday*,
478 U.S. 385 (1986)........................................................................................................31

*In re Bendectin Prods. Liab. Litig.*,
749 F.2d 300 (6th Cir. 1984) ........................................................................................32

*Bieneman v. City of Chicago*,
864 F.2d 463 (7th Cir. 1988) ........................................................................................12

*Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research
Found.*, 334 F.3d 365 (3d Cir. 2003) ......................................................................19, 34

*Caridad v. Metro-N. Commuter R.R. Co.*,
191 F.3d 283 (2d Cir. 1999), *disavowed in relevant part by IPO*, 471 F.3d at 42 ......10, 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,
L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ............................................................................12

*In re Coca-Cola Enters. ERISA Litig.*,
No. 1:06-CV-0953, 2007 WL 1810211 (N.D. Ga. June 20, 2007)....................................40

*Corley v. Entergy Corp.*,
222 F.R.D. 316 (E.D. Tex. 2004), *aff'd*, 152 F. App'x 350 (5th Cir. 2005).....................33

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) ........................................................................................18

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................4

# TABLE OF AUTHORITIES
(continued)

Page

*In re Dennis Greenman Sec. Litig.*,
   829 F.2d 1539 (11th Cir. 1987) ........................................................................33

*Doe v. Guardian Life Ins. Co.*,
   145 F.R.D. 466 (N.D. Ill. 1992)........................................................................33

*Edgar v. Avaya, Inc.*,
   No. Civ.A. 05-3598, 2006 WL 1084087 (D.N.J. Apr. 25, 2006), *aff'd*, 503 F.3d
   340 (3d Cir. 2007)............................................................................................40

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
   224 F.R.D. 613 (E.D. Tex. 2004), *vacated on other grounds sub nom.*,
   *Langbecker*, 476 F.3d at 299.......................................................................35, 37

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. 01-3913, 2006 U.S. Dist. LEXIS 43145 (S.D. Tex. June 7, 2006)............................19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990)............................................................................18

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)..........................................................................10, 17, 18

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................4

*Grindstaff v. Green*,
   133 F.3d 416 (6th Cir. 1998) ...........................................................................27

*Hansberry v. Lee*,
   311 U.S. 32 (1940).........................................................................................12

*Hecker v. Deere & Co.*,
   No. 06-C-719-S, 2007 WL 3270401 (W.D. Wis. Oct. 19, 2007).....................................24

*In re Ikon Office Solutions, Inc.*,
   191 F.R.D. 457 (E.D. Pa. 2000).......................................................................4, 31

*Ince v. Aetna Health Mgmt., Inc.*,
   173 F.3d 672 (8th Cir. 1999) .......................................................................19, 34

*In re Initial Public Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006).......................................................10, 11, 18, 35, 37

-iv-

## TABLE OF AUTHORITIES

(continued)

**Page**

*Jimenez v. Domino's Pizza, Inc.*,
   238 F.R.D. 241 (C.D. Cal. 2006) ...................................................................... 32

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) .......................................................................... 13

*Kolar v. Rite Aid Corp.*,
   No. 01-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11, 2003) ................................ 4

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   128 S. Ct. 1020 (2008) ........................................................................... *passim*

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ..................................................................... *passim*

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ........................................................................... 17

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ..................................................... 10, 34, 36, 37, 38

*McMunn v. Pirelli Tire, LLC*,
   161 F. Supp. 2d 97 (D. Conn. 2001) ............................................................... 19, 34

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995) ............................................................................. 13

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .......................................................................... 36

*Morris v. McCaddin*,
   553 F.2d 866 (4th Cir. 1977) .......................................................................... 12

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ..................................................................................... 30

*Phillips v. Klassen*,
   502 F.2d 362 (D.C. Cir. 1974) ........................................................................ 12

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) ....................................................................... 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Rankin v. Rots ("Kmart"),*
    220 F.R.D. 511 (E.D. Mich. 2004) ................................................................34

*Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A,*
    441 F. Supp. 2d 405 (D. Conn. 2006).....................................................19, 34

*Robinson v. Tex. Auto. Dealers Ass'n,*
    387 F.3d 416 (5th Cir. 2004) ...........................................................................39

*Rohrer v. FSI Futures, Inc.,*
    No. 94 Civ. 6345, 1997 WL 792955 (S.D.N.Y. Dec. 23, 1997)......................20

*Ruland v. Gen. Elec. Co.,*
    94 F.R.D. 164 (D. Conn. 1982)........................................................................32

*Segal v. City of N.Y.,*
    459 F.3d 207 (2d Cir. 2006).............................................................................40

*Spann v. AOL Time Warner, Inc.,*
    219 F.R.D. 307 (S.D.N.Y. 2003) .....................................................................33

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.,*
    140 F.R.D. 474 (S.D. Ga. 1991) ..................................................................4, 31

*Stanford v. Foamex L.P.,*
    No. 07-cv-4225, 2008 WL 3874823 (E.D. Pa. Aug. 20, 2008) .......................35

*Thorn v. Jefferson Pilot Life Ins. Co.,*
    445 F.3d 311 (4th Cir. 2006) ...........................................................................39

*In re Unisys Sav. Plan Litig.,*
    74 F.3d 420 (3d Cir. 1996).........................................................................25, 26

*Walker v. Asea Brown Boveri, Inc.,*
    214 F.R.D. 58 (D. Conn. 2003).................................................................18, 23

*Wiseman v. First Citizens Bank & Trust Co.,*
    215 F.R.D. 507 (W.D.N.C. 2003) ...................................................................37

*In re WorldCom, Inc. ERISA Litig.,*
    No. 02-4816, 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 5, 2004)...............4

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Xerox Corp. ERISA Litig.*,
    483 F. Supp. 2d 206 (D. Conn. 2007) ............................................................5, 6

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ....................................................................32

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................32

## STATUTES, REGULATIONS & RULES

29 U.S.C. § 1104(c)(1)(A)(ii) ...............................................................22, 27, 37

29 U.S.C. § 1107(d)(3)(A) ............................................................................5

29 U.S.C. § 1109(a) ..............................................................................1, 28

29 U.S.C. § 1132(a)(2) ..............................................................................28

29 U.S.C. § 1132(g) ................................................................................39

29 C.F.R. § 2550.404c-1 .............................................................................24

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(ii) ........................................................24, 25

29 C.F.R. § 2550.404c-1(c)(2)(ii) ....................................................................25

29 C.F.R. § 2550.404c-1(d)(2)(ii)(E)(4)(vi) ............................................................26

FED. R. CIV. P. 23(a)(3).........................................................................20, 23

FED. R. CIV. P. 23(b)(1)...................................................................1, 9, 29, 33

FED. R. CIV. P. 23(b)(1)(A) ...............................................................29, 31, 32, 33

FED. R. CIV. P. 23(b)(1)(B) .............................................................1, 9, 30, 31, 33

FED. R. CIV. P. 23(b)(1)(B) Adv. Comm. Notes 1966 ....................................................34

FED. R. CIV. P. 23(b)(2) ...........................................................................8

FED. R. CIV. P. 23(b)(3)........................................................................36, 38

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page**

FED. R. CIV. P. 23(c)(1) Adv. Comm. Notes 2003...................................................11, 39

FED. R. CIV. P. 26(a)(2)(B)........................................................................................9

## MISCELLANEOUS

2 ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ...............................29, 30

5 MOORE'S FEDERAL PRACTICE (3d ed. 2008)................................................30, 31, 32

7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE (3d ed. 2005) ..30, 32

## INTRODUCTION

Plaintiffs seek monetary damages in this case under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for alleged breaches of fiduciary duties in connection with decisions by 401(k) plan participants to invest in Xerox stock.  Plaintiffs seek certification for two broad classes totaling more than 40,000 putative members:  one class for persons who invested in Xerox stock during the period from May 12, 1997 to June 28, 2002 as participants in the Xerox Savings Plan for salaried employees, and the second class for persons who invested in Xerox stock during the same period as participants in the Xerox Profit Sharing Plan for unionized employees.  Plaintiffs principally request to have the classes certified under the no-notice, no-opt-out provisions of Rule 23(b)(1).  In the alternative, they request certification under Rule 23(b)(3).

In Plaintiffs' view, their claims are "particularly suited [for] class treatment."  Pls.' Mem. at 12 (capitalization altered).  Their key argument is that because they sue under ERISA §§ 409 and 502(a)(2) to remedy "losses to the plan resulting from the [alleged] breaches" (29 U.S.C. § 1109(a)), they are "inherently suing in a representational capacity" on behalf of the two 401(k) plans themselves.  Plaintiffs tout their purported "representational capacity" as if it lessens the stringent requirements for class certification.  They contend that since they sue in a representational capacity on behalf of the plans—and any other participant would need to proceed in a similar manner—their suit "necessarily" satisfies the commonality and typicality requirements of Rule 23(a).  In addition, they claim that Rule 23(b)(1)(B) certification is particularly warranted because any adverse adjudication "for the plans" they ostensibly represent would "necessarily" have a preclusive effect on the plans' participants.

In fact, Plaintiffs assert class certification "is not strictly necessary" and is sought merely "in an abundance of caution."  Pls.' Mem. at 1 n.1.  So talismanic is the alleged power of their

asserted status as representatives of the plans that Plaintiffs believe they may obtain the relief they seek "even without class certification." *Id.*

Yet Plaintiffs' argument that fiduciary breach claims under ERISA § 502(a)(2) are inherently representative, and hence automatically homogeneous with other participants, is belied by the Supreme Court's recent decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S. Ct. 1020 (2008). *LaRue* is a game-changing decision as it relates to class issues in individual account pension plan litigation. It clarified that, in cases like this one, an *individual* may bring a § 502(a)(2) action to recover "for fiduciary breaches that impair[ed] the value of plan assets in [that] participant's *individual account*." *Id.* at 1026 (emphasis added). The possibility of individual claims creates the potential for the sort of individualized inquiry and conflicts with the interests of others that may preclude class certification.

The application of *LaRue*'s substantive lesson is a matter of first impression in the context of a motion for class certification. The import of that lesson is nonetheless clear: *LaRue* teaches that, because an ERISA § 502(a)(2) claim need not be brought as a representative action on behalf of other participants, one participant's claims are not "necessarily" typical of another's, and each participant is not "necessarily" an adequate representative for either the plan itself or other participants. Post-*LaRue*, there can be no doubt that plaintiffs seeking to bring an action that affects the other participants of an individual account pension plan must comply with the requirements of Rule 23. Otherwise, their recovery is limited to losses to the plaintiffs' own individual pension accounts.

In this case, Plaintiffs cannot meet their Rule 23 burden. In their zeal to certify the broadest possible classes, Plaintiffs have included within their requests putative members with interests that are fundamentally opposed. Because each individual participant in the Xerox plans

directs the investments for his or her own plan account, such participant will have an individualized trading pattern of purchases and sales of Xerox stock. Consequently, thousands of members of the proposed classes either *benefited from or were not harmed by* the very acts that Plaintiffs claim resulted in significant harm to the classes at large. Even among the proposed members who may have been harmed, thousands have significant monetary incentives to pursue theories of recovery that are antagonistic to the interests of other members of the proposed classes.

Moreover, the proposed representatives' claims are not typical of the claims of others. The proposed representatives are subject to a variety of unique defenses, which could easily become the focus of this litigation. In fact, each representative would face unique and considerable difficulties in prevailing on his or her claims. Thus, the adequacy, typicality, and commonality requirements of Rule 23(a) are not satisfied.

Nor can the proposed classes be maintained under Rule 23(b). Plaintiffs' proposed (b)(1) class would deprive thousands of putative members of notice and opt-out protections, despite undeniable intraclass conflicts, and their proposed (b)(3) class cannot satisfy that subsection's demanding requisites of predominance and superiority.

Plaintiffs ignore these issues altogether. Studiously ignoring *LaRue*'s import, they assert that no individual issue can preclude certification—apparently, not even a participant who would put his own interests above those of the class—because each participant's claims are being brought "on behalf of the plan as an entity." Pls.' Mem. at 13. Plaintiffs also ignore the decision of the only appellate court to consider class certification in the context of stock-drop litigation involving individual account plans. Even without the benefit of *LaRue*, the Fifth Circuit earlier held that a proposed class of 401(k) plan participants who chose to invest in company stock

failed to satisfy any of the Rule 23(b) criteria, and it found that the class was riddled with conflicts that rendered single-class treatment inappropriate. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007).

Finally, Plaintiffs ignore the repeated admonition of the Second Circuit and the Supreme Court that plaintiffs bear the burden of showing class certification is appropriate, and that no class may be certified without exacting compliance with the requirements of Rule 23, which are designed both to protect potential class members whose interests may be impaired in their absence and to ensure that class treatment is judicially manageable and efficient. Instead, they rely upon district court decisions that were decided prior to *LaRue* and *Langbecker*—many of which granted class certification as part of a joint settlement approval process (and consequently, no party before the court objected to certification). In fact, one of the principal cases upon which Plaintiffs rely, *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000), was decided in exactly this manner—as part of a settlement agreement, untested by the adversarial process, and without the benefit of *LaRue* or *Langbecker*.[1]

In short, Plaintiffs have failed to carry their burden in demonstrating that class certification is appropriate. Accordingly, their motion should be denied.

---

[1] Other cases cited by Plaintiffs that were decided as part of a negotiated settlement include: *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 486 (E.D. Mich. 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 441 (S.D.N.Y. 2004); *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 U.S. Dist. LEXIS 3646, at *2 (E.D. Pa. Mar. 11, 2003); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 475 (S.D. Ga. 1991); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 U.S. Dist. LEXIS 19786, at *6 (S.D.N.Y. Oct. 5, 2004) (no opposition to certification of the ERISA class); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 129 (E.D.N.Y. 2003) (defendants only opposed certification on the ground that numerosity had not been satisfied).

## BACKGROUND

### A.    The Plans

Xerox maintains two retirement income plans:  the Xerox Corporation Savings Plan

("Salaried Plan") and the Profit Sharing Plan of Xerox Corporation and the Xerographic Division,

Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O. ("Union Plan")

(collectively, "Plans").  Both Plans are tax-qualified and regulated under section 401(k) of the

Internal Revenue Code of 1986, and both constitute "eligible individual account plans"

("EIAPs").  *See* ERISA § 407(d)(3)(A) (defining term) (codified at 29 U.S.C. § 1107(d)(3)(A)).

In EIAPs, the investment risk lies with each plan participant, unlike in a defined benefit pension

plan, in which the investment risk lies with the plan sponsor.  In an EIAP, each participant has an

individual account that holds contributions made on his or her behalf, and that reflects his or her

individualized investment earnings and losses.  At the time of retirement or other distribution

event, the participant's benefit is the balance in his or her account.

Three other design features of the Plans are important in this case.  *First*, the opportunity

for participants to invest in company stock through the Xerox Stock Fund is "hard wired" into

the Plans' design—that is, the terms of the Plan instruments mandate that the Xerox Stock Fund

be provided to participants as an investment option.[2]  Xerox, acting in the non-fiduciary capacity

of a corporate "settlor," designed the Plans to require Xerox stock as an investment choice so

that Plan participants who wished to do so could obtain equity ownership on a tax-preferred basis.

---

[2] Xerox Corporation Profit Sharing and Savings Plan, 1998 Restatement ("1998 Salaried Plan")
§ 6.02(a)(ii), at 22 (XC 000135), attached as Attachment 6 to the Declaration of Arthur J. Margulies ("Margulies
Decl."); Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial
and Textile Employees, A.F.L.-C.I.O.-C.L.C. (Formerly "The Xerographic Division, A.C.T.W.U., A.F.L.-C.I.O."),
1998 Restatement ("1998 Union Plan") § 6.02(a)(1)(ii), at 23 (XC 00031650) (Margulies Decl., Attachment 7);
1998 WealthWise Benefits Handbook ("1998 Salaried SPD") at 6 (XC 002429) (Margulies Decl., Attachment 8);
1994 Benefits Handbook for Monroe County Employees ("1994 Union SPD") at 133 (XC 001054) (Margulies Decl.,
Attachment 9); *see also In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 210 (D. Conn. 2007).

Unlike the other plan investment choices available to participants, which were chosen by certain

Plan fiduciaries, no Plan fiduciary had anything to do with selecting or offering the Xerox Stock

Fund as an investment option.

      *Second*, Xerox did not force participants to invest in the Xerox Stock Fund.  Under the

Plans, participants defer a portion of their salaries into whichever of the Plans' various

investment funds they choose.[3]  Moreover, the Union Plan also provided for a Company

matching contribution ("match").[4]  Many plans that offer company stock as an investment choice

require the company match to be invested in company stock.  Xerox, however, contributes only

cash, and the cash is invested in the sole discretion of the participant in the investment options on

the Plan's menu.[5]

      *Third*, the Plans' investments are participant-directed; participants design the investment

portfolio of their respective individual accounts by selecting from a range of independent mutual

funds, independently managed strategy-focused funds, and the Xerox Stock Fund.[6]  Participants

can change their investment allocations and transfer amounts among any of the investment

options on a daily basis.[7]

      The Plans consistently advised participants against concentrating their savings in the

Xerox Stock Fund.  Every year, participants in each Plan received an Investment Funds Annual

Report ("IFAR"), which, among other things, discussed the performance of each investment

option during the prior year.  These IFARs routinely advised that "[the Xerox Stock] Fund is

---

[3] *Xerox Corp.*, 483 F. Supp. 2d at 210.

[4] 1994 Union SPD at 166 (XC 001061) (Margulies Decl., Attachment 9).

[5] *Id.*

[6] 1998 Salaried SPD at 6-7 (XC 002429-30) (Margulies Decl., Attachment 8); *Xerox Corp.*, 483 F. Supp. 2d at 210.

[7] 1998 Salaried SPD at 6-7 (XC 002429-30) (Margulies Decl., Attachment 8); *Xerox Corp.*, 483 F. Supp. 2d at 210.

suitable for you only if you are not averse to the risks of investing in an individual company and your savings are already well diversified."[8]  The IFARs also consistently described the Xerox Stock Fund as the riskiest investment choice available to participants, and as a fund that was "not actively managed."[9]  Finally, the IFARs warned participants that the Xerox Stock Fund's returns could be affected by a number of factors, including general economic conditions, the market for office equipment, the opinions of Wall Street analysts, and Xerox's own financial performance, and made clear that maintenance of the Xerox Stock Fund was part of the design of the Plans and would be maintained as an investment option no matter what the prevailing market conditions.[10]

## B.    Plaintiffs' Claims

Plaintiffs are current and former participants in the Salaried or Union Plans.  They assert three claims under ERISA.  In Count I (the "prudence claim"), they allege that all defendants breached their fiduciary duties to the Plans by "maintain[ing] the Xerox Stock Fund as an investment alternative," and permitting participants to invest in the Xerox Stock Fund.  Third Consolidated Am. Compl. ¶ 149.  Plaintiffs contend that "Defendants were responsible for the prudence of the Plans' investment . . . includ[ing] the responsibility for evaluating, on an ongoing basis, the prudence of continuing to offer the Xerox Stock Fund as an investment alternative."  *Id.* ¶ 147.  They allege that "Defendant[s] knew or should have known about the Company's irregular and potentially unlawful accounting practices," and therefore "should have acted to ensure that the [Salaried] Plan and [the Union] Plan were protected against loss incurred as a result of investment in Xerox stock."  *Id.* ¶ 120.

---

[8] 1998 IFAR at 42 (TP 000351) (Margulies Decl., Attachment 10); *accord* 1999 IFAR at 26 (MD 0222) (Margulies Decl., Attachment 11).

[9] 1998 IFAR at 42 (TP 000351) (Margulies Decl., Attachment 10); *accord* 1999 IFAR at 27 (MD 0223) (Margulies Decl., Attachment 11).

[10] 1998 IFAR at 42 (TP 000351) (Margulies Decl., Attachment 10); *accord* 1999 IFAR at 26 (MD 0222) (Margulies Decl., Attachment 11).

In Count III (the "disclosure claim"), Plaintiffs allege that certain defendants made disclosures regarding investment in Xerox stock that were incomplete and inaccurate, and that such incomplete disclosures constituted breaches of ERISA fiduciary responsibility. *Id.* ¶¶ 161, 167. They also contend that certain alleged statements made by Defendants Allaire, Thoman, and Mulcahy were misleading, and these misleading statements also constituted ERISA fiduciary breaches by those who made them. *Id.*

Finally, in Count II (the "monitoring claim"), Plaintiffs allege that the Company, the Xerox Board of Directors, and the Finance Committee of the Board breached fiduciary duties under ERISA to monitor certain other Plan fiduciaries. *Id.* ¶¶ 153, 158. This claim, however, is derivative of the prudence claim; if Plaintiffs cannot demonstrate that any underlying breaches of the duty to act prudently occurred, then no Defendant could possibly have breached the duty to monitor any other fiduciary.

Plaintiffs seek to recover monetary damages for losses that allegedly occurred as a result of these alleged violations of ERISA.[11] Although Plaintiffs purport to bring this action for plan-wide relief, the losses that are recovered, if any, ultimately will be distributed on an account-by-account basis for each participant who invested in the Xerox Stock Fund. Each individual recovery, moreover, will vary widely, depending on each investor's unique trading activities, and each recovery will be discounted by the amount, if any, that each participant receives from the settlement of a related securities fraud class action and the SEC's Fair Fund distribution.

---

[11] Plaintiffs have made no specific request for injunctive or declaratory relief, and they do not seek to certify the classes, based on a request for such relief, under Rule 23(b)(2).

### C.    Motion for Class Certification

Despite the existence of these and other individual issues, Plaintiffs have moved for

certification of separate classes for the participants of the Salaried Plan and the Union Plan.

They define the proposed classes as:

> All persons who were participants in or beneficiaries of the
> Salaried Plan, excluding the Defendants, at any time between May
> 12, 1997 and June 28, 2002, and who made or maintained
> investments in the Xerox Stock Fund (the "Salaried Plan Class").
>
> All persons who were participants in or beneficiaries of the Union
> plan, excluding the Defendants, at any time between May 12, 1997
> and June 28, 2002, and who made or maintained investments in the
> Xerox Stock Fund (the "Union Plan Class").

As mentioned above, Plaintiffs seek to certify these classes under the no-notice, no-opt-out

provisions of Rule 23(b)(1).  In the alternative, they seek certification under Rule 23(b)(3).

Plaintiffs have proposed that Plaintiffs David Alliet and Linda Willis serve as

representatives for the Salaried Plan Class; they have proposed that Cheryl Wright, who is not

named as a Plaintiff in the Third Consolidated Amended Complaint, and Plaintiff Thomas Patti

serve as representatives for the Union Plan.

### D.    David Ross's Expert Report

In anticipation of Plaintiffs' motion for class certification, the defendants retained David

Ross—an expert in financial economics and the economics of corporate law—to analyze the

economic evidence as it relates to Plaintiffs' claims, and to determine whether the proposed

representatives' interests are aligned with other members of the classes that they seek to

represent.  Mr. Ross's findings are set out in his Expert Report, and exhibits, prepared in

conformity with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, which are attached

hereto as Attachment 1 to the Margulies Decl.

## ARGUMENT

Plaintiffs' motion for class certification obliges them to satisfy the familiar and stringent requirements of Rule 23 of the Federal Rules of Civil Procedure. That rule requires that every class action satisfy four shared criteria: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the rule requires that the action be maintainable as a class under at least one of the three subsections of Rule 23(b).

This Court must conduct a "rigorous analysis" to determine whether the requirements for class certification have been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). In fulfilling that mandate, it "may be necessary for the court to probe behind the pleadings." *Id.* Indeed, the Second Circuit has held that a "district judge must receive enough *evidence*, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offering Sec. Litig. ("IPO")*, 471 F.3d 24, 41 (2d Cir. 2006) (Newman, J.) (emphasis added). Thus, contrary to Plaintiffs' argument—that this Court must blindly accept "the allegations of the complaint as true," Pls.' Mem. at 15 (citing *Caridad v. Metro-N. Commuter R.R. Co.*, 191 F.3d 283, 291 (2d Cir. 1999), *disavowed in relevant part by IPO*, 471 F.3d at 42)—the Second Circuit has reaffirmed that "'actual, not presumed, conformance'" with Rule 23 remains "'indispensable.'" *IPO*, 471 F.3d at 33 (quoting *Falcon*, 457 U.S. at 160).

This Court's inquiry, moreover, is not circumscribed simply because assessment of the Rule 23 requirements might overlap with the underlying merits. Again, contrary to Plaintiffs' argument—that "Courts should not evaluate the merits of an action when determining whether to certify a class," Pls.' Mem. at 15—the Second Circuit has clarified that a district judge must determine that each of the Rule 23 requirements have been met, *whether or not any such assessment also bears on the merits of the case*." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d

215, 221 (2d Cir. 2008) (emphasis added); *IPO*, 471 F.3d at 41 (court must make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues").

Plainly, the Second Circuit's standards do not allow for conditional or presumed certification. Instead, "'[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.'" *IPO*, 471 F.3d at 39 (quoting FED. R. CIV. P. 23(c)(1)(C) Adv. Comm. Notes 2003). And that is exactly what the Court should do here.

## I.  PLAINTIFFS' DISCLOSURE AND PRUDENCE CLAIMS ARE NOT SUSCEPTIBLE TO CLASSWIDE TREATMENT.

Plaintiffs have failed to demonstrate that their disclosure and prudence claims satisfy Rule 23(a)'s commonality, typicality, or adequacy requirements, and they cannot maintain these claims under any one of the three subsections of Rule 23(b). Indeed, the only appellate court to consider ERISA stock-drop claims like those here held that the proposed class failed to satisfy any of the Rule 23(b) criteria, and it found that the class was riddled with conflicts that rendered single-class treatment inappropriate. *Langbecker*, 476 F.3d at 313-18. Plaintiffs do not even acknowledge—let alone attempt to reconcile their request for certification with—*Langbecker*. Instead, their motion relies on bad decisional law, all while attempting to propagate the fiction that a moving party's *ipse dixit* can satisfy this Court's "rigorous analysis" of the Rule 23 criteria. Their motion must be denied.

### A.  The Proposed Salaried and Union Plan Classes Fail Rule 23(a)'s Commonality, Typicality, And Adequacy Requirements.

#### 1.  Plaintiffs' Proposed Classes Fail To Satisfy the Adequacy Requirement Under Rule 23(a)(4).

Among other things, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class" of individuals that "they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Indeed, the Supreme

Court and the Second Circuit have repeatedly held that single-class treatment is inappropriate where there are fundamental conflicts among the members of a proposed class. *See, e.g.*, *id.* at 626 (the adequacy requirement precludes class certification where the "interests of those within the single class are not aligned"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (the adequacy requirement prohibits certification when the named plaintiffs' "'interests are antagonistic to the interest of other members of the [proposed] class'"); *see also Hansberry v. Lee*, 311 U.S. 32, 43-44 (1940) (intraclass conflicts can present serious constitutional problems).[12]

In particular, numerous circuits have held that "a class cannot be certified . . . when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988) (same); *Morris v. McCaddin*, 553 F.2d 866, 870-71 (4th Cir. 1977) (no class certification where "the interests of the named plaintiffs would have been antagonistic to the interests of many of the unnamed members"); *Phillips v. Klassen*, 502 F.2d 362, 366-67 (D.C. Cir. 1974) (no class certification where some class members were pleased by the defendants' challenged actions).

In *Langbecker*, for example, the Fifth Circuit held that the district court abused its discretion by certifying a single class of members who invested in their employer's stock fund, because, among other things, some "members made money on their stock fund investments, while others . . . lost money." 476 F.3d at 315.

Plaintiffs' proposed class suffers from fundamental conflicts because the plan participants were affected in dramatically different ways by the drop in stock price that underlies their theory

---

[12] "The adequacy heading also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20.

of recovery under ERISA.[13]  As Mr. Ross's expert report makes plain, the participants' ability to
control their own investments, and the unique trading activity that resulted from that
individualized control, have led to substantial conflicts among the members of the proposed
class.  Those conflicts are identical to the conflicts identified by the Fifth Circuit in *Langbecker*,
and they preclude certification here.

    As an initial matter, thousands of members of the proposed classes *benefited* from trading
units in the Xerox Stock Fund (if one assumes, as Plaintiffs do, that the alleged accounting
improprieties at Xerox caused its stock to inflate artificially and gave rise to a prudence
obligation on Defendants "to act to protect Plan participants").  As Mr. Ross explains, 1,606
members of the proposed Salaried Plan Class, and 132 members of the proposed Union Plan
Class, benefited by investing in the Xerox Stock Fund, "because they sold units at allegedly
artificially inflated prices, but did not acquire any units at allegedly inflated prices."  Ross Rpt.
¶ 16 (emphasis added).  In addition, at least 6,110 members of the proposed Salaried Plan Class,
and at least 408 members of the proposed Union Plan Class, benefited by investing in the Xerox
Stock Fund, "because their gains from sales at allegedly inflated prices . . . exceed[ed] their
losses from purchases at allegedly inflated prices."  *Id.* ¶ 23.[14]  The interests of these members,

---

[13] Plaintiffs' theory of recovery is unfounded because it is premised on the claim that the defendants were
under a duty to override the investment options of the Plans, and plan participants' exercise of investment discretion
to invest in the Xerox Stock Fund,  if they "knew or should have known about the Company's irregular and
potentially unlawful accounting practices."  Third Consolidated Am. Compl. ¶ 120.  Even if a fiduciary knows of
facts that might constitute securities fraud, those facts alone are not dispositive of whether the fiduciary must take
some action to override the clear requirements of the plan and prevent further acquisition and holding of company
stock.  *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008).  This is because, under ERISA,
the fiduciary breach question is not whether the defendants allowed stock to be acquired at a cost that is artificially
high due to the failure to disclose material facts or the misleading of investors.  Instead, the question is whether the
defendants should have recognized that the plan sponsor's non-fiduciary plan design decision to require that plan
participants be able to invest in company stock on a tax-preferred basis was no longer attainable, because the stock
was about to become worthless.  *See id.*; *see also Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).

[14] The actual number of members who could not recover damages because their gains exceeded their losses
depends on two factors:  (1) whether the members' recovery is for the losses to their individual accounts
("Individual Recovery Scenario") or their pro-rata share of the losses to the Plan in which they participated ("Plan

who undoubtedly benefited by investing in the fund, are not aligned with those members who claim to have suffered a loss by investing in that very same fund. *See Langbecker*, 476 F.3d at 315 (conflict among those who "made money on their stock fund investments" and those who "lost money").

Furthermore, 1,215 members of the proposed Salaried Plan Class, and 52 members of the proposed Union Plan Class, *suffered no loss at all*, because they did not acquire or sell a single unit of Xerox stock during the class period. Ross Rpt. ¶ 18. These members' interests are obviously not aligned with the interests of those who claim to have been harmed because they invested in the Xerox Stock Fund. *See Langbecker*, 476 F.3d at 315.

The conflicts that permeate this proposed class action, moreover, cannot be evaded simply by sorting among those who were harmed and those who were not. Even among those who may have lost money during the class period, there are substantial conflicts that make certification impractical—if not impossible. Indeed, the disclosure and prudence claims are riddled with conflicts among members who both acquired and sold units of Xerox stock during the class period, because those members have conflicting interests in establishing when the alleged breaches occurred. *See* Ross Rpt. ¶ 19. Specifically, each such member may be able to increase substantially his or her individual recovery by establishing a fiduciary breach date that

---

(continued…)

Recovery Scenario"); and (2) the date on which the Defendants are deemed to have breached their fiduciary duties (assuming a breach occurred). *See* Ross Rpt. ¶ 20. (Under the Plan Recovery Scenario, each member would receive a proportional share of the losses that the Plans themselves incurred due to the Plan trusts' purchases and sales of Xerox stock on the open market. *See id.* ¶¶ 20, 26.) As Mr. Ross explains, there are a number of members whose gains would exceed their losses, regardless of when the defendants are deemed to have breached their fiduciary duties. *See id.* ¶¶ 23, 27. The size of this group simply depends on which of the two recovery theories mentioned above is available. If members are allowed to recover for losses to their individual accounts, then this group would consist of 6,110 members of the proposed Salaried Plan Class, and 408 members of the proposed Union Plan Class. *Id.* ¶ 24. If, on the other hand, members may only recover a pro-rata share of the losses to the Plan in which they participated, then this group would consist of 6,370 members of the proposed Salaried Plan Class, and 420 members of the proposed Union Plan Class. *Id.* ¶ 27.

maximizes the number of units that he or she *acquired* at artificially inflated prices following the breach, while minimizing the number of units that he or she *sold* following the breach at those artificially inflated prices. *See id.* Because the optimal breach date for any such class member will depend on, among other things, his or her individual account's transactions in the Xerox Stock Fund, one member's optimal breach date does not necessarily correspond with another's.

If purported class members recover for losses to their individual accounts, then there are 814 different dates during the class period that would serve as the optimal breach date for one or more of the members of the Salaried Plan, and there are 414 different dates that would serve as the optimal date for one or more members of the Union Plan. *Id.* ¶ 23.[15] The effect of these potentially conflicting breach dates is substantial. By way of an example, if Plaintiff Thomas Patti's optimal fiduciary breach date is selected, then:

- 22,683 members of the proposed Salaried Plan Class and 2,195 members of the proposed Union Plan Class would forego a portion of their potential recoveries;

- These participants, in the aggregate, would forego potential recoveries of approximately $209.7 million, a 64.9 percent reduction in the aggregate potential recovery;

- The average foregone recovery of these participants would be $8,427.51 per participant;

- The other proposed representatives, Alliet, Willis, and Wright, would have their potential recoveries reduced by $18,382.39 (6.3 percent), $5,567.30 (78.1 percent), and $15,868.79 (54.0 percent), respectively; and

---

[15] Even if this Court were to conclude that Plaintiffs can proceed in a representational capacity for their respective Plans, and can therefore potentially recover losses that the Plan trusts themselves incurred due to their respective trust's purchases and sales of Xerox stock in the open market (which stock was then allocated to participants' accounts), for purposes of allocating that recovery among purported class members there are still 322 different dates during the class period that would serve as the optimal breach date for one or more members of the Salaried Plan, and 141 different dates that would serve as the optimal date for one or more members of the Union Plan. Ross Rpt. ¶ 27. Moreover, under this latter scenario, 14,606 members of the proposed Salaried Plan Class have a different optimal breach date than the date that would maximize the Salaried Plan's aggregate recovery, and 1,344 members of the proposed Union Plan Class have an optimal breach date different than the Union Plan's. *Id.* Thus, even if Plaintiffs were to be able to recover damages in a representational capacity for the plans qua plans, there are still significant conflicts that permeate the proposed class action. *See infra* at 16.

- 8,512 participants would forego their *entire* recovery.

*Id.* ¶ 24.  Effectively this means that there are over 8,512 purported class members, each with a right under *LaRue* to proceed individually to recover for his or her Plan account, who would obtain nothing under an asserted fiduciary breach date that maximizes Mr. Patti's recovery.  In addition, over 22,683 purported class members would be sacrificing, on average, over $8,000 each by allowing Mr. Patti to pursue a breach claim that maximizes his recovery in lieu of individual actions.

The conflicts are just as significant if Mr. Patti pursues a fiduciary breach date that is the Union Plan's optimal breach date:

- 14,606 members of the proposed Salaried Plan Class and 1,344 members of the Union Plan Class would forego a portion of their potential recoveries;

- These participants, in the aggregate, would forego potential recoveries of approximately $67.4 million, a 32.1 percent reduction in the aggregate potential recovery;

- The average foregone potential recovery of these participants would be $4,227.90 per participant;

- Proposed representatives Alliet, Patti, and Wright would have their potential recoveries reduced by $16,519.04 (7.6 percent), $4,435.51 (56.3 percent), and $9,317.26 (45.8 percent), respectively; and

- 2,719 participants would forego their *entire* recovery.

*Id.* ¶ 29.  In short, what's good for one participant—or even for one participant based on the trading patterns of the Plan itself—can be detrimental to many others.

These very real conflicts, which infect both the disclosure and prudence claims, are the same types of conflicts that deeply troubled the Fifth Circuit in *Langbecker*.  476 F.3d at 315.  Indeed, as the Fifth Circuit explained, these types of conflicts "have implications not only for dividing the pie at recovery but also for discovery and preparation for trial."  *Id.*  Each individual member would desire to discover and prove facts that maximizes his or her individual recovery,

-16-

and "each theory [would] have different consequences for [the other] class members' recovery." *Id.* Thus, even among those members who lost money, there are substantial conflicts that preclude certification of the disclosure and prudence claims.

Lastly, there are substantial conflicts among those members who stopped investing in the Xerox Stock Fund during the purported Class Period and those who did not. In fact, a majority of the members of the proposed classes, including each proposed representative, either continued to direct money into the Xerox Stock Fund or did not get out of the Xerox Stock Fund even after the company disclosed negative information and even after the stock price continued to drop. To borrow the Fifth Circuit's language, "This aggregate conduct seriously undermines the claim that the [Xerox] Stock Fund was an imprudent investment that [the defendants] should not have offered in the first place." *Langbecker*, 476 F.3d at 315.

Taken collectively or viewed on their own, the conflicts identified herein present substantial and insurmountable obstacles to certification of a single class for each Plan. The gradation of significant conflicting interests, moreover, renders it virtually impossible to construct subclasses sufficient to adequately represent the hundreds of dissimilarly situated members of the proposed classes. Thus, the adequacy requirement of Rule 23(a)(4) precludes certification of Plaintiffs' proposed classes.

> **2.    Plaintiffs' Proposed Classes Also Fail To Satisfy The Commonality And Typicality Requirements Under Rule 23(a)(2) and (3).**

As the Supreme Court and the Second Circuit have explained, "The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13; *accord Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence."
*Falcon*, 457 U.S. at 157 n.13.

Typicality, in particular, requires that the "class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156 (internal quotation marks omitted). A class representative, moreover, is not typical if he is "subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (internal quotation marks omitted)); *accord Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 66 (D. Conn. 2003) ("the named plaintiffs have not satisfied the typicality requirement because they are subject to unique defenses which threaten to become the focus of the litigation"). "Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006), and that comparison focuses on whether an important issue of law or fact will "occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad*, 191 F.3d at 293 (internal quotation marks omitted), *disavowed on other grounds by IPO*, 471 F.3d at 42.

Plaintiffs flout this well-established comparative inquiry, arguing instead that *every* ERISA breach of fiduciary duty claim "necessarily" satisfies the typicality requirement. *See* Pls.' Mem. at 21-22. In the process, they not only ignore a variety of unique issues that render the proposed representatives' claims atypical, but they also fail to consider *LaRue*, which completely undermines their argument and the earlier district court authority on which they rely. As such, their claimed typicality and commonality must be rejected.

-18-

**(a)     The proposed representatives' claims are not typical of those that they seek to represent, neither as to the disclosure claim nor the prudence claim.**

The proposed representatives' claims are susceptible to a variety of unique defenses, which would easily become the focus of this litigation. Indeed, each representative would face unique and considerable difficulties in prevailing on his or her own disclosure and prudence claims—to the detriment of the absent class members.

**(i)     None of the representatives relied on any of the allegedly incomplete and misleading disclosures.**

As an initial matter, not one of the proposed representatives can establish that he or she relied on the Defendants' alleged misrepresentations—a required element of Plaintiffs' disclosure claim. *Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 441 F. Supp. 2d 405, 433 (D. Conn. 2006) (requiring plaintiffs to prove that they "relied" on misrepresentations "to their detriment") (quoting *McMunn v. Pirelli Tire, LLC*, 161 F. Supp. 2d 97, 120 (D. Conn. 2001)); *see also Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003) (plaintiff must prove "detrimental reliance by the plaintiff on the misrepresentation"); *accord Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999). Indeed, several of Plaintiffs' own cases establish this very requirement, which each of the proposed representatives fails. *See, e.g.*, *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 01-3913, 2006 U.S. Dist. LEXIS 43145, at *74 (S.D. Tex. June 7, 2006) (plaintiff must prove "element of reliance").

Thomas Patti cannot prove reliance. In fact, he readily admitted that he did not rely on any of the alleged misstatements in making his plan investment decisions. *See* Patti Dep. Tr. at 192; *see also id.* at 248-49 (admitting that he did not believe what the defendants allegedly told him); *id.* at 263 (not recalling a single instance where he made an investment decision based on

what the defendants allegedly told him).[16]  Mr. Patti also does not recall whether he relied on the

company's SEC filings, *id.* at 303, and he admits that the *price of the stock* did not even affect

his investment decisions, *id.* at 344 ("I wasn't looking at prices, I was looking to recoup money

that I had lost.").  Moreover, Mr. Patti's actions support his admissions.  Whereas the Complaint

alleges that plan participants relied on an alleged October 21, 1999, statement that Xerox

employees should continue to "believe in the company" and "buy the stock," Third Consolidated

Am. Compl. ¶ 135, Mr. Patti was not persuaded; he transferred all of his money out of the Xerox

Stock Fund on that very same date.  *See* Patti Dep. Tr. at 273-74.

Cheryl Wright likewise cannot establish that she relied on any of the alleged

misrepresentations; she readily admitted that her husband made all of the decisions regarding her

investments in the Xerox Stock Fund.  Wright Dep. Tr. at 239.[17]  She also admitted that she had

"no idea what motivated [her] husband to make those investment decisions," *id.*—although there

is evidence that her husband was attempting to play the market, in violation of the company's

short-term trading policy, *id.* at 222-23.[18]

David Alliet faces a near-impossible task in proving reliance.  He stated that he did not

rely directly on any alleged misrepresentations; he relied instead on his own "inside"

understanding of Xerox's products and services.  Alliet Dep. Tr. at 113, 115, 204.[19]  In fact, Mr.

Alliet stated that he believed in the company's products and services, "[i]rrespective of the

---

[16] The Patti Dep. Tr. excerpts are attached hereto as Attachment 2 to the Margulies Declaration.

[17] The Wright Dep. Tr. excerpts are attached hereto as Attachment 3 to the Margulies Declaration.

[18] Moreover, Ms. Wright's ability to serve as a representative is frustrated by another unique attribute; she is not even named as a plaintiff in the Second or Third Consolidated Amended Complaints.  *Cf. Rohrer v. FSI Futures, Inc.*, No. 94 Civ. 6345, 1997 WL 792955, at *1 (S.D.N.Y. Dec. 23, 1997) ("a class representative must be a party to the action at the time the class is certified"); *see also* FED. R. CIV. P. 23(a)(3) ("the claims or defenses of the representative *parties* [must be] typical of the claims or defenses of the class") (emphasis added).

[19] The Alliet Dep. Tr. excerpts are attached hereto as Attachment 4 to the Margulies Declaration.

accounting" problems, and "irrespective of [any] fraud" at Xerox. *Id.* at 115-16. He also admitted that he never reviewed the company's SEC filings, that no specific statement caused him to invest large sums of money in the Fund, *see, e.g.*, *id.* at 296, and that he did not receive any communications from management after he retired in 1999, *id.* at 169. Moreover, contrary to the Complaint's allegations, Mr. Alliet stated that all of Xerox's "bad news was out" by the third quarter of 2000. *Id.* at 356-57. These factors—his reliance on his inside perspective of the company's products and services; his statement that he believed in the company irrespective of any alleged accounting problems or fraud; and his understanding of the company's disclosures— make him anything but a typical claimant.

Finally, Linda Willis could not say that she relied on any alleged misrepresentation during the class period. Indeed, she admitted that she either did not rely, or could not remember relying, on a single alleged misstatement in making her investment decisions. *See* Willis Dep. Tr. at 210-11.[20] She also admitted that certain statements alleged in the Complaint—specifically, that Defendants Allaire and Romeril told employees that the company was doing well, and that the employees should "invest in the Company," Third Consolidated Am. Compl. ¶ 134—were not even made during the class period. Willis Dep. Tr. at 151-53, 157. Finally, like Mr. Patti, Ms. Willis actually stopped investing in the Xerox Stock Fund at the very same time that the Complaint alleges employees were encouraged to continue to do so. *See id.* at 257 (agreeing that she "did the opposite of what [the Defendants allegedly] said").

In short, the proposed representatives' disclosure claims are not typical of the class that they seek to represent. Their statements and actions are directly contrary to the class's theory of recovery, and at the very least, they face considerable difficulty in establishing detrimental

---

[20] The Willis Dep. Tr. excerpts are attached hereto as Attachment 5 to the Margulies Declaration.

reliance—assuming such an individualized issue could ever even be proved on a classwide basis. There is no typicality, or commonality, between the proposed class representatives and the purported class in connection with Count III, the disclosure claim.

> **(ii)    The proposed representatives' disclosure and prudence claims also are subject to the ERISA § 404(c) defense based on the unique control that they exercised over their investments.**

The proposed representatives' disclosure and prudence claims are also subject to unique defenses based on the control that they exercised over their investments. Section 404(c) of ERISA establishes an affirmative defense "which exempts fiduciaries from liability for losses caused by participants' exercise of control over assets in their individual accounts." *LaRue*, 128 S. Ct. at 1025; *see* 29 U.S.C. § 1104(c)(1)(A)(ii) (providing that fiduciaries are not liable for "any loss" which "results from" the participant's "exercise of control" over his or her individual account). Because ERISA § 404(c) "contemplates an individual, transactional defense in these situations," *Langbecker*, 476 F.3d at 312, and because the proposed representatives' losses are likely to be reduced, if not eliminated, based on this defense, their claims are not typical of the class that they seek to represent.

Each of the proposed representatives acknowledged that as Plan participants, they exercised control over their investment decisions under the terms of the Plans. Patti Dep. Tr. At 68-69, 99; Wright Dep. Tr. at 154-55; Alliet Dep. Tr. at 199; Willis Dep. Tr. at 89. Moreover, each of the proposed representatives held on to declining units of Xerox stock, even after the company began to disclose negative information. *See* Attachment 12 to the Margulies Decl. (summary of trading activity); *see also* Patti Dep. Tr. at 281 (continuing to invest in Xerox stock despite negative results for five straight quarters); Alliet Dep. Tr. at 357 (despite losses and disclosures, continuing to maintain an investment in the fund). Finally, several of the proposed

representatives acknowledged that factors other than the Defendants' alleged conduct, including the participants' control over their individual accounts, may have contributed to losses to those accounts. Patti Dep. Tr. at 69 (admitting that he was responsible "to an extent" for "not getting out [of the Xerox Stock Fund] sooner"); Alliet Dep. Tr. at 63-65, 322 (admitting that a variety of causes may have contributed to the decline of Xerox stock).

Anticipating the obvious impediment that ERISA § 404(c) poses to certification, Plaintiffs assert three arguments: (1) that the Court is not permitted to consider affirmative defenses at the class-certification stage, *see* Pls. Mem. at 22 & n.16; (2) that the ERISA § 404(c) defense does not apply to Plaintiffs' prudence claim, *id.* at 22-23; and (3) that the Defendants do not qualify for the defense, *id.* at 23-24. None of these arguments has merit.

This Court has previously rejected the first argument—that "consideration of affirmative defenses is outside the court's inquiry under Rule 23," *Walker*, 214 F.R.D. at 64—because the Second Circuit has held that "'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,'" *id.* (quoting *Baffa*, 222 F.3d at 59). Not surprisingly, Plaintiffs do not cite a single case decided within the Second Circuit that holds that consideration of an affirmative defense is inappropriate under Rule 23. *See* Pls.' Mem. at 22 n.16. Indeed, the plain text of Rule 23 *requires* this Court to consider whether "the claims or *defenses* of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3) (emphasis added).

Plaintiffs' second argument—that the § 404(c) defense somehow does not apply to prudence claims, Pls.' Mem. at 22-23—is equally unavailing. The Fifth Circuit considered and rejected the very same argument by the *Langbecker* plaintiffs. *See* 476 F.3d at 310-12. There, as here, the plaintiffs relied on an interpretation of ERISA § 404(c) advanced by the Department of

Labor ("DOL") that the defense is inapplicable where the fiduciaries chose to include in a 401(k)

plan an imprudent investment option.  *See id.* at 310.  The Fifth Circuit rejected this

interpretation as "not reasonable," because "it contradicts the governing statutory language" of

§ 404(c), which applies "notwithstanding some . . . fiduciary duty breach."  *Id.* at 311.  In other

words, "[t]he DOL['s interpretation] would render the § 404(c) defense applicable only where

plan managers breached no fiduciary duty, and thus only where it is unnecessary."  *Id.*; *accord*

*Hecker v. Deere & Co.*, No. 06-C-719-S, 2007 WL 3270401, at *5 (W.D. Wis. Oct. 19, 2007).

Plaintiffs' third argument is that in any event the ERISA § 404(c) defense does not apply

here because Xerox's financial statements did not include "complete and accurate information,"

and they contend this is a requisite to assertion of the defense.  Pls.' Mem. at 23-24.  More

specifically, Plaintiffs contend that the DOL regulations that interpret the § 404(c) defense

require that for the defense to apply a participant must maintain "control" over his or her

individual account, and that "control" includes a requirement that an employer provide

"complete and accurate information."  *Id.* at 23.  Presumably this includes complete and accurate

information about the financial condition of any company whose stock is offered by the plan.  *Id.*

The DOL regulations, however, include no such requirement.  *See* 29 C.F.R.

§ 2550.404c-1.  In fact, the words "complete and accurate information" do not even appear in the

regulations.  *See id.*  Instead, those regulations simply require that a designated fiduciary provide

"a general description of the investment objectives and risk and return characteristics of each

[investment] alternative" offered by the plan.  *Id.* § 2550.404c-1(b)(2)(i)(B)(ii).  As such, the

regulations provide no support for the contention that a fiduciary must provide, on behalf of each

company whose stock is offered as an investment alternative, "complete and accurate

information" about that company's financial condition—a requirement that would render a plan

fiduciary a guarantor of the accuracy of the underlying financial statements for every investment offered by the plan. *Cf. Langbecker*, 476 F.3d at 312 ("in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants"); *see also* 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(ii) (explaining that a fiduciary is required to provide participants with "prospectuses, financial statements and reports, and of any other materials relating to the investment alternatives available under the plan," *but only* "to the extent such information is provided to the plan").[21]

Nor does *In re Unisys Savings Plan Litigation*, 74 F.3d 420 (3d Cir. 1996), support the Plaintiffs' argument.  Contrary to Plaintiffs' claim, the Third Circuit in that case explained that fiduciaries have an affirmative duty under ERISA § 404(a) to provide complete and accurate information "about the nature of and risks associated with" each investment alternative. *Id.* at 443.  The court stressed that this affirmative duty did *not* include an obligation "to give investment advice, to opine on [an investment alternative's] financial condition or to predict [an investment alternative's] eventual demise." *Id.*  Moreover, this affirmative duty simply operates "in the first instance," before the application of the defense under § 404(c). *Id.* at 441.  The Third Circuit expressly held that a fiduciary "who is shown to have committed a breach of duty"

---

[21] To the extent that Plaintiffs might argue that a separate subsection of the regulations, 29 C.F.R. § 2550.404c-1(c)(2)(ii), requires fiduciaries to provide for each company whose stock is offered as an investment alternative, "complete and accurate information" about that company's financial condition, they are mistaken. Subsection (c)(2)(ii) requires plan fiduciaries to disclose "material non-public information about [an] *investment*," but only *if they are aware of this material non-public information*, and only if doing so would not "violate any provision of federal law or any provision of state law which is not preempted by the Act." 29 C.F.R. § 2550.404c-1(c)(2)(ii) (emphasis added).  This subsection certainly does not make the fiduciaries guarantors for every investment offered by the Plans or require the disclosure of all non-public information about the *finances* of a company.  Indeed, here the Defendants provided complete information about the risks of an *investment* in Xerox stock, as Plaintiffs have conceded.  *See infra* note 22.

may still "not be held liable [if] the alleged loss resulted from the participant's exercise of control." *Id.* at 445.[22]

In any event, even if *Unisys* were consistent with Plaintiffs' argument, such a rule would "render the § 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary." *Langbecker*, 476 F.3d at 311. As the Fifth Circuit explained, such an interpretation is "not reasonable," because "it contradicts the governing statutory language" of § 404(c), which applies "notwithstanding some . . . fiduciary duty breach." *Id.*

Finally, Defendants anticipate that in their forthcoming reply Plaintiffs will trot out another argument as to why the ERISA § 404(c) defense does not apply: the Plans did not pass through to participants voting rights as to shares held in the Xerox Stock Fund. But application of ERISA § 404(c) in this case does not turn on whether the Plans passed Xerox stock voting rights to participants. DOL Regulations provide that the immunity provided to fiduciaries under ERISA § 404(c) "does not apply with respect to *any instruction*" that a fiduciary receives to acquire or sell employer stock unless "voting . . . and similar rights with respect to such securities are passed through to participants." 29 C.F.R. § 2550.404c-1(d)(2)(ii)(E)(4)(vi) (emphasis added). But under the terms of the Plans, instructions respecting the acquisition or

---

[22] In *Unisys*, the defendants contended that the participants exercised "control" over their individual accounts, in part, because the defendants provided complete and accurate information about the nature of and risks associated with the investment alternative at issue. *See* 74 F.3d at 447. Because the defendants' theory of control turned on the availability of such information, the court explained that the defense would not be available if the defendants were found not to have provided such information. *Id.* at 445 n.22, 447. In the present case, however, Plaintiffs cannot prevail on any claim that the fiduciaries failed to provide complete and accurate information regarding "the nature of and risks associated with" the Xerox Stock Fund. Indeed, each of the proposed representatives admitted that the defendants provided this type of information to them. Patti Dep. Tr. at 205 (admitting that the Plan disclosed the "special risks that are associated with investing [the] Xerox stock fund"); Wright Dep. Tr. at 179 (admitting that plan documents described the Xerox Stock Fund as "the riskiest investment option offered to 401(k) participants"); Alliet Dep. Tr. at 233 (agreeing that, throughout the class period, the company disclosed that the Xerox Stock Fund "was not diversified and involved special risks"); Willis Dep. Tr. at 58-60 (admitting that the plan documents discussed the "risks involved in investing in" the Fund).

-26-

sale of units in the Xerox Stock Fund were directed to the Plan's trustee, not to any Defendant. *See* 1998 Salaried Plan § 5.02, at 17 (XC 000130) (Margulies Decl., Attachment 6).  There is no allegation in the Third Consolidated Amended Complaint that any of the Defendants received or implemented any instruction to acquire Xerox stock.  Since the Defendants here did not receive instructions relating to purchases or sales of Xerox stock, as long as Plan participants otherwise "exercise[d] control over the assets in his [or her] account," then the Defendants may not be "liable . . . for any loss . . . which results from such participant's . . . exercise of control."  ERISA § 404(c)(1)(A)(ii).

Moreover, even if the DOL Regulations' requirement of a pass through of voting rights could be read to apply to fiduciaries who do not receive instructions (and therefore condition application of § 404(c) as to such fiduciaries upon compliance with a pass through requirement), such a reading is impermissible.  The statute does not predicate the defense on a pass through of voting rights; rather, it applies whenever a participant "exercise[s] control over the *assets* in his account."  ERISA § 404(c)(1)(A) (codified at 29 U.S.C. § 1104(c)(1)(A)) (emphasis added).  As the Sixth Circuit has explained, "the right to vote . . . does not . . . constitute a plan asset." *Grindstaff v. Green*, 133 F.3d 416, 425 (6th Cir. 1998).  Furthermore, the § 404(c) defense exempts fiduciaries for "any loss . . . *which results from* [a] participant's control" over the assets in his account.  ERISA § 404(c)(1)(A)(ii) (codified at 29 U.S.C. § 1104(c)(1)(A)(ii)) (emphasis added); *see also LaRue*, 128 S. Ct. at 1026 (the defense "exempts fiduciaries from liability for losses *caused by* participants' exercise of control over assets in their individual accounts") (emphasis added).  Even if the right to vote somehow constituted a "plan asset," *but see Grindstaff*, 133 F.3d at 425, it cannot reasonably be said that losses to an individual account were "caused by" or "resulted from" a participant's inability to vote, and Plaintiffs here do not assert

that the alleged losses were related to how Xerox stock was voted.  Accordingly, assuming that

the DOL's Regulations attempt to impose such a requirement, they would not constitute a

reasonable interpretation of the statute.  *Cf. Langbecker*, 476 F.3d at 311 (explaining that the

DOL's interpretation of the related provision of § 404(c) was "not reasonable").

In short, the § 404(c) defense is available in this case, and its application to the proposed

representatives' claims provides yet another basis for finding those claims atypical.

**(b)     Contrary to Plaintiffs' argument, an ERISA § 502(a)(2) claim
is not inherently typical.**

Notwithstanding the presence of individual issues, which open the proposed

representatives to a host of unique defenses, Plaintiffs argue that their claims are "necessarily"

typical of those of the class that they seek to represent, because an ERISA § 502(a)(2) action is

"representative in nature."  Pls.' Mem. at 21-22.  In their view, a § 502(a)(2) claim cannot be

atypical, because that claim must be brought in a representational capacity on behalf of the plan

as a whole, not on behalf of any single individual.  *See id.*

Plaintiffs' argument is belied by the Supreme Court's recent decision in *LaRue*, which

clarified that, in cases like this one, an individual may bring an ERISA § 502(a)(2) action to

recover "for fiduciary breaches that impair[ed] the value of plan assets in [that] participant's

individual account."  *Id.*  ERISA requires that a § 502(a)(2) claim be nominally "on behalf of the

plan."  *See* 29 U.S.C. §§ 1132(a)(2), 1109(a).  *LaRue* held that an individual's recovery for his or

her own 401(k) plan account complies with this requirement because the funds in an individual's

401(k) plan account (and any recovery for such account) are considered to be part of the assets of

the plan.  128 S. Ct. at 1024-26.  Thus, an individual may sue to recover losses only to his own

account under § 502(a)(2) regardless of whether other plan participants also suffered losses.  *Id.*

at 1026.  In recognizing that such claims may be brought by an individual participant in an EIAP,

-28-

and therefore may be a claim that is inherently individualized, the Supreme Court completely undercut Plaintiffs' claim here—and the numerous district court cases that they cite for the proposition—that a § 502(a)(2) claim by one participant "necessarily" or "inherently" is typical of another participant's claim under that section. *See id.* at 1024-26.

Indeed, *LaRue* explained that the § 404(c) defense operates on an account-by-account basis, exempting "fiduciaries from liability for losses caused by participants' exercise of control over assets in their individual accounts." *Id.* at 1025. Thus, the individualized availability of the § 404(c) defense, alone, raises questions about the proposed representatives' typicality.

> **B.    The Proposed Classes Do Not Satisfy Any Of The Criteria For Certification Under Rule 23(b).**

In addition to satisfying each of the criteria under Rule 23(a), which Plaintiffs fail to do, they must demonstrate that their claims can be maintained as a class action under at least one of the three subsections of Rule 23(b). They have moved for certification under subsections (b)(1) and (3), but not under (b)(2). *See* Pls.' Mem. at 26.

> **1.    Plaintiffs' Proposed No-Notice, No-Opt-Out Class Cannot Be Maintained Under Rule(b)(1).**

Subsection (b)(1) "authorizes the use of the class-action device when necessary to prevent possible adverse effects . . . that might result if separate actions had to be brought." 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1772, at 4 (3d ed. 2005). Because this subsection does not provide notice or opt-out protections, it "must be carefully scrutinized and sparingly utilized." 2 ALBA CONTE, NEWBERG ON CLASS ACTIONS § 4:9, at 51 (4th ed. 2002); *see also Langbecker*, 476 F.3d at 318 (explaining that less-than-strict adherence to the requirements of subsection (b)(1) can lead to serious "due process concerns").

The subsection provides two avenues for certification: the first, subsection (b)(1)(A), is concerned with possible prejudice to defendants if separate adjudications are brought, whereas

the second, subsection (b)(1)(B), is concerned with possible prejudice to absent class members. Neither is available here.

(a)    **Separate adjudications would not prejudice absent class members within the meaning of Rule 23(b)(1)(B).**

It is "settled" that a class cannot be certified under Rule 23(b)(1)(B) "simply because an opinion in one suit might be cited as precedent in another."  2 NEWBERG ON CLASS ACTIONS, *supra*, § 4:10, at 52-53; *accord* 7AA FEDERAL PRACTICE AND PROCEDURE, *supra*, § 1774, at 25-27 ("the party seeking class certification must allege more than that an individual adjudication may be given stare-decisis effect in other lawsuits"); 5 MOORE'S FEDERAL PRACTICE § 23.42[3][b] (3d ed. 2008) (possible stare decisis effect insufficient to certify under (b)(1)(B); a contrary rule would guarantee certification in virtually every case).  Rather, the movant must demonstrate that "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).

Subsection (b)(1)(B) is typically applied in limited fund cases, "aggregating claims . . . made by numerous persons against a fund insufficient to satisfy all claims."  *Id.* (internal quotation marks omitted).  There is, however, no such allegation of limited defendant resources here.  Instead, Plaintiffs seek to apply subsection (b)(1)(B) in a situation for which it is not designed—a no-notice, no-opt-out action for monetary damages.  For at least two reasons, certification cannot be maintained under this subsection.

*First*, because a participant can clearly bring an action for losses to his individual investment account, *LaRue*, 128 S. Ct. at 1026, there is no risk that an action for damages by one participant would have a preclusive effect on other participants.  Indeed, prior to *LaRue*, this misplaced fear was often cited as the exclusive basis for certifying an ERISA breach of fiduciary

-30-

duty claim.  *See, e.g.*, *Ikon*, 191 F.R.D. at 466 ("given the nature of an ERISA claim which

authorizes plan-wide relief, there is a risk that failure to certify the class would leave future

plaintiffs without relief"); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140

F.R.D. 474, 478 (S.D. Ga. 1991) ("Because a plan participant . . . may bring an action to remedy

breaches of fiduciary duty only in a representative capacity, such an action affects all participants

and beneficiaries, albeit indirectly."); *see also* Pls.' Mem. at 27-28 (citing both decisions).

  *Second*, courts have routinely held that certification is improper under subsection

(b)(1)(B) where liability turns on individual issues.  *E.g.*, *Bazemore v. Friday*, 478 U.S. 385,

406-07 (1986) (presence of individual issue with respect to one plaintiff means that issue "could

not be dispositive of the interests of the other members of the class") (internal quotation marks

omitted).  The reason for this rule is elemental:  "Courts deny certification in such cases because

different result in factually disparate actions can be reconciled on the basis of those differing

facts."  5 MOORE'S FEDERAL PRACTICE, *supra*, § 23.42[3][a].  In this case, there are at least two

individual issues that preclude certification under subsection (b)(1)(B): (1) the issue of

detrimental reliance, which applies to Plaintiffs' disclosure claim, *see supra* at 19-22; and (2) the

availability of the § 404(c) defense, which applies both to Plaintiffs' disclosure and prudence

claims, *see supra* at 22-23.  Plainly, separate adjudications would not prejudice absent class

members within the meaning of Rule 23(b)(1)(B).

   **(b)**   **Separate adjudications would not prejudice the Defendants**
       **within the meaning of Rule 23(b)(1)(A).**

  "The language of [subsection (b)(1)(A)] indicates that it applies only to actions in which

there is not only a risk of inconsistent adjudications but also of incompatible conduct"—that is,

"where a defendant is sued by different plaintiffs asking for different and incompatible

affirmative relief."  *Abramovitz v. Ahern*, 96 F.R.D. 208, 215 (D. Conn. 1982); *accord* 5

MOORE'S FEDERAL PRACTICE, *supra*, § 23.41[3][a] ("the Rule applies only to actions in which the nonclass party could be sued for different and incompatible affirmative relief").  For at least three reasons, that standard cannot be satisfied here.

*First*, subsection (b)(1)(A) is not available where, as here, the plaintiffs seek monetary relief.  *E.g.*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (action primarily for monetary relief did not create risk of incompatible standards).  Indeed, numerous courts have held that this subsection "requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts."  7AA FEDERAL PRACTICE AND PROCEDURE, *supra*, § 1773, at 13; *accord Zinser*, 253 F.3d at 1193; *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250 (C.D. Cal. 2006).  "Only declaratory or injunctive relief will establish standards of conduct and only incompatible declaratory judgments or injunctions will establish inconsistent standards of conduct for the party opposing the class."  5 MOORE'S FEDERAL PRACTICE, *supra*, § 23.41[6][a].  Again, as the Fifth Circuit explained about *Langbecker*, the "focus on monetary damages would set this case apart from the examples of classic Rule 23(b)(1) class actions." *Langbecker*, 476 F.3d at 318.

*Second*, courts have held that certification is proper under subsection (b)(1)(A) only where there is a risk that different plaintiffs would sue "for different and incompatible affirmative relief."  *Abramovitz*, 96 F.R.D. at 215; *accord* 5 MOORE'S FEDERAL PRACTICE, *supra*, § 24.41[3][a]; *see also Ruland v. Gen. Elec. Co.*, 94 F.R.D. 164, 165-66 (D. Conn. 1982).  That rule makes sense:  if each plaintiff brings an action seeking the exact same form of relief, there is no risk that the defendants will be subject to "incompatible standards of conduct."  FED. R. CIV.

P. 23(b)(1)(A).  In this case, there has been absolutely no showing that different plan participants

would seek different and incompatible forms of affirmative relief.

*Third*, as with subsection (b)(1)(B), courts have held that certification is improper under

subsection (b)(1)(A) where liability turns on individual issues, because different results in

factually disparate actions can be reconciled on the basis of those facts.  *E.g.*, *In re Dennis*

*Greenman Sec. Litig.*, 829 F.2d 1539, 1545 n. 8 (11th Cir. 1987); *Corley v. Entergy Corp.*, 222

F.R.D. 316, 320 (E.D. Tex. 2004), *aff'd*, 152 F. App'x 350 (5th Cir. 2005); *Spann v. AOL Time*

*Warner, Inc.*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003); *Doe v. Guardian Life Ins. Co.*, 145 F.R.D.

466, 477 (N.D. Ill. 1992).  As explained above, certification under subsection (b)(1)(A) is

precluded by individual questions related to reliance and the § 404(c) defense.  *Supra* at 19-23.

**(c)      Plaintiffs fail to offer a persuasive theory in favor of
certification under Rule 23(b)(1).**

Notwithstanding the significant impediments to (b)(1) certification outlined above,

Plaintiffs argue that their claims can be maintained under this subsection, principally because an

ERISA § 502(a)(2) action is brought in a "representative capacity."  Pls.' Mem. at 26-30.  This

tired refrain must be rejected.

Plaintiffs' entire basis for certification under subsection (b)(1)—indeed, virtually every

case that they cite—is premised on the notion that an action under ERISA § 502(a)(2) can be

brought only in a representative capacity.  *See id.*  But the Supreme Court clarified that a

participant may sue "for fiduciary breaches that impair the value of plan assets in [that]

participant's individual account."  *LaRue*, 128 S. Ct. at 1026.  Accordingly, as explained above,

there is no risk that an action for damages by one participant would have a preclusive effect on

-33-

other participants, and an action for damages does not create a risk that the defendants would be held liable for different and incompatible forms of affirmative relief.  *See supra* at 29-32.[23]

In a footnote, Plaintiffs also argue that individual issues of reliance and causation do not preclude certification under subsection (b)(1).  *See* Pls.' Mem. at 30 n.18.  Plaintiffs do not appear to dispute that reliance is an element of an ERISA disclosure claim.  *See id.*  Nor could they; the great weight of authority holds that reliance is an element of such a claim.  *Burstein*, 334 F.3d at 384; *Ince*, 173 F.3d at 676; *Robinson*, 441 F. Supp. 2d at 433; *McMunn*, 161 F. Supp. 2d at 120.  Instead, Plaintiffs argue that reliance is not an individual issue, because "the Complaint alleges Plan-wide, uniform communications regarding" the Xerox Stock Fund.  Pls.' Mem. at 30 n.18 (citing *Rankin v. Rots ("Kmart")*, 220 F.R.D. 511, 522-23 (E.D. Mich. 2004)).

This argument is contrary to the law in the Second Circuit.  As that court explained, "[P]roof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof."  *McLaughlin*, 522 F.3d at 223.  In this case, individualized proof is needed to overcome the possibility that a participant acquired units of Xerox stock for some reason other than the defendants' alleged misrepresentations, *see id.*—for example, a participant relied on his own 'inside' understanding of Xerox's products and services, or considered the stock a good deal irrespective of the company's accounting.

---

[23] Plaintiffs also rely on the Advisory Committee Notes for the apparent proposition "that certification is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries."  Pls.' Mem. at 27 (citing FED. R. CIV. P. 23(b)(1)(B) Adv. Comm. Notes 1966).  The Committee's observation makes sense when a fiduciary breach necessarily harms each beneficiary's interest in the trust—*e.g.*, in a case involving the solvency of a defined benefit form of pension plan, where plan assets are not segregated and each plan participant has a beneficial interest in every plan asset.  *See LaRue*, 128 S. Ct. at 1025.  But it makes no sense in this case, involving alleged losses to assets allocated to separate individual accounts, which were not necessarily affected in the same way, if at all, by the Defendants' alleged conduct.

Moreover, Plaintiffs do not even contend that they are entitled to a presumption of reliance.  Nor could they; courts have held that the presumption is not available in an ERISA stock-drop case, because members of a proposed class who invested in their own company's stock hold "innumerable different positions at [the company] giving them access to vastly different information about [the company] and eliminating any potential generalizations that could be made as to their knowledge of other information about [the company]'s financial position."  *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004), *vacated on other grounds sub nom.*, *Langbecker*, 476 F.3d at 299; *see also Stanford v. Foamex L.P.*, No. 07-cv-4225, 2008 WL 3874823, at *11 (E.D. Pa. Aug. 20, 2008).  In any event, "the Plaintiffs' own allegations . . . demonstrate that an efficient market cannot be established in this case," *IPO*, 471 F.3d at 42, because the defendants made representations that were not disclosed to the market as a whole, *see* Third Consolidated Am. Compl. ¶ 141 ("These representations were made in the context of a company that had told its employees that, contrary to the public's understanding of the Company, Xerox's performance was much stronger than what was being portrayed in the market; that the Company was expecting doubt digit growth; that other employees, and specifically management, were continuing to invest in Xerox stock; and that the Company overall was healthy.").

At bottom, Plaintiffs' proposed (b)(1) classes would deprive thousands of participants of "notice and opt-out protections, where there are undeniable intraclass conflicts pertinent to significant monetary outcomes."  *Langbecker*, 476 F.3d at 318.  Certification under this subsection is therefore wholly inappropriate and would raise serious due process concerns.  *Id.*

      2.      **The Proposed Class Cannot Satisfy Rule 23(b)(3)'s Predominance And Superiority Requirements.**

In the alternative, Plaintiffs make a halfhearted argument for certification under subsection (b)(3).  *See* Pls.'s Mem. at 30-31.  "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:  Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*, 521 U.S. at 615 (quoting FED. R. CIV. P. 23(b)(3)); *accord McLaughlin*, 522 F.3d at 222.  These two requirements—predominance and superiority—cannot be met here.

      (a)      **A host of individual issues will predominate over common questions.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  This inquiry is "far more demanding" than the commonality inquiry under Rule 23(a).  *See id.* at 624.  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

For at least three reasons, individual issues will overwhelm any issues that could be resolved through generalized proof:

*First*, as noted above, there are individualized questions related to the application of the § 404(c) defense, *see supra* at 22-23, which preclude certification of the disclosure and prudence claims.  As both the Supreme Court and the Fifth Circuit have emphasized, "Section 404(c) contemplates an *individual*, transactional defense," *Langbecker*, 476 F.3d at 312 (emphasis

added), "exempt[ing] fiduciaries from liability for losses caused by participants' exercise of control over assets in their *individual accounts*," *LaRue*, 128 S. Ct. at 1025 (emphasis added).

This individualized inquiry renders class treatment wholly inappropriate under subsection (b)(3). The defendants' liability would turn on whether each class member's losses were in any way caused by that participant's exercise of control over the assets in his or her account. *See* ERISA § 404(c)(1)(A)(ii) (codified at 29 U.S.C. § 1104(c)(1)(A)(ii)) (explaining that "no person who is otherwise a fiduciary shall be liable . . . for *any loss* . . . which results from [a] participant's or beneficiary's exercise of control") (emphasis added). Individual findings would have to be made with respect to thousands of members, destroying any efficiencies that might be achieved through classwide treatment. *See Elec. Data Sys.*, 224 F.R.D. at 630 ("Defendants' ERISA section 404(c) defense will raise individualized issues that predominate over common issues."), *vacated on other grounds sub nom.*, *Langbecker*, 476 F.3d at 299.

*Second*, also as noted above, there are individual questions related to reliance, *see supra* at 19-22, which likewise preclude certification of the disclosure claim. Indeed, the Second Circuit has repeatedly held that individual issues of reliance defeat predominance. *E.g.*, *McLaughlin*, 522 F.3d at 223 (reliance "cannot be the subject of general proof"); *IPO*, 471 F.3d at 42 ("The predominance requirement fails initially with respect to the issue of reliance."); *Elec. Data Sys.*, 224 F.R.D. at 630 (individual issues of reliance precluded certification of plaintiffs' ERISA misrepresentation claim), *vacated on other grounds sub nom.*, *Langbecker*, 476 F.3d at 299; *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003) (same).

*Finally*, there are individual issues related to the allocation of damages, if any, among the members' individual accounts. Regardless of whether the members may recover for the losses to their individual accounts or only a pro-rata share of the losses of the Plan in which they were

participants, ultimately damages would have to be allocated to individual accounts, discounting for any losses attributable to each member's exercise of control over the assets in his or her account, *see* ERISA § 404(c), and further discounting based on any recovery that each member may have received from the settlement of the securities fraud class action, and any distribution from the SEC's Fair Fund.  Moreover, any recovery would have to exclude the alleged damages incurred by each purported class member who may have granted Xerox a waiver or release of ERISA claims in the context of severance agreements or the settlement of any employment termination or other claim against Xerox.  These individual issues likewise preclude certification under subsection (b)(3).  *McLaughlin*, 522 F.3d at 231-32 (noting that although class may be certified despite individualized damages issues, courts should still consider damages issues when conducting predominance inquiry, and finding that individualized damages issues weighed against predominance finding in that case).

### (b)    Classwide treatment is not superior to individual actions.

The superiority inquiry tests whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).  Among the considerations that the Court must give under the rubric of superiority are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."  *Id.*  The application of those factors here— particularly the consideration whether purported class members' interests are better served by individual control over litigation—leads to one inevitable conclusion:  that the class device is not superior to individual litigation.

As an initial matter, this case is not even remotely manageable as a class action. In addition to the presence of multiple, individual questions, which would require thousands of hearings to determine both liability and damages, hundreds of subclasses would be needed to adequately represent the numerous divergent interests outlined above. *See supra* at 12-17. Any benefit that could possibly arise from classwide adjudication would be quickly subverted by the need for these subclasses, each of which would require independent representation. It cannot be said that a proceeding involving hundreds of representatives, represented in turn by thousands of lawyers, is superior to individual adjudication.

Moreover, as the Advisory Committee explains, "An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof." FED. R. CIV. P. 23(c)(1) Adv. Comm. Notes 2003; *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) ("In considering the superiority requirement, a district court must . . . consider 'how a trial on the alleged causes of action would be tried."). Plaintiffs have offered no such plan here.

Finally, courts have deemed the availability of attorney's fees a significant factor weighing against superiority. *See, e.g.*, *Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 328 (4th Cir. 2006). The availability of such fees here, *see* ERISA § 502(g) (codified at 29 U.S.C. § 1132(g)), which Congress deemed sufficient to encourage individual litigation, even in cases where the ultimate recovery is quite small, mitigates against any concern that those participants who actually lost money would not be able to bring meritorious individual actions. Here, each individual Plan participant would be free to sue for losses to his or her own account, and would be able to retain counsel who is entitled to fees for such litigation. That right would be sacrificed if this suit were brought on a class-wide basis by representatives whose own interests are in

conflict with many participants, and whose counsel will undoubtedly seek to recover fees far in excess of their lodestar. *See supra* at 15-16 (explaining that as many as 20,000 participants would be impaired an average of over $8,000 each if this action proceeded as a class action).

## II. BECAUSE THE MONITORING CLAIM IS DERIVATIVE, AND BECAUSE THE PRIMARY CLAIMS ARE NOT SUSCEPTIBLE TO CLASSWIDE TREATMENT, THE MONITORING CLAIM ALSO SHOULD NOT BE CERTIFIED.

Plaintiffs' monitoring claim is derivative of their primary claims for alleged misrepresentations and imprudence. *Edgar v. Avaya, Inc.*, No. Civ.A. 05-3598, 2006 WL 1084087, at *11 (D.N.J. Apr. 25, 2006) (dismissing a duty to monitor claim because the court had already dismissed the underlying breach of fiduciary duty claims), *aff'd*, 503 F.3d 340 (3d Cir. 2007); *In re Coca-Cola Enters. ERISA Litig.*, No. 1:06-CV-0953, 2007 WL 1810211, at *11 (N.D. Ga. June 20, 2007) (same). This relationship makes sense: if the fiduciaries are not liable for any alleged breach of their duties, then the remaining defendants cannot be held liable for any failure to monitor those fiduciaries. *See Edgar*, 2006 WL 1084087, at *11 ("Because, however, the Plaintiff's Complaint fails to state a claim for breach of fiduciary duty by any of the Plans' fiduciaries, the Plaintiff's claims for failing to adequately monitor these fiduciaries must also be dismissed."); *cf. Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (affirming dismissal of derivative claim because no liability for primary claim).

Here, Plaintiffs' primary claims are not susceptible to classwide proof. Because those claims cannot be maintained on a classwide basis, it follows that Plaintiffs' derivative monitoring claim likewise cannot be maintained on a classwide basis. Accordingly, because this Court should deny certification of the prudence and disclosure claims, it should likewise deny certification of the derivative monitoring claim.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

Dated: September 5, 2008

Respectfully submitted,


/s/ Evan Miller
_____

Michael T. Hannafan (ct11859)
Blake T. Hannafan (ct24594)
HANNAFAN & HANNAFAN LTD.
One East Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone:  312-527-0055
mth@hannafanlaw.com
bth@hannafanlaw.com

*Counsel for Myra Drucker*

John A. Valentine (ct25941)
Elizabeth Canizares (phv02306)
Felipe Mendoza (phv02242)
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone:  202-663-6000
john.valentine@wilmerhale.com
elizabeth.canizares@wilmerhale.com
felipe.mendoza@wilmerhale.com

*Counsel for Defendants Paul A. Allaire,
William F. Buehler, Barry D. Romeril and
Gregory B. Tayler*

Benjamin H. Green (ct05166)
DREIER LLP
One Landmark Square, 20th Floor
Stamford, CT 06901
Telephone:  203-425-9500
bgreen@dreierllp.com

*Counsel for the Xerox Defendants*

Steven J. Sacher (ct24024)
Evan Miller (phv01958)
Shay Dvoretzky (*pro hac vice* mot. pending)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Telephone:  202-879-3939
sjsacher@jonesday.com
emiller@jonesday.com
sdvoretzky@jonesday.com

Arthur J. Margulies (phv02256)
Robert T. Smith (*pro hac vice* mot. pending)
JONES DAY
222 E. 41st Street
New York, NY  10017
Telephone:  212-326-3939
ajmargulies@jonesday.com
rtsmith@jonesday.com

*Counsel for all Defendants except Myra
Drucker, Paul Allaire, William Buehler,
Barry Romeril, Gregory Tayler*

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Rosemary Q. Barry (ct20273)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901
Telephone:  203-977-7300
tdgoldberg@daypitney.com
tjgallagher@daypitney.com
rqbarry@daypitney.com

*Co-counsel for G. Richard Thoman*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re XEROX CORPORATION ERISA LITIGATION, | ) Master File No. 02-CV-1138 (AWT) |
| | ) |
| | ) CLASS ACTION |
| This Document Relates to: ALL ACTIONS | ) |
| | ) September 5, 2008 |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, a copy of Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Class Certification was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Arthur J. Margulies
Arthur J. Margulies (phv02256)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Tel: (212) 326-3939
Fax: (212) 755-7306
ajmargulies@jonesday.com

NYI-4118425