Attachment 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| **IN RE XEROX CORPORATION ERISA LITIGATION** | ) Master File No. 02-CV-1138 (AWT) |

## REPORT OF DAVID J. ROSS

### I.    QUALIFICATIONS

1.    I am Senior Vice President of Compass Lexecon, a consulting firm that specializes in the application of economics to a variety of legal and regulatory issues. Among the staff and professional affiliates of Compass Lexecon are several prominent academics and a group of full time economists, accountants, computer programmers, and research assistants.  At Compass Lexecon, I have specialized in the areas of financial economics and the economics of corporate law.  I have worked on hundreds of matters involving a wide variety of financial issues.

2.    I have published a number of articles including articles which, among other things, discuss the economic analysis of imprudence claims, securities fraud claims and class conflicts in securities class actions.  My curriculum vitae, which contains a list of my publications and other professional activities, is attached as Exhibit A.

3.    I received a B.A. in economics from the University of Chicago in 1983.  In 1985, I received an M.B.A. from the Graduate School of Business at the

University of Chicago, having completed the specialization requirements in economics, finance and industrial relations.

       4.      I have testified as an expert witness regarding a wide variety of financial issues in proceedings throughout the United States, including testimony as an expert witness in cases involving class certification disputes, claims of imprudent investments and inadequate disclosure.  My prior testimony is also shown on Exhibit A.

## II.    INTRODUCTION AND SUMMARY OF CONCLUSIONS

       5.      Plaintiffs David Alliet ("Alliet") and Linda Willis ("Willis") participated in the Xerox Corporation Profit Sharing and Savings Plan (the "Salaried Plan").  Third Consolidated Amended Complaint ("TCAC"), ¶¶ 2-3; Plaintiffs' Memorandum in Support of Motion for Class Certification, July 1, 2008 ("Plaintiffs' Memo"), at 7.[1]  Plaintiffs Thomas Patti ("Patti") and Cheryl Wright ("Wright") participated in the Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union Plan").  TCAC, ¶¶ 2 & 6; Plaintiffs' Memo, at 7.

       6.      Both the Salaried Plan and the Union Plan (collectively, the "Plans") were eligible individual account plans sponsored by Xerox Corporation ("Xerox" or the "Company") in which participants directed the investment of their Plan accounts to various investment options available in the Plans.  TCAC, ¶¶ 31-33.  Most of these options were diversified funds.  Id.  However, the Plans also included the Xerox Stock Fund as an investment option.  Id.  The Xerox Stock Fund invested only in Xerox

---

1.  The TCAC also names William Saba as a Plaintiff, but I understand that recent health issues preclude him from seeking appointment as a class representative.  Plaintiffs' Memo, note 6.

common stock ("Company Stock"), and also held a small amount of cash for administrative purposes.  Id.

       7.     Plaintiffs allege that the Company's financial results were manipulated using a variety of improper accounting techniques from 1997 through 2001. TCAC, ¶ 48.  Plaintiffs further allege that the Company's stock traded at inflated prices due to these accounting improprieties.  Id., ¶ 54.  Plaintiffs further allege that the "bad news" was revealed in "a long string of disclosures" over a two year period beginning on June 16, 2000.  Id., ¶ 87.  On April 1, 2002, Xerox announced that, while neither admitting nor denying wrongdoing, it had reached an agreement with the SEC pursuant to which it would pay a $10 million fine and restate its previously announced financial results for the period from 1997 to 2001.  Id., ¶ 110.  On June 28, 2002, Xerox announced that it had completed the restatement.  Id., ¶ 111.

       8.     Plaintiffs allege that "Defendants breached fiduciary duties by failing to prudently invest the Plan's assets."  TCAC, ¶ 149.  In particular, Plaintiffs allege that "[b]ecause Defendants knew or should have know about the Company's irregular and potentially unlawful accounting practices, and the consequent artificial inflation of Xerox stock, Defendants should have acted to ensure that [the Plans] were protected against loss incurred as a result of investment in Xerox stock."  Id., ¶ 120. According to Plaintiffs, if Defendants had faithfully discharged their duty to monitor the prudence of investment in Xerox stock, they would have:

> (1) moved expeditiously to disinvest the Plan and the UNITE Plan from Xerox stock; (ii) eliminated the Xerox Stock Fund as a Plan and UNITE Plan investment alternative; and/or (iii) informed the relevant persons of the true state of affairs and taken other ameliorative measures.

Id., ¶ 119.  I refer to these allegations generally as the "Inflation Claim."

- 3 -

9.     Plaintiffs have asked the Court to certify the following classes:

All persons who were participants in or beneficiaries of the
Salaried Plan, excluding the Defendants, at any time between May
12, 1997 and June 28, 2002 (the "Proposed Class Period"), and
who made or maintained investments in the Xerox Stock Fund (the
"Proposed Salaried Plan Class"); and

All persons who were participants in or beneficiaries of the Union
Plan, excluding the Defendants, at any time between May 12, 1997
and June 28, 2002, and who made or maintained investments in the
Xerox Stock Fund (the "the Proposed Union Plan Class").

Plaintiffs' Motion for Class Certification, July 1, 2008.  Plaintiffs seek an award requiring

the Defendants to make the Plans whole for the losses incurred as a result of the alleged

violations of ERISA.  TCAC, at 80.  Plaintiffs allege that their claims are typical of the

claims of other members of the Proposed Salaried Plan Class and the Proposed Union

Plan Class (collectively, the "Proposed Classes").  Plaintiffs' Memo, at 20.  Plaintiffs also

allege that they do not have "any interest that is antagonistic to the claims of the Plans or

the Class" and that their interests are "fully aligned with the interests of other

participants."  Id., at 25.

10.     I have been asked by counsel for the Defendants to analyze the

economic evidence as it relates to Plaintiffs' claims regarding the interests of the

Proposed Classes in light of the allegations of the TCAC and the transactions in the

Xerox Stock Fund made by Plaintiffs, other participants and the Plans.[2]  In performing

this work, I have received assistance from members of Compass Lexecon's professional

---

2.  We were provided with computer readable data concerning participants' holdings and
transactions in the Xerox Stock Fund during the period from December 31, 1997 to
June 28, 2002 (the "Relevant Period").  I understand that data for the period prior to
December 31, 1997 is not available.  Accordingly, my analysis is based on data for
the Relevant Period.

staff.[3]  Exhibit B identifies the materials that we have reviewed in connection with the preparation of this report.  As a result of this analysis, I have concluded that members of the Proposed Classes have conflicting interests concerning the Inflation Claim, and that these conflicts could have substantial adverse financial consequences on many members of the Proposed Classes.  I elaborate upon and provide the bases for these conclusions below.

### III.    MEMBERS OF THE PROPOSED CLASSES HAVE CONFLICTING INTERESTS REGARDING THE INFLATION CLAIM

11.    As explained above, the Xerox Stock Fund held Xerox common stock, along with a small amount of cash necessary for administrative purposes.  Exhibit C reports the price of Xerox common stock and the unit price of the Xerox Stock Fund on each trading day of the Relevant Period.  Not surprisingly, changes in the stock price and the unit price are highly correlated.

12.    As described above, Plaintiffs allege that the price of Company Stock was inflated during the Relevant Period as a result of misrepresentations concerning the Company's financial results.  If the price of Company Stock was artificially inflated as Plaintiffs allege, then participants in the Plan who purchased or acquired units of the Xerox Stock Fund while the price of Company Stock was inflated were injured because they paid "too much" for the units they acquired.  However, participants in the Plans who <u>sold</u> units of the Xerox Stock Fund when the price of Company Stock was artificially inflated <u>benefited</u> from the alleged breach of duties because they received "too much" for their units when they sold.

---

3.  Compass Lexecon bills for professional services at hourly rates.  My hourly rate is $675.

13.     Therefore, the overall impact of the alleged breach of ERISA fiduciary disclosure duties on any member of the Proposed Classes depends on his or her transactions in the Xerox Stock Fund during the relevant period, and the extent to which the price of Company Stock was artificially inflated when those transactions occurred. The differences in the overall impact of the alleged disclosure defects on different participants can lead to conflicts between members of the Proposed Classes concerning whether there was a breach of fiduciary duties during the Proposed Class Period and, if so, when that breach occurred.

14.     In order to ascertain whether such conflicts exist here, we analyzed the transactions in the Xerox Stock Fund made by the Plaintiffs, other participants, and the Plans.  These data show that in order to maximize their individual recoveries in this litigation, participants would want to pursue different legal theories concerning when a breach occurred.  Therefore, these data contradict Plaintiffs' assertion that their claims are typical of the claims of the members of the Proposed Classes and establishes that there are conflicts between members of the Proposed Classes.  I describe these analyses and the relevant data in the remainder of this section.

15.     Exhibit D divides the Plaintiffs and other participants in the Plans during the Relevant Period into four mutually exclusive subgroups relevant to the Inflation Claim.  Group 1 consists of any persons who sold units of the Xerox Stock Fund but did not acquire units of the Xerox Stock Fund during the Relevant Period. Group 2 consists of any persons who acquired units of the Xerox Stock Fund but did not sell any units of the Xerox Stock Fund during the Relevant Period. Group 3 consists of any persons who did not buy or sell units of the Xerox Stock Fund during the Relevant

Period.  Group 4 consists of any person who acquired and sold units of the Xerox Stock Fund during the Relevant Period.

16.    Participants in Group 1 necessarily <u>benefited</u> from the alleged breach of disclosure obligations because they sold units at allegedly artificially inflated prices, but did not acquire any units at allegedly artificially inflated prices.  Therefore, such participants do not have any interest in pursuing the Inflation Claim because they cannot recover damages under this theory.  The data show that 1,606 participants in the Salaried Plan and 132 participants in the Union Plan are in Group 1.

17.    Participants in Group 2 necessarily were adversely affected by any inflation of the Company's stock price because they bought units at allegedly artificially inflated prices but did not sell any units at allegedly artificially inflated prices.  Therefore, they would have an interest in pursuing the Inflation Claim during the period in which their purchases occurred. The data show that 11,758 participants in the Salaried Plan and 590 participants in the Union Plan are in Group 2.

18.    Participants in Group 3 were not affected by any alleged inflation of Company's stock price because they did not transact during the Relevant Period. Therefore, they have no interest in pursuing the Inflation Claim because they cannot recover damages under this theory.  The data show that 1,215 participants in the Salaried Plan and 52 participants in the Union Plan are in Group 3.

19.    Participants in Group 4 acquired and sold units during the Relevant Period and, as a result, may have conflicting interests concerning when additional disclosures should have been made.  For example, participants whose sales generally preceded their acquisitions would maximize their potential recovery by establishing that the alleged breach of duty did not occur until some date <u>subsequent</u> to their sales (but

prior to their purchases).  If the alleged breach of duty occurred <u>prior</u> to such a participant's sales, then the participant benefited from sales at artificially inflated prices, and this benefit would offset to some extent any losses he incurred as a result of his subsequent purchases at allegedly inflated prices, reducing his potential recovery under the Inflation Claim.  However, if the alleged breach of duty occurred <u>after</u> his sales (but prior to his purchases), then there would be no offset (since he would have received no benefit from sales at artificially inflated prices).  The Plaintiffs and most of the participants in each of the Plans are in Group 4, which contains 23,166 participants in the Salaried Plan and 2,443 participants in the Union Plan.

        20.      We refer to the potential breach date that maximizes a participant's potential recovery under the Inflation Claim as his or her "Optimal Breach Date" or "OBD."[4]  Among other things, the Optimal Breach Date for persons in Group 4 may depend upon whether participants in the Plans are entitled to seek recovery of their own losses (the "Individual Recovery Scenario"), or whether the participants are entitled only to seek a recovery on behalf of each of the Plans (i.e., a recovery based on each Plan's trading, rather than an individual's trading in his or her account)(the "Plan Recovery Scenario").  In the Plan Recovery Scenario, a Plan's recovery would be distributed to its participants based on each participant's share of the aggregate losses of all participants in the Plan.  Accordingly, we have analyzed the Optimal Breach Dates of all members of the Proposed Classes in each of these two scenarios.

---

4. Whenever there are multiple, consecutive dates that would qualify as an optimal breach date, we adopt the convention of referring to the first date in such a period as the Optimal Breach Date.

A.     **The Individual Recovery Scenario**

      21.     In the Individual Recovery Scenario, the Optimal Breach Date for any participant will depend on his or her transactions in the Xerox Stock Fund, and may also depend on the amount the unit price was inflated when the transactions occurred.  To explain why the derivation of the Optimal Breach Date can vary across participants, we use Plaintiff Thomas Patti as an illustrative example.  Exhibit E lists Patti's transactions and holdings during the Relevant Period.  The exhibit shows that Patti sold 462.56 units of the Xerox Stock Fund from the beginning of the Relevant Period until March 26, 1999, reducing his holdings to zero.  Because Patti sold and did not purchase units during this period, he necessarily benefited from any artificial inflation.  Therefore, Patti would not want to assert that a breach of duty occurred until after March 26, 1999.

      22.     In order to analyze the extent to which the Optimal Breach Date varies across participants, we assumed that the "true value" of Xerox Stock Fund units was $2.0933 on all dates during the Proposed Class Period after any potential breach date (the "Inflation Assumption") because this was the unit price the day after the end of the Proposed Class Period.[5]  Exhibit F depicts Plaintiff Patti's gain/loss from his transactions

---

5.  By definition, the amount of "artificial inflation" is the difference between the actual unit price and the assumed "true value" of the units.  The Inflation Assumption is for illustrative purposes only -- I have not formed any opinion to date concerning whether the price of Company Stock was inflated by any amount at any time during the Proposed Class Period.  We also considered an alternative assumption that the "inflation" of Xerox Stock Fund units at the beginning of the Class Period was equal to the amount, if any, by which the unit price declined on the first trading day following each of the alleged corrective disclosures described in TCAC, ¶¶ 87-114 (the "Alternative Inflation Assumption").  Our analysis of the Alternative Inflation Assumption produced similar findings to those described in the text.  Therefore, my conclusions concerning conflicts do not depend on any particular inflation assumption.

in the Xerox Stock Fund under the Inflation Assumption.  The exhibit shows that Patti had gains of $5,519.87 prior to March 26, 1999 as a result of sales at inflated prices, and losses of $10,154.33 thereafter.  Therefore, Patti's Optimal Breach Date is March 26, 1999:  his potential recovery would be maximized by establishing that there was no breach of duty prior to this date.

23.     We have used the available data to determine the Optimal Breach Date for each of the Plans as well as the 40,962 participants in the Plans who held units of the Company Stock Fund during the Relevant Period.  Exhibit G provides data which summarizes our findings.  Among other things, Exhibit G shows that:  (1) there are 814 different dates during the Relevant Period that would be the Optimal Breach Date for one or more of the participants in the Salaried Plan; (2) there are 414 different dates during the Relevant Period that would be the Optimal Breach Date for one or more of the participants in the Union Plan; (3) 6,702 participants in the Salaried Plan have a different Optimal Breach Date than the OBD for the Salaried Plan itself; (4) 861 participants in the Union Plan have a different Optimal Breach Date than the OBD for the Union Plan itself; (5) the Plaintiffs who participated in the Salaried Plan (i.e., Alliet and Willis) have different Optimal Breach Dates; and (6) the Plaintiffs who participated in the Union Plan (i.e., Wright and Patti) have different Optimal Breach Dates from each other and the Union Plan.  These data also show that 6,110 participants in the Salaried Plan and 408 participants in the Union Plan have no Optimal Breach Date because their gains from sales at allegedly inflated prices would exceed their losses from purchases at allegedly inflated prices no matter what date was selected as the breach date.  These data establish that there is no date that would be an Optimal Breach Date for the Plaintiffs, all members of the Proposed Classes, and both of the Plans.  These findings contradict Plaintiffs'

assertion that their claims are typical of the claims of the other members of the Proposed

Classes, and establish that there are conflicts between members of the Proposed Classes

with respect to the Inflation Claim.

24.    The magnitude of these conflicts can be illustrated by considering

how choosing different dates as the breach date would affect members of the Proposed

Classes.  In particular, we have compared (a) the potential recovery that each member of

the Proposed Classes would have if Patti's OBD of March 26, 1999 was chosen as the

breach date with (b) the potential recovery that each member of the Proposed Classes

would have if his or her own OBD was chosen as the breach date.  Exhibit H summarizes

our findings.  Among other things, the exhibit shows:  (1) 22,683 of the 37,745 members

of the Salaried Plan (i.e., 60.1 percent)  and 2,195 of the 3,217 members of the Union

Plan (i.e., 68.2 percent) who held units of the Company Stock Fund would be worse off if

Patti's OBD was chosen as the breach date because doing so would result in foregoing a

portion of their potential recoveries; (2) these participants in the aggregate would forego

potential recoveries of  approximately $209.7 million, a 64.9 percent reduction in the

aggregate potential recovery; (3) the average foregone potential recovery of these

participants would be $8,427.51 per participant, (4) Alliet, Willis and Wright would have

their potential recoveries reduced by $18,382.39 (6.3 percent), $5,567.30 (78.1 percent),

and $15,868.79 (54.0 percent), respectively; and (5) 8,512 participants would forego their

entire potential recovery.

## B.    The Plan Recovery Scenario

25.    In the Plan Recovery Scenario, each Plan would receive a recovery

based on the Plan trust's actual market purchases and sales of Xerox stock, and each

Plan's recovery would be distributed to its participants based on each participant's share

of the aggregate losses of all participants in the Plan.  Plaintiffs may claim that in this

scenario, each member of the Proposed Classes would prefer to proceed as part of a class,

pursuing the legal theory that maximized the Plans' aggregate recovery, because this

would maximize each participant's individual's recovery.  But this is not necessarily

correct.  If a participant's share of the Plan's recovery depends on his share of the

aggregate losses of all participants in the Plan, then the date that a participant would

prefer to be selected as the breach date would not necessarily be the date that maximized

the Plans' aggregate recovery.  For example, suppose that the Salaried Plan would

recovery $10 million if date 1 was chosen as the breach date, and $5 million if date 2 was

chosen as the breach date.  Further suppose that a particular participant would receive no

recovery if date 1 was chosen as the breach date, but would receive 2 percent of the

Salaried Plan's recovery (i.e., $100,000) if date 2 was chosen as the breach date.  Under

these circumstances, the participant would prefer that date 2 was chosen as the breach

date (because this choice would maximize his own recovery), even though this is not the

date that would maximize the Salaried Plan's recovery.

        26.     To illustrate the derivation of an Optimal Breach Date and the

conflicts arise under these circumstances, Exhibit I compares the Union Plan's potential

recovery and Patti's potential recovery for every possible breach date.[6]  Since Patti is a

participant in the Union Plan, his potential recovery in the Plan Recovery Scenario would

be his share of the Union Plan's recovery based on the ratio of his subsequent losses at

any date to the sum of all Union Plan participants' subsequent losses.  The exhibit shows

that the Optimal Breach Date for the Union Plan would be December 31, 1997 because

this would maximize the Union Plan's potential recovery.  However, this is not the

---

6.  Patti is a participant in the Union Plan.

Optimal Breach Date for Patti.  The Optimal Breach Date for Patti under these

circumstances would be July 20, 1999 because this would maximize his potential

recovery (at $7,885.09).[7]  His potential recovery would be more than 55 percent lower if

the Union Plan's OBD was chosen as the breach date instead.

        27.     To verify that participants would not prefer to pursue the legal

theory that maximizes the recovery of the Plan they participated in, we used the available

data to determine the Optimal Breach Date(s) for the Plans and each of the Participants

during the Relevant Period in the Plan Recovery Scenario.  Data summarizing our

findings is reported on Exhibit J.[8]  Among other things, Exhibit J shows that:  (1) there

are 322 different dates during the Relevant Period that would be the Optimal Breach Date

for one or more of the participants in the Salaried Plan; (2) there are 141 different dates

during the Relevant Period that would be the Optimal Breach Date for one or more of the

participants in the Union Plan; (3) 14,606 participants in the Salaried Plan have a

different Optimal Breach Date than the Salaried Plan; (4) 1,344 participants in the Union

Plan have a different Optimal Breach Date than the Union Plan; (5) the Plaintiffs who

participated in the Salaried Plan (i.e., Alliet and Willis) have different Optimal Breach

Dates; and (6) the Plaintiffs who participated in the Union Plan (i.e., Wright and Patti)

have different Optimal Breach Dates from each other and the Union Plan.  The data also

---

7.  This example establishes that some members of the Proposed Union Plan Class would
    not necessarily prefer to pursue the legal theory that maximized the Union Plan's
    recovery, because the date that would maximize the Union Plan's recovery would not
    maximize their own recovery.  For the same reason, some members of the Proposed
    Salaried Plan Class would not necessarily prefer to pursue the legal theory that
    maximized the Salaried Plan's recovery.

8.  Whenever there are multiple, consecutive dates that would qualify as an optimal
    breach date, we adopt the convention of referring to the first date in such a period as
    the Optimal Breach Date.

show that 6,370 participants in the Salaried Plan and 420 participants in the Union Plan have no Optimal Breach Date because their gains from sales at allegedly inflated prices would exceed their losses from purchases at allegedly inflated prices no matter what date was selected as the breach date. These data establish that there is no date that would be an Optimal Breach Date for the Plaintiffs, all members of the Proposed Classes, and both of the Plans. These findings contradict Plaintiffs' assertion that their claims are typical of the claims of the other members of the Proposed Classes, and establish that there are conflicts between members of the Proposed Classes with respect to the Inflation Claim.

28.    The magnitude of these conflicts can be illustrated by considering how choosing different dates as the breach date would affect members of the Proposed Classes. In particular, we have compared (a) the potential recovery that each member of the Proposed Classes would have if Patti's OBD of July 20, 1999 was chosen as the breach date with (b) the potential recovery that each member of the Proposed Classes would have if his or her own OBD was chosen as the breach date. Exhibit K summarizes our findings. Among other things, the exhibit shows: (1) 31,347 of the 37,745 members of the Salaried Plan (i.e., 83.1 percent) and 2,087 of the 3,217 members of the Union Plan (i.e., 64.9 percent) who held units of the Company Stock Fund would be worse off if Patti's OBD was chosen as the breach date because doing so would reduce their potential recoveries; (2) the aggregate difference between the amounts these participants could recover if their OBDs were chosen and the amounts they could recover if Patti's OBD was chosen is approximately $127.6 million, a 47.6 percent reduction in their aggregate potential recovery; (3) the average foregone potential recovery of these participants would be $3,815.13 per participant, (4) Alliet, Willis and Wright would have their potential recoveries reduced by $1,213.40 (0.6 percent), $4,570.85 (89.8 percent), and

$12,790.49 (62.8 percent), respectively; and (5) 8,266 participants would forego their entire potential recovery.

29.    Exhibit J shows that the Optimal Breach Date for both of the Plans in the Plan Recovery Scenario is December 31, 1997.  Accordingly, we have also compared (a) the potential recovery that each member of the Proposed Classes would have if the Plans' OBD of December 31, 1997 was chosen as the breach date with (b) the potential recovery that each member of the Proposed Classes would have if his or her own OBD was chosen as the breach date.  Exhibit L summarizes our findings.  Among other things, the exhibit shows:  (1) 14,606 of the 37,745 members of the Salaried Plan (i.e., 38.7 percent) and 1,344 of the 3,217 members of the Union Plan (i.e., 41.8 percent) who held units of the Company Stock Fund would be worse off if the Plans' OBD was chosen as the breach date because doing so would reduce their potential recoveries; (2) the aggregate difference between the amounts these participants could recover if their own OBDs were chosen as the breach date and the amounts they could recover if the Plans' OBD was chosen is approximately $67.4 million, a 32.1 percent reduction in their aggregate potential recovery; (3) the average foregone potential recovery of these participants would be $4,227.90  per participant, (4) Alliet, Patti and Wright would have their potential recoveries reduced by $16,519.04 (7.6 percent), $4,435.51 (56.3 percent), and $9,317.26 (45.8 percent), respectively; and (5) 2,719 participants would forego their entire potential recovery.  This demonstrates that members of the Proposed Classes have conflicting interests concerning the Inflation Claim in the Plan Recovery Scenario, and that these conflicts could have substantial adverse financial consequences on many members of the Proposed Classes.

David J. Ross

September 3, 2008

**Exhibit A**

**DAVID J. ROSS**                                                             June 2008

Business Address:      Compass Lexecon
                       332 South Michigan Avenue
                       Suite 1300
                       Chicago, Illinois  60604                    312/322-0217
                       dross@compasslexecon.com

Home Address:          3535 Bradley Court
                       Highland Park, IL  60035                    847/266-7736

## EDUCATION

M.B.A.      UNIVERSITY OF CHICAGO:  1985
            (Completed specialization requirements in Economics, Finance and Industrial
            Relations)

B.A.        UNIVERSITY OF CHICAGO:  1983
            (Major in Economics)

## PROFESSIONAL EXPERIENCE

Compass Lexecon (formerly Lexecon)      Chicago, Illinois
(1985 to present)                       Current Position:  Senior Vice President

## FIELDS OF SPECIALIZATION

Finance
Labor Economics
Economic Analysis of Law

## ACADEMIC HONORS AND SCHOLARSHIPS

Beta Gamma Sigma
University of Chicago Graduate School of Business Fellowship
Phi Beta Kappa
University of Chicago National Merit Scholarship

## ARTICLES

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: An Update (with Daniel R. Fischel and Michael A. Keable) in Briefly… Perspectives on Legislation, Regulation, and Litigation, National Legal Center for the Public Interest, Vol. 10, No. 3 (March 2006).

The Hewlett-Packard Merger: A Case Study in The New Investor Relations, Expert Perspectives on the State of the Art (Bloomberg Press Princeton, 2004) (with Kenneth R. Cone, Daniel R. Fischel and Gregory J. Pelnar).

The Economics of the Winstar Cases, in Selected Works of Merton H., Miller, A Celebration of Markets, Volume 2: Economics (Bruce D. Grundy, ed.) (The University of Chicago Press, 2002) (with Merton H. Miller).

The Orange County Bankruptcy and its Aftermath: Some New Evidence (with Merton H. Miller), Journal of Derivatives, Vol. 4, No. 4 (Summer 1997).

Clustering and Competition in Asset Markets (with Daniel R. Fischel, Sanford J. Grossman, Merton H. Miller, and Kenneth R. Cone), Journal of Law and Economics, Vol. XL (1) (April 1997).

Do Conflicts Between Class Members Vitiate Class Action Securities Fraud Suits?, St. John's L. Rev., Vol. 70, No. 2 (Spring 1996).

The Use of Trading Models to Estimate Aggregate Damages in Securities Fraud Litigation: A Proposal for Change (with Daniel R. Fischel), in Securities Class Actions: Abuses and Remedies (The National Legal Center for the Public Interest, 1994).

Should the Law Prohibit "Manipulation" in Financial Markets? (with Daniel R. Fischel), Harv. L. Rev., Vol. 105, No. 2, p. 503 (December 1991).

Comparisons of Term Premium Forecasts: More Information in the Term Structure, University of Chicago Graduate School of Business, Manuscript (December 1986).


## OTHER ACTIVITIES

Member, American Economic Association, American Finance Association.

Member, Finance Committee, Jewish United Fund/Jewish Federation of Metropolitan Chicago.

Director, Moriah Congregation, Deerfield, IL

Have acted as a consultant and/or advisor to the Commodity Futures Trading Commission, the Federal Deposit Insurance Corporation, the Internal Revenue Service, the National Association of Securities Dealers, the Office of Thrift Supervision, the U.S. Department of Justice, and the U.S. Securities & Exchange Commission.

Referee: Journal of Business, Journal of Law and Economics, Journal of Legal Studies.

**EXPERT TESTIMONY**

Affidavit of David J. Ross in Re: <u>Boston Scientific Corporation ERISA Litigation</u>; United States
District Court, District of Massachusetts: Master File No. 1:06-cv-10105-JLT (May 27,
2008).

Testimony of David J. Ross in Re: <u>Loral Space and Communications, Inc., Consolidated</u>
<u>Litigation,</u>  in the Court of Chancery of the State of Delaware in and for the County of
New Castle, Case No. 2808-VCS (May 12, 2008).

Deposition of David J. Ross in Re: <u>Loral Space and Communications, Inc., Consolidated</u>
<u>Litigation,</u>  in the Court of Chancery of the State of Delaware in and for the County of New
Castle, Case No. 2808-VCS (February 19, 2000; February 25,2006 & May 8, 2006).

Testimony of David J. Ross in Re: <u>Schering-Plough Corporation v. United States of America</u>, In
the United States District Court for the District of New Jersey, Civil No. 05-2575 (January
24, 2008, January 25, 2008 & February 29, 2008).

Testimony of David J. Ross in Re: <u>Shell Petroleum Inc. v. United States of America</u>, In the
United States District Court, Southern District of Texas, Houston Division, Criminal No.
H-05-2016 (December 6, 2007).

Deposition of David J. Ross in Re: <u>Stephen C. Lingis, et at. v. Motorola, Inc., et al.</u>, In the United
States District Court, Northern District of Illinois, Eastern Division, No. 03 C 5044
(November 15, 2007).

Deposition of David J. Ross in Re: <u>Schering-Plough Corporation v. United States of America</u>, In
the United States District Court for the District of New Jersey, Civil Action No. 05-2575
(November 14, 2007).

Deposition of David J. Ross in Re: <u>Forest Laboratories, Inc. Securities Litigation</u>, United States
District Court, Southern District of New York, Civil Action No. 05-CV-2827-RMB (October
24, 2007).

Supplemental Declaration of David J. Ross in Re: <u>Forest Laboratories, Inc. Securities Litigation</u>,
United States District Court, Southern District of New York, Civil Action No. 05-CV-2827-
RMB (October 5, 2007).

Declaration of David J. Ross in Re: <u>Forest Laboratories, Inc. Securities Litigation</u>, United States
District Court, Southern District of New York, Civil Action No. 05-CV-2827-RMB
(September 6, 2007).

Declaration of David J. Ross in Re: <u>Don Brieger, et al. v. Tellabs Inc., et al</u>., United States
District Court, Northern District of Illinois, Case No. 1:06-cv-1882 (July 2, 2007).

Deposition of David J. Ross in Re: <u>Nortel Networks Corp. ERISA Litigation</u>, In the United States
District Court for the Middle District of Tennessee, Nashville Division, MDL Docket No.
3:03-MD-1537 (June 28, 2007).

- 4 -

Declaration of David J. Ross in Re: <u>Stephen C. Lingis et al, v. Motorola Inc., et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, No. 03 C 5044 (June 7, 2007).

Supplemental Declaration of David J. Ross in Re: <u>Nortel Networks Corp. Erisa Litigation</u>, United States District Court for the Middle District of Tennessee, Nashville Division, MDL Docket No. 3:03-MD-1537, (May 21, 2007).

Declaration of David J. Ross in Re: <u>Nortel Networks Corp. Erisa Litigation</u>, United States District Court for the Middle District of Tennessee, Nashville Division, MDL Docket No. 3:03-MD-1537, (March 14, 2007).

Supplemental Affidavit of David J. Ross in Re: <u>Sprint Corporation Shareholders Litigation</u>, District Court of Johnson County, Kansas, Civil Court Department, Case No. 04 CV 01714, (March 12, 2007).

Deposition of David J. Ross in Re: <u>Aristocrat Leisure Limited v. Deutsche Bank Trust Company Americas and KBC Financial Products UK, Ltd., et al.</u>; United States District Court, Southern District of New York; Case No. 04-CV-10014 (PKL)(BCF case); (January 16, 2007).

Declaration of David J. Ross in Re: <u>Portal Software Inc. Securities Litigation</u>, United States District Court, Northern District of California; Case No. C-03-5238 VRW; (January 10, 2007).

Deposition of David J. Ross in Re: <u>Shell Petroleum, Inc. v. United States of America</u>; United States District Court, Southern District of Texas, Houston Division; Case No. H-05-2016; (January 9, 2007)

Affidavit of David J. Ross in Re: <u>Garco Investments, LLP, et al. vs. Sprint Corporation, et al.</u>; The District Court of Johnson County, Kansas Civil Court Department; Case No. 04-CV-01714; (July 20, 2006).

Testimony of David J. Ross in Re: <u>The Rogers Revocable Trust</u> vs. Bank of America, N.A.; Supreme Court of the State of New York, County of New York – Civil Term; Index No. 601133/04; (June 1, 2006).

Trial Affidavit of David J. Ross in Re: <u>The Rogers Revocable Trust U/A/D 12/31/81</u> vs. Bank of America, N.A.; Supreme Court of the State of New York, County of New York – Civil Term; Index No. 601133/04 Part 49 (Cahn, J.); (May 23, 2006).

Deposition of David J. Ross in Re: <u>Aquila ERISA Litigation</u>, United States District Court for the Western District of Missouri, Western Division; Case No. 04-CV-00865-DW; (February 9, 2006).

Affidavit of David J. Ross in Re: <u>Aquila ERISA Litigation</u>, United States District Court for the Western District of Missouri, Western Division; Case No. 04-CV-00865-DW; (November 22, 2005).

Declaration of David J. Ross in Re: Dennis Lively, <u>Willis Harms and Larry Grab v. Dynegy, Inc.; Illinois Power Company et al.</u>; United States District Court, Southern District of Illinois, Case No. 05-00063-MJR; (October 21, 2005).

- 5 -

Deposition of David J. Ross in Re:  Dennis Lively, <u>Willis Harms and Larry Grab v. Dynegy, Inc.;</u> <u>Illinois Power Company et al.;</u> United States District Court, Southern District of Illinois, Case No. 05-00063-MJR; (September 19, 2005).

Testimony of David J. Ross in Re:  <u>UAL Corporation, et al. v. Debtors;</u>  United States Bankruptcy Court, Northern District of Illinois, Eastern Division; Chapter 11 Case No. 02 B 48191; (September 14 & 15, 2005).

Deposition of David J. Ross in Re:  <u>UAL Corporation, et al. v. Debtors;</u> United States Bankruptcy Court, Northern District of Illinois, Eastern Division; Chapter 11 Case No. 02-B-48191; (September 12, 2005).

Testimony of David J. Ross in Re: <u>Coleman (Parent) Holdings, Inc., vs. Morgan Stanley & Co., Inc.;</u> Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida; Case No. CA 03-5045 AI; (June 20, 2005).

Deposition of David J. Ross in Re: <u>Coleman (Parent) Holdings, Inc., vs. Morgan Stanley & Co., Inc.;</u> Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida; Case No. CA 03-5045 AI; (June 15, 2005).

Affidavit of David J. Ross in Re:  <u>Sprint Corporation ERISA Litigation</u>, United States District Court, District of Kansas; Case No. 2:03-CV-02202-JWL; (March 7, 2005).

Deposition of David J. Ross in Re:  <u>BVW Limited Partnership vs. First National Bank of Chicago n/k/a Bank One, N.A.</u>, Circuit Court of Cook County, Illinois, County Department, Law Division; Case No. 02-L-003730; (September 28, 2004).

Testimony of David J. Ross in Re:  <u>The Globe Savings Bank, et al. vs. United States of America</u>; United States Court of Federal Claims; Civil Action No. 91-1550C; (August 2 & 3, 2004).

Deposition of David J. Ross in Re:  <u>Electronic Data Systems Corp. "ERISA" Litigation</u>, United States District Court, Eastern District of Texas, Tyler Division; Case No. 6:03-MD-1512; Lead Case: 6:03-CV-126; (June 11, 2004).

Affidavit of David J. Ross in Re:  <u>Electronic Data Systems Corp. "ERISA" Litigation</u>, United States District Court, Eastern District of Texas, Tyler Division; Case No. 6:03-MD-1512; Lead Case: 6:03-CV-126; (May 27, 2004).

Supplemental Declaration of David J. Ross in Re:  <u>McKesson HBOC, Inc. Securities Litigation</u>, United States District Court, Northern District of California; Case No. CV-99-20743 RMW; (March 11, 2004).

Declaration of David J. Ross in Re:  <u>McKesson HBOC, Inc. Securities Litigation</u>, United States District Court, Northern District of California; Case No. CV-99-20743 RMW; (January 16, 2004).

Testimony of David J. Ross in Re:  <u>Quanex Corporation and affiliated subsidiaries v. Commissioner of the Internal Revenue</u>, Houston, Texas; Case No. 12642-01; (September 19, 2003; January 27 & 28, 2004).

- 6 -

Deposition of David J. Ross in Re: <u>Irene Abrams, et al v. Van Kampen Funds Inc., et al.</u>, United States District Court, Northern District of Illinois, Eastern Division, Case No. 01C7538, (October 27, 2003).

Supplemental Declaration of David J. Ross in Re: <u>Max Silberman et al. v. Cylink Corporation et al.</u>; United States District Court, Northern District of California; Case. No. C-98-4536; (March 19, 2003).

Testimony of David. J. Ross in Re:  <u>Real Estate Associates Limited Partnership Litigation</u>; United States District Court, Central District of California, Case No. 98-7035-DDP; (October 29, 2002).

Deposition of David J. Ross in Re:  <u>Fred M Moore & Ronald C. Hearn v. Radian Guaranty Inc., et al</u>; United States District Court for the Eastern District of Texas, Marshall Division; Case No. 2:01CV-023; (August 9, 2002).

Deposition of David J. Ross in Re:  <u>Home Federal Bank of Tennessee, F.S.B. v. United States of America</u>; United States Court of Federal Claims; Case No. 95-541-C; (March 4, 5, 6 & 20, 2002).

Deposition of David J. Ross in Re:  <u>First Commerce Corporation and Federal Deposit Insurance Corporation v. United States</u>; United States Court of Federal Claims; Case No. 92-731-C; (December 7, 2001).

Declaration of David J. Ross in Re: <u>Max Silberman et al. v. Cylink Corporation et al.</u>; United States District Court, Northern District of California; Case. No. C-98-4536; (October 31, 2001).

Testimony of David J. Ross in Re:  <u>Gold Banc Corporation v. Brad D. Ives, David W. Murrill and Robert E. McGannon)</u>; Before the American Arbitration Association; No. 57-148-00272-00; (July 20, 2001).

Deposition of David J. Ross in Re:  <u>Wilmonte A. Naustavicus, Aylin Gulbenkian, Richard Henry Bolt and Jane Bolt vs. National Partnership Investments Corp., et al.</u>; United States District Court, Central District of California; Case No. 98-7035; (June 14, 2001).

Testimony of David J. Ross in Re: <u>Jerome Feldman, et al. vs. National Westminster Bank, et al., Index No. 605549/99 and Roberta Hayes, et al. vs. National Westminster Bank, Index No. 403545/00</u>; Supreme Court of the State of New York, County of New York, Civil Term: Part 27; (April 9, 2001).

Testimony of David J. Ross in Re:  <u>Federal Insurance Co. vs. Caremark RX, Inc. (f/k/a MedPartners, Inc.)</u>; Before the American Arbitration Association;13-195-00345-99; (November 3, 2000 and January 29, 2001).

Testimony of David J. Ross in Re: <u>Nicole Rose Corp. F.K.A. Quintron Corp. vs. Commissioner of Internal Revenue</u>; United States Tax Court, New York, NY; No., 3328-00; (December 7, 2000)

Testimony of David J. Ross in Re:  <u>Boca Investerings Partnership vs. United States</u>; United States District Court, District of Columbia; No. CA 97-602 PLF; (September 11 & 18, 2000).

Joint Affidavit of Daniel R. Fischel and David J. Ross in Re: <u>Floyd D. Wilson v. Massachusetts Mutual Life Insurance Company</u>; In the First Judicial District Court, County of Santa Fe, State of New Mexico; Case No. D0101 CV-98-02814; (August 4, 2000).

Testimony of David J. Ross in Re:  <u>United States of America v. Raymond J. McClendon et al.</u>; United States District Court, Northern District of Georgia; No. 1:99-CR-462; (August 1, 2000).

Deposition of David J. Ross in Re:  <u>The Globe Savings Bank, FSB et al. vs. United States of America</u>; United States Court of Federal Claims; Civil Action No. 91-1550C; (June 19 & 20, 2000; October 10 & 11, 2000 and November 8 & 9, 2000).

Deposition of David J. Ross in Re:  <u>American Savings Bank, et al. vs. United States of America</u>; United States Court of Federal Claims; Civil Action No. 92-872C; (May 16, 17 & 18, 2000 and October 4 & 5, 2000).

Deposition of David J. Ross in Re:  <u>Coast Federal Bank, F.S.B. vs. United States of America</u>; United States Court of Federal Claims; Civil Action No. 92-466C; (April 17, 18, & 19, 2000).

Deposition of David J. Ross in Re: <u>Granite Partners et al. v. Bear, Stearns & Co. Inc. et al</u>; United States District Court, Southern District of New York; No. 96-Civ.-7874 and <u>ABF Capital Management et al. v. Askin Capital Management, L.P. et al</u>; No. 96-Civ-2978, (March 9, 2000).

Testimony of David J. Ross in Re:  <u>United States of America v. Robert Krilich</u>; United States District Court, Northern District of Illinois; No. 94-CR-419; (January 28 & 31, 2000).

Affidavit of David J. Ross in Re:  <u>Kaufman v. Motorola, Inc.</u>; United States District Court, Northern District of Illinois, Eastern Division; No. 95-C-1069; (October 15, 1999).

Supplemental Affidavit of David J. Ross in Re:  <u>IES Industries, Inc. and Subsidiaries vs. United States of America</u>; United States District Court, Northern District of Iowa, Cedar Rapids Division; No. C97-206-EJM; (May 4, 1999).

Testimony of David J. Ross in Re:  <u>United States of America v. Gordon Hall et al.</u>; United States District Court, Southern District of New York; No. S1-97-Cr.-1215 (DC); (May 3, 1999).

Affidavit of David J. Ross in Re:  <u>FTD Corporation, et al. v. Bankers Trust Company, et al.</u>; United States District Court, Southern District of New York; No. 96-CIV-0405 (SHS); (April 29, 1999).

Supplemental Declaration of David J. Ross in Re:  <u>Borland Securities Litigation</u>, United States District Court, Northern District of California; Case No. C-95-2295 VRW; (April 27, 1999).

Affidavit of David J. Ross in Re:  <u>IES Industries, Inc. and Subsidiaries vs. United States of America</u>; United States District Court, Northern District of Iowa, Cedar Rapids Division; No. C97-206-EJM; (March 23, 1999).

Testimony of David J. Ross in Re:  <u>LaSalle Talman, F.S.B. vs. United States of America</u>; United States Court of Federal Claims; No. 92-652C; (March 1, 2, & 12, 1999).

Deposition of David J. Ross in Re:  <u>IES Industries, Inc. and Subsidiaries vs. United States of America</u>; United States District Court, Northern District of Iowa; No. C97-206-EJM; (December 29, 1998).

Deposition of David J. Ross in Re:  <u>LaSalle Talman, F.S.B. vs. United States of America</u>; United States District Court, Northern District of Illinois, Eastern Division; No. 92-652C; (December 17 & 18, 1998).

Deposition of David J. Ross in Re:  <u>County of Orange vs. McGraw-Hill Companies, Inc. d/b/a Standard & Poors;</u> United States District Court, Central District of California; Case No. CV 96-0765-GLT; (December 14, 1998).

Deposition of David J. Ross in Re:  <u>Boca Investerings Partnership vs. United States</u>; United States District Court, Northern District of Illinois; No. 1:97-CV-602 (PLF); (November 30, 1998).

Supplemental Declaration of David J. Ross in Re:  <u>California Micro Devices Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C-94-2817-VRW; (August 26, 1998).

Affidavit of David J. Ross in Re:  <u>David Orman, et al., v. America Online, et at.</u>, United States District Court, Eastern District of Virginia, Alexandria Division; Civil Action No. 97-264-A; (February 20, 1998).

Joint Affidavit of Daniel R. Fischel and David J. Ross in Re:  <u>Publicis Communication v. True North Communications Inc., et al.</u>; United States District Court, Northern District of Illinois, Eastern Division; Case No. 97-C-8263; (December 7, 1997).

Declaration of David J. Ross In Re:  <u>Borland Securities Litigation</u>, United States District Court, Northern District of California; Case No. C-95-2295 VRW; (October 29, 1997).

Testimony of David J. Ross in Re:  <u>District Business Conduct Committee for District No. 10 v. A.S. Goldmen & Co., Inc., Anthony J. Marchiano, Stuart E. Winkler, Stacy Meyers</u>, NASD Regulation, Inc., New York, New York; Complaint No. C10960208; (September 17 & October 14, 1997).

Affidavit of David J. Ross in Re:  <u>Westcap Enterprises, Inc. (successor by merger to Westcap Securities, L.P.) and The Westcap Corporation, (successor by merger to Westcap Securities Investment, Inc. and Westcap Securities Management, Inc.), Debtors; Board of Trustees of Community College District No. 508, County of Cook, State of Illinois, Claimant, v. Westcap Enterprises, Inc. and The Westcap Corporation, Debtors</u>, United States Bankruptcy Court, Southern District of Texas, Houston Division, (Jointly Administered Under) Case No. 96-43191-H2-11; (September 14, 1997).

Deposition of David J. Ross in Re:  <u>Marcia Rubin, Jason Gorchow, and Michelle Gorchow vs. Jules Laser</u>, Civil Action No. 93-CH-010972, Circuit Court of Cook County, Illinois, County Department - Chancery Division, (July 15 & October 1, 1997).

Deposition of David J. Ross in Re:  <u>David Abbott, et al. vs. Kidder, Peabody & Company et al.</u> Civil Action No. 93-S-1709, United States District Court for the District of Colorado, (July 11, 1997).

- 9 -

Testimony of David J. Ross in Re:  Sandra Lerner, Leonard Bosack, and The Trust v. Goldman
    Sachs & Co., Kent C. McCarthy, Craig A.S. Steiger, Simon J. Michael, Ralph Severson,
    William J. Buckley & Roy Zuckerberg, Before The American Arbitration Association; 75-
    136-00090-94; (April 8, 9, 10 & 11, 1997; May 28, 1997 & June 4, 1997).

Testimony of David J. Ross Re:  The Matter of the Arbitration Between Metrobank, Claimant
    and Shearson Lehman Brothers, Inc. and Wayne A. Wagner, Respondents, Municipal
    Securities Rulemaking Board; MS 96-4; (February 19 & 20, 1997).

Testimony of David J. Ross in Re:  Bert Vladimir v. United States Banknote Corporation, Morris
    Weissman, John T. Gorman, and Stanley Kreitman, United States District Court,
    Southern District of New York, 94-CV-0255-MGC; (January 16, 1997).

Supplemental Declaration of David J. Ross in Re:  California Micro Devices Securities Litigation,
    United States District Court, Northern District of California, Master File No. C-94-2817-
    VRW, (December 11, 1996).

Declaration of David J. Ross in Re:  California Micro Devices Securities Litigation, United States
    District Court, Northern District of California, Master File No. C-94-2817-VRW, (October
    16, 1996).

Deposition of David J. Ross in Re:  Thomas De La Rue AG vs. U.S. Banknote Corporation, No.
    94-Civ-7925 (MGC) and U.S. Banknote Corporation vs. Thomas De La Rue AG, and De
    La Rue pk, No. 94-Civ-9210 (MAC), United States District Court Southern District of New
    York, (June 17, 1996).

Deposition of David J. Ross in Re:  Andrew W. McGhee vs. Richard L. Joutras et al., United
    States District Court, Northern District of Illinois, Eastern Division, Master File No. 94-C-
    7052, (May 30, 1996).

Deposition of David J. Ross in Re:  Bert Vladimir v. U.S. Banknote Corporation, United States
    District Court, Southern District of New York, Civil Action No. 94-CIV-0255 (MGC),
    (March 20, 1996).

Deposition of David J. Ross in Re:  Scattered Corporation vs. Midwest Clearing Corporation,
    Circuit Court of Cook County, Illinois County Department, Law Division, No. 93 L 10216,
    (February 27, 1996).

Deposition of David J. Ross in Re:  Andrew W. McGhee vs. Richard L. Joutras et al., United
    States District Court, Northern District of Illinois, Eastern Division, Master File No. 94-C-
    7052, (August 3 & 4, 1995).

Declaration of David J. Ross in Re:  Wells Fargo Securities Litigation, United States District
    Court, Northern District of California, Master File No. C-91-1944 VRW, (March 31, 1995).

Testimony of David J. Ross In The Matter Of:  Scattered Corporation: Leon Aaron Greenblatt,
    III, Andrew Alvin Jahelka, Richard Owen Nichols and Laura Bryant, The Chicago Stock
    Exchange, Incorporated, Proceeding No. CHX-D-93-1, (December 19, 20, 21 & 22,
    1994).

- 10 -

Deposition of David J. Ross in Re:  <u>Gloria G. Haft v. Herbert H. Haft</u>, Superior Court of the District of Columbia, Civil Action No. DR-2087-93d, (April 8, 1994).

Supplemental Declaration of David J. Ross in Re:  <u>Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW, (May 21, 1993).

Declaration of David J. Ross in Re:  <u>Oracle Securities Litigation</u>, United States District Court, Northern District of California, Master File No. C 90 0931 VRW, (April 20, 1993).

Testimony of David J. Ross in Re:  <u>State of West Virginia v. Morgan Stanley & Co. Incorporated</u>, in the Circuit Court of Kanawha County, West Virginia, Civil Action No. 89-C-3700, (May 5, 1992).

Deposition of David J. Ross in Re:  <u>State of West Virginia v. Morgan Stanley & Co. Incorporated</u>, in the Circuit Court of Kanawha County, West Virginia, Civil Action No. 89-C-3700, (April 25, 1992).

Testimony of David J. Ross in Re:  <u>The Stuart-James Co., et al.</u>, United States of America before the Securities & Exchange Commission, Denver, Colorado, Administrative Proceeding File No. 3-7164, (May 6, 1991).

Affidavit of David J. Ross in Re:  <u>Dean Peter Debruyne and Evelyn S. Carlyle, individually and on behalf of all others similarly situated v. The Equitable Life Assurance Society of the United States and Equitable Capital Management Corporation</u>, United States District Court, Northern District of Illinois, Eastern Division, No. 88 C 10098 (October 12, 1989).

**Exhibit B**

# Exhibit B
## Materials Reviewed

**Court Filings and Motions**

(1)  Second Consolidated Amended Complaint In re XEROX CORPORATION ERISA LITIGATION
(2)  Third Consolidated Amended Complaint In re XEROX CORPORATION ERISA LITIGATION
(3)  Plaintiffs' Motion for Class Certification In re XEROX CORPORATION ERISA LITIGATION

**Discovery**                                                                        **Bates Range**

(1)  Miscellaneous Plaintiffs' production                          CW000001 - CW001399
(2)  Miscellaneous Plaintiffs' production                          DA000001 - DA000172
(3)  Miscellaneous Plaintiffs' production                          CW000001 - CW001401
(4)  Miscellaneous Plaintiffs' production                          LW000001 - LW000194
(5)  Miscellaneous Plaintiffs' production                          TP000001 - TP000428
(6)  Miscellaneous Plaintiffs' production                          WS000001 - WS001025
(7)  Xerox Corporation Investing For Your Future No. 11 February 1997)     MD0001 - MD0002
(8)  Xerox Corporation Investing For Your Future No. 12 (May 1997)         MD0003 - MD0004
(9)  Xerox Corporation Investing For Your Future No. 13 (August 1997)      MD0005 - MD0006
(10) Xerox Corporation Investing For Your Future No. 14 (November 1997)    MD0007 - MD0008
(11) Xerox Corporation Investing For Your Future No. 15 (February 1998)    MD0009 - MD0010
(12) Xerox Corporation Investing For Your Future No. 16 (April 1998)       MD0011 - MD0012
(13) Xerox Corporation Investing For Your Future No. 17 (July 1998)        MD0013 - MD0014
(14) Xerox Corporation Investing For Your Future No. 18 (November 1998)    MD0015 - MD0016
(15) Xerox Corporation Investing For Your Future No. 19 (February 1999)    MD0017 - MD0018
(16) Xerox Corporation Investing For Your Future No. 20 (May 1999)         MD0019 - MD0020
(17) Xerox Corporation Investing For Your Future No. 21 (July 1999)        MD0021 - MD0022
(18) Xerox Corporation Investing For Your Future No. 22 (October 1999)     MD0023 - MD0024
(19) Xerox Corporation Investing For Your Future No. 23 (January 2000)     MD0025 - MD0026
(20) Xerox Corporation Investing For Your Future No. 24 (April 2000)       MD0027 - MD0028
(21) Xerox Corporation Investing For Your Future No. 25 (July 2000)        MD0029 - MD0030
(22) Xerox Corporation Investing For Your Future No. 26 (October 2000)     MD0031 - MD0032
(23) Xerox Corporation Investing For Your Future No. 27 (February 2001)    MD0033 - MD0034
(24) Xerox Corporation Investing For Your Future No. 28 (May 2001)         MD0035 - MD0036
(25) Xerox Corporation Investing For Your Future No. 29 (July 2001)        MD0037 - MD0038
(26) Xerox Corporation 1996 -1997 Form 5500 Salaried Plan          XC 001502 - XC 001578
(27) Xerox Corporation 1997 Form 5500 Union Plan                   XC 001579 - XC 001637
(28) Xerox Corporation 1998 Form 5500 Salaried Plan                XC 001095 - XC 001175
(29) Xerox Corporation 1998 Form 5500 Union Plan                   XC 001284 - XC 001350
(30) Xerox Corporation 1999 Form 5500 Salaried Plan                XC 001176 - XC 001240
(31) Xerox Corporation 1999 Form 5500 Union Plan                   XC 001351 - XC 001414

# Exhibit B
## Materials Reviewed

| | |
|---|---|
| (32) Xerox Corporation 2000 Form 5500 Salaried Plan | XC 001241 - XC 001283 |
| (33) Xerox Corporation 2000 Form 5500 Union Plan | XC 001415 - XC 001456 |
| (34) Xerox Corporation 2001 Form 5500 Salaried Plan | XC 00041023 - XC 00041058 |
| (35) Xerox Corporation 2001 Form 5500 Union Plan | XC 00040989 - XC 00041022 |
| (36) Xerox Corporation 2002 Form 5500 Salaried Plan | XC 010395 - XC 010429 |
| (37) Xerox Corporation 2002 Form 5500 Union Plan | XC 010430 - XC 010462 |

**Data provided by Xerox Corporation and Hewitt Associates**

(1) Electronic database reflecting fund holdings and transactions made by participants during the Class Period provided by Hewitt
(2) Fund NAV data
(3) Named Plaintiff quarterly statements
(4) Xerox Stock Fund plan level transactions data compiled by State Street

**Data obtained from public sources**

(1) Xerox Corporation common stock price data per Center for Research in Security Prices (CRSP)

**Exhibit C**

# Exhibit C

## Xerox Corporation Common Stock Price and Stock Fund Unit Price
## December 31, 1997 - June 28, 2002



Sources:  Center for Research in Security Prices; Hewitt Associates.

**Exhibit D**

# Exhibit D

## Plaintiffs and Other Participants
## in Groups Relevant to the Inflation Claim

| Group | Description | SALARIED Plan | | UNION Plan | |
|---|---|---|---|---|---|
| | | Number of Participants | Named Plaintiffs | Number of Participants | Named Plaintiffs |
| 1 | Participants Who Sold But Did Not Acquire Units During the Class Period | 1,606 | | 132 | |
| 2 | Participants Who Acquired But Did Not Sell Units During the Class Period | 11,758 | | 590 | |
| 3 | Participants Who Did Not Acquire or Sell Units During the Class Period | 1,215 | | 52 | |
| 4 | Participants Who Acquired And Sold Units During the Class Period | 23,166 | Plaintiffs Willis and Alliet | 2,443 | Plaintiffs Wright and Patti |
| | TOTAL | 37,745 | | 3,217 | |

**Exhibit E**

# Exhibit E

## Plaintiff Thomas Patti's
## Xerox Stock Fund Transactions & Balances
## December 31, 1997 - June 28, 2002

| Date | Unit Price ($) | Units Purchased/(Sold) (Units) | Units Purchased/(Sold) ($) | Balance (Units) | Balance ($) |
|---|---|---|---|---|---|
| 07/20/00 | $5.575429 | 14.520855 | $80.96 | 1,660.988086 | $9,260.72 |
| 07/27/00 | $4.279125 | 18.919754 | $80.96 | 1,679.907840 | $7,188.54 |
| 08/03/00 | $4.365523 | 18.545316 | $80.96 | 1,698.453156 | $7,414.64 |
| 08/10/00 | $4.915148 | 18.768510 | $92.25 | 1,717.221666 | $8,440.40 |
| 08/17/00 | $4.756370 | 17.944358 | $85.35 | 1,735.166024 | $8,253.09 |
| 08/24/00 | $4.738479 | 15.496536 | $73.43 | 1,750.662560 | $8,295.48 |
| 08/31/00 | $4.688904 | 15.660375 | $73.43 | 1,766.322935 | $8,282.12 |
| 09/07/00 | $4.653294 | 15.780218 | $73.43 | 1,782.103153 | $8,292.65 |
| 09/14/00 | $4.671391 | 17.331026 | $80.96 | 1,799.434179 | $8,405.86 |
| 09/21/00 | $4.759231 | 17.011150 | $80.96 | 1,816.445329 | $8,644.88 |
| 09/28/00 | $4.456804 | 18.219333 | $81.20 | 1,834.664662 | $8,176.74 |
| 10/05/00 | $3.195531 | 25.410485 | $81.20 | 1,860.075147 | $5,943.93 |
| 10/12/00 | $3.268794 | 20.206231 | $66.05 | 1,880.281378 | $6,146.25 |
| 10/19/00 | $2.257248 | 29.261295 | $66.05 | 1,909.542673 | $4,310.31 |
| 10/26/00 | $2.383579 | 38.832359 | $92.56 | 1,948.375032 | $4,644.11 |
| 11/02/00 | $2.546947 | 23.922758 | $60.93 | 1,972.297790 | $5,023.34 |
| 11/09/00 | $2.601333 | 23.411076 | $60.90 | 1,995.708866 | $5,191.50 |
| 11/16/00 | $2.491990 | 22.163010 | $55.23 | 2,017.871876 | $5,028.52 |
| 11/24/00 | $2.165064 | 28.133116 | $60.91 | 2,046.004992 | $4,429.73 |
| 11/30/00 | $2.070352 | 29.424948 | $60.92 | 2,075.429940 | $4,296.87 |
| 12/07/00 | $1.341565 | 45.394746 | $60.90 | 2,120.824686 | $2,845.22 |
| 12/14/00 | $1.889569 | 32.240155 | $60.92 | 2,153.064841 | $4,068.36 |
| 12/21/00 | $1.451110 | 41.974764 | $60.91 | 2,195.039605 | $3,185.24 |
| 12/28/00 | $1.505831 | 47.707877 | $71.84 | 2,242.747482 | $3,377.20 |
| 01/04/01 | $1.838324 | 33.236796 | $61.10 | 2,275.984278 | $4,184.00 |
| 01/11/01 | $2.041741 | 29.930337 | $61.11 | 2,305.914615 | $4,708.08 |
| 01/18/01 | $2.207695 | 27.680454 | $61.11 | 2,333.595069 | $5,151.87 |
| 01/25/01 | $2.245049 | 27.224351 | $61.12 | 2,360.819420 | $5,300.16 |
| 02/01/01 | $2.519146 | 24.313796 | $61.25 | 2,385.133216 | $6,008.50 |
| 02/08/01 | $2.105532 | 29.085287 | $61.24 | 2,414.218503 | $5,083.21 |
| 02/15/01 | $2.170345 | 26.498090 | $57.51 | 2,440.716593 | $5,297.20 |
| 02/22/01 | $1.967045 | 58.422661 | $114.92 | 2,499.139254 | $4,915.92 |
| 03/01/01 | $1.742759 | 32.850211 | $57.25 | 2,531.989465 | $4,412.65 |
| 03/08/01 | $2.121799 | 21.533614 | $45.69 | 2,553.523079 | $5,418.06 |
| 03/14/01 | $1.772713 | 231.188015 | $409.83 | 2,784.711094 | $4,936.49 |
| 03/15/01 | $1.655030 | 2.428959 | $4.02 | 2,787.140053 | $4,612.80 |
| 03/22/01 | $1.694615 | 33.866099 | $57.39 | 2,821.006152 | $4,780.52 |
| 03/29/01 | $1.762429 | 46.078452 | $81.21 | 2,867.084604 | $5,053.03 |
| 04/05/01 | $1.595643 | 33.359591 | $53.23 | 2,900.444195 | $4,628.07 |

# Exhibit E

## Plaintiff Thomas Patti's
## Xerox Stock Fund Transactions & Balances
## December 31, 1997 - June 28, 2002

| Date | Unit Price ($) | Units Purchased/(Sold) (Units) | Units Purchased/(Sold) ($) | Balance (Units) | Balance ($) |
|---|---|---|---|---|---|
| 04/12/01 | $1.760639 | 30.244701 | $53.25 | 2,930.688896 | $5,159.89 |
| 04/19/01 | $2.685731 | 19.819558 | $53.23 | 2,950.508454 | $7,924.27 |
| 04/23/01 | $2.290988 | (762.426752) | ($1,746.71) | 2,188.081702 | $5,012.87 |
| 04/26/01 | $2.413871 | 22.101429 | $53.35 | 2,210.183131 | $5,335.10 |
| 05/03/01 | $2.979851 | 17.870021 | $53.25 | 2,228.053152 | $6,639.27 |
| 05/10/01 | $2.997650 | 17.763915 | $53.25 | 2,245.817067 | $6,732.17 |
| 05/17/01 | $3.260134 | 16.364359 | $53.35 | 2,262.181426 | $7,375.01 |
| 05/24/01 | $3.101027 | 20.796334 | $64.49 | 2,282.977760 | $7,079.58 |
| 05/31/01 | $2.976520 | (205.101896) | ($610.49) | 2,077.875864 | $6,184.84 |
| 06/07/01 | $2.752100 | 23.425748 | $64.47 | 2,101.301612 | $5,782.99 |
| 06/14/01 | $2.500292 | 25.788987 | $64.48 | 2,127.090599 | $5,318.35 |
| 06/21/01 | $2.381645 | 27.073724 | $64.48 | 2,154.164323 | $5,130.45 |
| 06/28/01 | $2.739237 | 23.627016 | $64.72 | 2,177.791339 | $5,965.49 |
| 07/05/01 | $2.877067 | 22.630687 | $65.11 | 2,200.422026 | $6,330.76 |
| 07/12/01 | $2.510026 | 25.788577 | $64.73 | 2,226.210603 | $5,587.85 |
| 07/19/01 | $2.471578 | 26.214023 | $64.79 | 2,252.424626 | $5,567.04 |
| 07/26/01 | $2.410176 | 26.852811 | $64.72 | 2,279.277437 | $5,493.46 |
| 08/02/01 | $2.499343 | 29.375720 | $73.42 | 2,308.653157 | $5,770.12 |
| 08/09/01 | $2.454920 | 30.795301 | $75.60 | 2,339.448458 | $5,743.16 |
| 08/16/01 | $2.588348 | 25.004367 | $64.72 | 2,364.452825 | $6,120.03 |
| 08/23/01 | $2.590762 | 24.977207 | $64.71 | 2,389.430032 | $6,190.44 |
| 08/30/01 | $2.712625 | 27.066033 | $73.42 | 2,416.496065 | $6,555.05 |
| 09/06/01 | $2.736152 | 23.650002 | $64.71 | 2,440.146067 | $6,676.61 |
| 09/17/01 | $2.706551 | 23.912351 | $64.72 | 2,464.058418 | $6,669.10 |
| 09/20/01 | $2.215088 | 29.222316 | $64.73 | 2,493.280734 | $5,522.84 |
| 09/27/01 | $2.197506 | 29.506176 | $64.84 | 2,522.786910 | $5,543.84 |
| 10/04/01 | $2.469622 | 26.226687 | $64.77 | 2,549.013597 | $6,295.10 |
| 10/11/01 | $2.451327 | 26.434660 | $64.80 | 2,575.448257 | $6,313.27 |
| 10/18/01 | $2.192629 | 29.539881 | $64.77 | 2,604.988138 | $5,711.77 |
| 10/25/01 | $2.103153 | 34.933265 | $73.47 | 2,639.921403 | $5,552.16 |
| 11/01/01 | $2.156688 | 30.032161 | $64.77 | 2,669.953564 | $5,758.26 |
| 11/08/01 | $2.138885 | 30.277457 | $64.76 | 2,700.231021 | $5,775.48 |
| 11/15/01 | $2.138934 | 30.276764 | $64.76 | 2,730.507785 | $5,840.38 |
| 11/19/01 | $2.200683 | (404.938630) | ($891.14) | 2,325.569155 | $5,117.84 |
| 11/23/01 | $2.473862 | 27.079117 | $66.99 | 2,352.648272 | $5,820.13 |
| 11/29/01 | $2.482665 | 26.100984 | $64.80 | 2,378.749256 | $5,905.64 |
| 12/06/01 | $2.612836 | 24.804466 | $64.81 | 2,403.553722 | $6,280.09 |
| 12/12/01 | $2.580136 | (729.402828) | ($1,881.96) | 1,674.150894 | $4,319.54 |
| 12/13/01 | $2.603787 | 24.875308 | $64.77 | 1,699.026202 | $4,423.90 |

# Exhibit E

## Plaintiff Thomas Patti's
## Xerox Stock Fund Transactions & Balances
## December 31, 1997 - June 28, 2002

| Date | Unit Price ($) | Units Purchased/(Sold) (Units) | Units Purchased/(Sold) ($) | Balance (Units) | Balance ($) |
|---|---|---|---|---|---|
| 12/20/01 | $2.713266 | 15.608497 | $42.35 | 1,714.634699 | $4,652.26 |
| 12/27/01 | $2.887810 | 14.668554 | $42.36 | 1,729.303253 | $4,993.90 |
| 01/03/02 | $3.117965 | 13.582579 | $42.35 | 1,742.885832 | $5,434.26 |
| 01/10/02 | $2.924149 | 14.486266 | $42.36 | 1,757.372098 | $5,138.82 |
| 01/17/02 | $2.938884 | 14.413634 | $42.36 | 1,771.785732 | $5,207.07 |
| 01/24/02 | $2.873889 | 14.739608 | $42.36 | 1,786.525340 | $5,134.28 |
| 01/31/02 | $3.388060 | 12.499778 | $42.35 | 1,799.025118 | $6,095.21 |
| 02/07/02 | $3.148744 | 13.452984 | $42.36 | 1,812.478102 | $5,707.03 |
| 02/14/02 | $2.937963 | 14.414749 | $42.35 | 1,826.892851 | $5,367.34 |
| 02/20/02 | $2.843139 | (75.930165) | ($215.88) | 1,750.962686 | $4,978.23 |
| 02/21/02 | $2.825399 | 14.996113 | $42.37 | 1,765.958799 | $4,989.54 |
| 02/28/02 | $2.908158 | 14.562481 | $42.35 | 1,780.521280 | $5,178.04 |
| 03/07/02 | $3.052488 | 13.883756 | $42.38 | 1,794.405036 | $5,477.40 |
| 03/13/02 | $3.090013 | 141.523676 | $437.31 | 1,935.928712 | $5,982.04 |
| 03/14/02 | $3.016022 | 14.041675 | $42.35 | 1,949.970387 | $5,881.15 |
| 03/21/02 | $3.110154 | 13.623119 | $42.37 | 1,963.593506 | $6,107.08 |
| 03/28/02 | $3.213418 | 13.182225 | $42.36 | 1,976.775731 | $6,352.21 |
| 04/04/02 | $3.233591 | 12.546422 | $40.57 | 1,989.322153 | $6,432.65 |
| 04/11/02 | $2.903242 | 12.785705 | $37.12 | 2,002.107858 | $5,812.60 |
| 04/18/02 | $2.770457 | 13.402122 | $37.13 | 2,015.509980 | $5,583.88 |
| 04/25/02 | $2.843348 | 13.051515 | $37.11 | 2,028.561495 | $5,767.91 |
| 05/02/02 | $2.397111 | (2,028.561495) | ($4,862.69) | 0.000000 | $0.00 |

Source: Hewitt Associates.

# Exhibit E

## Plaintiff Thomas Patti's
## Xerox Stock Fund Transactions & Balances
## December 31, 1997 - June 28, 2002

| Date | Unit Price ($) | Units Purchased/(Sold) (Units) | Units Purchased/(Sold) ($) | Balance (Units) | Balance ($) |
|---|---|---|---|---|---|
| 12/31/97 | $10.000000 | 0.000000 | $0.00 | 462.560000 | $4,625.60 |
| 06/10/98 | $13.563603 | (47.973600) | ($650.69) | 414.586400 | $5,623.29 |
| 10/29/98 | $12.946271 | (89.170724) | ($1,154.43) | 325.415676 | $4,212.92 |
| 03/26/99 | $14.390923 | (325.415676) | ($4,683.03) | 0.000000 | $0.00 |
| 05/06/99 | $16.108893 | 31.807897 | $512.39 | 31.807897 | $512.39 |
| 08/10/99 | $12.897375 | 130.207116 | $1,679.33 | 162.015013 | $2,089.57 |
| 08/12/99 | $12.234956 | 0.108705 | $1.33 | 162.123718 | $1,983.58 |
| 08/19/99 | $13.550242 | 0.800724 | $10.85 | 162.924442 | $2,207.67 |
| 08/26/99 | $13.600438 | 0.798502 | $10.86 | 163.722944 | $2,226.70 |
| 09/02/99 | $12.909520 | 0.839691 | $10.84 | 164.562635 | $2,124.42 |
| 09/09/99 | $12.990247 | 0.835242 | $10.85 | 165.397877 | $2,148.56 |
| 09/16/99 | $11.803429 | 0.918378 | $10.84 | 166.316255 | $1,963.10 |
| 09/23/99 | $11.805290 | 0.919079 | $10.85 | 167.235334 | $1,974.26 |
| 09/30/99 | $11.586267 | 0.935591 | $10.84 | 168.170925 | $1,948.47 |
| 10/07/99 | $11.805472 | 0.918219 | $10.84 | 169.089144 | $1,996.18 |
| 10/14/99 | $8.110219 | 1.337818 | $10.85 | 170.426962 | $1,382.20 |
| 10/21/99 | $7.135615 | (170.426962) | ($1,216.10) | 0.000000 | $0.00 |
| 03/13/00 | $6.817532 | 293.361292 | $2,000.00 | 293.361292 | $2,000.00 |
| 03/14/00 | $6.697659 | 8.886687 | $59.52 | 302.247979 | $2,024.35 |
| 03/16/00 | $7.268706 | 11.069370 | $80.46 | 313.317349 | $2,277.41 |
| 03/21/00 | $7.993914 | 1,203.603141 | $9,621.50 | 1,516.920490 | $12,126.13 |
| 03/23/00 | $7.615004 | 10.565982 | $80.46 | 1,527.486472 | $11,631.82 |
| 03/30/00 | $7.458831 | 10.822071 | $80.72 | 1,538.308543 | $11,473.98 |
| 04/06/00 | $7.775806 | 0.682888 | $5.31 | 1,538.991431 | $11,966.90 |
| 04/13/00 | $7.287423 | 2.553716 | $18.61 | 1,541.545147 | $11,233.89 |
| 04/20/00 | $7.078832 | 11.374758 | $80.52 | 1,552.919905 | $10,992.86 |
| 04/27/00 | $7.673537 | 11.220380 | $86.10 | 1,564.140285 | $12,002.49 |
| 05/04/00 | $7.620582 | 10.671101 | $81.32 | 1,574.811386 | $12,000.98 |
| 05/11/00 | $7.290831 | 11.044007 | $80.52 | 1,585.855393 | $11,562.20 |
| 05/18/00 | $7.583949 | 10.617159 | $80.52 | 1,596.472552 | $12,107.57 |
| 05/25/00 | $7.270247 | 11.075275 | $80.52 | 1,607.547827 | $11,687.27 |
| 06/01/00 | $7.849642 | 10.308751 | $80.92 | 1,617.856578 | $12,699.59 |
| 06/05/00 | $7.867073 | (63.556019) | ($500.00) | 1,554.300559 | $12,227.80 |
| 06/08/00 | $7.535211 | 10.792000 | $81.32 | 1,565.092559 | $11,793.30 |
| 06/15/00 | $7.238127 | 11.124425 | $80.52 | 1,576.216984 | $11,408.86 |
| 06/22/00 | $5.823384 | 13.827013 | $80.52 | 1,590.043997 | $9,259.44 |
| 06/29/00 | $5.630444 | 14.378974 | $80.96 | 1,604.422971 | $9,033.61 |
| 07/06/00 | $5.665104 | 14.291001 | $80.96 | 1,618.713972 | $9,170.18 |
| 07/13/00 | $5.753198 | 27.753259 | $159.67 | 1,646.467231 | $9,472.45 |

**Exhibit F**

# Exhibit F
## Plaintiff Thomas Patti's
## Gain/Loss from Transactions in Xerox Stock Fund



**Inflation**
**Optimal Breach Date: March 26, 1999**
**Gain to Date = $5,519.87**
**Subsequent Loss = -$10,154.33**

**Exhibit G**

# Exhibit G

## Data Concerning Optimal Breach Date Conflicts In the Individual Recovery Scenario

|  | Company Stock Fund |
|---|---|
| Number of SALARIED Plan Participants | 37,745 |
| Number of UNION Plan Participants | 3,217 |
|  |  |
| Optimal Breach Date for SALARIED Plan | 12/31/97 |
| Optimal Breach Date for UNION Plan | 12/31/97 |
| Optimal Breach Date(s) for Plaintiffs |  |
|     <u>SALARIED Plan</u> |  |
|     ALLIET, DAVID | 04/15/98 |
|     WILLIS, LINDA | 12/31/97 |
|     <u>UNION Plan</u> |  |
|     WRIGHT, CHERYL | 10/21/98 |
|     PATTI, THOMAS | 03/26/99 |
|  |  |
| Number of Different OBDs for SALARIED Plan Participants | 814 |
| Number of Different OBDs for UNION Plan Participants | 414 |
|  |  |
| Number of SALARIED Plan Participants with OBD on 12/31/97 | 24,933 |
| Number of UNION Plan Participants with OBD on 12/31/97 | 1,948 |
|  |  |
| Number of SALARIED Plan Participants with no OBD | 6,110 |
| Number of UNION Plan Participants with no OBD | 408 |
|  |  |
| Number of SALARIED Plan Participants with Different OBD Than SALARIED Plan | 6,702 |
| Number of UNION Plan Participants with Different OBD Than UNION Plan | 861 |

Notes:  1) The Optimal Breach Date is the breach date that would maximize a participant's potential recovery based on his own losses, if any.

2) Dates shown calculated under the assumption that the "true value" of the units was $2.0933 throughout the class period.

**Exhibit H**

# Exhibit H
## Choosing Thomas Patti's OBD as the Breach Date Would Adversely Affect Other Participants in the Individual Recovery Scenario

|  | Named Plaintiffs | Salaried Plan | Union Plan | Combined Plans |
|---|---|---|---|---|
| Number of Participants: | | 37,745 | 3,217 | 40,962 |
| Number of Participants Adversely Affected: | | 22,683 | 2,195 | 24,878 |
| **Foregone Recovery ($)** | | | | |
| Average, per Adversely Affected Participant | | $8,287.49 | $9,874.47 | $8,427.51 |
| Total | | $187,985,189.53 | $21,674,459.47 | $209,659,649.00 |
| **Named Plaintiffs** | | | | |
| ALLIET, DAVID | $18,382.39 | | | |
| WILLIS, LINDA | $5,567.30 | | | |
| WRIGHT, CHERYL | $15,868.79 | | | |
| **Foregone Recovery (% of Total)** | | | | |
| Average, per Adversely Affected Participant | | 64.6% | 68.0% | 64.9% |
| **Named Plaintiffs** | | | | |
| ALLIET, DAVID | 6.3% | | | |
| WILLIS, LINDA | 78.1% | | | |
| WRIGHT, CHERYL | 54.0% | | | |
| Number of Participants Foregoing Entire Recovery: | | 7,737 | 775 | 8,512 |

**Exhibit I**

# Exhibit I

## How the Potential Recoveries of Patti and the Union Plan Vary by Date in the Plan Recovery Scenario



Note: Patti's Potential Recovery is his share of the Union Plan's Potential Recovery based on the ratio of his loss, if any, to the sum of all Union Plan participants losses, if any.

**Exhibit J**

# Exhibit J

# Data Concerning Optimal Breach Date Conflicts in the Plan Recovery Scenario

| | Company Stock Fund |
|---|---|
| Number of SALARIED Plan Participants | 37,745 |
| Number of UNION Plan Participants | 3,217 |
| | |
| Optimal Breach Date for SALARIED Plan | 12/31/97 |
| Optimal Breach Date for UNION Plan | 12/31/97 |
| Optimal Breach Date(s) for Plaintiffs | |
|     <u>SALARIED Plan</u> | |
|     ALLIET, DAVID | 07/21/99 |
|     WILLIS, LINDA | 12/31/97 |
|     <u>UNION Plan</u> | |
|     WRIGHT, CHERYL | 04/30/99 |
|     PATTI, THOMAS | 07/20/99 |
| | |
| Number of Different OBDs for SALARIED Plan Participants | 322 |
| Number of Different OBDs for UNION Plan Participants | 141 |
| | |
| Number of SALARIED Plan Participants with OBD on 12/31/97 | 16,769 |
| Number of UNION Plan Participants with OBD on 12/31/97 | 1,453 |
| | |
| Number of SALARIED Plan Participants with no OBD | 6,370 |
| Number of UNION Plan Participants with no OBD | 420 |
| | |
| Number of SALARIED Plan Participants with Different OBD Than SALARIED Plan | 14,606 |
| Number of UNION Plan Participants with Different OBD Than UNION Plan | 1,344 |

Notes:  1) The Optimal Breach Date is the breach date that would maximize a participant's potential recovery based on his share of relevant Plan's losses, if any.

2) Dates shown calculated under the assumption that the "true value" of the units was $2.0933 throughout the class period.

**Exhibit K**

# Exhibit K

## Choosing Thomas Patti's OBD as the Breach Date
## Would Adversely Affect Other Participants
## in the Plan Recovery Scenario

| | Named Plaintiffs | Salaried Plan | Union Plan | Combined Plans |
|---|---|---|---|---|
| Number of Participants: | | 37,745 | 3,217 | 40,962 |
| Number of Participants Adversely Affected: | | 31,347 | 2,087 | 33,434 |
| **Foregone Recovery ($)** | | | | |
| Average, per Adversely Affected Participant | | $3,594.86 | $7,123.57 | $3,815.13 |
| Total | | $112,688,108.23 | $14,866,900.66 | $127,555,008.90 |
| **Named Plaintiffs** | | | | |
| ALLIET, DAVID | $1,213.40 | | | |
| WILLIS, LINDA | $4,570.85 | | | |
| WRIGHT, CHERYL | $12,790.49 | | | |
| **Foregone Recovery (% of Total)** | | | | |
| Average, per Adversely Affected Participant | | 46.1% | 70.7% | 47.6% |
| **Named Plaintiffs** | | | | |
| ALLIET, DAVID | 0.6% | | | |
| WILLIS, LINDA | 89.8% | | | |
| WRIGHT, CHERYL | 62.8% | | | |
| Number of Participants Foregoing Entire Recovery: | | 7,531 | 735 | 8,266 |

**Exhibit L**

# Exhibit L

## Choosing the Plans' OBD as the Breach Date Would Adversely Affect Many Participants in the Plan Recovery Scenario

|  | Named Plaintiffs | Salaried Plan | Union Plan | Combined Plans |
|---|---|---|---|---|
| Number of Participants |  | 37,745 | 3,217 | 40,962 |
| Number of Participants Adversely Affected |  | 14,606 | 1,344 | 15,950 |
| Foregone Recovery ($) |  |  |  |  |
|     Average, per Adversely Affected Participant |  | $4,119.63 | $5,404.54 | $4,227.90 |
|     Total |  | $60,171,347.95 | $7,263,700.06 | $67,435,048.02 |
|     Named Plaintiffs |  |  |  |  |
|     ALLIET, DAVID | $16,519.04 |  |  |  |
|     PATTI, THOMAS | $4,435.51 |  |  |  |
|     WILLIS, LINDA | $0.00 |  |  |  |
|     WRIGHT, CHERYL | $9,317.26 |  |  |  |
| Foregone Recovery (%) |  |  |  |  |
|     Average, per Adversely Affected Participant |  | 31.5% | 38.8% | 32.1% |
|     Named Plaintiffs |  |  |  |  |
|     ALLIET, DAVID | 7.6% |  |  |  |
|     PATTI, THOMAS | 56.3% |  |  |  |
|     WILLIS, LINDA | 0.0% |  |  |  |
|     WRIGHT, CHERYL | 45.8% |  |  |  |
| Number of Participants Foregoing Entire Recovery |  | 2,418 | 301 | 2,719 |