# Attachment 6

# Part A

# XEROX CORPORATION

# PROFIT SHARING AND SAVINGS PLAN

1998 Restatement

XEROX CORPORATION

PROFIT SHARING AND SAVINGS PLAN

1998 Restatement

TABLE OF CONTENTS

| | | Page No. |
|---|---|---|
| ARTICLE ONE | NAME, EFFECTIVE DATES AND DEFINITIONS | |
| Section 1.01 | Name of Plan | 1 |
| Section 1.02 | Agreements of Trust | 1 |
| Section 1.03 | Balanced Fund | 1 |
| Section 1.04 | Code | 1 |
| Section 1.05 | Compensation | 1 |
| Section 1.06 | Computation Period | 1 |
| Section 1.07 | Disability | 1 |
| Section 1.08 | Effective Dates | 2 |
| Section 1.09 | Employer | 2 |
| Section 1.10 | Employment Commencement Date | 2 |
| Section 1.11 | ERISA | 2 |
| Section 1.12 | Hour of Service | 2 |
| Section 1.13 | Income Fund | 2 |
| Section 1.14 | International Stock Fund | 2 |
| Section 1.15 | Leased Employees | 2 |
| Section 1.16 | Plan Administrator | 2 |
| Section 1.17 | Plan Year | 2 |
| Section 1.18 | Retirement Account | 2 |
| Section 1.19 | Small Company Stock Fund | 3 |
| Section 1.20 | U.S. Stock Fund | 3 |
| Section 1.21 | Xerox Stock Fund | 3 |
| ARTICLE TWO | ADMINISTRATION | |
| Section 2.01 | Plan Administrator To Administer Plan | 3 |
| Section 2.02 | Appointment of Agents | 3 |
| Section 2.03 | Plan Administrator | 3 |
| Section 2.04 | Management of Trust Fund | 3 |
| Section 2.05 | Investment Guidelines | 3 |
| Section 2.06 | Claims Procedure | 3 |
| Section 2.07 | Expenses of the Plan | 4 |
| Section 2.08 | Limitations of Actions | 4 |
| ARTICLE THREE | ELIGIBILITY FOR PARTICIPATION | |
| Section 3.01 | Employees Who Shall Become Participants | 4 |
| Section 3.02 | Persons Not Considered Employees | 6 |
| Section 3.03 | Nonmilitary Leave of Absence | 7 |
| Section 3.04 | Military Leave of Absence | 7 |
| Section 3.05 | Physical or Mental Disability Leave | 7 |
| Section 3.06 | Service With Subsidiary or Affiliate | 7 |
| Section 3.07 | Service With Foreign Subsidiary | 8 |
| Section 3.08 | Employees With Former Service With Electronic Data Systems Corporation | 8 |
| Section 3.09 | Employees With Former Service With Citibank, N.A. | 8 |
| Section 3.10 | Employees With Former Service With MasterCard International | 8 |

XC 000096

| | | Page No |
|---|---|---|
| ARTICLE FOUR | CONTRIBUTIONS AND ALLOCATIONS | |
| Section 4.01 | Employer Contributions | 8 |
| Section 4.02 | Computation of ROA and Definitions | 10 |
| Section 4.03 | Definition of Compensation | 10 |
| Section 4.04 | Compensation in Special Cases | 11 |
| Section 4.05 | Contribution for Year of Retirement, Death or Becoming Classified as Inactive Without Benefits | 11 |
| Section 4.06 | Cont5ribution for Employees Who Transfer to Any Entity That Reports Into the Xerox New Enterprise Board ("XNE Company") or to Any Subsidiary of the Employer | 11 |
| Section 4.07 | Allocation of Employer Contributions | 12 |
| Section 4.08 | Payment to Trustee | 12 |
| Section 4.09 | Transfers and Rollovers of Funds From Other Plans | 12 |
| Section 4.10 | Maximum Allocation to Participants | 13 |
| Section 4.11 | Matching Company Contributions | 15 |
| Section 4.12 | Rollover Contributions | 16 |
| ARTICLE FIVE | EMPLOYEE SAVINGS | |
| Section 5.01 | Savings by Participants | 16 |
| Section 5.02 | Authorization and Elections With Respect to Employee Savings | 17 |
| Section 5.03 | Termination of Payroll Deductions for Employee Savings | 17 |
| Section 5.04 | Distribution of Excess Deferral Amounts | 17 |
| Section 5.05 | Actual Deferral Percentage Limitations | 18 |
| Section 5.06 | Limit on After-Tax Savings and Matching Company Contributions | 19 |
| ARTICLE SIX | PROFIT SHARING SAVINGS ACCOUNTS, EMPLOYEE SAVINGS ACCOUNTS, COMPANY-MATCHED SAVINGS ACCOUNTS, RETIREMENT SAVINGS ACCOUNTS AND ROLLOVER ACCOUNTS | |
| Section 6.01 | Maintenance of Accounts and Valuation in Terms of Units | 21 |
| Section 6.02 | Election With Respect to Profit Sharing Savings Account | 22 |
| Section 6.03 | Allocation of Amounts Allocable to Profit Sharing Savings Accounts and Company-Matched Savings Accounts to Separate Funds | 23 |
| Section 6.04 | Valuation Date | 23 |
| Section 6.05 | Determination of Unit Values of Each Separate Fund | 23 |
| Section 6.06 | Determination of Value of Profit Sharing Savings Account and Notification to Participants | 24 |
| Section 6.07 | Notification to Participants of Amount Credited to Employee After-Tax Savings Account | 24 |
| Section 6.08 | Notification to Participants of Amount Credited to Employee Before-Tax Savings Account | 24 |
| Section 6.09 | Determination of Value of Company-Matched Savings Account and Notification to Participants | 25 |
| Section 6.10 | Notification to Participants of Amount Credited to Rollover Account | 25 |
| Section 6.11 | Determination of Value of Retirement Savings Account and Notification to Participants | 25 |
| Section 6.12 | Transfers Among Separate Funds | 25 |
| Section 6.13 | Notification to Participants of Amounts Credited to Accounts | 26 |
| Section 6.14 | Valuation Dates for Payments From the Plan | 26 |
| Section 6.15 | Loans to Employees | 26 |
| ARTICLE SEVEN | NORMAL AND DEFERRED RETIREMENT BENEFITS | |
| Section 7.01 | Normal Retirement | 28 |
| Section 7.02 | Amount of Benefits | 28 |
| Section 7.03 | Payment of Benefits | 28 |
| Section 7.04 | Limitations Regarding Payment of Benefits | 31 |
| Section 7.05 | Deferral of Receipt of Benefits | 33 |

| | | Page No. |
|---|---|---|
| ARTICLE EIGHT | DISABILITY RETIREMENT, EARLY RETIREMENT, HARDSHIP AND OTHER WITHDRAWALS | |
| Section 8.01 | Disability Retirement | 33 |
| Section 8.02 | Early Retirement | 33 |
| Section 8.03 | Benefits Upon Disability Retirement or Early Retirement | 33 |
| Section 8.04 | Form, Time and Manner of Payments of Benefits | 34 |
| Section 8.05 | Hardship Withdrawals From Profit Sharing Savings Account, Rollover Account, Employee After-Tax Savings Account and Employee Before-Tax Savings Account | 34 |
| Section 8.06 | Discretionary Withdrawals From Employee After-Tax Savings Account | 35 |
| Section 8.07 | Withdrawals from the XDS Employee After-Tax Savings Account and the XDS Company Savings Account | 35 |
| ARTICLE NINE | TERMINATION OF EMPLOYMENT BY RESIGNATION OR DISCHARGE | |
| Section 9.01 | Determination of Nonforfeitable Interest | 36 |
| Section 9.02 | Payment of Benefits on Termination of Employment | 36 |
| ARTICLE TEN | BENEFICIARY DESIGNATION AND DEATH BENEFITS | |
| Section 10.01 | Designation of Beneficiary | 37 |
| Section 10.02 | Death Before Retirement | 37 |
| Section 10.03 | Death After Retirement | 38 |
| ARTICLE ELEVEN | RIGHT TO ALTER OR AMEND | |
| Section 11.01 | Right To Alter or Amend | 38 |
| Section 11.02 | Limitations on Powers of Amendment | 38 |
| Section 11.03 | Form of Amendment | 38 |
| ARTICLE TWELVE | TERMINATION OF PLAN AND TRUST | |
| Section 12.01 | Right To Terminate Fully Reserved | 39 |
| Section 12.02 | Automatic Termination | 39 |
| Section 12.03 | Distribution of Assets on Termination | 39 |
| Section 12.04 | Discontinuance of Plan Without Terminating Trust | 39 |
| ARTICLE THIRTEEN | MISCELLANEOUS PROVISIONS | |
| Section 13.01 | New York and Applicable Federal Law Govern | 40 |
| Section 13.02 | Headings for Convenience | 40 |
| Section 13.03 | Rights of Parties Determined by the Terms of This Plan | 40 |
| Section 13.04 | Spendthrift Clause | 40 |
| Section 13.05 | Notice to Employees | 40 |
| Section 13.06 | No Employment Rights Created | 40 |
| Section 13.07 | Diversion From Employees Prohibited | 40 |
| Section 13.08 | Right to Judicial Accounting | 41 |
| Section 13.09 | Payment in Special Cases | 41 |
| Section 13.10 | Unit Accounting May Be Ignored | 41 |
| Section 13.11 | Delay in Payment | 41 |
| Section 13.12 | Failure To Locate Payee | 41 |
| Section 13.13 | Collective Bargaining Agreement | 41 |
| Section 13.14 | Transfer of Funds to Other Plans; Retention of Funds | 41 |
| Section 13.15 | Doubt as to Right of Payment | 42 |
| Section 13.16 | Gender | 42 |

ARTICLE FOURTEEN TOP HEAVY PROVISIONS

| | | Page No. |
|---|---|---|
| Section 14.1 | Application of Top Heavy Provisions. | 42 |
| Section 14.2 | Provisions If Plan Becomes Top Heavy | 42 |
| Section 14.3 | Definitions | 43 |

XEROX CORPORATION

PROFIT SHARING AND SAVINGS PLAN

1998 Restatement

ARTICLE ONE

NAME, EFFECTIVE DATES AND DEFINITIONS

Section 1.01. Name of Plan. This Plan shall be called "Xerox Corporation Profit Sharing and Savings Plan" and is sometimes referred to herein as the "Plan". The Plan is designed to qualify as a profit sharing plan for purposes of Sections 401(a), 402, 412 and 417 of the Code and to qualify as a participant-directed account plan under Section 404(c) of ERISA.

Section 1.02. Agreements of Trust. The funds to provide deferred benefits under the Plan shall be held, managed, invested and disbursed in accordance with the terms of one or more agreements of trust between the Employer and such corporate trustee or trustees as may be designated by the Employer from time to time. The assets held pursuant to such agreements of trust shall be referred to collectively herein as the "Trust", and the trustees at any time serving under this Plan shall be collectively referred to herein as the "Trustee".

Section 1.03. Balanced Fund. Balanced Fund shall have the meaning in Section 6.02 hereof.

Section 1.04. Code. The Internal Revenue Code of 1986, as amended, or as it may be amended from time to time, or any successor thereto.

Section 1.05. Compensation. Compensation shall have the meaning in Section 4.03 hereof.

Section 1.06. Computation Period. For purposes of determining eligibility for participation and a Participant's breaks in service under the Plan, a single period shall be used. Such period shall be called "computation period" and shall be each twelve consecutive month period beginning with an employee's employment commencement date and any anniversary thereof and ending on the day before the following anniversary of his employment commencement date. "Employment commencement date" means the first date with respect to which an employee has an Hour of Service (as hereafter defined).

Section 1.07. Disability. A Participant shall be considered to be on Disability within the meaning of this Plan if

(a) he is receiving short-term disability payments, or

(b) he was disabled prior to August 1, 1996 and is receiving long-term disability benefits under the self-insured Xerox Corporation Long-Term Disability Income Plan during periods of long-term disability, provided, however, that a Participant who elects to terminate his disability status with the Employer shall thereafter cease being on Disability under the Plan, or

(c) he was disabled on or after August 1, 1996 and he (i) is receiving long-term disability benefits under the self-insured Xerox Corporation Long-Term Disability Income Plan and (ii) has not been classified as an inactive employee without benefits within the meaning of Section 3.02(g).

Under no circumstances shall a Participant who became disabled on or after August 1, 1996 and who is classified as an inactive employee without benefits within the meaning of Section 3.02(g) be considered to be disabled as that term is used in this Plan.

Section 1.08. Effective Dates. The effective date of the original Plan and Agreement of Trust is January 1, 1945. The effective date of the Plan as restated by this instrument is January 1, 1998. The effective dates of those provisions of the Plan which have been amended by previous amendments to the Plan shall be as provided in such amendments.

Section 1.09. Employer. The Company, each subsidiary, any company which is a member of a controlled group of corporations (as defined in Code Section 414(b) and the regulations thereunder) which includes the Company, any trade or business under common control (as defined in regulations under Code Section 414(c)) with the Company, any organization which is a member of an affiliated service group (within the meaning of Section 414(m) of the Code) which includes the Company, and any other organization or arrangement to the extent required to be aggregated by regulations pursuant to regulations under Section 414(o) of the Code and, where applicable and Xerox International Partners. As used herein, the term "Employer" shall apply equally to each of such entities that have adopted this Plan with the consent of Xerox Corporation with respect to its employees covered by the Plan, except that as used in Articles Two, Twelve and Thirteen of the Plan, such term shall refer only to Xerox Corporation.

For the purposes of this definition, "subsidiary shall mean any company, at least a majority of the voting stock of which is owned, directly or indirectly, by Xerox Corporation.

Section 1.10. Employment Commencement Date. The date on which a person first receives credit for an Hour of Service with the Employer.

Section 1.11. ERISA. The Employee Retirement Income Security Act of 1974, as amended or as it may be amended from time to time, or any successor thereto.

Section 1.12. Hour of Service. Hour of Service shall have the meaning in Section 3.01(f) hereof.

Section 1.13. Income Fund. Income Fund shall have the meaning in Section 6.02 hereof. (The "Guaranteed Fund", which existed until as of April 1, 1991, was divided at such time into the Income Fund and the "Segregated Assets Fund". Once all principal due and owing from Executive Life Insurance Company was repaid, each Participant's pro rata share of the "Segregated Assets Fund" was deposited into the Participant's Income Fund account and began earning interest in the Income Fund from April 30, 1997, when the amounts became available to Participants.)

Section 1.14. International Stock Fund. International Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.15. Leased Employees. Leased Employee means any individual who

(a) is not an independent contractor with respect to the Employer;

(b) provides services pursuant to an agreement between the Employer and any other person or entity;

(c) has performed such services on a substantially full-time basis for a period of at least one year; and

(d) performs such services under primary direction or control by the Employer.

Section 1.16. Plan Administrator. The Plan Administrator described in Article Two.

Section 1.17. Plan Year. The Plan Year shall be the twelve-month calendar year period commencing on January 1 and ending on December 31.

Section 1.18. Retirement Account. The former Retirement Account under the Plan which was transferred to the Xerox Corporation Retirement Income Guarantee Plan effective January 1, 1990.

Section 1.19. Small Company Stock Fund. Small Company Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.20. U.S. Stock Fund. U.S Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.21. Xerox Stock Fund. Xerox Stock Fund shall have the meaning in Section 6.02 hereof.

## ARTICLE TWO

## ADMINISTRATION

Section 2.01. Plan Administrator To Administer Plan. The Plan Administrator shall administer the Plan in accordance with its terms. In addition to the powers granted elsewhere in the Plan, the Plan Administrator may make such rules and regulations for the administration of the Plan as are consistent with its terms.

The Plan Administrator may construe the Plan and the agreements of trust hereunder and resolve any ambiguity with respect thereto and her construction thereof and her action thereunder, made or taken in good faith, shall be final and conclusive.

Should any defect, omission, ambiguity or inconsistency in the Plan or such agreements of trust be discovered at any time, the Plan Administrator shall be empowered to take such action as may be necessary to correct such defect, rectify such omission, resolve such ambiguity or reconcile such inconsistency.

Section 2.02. Appointment of Agents. The Plan Administrator may appoint such agents, including counsel, as she deems necessary or advisable for the administration of the Plan. Such agents need not be employees of the Employer or Participants under the Plan.

Section 2.03. Plan Administrator. The chief executive officer of the Employer (or an officer designated by the chief executive officer) shall appoint a Plan Administrator who shall have full authority to control and manage the operation and administration of the Plan, and who shall serve until the appointment of a successor Plan Administrator by an amendment to this Section. Until so removed, the Plan Administrator is Patricia M. Nazemetz. The Plan Administrator may designate other persons to carry out her responsibilities under the Plan. Such designation of any other person shall be in writing and shall be kept on file in the office of the Plan Administrator. Any direction, certificate, statement or declaration pertaining to the administration of the Plan signed by the Plan Administrator or a person designated to carry out her responsibilities (as provided in the preceding sentence) shall be conclusive evidence of the action taken or evidenced by such direction, certificate, statement or declaration.

Section 2.04. Management of Trust Fund. The Board of Directors of the Employer or a Committee of the Board, to the extent designated by the Board, shall be a named fiduciary of the Plan and shall have the authority to control and manage the assets of the Plan. The Board or such Committee shall also have the authority to appoint another named fiduciary or fiduciaries or an investment manager or managers (as defined in Section 3(38) of ERISA or otherwise as provided in the Trust Agreement To Fund Retirement Plans, as amended from time to time) to manage (including the power to acquire and dispose of) all or any part of the assets of the Plan.

Section 2.05. Investment Guidelines. The Employer at least annually shall establish and review the investment guidelines of the Plan. In determining the investment guidelines, the Employer shall consider the short run need for liquidity in trust assets and the long run goals for investment growth.

Section 2.06. Claims Procedure. Any question as to the eligibility of any employee to become a Participant or any question of the amount of contribution allocated to a Participant or the determination of a Participant's interest in the assets of the Trust at any time shall be determined by the Plan Administrator in accordance with the terms of the Plan. If any employee or any Participant excepts to the decision of the Plan Administrator, the Plan Administrator, upon request, shall provide the employee with a copy

of the claims procedure followed by the Plan Administrator. Upon exhaustion of the claims procedure, the determination of the Plan Administrator shall be final and conclusive for all purposes.

Section 2.07. Expenses of the Plan. The expenses of administering the Plan and the compensation of all employees, agents or counsel of the Plan Administrator, including the Trustee's fees, shall be paid from the Trust Fund, unless paid by the Company.

Section 2.08. Limitations of Actions. Any action brought in state or federal court for the alleged wrongful denial of Plan benefits or for intentional interference with any Plan rights to which any person is or may become entitled under ERISA must be commenced within one year after the cause of action accrued.

## ARTICLE THREE

## ELIGIBILITY FOR PARTICIPATION

Section 3.01. Employees Who Shall Become Participants.

(a) Employees hired before April 1, 1975.

(1) Each employee who became a Participant under the Plan before April 1, 1975 shall continue as a Participant. Subject to the provisions of Sections 3.02 through 3.04, each other employee of the Employer hired before April 1, 1975;

(A) who on December 31, 1975, has completed at least one full year of continuous service with the Employer shall become a Participant in the Plan with the period of his participation in the Plan deemed to have begun on January 1, 1975;

(B) who on December 31, 1975, has not completed at least one full continuous year of service with the Employer shall become a Participant on January 1, 1976;

(2) Notwithstanding the provisions of subparagraph (A) of paragraph (a)(1)

(A) in the case of employees employed in the Xerox Computer Services Division or who were formerly carried on the payroll maintained in El Segundo, California, who are carrying on the business formerly conducted by Xerox Data Systems, Inc., to whom such subparagraph (A) would otherwise apply, the period of participation shall be deemed to have begun on April 1, 1975, instead of January 1, 1975;

(B) in the case of employees employed at the Education Center, Columbus, Ohio, who are represented by Teamsters Union, Local 413, and who first became employees under the Plan on February 1, 1975, to whom such subparagraph (A) would otherwise apply, the period of participation shall be deemed to have begun on February 1, 1975, instead of January 1, 1975.

(b) Employees hired on or after April 1, 1975 through December 31, 1996.

(1) Subject to the provisions of Section 3.02, each employee of the Employer hired on or after April 1, 1975 through December 31, 1996 shall become a Participant on the first day of the Computation Period immediately succeeding the close of the first Computation Period in which he completes at least one Hour of Service if he completes at least one Hour of Service in such immediately succeeding Computation Period.

(2) A Participant who severs from service shall recommence participation in the Plan on the first day on which he completes an Hour of Service.

(c) Employees hired from January 1, 1997 through December 31, 1997.

(1) Subject to the provisions of Section 3.02, each employee of the Employer, hired from January 1, 1997 through December 31, 1997, shall become a Participant, for the purpose of determining eligibility for participation under all provisions of this Plan, excluding the provisions of Article Four, on January 1, 1998; and shall become a Participant for purposes of determining eligibility for participation under Article Four on the first day of the Computation Period immediately succeeding the close of the first Computation Period in which he completes at least one Hour of Service if he completes at least one Hour of Service in such immediately succeeding Computation Period.

(2) A Participant who severs from service shall recommence participation in the Plan on the first day on which he completes an Hour of Service.

(3) Notwithstanding the above, rollovers and transfers pursuant to Sections 4.09 and 4.12 shall become available to each Participant on February 2, 1998.

(d) Employees hired on or after January 1, 1998.

(1) Subject to the provisions of Section 3.02, each employee of the Employer, hired on or after January 1, 1998, shall become a Participant, for the purpose of determining eligibility for participation under all provisions of this Plan, excluding the provisions of Article Four, immediately upon the employee's Employment Commencement Date; and shall become a Participant for purposes of determining eligibility for participation under Article Four on the first day of the Computation Period immediately succeeding the close of the first Computation Period in which he completes at least one Hour of Service if he completes at least one Hour of Service in such immediately succeeding Computation Period.

(2) A Participant who severs from service shall recommence participation in the Plan on the first day on which he completes an Hour of Service.

(3) Notwithstanding the above, rollovers and transfers pursuant to Sections 4.09 and 4.12 shall become immediately available to each Participant upon the Employment Commencement Date of each Participant, effective February 2, 1998.

(e) Any employee who becomes a Participant hereunder shall continue as a Participant until his participation is terminated by retirement, death, payment in full of his nonforfeitable interest in the Plan or he terminates his employment with no credit balance in his Accounts or becomes classified as an inactive employee without benefits, pursuant to Section 3.02(g), with no credit balance in his Accounts.

(f) Hours of Service.

(1) For all purposes of the Plan, the term "Hour of Service" means each hour for which an individual is paid or entitled to payment by the Employer, or by any subsidiary or affiliate under Section 3.06, for the performance of duties (or while on salary continuance, whether due to a reduction in force or otherwise) or on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, and each hour during physical or mental disability leave under Section 3.05. The term "Hour of Service" shall also include each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer, each hour worked for Agfa by employees whose employment transferred to the Employer on or about November 1, 1993, and each hour worked by employees attributable to service with Xerox International Partners.

(2) In addition, an individual will be credited with an Hour of Service in each Computation Period while he is on

(A) nonmilitary leave of absence for up to one year under Section 3.03;

(B)  military leave of absence under Section 3.04;

(C)  layoff for up to one year; or

(3)  For the purpose of determining Hours of Service under paragraph (1) above for reasons other than the performance of duties and crediting of Hours of Service to Computation Periods, the rules set forth in paragraphs (b) and (c) of Section 2530.200b-2 of 29 CFR Part 2530 are incorporated by reference into the Plan.

(4)  Hours of Service shall include hours worked as a Leased Employee and, in the case of any employee, shall include hours worked in a status which would have been that of a Leased Employee but for the requirement set forth in Section 1.15(c).

Section 3.02. Persons Not Considered Employees. For purposes of Section 3.01 the following shall not be considered employees of the Employer, and thus, shall not be eligible for participation under the Plan:

(a)  A person employed pursuant to the Xerox Experiential Learning Program or any similar program conducted by any Employer;

(b)  A person who is eligible to participate under any retirement plan maintained by the Employer for members of bargaining units represented by The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.;

(c)  For periods before January 1, 1997, a person regularly employed in a job classification specified in Section 1 of the collective bargaining agreement between the International Association of Machinists and Aerospace Workers, A.F.L.-C.I.O. and its District 720 and Xerox Corporation, dated March 4, 1996, or any comparable provision of any successor agreement;

(d)  Supplemental contract workers, Leased Employees, leased employees or any other third party personnel, independent contractors, agents or consultants;

(e)  Any person classified by the Company on its books and records as a supplemental contract worker, Leased Employee, leased employee or any other third party personnel, independent contractor, agent or consultant;

(f)  An employee of a foreign subsidiary of the Employer who is on temporary assignment to the Employer, and who is accruing benefits under the profit sharing retirement plan of his employer;

(g)  An employee who becomes disabled on or after August 1, 1996

(i)  prior to age sixty-six and continues to be disabled for twenty-four months of long-term disability,

(ii)  at age sixty-six and continues to be disabled after twenty-one months of long-term disability,

(iii)  at age sixty-seven and continues to be disabled after eighteen months of long-term disability,

(iv)  at age sixty-eight and continues to be disabled after fifteen months of long-term disability, or

(v)  at age sixty-nine or older and continues to be disabled for twelve months of long-term disability,

XC 000105

and, as such, becomes an inactive employee without benefits, or is classified on the Company's books and records under an inactive without benefits status.

If the employment status of any employee is changed so that he is no longer ineligible for participation solely by reason of this Section, he shall become a Participant hereunder upon completion of his first Hour of Service following such change in employment status, and he shall be entitled to a share of any subsequent annual contribution by the Employer to the extent of compensation paid to him after such change in employment status. If after becoming a Participant hereunder, the employment status of an employee is changed so that he would be ineligible for participation under this Section, he shall continue as a Participant hereunder, but he shall not be entitled to a share of any subsequent annual contributions by the Employer except to the extent of compensation paid to him prior to such change in employment status, nor shall he be entitled to make any contributions to his Employee Savings Accounts after such change in employment status.

Section 3.03. Nonmilitary Leave of Absence. Time lost by an employee by virtue of a leave of absence granted by the Employer (other than military leave pursuant to Section 3.04), shall be called for purposes of this Plan, a "nonmilitary leave of absence". Any leave of absence granted under this Section shall expire on the last day of the time period for which such leave of absence is granted, or the date the employee terminated his employment during such leave of absence, if earlier. If an employee does not terminate his employment during a leave of absence, and does not return to active service with the Employer upon the expiration of the period for which his leave of absence was granted, he shall be regarded as having terminated his employment on the date his leave of absence expired.

Section 3.04. Military Leave of Absence.

(a) Any employee who interrupts his service to the Employer to become, and who does become, a member of any of the Armed Forces of the United States or any of its allies, or a member of the American Merchant Marine, shall be considered to be on military leave of absence from the date of such interruption until the first to occur of the following:

(1) his death;

(2) his return to the active service of the Employer;

(3) the expiration of his statutory reemployment rights;

(4) his termination of employment during such leave of absence.

Termination of a leave of absence under subsection (1), (3) or (4) shall be considered termination of employment.

(b) Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

Section 3.05. Physical or Mental Disability Leave. An employee is on physical or mental disability leave if he is entitled to receive extended disability benefits under a plan or contract maintained by the Employer.

Section 3.06. Service With Subsidiary or Affiliate. For purposes of an employee's completion of the service requirements for participation under Section 3.01, service with a corporation which is a member of a controlled group of corporations within the meaning of Section 414(b) of the Code, including any Employer, service with any trade or business under common control (within the meaning of Section 414(c) of the Code) with any Employer, service with any organization which is a member of an affiliated service group (within the meaning of Section 414(m) of the Code) which includes any Employer, and service with or through any other organization or arrangement to the extent required by regulations pursuant to Section 414(o) of the Code shall be considered service with the Employer. An employee who

transfers employment from any such corporation to the Employer and who is otherwise eligible for Participation shall become a Participant hereunder upon the later to occur of (a) the completion of his first Hour of Service with the Employer, or (b) the date such employee would otherwise become eligible to participate under Section 3.01(b) giving credit for service with such corporation.

Section 3.07. Service With Foreign Subsidiary. For all purposes of the Plan, a person who is a citizen of the United States and who is an employee of a foreign subsidiary (as defined in Section 3121(1)(8) of the Code) of the Employer shall be treated as an employee of the Employer if:

(a) The Employer has entered into an agreement under such Section 3121(1) applicable to such foreign subsidiary; and

(b) Contributions under a funded plan of deferred compensation are not provided by any other person with respect to the remuneration paid to such person by such foreign subsidiary.

Such a person shall become a Participant upon satisfying the requirement of Section 3.01 and his compensation shall include all remuneration paid to him by such foreign subsidiary as well as remuneration, if any, paid to him by the Employer.

Section 3.08. Employees With Former Service With Electronic Data Systems Corporation. Subject to Sections 3.02 through 3.04, each former employee of Electronic Data Systems Corporation ("EDS") who is transferred to employment with Xerox Business Services ("XBS"), a division of the Company, as a "Transitioned Employee" (as defined in and pursuant to the Document Management Services Agreement between EDS and XBS, dated March 20, 1995), shall upon becoming an employee of XBS receive credit for all Hours of Service for all periods during which he was employed by EDS, for the purpose of determining eligibility for participation under all provisions of this Plan, excluding Article Four.

Section 3.09. Employees With Former Service With Citibank, N.A.. Subject to Sections 3.02 through 3.04, each former employee of Citibank, N.A. ("Citibank") who is transferred to employment with Xerox Business Services ("XBS"), a division of the Company, as an "Employee" (as defined in and pursuant to the Agreement–Desktop Publishing and Management Services dated July 26, 1996 by and between the Company and Citicorp North America, Inc.), shall upon becoming an employee of XBS receive credit for all Hours of Service for all periods during which he was employed by Citibank, for the purpose of determining eligibility for participation under all provisions of this Plan, excluding Article Four.

Section 3.10. Employees With Former Service With MasterCard International. Subject to Sections 3.02 through 3.04, each former employee of MasterCard International ("MasterCard") who is transferred to employment with Xerox Business Services ("XBS"), a division of the Company, as an employee (pursuant to the Document Management Services Agreement, dated December 18, 1995 and effective as of April 1, 1996, by and between XBS and MasterCard), shall upon becoming an employee of XBS receive credit for all Hours of Service for all periods up to one year during which he was employed by MasterCard, for the sole purpose of determining eligibility for participation under this Plan.

## ARTICLE FOUR

## CONTRIBUTIONS AND ALLOCATIONS

Section 4.01. Employer Contributions. For each calendar year, the Employer shall make a contribution to the Profit Sharing Savings Accounts on behalf of each Participant who is an employee of the Employer or by any subsidiary or affiliate of the Employer under Section 3.06 on the last day of each calendar year; provided, however, that contributions may be made on behalf of individuals not employed on the last day of such calendar year if they have transferred employment from the Employer to other companies in connection with the transfer of assets or businesses by the Employer to such other companies, in accordance with the instruments providing for and governing such transfers and, further provided, that in connection with contributions made pursuant to this Section 4.01, the term "Participant" shall not include employees who are employed by, or assigned to, the Xerox Computer Services division as of December 21, 1993 (after the contribution with respect to the year ended December 31, 1993) or

the following wholly-owned subsidiaries of the Employer as of the date of their elections to participate: Chrystal Software, Inc., dpiX, Inc., InConcert, Inc., InXight Software, Inc., LiveWorks, Inc., PD Reader, Inc. and XESystems, Inc. ("XES"). XES employees shall participate in the Plan provisions set forth in Schedule A attached hereto and shall not participate in any Plan provisions set forth in this Article Four. The contributions on behalf of each Participant allocable to his Profit Sharing Savings Account shall be in the amounts equal to the compensation of such Participant multiplied by the appropriate percentage selected from the table in Section 4.01(a) below. The appropriate percentage selected from the tables below shall be that opposite the percentage return on assets (hereinafter referred to as "ROA") calculated for such year pursuant to Section 4.02.

(a) For contributions made with respect to calendar years ending after January 1, 1993, the contribution on behalf of each Participant allocable to his Profit Sharing Savings Account shall be in the amount equal to the compensation of such Participant for that calendar year multiplied by the percentage set forth in the table below. The percentage selected from the table below shall be that opposite the ROA calculated for such year pursuant to Section 4.02. ROA shall be calculated each year to the nearest one-quarter of one percent. In the event that ROA in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00.

| ROA Percentage | Profit Sharing Savings Account |
|---|---|
| less than 8.50 | 0.00 |
| 8.50 | 0.10 |
| 8.75 | 0.20 |
| 9.00 | 0.30 |
| 9.25 | 0.40 |
| 9.50 | 0.50 |
| 9.75 | 0.80 |
| 10.00 | 1.10 |
| 10.25 | 1.40 |
| 10.50 | 1.70 |
| 10.75 | 2.00 |
| 11.00 | 2.30 |
| 11.25 | 2.60 |
| 11.50 | 2.90 |
| 11.75 | 3.20 |
| 12.00 | 3.50 |
| 12.25 | 3.80 |
| 12.50 | 4.10 |
| 12.75 | 4.40 |
| 13.00 | 4.70 |
| 13.25 | 5.00 |
| 13.50 | 5.30 |
| 13.75 | 5.60 |
| 14.00 | 5.90 |
| 14.25 | 6.25 |
| 14.50 | 6.65 |
| 14.75 | 7.05 |
| 15.00 | 7.45 |
| 15.25 | 7.85 |
| 15.50 | 8.25 |
| 15.75 | 8.65 |
| 16.00 | 9.10 |
| 16.25 | 9.55 |
| 16.50 | 10.00 |

(b)  With respect to the plan year ended November 30, 1992 only, in addition to any contribution under Section 4.01, the Employer shall make a contribution of $360.00 to the Profit Sharing Savings Account of each nonhighly compensated employee (within the meaning of Section 414(q) of the Code) of Xerox International Partners.

Section 4.02. Computation of ROA and Definitions.  The ROA referred to in Section 4.01 shall be computed for any year commencing with the year ended December 31, 1994 by dividing the Document Processing Profit Before Tax (PBT) of the Employer for such year by total Document Processing assets of the Employer for such year.  The figure so calculated shall be rounded to the nearest quarter of one percent.  For purposes of this Article:

(a)  The "Document Processing PBT" of the Employer shall mean the amount of Document Processing income (loss) before income taxes, equity income and minorities' interests plus the amount included as equity in net income of unconsolidated affiliates for such year as reported on the consolidated statements of income, as included in such year's audited consolidated financial statements of Xerox Corporation plus the income (loss) before income taxes from Document Processing related to (a) discontinued operations, (b) cumulative effect of changes in accounting principles, and (c) extraordinary items.  All amounts determined above shall be ascertained from the books, records and audited consolidated financial statements of Xerox Corporation.

(b)  The "total Document Processing assets" of the Employer shall mean the average of the amounts of the total assets, as hereinafter defined, of Document Processing at the close of such year and at the close of the immediately preceding year.  The amount of such Document Processing total assets at the close of each year shall be equal to total Document Processing assets, as included in the audited consolidated financial statements of Xerox Corporation, less the amount of investments in affiliates at equity included therein, and less the amount of short and long-term debt assigned to Xerox Equipment Financing, as ascertained from the audited books, records and audited consolidated financial statements of Xerox Corporation.

Section 4.03. Definition of Compensation.  Except as provided in Section 4.04 hereof, the "compensation" of a Participant for any calendar year shall mean:

(a)  with respect to Participants paid through the Company's Rochester payroll system, the total of amounts paid during which time the employee was an eligible Participant pursuant to Section 3.01 during such calendar year and classified under the following payroll earnings codes established by the Company:

| | | | | |
|---|---|---|---|---|
| AJ | EW | PI | QI | SF |
| B1 | GT | PN | QL | SJ |
| BN | HD | PR | QM | SR |
| C1 | HL | QA | QQ | TD |
| CI | MD | QB | QS | TE |
| CL | NE | QC | QT | TS |
| CN | OC | QD | QW | VA |
| CO | OJ | QE | QY | VR |
| CS | OT | QG | QZ | |

(b)  with respect to Participants paid other than through the Company's Rochester payroll system, the total of amounts paid during which time the employee was an eligible Participant pursuant to Section 3.01 during such calendar year and which would be attributable to the payroll earnings codes listed above.

For Plan Years commencing prior to December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $200,000 for the Plan Year, adjusted for changes in the cost of living as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of a Participant.

XC 000123

For Plan Years commencing after December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year, adjusted as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of a Participant.

Section 4.04. Compensation in Special Cases.

(a) Compensation of a Participant who is an employee of the Employer pursuant to Section 3.02 who at any time during a calendar year ending prior to his normal retirement date is absent due to physical or mental disability leave under Section 3.05 shall include for the period of such absence and entitlement an amount equal to the basic compensation which he would have received during such period if he had been actively employed and paid at the rate of basic compensation applicable to him prior to such absence.

(b) Notwithstanding Section 4.01, and except as otherwise provided in Section 3.04(b), a Participant who is on nonmilitary or military leave of absence under Section 3.03 or 3.04 or layoff shall receive a contribution during a calendar year only if he has an Hour of Service as defined in the first sentence of Section 3.01(f)(1) for such year; he shall receive such contribution based solely on compensation as a Participant for services actually performed during such year.

(c) Notwithstanding Section 4.01, a Participant who on the last day of a calendar year is separated from employment but is on salary continuance as a result of a reduction in the work force shall receive a contribution for that year, provided that his Account balances remain in the Plan on the last day of such calendar year; such Participant shall receive such contribution based both on compensation for services actually performed during such year, if any, and on salary continuance payments received during such year (exclusive of lump sum salary continuation payments).

(d) Notwithstanding any contrary provisions in this Plan, those Participants who become classified as inactive without benefits shall not be considered to be receiving compensation for any purpose under this Plan.

Section 4.05. Contribution for Year of Retirement, Death or Becoming Classified as Inactive Without Benefits. In the event that a Participant

(a) retires hereunder pursuant to Sections 7.01, 8.01 or 8.02,

(b) dies, or

(c) becomes classified as inactive without benefits pursuant to Section 3.02(g)

on or as of the date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an Employer contribution under Section 4.01 for the year in which his retirement, death or classification as inactive without benefits occurs to the extent of the compensation paid to him for services actually rendered during such year, in the event of retirement or death, or for disability benefits received until becoming classified as inactive without benefits, in the event of becoming so classified. Such compensation shall be determined in accordance with the provisions of Sections 4.03 and 4.04. The entitlement of a Participant to an Employer contribution for the year of retirement, death or classification as inactive without benefits in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable. Notwithstanding any other provision of the Plan, as soon as administratively feasible after the Employer contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the Participant or his beneficiary, as the case may be, in such manner as shall be determined by the Plan Administrator in his absolute discretion.

Section 4.06. Contribution for Employees Who Transfer to Any Entity That Reports Into the Xerox New Enterprise Board ("XNE Company") or to Any Subsidiary of the Employer. In the event that a Participant transfers employment from the Employer to an XNE Company of the Employer or to any subsidi-

ary of the Employer, such Participant shall receive credit for Hours of Service and for benefit accrual up to the date of transfer of employment to the XNE Company or to such subsidiary, provided such Participant remains employed by the XNE Company or by such subsidiary on December 31 of the year of such transfer.

Section 4.07. Allocation of Employer Contributions. The Employer contribution on behalf of a Participant for any year shall be allocated in accordance with the table in Section 4.01. Funds allocated shall be currently distributed or deferred and held in the Trust, as the case may be, pursuant to the provisions of Section 4.05 and Article Six.

Section 4.08. Payment to Trustee. The aggregate amount of Employer contributions for any year which are not currently distributable to Participants pursuant to subsections (b) and (c) of Section 6.02 shall be paid to the Trustee before the end of the period following the close of such year in order that such amount may be deducted by the Employer for federal income tax purposes for such year.

Section 4.09. Transfers and Rollovers of Funds From Other Plans.

(a) In addition to the Employer contributions to the Plan provided for in this Article, and in addition to the employee contributions made by Participants under Article Five, there may also be paid over to the Plan other amounts which have been held under Plans which are qualified under Section 401 of the Code maintained by the Employer, a subsidiary of the Employer or any company substantially all of whose capital stock or some or all of the assets of which have been acquired by the Employer which have been discontinued or terminated with respect to a group of employees. The amounts transferred to this Plan under this Section shall be allocated to the Accounts established for the employees whose participation in such other Plan has been terminated in accordance with the instrument providing for and governing such transfer. An employee on whose behalf an account is established under this Section shall be a Participant, but shall be entitled to share in allocations of contributions based on compensation only if he becomes a Participant in accordance with Section 3.01. The amount, if any, transferred on behalf of a Participant from the AMTX, Inc. Employees' Retirement Savings Plan shall be held as a subaccount (the "AMTX Employee Before-Tax Savings Account") of his Employee Before-Tax Savings Account. The amount, if any, credited as of December 31, 1996 to a Participant's Member Deposit Account under the XDS Retirement Income Plan shall be credited as of January 1, 1997 to a subaccount (the "XDS Employee After-Tax Savings Account") of his Employee After-Tax Savings Account and the amount, if any, credited as of December 31, 1996 to a Participant's Company Contribution Account under the XDS Retirement Income Plan shall be credited as of January 1, 1997 to a subaccount (the "XDS Company Savings Account") of his Profit Sharing Savings Account.

Amounts which have been transferred to this Plan prior to April 1, 1975, in connection with the merger, termination or discontinuance of other plans qualified under Section 401 of the Code shall be allocated to Profit Sharing Savings, Retirement and Employee Savings Accounts established for the employees whose participation in such other plans has been terminated. The Plan Administrator shall have sole discretion regarding the Accounts to which such funds shall be credited, except that amounts attributable to Employer contributions made under such former Plans shall not be credited to the Employee After-Tax Savings Account for any Participant.

(b) In addition to the contributions provided for herein, there may also be paid over to the Plan amounts which have been held under the Retirement Income Guarantee Plan maintained by the Employer for retirees, vested former employees, beneficiaries or alternate payees, either by spinoff of such accounts and merger into this Plan in a transaction to which Section 414(1) applies or at the option of certain retirees and vested terminated employees. Amounts so received shall be credited to Accounts in this Plan and each such Account shall be invested in funds available under this Plan, on one percent increments, at the option of the person for whom such Account is held, or in default of any such election, in the Income Fund. Notwithstanding the preceding sentence, the Plan Administrator shall have the discretion to delay implementation of investment elections with respect to Accounts established in any designated transaction pending receipt of a ruling, determination letter, legal opinion or other guidance or approval where deemed appropriate on the advice of counsel to the Plan.

(c) In addition to the contributions provided for herein, there may also be paid over to the Plan amounts which have been distributed pursuant to a diversification election under the Xerox Corporation Employee Stock Ownership Plan (the "ESOP") maintained by the Employer, at the option of such employees eligible for diversification under the terms of the ESOP. Amounts so received in cash only shall be credited to Accounts in this Plan and each such Account shall be invested in funds available under this Plan, in one percent increments, at the option of the person for whom such Account is held, or in default of any such election, in the Income Fund.

(d) Participants who previously participated in The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union Plan") shall have their assets in such Union Plan transferred into the Plan upon becoming Participants and the allocations in the Separate Funds shall remain the same as in the Union Plan.

(e) Participants who transfer to participation in the Union Plan shall have their assets in this Plan transferred to the Union Plan and the allocations in the Separate Funds shall remain the same as in this Plan.

Section 4.10. Maximum Allocation to Participants.

(a) As of the close of each calendar year, and before the Employer contribution for such year is paid to the Trustee, the Plan Administrator shall determine the tentative annual addition, as hereafter defined, to each Participant's Accounts for such year. The term "tentative annual addition" for any calendar year means the sum of:

(1) The amount allocated on the Participant's behalf under any other defined contribution plan, as defined in Section (3)(34) of ERISA, qualified under Section 401 or 403(a) of the Code, maintained by the Employer for such calendar year;

(2) The Employer contribution to be allocated to the Participant's Profit Sharing Savings Account under this Plan with respect to such year based on the Employer contribution determined under Section 4.01 reduced by any amounts elected to be distributed in cash under Section 6.03(b) and distributed in stock under Section 6.02(c);

(3) The amount held or paid over to the Trustee for such year by the Employer to be credited to a Participant's Employee Before-Tax Savings Account;

(4) The Employer contribution to be allocated to the Participant's Company-Matched Savings Account, if any, with respect to such year based on the Employer contribution determined under Section 4.10 of this Plan; and

(5) The amount held or paid over to the Trustee for such year by the Employer to be credited to a Participant's Employee After-Tax Savings Account.

(b) (1) If the tentative annual addition for such calendar year exceeds the maximum annual addition for such year, as hereafter defined, the Plan Administrator shall reduce such amount of the Employer contribution allocated to the Participant's Profit Sharing Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to reduce the total Employer contribution determined under Section 4.01 by said amount.

(2) If after reducing all of the Employer contribution included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such refund) is still in excess of the maximum annual addition, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the Participant held by the Employer or paid over to the Trustee which were included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the number of units in the Separate Funds which were credited to the Participant's Employee After-

Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(3) If after reducing all of the employee contributions included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the Employer contribution allocated to the Participant's Company-Matched Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to pay the amount of such reduction to the Participants in cash.

(4) If after reducing all of the Employer contribution allocated to his Company-Matched Savings Account included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the Participant held by the Employer or paid over to the Trustee which were allocated to his Employee Before-Tax Savings Account and included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition and the number of units in the Separate Funds which were credited to the Participant's Employee Before-Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(5) Notwithstanding anything in this Section 4.10 to the contrary, the tentative annual addition shall be reduced to the extent required to cause such tentative annual addition to not exceed the maximum annual addition, by first reducing the amount which would otherwise be allocated to the Participant's Accounts under this Plan, and only after such amounts have reduced to zero, by reducing the amounts which otherwise would have been allocated to such Participant's Accounts under any other plan maintained by the Employer.

(c) (1) If the amounts allocated to the Participant's Accounts under this Plan and any other defined contribution plan, as defined in Section 3(34) of ERISA and qualified under Section 401(a) or 403(a) of the Code, maintained by the Employer for a year exceed the maximum annual addition for such year because of a reasonable error in determining the amount of elective deferrals within the meaning of Section 402(g) of the Code, or under other limited facts and circumstances, the Plan Administrator shall direct the Trustee to distribute employee contributions (and earnings thereon), to the extent that the distribution reduces the excess amount in the Participant's Account.

(2) If, after refunding employee contribution (and earnings thereon) under subparagraph (1) above, the annual addition is still in excess of the maximum annual addition, the Plan Administrator shall direct the Trustee to distribute elective contributions as defined in Section 402(g) of the Code to the extent that the distribution reduces the excess amount in the Participant's Account and, if the affected Participant is a highly compensated employee as defined in Code Section 414(q), to the extent that the elective contribution has not been matched.

(d) (1) The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000, or, if greater one-fourth of the dollar limitation under Section 415(b)(1)(A) of the Code adjusted under Section 415(d) of the Code. If the Participant also participates in one or more defined benefit plans of the Employer (whether or not terminated) the maximum annual addition shall be reduced so that for such calendar year the sum of the Defined Benefit Plan Faction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0.

(2) The Defined Benefit Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the projected annual benefit of the Participant under any defined benefit plan maintained by the Employer and (b) the denominator of which is the lesser of one hundred twenty-

five percent of the limitation under Section 415(b)(1)(A) of the Code or one hundred forty percent of the limitation under Section 415(b)(1)(B) of the Code (taking into account the effect of Section 235(G)(4) of the Tax Equity and Fiscal Responsibility Act of 1982).

(3) The Defined Contribution Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the sum of the annual additions to a Participants' Accounts under all defined contribution plans maintained by an Employer as of the close of such calendar year (subject to reduction to the extent permitted under the transition rule in Section 235(g) of the Tax Equity and Fiscal Responsibility Act of 1982), and (b) the denominator of which is the sum of the lesser of one hundred twenty-five percent of the limitation under Section 415(c)(1)(A) of the Code or one hundred forty percent of the limitation under Section 415(c)(1)(B) of the Code, for such calendar year and for all prior calendar years during which the Participant was employed by an Employer; provided, however, that the denominator may be increased by using for calendar years ending prior to January 1, 1983, an amount equal to the denominator in effect for the calendar year ending in 1982, multiplied by the transition fraction provided in Section 415(e)(6)(B) of the Code.

(e) (1) For the purposes hereof, the term "net excess contribution", for all calendar years commencing January 1, 1976, shall mean (i) the aggregate amount by which the annual contributions allocated to a Participant's Retirement Account, if any, and Profit Sharing Savings Account exceeded the maximum annual addition because such Participant's compensation under Section 4.03 was determined without disregarding Section 4.04, reduced by (ii) the aggregate amount by which the maximum annual addition in each year subsequent to a year of excess contribution exceeded the contribution to such Participant's Retirement Account, if any, and Profit Sharing Savings Account.

(2) For all calendar years commencing with the year beginning after December 31, 1984, the Employer contribution which is otherwise to be made to a Participant's Retirement Account, if any, and Profit Sharing Savings Account shall be reduced by any net excess contribution not previously applied as herein provided.

(3) If the net excess contribution exceeds the Employer contribution for a Plan year, such excess shall be carried over to the following year and applied as herein provided, until the total net excess contribution has been so applied.

(f) In the case of a Participant

(1) who is permanently and totally disabled (as defined in Section 22(c)(3) of the Code) and

(2) who is not an officer, owner, or highly compensated,

the word "compensation" means for purposes of Section 4.10(d) the compensation the Participant would have received for the year if the Participant was paid at the rate of compensation paid immediately before becoming permanently and totally disabled. Contributions made with respect to the compensation (as defined in this subsection (e)) of a Participant shall be nonforfeitable when made.

Section 4.11. Matching Company Contributions.

(a) The Employer shall make contributions on behalf of Participants of an amount equal to thirty-five percent of the amount (I) which each Participant contributes under Section 5.01 to his Employee Before-Tax Savings Account during such calendar year and (ii) of the Profit Sharing Savings Account contribution which each Participant transfers under Section 6.03 to the Trust for such calendar year; provided, however, that for periods after December 31, 1989, such matching contributions shall be made only with respect to contributions or transfers described in clauses (i) and (ii) of this sentence made by or on behalf of Participants the terms of whose employment are governed by collective bargaining.

(b) Contributions made each year by the Employer on behalf of a Participant under this Section 4.11 shall not exceed one and four-tenths percent of such Participant's compensation (as defined in Sec-

tion 4.03) for the year with respect to which the contribution is made, and shall be subject to the limitations of Section 4.10 and 5.06.

(c) Participants who have terminated their employment with the Employer (except by reason of death, retirement, approved leave of absence, disability, or layoff) prior to the last day in February of the year the contribution is made by the Employer pursuant to this Section are not eligible to receive such Employer contribution.

(d) A contribution made by the Employer under this Section 4.11 will be invested in the Separate Funds in the same proportions as such Participant has elected to invest his Before-Tax Savings Account.

(e) The Employer contribution provided for under this Section 4.11 shall be made at the same time the Employer contribution under Section 4.01 is made.

(f) With respect to the plan year ended November 30, 1992 only, the Employer shall make a contribution of $0.08 for each $1.00 each nonhighly compensated employee (within the meaning of Section 414(q) of the Code) of Xerox International Partners contributes under Section 5.01 to his Employee Before-Tax Savings Account during such year.

Section 4.12. Rollover Contributions. In addition to the Employer contributions provided for in this Article, the employee contributions made by Participants under Article Five, and the transfer of funds from other plans as provided in Section 4.09(a) herein, there may also be paid over to the Plan other amounts which have been held under plans which are qualified under Section 401(a) or 401(k) of the Code maintained by a previous employer of a Participant, or held under a Participant's Individual Retirement Account, providing such rollovers are made in the form of cash. Such rollovers shall be invested according to investment instructions specified by the Participant and may be split among the funds in one percent increments. All employees shall be permitted to make such rollover contributions to the Plan at any time whether such rollovers are made as direct rollovers from previous plans or as sixty-day rollovers made by a Participant. Qualified rollovers into the Plan must be from taxable distributions and may include installments paid over less than ten years and payments to a Participant or spousal beneficiary under a Qualified Domestic Relations Order ("QDRO") or because of death. Rollovers from multiple sources into the Plan shall be permissible.

Payments that are not eligible for rollover into the Plan include (i) periodic payments made over a specific period of at least ten years or more; (ii) minimum distribution amounts; (iii) nontaxable distributions; and (iv) distributions to non-spousal beneficiaries under a QDRO or because of death.

## ARTICLE FIVE

## EMPLOYEE SAVINGS

Section 5.01. Savings by Participants. In lieu of receiving such compensation, each Participant (except for a Participant employed during such year solely by a subsidiary of affiliate under Section 3.06 and as otherwise provided in Section 3.02) may have contributed to the Trust for any Plan Year with respect to which he is a Participant under the Plan amounts which do not exceed a total of eighteen percent of his compensation for such year to each of the Employee Savings Accounts referred to in Sections 5.01(a) and 5.01(b) below, for a combined maximum total of eighteen percent of his compensation for such year, also subject to a combined maximum allocation of $7,000 for any calendar year (or such higher amount as may be prescribed by indexing pursuant to Section 402(g) of the Code) to the Account referred to in Section 5.01(b) below and the Profit Sharing Savings Account. Notwithstanding the above, for the purposes hereof, compensation for such year (as permitted under Treasury Regulation Section 1.401(k)-1(g)(2)(i)) shall be limited to the portion of compensation of the calendar year in which the employee was an eligible employee. Such amounts, herein referred to as "employee savings", shall be collected by the Employer by means of payroll deduction at convenient intervals in accordance with uniform rules of general applicability established by the Employer. Each Participant may save up to a maximum of the allowable percentage of his compensation, subject to the maximum allowable dollar limit for any calendar year, for such interval taking into account only such compensation attributable to

current and prospective payroll periods. Neither the Employer nor the Plan Administrator shall have any liability for the payment of interest on any employee savings pending the payment of such savings to the Trustee. The amount of each Participant's employee savings shall be allocated to the Employee Savings Accounts which shall be established for him. Amounts allocated to his Employee After-Tax Savings Account and his Employee Before-Tax Savings Account (collectively, the "Employee Savings Accounts") shall be invested by the Trustee in such Separate Funds, as defined in Section 6.02(a), as elected by the Participant under Section 5.02. The Plan Administrator may, in his discretion, prescribe for any Plan Year lower maximums of compensation which may be elected under this Section 5.01, which lower maximums may apply separately to contributions to either or both of the Employee Savings Accounts referred to below or to contributions to both Accounts in the aggregate. In addition, savings contributions may be further limited as provided in Section 4.10, Section 5.05, or Section 5.06.

(a) Amounts allocated by a Participant to his "Employee After-Tax Savings Account" shall constitute employee contributions under the Code and shall not reduce the Participant's compensation otherwise subject to current withholding of Federal income taxes.

(b) Amounts allocated by a Participant to his "Employee Before-Tax Savings Account" shall constitute employer contributions under the Code and shall reduce in an equal amount the Participant's compensation otherwise subject to current withholding of Federal income taxes.

Section 5.02. Authorization and Elections With Respect to Employee Savings. Any Participant who desires to have payroll savings contributions made shall make an election to do so in such form as shall be prescribed by the Plan Administrator, which form may include enrollment through Xerox Facts or any successor system so provided. Payroll deductions in an amount elected by the employee not in excess of the maximum amount permitted under Section 5.01 shall begin as soon as administratively feasible following filing of such form with the Employer. The Participant shall specify on such form the amounts allocable to each of his Employee Savings Accounts which shall be invested by the Trustee in each of the Separate Funds. The Plan Administrator shall establish uniform rules of general applicability designating the amounts of each Participant's payroll savings which for administrative convenience may be invested in each Separate Fund. The Employer may also establish rules regarding minimum payroll deductions.

Section 5.03. Termination of Payroll Deductions for Employee Savings. Any Participant who has elected to have payroll savings contributions made may terminate his authorization for such contributions at any time by filing a notice with the Employer in such manner as may be prescribed by the Plan Administrator, which may include an election made through Xerox Facts or any successor system so provided. Such notice shall take effect as soon as administratively feasible after filing of such notice by the employee. The Plan Administrator may establish uniform rules of general applicability with respect to conditions, including waiting periods, under which such a Participant can resume payroll savings contributions.

Section 5.04. Distribution of Excess Deferral Amounts. Notwithstanding any other provision of the Plan, the excess deferral amount, adjusted according to subsection (c) below, shall be distributed to a Participant who claims such excess deferral amount for a calendar year. Such distribution shall be made no later than April 15 following the end of the calendar year.

(a) For purposes of this Section 5.04, "excess deferral amount" shall mean the elective deferrals within the meaning of Section 402(g) of the Code that the Participant allocates to this Plan and claims pursuant to the election procedure set forth in subsection (b) below.

(b) The Participant's election to claim an excess deferral amount for a calendar year shall be in writing, shall be submitted to the Plan Administrator no later than March 1 following the end of such calendar year, shall specify the excess deferral amount, and shall state that if such amount is not distributed such excess deferral amount, when added to amounts deferred under other plans or arrangements described in Sections 401(k), 408(k) or 403(b) of the Code, exceeds the limit imposed on the Participant by Section 402(g) of the Code for the calendar year in which the deferral occurred. A Participant who has an excess deferral amount calculated by taking into account only elective deferrals under the Plan and other plans, contracts or arrangements maintained by the Employer or any affiliate described in Section 3.06 shall be deemed to have made the appropriate notification with respect to such excess deferral amount.

(c) The amount distributed to a Participant pursuant to this Section 5.04 with respect to a calendar year shall be increased or decreased by investment income or losses attributable thereto, calculated according to any reasonable method consistent with regulations under Code Section 402(g).

(d) If any Matching Contributions have been allocated with respect to excess deferral amounts, they shall be forfeited and applied to reduce future Employer contributions for the Plan Year.

Section 5.05. Actual Deferral Percentage Limitations.

(a) Notwithstanding any provision in this Plan to the contrary, the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for a Plan Year shall not exceed the greater of (1) or (2) below.

(1) the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by 1.25; or

(2) the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by two, provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees by more than two percentage points or such lesser amount as the Secretary of the Treasury shall prescribe to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Employee.

(b) For the purposes of this Section 5.05, the following definitions shall apply:

(1) "Actual Deferral Percentage" shall mean the ratio (expressed as a percentage), of the sum of Employee Before-Tax Savings and Profit Sharing Savings, on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the Plan Year.

(2) "Average Actual Deferral Percentage" shall mean the average (expressed as a percentage) of the Actual Deferral Percentages of the Eligible Participants as a group.

(3) "Eligible Participant" shall mean any employee of an Employer who is otherwise authorized under the terms of the Plan to receive Profit Sharing Savings or to elect Before-Tax Savings for the Plan Year.

(4) "Family Member" means an individual described in Section 414(q) (6)(B) of the Code.

(5) "Highly Compensated Employee", with respect to a Plan Year, means an individual designated as such by application of Section 414(q) of the Code.

(6) "Nonhighly Compensated Employee" means an employee of an Employer who is neither a Highly Compensated Employee nor a Family Member.

(c) (1) For purposes of this Section 5.05 and Section 5.06, the Actual Deferral Percentage for any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Before-Tax Savings or Profit Sharing Savings allocated to his Account under two or more plans or arrangements described in Section 401(k) of the Code that are maintained by an Employer or other affiliate organization described in Section 3.06 shall be determined as if all such Before-Tax Savings or Profit Sharing Savings were made under a single arrangement.

(2) For purposes of determining the Actual Deferral Percentage of a Participant who is a Highly Compensated Employee who is a five percent owner or one of the ten most Highly Compensated Employees, the Before-Tax Savings, Profit Sharing Savings, and compensation of such Participant shall include the Before-Tax Savings, Profit Sharing Savings, and compensation of

Family Members, and such Family Members shall be disregarded in determining the Actual Deferral Percentage for Participants who are Nonhighly Compensated Employees.

(3) The determination and treatment of the Before-Tax Savings, Profit Sharing Savings, and Actual Deferral Percentage of any Participant shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

(d) The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the requirements of this Section 5.05 and whereby contributions which would otherwise be treated as Before-Tax Savings or Profit Sharing Savings may be treated as After-Tax Savings, or whereby contributions may be refunded to employees as follows:

(1) Notwithstanding any other provision of the Plan, excess contributions adjusted for investment income or investment loss allocable thereto, calculated according to any reasonable method consistent with regulations under Code Section 402(g), shall be distributed no later than the last day of the Plan Year, to Participants on whose behalf excess contributions were made for the preceding Plan Year. For purposes of this Section 5.05, "excess contributions" shall mean the amount described in Section 401(k)(8)(B) of the Code.

(2) The excess contributions to be distributed to the Participant shall, after adjustment for income or loss, be reduced (in accordance with regulations) by any excess deferral amount distributed to the Participant under Section 5.04.

(3) If any Matching Contributions have been allocated with respect to excess contributions, they shall be forfeited and applied to reduce future Employer contributions for the Plan Year.

<u>Section 5.06</u>. <u>Limit on After-Tax Savings and Matching Company Contributions</u>.

(a) Notwithstanding any provision in this Plan to the contrary, the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the greater of (1) or (2) below:

(1) the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by 1.25; or

(2) the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by two, provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees by more than two percentage points.

(b) Notwithstanding any provision in this Plan to the contrary, after the application of Section 5.05 and subsection (a) of this Section 5.06, the sum of the Average Actual Deferral Percentage and the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the greater of:

(1) the sum of

(i) the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by 1.25; and

(ii) the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan

Year plus two percentage points , but not more than the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees multiplied by two; or

(2) the sum of

(i) the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year, multiplied by 1.25; and

(ii) the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year, plus two percentage points, but not more than the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees, multiplied by two.

(c) For the purposes of this Section 5.06, the following definitions shall apply:

(1) "Average Contribution Percentage" shall mean the average (expressed as a percentage), of the Contribution Percentages of the Eligible Participants as a group.

(2) "Contribution Percentage" shall, at the discretion of the Plan Administrator, mean either the ratio (expressed as a percentage), of the sum of the Employee After-Tax Savings and Matching Company Contributions under the Plan on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the Plan Year, or the ratio expressed as a percentage) of the sum of the Employee Before-Tax Savings, Employee After-Tax Savings and Matching Company Contributions on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the Plan Year, or such other ratio permitted by the Code and selected by the Plan Administrator.

(3) "Eligible Participant" shall mean any employee of an Employer who is otherwise authorized under the terms of the Plan to have After-Tax Savings or Matching Company Contributions allocated to his Account for the Plan Year.

(4) "Family Member", "Highly Compensated Employee", and "Nonhighly Compensated Employee" have the meanings set forth in Section 5.05(b).

(d) (1) For purposes of this Section 5.06, the Contribution Percentage for any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to make After-Tax Savings or to have Matching Company Contributions or Before-Tax Savings allocated to his Accounts under two or more plans described in Section 401(a) of the Code or arrangements described in Section 401(k) of the Code that are maintained by an Employer or other affiliated organization described in Section 3.06 shall be determined as if all such contributions and deferrals were made under a single plan.

(2) In the event that this Plan satisfies the requirements of Section 410(b) of the Code only if aggregated with one or more plans, or if one or more other plans satisfy the requirements of Section 410(b) of the Code only if aggregated with this Plan, then this Section 5.06 shall be applied by determining the Contribution Percentages of Eligible Participants as if all such plans were a single plan.

(3) For purposes of determining the Contribution Percentage of an Eligible Participant who is a Highly Compensated Employee who is a five percent owner or one of the ten most Highly Compensated Employees, the After-Tax Savings, Matching Company Contributions, Before-Tax Savings and compensation of such Participant shall include the After-Tax Savings, Matching Company Contributions, Before-Tax Savings and compensation for Family Members, and such Family Members shall be disregarded in determining the Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees.

(4) The determination and treatment of the Contribution Percentage of any Participant shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

(e) The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the requirements of this Section 5.06, or whereby contributions may be distributed as follows:

(1) Excess aggregate contributions shall be forfeited, if otherwise forfeitable under the terms of this Plan, or if not forfeitable, distributed no later than the last day of each Plan Year, to Participants to whose Accounts After-Tax Savings or Matching Company Contributions were allocated for the preceding Plan Year. For the purposes of this Section 5.06 "excess aggregate contributions" shall mean the amount described in Section 401(m)(6)(B) of the Code.

(2) The excess aggregate contributions to be distributed to a Participant with respect to a Plan Year shall be adjusted for income or loss, calculated according to any reasonable method consistent with regulations under Section 402(g) of the Code.

(3) Excess aggregate contributions for a Plan Year shall be distributed in the following order: (i) first from the Profit Sharing Savings Account; (ii) then, if necessary, from the Participant's After-Tax Savings Account; (iii) then, if necessary, forfeited if otherwise forfeitable under the terms of the Plan (or if not forfeitable, distributed) from the Participant's Matching Company Savings Account; and (iv) finally, if necessary, from the Participant's Before-Tax Savings Account.

(4) Amounts forfeited by Highly Compensated Employees under this Section 5.06 shall nevertheless be treated as annual additions under Section 4.10.

## ARTICLE SIX

## PROFIT SHARING SAVINGS ACCOUNTS, EMPLOYEE SAVINGS ACCOUNTS, COMPANY-MATCHED SAVINGS ACCOUNTS, RETIREMENT SAVINGS ACCOUNTS AND ROLL-OVER ACCOUNTS

Section 6.01. Maintenance of Accounts and Valuation in Terms of Units. As a permanent accounting record under the Plan, there shall be maintained the following accounts for each Participant:

(a) Profit Sharing Savings Account (including, for certain Participants, the "XDS Company Savings Account")

(b) Employee After-Tax Savings Account (including, for certain Participants, the "XDS Employee After-Tax Savings Account")"

(c) Employee Before-Tax Savings Account (including, for certain Participants, the AMTX Employee Before-Tax Savings Account)

(d) Company-Matched Savings Account

(e) Retirement Savings Account (maintained solely for Participants who are eligible employees of XES pursuant to the provisions of Schedule A attached hereto)

(f) Rollover Account.

Each Account shall be credited with all amounts allocable thereto pursuant to Article Four or Article Five, as the case may be, and shall be charged with distributions therefrom as provided in the Plan.

The total value of the assets held in each Separate Fund and the interest of each Participant therein shall be measured in terms of units which shall be equal undivided interests in such assets. For all purposes of this Plan, the Plan Administrator may, in calculating the value of units hereunder and in crediting units to the Accounts of any Participant, make such rules for the disregarding of small fractions as are desirable.

Section 6.02. Election With Respect to Profit Sharing Savings Accounts. Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect that the funds allocable to his Profit Sharing Savings Account from such contribution be used to provide benefits in one or more of the following ways:

(a) transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.03, 4.09, 5.04 through 5.07, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the

(i) "Balanced Fund", which shall be invested primarily in equity and fixed income securities and in other securities or property as determined in accordance with guidelines adopted from time to time by the Board of Directors of Xerox Corporation.

(ii) "Xerox Stock Fund", which shall be invested by the Trustee in the Common Stock of Xerox Corporation, hereafter called "Xerox Stock" and may hold some cash for administrative purposes.

(iii) "Income Fund", which shall be invested primarily in fixed income instruments as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(iv) "U.S. Stock Fund", which shall be invested primarily in stocks of medium to large U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(v) "Small Company Stock Fund", which shall be invested primarily in stocks of smaller U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(vi) "International Stock Fund", which shall be invested primarily in stock of companies based outside of the United States as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(vii) Any other fund hereafter established by the Board of Directors of Xerox Corporation which shall be invested in accordance with guidelines adopted from time to time by the Board of Directors of Xerox Corporation.

(each of which funds is referred to as a Separate Fund and which are collectively referred to as Separate Funds).

OR

(b) distributed to him in cash after deduction of all legally required withholding taxes.

OR

(c) invested by the Employer, on behalf of such Participant, in Xerox Stock after all legally required withholding taxes have been deducted and the stock so purchased distributed to the Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the Participant in cash. The Employer shall purchase stock for Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the Employer contribution for such purchase for such year has been made available by it. The portion of such Employer contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by the Employer on the March 15 following the close of the year to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for Participants who have elected the alternative form of benefit provided by this subsection, the Employer may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular Employer contribution.

Section 6.03. Allocation of Amounts Allocable to Profit Sharing Savings Accounts and Company-Matched Savings Accounts to Separate Funds. For administrative convenience, the Plan Administrator shall establish uniform rules of general applicability specifying the proportions in which a Participant may allocate his Employer contributions between the options provided in Section 6.02.

The Plan Administrator shall designate the form, including Xerox Facts or any successor system so provided, in which the Participant may designate the percentage of the amount allocable to his Profit Sharing Savings Account which shall be invested in each Separate Fund and the proportional amount which the Participant elects to take in cash or in distribution of Xerox Stock. An election form shall be filed with the Plan Administrator on or before such date as shall be fixed by the Plan Administrator prior to the Employer contribution for any year and shall be effective with respect to Employer contributions made after the date it is filed with the Plan Administrator. An election made via Xerox Facts or any successor system so provided shall be deemed made when made on Xerox Facts or any successor system so provided. An election form or any other form filed by a Participant in connection with the Plan shall be deemed filed when and if it is actually received by the Plan Administrator at the address specified on such form or any accompanying instructions.

Any Participant who does not make a new election by such date fixed by the Plan Administrator shall be deemed to have elected the same percentage allocation of the amount allocable to his Profit Sharing Savings Account as specified in the last previous election form duly filed by him. If no duly filed election is on record for such Participant, he shall be deemed to have elected that the amount allocable to his Profit Sharing Savings Account be invested by the Trustee in the Balanced Fund.

Section 6.04. Valuation Date. The Trustee shall determine the value of the assets held in each Separate Fund as of the close of each accounting year of the Trust and as of the close of business each day during the accounting year of the Trust (each of which dates is referred to herein as a "valuation date"). For purposes of this Section, the close of any accounting year of the Trust shall be deemed to be the last day of such year on which the New York Stock Exchange is open for trading, and the valuation computed as of the close of business each day shall be deemed to be the close of business on such day on which the New York Stock Exchange is open for trading. In determining the total value of such assets as of any valuation date, the Trustee shall appraise them at their market or fair value of such date, and shall give effect to all income, profits or losses and increases or decreases in the value of each Separate Fund. All items of income and expense shall be taken into account on an accrual basis. Following the determination of the value of the assets held in each Separate Fund as of any valuation date, the unit value as of such valuation date shall be determined in accordance with Section 6.05.

Section 6.05. Determination of Unit Values of Each Separate Fund.
The determination of the unit value of each Separate Fund as of any valuation date shall be made by dividing the total value of the assets in each Separate Fund, as determined by the Trustee in accordance with Section 6.04, by the number of units in each Separate Fund credited to the Profit Sharing Savings Accounts, Employee Savings Accounts, Company-Matched Savings Accounts, Retirement Savings Ac-

counts and Rollover Accounts of all Participants. On any valuation date a uniform change may be made in the value of all outstanding units in any of the Separate Funds, provided that such change shall not affect the aggregate value of Participant's Accounts in such Fund as of such valuation date.

Section 6.06. Determination of Value of Profit Sharing Savings Account and Notification to Participants. The value of a Participant's Profit Sharing Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Profit Sharing Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Profit Sharing Savings Account of each Participant shall be credited with the portion of the Employer contribution for the calendar year just completed allocable to such Account. Such amount shall then be invested by the Trustee or distributed to the Participant in cash or Xerox Stock as provided in Section 6.02 and with respect to any amounts invested in any of the Separate Funds, the Participant's Profit Sharing Savings Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Profit Sharing Savings Account.

Section 6.07. Notification to Participants of Amount Credited to Employee After-Tax Savings Account. The value of a Participant's Employee After-Tax Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Employee After-Tax Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Employee After-Tax Savings Account of each Participant shall be credited with the amount of his payroll savings deducted from his compensation. Upon receipt of such payroll savings from the Employer, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Employee After-Tax Savings Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date such employee contributions were deducted from the Participant's compensation) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, the Plan Administrator shall notify each Participant as to the value of his Employee After-Tax Savings Account.

Section 6.08. Notification to Participants of Amount Credited to Employee Before-Tax Savings Account. The value of a Participant's Employee Before-Tax Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Employee Before-Tax Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Employee Before-Tax Savings Account of each Participant shall be credited with the amount of his payroll savings deducted from his compensation. Upon receipt of such payroll savings from the Employer, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Employee Before-Tax Savings Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date such employee contributions were deducted from the Participant's compensation) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, the Plan Administrator shall notify each Participant as to the value of his Employee Before-Tax Savings Account.

Section 6.09. Determination of Value of Company-Matched Savings Account and Notification to Participants. The value of a Participant's Company-Matched Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Company-Matched Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Company-Matched Savings Account of each Participant shall be credited with the Employer contribution for the calendar year just completed pursuant to Section 4.10. The Participant's Company-Matched Savings Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Company-Matched Savings Account.

Section 6.10. Notification to Participants of Amount Credited to Rollover Account. The value of a Participant's Rollover Account on any date shall be the sum of the number of units in each Separate Fund credited to his Rollover Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Rollover Account of each Participant shall be credited with such rollover amounts received by the Plan. Upon receipt of such rollover(s) to the Plan, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Rollover Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date of receipt of such rollover funds) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the rollover amounts are received in full, the Plan Administrator shall notify each Participant as to the value of his Rollover Account.

Section 6.11. Determination of Value of Retirement Savings Account and Notification to Participants. The value of a Participant's Retirement Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Retirement Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the XES contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Retirement Savings Account of each Participant who is an eligible XES employee pursuant to the provisions of Schedule A attached hereto, shall be credited with the portion of the XES contribution for the calendar year just completed allocable to such Account. Such amount shall then be invested by the Trustee such that the Participant's Retirement Savings Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the XES contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each such eligible Participant as to the value of his Retirement Savings Account."

Section 6.12. Transfers Among Separate Funds. The Plan Administrator may, in her sole discretion, adopt uniform rules of general application with respect to the transfers of funds allocated to one of the Separate Funds credited to a Participant's Profit Sharing Savings Account, his Employee Savings Accounts, his Company-Matched Savings Account, his Retirement Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section, a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding such transfer) shall be canceled and debited from his Profit Sharing

Savings, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund and debited from his Profit Sharing Savings, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings Account, Employee Savings Accounts, Company-Matched Savings Account, Retirement Savings Account or Rollover Account, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred.

Section 6.13. Notification to Participants of Amounts Credited to Accounts. Sections 6.06, 6.07, 6.08, 6.09, 6.10 and 6.11 provide for Participants to be notified annually of the value of their Accounts. The Plan Administrator may, however, in her discretion, provide for more frequent notifications to Participants of the amounts credited to any or all of their Accounts. All notifications to Participants, including notifications under Sections 6.06, 6.07, 6.08, 6.09, 610 and 6.11 and this Section, shall be made as of the dates determined by the Plan Administrator.

Section 6.14. Valuation Dates for Payments From the Plan. Payments of Accounts values from the Plan under Sections 7.02, 7.03, 8.05, 8.06, 9.02, 10.02 and 10.03, shall be made as follows, as the context requires:

(a) For Participants who have terminated employment, payments from any Separate Fund, except as noted in subsections (b) and (c) below, shall be made based on the valuation date as of the close of business on the day the distribution request is received, providing such request is received by 4:00 p.m. (New York time), on a day on which the New York Stock Exchange is open for business. Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business. If the Participant elects to receive such distribution in the form of an annuity, however, the valuation date shall be as of the close of business on the date the annuity form is received, providing such annuity form is received on a day on which the New York Stock Exchange is open for business. Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business.

(b) For Participants for whom requests for hardship or discretionary withdrawals are received, payments from any Separate Fund shall be made based on the valuation date as of the close of business on the day a completed request is received, providing such request is received by 4:00 p.m. (New York time), on a day on which the New York Stock Exchange is open for business. Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business.

Section 6.15. Loans to Employees.

(a) A Participant who is an employee of an Employer, or a Participant who has terminated employment with the Employer but who remains a party in interest (as defined by ERISA Section 3(14)) with respect to the Plan, may borrow funds for any reason from his Before-Tax Savings Account, Employee After-Tax Savings Account, Rollover Account or Profit Sharing Savings Account, in a minimum amount of $500 per loan, subject to the limitations in subsection (f) hereof. The loan program shall be administered by the Plan Administrator and the Plan Administrator may establish uniform rules and regulations applicable to the loan program which shall appear in the loan documents and in You and Xerox.

(b) Subject to the interest rate provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, each loan made under this section shall be repayable at an interest rate equal to the Citibank commercial prime rate at December 31, March 31, June 30 and September 30 of each year, plus one percent, as set on January 1, April 1, July 1, and October 1, respectively, by the Plan Administrator.

(c) Repayment schedules shall provide for amortization not less than quarterly. Loans shall be repaid in four and one-half years if the purpose of such loan is other than to acquire a principal residence and fourteen and one-half years if the purpose of such loan is to acquire a principal residence.

(d) Persons may apply for loans pursuant to this Section through Xerox Facts or any successor system so provided.

(e) Amounts borrowed from a Participant's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account shall be security for such loan. No other collateral may be taken as security for any loan.

(f) Loans under this section shall be approved provided that:

(1) No person may have more than five loans outstanding at any time: and

(2) No person may have more than $50,000 in loans outstanding at any time from his Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account reduced by the excess, if any, of (i) the highest outstanding loan balance from the Plan during the twelve-month period ending on the day before the date on which a loan is made, over (ii) the outstanding balance of loans from the Plan on the date on which such loan in made; and

(3) No loans outstanding under this Section shall be in default; and

(4) The aggregate amount of all loans from a person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account is limited to fifty percent of the combined balances in such person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account, which as of the time of the application for such loan are not security for previous loans.

(g) In the event that a person fails to make six monthly payments on a loan for any reason (whether or not such failures are consecutive), the loan shall be considered to be in default in which case:

(1) Such defaulting person may not defer funds into his Employee Savings Account or Profit Sharing Savings Account for a period of twelve months from the date of default;

(2) Such defaulting person may not make withdrawals from his Employee Savings Accounts or Profit Sharing Savings Account for a period of twelve months from the date of default.

(3) An amount equal to the unpaid loan balance will be deemed to be distributed to the Participant for tax purposes, but will be actually distributed only if and when the Participant is entitled to a distribution from the Plan (or is on Disability); and

(4) Such defaulting person may not initiate another loan from the Plan until the defaulted loan is either repaid in full or actually distributed to the Participant.

(h) A loan will be in default in the event that the borrower terminates employment with the Company and fails to repay the loan within ninety days of termination in which case a distribution of the unpaid loan will be made to the Participant and the Participant's Accounts will be reduced by the amount of the unpaid loan. The Plan Administrator shall establish uniform rules of general applicability regarding which Accounts and which Separate Fund, if any, shall be offset to reflect the distribution of the unpaid loan balance; provided, however, that the Account offset first shall be the Participant's AMTX Employee Before-Tax Savings Account, if any.

(i) A loan attributable to a Participant's AMTX Employee Before-Tax Savings Account which is outstanding on December 31, 1994, shall be payable in accordance with the loan provisions of the AMTX, Inc. Employees' Retirement Savings Plan.

(j) Loans taken pursuant to this Section 6.14 will be subject to a $45 loan fee. Such loan fee will be deducted from the Account of a Participant taking a loan.

(k) Loan repayments owed by Participants in qualified military service will be suspended under this Plan as permitted under Section 414(u)(4) of the Code.

## ARTICLE SEVEN

## NORMAL AND DEFERRED RETIREMENT BENEFITS

Section 7.01. Normal Retirement. Each Participant may retire from the service of the Employer at his normal retirement date. A Participant's normal retirement date is the first day of the month coincident with or next following his sixty-fifth birthday or the first day of the month coincident with or next following the Participant's sixtieth birthday if, on such Participant's sixtieth birthday, he is a pilot of an airplane operated by the Company and non-highly compensated as that term is defined in Section 414(q) of the Code. A Participant who has attained his sixty-fifth birthday (sixtieth birthday in the case of a Participant who is a pilot of an airplane operated by the Company on his sixtieth birthday) shall have a nonforfeitable interest in the amounts credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings Accounts, Retirement Savings Accounts and Rollover Accounts. Until retirement, the employee shall remain a Participant under the Plan in all respects, subject to the provisions of Section 7.04(b).

Section 7.02. Amount of Benefits. The benefits to which a Participant shall be entitled upon retirement shall be such as the value of the units credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings Accounts, Retirement Savings Accounts and Rollover Accounts will provide.

Section 7.03. Payment of Benefits. Upon the retirement of a Participant, at such Participant's election, the Plan Administrator shall distribute benefits with respect to the value of the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts in the form of a lump sum. Any Participant may elect that benefits be provided by an annuity payable by a legal reserve life insurance company, or by distributions of such value directly from the Trust, in one of the following forms:

(a) (i) Life Annuity. The Participant is paid a monthly benefit for life.

(ii) Contingent Annuitant Option. The Participant is paid a reduced monthly benefit for life and then, if the Participant's beneficiary is still alive, a monthly benefit is paid to the beneficiary for the remainder of his life which is equal to fifty percent or one hundred percent of the monthly benefit paid to the Participant.

(iii) Last Survivor Option. The Participant is paid a reduced monthly benefit while he and his beneficiary both live. If the Participant's beneficiary dies during the Participant's lifetime, an amount which is equal to fifty percent or one hundred percent of the monthly benefit paid before the beneficiary's death is paid to the Participant for the remainder of his life. If the Participant dies during his beneficiary's lifetime, an amount which is equal to fifty percent or one hundred percent of the monthly benefit paid before the Participant's death is paid to the beneficiary for the remainder of his life.

(iv) Period Certain and Life Option. The Participant is paid a reduced monthly benefit for life with the provision that should the Participant die within five, ten, fifteen or twenty years of the date his benefits commence, the Participant's beneficiary will receive the same monthly payment which the Participant was receiving for the balance of the five, ten, fifteen or twenty-year period.

(v) Cash Refund (Unpaid Balance). The Participant's beneficiary is paid the original amount transferred to the insurance company minus the amount of retirement benefits paid. This option can be combined with any of the options described above, or,

(b) by a combination of the above methods, as follows:

XC 000141

(1) In the event that the Participant elects to receive at least part of his Plan benefits by annuity, the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings Accounts, Retirement Savings Accounts and Rollover Accounts which are to be used to provide such annuity shall be segregated for his benefit (valued as of the valuation date determined pursuant to Section 6.13), and any whole shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings Accounts, Retirement Savings Accounts or Rollover Accounts will be sold by the Trustee, and the proceeds combined with the amount segregated to his separate Account, unless the Participant elects to have the shares distributed to him. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. As soon as administratively feasible following his retirement, the entire amount to be used to provide such annuity segregated to the Participant's separate Account shall then be used by the Trustee at the direction of the Plan Administrator to obtain the annuity under which benefit payments will be made to the Participant and his beneficiary or beneficiaries, if any. Such Participant may elect to receive payments pursuant to any optional form of payment available under such annuity. The election of an optional form of payment may be designated by the Participant on a form provided for that purpose by the Plan Administrator, and the Plan Administrator shall instruct the Trustee to make such election of option effective. Upon the segregation into a separate Account of the Participant's interest in the Trust used to provide such annuity, all units credited to his Accounts representing such funds shall be canceled, and the amount held in such separate Account shall be excluded as an asset of any Separate Fund for purposes of the Plan.

With respect to cases where only a portion of the value of a Participant's Accounts is to be used to purchase an individual annuity contract or a participation in a group annuity contract under this subsection, the Plan Administrator shall establish uniform rules of general applicability regarding from which Accounts and from which Separate Fund, if any, the amount used to purchase such benefit shall be segregated.

(2) Where the Participant receives at least part of his Plan benefit directly from the Trust, the Participant's share in the assets of the Trust to be used for such purpose shall remain undivided and unsegregated pending the payment of benefits to him. The value of the Participant's share in the assets of the Trust available for payment directly from the Trust may be paid:

(A) in a single lump sum as soon as administratively feasible following his retirement,

(B) in periodic payments in accordance with any form of annuity listed in Section 7.03(a), or

(C) to the extent such assets are attributable to the Participant's XDS Employee After-Tax Savings Account, the Participant's XDS Company Savings Account, or (if in excess of $5,000) the Participant's AMTX Employee Before-Tax Savings Account, in substantially equal installment payments over a period certain that does not exceed the Participant's life expectancy or, if the Participant has a designated beneficiary, the joint life expectancies of the Participant and his designated beneficiary, provided that installment payments from the Participant's AMTX Employee Before-Tax Savings Account may not extend over a period of more than ten years and each installment must be not less than $100.

Where payment is to be in the form of a lump sum, the number of units in the Separate Funds representing the Participant's interest in each of the Separate Funds (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and/or Rollover Accounts, as the case may be. The whole number of shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit

Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts may be distributed to him where the balance of his interest is to be paid in a lump sum. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. Where the value of his interest is to be distributed in periodic payments, any such whole shares of Stock represented by units in the Xerox Stock Fund may, in the discretion and at the direction of the Plan Administrator, be either distributed to him or sold by the Trustee and the proceeds credited to any other Separate Fund, in which case the units credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts representing the investment in the Xerox Stock Fund shall be canceled and the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts shall be credited with a number of units equal in value to the amount transferred to another Separate Fund. Upon the exhaustion of the value of the units credited to a Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts, no further benefits shall be due or payable to or on behalf of such Participant.

With respect to cases where a portion of the value of a Participant's Account is to be used to provide periodic payments under this subsection, the Plan Administrator shall establish uniform rules of general applicability regarding from which Accounts and from which Separate Funds, if any, the amount used to provide a lump sum distribution or periodic payment will be withdrawn.

(c) In the case of a termination of employment of any married Participant who has elected to receive an annuity, distribution in the form of an annuity shall automatically be made in the form of the Contingent Annuitant Option with a fifty percent joint and survivor annuity upon the death of the Participant payable for the life of the Participant's spouse unless the Participant elects otherwise during the ninety-day period preceding the annuity commencement date. The Participant's spouse must consent in writing to such election and the consent must be witnessed by a Plan representative or notary public. An election to waive such Contingent Annuitant Option may be revoked at any time prior to the annuity commencement date. The Plan Administrator shall make available to each married Participant who elects an annuity, within a reasonable time before the annuity commencement date, a written explanation giving a general description of the terms and conditions and relative financial effect of such Contingent Annuitant Option, the Participant's right to waive the Contingent Annuitant Option or to revoke such a waiver and the effect of a waiver or revocation thereof and the rights of the Participant's spouse. In the case of the XDS Employee After-Tax Savings Account and the XDS Company Savings Account, if any, of a Participant who has been married throughout the twelve-month period immediately preceding the annuity commencement date, distribution shall be in the form of the Contingent Annuity Option described in the first sentence of this subsection whether or not the Participant elected to receive an annuity, unless the Participant elects a different form or annuity or alternative method of distribution permitted under this section and the Participant's spouse consents in accordance with this subsection.*

(d) At the election of a Participant or his spouse or former spouse who is entitled to an eligible rollover distribution, under Article Seven, Eight or Ten, payment of all (or a specified part thereof) shall be made by direct transfer to the trustee or other custodian of an eligible retirement plan, subject to the following rules:

(1) This subsection shall not apply to an eligible rollover distribution which the Plan Administrator determines to come within any de minimus exception for direct transfers allowed under Section 401(a)(31) of the Code.

(2) To invoke the direct transfer option:

(A) the Participant or his spouse or former spouse must specify, in such form and at such time as the Plan Administrator may prescribe, the eligible retirement plan to which the distribution is to be paid;

(B) the Participant or his spouse or former spouse must provide to the Plan Administrator in a timely manner adequate information regarding the designated eligible retirement plan;

The Plan Administrator may place reasonable reliance on such information concerning a designated eligible retirement plan as is provided by the Participant or his spouse or former spouse and is not required to verify such information. Notwithstanding the foregoing, an alternate payee under a qualified domestic relations order who is not the spouse or former spouse of a Participant may not elect a direct transfer and a spouse or former spouse who is not an alternate payee under a qualified domestic relations order may elect a direct transfer only to an eligible retirement plan which is an individual retirement account.

(3) The Plan Administrator shall, within a reasonable time before a distribution or withdrawal from the Plan, provide to the recipient a written explanation of:

(A) the provisions under which the recipient may have the distribution transferred directly to another eligible retirement plan;

(B) the provision which requires the withholding of tax on eligible rollover distributions which are not transferred directly to another eligible retirement plan;

(C) the provisions under which an eligible rollover distribution will not be subject to tax if transferred to an eligible retirement plan within sixty days after receipt;

(D) the provisions concerning taxation of lump sum distribution.

If a distribution is one to which Section 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than thirty days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2) the Participant, after receiving the notice, affirmatively elects a distribution.

(4) For purposes of this subsection, the following terms shall have the meanings specified below:

(A) "eligible retirement plan" means a plan or arrangement described in Section 401(a)(31)(D) of the Code; and

(B) "eligible rollover distribution" means a distribution that meets the requirements of Section 401(a)(31)(C) of the Code.

(5) No direct transfer is available under this Section with respect to the portion of any distribution attributable to an unpaid loan made pursuant to Section 6.15.

(e) Retirees may elect to receive from their Accounts fixed installments paid on a monthly or quarterly basis. Retirees shall be permitted to change such elections, subject to procedures established by the Plan Administrator.

Section 7.04. Limitations Regarding Payment of Benefits.

(a) Payments shall commence within sixty days after (i) the close of the Plan Year in which the Participant's normal retirement date or actual retirement thereafter occurs, or (ii) subject to the limitation set forth in Section 7.04(b), at a date later than such date which shall have been elected by the Participant. Such election shall be made by the Participant by applying to the Plan Administrator, which application shall specify the date on which the payments of benefits are to commence.

(b) Notwithstanding the provisions of subsection (a) above, the benefits of a Participant who attains age seventy and one-half on or prior to December 31, 1998 shall be entirely distributed to such Participant or shall commence to be distributed, not later than April 1 of the calendar year following the calendar year in which the Participant attains age seventy and one-half unless such Participant remains an employee of the Employer and elects to postpone receipt of such benefits until the year of retirement. Benefits of a Participant who attains age seventy and one-half after December 31, 1998, and who is not a five percent owner in the year such Participant attains age seventy and one-half, shall be entirely distributed to such Participant or shall commence to be distributed the later of the year of retirement or the year of attainment of age seventy and one-half. Notwithstanding the above, benefits of a Participant who is a five percent owner in the year such Participant attains age seventy and one-half shall be distributed to such Participant or shall commence to be distributed not later than April 1 of the calendar year following the calendar year in which the Participant attains age seventy and one-half.

For purposes of this Section 7.04(b), the term "five percent owner" means any person who owns (or is considered as owning within the meaning of Section 318 of the Code) more than five percent of the outstanding stock of the Employer or stock possessing more than five percent of the total combined voting power of all stock of the Employer.

If a Participant's benefit is not distributed in a lump sum, payment of such benefit shall be made during one of the following periods (in accordance with regulations to be prescribed by the Secretary of the Treasury):

(i) the life of the Participant;

(ii) the joint lives of the Participant and his designated beneficiary or beneficiaries;

(iii) a period not extending beyond the life expectancy of the Participant; or

(iv) a period not extending beyond the joint life expectancy of the Participant and his designated beneficiary or beneficiaries.

(c) If a Participant has begun to receive his benefits under the Plan and he dies before all of his benefits have been distributed to him, the remaining portion of his benefits shall be distributed at least as rapidly as under the method of distribution elected as of the date of his death. If a Participant dies before he has begun to receive his benefits, then his entire benefits shall be distributed within five years following the date of his death; provided, however, that this provision shall not be applicable if:

(i) the Participant's retirement benefit is payable to or for the benefit of a designated beneficiary; and

(ii) the Participant's benefit will be distributed (in accordance with regulations to be prescribed by the Secretary of the Treasury) over the life of such designated beneficiary (or over a period not extending beyond the life expectancy of such beneficiary); and

(iii) such distribution commences not later than one year after the date of the Participant's death (or such later date as may be prescribed in regulations promulgated by the Secretary of the Treasury);

(iv) and further provided, however, that if the designated beneficiary referred to in subsection (i) is the Participant's spouse, the distribution under subsection (iii) need commence no earlier than the date on which the Participant would have attained age seventy and one-half. If the Participant's spouse dies before the distribution of benefits to such spouse has begun, the preceding provisions of this subparagraph shall apply to such spouse in the same manner as if such spouse were the Participant.

(d) For purposes of Sections 7.04(b) and 7.04(c), distributions shall be made in compliance with Section 401(a)(9) of the Code and Department of Treasury regulation Sections 1.401(a)(9)-1 and -2,

which shall override any form of distribution otherwise permitted under the Plan and inconsistent therewith. In accordance with such regulations, the life expectancy of a Participant and a Participant's spouse shall be redetermined annually, provided, however, that life expectancy shall not be redetermined for a life annuity.

(e) In order to comply with the incidental benefit requirements of Section 401(a)(9)(G) of the Code and Department of Treasury regulation Section 1.401(a)(9)-2, a form of benefit payment must meet the following applicable conditions unless otherwise in compliance with such regulations:

(i) If a period certain annuity option or an equal installment option for the Participant, in no event shall an interest only option be made available.

(ii) If a joint and survivor annuity:

(A) If the survivor is the spouse, the annual benefit payable to the survivor may not exceed one hundred percent of the annual benefit payable to the Participant.

(B) If the survivor is other than the spouse, the present value of the payments to be made to the Participant at the date his benefits commence must be more than fifty percent of the present value of the total payments to be made to the Participant and his beneficiary.

(f) In the event that a Participant ceases to be an employee of the Employer because of disposition by the Employer of the business in which he was employed but continues employment with the successor employer, no distribution from the Plan shall be made to the affected Participant; provided, however, that if the Employer determines that a disposition has been made of substantially all of the assets of a trade or business or the stock of a subsidiary, and that the requirements of Code Section 401(k)(2)(B) and Code Section 401(k)(10), and any other relevant law, are met, distributions shall be made available to the affected Participants.

Section 7.05. Deferral of Receipt of Benefits. Subject to Section 7.03 of the Plan, any Participant may leave his Account balances in the Plan and commence receiving his benefits from the Plan at a time later than the time he would otherwise have begun to receive his benefits hereunder.

## ARTICLE EIGHT

## DISABILITY RETIREMENT, EARLY RETIREMENT, HARDSHIP AND OTHER WITHDRAWALS

Section 8.01. Disability Retirement. A Participant shall be eligible for retirement as of the first day of any month prior to his normal retirement date in the event of presumable permanent disability which prevents him from performing the duties regularly assigned to him by the Employer. The existence of such disability and the time of commencement thereof shall be determined by the Plan Administrator on the basis of proof satisfactory to him. In the absence of such a determination by the Plan Administrator, a Participant shall be deemed to be permanently disabled and may retire if, in the opinion of two qualified physicians selected by the Plan Administrator, he is so disabled. In the event such two physicians fail to agree, the Plan Administrator shall appoint a third physician and the determination of any two of them shall be final and controlling on all parties.

Section 8.02. Early Retirement. A Participant may retire as of the first day of any month prior to his normal retirement date if on such date he attained age fifty-five and completed ten Years of Service, as defined in the Retirement Income Guarantee Plan.

Retirement under this Section shall be referred to as "early retirement."

Section 8.03. Benefits Upon Disability Retirement or Early Retirement. Upon retirement for disability under Section 8.01 or upon early retirement under Section 8.02, a Participant shall be entitled to such benefits as the amounts credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts will provide. In the case of early retirement, such

amount shall be distributed to the Participant pursuant to the provisions of Section 7.02 or Section 7.03 as if he had attained his normal retirement date and retired from the active service of the Employer. However, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. In the case a Participant elects to retire on account of disability pursuant to Section 8.01 hereof, benefit payments may be commenced in accordance with Sections 7.02 and 7.03 as of the time of retirement, or, at the election of the Participant, may be deferred, but not later than sixty days after the close of the calendar year in which the Participant's normal retirement date occurs.

Section 8.04. Form, Time, and Manner of Payments of Benefits. The form, time and manner of payment of the benefits upon disability retirement or early retirement shall be determined in accordance with the provisions of Section 7.02 or 7.03.

Section 8.05. Hardship Withdrawals From Profit Sharing Savings Account, Rollover Account, Employee After-Tax Savings Account and Employee Before-Tax Savings Account.

(a) Upon the application of any Participant who is an employee of the Employer pursuant to Section 3.02, the Plan Administrator, in accordance with a uniform nondiscriminatory policy, may in his discretion, permit such Participant to withdraw all or a portion of the contributions then credited to his Profit Sharing Savings Account and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon), the contributions credited to his Employee Before-Tax Savings Account and earnings thereon credited on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon), the amounts credited to his Rollover Account and the amounts credited to his Employee After-Tax Savings Account in an amount not to exceed the amounts needed for the purposes of:

(i) Medical expenses arising from the sickness or disability of the Participant or his spouse or dependents previously incurred which are not covered by insurance or medical expenses arising from the sickness or disability of the Participant or his spouse or dependents which are necessary for these persons to obtain medical care not covered by insurance; or

(ii) The purchase of real property which is to serve as the principal residence of the Participant (excluding mortgage payments); or

(iii) The payment of tuition, related educational fees and room and board for the next twelve months of post-secondary education for the Participant, his spouse or dependents; or

(iv) Prevention of eviction from, or mortgage foreclosure on, the Participant's principal residence.

Any such amount to be withdrawn may, at the election of the Participant, include any amounts necessary to pay any federal and state income taxes or penalties reasonably anticipated to result from the distribution.

(b) A Participant making application under this Section 8.05 shall have the burden of presenting to the Plan Administrator proof of such need, and the Plan Administrator shall not permit withdrawal under this Section without first receiving such proof. In no event shall the total amount withdrawn under this Section 8.05 exceed the value at the time of such withdrawal of the units credited with respect to:

(i) contributions credited to the Participant's Profit Sharing Savings Account, and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon);

(ii) contributions credited to the Participant's Before-Tax Savings Account, and earnings thereon on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon);

(iii) the amounts credited to the Participant's Rollover Account; and

(iv) amounts credited to the Participant's After-Tax Savings Account.

No withdrawals pursuant to this Section 8.05 shall be authorized so long as the Participant may take a loan pursuant to Section 6.15. In no event shall a withdrawal pursuant to this Section 8.05 be permitted to the extent that other funds are available to the Participant from other sources, including, but not limited to, commercial or other loans, reimbursement from insurance, liquidation of the Participant's assets, discretionary withdrawals under Section 8.06 hereof, or the cessation of payroll deductions for contributions to the Participant's Employee Savings Accounts.

If a Participant's application for a hardship withdrawal is approved, a number of units equal in value to the amount approved for withdrawal payable from the Separate Funds (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited, in the following order: from the Participant's (i) After-Tax Savings Account, (ii) Rollover Account, (iii) Profit Sharing Savings Account, (iv) AMTX Employee Before-Tax Savings Account, and (v) Employee Before-Tax Savings Account, as the case may be. The Plan Administrator shall then instruct the Trustee to make payment of the amount of the hardship withdrawal to the Participant. For the purposes hereof, applications which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

The Plan Administrator shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against.

Section 8.06. Discretionary Withdrawals From Employee After-Tax Savings Account. Any Participant who is an employee of the Employer pursuant to Section 3.02 may, upon application to the Plan Administrator on forms provided by the Plan Administrator for such purpose request that all or a portion of the value credited to his Rollover Account first, and then his Employee After-Tax Savings Account next, be withdrawn from such Accounts and paid to him in cash as of the valuation date immediately preceding or coincident with the date of filing such request with the Plan Administrator.

If a Participant requests a withdrawal under this Section, a number of units in the Separate Funds equal in value to the amount requested for withdrawal (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Rollover Account and, if applicable, the Participant's Employee After-Tax Savings Account. The Plan Administrator shall then instruct the Trustees to make payment of the amount requested to be withdrawn. For the purposes hereof, requests which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

The Plan Administrator shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against.

Section 8.07. Withdrawals from the XDS Employee After-Tax Savings Account and the XDS Company Savings Account. In addition to other available withdrawal rights as provided herein, a Participant while remaining in employment may receive a distribution of all or a portion of his XDS Employee After-Tax Savings Account and/or his XDS Company Savings Account, if any, in accordance with the following

rules, subject to a requirement of spousal consent in accordance with the procedures set forth in Section 7.03(c):

(a) A Participant with five or more years of participation, as defined below, may elect a complete distribution of his XDS Employee After-Tax Savings Account and/or his XDS Company Savings Account determined as of the valuation date immediately succeeding or coincident with the date of his request for the withdrawal. Any other Participant may elect a distribution of all of his XDS Employee After-Tax Savings Account and his XDS Company Savings Account except that portion of his XDS Company Savings Account attributable to contributions made within two years preceding the date the Participant requested the distribution; for this purpose, distribution to such Participant from his XDS Company Savings Account shall be considered as made from the earliest Company contributions. For purposes of this subsection, "years of participation" shall be determined by aggregating all periods during which an account has been maintained for the Participant under this Plan or the XDS Investment Plan.

(b) If the Plan Administrator, in accordance with uniform rules adopted and consistently followed by the Plan Administrator, finds that a financial emergency has occurred in the personal affairs of a Participant, upon the Participant's application the Plan Administrator shall permit the Participant to withdraw from his XDS Employee After-Tax Savings Account and/or his XDS Company Savings Account either 10%, 20%, 30%, 40%, 50%, 60%, 70%, 80%, or 90% (as he shall apply for) thereof, determined as of the valuation date immediately succeeding or coincident with the date of his request for the withdrawal.

## ARTICLE NINE

## TERMINATION OF EMPLOYMENT BY RESIGNATION OR DISCHARGE

Section 9.01. Determination of Nonforfeitable Interest. Upon his resignation or discharge prior to the attainment of his normal retirement date and before qualifying for disability retirement or early retirement, a Participant shall have a nonforfeitable interest in all amounts represented by the credit balance in his Employee Savings Accounts, Company-Matched Savings Account, Profit Sharing Savings Account, Rollover Account and, subject to the vesting requirements set forth in Schedule A attached hereto, his Retirement Savings Account.

Section 9.02. Payment of Benefits on Termination of Employment.

(a) Unless a Participant elects otherwise, prior to Early Retirement Age, the normal form of distribution shall be a single lump sum payment. Upon his termination of employment by resignation or discharge, the Plan Administrator shall direct the Trustee to segregate the value of his nonforfeitable interest and distribute such value to him, all in accordance with the provisions of Section 7.03 as if he had attained his Normal Retirement Date and had retired from the active service of the Employer, provided, however, that where such distribution is in the form of an annuity or a single lump sum, the Participant's interest in the Separate Funds shall be valued as of the valuation date determined pursuant to Section 6.14. Notwithstanding the foregoing, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Rollover and, to the extent such Account is fully vested pursuant to the provisions of Schedule A attached hereto, Retirement Savings Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution.

If a distribution is one to which Section 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than thirty days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2) the Participant, after receiving the notice, affirmatively elects a distribution.

(b) For purposes of this Plan only, a Participant's employment shall be deemed to have terminated by resignation or discharge if (i) there is a disposition of substantially all of the assets used by an Employer in a trade or business of the Employer and the Participant continues employment with the corporation acquiring such assets or (ii) there is a disposition by an Employer of its interest in a subsidiary (within the meaning of Code Section 409(d)(3)) and the Participant continues employment with such subsidiary, provided that clauses (i) and (ii) shall not apply unless the Employer continues to maintain the plan within the meaning of Code Section 401(k)(10) and regulations thereunder. Notwithstanding the preceding sentence, a Participant's employment shall not be deemed to have terminated by resignation or discharge if the Participant continues employment with a domestic organization with respect to which the Employer has the control specified in Code Section 414(b) or (c) (as modified by substituting the phrase "50 percent", for the phrase "80 percent" each time it appears in Code Section 1563(a)(1)).

## ARTICLE TEN

## BENEFICIARY DESIGNATION AND DEATH BENEFITS

Section 10.01. Designation of Beneficiary.

(a) Each unmarried Participant, except to the extent otherwise provided by a qualified domestic relations order, shall designate the beneficiaries entitled to receive the benefits provided under this Plan on his death, and, in the absence of an otherwise effective designation, death benefits shall be paid to a Participant's estate. An unmarried Participant, except to the extent provided in a qualified domestic relations order, may change his designation of beneficiary from time to time.

The spouse of each married Participant shall be the beneficiary entitled to receive the benefits provided under the Plan unless such spouse consents in writing to the designation of beneficiary named by the Participant on such form or in such manner as may be prescribed by the Plan Administrator. Such consent shall be irrevocable and shall apply only with respect tot he beneficiary or beneficiaries with respect to whom the consent was given. A married Participant may change his designation of beneficiary from time to time only with the consent in writing of the Participant's spouse.

If a Participant has transitioned from participating in the Union Plan to this Plan, or vice versa, pursuant to Section 4.09(d) or (e), such designation of beneficiary shall move with the Participant's assets unless the Participant updates the information in such designation."

(b) Spousal consent to the designation of a nonspouse beneficiary is required unless the Plan Administrator is satisfied that the required consent cannot be obtained because the spouse cannot be located, the Participant is legally separated, the Participant has been abandoned (within the meaning of applicable law) and the Participant has a court order to that effect, or because of such other circumstances as the Secretary of the Treasury may prescribe by regulations.

(c) If the Plan Administrator receives a qualified domestic relations order with respect to a Participant, the provisions of this subsection shall be subject to the terms of such order.

Section 10.02. Death Before Retirement. Upon the death of a Participant before retirement, the Plan Administrator shall direct the Trustee to distribute to his designated beneficiary or beneficiaries the then value of all units credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts (valued as of the valuation date determined pursuant to Section 6.14). A Participant's surviving spouse may direct that payments commence within a reasonable period of time after the Participant's death. If the value of all units credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and

Rollover Accounts is more than $5,000 or if distribution to the surviving spouse commenced, then the Plan Administrator may not make a lump sum distribution to the Participant's spouse unless such spouse consents thereto in writing under procedures identical to those described in Section 10.01. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and/or Rollover Accounts, as the case may be.

In addition to the foregoing benefits, there shall be payable to the beneficiary or beneficiaries designated in the life insurance contracts on his life, if any, the benefits provided by the terms of such contracts. Such life insurance benefits shall be paid in accordance with any settlement option available under the life insurance contract.

Section 10.03. Death After Retirement. Subject to Section 7.02, upon the death of a Participant, after retirement or after termination of employment, the Plan Administrator shall direct the Trustee to pay to his designated beneficiary or beneficiaries the value of all units (valued as of the valuation date determined pursuant to Section 6.14) credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts, as the case may be. If, however, the Participant dies after installment payments have become payable in accordance with Section 7.03(b)(2), installment payments with respect to the Participant's AMTX Employee Before-Tax Savings Account shall continue to his designated beneficiary or beneficiaries until the value of the units credited to the Participant's AMTX Employee Before-Tax Savings Account has been exhausted.

## ARTICLE ELEVEN

## RIGHT TO ALTER OR AMEND

Section 11.01. Right To Alter or Amend. It is the intention of the Company to continue the Plan indefinitely and to make contributions as herein provided. The Company expressly reserves the right to amend the Plan at any time and in any particular, provided that any such amendment shall be made in accordance with ERISA. Such amendments, other than amendments relating to revocation or termination of the Plan under Article Twelve of the Plan or relating to the amount to be contributed by the Employer under Sections 4.01, 4.02 or 4.11 of the Plan, shall be effected by a committee made up of representatives of each of the Treasurer of the Company and the Vice President of the Company responsible for human resources. In the event such offices are vacant at the time the amendment is to be made, the Chief Executive Officer of the Company shall appoint a representative to the committee. Amendments relating to revocation or termination of the Plan under Article Twelve of the Plan or relating to the amount to be contributed by the Employer under Sections 4.01, 4.02 or 4.11 of the Plan shall be effected pursuant to a resolution duly adopted by the Board of Directors of the Company, or duly constituted committee of the Board of Directors of the Company, in accordance with the Business Corporation Law of the State of New York.

Section 11.02. Limitations on Powers of Amendment. No amendment, alteration, modification or suspension shall

(a) increase the duties or responsibilities of the Trustee without its consent in writing;

(b) vest in the Employer any right, title or interest in or to any property or funds held hereunder;

(c) divert any part of the Trust for purposes other than the exclusive benefit of the Participants or their beneficiaries.

Section 11.03. Form of Amendment. Any amendment, alteration, modification or suspension shall be set forth in a written instrument executed by any Vice President of the Company and by the Secretary



or an Assistant Secretary of the Company. Notwithstanding the adoption of the Plan by a corporation which is a subsidiary or affiliate of Xerox Corporation, the term "Employer" as used in this Article shall refer only to Xerox Corporation.

## ARTICLE TWELVE

## TERMINATION OF PLAN AND TRUST

Section 12.01. Right To Terminate Fully Reserved. The Employer reserves the right to revoke or terminate this Plan and the Trust created pursuant thereto, in whole or in part, at any time, or to reduce, suspend or discontinue its contributions hereunder. Such revocation or termination shall become effective upon receipt by the Trustee of a written notice executed on behalf of the Employer by its Chairman or Vice President, accompanied by a certified copy of a resolution of the Board of Directors of the Employer authorizing such revocation or termination.

Section 12.02. Automatic Termination. The Plan and Trust shall terminate if the Employer shall be legally dissolved or declared bankrupt or if it makes any general assignment for the benefit of creditors or if it merges into or consolidates with any other organization or if it sells its assets, except that the Plan and Trust may be continued as to such Participants by any other organization succeeding to the business of the Employer by which some or all of the Participants are employed if such organization shall agree to assume the liabilities of this Plan as to them. Upon agreement with the Trustee, such successor organization shall become the employer of said Participants for the purposes of this Trust.

Notwithstanding the foregoing, this Plan shall not be merged, consolidated with, or transfer its assets or liabilities to, any other plan unless each Participant in the Plan would receive (if the Plan then terminated) a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan then terminated).

Section 12.03. Distribution of Assets on Termination. In the event of the partial or complete termination of this Plan for any reason, all Participants affected by such termination shall have a fully vested and nonforfeitable interest in the units credited to their Accounts at the date of such termination. The Trustee shall distribute the assets of the Trust as follows:

(a) The Trustee shall pay over to each former Participant for whom it is holding funds in a separate account, the value of the balance of such funds.

(b) The Trustee shall pay over to each other Participant, the value of the credit balances in his Accounts with the unit value redetermined under Article Six as if the date of distribution were a valuation date.

The share of each Participant as determined in accordance with this Section shall be distributed to him in cash or in the form of an immediate or deferred annuity, or otherwise, as the Plan Administrator shall determine. Upon distribution of the assets of the Trust in accordance with this Section, the Trustee, the Plan Administrator and the Employer shall be fully discharged from all liability and obligation hereunder and no Participant or beneficiary of a Participant shall have any further right or claim hereunder. In no event shall any of the assets of the trust revert to the Employer.

Section 12.04. Discontinuance of Plan Without Terminating Trust. If the Employer discontinues the Plan without terminating the Trust or completely discontinues the contributions required under Article Four, the value of such units credited to Participants' Accounts shall be paid to a Participant or his beneficiary upon his death, retirement, termination of employment or the termination of the Trust in accordance with the provisions of the Plan applicable upon the occurrence of any such contingency.

ARTICLE THIRTEEN

MISCELLANEOUS PROVISIONS

Section 13.01 New York and Applicable Federal Law Govern. This Plan shall be construed according to the laws of the State of New York and applicable federal law, and all provisions hereof shall be administered according to the laws of such state and federal law, and all persons accepting or claiming benefits under this Plan shall be deemed to consent to the provisions of such laws.

Section 13.02. Headings for Convenience. The marginal headings and subheadings of this Plan are inserted for convenience and reference only and are not to be used in construing this Plan or any provision thereof.

Section 13.03. Rights of Parties Determined by the Terms of This Plan. The Plan and Trust thereunder are purely voluntary on the part of the Employer. The Trust shall be the sole source of benefits and in no event shall the Employer be liable or responsible therefor. This Plan and each and every provision thereof shall be binding upon all Participants under the Plan, and upon their respective heirs, executors, administrators, successors and assigns, and upon all persons having or claiming to have any interest of any kind or nature in or under this Plan or the Trust hereunder.

Section 13.04. Spendthrift Clause. Except as may otherwise be required pursuant to the terms of a qualified domestic relations order, to the extent permitted by law, none of the benefits, payments or proceeds arising out of or by virtue of the Plan shall be subject to any claim of or any legal process by any creditor of a Participant, retired Participant, or of any beneficiary, and no Participant, retired Participant or beneficiary thereof, shall have any right to anticipate, alienate, encumber or assign any right or benefit arising out of or by virtue of the Plan.

As to any Participants who do not become employees of the successor employer, the Plan shall be deemed terminated.

For purposes of the Plan, a qualified domestic relations order means any judgment, order, or decree (including approval of a property settlement agreement) which has been determined by the Plan Administrator, in accordance with the procedures established under the Plan, to constitute a qualified domestic relations order within the meaning of Section 414(p)(1) of the Code. With respect to amounts from a Participant's former Retirement Account under the Plan separately accounted for for an alternate payee pursuant to a qualified domestic relations order, which order was accepted by the Plan Administrator on or before December 31, 1989, the Company has established a "QDRO Account" for such alternate payee as of December 31, 1989 and which was retained in the Plan and invested in the Guaranteed Fund. Effective April 1, 1991, the balance of the QDRO Account was divided and transferred to the Income Fund and the Segregated Assets Fund as provided in Section 6.01.

Section 13.05. Notice to Employees. Notice of the existence and the provisions of the Plan and amendments thereto shall be communicated by the Plan Administrator to all persons who are or who become employees of the Employer eligible for participation hereunder.

Section 13.06. No Employment Rights Created. The creation and maintenance of this Plan shall not confer any right to continued employment on any employee, and all employees shall remain subject to discharge to the same extent as if it had never been established.

Section 13.07. Diversion From Employees Prohibited. Neither the corpus nor the income of the Trust, nor any part thereof, shall be diverted for any purpose other than for the benefit of the Participants hereunder or their beneficiaries, except

(a) in the case of a contribution made by the Employer by a mistake of fact, such contribution shall be returned to the Employer within one year after its payment; and

(b) if the deduction of a contribution is disallowed by the Internal Revenue Service, to the extent of disallowance, the contribution shall be returned to the Employer within one year after the disallowance.

Section 13.08. Right to Judicial Accounting. Nothing contained in this Plan shall be construed as depriving the Trustee of the right to have judicial settlement of its accounts. Upon any proceeding by the Trustee for judicial settlement of its accounts or for instructions, the only necessary parties thereto in addition to the Trustee shall be the Employer and the Plan Administrator. None of the Participants and other beneficiaries of the Plan shall have any right to compel an accounting, judicial or otherwise, by the Trustee, and all of them shall be bound by all accountings by the trustee to the Employer as provided by this Plan and Trust.

Section 13.09. Payment in Special Cases. In the event that it is determined to the satisfaction of the Plan Administrator that a Participant or beneficiary of a Participant is unable to care for his affairs because of mental or physical incapacities, any payment due to such person may be applied in the discretion of the Plan Administrator to the maintenance and support of such person in the manner determined by the Plan Administrator unless prior to the making of any such payment, claim shall have been made therefor by a duly appointed guardian, committee or other legal representative.

Section 13.10. Unit Accounting May Be Ignored. The expression in terms of units of the total value of the assets held in the Separate Funds and the interest of each Participant in such Separate Funds has been prescribed in Article Six and is referred to elsewhere in the Plan solely for the sake of precision and clarity. Recognizing that individual account balances and other records in connection with the Plan may or will be maintained through the use of modern computer facilities, the Plan Administrator is expressly empowered to disregard the unit method of accounting so long as the results achieved by the accounting and reporting methods selected by the Plan Administrator are consistent with the intents and purposes of the provisions of the Plan. Also recognizing that amounts invested in the Income Fund may be deposited with a legal reserve life insurance company under a group annuity contract providing a guaranty of principal and interest, the Plan Administrator is also expressly empowered to disregard the unit method of accounting in such cases, since accounting and reporting methods with respect to the Income Fund can be consistent with the intents and purposes of this Plan without unit accounting.

Section 13.11. Delay in Payment. The Plan Administrator may, in his absolute discretion and in a nondiscriminatory manner, delay for administrative reasons, payment of a Participant's benefits payable from his Account following his death, retirement or other termination of employment. In such cases where payment is delayed, a Participant's Accounts shall be valued for purposes of determining any amount to which he is entitled under the terms of the Plan, as of the valuation date selected by the Plan Administrator.

Where payment of a Participant's Accounts is delayed, neither the Employer, the Plan Administrator, any other persons designated by the Plan Administrator to carry out his responsibilities under the Plan, nor the Trustee shall have any liability for changes in the value of the Trust Fund between the date of death, retirement or any other termination of employment and the date of payment.

Section 13.12. Failure To Locate Payee. The entire interest or any unpaid balance thereof of any Participant or beneficiary shall be used to pay administrative expenses of the Plan in the event that the Plan Administrator, after making reasonable efforts to do so, is unable to locate the whereabouts of the payee within a period of three years following the due date of the first payment of benefits which cannot be made because of such inability to locate the payee. If thereafter the Participant or beneficiary makes claim for such interest or unpaid balance, the amount so forfeited shall be reinstated and paid to the Participant or beneficiary.

Section 13.13. Collective Bargaining Agreement. The Provisions of the Plan shall be modified with respect to a class of Participants to the extent specifically and expressly provided in a collective bargaining agreement covering such Participants which provides for coverage under the Plan.

Section 13.14. Transfer of Funds to Other Plans; Retention of Funds. There may be paid over from the Plan to other plans, which are qualified under Section 401 of the Code, amounts held for the ac-

counts of employees who are transferring employment from the Employer to other companies in connection with the transfer of assets or businesses by the Employer to such other companies, or such amounts (or appropriate parts thereof) may be retained in the Plan. Such amounts shall be transferred or retained in accordance with the instruments providing for and governing such transfer. Transferring employees whose funds are retained in the Plan shall have all investment and withdrawal rights and options provided for in the Plan, but shall not be entitled to future Employer or employee contributions hereunder.

Section 13.15. Doubt as to Right of Payment. If at any time any doubt exists as to the right of any person to any payment hereunder or as to the amount or time of such payment (including, without limitation, any doubt as to identity, or any case in which any notice has been received from any other person claiming any interest in amounts payable hereunder, or any case in which a claim from other persons may exist by reason of community property or similar laws), the Plan Administrator shall be entitled, in his discretion, to direct the Trustee (or any insurance company) to hold such sum as a segregated amount (on an interest bearing basis) in trust until such right or amount or time is determined or until order of a court of competent jurisdiction, or to pay such sum into court in accordance with appropriate rules of law in such case then provided, or to make payment only upon receipt of a bond or similar indemnification (in such amount and in such form as is satisfactory to the Plan Administrator).

Section 13.16. Gender. Wherever any words are used herein in the masculine or feminine gender, they shall be construed as though they were also used in the other gender in all cases where they would so apply, and wherever any words are used herein in the singular form, they shall be construed as though they were also used in the plural form in all cases where they would so apply.

## ARTICLE FOURTEEN

## TOP HEAVY PROVISIONS

Section 14.1. Application of Top Heavy Provisions.

(a) Except as provided in subsection (b), if, as of a Determination Date, the sum of the value of all units credited to the Profit Sharing Savings and Employee Savings Accounts (the "Accounts") of Key Employees and the beneficiaries of deceased Key Employees exceeds sixty percent of the Accounts of all Participants and beneficiaries other than former Key Employees, the Plan shall be deemed to be top heavy and the provisions of this Article Fourteen shall become applicable.

(b) If, as of a Determination Date, the Plan is part of an Aggregation Group which is top heavy, the provisions of this Article Fourteen shall become applicable. Top-heaviness for the purpose of this subsection shall be determined with respect to the Aggregation Group in the same manner as described in subsection (a). If the Plan is top heavy under subsection (a), but the Aggregation Group is not top heavy, this Article shall not be applicable.

(c) For purposes of determining whether the Plan is top heavy, the value of a Participant's Accounts includes the amount of any distribution made from the Plan to such Participant, if such distribution was made during the Plan Year or the preceding four Plan Years. If, however, any individual has not performed any services for the Employer at any time during the five-year period ending on the Determination Date, any amounts in such individual's Accounts shall not be taken into account in determining the top-heavy status of the Plan.

Section 14.2. Provisions If Plan Becomes Top Heavy. If, for any Plan Year, the Plan becomes top heavy, then the following rules shall apply with respect to such Plan Year:

(a) Each Participant who is a non-Key Employee shall receive an Employer contribution, whether or not such non-Key Employee has elected Before-Tax Savings, equal to three percent of compensation or such lesser percentage of compensation contributed on behalf of the Key Employee who received the highest contribution (as a percentage of compensation).

XC 000155

(b) the provisions of Section 416(h) of the Code shall apply with respect to the benefit limitations of Section 415(e) of the Code; and

Section 14.3. Definitions.

(a) Aggregation Group means this Plan and all other plans, whether or not terminated, maintained during the five-year period ending on the Determination Date by an Employer and its affiliates which have covered during such period a Key Employee or which enable any such plan to meet the requirements of Code Sections 401(a)(4) or 410. In addition, at the election of the Plan Administrator, the aggregation group may be expanded to include any other qualified plan maintained by the Employer or an affiliate if such expanded aggregation group meets the requirements of Code Sections 401(a)(4) and 410 of the Code.

(b) Determination Date means the last day of the Plan Year immediately preceding the Plan Year for which top heaviness is to be determined.

(c) Key Employee shall have the same meaning as provided in Section 416(i)(1) of the Code.

IN WITNESS WHEREOF, Xerox Corporation has caused this Restated Plan to be executed by its duly authorized officers and its corporate seal to be hereunto duly affixed this 27th day of February, 1998.

XEROX CORPORATION

By ______________________
Vice President

(SEAL)

Attest: ______________________
Assistant Secretary

XC 000156

## SCHEDULE A

All capitalized terms contained herein shall have the meanings ascribed to them in the Plan document to which this Schedule A is appended.

CONTRIBUTIONS AND ALLOCATIONS FOR XESYSTEMS, INC. EMPLOYEES ONLY

Section 4.01. XES Contributions and Eligibility. For each calendar year, XES shall make a contribution to the Profit Sharing Savings Accounts on behalf of each of the following Participants pursuant to Article Three who are XES employees on the last day of each calendar year, subject to the provisions of Schedule A, Section 4.05, hereof: (i) exempt non-selling grades 10 and below, or any successor grades; and (ii) all non-exempt employees. Pretax profits shall consist of profits before federal, state, local and foreign income taxes as shown on XES' financial statements. Each XES employee included in one of the categories listed above shall become an XES Participant for purposes of this XES contribution on the first day of the Computation Period immediately succeeding the close of the first Computation Period in which he completes at least one Hour of Service if he completes at least one Hour of Service in such immediately succeeding Computation Period. The contribution on behalf of each such XES Participant allocable to his Profit Sharing Savings Account shall be in the amounts equal to the compensation of such XES Participant multiplied by the appropriate percentage selected from the table below. The appropriate percentage selected from the tables below shall be that opposite the increase in XES pretax profits calculated for such year pursuant to Schedule A, Section 4.02, hereof.

| XES' Increase in Pretax Profits | Percent of Eligible Pay Awarded |
|---|---|
| $20 million or more | 0% |
| $19 million | 9.5% |
| $18 million | 9% |
| $17 million | 8.5% |
| $16 million | 8% |
| $15 million | 7.5% |
| $14 million | 7% |
| $13 million | 6.5% |
| $12 million | 6% |
| $11 million | 5.5% |
| $10 million | 5% |
| $9 million | 4.5% |
| $8 million | 4% |
| $7 million | 3.5% |
| $6 million | 3% |
| $5 million | 2.5% |
| $4 million | 2% |
| $3 million | 1.5% |
| $2 million | 1% |
| Less than $2 million | 0% |

Contributions shall be made no later than March 15 of the year following the year being measured.

Section 4.02. Computation of Increase in Pretax Profits. Notwithstanding the above, for 1998, the increase in pretax profits shall be measured against a break-even amount (zero profit). In any subsequent year, the annual increase for that year shall be measured against the profit for the prior year. In the event of a loss or zero profit in such prior year, the increase in pretax profits

shall be measured against a break-even amount (zero profit) and not against the actual loss for such prior year. For a contribution to be made for a year which follows a year in which there was a pretax profit (or in which there was deemed to be zero profit), the pretax profit for such subsequent year must be increased by a minimum of $2 million from the prior year's pretax profit (see table contained in Schedule A, Section 4.01, hereof). For all profit calculations above the $2 million minimum increase, pretax profits shall be rounded to the nearest million dollars with one half million rounded up as is commonly accepted.

Section 4.03. Definition of Compensation. Except as provided in Section 4.04, the "compensation" of an XES Participant for any calendar year shall mean, with respect to XES Participants paid through Xerox Corporation's Rochester payroll system, the total of amounts paid during which time the Employee was an eligible XES Participant pursuant to Sections 3.01 and Schedule A, Section 4.01, hereof, during such calendar year and classified under the following payroll earnings code, or any successor code(s) thereto, established by the Employer:

| | | | | |
|---|---|---|---|---|
| AJ | EW | PI | QI | SF |
| B1 | GT | PN | QL | SJ |
| BN | HD | PR | QM | SR |
| C1 | HL | QA | QQ | TD |
| CI | MD | QB | QS | TE |
| CL | NE | QC | QT | TS |
| CN | OC | QD | QW | VA |
| CO | OJ | QE | QY | VR |
| CS | OT | QG | QZ | |

With respect to XES Participants paid other than through Xerox Corporation's Rochester payroll system, the total of amounts paid during which time the Employee was an eligible XES Participant pursuant to Section 3.01 and Schedule A, Section 4.01, hereof during such calendar year and which would be attributable to the payroll earnings codes listed above.

In addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year, adjusted as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of an XES Participant.

Section 4.04. Compensation in Special Cases.

(a) Compensation of an XES Participant who is an employee pursuant to Sections 3.02 and Schedule A, Section 4.01, hereof, who at any time during a calendar year ending prior to his normal retirement date is absent due to physical or mental disability leave under Section 3.05 shall include for the period of such absence and entitlement an amount equal to the basic compensation which he would have received during such period if he had been actively employed and paid at the rate of basic compensation applicable to him prior to such absence.

(b) Notwithstanding Schedule A, Section 4.01, hereof, and except as otherwise provided in Section 3.04(b), an XES Participant who is on nonmilitary or military leave of absence under Section 3.03 or 3.04 or layoff shall receive a contribution during a calendar year only if he has an Hour of Service as defined in the first sentence of Section 3.01(f)(1) for such year; he shall receive such contribution based solely on compensation as an XES Participant for services actually performed during such year.

(c) Notwithstanding Schedule A, Section 4.01, hereof, an XES Participant who on the last day of a calendar year is separated from employment but is on salary continuance as a result of a reduction in the work force shall receive a contribution for that year, provided that his Account balances remain in the Plan on the last day of such calendar year; such XES Participant shall receive such contribution based both on compensation for services actually performed during such