# Attachment 6

# Part B

year, if any, and on salary continuance payments received during such year (exclusive of lump sum salary continuance payments).

(d) Notwithstanding any contrary provisions in this Plan, those XES Participants who become classified as inactive without benefits shall not be considered to be receiving compensation for any purpose under this Plan.

Section 4.05. Contribution for Year of Retirement, Death or Becoming Classified as Inactive Without Benefits. In the event that an XES Participant

(a) retires hereunder pursuant to Sections 7.01, 8.01 or 8.02,

(b) dies, or

(c) becomes classified as inactive without benefits pursuant to Section 3.02(g)

on or as of the date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an XES contribution under Schedule A, Section 4.01, hereof, for the year in which his retirement, death or classification as inactive without benefits occurs to the extent of the compensation paid to him for services actually rendered during such year, in the event of retirement or death, or for disability benefits received until becoming classified as inactive without benefits, in the event of becoming so classified. Such compensation shall be determined in accordance with the provisions of Schedule A, Section 4.03, hereof. The entitlement of an eligible XES Participant to an XES contribution for the year of retirement, death or classification as inactive without benefits in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable. Notwithstanding any other provision of the Plan, as soon as administratively feasible after the XES contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the eligible XES Participant or his beneficiary, as the case may be, in such manner as shall be determined by the Plan Administrator in her absolute discretion.

Section 4.06. Not applicable.

Section 4.07. Allocation of XES Contributions. The XES contribution on behalf of an eligible XES Participant for any year shall be allocated in accordance with the table in Schedule A, Section 4.01, hereof. Funds allocated shall be currently distributed or deferred and held in the Trust, as the case may be, pursuant to the provisions of this Section and Article Six.

Section 4.08. Payment to Trustee. The aggregate amount of XES contributions for any year which are not currently distributable to eligible XES Participants pursuant to subsections (b) and (c) of Section 6.02 shall be paid to the Trustee before the end of the period following the close of such year in order that such amount may be deducted by XES for federal income tax purposes for such year.

Section 4.09. Transfers of Funds From Other Plans.

(a) In addition to the XES contributions to the Plan provided for in this Schedule A, and in addition to the employee contributions made by XES Participants under Article Five, there may also be paid over to the Plan other amounts which have been held under Plans which are qualified under Section 401 of the Code maintained by Xerox and any company which is a member of a controlled group of corporations under Code Section 414(b) which includes XES; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with XES; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes XES; and any other entity required to be aggregated with XES pursuant to regulations under Section

XC 000159

414(o) of the Code ("Affiliate"): and the regulations thereunder that includes XES or any company substantially all of whose capital stock or some or all of the assets of which have been acquired by XES or any Affiliate that includes XES, which have been discontinued or terminated with respect to a group of employees. The amounts transferred to this Plan under this Section shall be allocated to the Accounts established for the employees whose participation in such other Plan has been terminated in accordance with the instrument providing for and governing such transfer. An employee on whose behalf an account is established under this Section shall be an XES Participant, but shall be entitled to share in allocations of contributions based on compensation only if he becomes an XES Participant in accordance with Section 3.01.

(b)  In addition to the contributions provided for herein, there may also be paid over to the Plan amounts which have been held under the Retirement Income Guarantee Plan maintained by Xerox Corporation for retirees, vested former employees, beneficiaries or alternate payees, either by spin-off of such accounts and merger into the Plan in a transaction to which Section 414(l) applies or at the option of certain retirees and vested terminated employees. Amounts so received shall be credited to Accounts in this Plan and each such Account shall be invested in funds available under this Plan, in one percent increments, at the option of the person for whom such Account is held, or in default of any such election, in the Income Fund. Notwithstanding the preceding sentence, the Plan Administrator shall have the discretion to delay implementation of investment elections with respect to accounts established in any designated transaction pending receipt of a ruling, determination letter, legal opinion or other guidance or approval where deemed appropriate on the advice of counsel to the Plan.

(c)  In addition to the contributions provided for herein, there may also be paid over to the Plan amounts which have been distributed pursuant to a diversification election under the ESOP maintained by the Company, at the option of such employees eligible for diversification under the terms of the ESOP. Amounts so received, in cash only, shall be credited to Accounts in this Plan and each such Account shall be invested in funds available under this Plan, in one percent increments, at the option of the person for whom such Account is held, or in default of any such election, in the Income Fund.

(d)  XES Participants who previously participated in the Union Plan shall have their assets in such Union Plan transferred into this Plan upon becoming XES Participants in this Plan and the allocations in the Separate Funds shall remain the same as in the Union Plan.

(e)  XES Participants who transfer to participation in the Union Plan shall have their assets in this Plan transferred to the Union Plan and the allocations in the Separate Funds shall remain the same as in this Plan. Notwithstanding the above, assets held in the Retirement Savings Account, pursuant to this Schedule A, Section 4.14, shall not be transferable to the Union Plan.

<u>Section 4.10</u>.  <u>Maximum Allocation to XES Participants</u>.

(a)  As of the close of each calendar year, and before the XES contribution for such year is paid to the Trustee, the Plan Administrator shall determine the tentative annual addition, as hereafter defined, to each XES Participant's Accounts for such year. The term "tentative annual addition" for any calendar year means the sum of:

(1)  The amount allocated on the XES Participant's behalf under any other defined contribution plan, as defined in Section 3(34) of ERISA, qualified under Section 401 or 403(a) of the Code, maintained by any Affiliate that includes XES for such calendar year;

(2)  The XES contribution to be allocated to the XES Participant's Profit Sharing Savings Account under this Plan with respect to such year based on the XES contribution determined under Schedule A, Section 4.01, hereof, reduced by any amounts elected to be distributed in cash under Section 6.02(b) and distributed in stock under Section 6.02(c), and under Schedule A, Section 4.13(b) and (c), hereof;

4

XC 000160

(c) (1) If the amounts allocated to the XES Participant's Accounts under this Plan and any other defined contribution plan, as defined in Section 3(34) of ERISA and qualified under Section 401(a) or 403(a) of the Code, maintained by any Affiliate that includes XES for a year exceed the maximum annual addition for such year because of a reasonable error in determining the amount of elective deferrals within the meaning of Section 402(g) of the Code, or under other limited facts and circumstances, the Plan Administrator shall direct the Trustee to distribute employee contributions (and earnings thereon), to the extent that the distribution reduces the excess amount in the XES Participant's Account.

(2) If, after refunding employee contributions (and earnings thereon) under subparagraph (1) above, the annual addition is still in excess of the maximum annual addition, the Plan Administrator shall direct the Trustee to distribute elective contributions as defined in Section 402(g) of the Code to the extent that the distribution reduces the excess amount in the XES Participant's Account.

(d) (1) The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such XES Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000, or, if greater, one-fourth of the dollar limitation under Section 415(b)(1)(A) of the Code adjusted under Section 415(d) of the Code. If the XES Participant also participates in one or more defined benefit plans of any Affiliate that includes XES (whether or not terminated) the maximum annual addition shall be reduced so that for such calendar year the sum of the Defined Benefit Plan Fraction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0.

(2) The Defined Benefit Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the projected annual benefit of the XES Participant under any defined benefit plan maintained by any Affiliate that includes XES and (b) the denominator of which is the lesser of one hundred twenty-five percent of the limitation under Section 415(b)(1)(A) of the Code or one hundred forty percent of the limitation under Section 415(b)(1)(B) of the Code (taking into account the effect of Section 235(G)(4) of the Tax Equity and Fiscal Responsibility Act of 1982).

(3) The Defined Contribution Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the sum of the annual additions to an XES Participant's Accounts under all defined contribution plans maintained by any Affiliate that includes XES as of the close of such calendar year (subject to reduction to the extent permitted under the transition rule in Section 235(g) of the Tax Equity and Fiscal Responsibility Act of 1982), and (b) the denominator of which is the sum of the lesser of one hundred twenty-five percent of the limitation under Section 415(c)(1)(A) of the Code or one hundred forty percent of the limitation under Section 415(c)(1)(B) of the Code, for such calendar year and for all prior calendar years during which the XES Participant was employed by any Affiliate that includes XES.

(e) (1) For each calendar year, the XES contribution which is otherwise to be made to an XES Participant's Profit Sharing Savings Account shall be reduced by any net excess contribution not previously applied as herein provided.

(2) If the net excess contribution exceeds the XES contribution for a Plan year, such excess shall be carried over to the following year and applied as herein provided, until the total net excess contribution has been so applied.

(f) In the case of an XES Participant

(1) who is permanently and totally disabled (as defined in Section 22(c)(3) of the Code) and

6

XC 000161

(3) The amount held or paid over to the Trustee for such year by XES to be credited to an XES Participant's Employee Before-Tax Savings Account;

(4) The amount held or paid over to the Trustee for such year by XES to be credited to an XES Participant's Employee After-Tax Savings Account; and

(5) The additional XES contribution to be allocated to the XES Participant's Retirement Savings Account under this Plan, pursuant to this Schedule A, Section 4.14, with respect to such year.

(b) (1) If the tentative annual addition for such calendar year exceeds the maximum annual addition for such year, as hereafter defined, the Plan Administrator shall reduce such amount of the XES contribution allocated to the XES Participant's Profit Sharing Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct XES to reduce the total XES contribution determined under Schedule A, Section 4.01, hereof, by said amount.

(2) If after reducing all of the XES contribution included in computing the XES Participant's tentative annual addition, his or her tentative annual addition (as adjusted by such refund) is still in excess of the maximum annual addition, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the XES Participant held by the Employer or paid over to the Trustee which were included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the number of units in the Separate Funds which were credited to the XES Participant's Employee After-Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(3) If after reducing all of the employee contributions included in computing the XES Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the XES Participant held by the Employer or paid over to the Trustee which were allocated to his Employee Before-Tax Savings Account and included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition and the number of units in the Separate Funds which were credited to the XES Participant's Employee Before-Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(4) If after reducing all of the Employee Before-Tax Savings Account included in computing the XES Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the additional XES contribution allocated to the Retirement Savings Account pursuant to Schedule A, Section 4.14 which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition and the number of units in the Separate Funds which were credited to the XES Participant's Retirement Savings Account as a result of such contribution shall be debited from such Account and canceled.

(5) Notwithstanding anything in this Schedule A, Section 4.10, to the contrary, the tentative annual addition shall be reduced to the extent required to cause such tentative annual addition to not exceed the maximum annual addition, by first reducing the amount which would otherwise be allocated to the XES Participant's Accounts under this Plan, and only after such amounts have reduced to zero, by reducing the amounts which otherwise would have been allocated to such XES Participant's Accounts under any other plan maintained by any Affiliate that includes XES.

XC 000162

(2) who is not an officer, owner or highly compensated.

the word "compensation" means for purposes of Schedule A, Section 8(d), the compensation the XES Participant would have received for the year if the XES Participant was paid at the rate of compensation paid immediately before becoming permanently and totally disabled. Contributions made with respect to the compensation (as defined in this subsection (f)) of an XES Participant shall be non-forfeitable when made.

Section 4.11.  Not applicable.

Section 4.12.  Rollover Contributions.  In addition to the XES contributions provided for in this Schedule, the employee contributions made by XES Participants under Article Five, and the transfer of funds from other plans as provided in Schedule A, Section 4.09, hereof, there may also be paid over to the Plan other amounts which have been held under plans which are qualified under Section 401(a) or 401(k) of the Code maintained by a previous employer of an XES Participant, or held under an XES Participant's Individual Retirement Account, providing such rollovers are made in the form of cash. Such rollovers shall be invested according to investment instructions specified by the XES Participant and may be split among the funds in one percent increments. All employees shall be permitted to make such rollover contributions to the Plan at any time whether such rollovers are made as direct rollovers from previous plans or as sixty-day rollovers made by an XES Participant. Qualified rollovers into the Plan must be from taxable distributions and may include installments paid over less than ten years and payments to an XES Participant or spousal beneficiary under a QDRO or because of death. Rollovers from multiple sources into the Plan shall be permissible.

Payments that are not eligible for rollover into the Plan include (i) periodic payments made over a specific period of at least ten years or more; (ii) minimum distribution amounts; (iii) non-taxable distributions; and (iv) distributions to non-spousal beneficiaries under a QDRO or because of death.

Section 4.13.  Election With Respect to Profit Sharing Savings Accounts.  Each XES participant and each employee who becomes an XES Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four and this Schedule A may elect that the funds allocable to his Profit Sharing Savings Account from such contribution be used to provide benefits in one or more of the following ways:

(a) transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.03, 4.09, 5.04 through 5.07, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the funds provided for in Section 6.02;

OR

(b) distributed to him in cash after deduction of all legally required withholding taxes;

OR

(c) invested by Xerox Corporation, on behalf of such XES Participant, in Xerox Stock after all legally required withholding taxes have been deducted, and the stock so purchased distributed to the XES Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the XES Participant in cash. Xerox Corporation shall purchase stock for XES Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the XES contribution for such purchase for such year has been made available by it. The portion of such XES contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by XES on the March 15 following the close of the year

7

XC 000163

to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for XES Participants who have elected the alternative form of benefit provided by this subsection, Xerox Corporation may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual XES Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular XES contribution.

Section 4.14.  Additional XES Contribution.  Subject to Schedule A, Section 4.10(b)(4) hereof, XES shall contribute five percent of eligible XES compensation, as defined in Schedule A, Section 4.03, hereof, to the following Participants pursuant to Article Three who are XES employees: (i) exempt non-selling grades 10 and below, or any successor grades; and (ii) all non-exempt employees. Each XES employee included in one of such categories listed above shall become an XES Participant for purposes of this additional XES contribution of five percent of eligible compensation immediately upon the employee's Employment Commencement Date with XES.

(a) Such XES Participants under this Schedule A shall become vested in such five percent savings contributions as provided below.

(1) An XES Participant shall be fully and non-forfeitably vested in such five percent savings contribution upon his death, attainment of normal retirement age pursuant to Section 7.01, or classification as an Inactive Employee Without Benefits.

(2) An XES Participant who has not met the requirements of Schedule A, Section 4.14(a)(1) above at the time of his termination shall vest in the balance in his Retirement Savings Account in accordance with the following schedule:

| Number of Years of Service | Vested Percentage |
|---|---|
| Less than 5 years | 0% |
| 5 years or more | 100% |

(3) In the case of an XES Participant who has incurred any Period of Severance (hereinafter defined) greater than twelve months, excluding any period of up to twelve months during which an employee is on maternity or paternity absence (a "Break in Service"), of at least five (5) consecutive years, any Hours of Service after such Break in Service shall be disregarded for purposes of determining his vested interest under this Section in the portion of the balance in his Retirement Savings Account that accrued before such Break in Service. For the purposes hereof, Period of Severance shall mean each period commencing on a Participant's Severance From Service Date (hereinafter defined) and ending on such Participant's next Reemployment Commencement Date (hereinafter defined).

Severance from Service Date shall mean the earlier of (a) the date on which an Employee quits, retires or is discharged from, or dies during, service with XES and Affiliates or (b) the first anniversary of the first date of a period in which an Employee remains absent from service with XES and all Affiliates, with or without pay, for any reason other than Disability, quit, retirement, discharge or death. Reemployment Commencement Date shall mean the date on which an XES Employee first completes an Hour of Service after a Severance from Service Date.

XC 000164

(4) In the case of a non-vested XES Participant who has incurred a Break in Service of at least five (5) consecutive years, any Hours of Service before such Break in Service shall be disregarded for purposes of determining his vested interest under this Section in the portion of the balance in his Retirement Savings Account that accrued subsequent to such Break in Service.

(5) In the case of an XES Participant who has incurred a Break in Service, any Hours of Service completed by such XES Participant prior to such Break in Service shall be disregarded for purposes of determining his vested interest under this Section until such XES Participant shall have again completed a Year of Service (hereinafter defined) after such Break in Service.

A Year of Service shall mean the number of whole years of the Participant's Period of Service (hereinafter defined). Non-successive Periods of Service shall be aggregated and less than whole year Periods of Service (whether or not consecutive) shall be aggregated on the basis that twelve months of service equal a whole Year of Service. One day shall be deemed to be a month in the case of fractional months. Any fractional year remaining after such aggregation shall be disregarded. An employee of XES or any Affiliate who becomes an XES Employee shall, upon becoming an XES Employee, be credited with Years of Service for the period prior to his becoming an XES Employee on the same basis as if he was an XES Employee for all periods during which he was employed by Xerox, XES, any Affiliate or Xerox International Partners.

Period of Service shall mean:

(a) each period of employment with XES or any Affiliate (including all periods during which an Employee is on salary continuance, whether due to a reduction in force or otherwise) commencing on the Employment Commencement Date or Re-employment Commencement Date and ending on the next Severance from Service Date;

(b) each period of Disability prior to attaining his Normal Retirement Age;

(c) each period of paid leave of absence of any length under Xerox' Social Service Leave Program;

(d) each period of military service, but only to the extent required by federal law, provided that the person returns to the employment of the Employer within such period as may be required by federal law;

(e) each period during which services were performed for the Company or any Affiliate as a leased employee (within the meaning of Section 414(n)(2) of the Code), including services performed in a status which would have been that of a leased employee but for the fact that such services were not performed on a substantially full-time basis for a period of at least one year;

(f) for former employees of Agfa who became Employees of the Employer on or about November 1, 1993, each period of employment with Agfa.

(6) In the case of an XES Participant who was a Xerox employee prior to becoming an XES Participant in this Plan, the XES Participant shall receive credit for Years of Service for vesting purposes for all periods of employment with Xerox or any Affiliate before that date, calculated in years and completed months.

(b) The five (5) percent contribution shall be made to the Retirement Savings Account, and shall be invested in the Separate Funds available under this Plan, in the same allocation as

XC 000165

the XES Participant has elected for his Before-Tax and After-Tax Savings Accounts. If no prior election has been made with respect to the allocation in the Separate Funds in the XES Participant's Before-Tax and After-Tax Savings Accounts, such five percent contribution shall be invested in its entirety in the Balanced Fund, subject to any subsequent reallocation by the XES Participant.

(c) Subject to Schedule A, Section 4.05, hereof, XES Participants must be employed by XES on December 31 to receive a contribution for that calendar year.

(d) The non-vested balance in a Participant's Retirement Savings Account shall be forfeited immediately upon such Participant's termination from employment. Any such forfeiture shall be restored to such Participant's Retirement Savings Account as soon as administratively feasible following such Participant's Reemployment Commencement Date if such Participant's Reemployment Commencement Date occurs before the Participant incurs a Break in Service of at least five (5) consecutive years. Such restoration shall be made first from other forfeitures arising in the Plan Year of such restoration and, to the extent necessary, from additional XES contributions made for that purpose. Forfeitures not used for such restoration shall be used to offset XES' Retirement Savings contributions for the following year(s).

10

XC 000166

AMENDMENT NO. 1
TO
1998 RESTATEMENT
XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN


W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan" (hereinafter referred to as the "Plan"), and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  Section 4.05 is amended to read in its entirety as follows:

"Section 4.05.   Contribution for Year of Retirement, Death, Termination on or After April 15, 1998 Pursuant to a Retirement Income Guarantee Plan Enhanced Early Retirement Offer Accepted Between February 2, 1998 and May 29, 1998 ("RIGP Plus") or Becoming Classified as Inactive Without Benefits. In the event that a Participant

(a)   retires hereunder pursuant to Sections 7.01, 8.01 or 8.02,

(b)   dies,

(c)   becomes classified as inactive without benefits pursuant to Section 3.02(g), or

(d)   terminates his employment on or after April 15, 1998 pursuant to RIGP Plus

on or as of the date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an Employer contribution under Section 4.01 for the year in which his retirement, death, termination on or after April 15, 1998 pursuant to RIGP Plus or classification as inactive without benefits occurs to the extent of the compensation paid to him for services actually rendered during such year, in the event of retirement, death, or termination on or after April 15, 1998 pursuant to RIGP Plus, or for disability benefits received until becoming classified as inactive without benefits, in the event of becoming so classified. Such compensation shall be determined in accordance with the provisions of Sections 4.03 and 4.04. The entitlement of a Participant to an Employer contribution for the year of retirement, death, termination on or after April 15, 1998 pursuant to RIGP Plus or classification as inactive without benefits in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable. Notwithstanding any other provision of the Plan, as soon as administratively feasible after the Employer contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the Participant or his beneficiary, as the case may be, in such manner as shall be determined by the Plan Administrator in his absolute discretion."

2.  Section 7.03(e) is amended to read in its entirety as follows:

"(e)  Retirees and Participants who have terminated their employment with the Company on or after April 15, 1998 pursuant to RIGP Plus may elect to receive from their Accounts fixed installments paid on a monthly or quarterly basis. Retirees and such Participants who have terminated their employment on or after April 15, 1998 pursuant to RIGP Plus shall be permitted to change such elections, subject to procedures established by the Plan Administrator.

XC 000167

These amendments are effective as of April 14, 1998. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 14th day of April, 1998.

XEROX CORPORATION

By: _____
                    Vice President

Attest:

By: _____
        Assistant Secretary

2

XC 000168

# AMENDMENT NO. 2
## TO
## 1998 RESTATEMENT
## XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN

### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan", as amended by Amendment No. 1 (hereinafter referred to as the "Plan"), and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  The first sentence of Section 1.09 is amended by deleting the words "The Company," at the beginning and adding the words "Xerox Corporation (the "Company"),".

2.  In Section 3.01(c)(3), the reference to "Sections 4.09 and 4.12" shall read "Sections 4.10 and 4.13".

3.  In Section 3.01(d)(3), the reference to "Sections 4.09 and 4.12" shall read "Sections 4.10 and 4.13".

4.  The introductory paragraph of Section 4.01 is amended to read in its entirety as follows:

    "Section 4.01. Employer Contributions. For each calendar year, the Employer shall make a contribution to the Profit Sharing Savings Accounts and, additionally, effective as of January 1, 1999, the Profit Sharing Company Stock Accounts, on behalf of each Participant who is an employee of the Employer or by any subsidiary or affiliate of the Employer under Section 3.06 on the last day of each calendar year; provided, however, that contributions may be made on behalf of individuals not employed on the last day of such calendar year if they have transferred employment from the Employer to other companies in connection with the transfer of assets or businesses by the Employer to such other companies, in accordance with the instruments providing for and governing such transfers and, further provided, that in connection with contributions made pursuant to this Section 4.01, the term "Participant" shall not include employees who are employed by, or assigned to, the Xerox Computer Services division as of December 21, 1993 (after the contribution with respect to the year ended December 31, 1993) or the following wholly-owned subsidiaries of the Employer as of the date of their elections to participate: Chrystal Software, Inc., dpiX, Inc., InConcert, Inc., InXight Software, Inc., LiveWorks, Inc., PD Reader, Inc. and XESystems, Inc. ("XES"). XES employees shall participate in the Plan provisions set forth in Schedule A attached hereto and shall not participate in any Plan provisions set forth in this Article Four. The contributions on behalf of each Participant allocable to his Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be determined in the aggregate by reference to the compensation of such Participant multiplied by the appropriate percentage selected from the table in Section 4.01(a) below for Plan Year ending December 31, 1998 and, thereafter, Section 4.01(b) below. The appropriate percentage selected from the tables below shall be that opposite the percentage return on assets (hereinafter referred to as "ROA") calculated for such year pursuant to Section 4.02 and that opposite the percentage earnings per share growth rate (hereinafter "EPS Growth Rate") calculated for such year pursuant to 4.03."

5.  The introductory paragraph of Section 4.01(a) is amended to read in its entirety as follows:

    "(a) For contributions made with respect to Plan Years ending on and after December 31, 1993 through the Plan Year ending December 31, 1998, the contribution on behalf of each Participant allocable to his Profit Sharing Savings Account shall be in the amount equal to the compensa-

XC 000169

tion of such Participant for that calendar year multiplied by the percentage set forth in the table below. The percentage selected from the table below shall be that opposite the ROA calculated for such year pursuant to Section 4.02. ROA shall be calculated each year to the nearest one-quarter of one percent. In the event that ROA in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00."

6.  Section 4.01(a) is further amended by adding the following paragraph immediately after the table:

"With respect to the Plan Year ending December 31, 1998 only, a contribution shall be payable to Participants equal to the greater of (1) the contribution to which they would be entitled calculated pursuant to Section 4.01(a) of the Plan on a basis consistent with prior years or (2) 50% of the contribution to which they would be entitled calculated pursuant to Section 4.01(a) of the Plan on a basis consistent with prior years but without giving effect to the restructuring charge taken by the Company in the second quarter of 1998 in determining ROA pursuant to Section 4.02."

7.  Section 4.01(b) is amended by removing the "(b)" at the beginning of the paragraph.

8.  A new Section 4.01(b) is added to read in its entirety as follows:

"(b)  For contributions made with respect to Plan Years ending on or after December 31, 1999, the contribution on behalf of a Participant allocable to his Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be equal to 50% and 25%, respectively, of the amount derived by multiplying the amount of the Participant's compensation for that calendar year by the payout percentage set forth in the table below that corresponds with the EPS Growth Rate for such Plan Year.  In the event that EPS in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00.

| EPS Growth Rate | Payout Level |
|---|---|
| Less than 5% | 0% |
| 5% | 5% |
| 6% | 6% |
| 7% | 7% |
| 8% | 8% |
| 9% | 9% |
| 10% | 10% |
| 11% | 11% |
| 12% | 12% |
| 13% | 13% |
| 14% | 14% |
| 15% | 15%  (Maximum)" |

9.  Section 4.01(c) is deleted in its entirety.

10.  The introductory paragraph of Section 4.02 is amended to read in its entirety as follows:

"Section 4.02. Computation of ROA and Definitions. The ROA referred to in Section 4.01 shall be computed for any Plan Year commencing with the year ending on or after December 31, 1994 through and including the year ending December 31, 1998 by dividing the Document Processing Profit Before Tax (PBT) of the Employer for such year by total Document Processing assets of the Employer for such year.  The figure so calculated shall be rounded to the nearest quarter of one percent.  For purposes of this Article:"

11.  A new Section 4.03 is added to read in its entirety as follows:

XC 000170

2

"Section 4.03. Calculation of EPS and Definitions. The EPS referred to in Section 4.01(b) shall be the diluted earnings per share for the fiscal year contained in the Company's annual audited financial statements, subject to the following automatic adjustments and exclusions:

(a) "adjustments" means changes to the performance goal to appropriately reflect the effect of corporate capitalization, such as a stock split or combination, stock dividends or special distributions to shareholders other than normal cash dividends, merger into another corporation, consolidation into another corporation, spin-offs, any reorganizations, or any partial or complete liquidation.

(b) "exclusions" means the exclusion of the effects of the following items from relevant financial data which are quantified and identified separately in the annual audited financial statements accompanying notes and related management discussion and analysis:

(i)  Extraordinary items or material unusual charges.

(ii)  Changes in the Internal Revenue Code of 1986 from that which was used in determining diluted earnings per share in the immediately preceding year.

(iii)  Changes in foreign tax laws from that which was used in determining diluted earnings per share in the immediately preceding year.

(iv)  Changes in generally accepted accounting principles from that which was used in determining diluted earnings per share in the immediately preceding year.

(v)  Gains and losses from discontinued operations as recognized on the Company's consolidated statements of income.

As a result of adding this new Section 4.03, former Sections 4.03, 4.04, 4.05, 4.06, 4.07, 4.08, 4.09, 4.10, 4.11 and 4.12 are renumbered as Sections 4.04, 4.05, 4.06, 4.07, 4.08, 4.09, 4.10, 4.11, 4.12 and 4.13.

12.  In the first sentence of renumbered Section 4.04, the reference to "Section 4.04" is amended to read "Section 4.05".

13.  In renumbered Section 4.06(d), the reference to "Sections 4.03 and 4.04" is amended to read "Sections 4.04 and 4.05".

14.  Renumbered Section 4.08 is amended to read in its entirety as follows:

"Section 4.08. Allocation of Employer Contributions. The Employer contribution on behalf of a Participant for any year shall be allocated in accordance with Section 4.01. For Plan Years ending before January 1, 1999, one hundred percent of the funds allocated shall be paid in cash or deferred and held in the Trust, as the case may be, pursuant to the provisions of Article Six.

For Plan Years ending on or after December 31, 1999, the Employer contribution on behalf of Participants

(a) allocable to the Profit Sharing Savings Account pursuant to Section 4.01(b) shall be paid in cash or deferred and held in the Trust, as the case may be, pursuant to the provisions of Section 4.06 and Article 6 and

(b) allocable to the Profit Sharing Company Stock Account pursuant to Section 4.01(b) shall be automatically deferred in the form of units representing an interest in the Xerox Stock Fund in a separate account for each Participant (the "Profit Sharing Company Stock Account")."

15.  Renumbered Section 4.09 is amended to read in its entirety as follows:

XC 000171

3

"Section 4.09. Payment to Trustee. The aggregate amount of Employer contributions for any year which are not currently distributable to Participants pursuant to subsections (a) and (b) of Section 6.02 shall be paid to the Trustee before the end of the period following the close of such year in order that such amount may be deducted by the Employer for federal income tax purposes for such year."

16. Renumbered Section 4.11(a)(2) is amended to read in its entirety as follows:

"(2)  The Employer contribution to be allocated to the Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account under this Plan with respect to such year based on the Employer contribution determined under Section 4.01 reduced by any amounts elected to be distributed in cash under Section 6.02(a)(2)and distributed in stock under Section 6.02(a)(3);"

17. Renumbered Section 4.11(a)(4) is amended by changing the reference to "Section 4.10" to "Section 4.11".

18. A new subsection "(5)" is added to Renumbered Section 4.11(b) to read in its entirety as follows:

"(5)  If, after adjustments made to reduce the tentative annual addition pursuant to the foregoing, there is still an excess of the maximum annual addition, the amount otherwise allocable to the Participant's Profit Sharing Company Stock Account shall be reduced as necessary to satisfy the limitations of this Section.  To the extent any amount is contributed to the Trust which is allocable to the Participant's Profit Sharing Company Stock Account but is reduced in accordance with the preceding sentence, such amount shall be held in a suspense account and used to reduce the allocation made on behalf of the Participant in the succeeding limitation year, or if the Participant is not eligible for an allocation in such succeeding year, used to reduce the allocation made on behalf of the remaining Participants of the Plan in such succeeding limitation year."

19. Former Renumbered Section 4.11(b)(5) is renumbered as Section 4.11(b)(6) and is amended to read in its entirety as follows:

"(6)  Notwithstanding anything in this Section 4.11 to the contrary, the tentative annual addition shall be reduced to the extent required to cause such tentative annual addition to not exceed the maximum annual addition, by first reducing the amount which would otherwise be allocated to the Participant's Accounts under this Plan, including amounts which would have been allocated to the Participant's Profit Sharing Company Stock Account, and only after such amounts have reduced to zero, by reducing the amounts which otherwise would have been allocated to such Participant's Accounts under any other plan maintained by the Employer."

20. Renumbered Section 4.11(e)(1) is amended by changing the references to "Section 4.03" and "Section 4.04" therein to "Section 4.04" and "Section 4.05", respectively. Renumbered Section 4.11(e)(3) is amended by capitalizing the word "year" after the word "Plan".

21. Renumbered Section 4.11(f) is amended by changing the reference to "Section 4.10(d)" to "Section 4.11(d)".

22. Renumbered Section 4.12(b) is amended by changing the references to "Section 4.11" and "Section 4.10" therein to "Section 4.12" and "Section 4.11", respectively.

23. Renumbered Section 4.12(d) is amended by changing the reference to "Section 4.11" to "Section 4.12".

24. Renumbered Section 4.12(e) is amended by changing the reference to "Section 4.11" to "Section 4.12".

25. Renumbered Section 4.13 is amended by changing the reference to "Section 4.09(a)" therein to "Section 4.10(a)".

4

XC 000172

26. The introductory paragraph of Section 5.01 is amended by changing the reference to "Section 4.10" in the last sentence to "Section 4.11".

27. Section 5.06(e)(4) is amended by changing the reference to "Section 4.10" to "Section 4.11".

28. The title of ARTICLE SIX is amended to read in its entirety as follows:

"PROFIT SHARING SAVINGS ACCOUNTS, PROFIT SHARING COMPANY STOCK ACCOUNTS, EMPLOYEE SAVINGS ACCOUNTS, COMPANY-MATCHED SAVINGS ACCOUNTS, RETIRE-MENT SAVINGS ACCOUNTS AND ROLLOVER ACCOUNTS"

29. A new Section 6.01(b) is added to read in its entirety as follows:

"(b) Profit Sharing Company Stock Account (established for Plan Years beginning after 1998)"

Subsections 6.01(b), (c), (d), (e) and (f) are hereby renumbered (c), (d), (e), (f) and (g), respectively.

30. Section 6.02 is amended to read in its entirety as follows:

"Section 6.02. Allocation to Profit Sharing Savings Accounts and Profit Sharing Company Stock Accounts.

(a) Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect as follows with respect to the funds allocable to his Profit Sharing Savings Account from such contribution to be used to provide benefits in one or more of the following ways:

(1) transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.03, 4.09, 5.04 through 5.07, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the

(i) "Balanced Fund", which shall be invested primarily in equity and fixed income securities and in other securities or property as determined in accordance with guidelines adopted from time to time by the Board of Directors of Xerox Corporation.

(ii) "Xerox Stock Fund", which shall be invested by the Trustee in the Common Stock, par value $1 per share, of Xerox Corporation, hereafter called "Xerox Stock" and may hold some cash for administrative purposes.

(iii) "Income Fund", which shall be invested primarily in fixed income instruments as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(iv) "U.S. Stock Fund", which shall be invested primarily in stocks of medium to large U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(v) "Small Company Stock Fund", which shall be invested primarily in stocks of smaller U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

(vi) "International Stock Fund", which shall be invested primarily in stock of companies based outside of the United States as determined in accordance with guidelines adopted from time to time by the Board of directors of Xerox Corporation.

XC 000173

5

(vii) Any other fund hereafter established by the Board of Directors of Xerox Corporation which shall be invested in accordance with guidelines adopted from time to time by the Board of Directors of Xerox Corporation.

(each of which funds is referred to as a Separate Fund and which are collectively referred to as Separate Funds).

OR

(2)    distributed to him in cash after deduction of all legally required withholding taxes.

OR

(3)   until January 1, 1998, invested by the Employer, on behalf of such Participant, in Xerox Stock after all legally required withholding taxes have been deducted, and the stock so purchased distributed to the Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the Participant in cash. The Employer shall purchase stock for Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the Employer contribution for such purchase for such year has been made available by it. The portion of such Employer contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by the Employer on the March 15 following the close of the year to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for Participants who have elected the alternative form of benefit provided by this subsection, the Employer may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular Employer contribution.

(b)    The amounts allocated to the Profit Sharing Company Stock Account of each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four shall be automatically invested initially in units in the Xerox Stock Fund. The value of such units may not be transferred or made the subject of loans or discretionary withdrawals until the expiration of the two-year period specified in Sections 6.12, 6.15 and 8.06 of the Plan. The Plan Administrator may, in his or her discretion, determine that dividends on shares of Common Stock of the Company in the Xerox Stock Fund, to the extent such dividends relate to Profit Sharing Company Stock Accounts, shall be paid to Participants from time to time and at such times as the Plan Administrator shall determine."

31.    The introductory paragraph of Section 6.03 is amended by adding the following after the words "Section 6.02" at the end thereof: "(a)(1), (2) or (3)".

32.    Section 6.05 is amended by adding the following words after "Profit Sharing Savings Accounts" in the first sentence: "Profit Sharing Company Stock Accounts,".

33.    Section 6.06 is amended to read in its entirety as follows:

"Section 6.06.  Determination of Value of Profit Sharing Savings Account and Profit Sharing Company Stock Account and Notification to Participants. The value of a Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account on any date shall be the sum of the number of units in each Separate Fund credited to his Profit Sharing Savings Account and Profit Sharing Company Stock Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the

6

XC 000174

preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Profit Sharing Savings Account and Profit Sharing Company Stock Account of each Participant shall be credited with the portion of the Employer contribution for the calendar year just completed allocable to such Accounts. Such amount shall then be invested by the Trustee or distributed to the Participant in cash or Xerox Stock as provided in Section 6.02 and with respect to any amounts invested in any of the Separate Funds, the Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Profit Sharing Savings Account and Profit Sharing Company Stock Account."

34. The second paragraph of Section 6.09 is amended by changing the reference to "Section 4.10" to "Section 4.11".

35. Section 6.12 is amended to read in its entirety as follows:

"Section 6.12. Transfers Among Separate Funds. Subject to the last sentence of this Section, the Plan Administrator may, in her sole discretion, adopt uniform rules of general application with respect to each Account with respect to the transfers of funds allocated to one of the Separate Funds credited to a Participant's Profit Sharing Savings Account, his Profit Sharing Company Stock Account, his Employee Savings Accounts, his Company-Matched Savings Account, his Retirement Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section, a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding such transfer) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings Account, Profit Sharing Company Stock Account, Employee Savings Accounts, Company-Matched Savings Account, Retirement Savings Account or Rollover Account, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred. The value of units credited to a Participant's Profit Sharing Company Stock Account may not be transferred prior to the end of the second anniversary of the initial crediting of such units to such Account."

36. Section 6.15(a) is amended to read in its entirety as follows:

"(a)    A Participant who is an employee of an Employer, or a Participant who has terminated employment with the Employer but who remains a party in interest (as defined by ERISA Section 3(14)) with respect to the Plan, may borrow funds for any reason from his Before-Tax Savings Account, Employee After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account, amounts allocated to his Profit Sharing Company Stock Account (provided that the units represented by such funds have been in such Account for a period of at least two years) in a minimum amount of $500 per loan, subject to the limitations in subsection (f) hereof. The loan program shall be administered by the Plan Administrator and the Plan Administrator may establish uniform rules and regulations applicable to the loan program which shall appear in the loan documents and in You and Xerox."

37. Section 6.15(f)(4) is amended to read in its entirety as follows:

"(4)    The aggregate amount of all loans from a person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account and Profit Sharing Company Stock Account is limited to fifty percent of the combined balances in such person's Before-Tax

XC 000175

Savings Account, After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account and Profit Sharing Company Stock Account, which as of the time of the application for such loan are not security for previous loans."

38.  Section 6.15(g)(2) is amended to read in its entirety as follows:

"(2)  Such defaulting person may not make withdrawals from his Employee Savings Accounts, Profit Sharing Savings Account or Profit Sharing Company Stock Account for a period of twelve months from the date of default."

39.  The third sentence of Section 7.01 is amended to read in its entirety as follows:

"A Participant who has attained his sixty-fifth birthday (sixtieth birthday in the case of a Participant who is a pilot of an airplane operated by the Company on his sixtieth birthday) shall have a nonforfeitable interest in the amounts credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts."

40.  Section 7.02 is amended to read in its entirety as follows:

"Section 7.02.  Amount of Benefits.  The benefits to which a Participant shall be entitled upon retirement shall be such as the value of the units credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts will provide."

41.  The opening paragraph of Section 7.03 is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings,".

42.  The first sentence of Section 7.03(b)(1) is amended to read in its entirety as follows:

"(1)  In the event that the Participant elects to receive at least part of his Plan benefits by annuity, the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts which are to be used to provide such annuity shall be segregated for his benefit (valued as of the valuation date determined pursuant to Section 6.13), and any whole shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings, Retirement Savings or Rollover Accounts will be sold by the Trustee, and the proceeds combined with the amount segregated to his separate Account, unless the Participant elects to have the shares distributed to him.  In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash."

43.  The paragraph following Section 7.03(b)(2)(C) is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings," each time they appear.

44.  Section 8.03 is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings," each time they appear in the paragraph.

45.  The title to Section 8.05 and the first paragraph of Section 8.05(a) are amended to read in their entirety as follows:

"Section 8.05.  Hardship Withdrawals From Profit Sharing Savings Account, Profit Sharing Company Stock Account, Rollover Account, Employee After-Tax Savings Account and Employee Before-Tax Savings Account.

(a)  Upon the application of any Participant who is an employee of the Employer pursuant to Section 3.02, the Plan Administrator, in accordance with a uniform nondiscriminatory policy, may in his discretion, permit such Participant to withdraw all or a portion of the contributions then credited

8

XC 000176

to his Profit Sharing Savings Account and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon), the contributions credited to his Employee Before-Tax Savings Account and earnings thereon credited on or prior to December 31, 1988 (unless such Participant has attained age 59-1/2, in which case such Participant may withdraw all earnings credited thereon), the amounts credited to his Profit Sharing Company Stock Account with respect to the value of units credited to such Account for a period of not less than two years, Rollover Account and the amounts credited to his Employee After-Tax Savings Account in an amount not to exceed the amounts needed for the purposes of:".

46.  Section 8.05(b) is amended by adding a new subsection (iv) to read in its entirety as follows:

"(iv)  the amounts credited to the Participant's Profit Sharing Company Stock Account; and".

Former subsection 8.05(b)(iv) then becomes 8.05(b) (v).

47.  The first two paragraphs of Section 8.06 are amended to read in their entirety as follows:

"Section 8.06.  Discretionary Withdrawals From Employee After-Tax Savings Account and Profit Sharing Company Stock Account.  Any Participant who is an employee of the Employer pursuant to Section 3.02 may, upon application to the Plan Administrator on forms provided by the Plan Administrator for such purpose request that all or a portion of the value credited to his Rollover Account first, then his Employee After-Tax Savings Account, and finally his Profit Sharing Company Stock Account with respect to the value of units credited to such Account for a period of not less than two years, be withdrawn from such Accounts and paid to him in cash as of the valuation date immediately preceding or coincident with the date of filing such request with the Plan Administrator.

If a Participant requests a withdrawal under this Section, a number of units in the Separate Funds equal in value to the amount requested for withdrawal (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Rollover Account, Employee After-Tax Savings Account and Profit Sharing Company Stock Account.  The Plan Administrator shall then instruct the Trustees to make payment of the amount requested to be withdrawn.  For the purposes hereof, requests which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday."

48.  Section 9.01 is amended by adding the words "Profit Sharing Company Stock Account," after the words "Profit Sharing Savings Account,".

49.  The third sentence of Section 9.02(a) is amended to read in its entirety as follows:

"Notwithstanding the foregoing, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings Account, Profit Sharing Company Stock Account, Company-Matched Savings Account, Employee Savings Account, Rollover Account and, to the extent such Account is fully vested pursuant to the provisions of Schedule A attached hereto, Retirement Savings Account exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto."

50.  The third paragraph of Section 10.01(a) is amended by changing the reference to "Section 4.09(d) or (e)" to "Section 4.10(d) or (e)".

51.  Section 10.02 is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings," each time they appear.

52.  Section 10.03 is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings,".

9

XC 000177

53.  Section 11.01 is amended by changing the reference to "4.11" to "4.12" each time it appears.

54.  The section references in Article 14 are changed to read "Section 14.01", "Section 14.02" and "Section 14.03", respectively.

55.  Section 14.01(a) is amended by adding the words "Profit Sharing Company Stock," after the words "Profit Sharing Savings,".

These amendments are effective as of January 1, 1998. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 15th day of July, 1998.

XEROX CORPORATION

By:_____
                    Vice President

Attest:

By:_____
            Assistant Secretary

XC 000178

AMENDMENT NO. 3
TO
1998 RESTATEMENT
XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan", as amended by Amendment Nos. 1 and 2 (hereinafter referred to as the "Plan"), and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  Section 2.04 is hereby amended to read in its entirety as follows:

    "Section 2.04. Management of Trust Fund.  The Board of Directors of the Employer or any committee of the Board to which the Board delegates responsibilities under this Plan (hereinafter referred to as "Board of Directors" or "Board"), shall be a named fiduciary of the Plan and shall have the authority to control and manage the assets of the Plan. The Board shall also have the authority to appoint another named fiduciary or fiduciaries or an investment manager or managers (as defined in Section 3(38) of ERISA or otherwise as provided in the Trust Agreement To Fund Retirement Plans, as amended from time to time) to manage (including the power to acquire and dispose of) all or any part of the assets of the Plan."

2.  Section 2.06 is amended to read in its entirety as follows:

    "Section 2.06. Claims Procedures.

    a.  A Participant or Beneficiary, as those terms are defined under ERISA and regulations promulgated thereunder, must file with the Plan Administrator a written claim for benefits under the Plan. The Plan Administrator shall, within a reasonable time not to exceed ninety days, unless special circumstances require an extension of time of not more than an additional ninety days (in which event a Participant or Beneficiary shall be notified of the delay during the first ninety-day period), provide adequate notice in writing to any Participant or Beneficiary whose claim for benefits shall have been denied, setting forth the following matters in a manner calculated to be understood by the Participant or Beneficiary:

        (i)  the specific reason or reasons for the denial;

        (ii)  specific reference to the provision or provisions of the Plan on which the denial is based;

        (iii)  a description of any additional material or information required to perfect the claim, and an explanation of why such material or information is necessary; and

        (iv)  information as to the steps to be taken in order that the denial of the claim may be reviewed.

    b.  If written notice of the denial of a claim has not been furnished to a Participant or Beneficiary, and such claim has not been granted within the time prescribed in Subsection (a) hereof (including any applicable extension), the claim for benefits shall be deemed denied.

XC 000179

c.    A Participant or Beneficiary whose claim for benefits shall have been denied in whole or in part, must, within sixty days from either the receipt of the denial of the claim or from the time the claim is deemed denied (unless the notice of denial grants a longer period within which to respond), appeal such denial to the Plan Administrator. The Participant or Beneficiary may, upon request, at this time review documents pertinent to his claim and may submit written issues and comments. Failure to file such appeal within the applicable time period shall be a bar to all future proceedings with respect to the claim.

d.    The Plan Administrator shall notify a Participant or Beneficiary of its decision within sixty days after an appeal is received, unless special circumstances require an extension of time of not more than an additional sixty days (in which event a Participant or Beneficiary will be notified of the delay during the first sixty-day period). Such decision shall be given in writing in a manner calculated to be understood by the Participant or Beneficiary and shall include (i) specific reasons for the deci-sion and (ii) specific reference to the provision or provisions of the Plan on which the decision is based."

3.    The headings of Section 3.01(a), (b), (c) and (d) are each amended by inserting after the word "hired" the words "by the Company and on the payroll of the Company".

4.    Section 3.02 is amended by changing the "." to a ";" at the end of subsection (g) and adding a new subsection (h) to read in its entirety as follows:

"(h)  Any person who is not on the payroll of the Company."

5.    Section 4.01 is amended by deleting the word "by" from the phrase "or by any subsidiary" in the fourth line, and by change the name "PD Reader, Inc." to "Uppercase, Inc.".

6.    Section 4.04(a) is amended to read in its entirety as follows:

"(a)  with respect to Participants paid through the Company's Rochester payroll system, the to-tal of amounts actually paid (exclusive of deferred compensation amounts) during which time the employee was an eligible Participant pursuant to Section 3.01 during such calendar year and classi-fied under the following payroll earnings codes established by the Company:

| | | | |
|---|---|---|---|
| AJ | EW | PN | TS |
| B1 | GT | QE | VA |
| BN | HD | QL | VR" |
| C1 | HL | QS | |
| CI | MD | QY | |
| CL | OC | SF | |
| CN | OJ | SJ | |
| CO | OT | SR | |
| CS | PI | TD | |

7.    Section 4.05(a) is amended to read in its entirety as follows:

"(a)  Until January 1, 1999, Compensation of a Participant who is an employee of the Employer pursuant to Section 3.02 who at any time during a calendar year ending prior to his normal retirement date is absent due to physical or mental disability leave under Section 3.05 shall include for the pe-riod of such absence and entitlement an amount equal to the basic compensation which he would have received during such period if he had been actively employed and paid at the rate of basic compensation applicable to him prior to such absence.

Effective January 1, 1999, a Participant who is an employee of the Employer pursuant to Section 3.02 who at any time during a calendar year ending prior to his normal retirement date is ab-sent due to physical or mental disability leave under Section 3.05 shall not be considered to be re-ceiving compensation for any purpose under this Plan while so absent."

XC 000180

8. Section 4.06(d) and the language following are amended to read in their entirety as follows:

"(d) terminates his employment on or after April 15, 1998 but prior to January 1, 1999 pursuant to RIGP Plus

on or as of any date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an Employer contribution under Section 4.01 for the year in which his retirement, death, termination on or after April 15, 1998 but prior to January 1, 1999 pursuant to RIGP Plus or classification as inactive without benefits occurs to the extent of the compensation paid to him for services actually rendered during such year, in the event of retirement, death, or termination on or after April 15, 1998 but prior to January 1, 1999 pursuant to RIGP Plus, or for disability benefits received until becoming classified as inactive without benefits, in the event of becoming so classified. Such compensation shall be determined in accordance with the provisions of Sections 4.03 and 4.04. The entitlement of a Participant to an Employer contribution for the year of retirement, death, termination on or after April 15, 1998 but prior to January 1, 1999 pursuant to RIGP Plus or classification as inactive without benefits in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable. Notwithstanding any other provision of the Plan, as soon as administratively feasible after the Employer contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the Participant or his beneficiary, as the case may be, in such manner as shall be determined by the Plan Administrator in his absolute discretion."

9. In Section 4.07 is amended to read in its entirety as follows:

"Section 4.07. Contribution for Employees Who Transfer to Any Entity That Reports Into the Xerox New Enterprise Board ("XNE Company") or to Any Subsidiary of the Employer. In the event that a Participant transfers employment from the Employer to an XNE Company of the Employer or to any subsidiary of the Employer, such Participant shall receive credit for Hours of Service and shall be entitled to an Employer contribution under Section 4.01 to the extent of the compensation paid to him for services actually rendered up to the date of transfer of employment to the XNE Company or to such subsidiary, provided such Participant remains employed by the XNE Company or by such subsidiary on December 31 of the year of such transfer."

10. Section 4.11(b)(1) is amended to delete the words "by said amount" at the end of the subsection and add the following: "that is deferred by said amount and instead pay such amount in cash."

11. Section 5.05(b)(4) is deleted in its entirety and Sections 5.05(b)(5) and 5.05(b)(6) are renumbered as Sections 5.05(b)(4) and 5.05(b)(5).

12. The opening paragraph of Section 6.02(a)(1) is amended to read in its entirety as follows:

"(1) transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.04, 4.11, 5.04 through 5.06, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the"

13. Section 6.02(a)(1)(i) through (vii) are amended to read in their entirety as follows:

"(i) "Balanced Fund", which shall be invested primarily in equity and fixed income securities and in other securities or property as determined in accordance with guidelines adopted from time to time by the Board of Directors.

(ii) "Xerox Stock Fund", which shall be invested by the Trustee in the Common Stock, par value $1 per share, of Xerox Corporation, hereafter called "Xerox Stock" and may hold some cash for administrative purposes.

XC 000181

3

(iii) "Income Fund", which shall be invested primarily in fixed income instruments as determined in accordance with guidelines adopted from time to time by the Board of Directors.

(iv) "U.S. Stock Fund", which shall be invested primarily in stocks of medium to large U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of Directors.

(v) "Small Company Stock Fund", which shall be invested primarily in stocks of smaller U.S. companies as determined in accordance with guidelines adopted from time to time by the Board of Directors.

(vi) "International Stock Fund", which shall be invested primarily in stock of companies based outside of the United States as determined in accordance with guidelines adopted from time to time by the Board of Directors.

(vii) Any other fund hereafter established by the Board of Directors which shall be invested in accordance with guidelines adopted from time to time by the Board of Directors."

14. In the sixth line of Section 6.02(b), the words "determine that" should read "determine how".

15. The first sentence of the penultimate paragraph of Section 8.05 is amended to read in its entirety as follows:

"If a Participant's application for a hardship withdrawal is approved, a number of units equal in value to the amount approved for withdrawal payable from the Separate Funds (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited, in the following order: from the Participant's (i) After-Tax Savings Account, (ii) Rollover Account, (iii) Profit Sharing Company Stock Account, (iv) Profit Sharing Savings Account, (v) AMTX Employee Before-Tax Savings Account, and (vi) Employee Before-Tax Savings Account, as the case may be."

16. The title of Section 8.06 is amended to read in its entirety as follows:

"Section 8.06. Discretionary Withdrawals From Rollover Account, Employee After-Tax Savings Account and Profit Sharing Company Stock Account."

17. The last sentence of Section 11.01 is amended to read in its entirety as follows:

"Amendments relating to revocation or termination of the Plan under Article Twelve of the Plan or relating to the amount to be contributed by the Employer under Sections 4.01, 4.02 or 4.11 of the Plan shall be effected pursuant to a resolution duly adopted by the Board of Directors in accordance with the Business Corporation Law of the State of New York.

Schedule A

18. In the first line of the table in Section 4.01 of Schedule A, the percentage should read "10%".

19. Section 4.03 is amended to read in its entirety as follows:

Section 4.03. Definition of Compensation. Except as provided in Section 4.04, the "com-pen-sation" of an XES Participant for any calendar year shall mean, with respect to XES Participants paid through Xerox Corporation's Rochester payroll system, the total of amounts actually paid (exclusive of deferred compensation amounts) during which time the Employee was an eligible XES Participant pursuant to Sections 3.01 and Schedule A, Section 4.01, hereof, during such calendar year and classified under the following payroll earnings code, or any successor code(s) thereto, established by the Employer:

XC 000182

4

| | | | |
|---|---|---|---|
| AJ | EW | PN | TS |
| B1 | GT | QE | VA |
| BN | HD | QL | VR" |
| C1 | HL | QS | |
| CI | MD | QY | |
| CL | OC | SF | |
| CN | OJ | SJ | |
| CO | OT | SR | |
| CS | PI | TD | |

With respect to XES Participants paid other than through Xerox Corporation's Rochester payroll system, the "compensation" of an XES Participant for any calendar year shall mean the total of amounts actually paid (exclusive of deferred compensation amounts) during which time the Employee was an eligible XES Participant pursuant to Section 3.01 and Schedule A, Section 4.01. hereof during such calendar year and which would be attributable to the payroll earnings codes listed above.

In addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year, adjusted as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of an XES Participant."

20. Section 4.04(a) is amended to read in its entirety as follows:

"(a) Until January 1, 1999, Compensation of an XES Participant who is an employee pursuant to Sections 3.02 and Schedule A, Section 4.01, hereof, who at any time during a calendar year ending prior to his normal retirement date is absent due to physical or mental disability leave under Section 3.05 shall include for the period of such absence and entitlement an amount equal to the basic compensation which he would have received during such period if he had been actively employed and paid at the rate of basic compensation applicable to him prior to such absence.

Effective January 1, 1999, an XES Participant who is an employee pursuant to Sections 3.02 and Schedule A, Section 4.01, hereof, who at any time during a calendar year ending prior to his normal retirement date is absent due to physical or mental disability leave under Section 3.05 shall not be considered to be receiving compensation for any purpose under this Plan while so absent."

21. Section 4.13(c) is amended by inserting the words "until January 1, 1998," at the beginning.

These amendments are effective as of the date hereof. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 21st day of December, 1998.

XEROX CORPORATION

By: _____
                        Vice President

Attest:

By: _____
        Assistant Secretary

5

XC 000183

# AMENDMENT NO. 4
## TO
## 1998 RESTATEMENT
### XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN

#### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan", as amended by Amendment Nos. 1, 2 and 3 (hereinafter referred to as the "Plan"); and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1. Effective March 1, 1999, Section 2.03 is amended to read in its entirety as follows:

    "Section 2.03. Plan Administrator. The chief executive officer of the Employer (or an officer designated by the chief executive officer) shall appoint a Plan Administrator who shall have full authority to control and manage the operation and administration of the Plan, and who shall serve until the appointment of a successor Plan Administrator by an amendment to this Section. Until so removed, the Plan Administrator is Sally L. Conkright. The Plan Administrator may designate other persons to carry out her responsibilities under the Plan. Such designation of any other person shall be in writing and shall be kept on file in the office of the Plan Administrator. Any direction, certificate, statement or declaration pertaining to the administration of the Plan signed by the Plan Administrator or a person designated to carry out her responsibilities (as provided in the preceding sentence) shall be conclusive evidence of the action taken or evidenced by such direction, certificate, statement or declaration."

2. Effective January 1, 1999, Section 4.04(a) is amended to read in its entirety as follows:

    "(a) with respect to Participants paid through the Company's Rochester payroll system, the total of amounts actually paid (exclusive of deferred compensation amounts) during which time the employee was an eligible Participant pursuant to Section 3.01 during such calendar year and classified under the following payroll earnings codes established by the Company:

| | | | |
|-----|-----|-----|------|
| AJ  | CS  | OT  | SR   |
| B1  | EW  | PI  | TD   |
| BN  | GT  | PN  | TS   |
| C1  | HD  | QE  | VA   |
| CI  | HL  | QL  | VR"  |
| CL  | MD  | QY  |      |
| CN  | OC  | SF  |      |
| CO  | OJ  | SJ  |      |

In all other respects, the Plan remains unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 2½th day of February, 1999.

XEROX CORPORATION

Attest:

By: _____
         Assistant Secretary

By: _____
                    Vice President

XC 000107

AMENDMENT NO. 5
TO
1998 RESTATEMENT
XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN


W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan", as amended by Amendment Nos. 1, 2, 3 and 4 (hereinafter referred to as the "Plan"), and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  Section 1.03 is amended to read in its entirety as follows:

    "Section 1.03. Balanced Fund-More Stocks (formerly referred to as the "Balanced Fund"). Balanced Fund-More Stocks is a Tier I Fund."

2.  Section 1.13 is amended to read in its entirety to read as follows:

    "Section 1.13. Income Fund. Income Fund is a Tier II Fund. (The "Guaranteed Fund", which existed until as of April 1, 1991, was divided at such time into the Income Fund and the "Segregated Assets Fund". Each Participant's pro rata share of the "Segregated Assets Fund" was deposited in the Participant's Income Fund account and began earning interest in the Income Fund from April 30, 1997, at which time the "Segregated Assets Fund" was eliminated.)"

3.  Sections 1.14, 1.19 and 1.20 are deleted in their entirety and the remaining Sections 1.15 through 1.21 are renumbered Sections 1.14 through 1.18.

4.  Section 1.18 is amended to read in its entirety as follows:

    "Section 1.18. Xerox Stock Fund. Xerox Stock Fund is a Tier II Fund."

5.  Section 3.01(f)(4) is amended to change the reference to "Section 1.15(c)" to "Section 1.14(c)".

6.  A new Section 3.11 is added to read in its entirety as follows:

    "Section 3.11. Employees With Prior Service With Delphax Systems Inc. Subject to Sections 3.02 through 3.04, each employee of Delphax Systems Inc. ("Delphax") who was employed by Delphax at the time it became a wholly-owned subsidiary of the Company and later becomes an Employee of the Company shall receive credit for all Hours of Service for all periods during which he was employed by Delphax, for the sole purpose of determining eligibility for participation under this Plan."

7.  Section 4.04(a) is amended to read in its entirety as follows:

    "(a) with respect to Participants paid through the Company's Rochester payroll system, the total of amounts actually paid (exclusive of deferred compensation amounts) during which time the employee was an eligible Participant pursuant to Section 3.01 during such calendar year and classified under the following payroll earnings codes established by the Company:

XC 000108

| | | | |
|---|---|---|---|
| S2 | CO | JD | RC |
| S3 | CS | MD | S5 |
| SB | CT | OA | SF |
| SD | CW | OC | SJ |
| SL | CX | OD | SR |
| %2 | EB | OJ | TD |
| %3 | EC | OQ | TS |
| A9 | EW | OS | U2 |
| AJ | FD | OT | U3 |
| B1 | FH | PB | VA |
| B9 | FM | PH | VH |
| BN | GT | PI | VP |
| C1 | HA | PN | |
| CD | HD | PY | |
| CH | HL | QE | |
| CI | HW | QL | |
| CL | J9 | QY | |

8. Effective January 1, 1995, Section 4.11(d)(1) is amended to read in its entirety as follows:

"(d) (1)  The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000. If the Participant also participates in one or more defined benefit plans of the Employer (whether or not terminated) the maximum annual addition shall be reduced so that for such calendar year the sum of the Defined Benefit Plan Faction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0."

9. Effective October 1, 1998, Section 6.02 is amended to read in its entirety as follows:

"Section 6.02. Allocation to Profit Sharing Savings Accounts and Profit Sharing Company Stock Accounts.

(a)  Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect as follows with respect to the funds allocable to his Profit Sharing Savings Account from such contribution to be used to provide benefits in one or more of the following ways:

(1)  transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.04, 4.11, 5.04 through 5.06, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the

(A)  Tier I Broad Strategy Funds made up of funds more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time, and shall include the Balanced Fund--More Stocks; each such fund to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors;

(B)  Tier II Focused Strategy Funds made up of funds more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time and shall include the Income Fund; each such fund to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors, and the Xerox Stock Fund.

XC 000109

2

(C)  Tier III, the Marketplace Window, which shall offer a wide selection of no-load mutual funds listed and more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time.

OR

(D)  Any other fund or investment vehicle as shall be established or determined from time to time by the Board of Directors.

(each of which funds within the Tier I, Tier II and Tier III Funds is referred to as a "Separate Fund" and which are collectively referred to as "Separate Funds").

(2)  distributed to him in cash after deduction of all legally required withholding taxes.

OR

(3)  until January 1, 1998, invested by the Employer, on behalf of such Participant, in Xerox Stock after all legally required withholding taxes have been deducted, and the stock so purchased distributed to the Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the Participant in cash. The Employer shall purchase stock for Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the Employer contribution for such purchase for such year has been made available by it. The portion of such Employer contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by the Employer on the March 15 following the close of the year to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for Participants who have elected the alternative form of benefit provided by this subsection, the Employer may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular Employer contribution.

(b)  The amounts allocated to the Profit Sharing Company Stock Account of each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four shall be automatically invested initially in units in the Xerox Stock Fund. The value of such units may not be transferred or made the subject of loans or discretionary withdrawals until the expiration of the two-year period specified in Sections 6.12, 6.15 and 8.06 of the Plan."

10.  The third paragraph of Section 6.03 is amended to read in its entirety as follows:

"Any Participant who does not make a new election by such date fixed by the Plan Administrator shall be deemed to have elected the same percentage allocation of the amount allocable to his Profit Sharing Savings Account as specified in the last previous election form duly filed by him. If no duly filed election is on record for such Participant, he shall be deemed to have elected that the amount allocable to his Profit Sharing Savings Account be invested by the Trustee in the Balanced Fund-More Stocks."

11.  Section 6.12 is amended to read in its entirety as follows:

"Section 6.12. Transfers Among Separate Funds. Subject to the last sentence of this Section, the Plan Administrator may, in her sole discretion, adopt uniform rules of general application with respect to each Account with respect to the transfers of funds allocated to one of the Separate Funds credited to a Participant's Profit Sharing Savings Account, his Profit Sharing Company Stock Account, his Employee Savings Accounts, his Company-Matched Savings Account, his Retirement

**XC 000110**

Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section, a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding such transfer) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings Account, Profit Sharing Company Stock Account, Employee Savings Accounts, Company-Matched Savings Account, Retirement Savings Account or Rollover Account, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred; provided, however, that a Participant who elects to transfer funds to the Tier III Marketplace Window shall be deemed to have elected transfer to the Hewitt Money Market Fund in the absence of an affirmative election of a Separate Fund or Funds until such time as an affirmative election shall be made by the Participant. The value of units credited to a Participant's Profit Sharing Company Stock Account may not be transferred prior to the end of the second anniversary of the initial crediting of such units to such Account."

12. The first sentence of Section 6.14(a) is amended to read in its entirety as follows:

"(a)  For Participants who have terminated employment, payments from any Separate Fund, except as noted in subsection (b) below, shall be made based on the valuation date as of the close of business on the day the distribution request is received, providing such request is received by 4:00 p.m. (New York time), on a day on which the New York Stock Exchange is open for business. Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business."

13. Section 7.03(e) is amended to read in its entirety as follows:

"(e)  Retirees and Participants who have terminated their employment with the Company on or after April 15, 1998 pursuant to RIGP Plus

(1)  may elect to receive from their Accounts fixed installments paid on a monthly or quarterly basis;

(2)  shall be permitted to change such elections, subject to procedures established by the Plan Administrator; and

(3)  as of June 1, 1999, may elect to receive partial distributions from their Accounts.

No installment payments or partial distributions shall be payable in shares of Xerox Stock."

<u>Schedule A</u>

14. In Section 4.03, the listing of payroll earnings codes is amended in its entirety to read as follows:

| | | | |
|------|------|------|------|
| $2   | CO   | JD   | RC   |
| $3   | CS   | MD   | S5   |
| $B   | CT   | OA   | SF   |
| $D   | CW   | OC   | SJ   |
| $L   | CX   | OD   | SR   |
| %2   | EB   | OJ   | TD   |
| %3   | EC   | OQ   | TS   |
| A9   | EW   | OS   | U2   |
| AJ   | FD   | OT   | U3   |

XC 000111

| B1 | FH | PB | VA |
| B9 | FM | PH | VH |
| BN | GT | PI | VP |
| C1 | HA | PN | |
| CD | HD | PY | |
| CH | HL | QE | |
| CI | HW | QL | |
| CL | J9 | QY | |

15. Effective February 27, 1998, Section 4.10(d)(1) of Schedule A to the Plan is amended to read in its entirety as follows:

"(d) (1)  The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such XES Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000.  If the XES Participant also participates in one or more defined benefit plans of any Affiliate that includes XES  (whether or not terminated) the maximum annual addition shall be reduced so that for such calendar year the sum of the Defined Benefit Plan Fraction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0."

16. Section 4.14(b) is amended to read in its entirety as follows:

"(b)  The five (5) percent contribution shall be made to the Retirement Savings Account, and shall be invested in the Separate Funds available under this Plan, in the same allocation as the XES Participant has elected for his Before-Tax and After-Tax Savings Accounts. If no prior election has been made with respect to the allocation in the Separate Funds in the XES Participant's Before-Tax and After-Tax Savings Accounts, such five percent contribution shall be invested in its entirety in the Balanced Fund-More Stocks, subject to any subsequent reallocation by the XES Participant."

In all other respects, the Plan remains unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 9th day of September, 1999.

XEROX CORPORATION

Attest:

By: _____
        Vice President

By: _____
        Assistant Secretary

XC 000112

5

# AMENDMENT NO. 6
## TO
## 1998 RESTATEMENT
## XEROX CORPORATION PROFIT SHARING AND SAVINGS PLAN

### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") has established the Xerox Corporation Profit Sharing and Savings Plan which is presently set forth in the "1998 Restatement, Xerox Corporation Profit Sharing and Savings Plan", as amended by Amendment Nos. 1, 2, 3, 4 and 5 (hereinafter referred to as the "Plan"), and

WHEREAS, the Company desires to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  The introductory paragraph of Section 4.01 is amended to read in its entirety as follows:

    "Section 4.01. Employer Contributions. For each calendar year, the Employer shall make a contribution to the Profit Sharing Savings Accounts on behalf of each Participant who is an employee of the Employer or any subsidiary or affiliate of the Employer under Section 3.06 on the last day of each calendar year; provided, however, that contributions may be made on behalf of individuals not employed on the last day of such calendar year if they have transferred employment from the Employer to other companies in connection with the transfer of assets or businesses by the Employer to such other companies, in accordance with the instruments providing for and governing such transfers and, further provided, that in connection with contributions made pursuant to this Section 4.01, the term "Participant" shall not include employees who are employed by, or assigned to, the Xerox Computer Services division as of December 21, 1993 (after the contribution with respect to the year ended December 31, 1993) or the following wholly-owned subsidiaries of the Employer as of the date of their elections to participate: Chrystal Software, Inc., dpiX, Inc., InConcert, Inc., InXight Software, Inc., LiveWorks, Inc., Uppercase, Inc. and XESystems, Inc. ("XES"). XES employees shall participate in the Plan provisions set forth in Schedule A attached hereto and shall not participate in any Plan provisions set forth in this Article Four. The contributions on behalf of each Participant allocable to his Profit Sharing Savings Account shall be determined in the aggregate by reference to the compensation of such Participant multiplied by the appropriate percentage selected from the table in Section 4.01(a) below for Plan Year ending December 31, 1998 and, thereafter, Section 4.01(b) below. The appropriate percentage selected from the tables below shall be that opposite the percentage return on assets (hereinafter referred to as "ROA") calculated for such year pursuant to Section 4.02 and that opposite the percentage earnings per share growth rate (hereinafter "EPS Growth Rate") calculated for such year pursuant to 4.03."

2.  The introductory paragraph of Section 4.01(b) (not including the table) is amended to read in its entirety as follows:

    "(b)  For contributions made with respect to Plan Years ending on or after December 31, 1999, the contribution on behalf of a Participant allocable to his Profit Sharing Savings Account shall be equal to 50% of the amount derived by multiplying the amount of the Participant's compensation for that calendar year by the payout percentage set forth in the table below that corresponds with the EPS Growth Rate for such Plan Year. In the event that EPS in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00."

**XC 000113**

3. Section 4.08 is amended to read in its entirety as follows:

"Section 4.08. Allocation of Employer Contributions. The Employer contribution on behalf of a Participant for any year shall be allocated in accordance with Section 4.01. One hundred percent of the funds allocated shall be paid in cash or deferred and held in the Trust, as the case may be, pursuant to the provisions of Article Six."

4. Section 4.09 is amended to read in its entirety as follows:

"Section 4.09. Payment to Trustee. The aggregate amount of Employer contributions for any year which are not currently distributable to Participants pursuant to Section 6.02 shall be paid to the Trustee before the end of the period following the close of such year in order that such amount may be deducted by the Employer for federal income tax purposes for such year."

5. Section 4.11(a)(2) is amended to read in its entirety as follows:

"(2) The Employer contribution to be allocated to the Participant's Profit Sharing Savings Account under this Plan with respect to such year based on the Employer contribution determined under Section 4.01 reduced by any amounts elected to be distributed in cash under Section 6.02(2)and distributed in stock under Section 6.02(3);"

6. Section 4.11(b)(5) is deleted in its entirety. Section 4.11(b)(6) is now renumbered Section 4.11(b)(5).

7. Renumbered Section 4.11(b)(5) is amended to read in its entirety as follows:

"(5) Notwithstanding anything in this Section 4.11 to the contrary, the tentative annual addition shall be reduced to the extent required to cause such tentative annual addition to not exceed the maximum annual addition, by first reducing the amount which would otherwise be allocated to the Participant's Accounts under this Plan and only after such amounts have reduced to zero, by reducing the amounts which otherwise would have been allocated to such Participant's Accounts under any other plan maintained by the Employer."

8. The title of ARTICLE SIX is amended to read in its entirety as follows:

"ARTICLE SIX

PROFIT SHARING SAVINGS ACCOUNTS, EMPLOYEE SAVINGS ACCOUNTS, COMPANY-MATCHED SAVINGS ACCOUNTS, RETIREMENT SAVINGS ACCOUNTS AND ROLLOVER ACCOUNTS"

9. Section 6.01(b) is deleted in its entirety. Sections 6.01(c), (d), (e), (f) and (g) are renumbered Sections 6.01(b), (c), (d), (e) and (f).

10. The title of Section 6.02 and Section 6.02(a) are amended to read in their entirety as follows:

"Section 6.02. Allocation to Profit Sharing Savings Accounts. Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect as follows with respect to the funds allocable to his Profit Sharing Savings Account from such contribution to be used to provide benefits in one or more of the following ways:"

11. Section 6.02(b) is deleted in its entirety.

12. Section 6.05 is amended to read in its entirety as follows:

"Section 6.05. Determination of Unit Values of Each Separate Fund. The determination of the unit value of each Separate Fund as of any valuation date shall be made by dividing the total value of the assets in each Separate Fund, as determined by the Trustee in accordance with Section 6.04,

2

XC 000114

by the number of units in each Separate Fund credited to the Profit Sharing Savings Accounts, Employee Savings Accounts, Company-Matched Savings Accounts, Retirement Savings Accounts and Rollover Accounts of all Participants. On any valuation date a uniform change may be made in the value of all outstanding units in any of the Separate Funds, provided that such change shall not affect the aggregate value of Participant's Accounts in such Fund as of such valuation date."

13. Section 6.06 is amended to read in its entirety as follows:

"**Section 6.06. Determination of Value of Profit Sharing Savings Account and Notification to Participants.** The value of a Participant's Profit Sharing Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Profit Sharing Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Profit Sharing Savings Account of each Participant shall be credited with the portion of the Employer contribution for the calendar year just completed allocable to such Account. Such amount shall then be invested by the Trustee or distributed to the Participant in cash or Xerox Stock as provided in Section 6.02 and with respect to any amounts invested in any of the Separate Funds, the Participant's Profit Sharing Savings Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Profit Sharing Savings Account."

14. Section 6.12 is amended to read in its entirety as follows:

"**Section 6.12. Transfers Among Separate Funds.** Subject to the last sentence of this Section, the Plan Administrator may, in her sole discretion, adopt uniform rules of general application with respect to each Account with respect to the transfers of funds allocated to one of the Separate Funds credited to a Participant's Profit Sharing Savings Account, his Employee Savings Accounts, his Company-Matched Savings Account, his Retirement Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section, a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding such transfer) shall be canceled and debited from his Profit Sharing Savings, Employee Savings, Company-Matched Savings, Retirement Savings or Rollover Accounts, as the case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings Account, Employee Savings Accounts, Company-Matched Savings Account, Retirement Savings Account or Rollover Account, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred; provided, however, that a Participant who elects to transfer funds to the Tier III Marketplace Window shall be deemed to have elected transfer to the Hewitt Money Market Fund in the absence of an affirmative election of a Separate Fund or Funds until such time as an affirmative election shall be made by the Participant."

15. Section 6.15(a) is amended to read in its entirety as follows:

"(a) A Participant who is an employee of an Employer, or a Participant who has terminated employment with the Employer but who remains a party in interest (as defined by ERISA Section 3(14)) with respect to the Plan, may borrow funds for any reason from his Before-Tax Savings Account, Employee After-Tax Savings Account, Rollover Account, or Profit Sharing Savings Account, in a minimum amount of $500 per loan, subject to the limitations in subsection (f) hereof. The loan program shall be administered by the Plan Administrator and the Plan Administrator may establish uni-

XC 000115

form rules and regulations applicable to the loan program which shall appear in the loan documents and in You and Xerox."

16. Section 6.15(f)(4) is amended to read in its entirety as follows:

"(4)  The aggregate amount of all loans from a person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account is limited to fifty percent of the combined balances in such person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account, which as of the time of the application for such loan are not security for previous loans."

17. Section 6.15(g)(2) is amended to read in its entirety as follows:

"(2)  Such defaulting person may not make withdrawals from his Employee Savings Accounts or Profit Sharing Savings Account for a period of twelve months from the date of default."

18. Section 7.01 is amended to read in its entirety as follows:

"Section 7.01. Normal Retirement. Each Participant may retire from the service of the Employer at his normal retirement date. A Participant's normal retirement date is the first day of the month coincident with or next following his sixty-fifth birthday or the first day of the month coincident with or next following the Participant's sixtieth birthday if, on such Participant's sixtieth birthday, he is a pilot of an airplane operated by the Company and non-highly compensated as that term is defined in Section 414(q) of the Code. A Participant who has attained his sixty-fifth birthday (sixtieth birthday in the case of a Participant who is a pilot of an airplane operated by the Company on his sixtieth birthday) shall have a nonforfeitable interest in the amounts credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts. Until retirement, the employee shall remain a Participant under the Plan in all respects, subject to the provisions of Section 7.04(b)."

19. Section 7.02 is amended to read in its entirety as follows:

"Section 7.02. Amount of Benefits. The benefits to which a Participant shall be entitled upon retirement shall be such as the value of the units credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts will provide."

20. The introductory paragraph of Section 7.03 is amended to read in its entirety as follows:

"Section 7.03. Payment of Benefits. Upon the retirement of a Participant, at such Participant's election, the Plan Administrator shall distribute benefits with respect to the value of the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts in the form of a lump sum. Any Participant may elect that benefits be provided by an annuity payable by a legal reserve life insurance company, or by distributions of such value directly from the Trust, in one of the following forms:"

21. The first sentence of Section 7.03(b)(1) is amended to read in its entirety as follows:

"(1)  In the event that the Participant elects to receive at least part of his Plan benefits by annuity, the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts which are to be used to provide such annuity shall be segregated for his benefit (valued as of the valuation date determined pursuant to Section 6.13), and any whole shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings or Rollover Accounts will be sold by the Trustee, and the proceeds combined with the amount segregated to his separate Account, unless the Participant elects to have the shares distributed to him."

22. The penultimate paragraph of Section 7.03(b) is amended to read in its entirety as follows:

4

XC 000116

"Where payment is to be in the form of a lump sum, the number of units in the Separate Funds representing the Participant's interest in each of the Separate Funds (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and/or Rollover Accounts, as the case may be. The whole number of shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts may be distributed to him where the balance of his interest is to be paid in a lump sum. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. Where the value of his interest is to be distributed in periodic payments, any such whole shares of Stock represented by units in the Xerox Stock Fund may, in the discretion and at the direction of the Plan Administrator, be either distributed to him or sold by the Trustee and the proceeds credited to any other Separate Fund, in which case the units credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts representing the investment in the Xerox Stock Fund shall be canceled and the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts shall be credited with a number of units equal in value to the amount transferred to another Separate Fund. Upon the exhaustion of the value of the units credited to a Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts, no further benefits shall be due or payable to or on behalf of such Participant."

23. Section 8.03 is amended to read in its entirety as follows:

"Section 8.03. Benefits Upon Disability Retirement or Early Retirement. Upon retirement for disability under Section 8.01 or upon early retirement under Section 8.02, a Participant shall be entitled to such benefits as the amounts credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts will provide. In the case of early retirement, such amount shall be distributed to the Participant pursuant to the provisions of Section 7.02 or Section 7.03 as if he had attained his normal retirement date and retired from the active service of the Employer. However, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. In the case a Participant elects to retire on account of disability pursuant to Section 8.01 hereof, benefit payments may be commenced in accordance with Sections 7.02 and 7.03 as of the time of retirement, or, at the election of the Participant, may be deferred, but not later than sixty days after the close of the calendar year in which the Participant's normal retirement date occurs."

24. The title of Section 8.05 and the introductory paragraph of Section 8.05(a) are amended to read in their entirety as follows:

"Section 8.05. Hardship Withdrawals From Profit Sharing Savings Account, Rollover Account, Employee After-Tax Savings Account and Employee Before-Tax Savings Account.

(a) Upon the application of any Participant who is an employee of the Employer pursuant to Section 3.02, the Plan Administrator, in accordance with a uniform nondiscriminatory policy, may in his discretion, permit such Participant to withdraw all or a portion of the contributions then credited to his Profit Sharing Savings Account and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon), the contributions credited to his Employee Before-Tax

5



Savings Account and earnings thereon credited on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon), Rollover Account and the amounts credited to his Employee After-Tax Savings Account in an amount not to exceed the amounts needed for the purposes of:"

25. Section 8.05(b) is amended to read in its entirety as follows:

"(b)  A Participant making application under this Section 8.05 shall have the burden of presenting to the Plan Administrator proof of such need, and the Plan Administrator shall not permit withdrawal under this Section without first receiving such proof. In no event shall the total amount withdrawn under this Section 8.05 exceed the value at the time of such withdrawal of the units credited with respect to:

(i)  contributions credited to the Participant's Profit Sharing Savings Account, and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon);

(ii)  contributions credited to the Participant's Before-Tax Savings Account, and earnings thereon on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon);

(iii)  the amounts credited to the Participant's Rollover Account; and

(iv)  amounts credited to the Participant's After-Tax Savings Account.

No withdrawals pursuant to this Section 8.05 shall be authorized so long as the Participant may take a loan pursuant to Section 6.15. In no event shall a withdrawal pursuant to this Section 8.05 be permitted to the extent that other funds are available to the Participant from other sources, including, but not limited to, commercial or other loans, reimbursement from insurance, liquidation of the Participant's assets, discretionary withdrawals under Section 8.06 hereof, or the cessation of payroll deductions for contributions to the Participant's Employee Savings Accounts.

If a Participant's application for a hardship withdrawal is approved, a number of units equal in value to the amount approved for withdrawal payable from the Separate Funds (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited, in the following order: from the Participant's (i) After-Tax Savings Account, (ii) Rollover Account, (iii) Profit Sharing Savings Account, (iv) AMTX Employee Before-Tax Savings Account, and (v) Employee Before-Tax Savings Account, as the case may be. The Plan Administrator shall then instruct the Trustee to make payment of the amount of the hardship withdrawal to the Participant. For the purposes hereof, applications which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

The Plan Administrator shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against."

26. Section 8.06 is amended to read in its entirety as follows:

"Section 8.06. Discretionary Withdrawals From Rollover Account and Employee After-Tax Savings Account. Any Participant who is an employee of the Employer pursuant to Section 3.02 may, upon application to the Plan Administrator on forms provided by the Plan Administrator for such purpose request that all or a portion of the value credited to his Rollover Account first and then his Employee After-Tax Savings Account, be withdrawn from such Accounts and paid to him in cash as of the valuation date immediately preceding or coincident with the date of filing such request with the Plan Administrator.

XC 000118

6

If a Participant requests a withdrawal under this Section, a number of units in the Separate Funds equal in value to the amount requested for withdrawal (valued as of the valuation date determined pursuant to Section 6.14) shall be canceled and debited from the Participant's Rollover Account and Employee After-Tax Savings Account. The Plan Administrator shall then instruct the Trustees to make payment of the amount requested to be withdrawn. For the purposes hereof, requests which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

The Plan Administrator shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against."

27. Section 9.01 is amended to read in its entirety as follows:

"Section 9.01. Determination of Nonforfeitable Interest. Upon his resignation or discharge prior to the attainment of his normal retirement date and before qualifying for disability retirement or early retirement, a Participant shall have a nonforfeitable interest in all amounts represented by the credit balance in his Employee Savings Accounts, Company-Matched Savings Account, Profit Sharing Savings Account, Rollover Account and, subject to the vesting requirements set forth in Schedule A attached hereto, his Retirement Savings Account."

28. The first paragraph of Section 9.02(a) is amended to read in its entirety as follows:

"(a) Unless a Participant elects otherwise, prior to Early Retirement Age, the normal form of distribution shall be a single lump sum payment. Upon his termination of employment by resignation or discharge, the Plan Administrator shall direct the Trustee to segregate the value of his nonforfeitable interest and distribute such value to him, all in accordance with the provisions of Section 7.03 as if he had attained his Normal Retirement Date and had retired from the active service of the Employer, provided, however, that where such distribution is in the form of an annuity or a single lump sum, the Participant's interest in the Separate Funds shall be valued as of the valuation date determined pursuant to Section 6.14. Notwithstanding the foregoing, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings Account, Company-Matched Savings Account, Employee Savings Account, Rollover Account and, to the extent such Account is fully vested pursuant to the provisions of Schedule A attached hereto, Retirement Savings Account exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution."

29. The first paragraph of Section 10.02 is amended to read in its entirety as follows:

"Section 10.02. Death Before Retirement. Upon the death of a Participant before retirement, the Plan Administrator shall direct the Trustee to distribute to his designated beneficiary or beneficiaries the then value of all units credited to his Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts (valued as of the valuation date determined pursuant to Section 6.14). A Participant's surviving spouse may direct that payments commence within a reasonable period of time after the Participant's death. If the value of all units credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts is more than $5,000 or if distribution to the surviving spouse commenced, then the Plan Administrator may not make a lump sum distribution to the Participant's spouse unless such spouse consents thereto in writing under procedures identical to those described in Section 10.01. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date determined pursuant to Section 6.14) shall be can-

XC 000119

celed and debited from the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and/or Rollover Accounts, as the case may be."

30. Section 10.03 is amended to read in its entirety as follows:

"Section 10.03. Death After Retirement. Subject to Section 7.02, upon the death of a Participant, after retirement or after termination of employment, the Plan Administrator shall direct the Trustee to pay to his designated beneficiary or beneficiaries the value of all units (valued as of the valuation date determined pursuant to Section 6.14) credited to the Participant's Profit Sharing Savings, Company-Matched Savings, Employee Savings, Retirement Savings and Rollover Accounts, as the case may be. If, however, the Participant dies after installment payments have become payable in accordance with Section 7.03(b)(2), installment payments with respect to the Participant's AMTX Employee Before-Tax Savings Account shall continue to his designated beneficiary or beneficiaries until the value of the units credited to the Participant's AMTX Employee Before-Tax Savings Account has been exhausted."

31. Section 11.03 is amended to read in its entirety as follows:

"Section 11.03. Form of Amendment. Any amendment, alteration, modification or suspension shall be set forth in a written instrument executed by any Vice President of the Company and by the Secretary or an Assistant Secretary of the Company. Notwithstanding the adoption of the Plan by a corporation which is a subsidiary or affiliate of the Company, the term "Employer" as used in this Article shall refer only to the Company."

In all other respects, the Plan remains unchanged.

IN WITNESS WHEREOF, the Employer has caused this Amendment to be signed as of the 9th day of September, 1999.

XEROX CORPORATION

Attest:

By: _____
         Vice President

By: _____
       Assistant Secretary

XC 000120

8