Attachment 7

**THE PROFIT SHARING PLAN**
**OF**
**XEROX CORPORATION**
**AND**
**THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,**
**INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.**
**(FORMERLY "THE XEROGRAPHIC DIVISION, A.C.T.W.U., A.F.L.-C.I.O.")**

**1998 Restatement**

THIS AGREEMENT by and between Xerox Corporation, a New York corporation (hereafter referred to as the "Employer"), and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (hereafter referred to as the "Union").

**W I T N E S S E T H:**

WHEREAS, the Employer and the Union have heretofore negotiated, amended and restated a profit sharing plan entitled "The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C." for the benefit of the hourly paid employees of the Employer within the bargaining units represented by the Union;

NOW, THEREFORE, the Employer and the Union do hereby agree that the Plan shall be amended and restated in its entirety as follows:

**ARTICLE ONE**

**NAMES AND EFFECTIVE DATES**

Section 1.01.  Name of Plan.  This plan shall be called "The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. and is sometimes referred to herein as the "Plan". The Plan is designed to qualify as a profit sharing plan for purposes of Sections 401(a), 402, 412 and 417 of the Code and to qualify as a participant-directed account plan under Section 404(c) of ERISA.

Section 1.02.  Agreement of Trust.  The funds to provide deferred benefits under the Plan shall be held, managed, invested and disbursed in accordance with the terms of one or more agreements of trust entered into by the Employer and the Union and such corporate Trustee or Trustees as may be designated by the JAB (as hereinafter defined) from time to time.  The assets held pursuant to such agreements of trust shall be referred to collectively herein as the "Trust", and the Trustees serving under this Plan shall be collectively referred to herein as the "Trustee".

Section 1.03.  Affiliated Corporation.  For purposes of the Plan, the term "affiliated corporation" means any corporation which is a member of a controlled group of corporations, as defined in Section 414(b) of the Code, which includes the Employer.

Section 1.04.  Balanced Fund.  Balanced Fund shall have the meaning in Section 6.02 hereof.

Section 1.05.  Board or Board of Directors.  The Board of Directors of the Company or any committee of the Board to which the Board delegates responsibilities under this Plan.

Section 1.06.  Code.  The Internal Revenue Code of 1986, as amended, or as it may be amended from time to time, or any successor thereto.

Confidential

Section 1.07. <u>Compensation</u>. Compensation shall have the meaning in Section 4.05 hereof.

Section 1.08. <u>Computation Period</u>.

For purposes of determining eligibility for participation under Section 3.01(b), the contribution adjustment under Section 4.02, and breaks in service under the Plan, a single period shall be used. Such period shall be called "Computation Period" and shall be each twelve consecutive month period beginning with an employee's Employment Commencement Date and any anniversary thereof and ending on the day before the following anniversary of his Employment Commencement Date. (An employee having an Employment Commencement Date on the twenty-ninth of February shall be deemed to have an Employment Commencement Date of the twenty-eighth of February.)

Section 1.09. <u>Disability</u>. A Participant shall be considered to be on Disability during such periods of time that

(a) he is receiving short-term disability payments, and

(b) he is receiving long-term disability benefits under the applicable collective bargaining agreement, provided, however, that a Participant who elects to terminate his disability status with the Employer and receive a distribution from the Profit Sharing Plan shall thereafter cease being on Disability under the Plan. If he does not so terminate or retire earlier, a Participant on Disability shall be deemed to retire on his Normal Retirement Date.

Section 1.10. <u>Effective Dates</u>. The effective date of the original Plan and Agreement of Trust is January 1, 1964. The effective date of the Plan as restated by this instrument is January 1, 1998. The effective dates of those provisions of the Plan which have been amended by previous amendments to the Plan shall be as provided in such amendments.

The accounting year of the Plan and Trust shall be the calendar year.

Section 1.11. <u>Employer</u>. The Plan shall be maintained jointly by the Company with the Union. As used herein, the term "Employer" shall apply equally to each of such corporations with respect to its employees covered by the Plan, except that as used in Articles Two, Eleven and Twelve of the Plan, such term shall refer only to Xerox Corporation.

Section 1.12. <u>Employment Commencement Date</u>. The date on which a person first receives credit for an Hour of Service, as defined in Section 1.15, with the Employer. An employee who has a one year break in service (as hereafter defined) has a new employment Commencement Date on the first date with respect to which he is credited with an Hour of Service after such one year break in service.

Section 1.13. <u>Employment Month</u>. The period commencing on an employee's Employment Commencement Date and any monthly anniversary thereof and ending on the day before the following monthly anniversary of his Employment Commencement Date. When a particular month ends before the monthly anniversary date (e.g. an anniversary date of the thirty-first in a thirty-day month), the monthly anniversary date in such month shall be deemed to be the last day of the month.

Section 1.14. <u>ERISA</u>. The Employee Retirement Income Security Act of 1974, as amended or as it may be amended from time to time, or any successor thereto.

Section 1.15. <u>Hour of Service</u>. The term "Hour of Service" means:

(i)  each hour for which an employee is paid, or entitled to payment, by the Employer for performance of duties,

Confidential    XC00031628

(ii)  each hour for which an employee is paid. or entitled to payment, by the Employer for reasons other than for the performance of duties, including. but not limited to, payment for vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence;

(iii)  Hours of Service based on an employee's standard work schedule while such person is

(1)  on layoff by the Employer for lack of work, but such person shall not be credited with any Hours of Service while on layoff after the expiration of a one-year period following the date of layoff, or

(2)  on a non-military leave of absence of up to one year which does not constitute a break in continuous service pursuant to Section 3.03. or

(3)  on a military leave of absence to the extent required by federal law, provided that the person returns to the employment of the Employer within such period as may be required by federal law, or

(4)  absent from work during periods of physical or mental disability as determined under the applicable collective bargaining agreement; and

(iv)  each hour for which an employee receives back pay (irrespective of mitigation of damages) for Hours of Service for which an employee has not otherwise received credit under this Section. Such Hours of Service shall be credited to the Computation Period to which the back pay pertains.

For the purpose of determining Hours of Service under subparagraph (ii) above for reasons other than the performance of duties and for the purpose of crediting of Hours of Service to Computation Periods under subparagraphs (i), (ii) and (iii) above, the rules set forth in paragraphs (b) and (c) of Section 2530.200(b)-2 of 29 CFR Part 2530 are incorporated by reference into the Plan.

(v)  An employee shall be deemed to have completed one hundred ninety Hours of Service for each Employment Month during which the employee is credited with at least one Hour of Service under Section 1.15.

Section 1.16.  Income Fund.  Income Fund shall have the meaning in Section 6.02 hereof. (The "Guaranteed Fund", which existed until as of April 1, 1991, was divided at such time into the Income Fund and the "Segregated Assets Fund". Once all principal due and owing from Executive Life Insurance Company was repaid, each Participant's pro rata share of the "Segregated Assets Fund" was deposited into the Participant's Income Fund account and began earning interest in the Income Fund from April 30, 1997, when the amounts became available to Participants.)

Section 1.17.  International Stock Fund.  International Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.18.  Leased Employee.  Leased Employee means any individual who

(a)  is not an independent contractor with respect to the Employer;

(b)  provides services pursuant to an agreement between the Employer and any other person or entity;

(c)  has performed such services on a substantially full-time basis for a period of at least one year; and

(d)  performs such services under primary direction or control by the Employer.

Section 1.19.  Plan Administrator.  The Plan Administrator described in Article Two.

3

Confidential

XC00031629

Section 1.20. <u>Plan Year</u>. The Plan Year shall be the period commencing January 1 and ending December 31.

Section 1.21. <u>Small Company Stock Fund</u>. Small Company Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.22. <u>U.S. Stock Fund</u>. U.S. Stock Fund shall have the meaning in Section 6.02 hereof.

Section 1.23. <u>Xerox Stock Fund</u>. Xerox Stock Fund shall have the meaning in Section 6.02 hereof.

ARTICLE TWO

PROFIT SHARING JOINT ADMINISTRATIVE BOARD

Section 2.01. <u>Creation of the Profit Sharing Joint Administrative Board</u>. The Plan shall be administered by the Profit Sharing Joint Administrative Board (herein referred to as the "JAB"), which shall be the "Plan Administrator" for purposes of ERISA. The JAB shall consist of not less than five nor more than ten representatives appointed by each of the Employer and the Manager of the Rochester Joint Board, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.

Any person, including an officer, director or employee of the Employer or the Union, is eligible for appointment as a member of the JAB.

The Employer and the Union may each at any time remove their own appointees and appoint successors.

Section 2.02. <u>Officers and Agents</u>. The JAB may appoint such officers from its members as it deems necessary for the conduct of its affairs.

It may appoint such agents, advisers, nominees, counsel or independent certified public accountants as it may deem necessary for the performance of its duties hereunder. Such appointees need not be members of the JAB, nor shall any person, firm or corporation be disqualified from appointment hereunder because of serving the Employer in a similar capacity.

Section 2.03. <u>Powers and Duties of the JAB</u>. The JAB shall have full and exclusive authority:

(a)  to appoint an investment manager or managers (as defined by Section 3(38) of ERISA) to manage (including the power to acquire and dispose of) all or any part of the assets of the Plan;

(b)  to establish procedures and practices in the administration of the Plan;

(c)  to adopt and approve applications, forms and other documents incidental to the duties of the JAB;

(d)  to pass upon and determine all questions of eligibility for benefits pursuant to the terms of this Plan;

(e)  to instruct the Trustee, from time to time, as to those matters where action by the Trustee requires instruction by the JAB either under the provisions of this Plan or the Agreement of Trust;

(f)  to give information to Participants with respect to their rights and interests under this Plan;

(g)  to formulate and transmit to the Trustee recommendations as to the general investment policy with regard to the assets of the Trust;

4

Confidential

(h)   to adopt by-laws and other rules and regulations not inconsistent with the provisions of the plan. to govern the action of the JAB in the performance of its duties hereunder;

(i)   construe the Plan and the agreements of trust hereunder and resolve any ambiguity with respect thereto and their construction thereof and their action thereunder, made or taken in good faith, shall be final and conclusive;

(j)   should any defect. omission. ambiguity or inconsistency in the Plan or such agreements of trust be discovered at any time, to take such action as may be necessary to correct such defect. rectify such omission, resolve such ambiguity or reconcile such inconsistency; and

(k)   to perform such other duties as are specifically allocated to it by the terms of this Plan.

Section 2.04.   Investment Guidelines. The JAB at least annually shall establish and review the investment guidelines of the Plan.  In determining the investment guidelines, the JAB shall consider the short-run need for liquidity in trust assets and the long-run goals for investment growth.

Section 2.05.   Claims Procedure. Any question as to the eligibility of any employee to become a Participant or any question of the amount of contribution allocated to a Participant or the termination of a Participant's interest in the assets of the Trust at any time shall be determined by or at the direction of the JAB in accordance with the terms of the Plan and a reasonable claims procedure established by the JAB.

Section 2.06.   Action by the JAB. On any matter coming before the JAB, the Employer appointees shall collectively have one vote, and the Union appointees shall collectively have one vote. The vote of either group of appointees may be cast by any member of the group, and the members of each group shall determine among themselves the procedure for deciding how the group vote is to be cast on any issue. Action by the JAB shall be by concurring votes of the Employer appointees and the Union appointees. Such action shall be taken either at a meeting or in writing without a meeting.

Notwithstanding the foregoing, a direction, certificate, statement or other declaration signed by any member, officer or agent of the JAB designated by it as its representative to sign such document shall be conclusive evidence of any action of the JAB evidenced thereby.

Section 2.07.   Quorum. At all meetings of the JAB a quorum shall be required for the transaction of business and shall consist of not less than a majority of the entire membership of the JAB.

Section 2.08.   Designation of Arbitrator To Resolve Disagreement. In the event that the JAB cannot agree as to the disposition of any matter properly before it, such matter shall be decided by the arbitrator named in the applicable collective bargaining agreement between the Employer and the Union. The decision of such arbitrator shall be final and conclusive on all parties.

Section 2.09.   Members To Serve Without Compensation. The members of the JAB shall serve without compensation, but all proper expenses, including the reasonable fees of agents, advisers, counsel or independent certified public accountants selected by the JAB. shall be paid out of the Trust by the Trustee upon certification by the JAB or its delegate.

Section 2.10.   Disqualification of Member. A member of the JAB shall not vote upon any question or upon the exercise of any right or option under the Plan relating specifically to himself or his beneficiary.

Section 2.11.   Records. The acts and decisions of the JAB shall be recorded and made a part of the permanent records of the JAB.

Section 2.12.   Liability of JAB. Subject to applicable law, the JAB and each member thereof shall be liable only for its or his own willful misconduct committed in bad faith.

5

Confidential

Section 2.13. <u>Management of Trust Fund</u>. The JAB shall be a named fiduciary of the Plan and shall have the authority to control and manage the assets of the Plan. The JAB shall also have the authority to appoint another named fiduciary or fiduciaries or an investment manager or managers (as defined in Section 3(38) of ERISA or otherwise as provided in the Trust Agreement To Fund Retirement Plans, as amended from time to time) to manage (including the power to acquire and dispose of) all or any part of the assets of the Plan.

Section 2.14. <u>Limitations of Actions</u>. Any action brought in state or federal court for the alleged wrongful denial of Plan benefits or for intentional interference with any Plan rights to which any person is or may become entitled under ERISA must be commenced within one year after the cause of action accrued.

ARTICLE THREE

ELIGIBILITY AND PARTICIPATION

Section 3.01. <u>Employees Who Shall Become Participants</u>.

(a)   Prior to January 1, 1998, subject to the terms of the applicable collective bargaining agreement, each employee of the Employer who is a member of any bargaining unit represented by the Union shall immediately become and thereafter continue to be a Participant under the Plan if such Participant shall have become an employee of the Employer (or an Affiliated Corporation as defined in Section 1.03) on or prior to July 1 of a calendar year unless such July 1 falls on a Saturday, Sunday or legal holiday, then on or prior to the first day in July of such calendar year which is not a Saturday, Sunday or legal holiday.

(b)   Prior to January 1, 1998, if an employee who is a member of any collective bargaining unit represented by the Union does not become a Participant in the Plan immediately upon becoming an employee of the Employer because he has not met the requirements in subsection (a), he shall become a Participant in the Plan on the January 1 following the date such employee becomes an employee of the Employer.

(c)   As of January 1, 1998, each employee of the Employer who is a member of any bargaining unit represented by the Union shall immediately become, and thereafter continue to be, a Participant under the Plan for the purpose of determining eligibility for participation under all provisions of this Plan excluding the provisions of Article Four.  Notwithstanding the above, rollovers and transfers pursuant to Sections 4.09 and 4.12 shall become available to each Participant on January 1, 1998."

(d)   A person who incurs at least a one-year break in service, as defined in Section 9.03, shall commence or recommence participation in the Plan on the first day on which he completes an Hour of Service after such break in service.

(e)   Any employee who becomes a Participant hereunder shall continue as a Participant until his participation is terminated by retirement, death, payment in full of his nonforfeitable interest in the Plan or he terminates his employment.

Section 3.02. <u>Persons Not Considered Employees</u>. For purposes of Section 3.01, the following shall not be considered employees of the Employer, and thus, shall not be eligible for participation under the Plan:

(a)   Supplemental contract works, Leased Employees, leased employees or any other third party personnel, independent contractors, agents or consultants; or

(b)   Any person classified by the Company on its books and records as a supplemental contract worker, Leased Employee, leased employee or any other third party personnel, independent contractor, agent or consultant.

6

XC00031632

(c)   Any person within any bargaining unit represented by the Union who is classified as being part of the Temporary Work Force under the terms of the applicable collective bargaining agreement who has received credit for fewer than one thousand Hours of Service during a Plan Year.

Section 3.03.  Definition of Continuous Service.  For purposes of Section 7.01, 8.03 and 9.01(b), "continuous service" means the period of actual service to the Employer from the Participant's most recent date of hire, provided, however, that the following shall not be considered a break in continuous service:

(a)   authorized leaves of absence which, under the applicable collective bargaining agreement, do not cause a break in continuous service;

(b)   periods during which no services were rendered because of legal strikes or lockouts;

(c)   layoff not exceeding one year;

(d)   absence from work due to physical or mental disability as determined under the applicable collective bargaining agreement.

Section 3.04.  Coverage of New Bargaining Units.  Unless the Employer and the Union shall agree to the contrary with respect to the members of a particular bargaining unit, an employee of the Employer who at any time becomes a member of a bargaining unit represented by the Union shall be eligible to participate under this Plan in accordance with its terms.  Such an employee shall become a Participant hereunder for the calendar year in which he comes a member of any such bargaining unit if by the close of such year he has satisfied the minimum service requirement provided in Section 3.01; otherwise, he shall become a Participant for the year following the year in which he became such a member.  In the case of a newly formed bargaining unit, each person who is an employee at the time such bargaining unit is formed shall be deemed to have completed at least three years of service for purposes of Section 4.02.

The entire interest under the Xerox Corporation Profit Sharing and Savings Plan of any employee subject to this Section shall remain subject to the terms and conditions of such Plan.

Section 3.05.  Contributions With Respect to Military Service.  Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

ARTICLE FOUR

CONTRIBUTIONS AND ALLOCATIONS

Section 4.01.  Employer Contributions.  For each calendar year, the Employer shall, subject to Section 4.02, make a contribution to the Profit Sharing Savings Account and, additionally, effective as of January 1, 1999, the Profit Sharing Company Stock Account, from its current or accumulated earnings or profits on behalf of each employee who is a Participant on the last day of such year.  The contribution on behalf of each Participant allocable to his Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be determined in the aggregate by reference to the compensation of such Participant multiplied by the appropriate percentage selected from the table in Section 4.01(a) below. The appropriate percentage selected from the tables below shall be that opposite the percentage return on assets (hereinafter referred to as "ROA") calculated for such year pursuant to Section 4.02 and that opposite the percentage earnings per share growth rate (hereinafter "EPS Growth Rate") calculated for such year pursuant to 4.03.

(a)   For contributions made with respect to Plan Years ending on and after December 31, 1993 through the Plan Year ending December 31, 1998, the contribution on behalf of each Participant allocable to his Profit Sharing Savings Account shall be in the amount equal to the compensation of such

7

                                                                      XC00031633

Participant for that calendar year multiplied by the percentage set forth in the table below. The percentage selected from the table below shall be that opposite the ROA calculated for such year pursuant to Section 4.03. ROA shall be calculated each year to the nearest one-quarter of one percent. In the event that ROA in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00.

| ROA Percentage | Profit Sharing Savings Account |
|---|---|
| less than 8.50 | 0.00 |
| 8.50 | 0.10 |
| 8.75 | 0.20 |
| 9.00 | 0.30 |
| 9.25 | 0.40 |
| 9.50 | 0.50 |
| 9.75 | 0.80 |
| 10.00 | 1.10 |
| 10.25 | 1.40 |
| 10.50 | 1.70 |
| 10.75 | 2.00 |
| 11.00 | 2.30 |
| 11.25 | 2.60 |
| 11.50 | 2.90 |
| 11.75 | 3.20 |
| 12.00 | 3.50 |
| 12.25 | 3.80 |
| 12.50 | 4.10 |
| 12.75 | 4.40 |
| 13.00 | 4.70 |
| 13.25 | 5.00 |
| 13.50 | 5.30 |
| 13.75 | 5.60 |
| 14.00 | 5.90 |
| 14.25 | 6.25 |
| 14.50 | 6.65 |
| 14.75 | 7.05 |
| 15.00 | 7.45 |
| 15.25 | 7.85 |
| 15.50 | 8.25 |
| 15.75 | 8.65 |
| 16.00 | 9.10 |
| 16.25 | 9.55 |
| 16.50 | 10.00 |

With respect to the Plan Year ending December 31, 1998 only, a contribution shall be payable to Participants equal to the greater of (1) the contribution to which they would be entitled calculated pursuant to Section 4.01(a) of the Plan on a basis consistent with prior years or (2) fifty percent of the contribution to which they would be entitled calculated pursuant to Section 4.01(a) of the Plan on a basis consistent with prior years but without giving effect to the restructuring charge taken by the Company in the second quarter of 1998 in determining ROA pursuant to Section 4.02.

(b)    For contributions made with respect to Plan Years ending on or after December 31, 1999, the contribution on behalf of a Participant allocable to his Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be equal to fifty percent and twenty-five percent, respectively, of the amount derived by multiplying the amount of the Participant's compensation for that calendar year by the payout percentage set forth in the table below that corresponds with the EPS Growth Rate for such Plan

8

Confidential

XC00031634

Year. In the event that EPS in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the table below or $100.00.

| EPS Growth Rate | Payout Level |
|---|---|
| Less than 5% | 0% |
| 5% | 5% |
| 6% | 6% |
| 7% | 7% |
| 8% | 8% |
| 9% | 9% |
| 10% | 10% |
| 11% | 11% |
| 12% | 12% |
| 13% | 13% |
| 14% | 14% |
| 15% | 15%  (Maximum) |

Section 4.02. Contribution Adjustment for Certain Participants. Notwithstanding the provisions of Section 4.01, the Employer contribution for any year on behalf of any Participant who has completed less than three years of service, as defined, in Section 9.01, at the close of such year, shall be determined in accordance with Section 4.01, except that the appropriate percentage for such year from the column headed "Profit Sharing Savings Account" shall be reduced by multiplying such appropriate percentage by the percentage determined in accordance with the following schedule:

| Length of Service at Close of Calendar Year | Participation Percentage |
|---|---|
| Prior to January 1, 1998: | |
| At least two years, but less than three years | 90% |
| Less than two years | 85% |
| On or after January 1, 1998: | |
| At least two years, but less than three years | 90% |
| At least six months, but less than two years | 85% |
| Less than six months | 0% |

Section 4.03. Computation of ROA and Definitions. The ROA referred to in Section 4.01 shall be computed for any Plan Year commencing with the year ending on or after December 31, 1994 through and including the year ending December 31, 1998 by dividing the Document Processing Profit Before Tax (PBT) of the Employer for such year by total Document Processing assets of the Employer for such year. The figure so calculated shall be rounded to the nearest quarter of one percent. For purposes of this Article:

    (a)  The "Document Processing PBT" of the Employer shall mean the amount of Document Processing income (loss) before income taxes, equity income and minorities' interests plus the amount included as equity in net income of unconsolidated affiliates for such year as reported on the consolidated statements of income, as included in such year's audited consolidated financial statements of the Company plus the income (loss) before income taxes from Document Processing related to (a) discontinued operations, (b) cumulative effect of changes in accounting principles, and (c) extraordinary items. All amounts determined above shall be ascertained from the books, records and audited consolidated financial statements of the Company.

Confidential                                                                                    XC00031635

(b)  The "total Document Processing assets" of the Employer shall mean the average of the amounts of the total assets, as hereinafter defined, of Document Processing at the close of such year and at the close of the immediately preceding year.  The amount of such Document Processing total assets at the close of each year shall be equal to total Document Processing assets, as included in the audited consolidated financial statements of the Company, less the amount of investments in affiliates at equity included therein, and less the amount of short and long-term debt assigned to Xerox Equipment Financing, as ascertained from the audited books, records and audited consolidated financial statements of the Company.

Section 4.04.  Calculation of EPS and Definitions.  The EPS referred to in Section 4.01(b) shall be the diluted earnings per share for the fiscal year contained in the Company's annual audited financial statements, subject to the following automatic adjustments and exclusions:

(a)  "adjustments" means changes to the performance goal to appropriately reflect the effect of corporate capitalization, such as a stock split or combination, stock dividends or special distributions to shareholders other than normal cash dividends, merger into another corporation, consolidation into another corporation, spin-offs, any reorganizations, or any partial or complete liquidation.

(b)  "exclusions" means the exclusion of the effects of the following items from relevant financial data which are quantified and identified separately in the annual audited financial statements accompanying notes and related management discussion and analysis:

(i)  Extraordinary items or material unusual charges.

(ii)  Changes in the Internal Revenue Code of 1986 from that which was used in determining diluted earnings per share in the immediately preceding year.

(iii)  Changes in foreign tax laws from that which was used in determining diluted earnings per share in the immediately preceding year.

(iv)  Changes in generally accepted accounting principles from that which was used in determining diluted earnings per share in the immediately preceding year.

(v)  Gains and losses from discontinued operations as recognized on the Company's consolidated statements of income.

Section 4.05.  Definition of Compensation.  For all purposes of the Plan, the "compensation" of a Participant for any calendar year shall mean the total amount reported for the portion of such calendar year during which he is a Participant to the federal government for income tax withholding purposes plus (i) any contributions made to a Participant's Employee Before-Tax Savings Account with respect to such Participant for services rendered to the Employer and (ii) any compensation redirected by the Participant pursuant to the salary redirection plan maintained by the Employer pursuant to Section 125 of the Internal Revenue Code of 1954 (not including the amount excluded under subsection (h) hereof), less any amount so reported which is attributable to

(a)  payments under this Plan or payments received upon exercise of stock options granted under the 1998 Employee Stock Option Plan;

(b)  any amount paid or reimbursed with respect to a specific item of expense incurred by such Participant as, for example, a relocation or tuition aid allowance, walking tech rep allowance and mileage allowance;

(c)  payments during periods of physical or mental disability;

(d)  prizes, awards or bonuses not payable in cash;

10

Confidential                                                                                          XC00031636

(e)  any amount reported as income for federal income tax purposes arising from the one half of one percent bonus paid to certain collective bargaining employees as an adjustment from discontinuance of a pension plan:

(f)  any amount reported as income for federal income tax purposes arising from group life insurance; and

(g)  any portion of the Participant's Flexible Benefit Account under the salary redirection plan maintained by the Employer pursuant to Section 125 of the Internal Revenue Code of 1986 which he elected to receive in cash.

For Plan Years commencing prior to December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $200,000, adjusted for changes in the cost of living as provided in Section 415(d) of the Code, for the purpose of calculating a Participant's accrued benefit (including the right to any optional benefit hereunder)

For Plan Years commencing after December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year, adjusted as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of a Participant.

Section 4.06.  Contribution for Year of Retirement or Death.  If a Participant

(a)  retires hereunder pursuant to Section 7.01, 8.01 or 8.03, or

(b)  dies

on or as of the date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an Employer contribution under Section 4.01 for the year in which his retirement or death occurs to the extent of the compensation paid to him for services actually rendered during such year.  Such compensation shall be determined in accordance with the provisions of Section 4.05.  The entitlement of a Participant to an Employer contribution for the year of retirement or death in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable.  Notwithstanding any other provision of the Plan, as soon as administratively feasible after the Employer contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the Participant or his beneficiary, as the case may be, in such manner as shall be determined by the JAB in its absolute discretion.

Section 4.07.  Contribution for Disabled Participant.  If a Participant is absent from active service prior to the attainment of his normal retirement date for an entire calendar year on account of a physical or mental disability, and as of the close of such year is entitled to receive long-term disability benefits under a plan maintained by the Employer, he shall be entitled to a contribution hereunder in an amount equal to the product of:

(a)  his average straight time hourly earnings rate in effect at the commencement of such disability multiplied by two thousand eighty; and

(b)  the percentages of compensation allocable to the Profit Sharing Savings Account for such year of a Participant who is not subject to Section 4.02 and this Section.

The total contribution made on behalf of a Participant pursuant to this Section shall be allocated to his Profit Sharing Savings Account, based on the foregoing percentage allocations.

11

Confidential

(e)  any amount reported as income for federal income tax purposes arising from the one half of one percent bonus paid to certain collective bargaining employees as an adjustment from discontinuance of a pension plan;

(f)  any amount reported as income for federal income tax purposes arising from group life insurance; and

(g)  any portion of the Participant's Flexible Benefit Account under the salary redirection plan maintained by the Employer pursuant to Section 125 of the Internal Revenue Code of 1986 which he elected to receive in cash.

For Plan Years commencing prior to December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $200,000, adjusted for changes in the cost of living as provided in Section 415(d) of the Code, for the purpose of calculating a Participant's accrued benefit (including the right to any optional benefit hereunder)

For Plan Years commencing after December 31, 1993, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year, adjusted as provided in Section 415(d) of the Code, for the purpose of calculating a contribution on behalf of a Participant.

Section 4.06.  Contribution for Year of Retirement or Death.  If a Participant

(a)  retires hereunder pursuant to Section 7.01, 8.01 or 8.03, or

(b)  dies

on or as of the date other than the close of a calendar year, he or his beneficiary, as the case may be, shall be entitled to an Employer contribution under Section 4.01 for the year in which his retirement or death occurs to the extent of the compensation paid to him for services actually rendered during such year. Such compensation shall be determined in accordance with the provisions of Section 4.05. The entitlement of a Participant to an Employer contribution for the year of retirement or death in accordance with this Section shall not in any way affect the determination, payment or other disposition of the remainder of his interest under the Plan pursuant to Articles Seven, Eight or Ten, whichever is applicable. Notwithstanding any other provision of the Plan, as soon as administratively feasible after the Employer contribution for such year has been made available, such contribution shall be paid to or applied for the benefit of the Participant or his beneficiary, as the case may be, in such manner as shall be determined by the JAB in its absolute discretion.

Section 4.07.  Contribution for Disabled Participant.  If a Participant is absent from active service prior to the attainment of his normal retirement date for an entire calendar year on account of a physical or mental disability, and as of the close of such year is entitled to receive long-term disability benefits under a plan maintained by the Employer, he shall be entitled to a contribution hereunder in an amount equal to the product of:

(a)  his average straight time hourly earnings rate in effect at the commencement of such disability multiplied by two thousand eighty; and

(b)  the percentages of compensation allocable to the Profit Sharing Savings Account for such year of a Participant who is not subject to Section 4.02 and this Section.

The total contribution made on behalf of a Participant pursuant to this Section shall be allocated to his Profit Sharing Savings Account, based on the foregoing percentage allocations.

11

Confidential

Section 4.08.  Allocation of Employer Contributions.  The Employer contribution on behalf of a Participant for any year shall be allocated to his Profit Sharing Savings Account and his Profit Sharing Company Stock Account in accordance with the tables in Section 4.01.  For Plan Years ending before January 1, 1999, one hundred percent of the funds allocated to a Participant's Profit Sharing Savings Account shall be paid in cash or deferred and held in the Trust, as the case may be, pursuant to the provisions of Article Six.

For Plan Years ending on or after December 31, 1999, the Employer contribution on behalf of Participants

(a)   allocable to the Profit Sharing Savings Account pursuant to Section 4.01(b) shall be paid in cash or deferred and held in the Trust, as the case may be, pursuant to the provisions of Section 4.06 and Article 6 and

(b)   allocable to the Profit Sharing Company Stock Account pursuant to Section 4.01(b) shall be automatically deferred in the form of units representing an interest in the Xerox Stock Fund in a separate account for each Participant (the "Profit Sharing Company Stock Account").

Section 4.09.  Payment to Trustee.  The aggregate amount of Employer contributions for any year which are not currently distributable to Participants pursuant to subsections (a) and (b) of Section 6.02 shall be paid to the Trustee before the end of the period following the close of such year in order that such amount may be deducted by the Employer for federal income tax purposes for such year.

Section 4.10.  Transfers or Rollovers of Funds from Other Plans.

(a)   In addition to the Employer contributions to the Plan provided for in this Article, and in addition to the employee contributions made by Participants under Article Five, there may also be paid over to the Plan other amounts which have been held under Plans which are qualified under Section 401 of the Code maintained by the Employer, a subsidiary of the Employer or any company substantially all of whose capital stock or some or all of the assets of which have been acquired by the Employer which have been discontinued or terminated with respect to a group of employees.  The amounts transferred to this Plan under this Section shall be allocated to the Accounts established for the employees whose participation in such other Plan has been terminated in accordance with the instrument providing for and governing such transfer.  An employee on whose behalf an account is established under this Section shall be a Participant, but shall be entitled to share in allocations of contributions only if he becomes a Participant in accordance with Section 3.01.  The amount, if any, transferred on behalf of a Participant from the AMTX, Inc. Employees' Retirement Savings Plan shall be held as a subaccount (the "AMTX Employee Before-Tax Savings Account") of his Employee Before-Tax Savings Account.

(b)   In addition to the contributions provided for herein, as of January 1, 1998, there may also be paid over to the Plan amounts which have been held under the Retirement Income Guarantee Plan maintained by the Employer for retirees and vested employees, who have terminated employment, at the option of such retirees and vested terminated employees.  Such contributions shall be transferred into Participants' Accounts in this Plan to be invested in the funds available under this Plan, in one percent increments, at the option of such retirees and vested terminated employees who shall become Participants of this Plan.

(c)   As of January 1, 1998, Participants who previously participated in the Xerox Corporation Profit Sharing and Savings Plan (the "Salaried Plan") shall have their assets in such Salaried Plan transferred into this Plan upon becoming Participants and the allocations in the Separate Funds shall remain the same as in the Salaried Plan.

(d)   As of January 1, 1998, Participants who transfer to participation in the Salaried Plan shall have their assets in this Plan transferred to the Salaried Plan and the allocations in the Separate Funds shall remain the same as in this Plan.

12

Confidential

Section 4.11.  Maximum Allocation to Participants.

(a)  As of the close of each calendar year, and before the Employer contribution for such year is paid to the Trustee, the JAB shall determine the tentative annual addition, as hereafter defined, to each Participant's Accounts for such year.  The term "tentative annual addition" for any calendar year means the sum of:

(1)  The amount allocated on the Participant's behalf under any other defined contribution plan, as defined in Section 3(34) of ERISA qualified under Section 401 or 403(a) of the Code, maintained by the Employer or an affiliated corporation as defined in Section 1.06 (as modified by Section 415(h) of the Code) for such calendar year;

(2)  The Employer contribution to be allocated to the Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account under this Plan with respect to such year based on the Employer contribution determined under Section 4.01 reduced by any amounts elected to be distributed in cash under Section 6.02(a)(2) and distributed in stock under Section 6.01(a)(3):

(3)  The amount held or paid over to the Trustee for such year by the Employer to be credited to a Participant's Employee Before-Tax Savings Account:

(4)  The Employer contribution to be allocated to the Participant's Company-Matched Savings Account under this Plan with respect to such year based on the Employer contribution determined under Section 4.12 of this Plan;

(5)  The amount held or paid over to the Trustee for such year by the Employer to be credited to a Participant's Employee After-Tax Savings Account;

(6)  The Participant's share of forfeitures for such calendar year.

(b)  (1)  (A)  Prior to January 1, 1998, if the tentative annual addition for such calendar year exceeds the maximum annual addition for such year, as hereafter defined, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the Participant held by the Employer or paid over to the Trustee which were included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the number of units in the Separate Funds which were credited to the Participant's Employee After-Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(B)  As of January 1, 1998, if the tentative annual addition for such calendar year exceeds the maximum annual addition for such year, as hereafter defined, the Plan Administrator shall reduce such amount of the Employer contribution allocated to the Participant's Profit Sharing Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to reduce the total Employer contribution determined under Section 4.01 by said amount.

(2)  (A)  Prior to January 1, 1998, if after refunding all of the employee contributions included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such refund) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the Employer contribution allocated to his Profit Sharing Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to reduce the total Employer contribution determined under Section 4.01 by said amount.

13

Confidential

(B)   As of January 1, 1998, if after reducing all of the Employer contribution included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such refund) is still in excess of the maximum annual addition, the Plan Administrator shall direct the Employer and/or the Trustee to refund such amount of employee contributions of the Participant held by the Employer or paid over to the Trustee which were included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the number of units in the Separate Funds which were credited to the Participant's Employee After-Tax Savings Account as a result of such contribution shall be debited from such Account and canceled.

(3)   (A)   Prior to January 1, 1998, if after reducing all of the Employer contribution allocated to his Profit Sharing Savings Account included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the Employer contribution allocated to the Participant's Company-Matched Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to pay the amount of such reduction to the Participants in cash.

(B)   As of January 1, 1998, if after reducing all of the employee contributions included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the Employer contribution allocated to the Participant's Company-Matched Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to pay the amount of such reduction to the Participants in cash.

(4)   If after reducing all of the Employer contribution allocated to his Company-Matched Savings Account included in computing the Participant's tentative annual addition, his tentative annual addition (as adjusted by such reduction) is still in excess of the maximum annual addition, the Plan Administrator shall reduce such amount of the Employer contribution allocated to his Employee Before-Tax Savings Account which was included in computing the tentative annual addition as shall be necessary to reduce his tentative annual addition to the maximum annual addition, and the Plan Administrator shall direct the Employer to reduce the total Employer contribution determined under Section 4.01 by said amount.

(5)   If, after adjustments made to reduce the tentative annual addition pursuant to the foregoing, there is still an excess of the maximum annual addition, the amount otherwise allocable to the Participant's Profit Sharing Company Stock Account shall be reduced as necessary to satisfy the limitations of this Section.  To the extent any amount is contributed to the Trust which is allocable to the Participant's Profit Sharing Company Stock Account but is reduced in accordance with the preceding sentence, such amount shall be held in a suspense account and used to reduce the allocation made on behalf of the Participant in the succeeding limitation year, or if the Participant is not eligible for an allocation in such succeeding year, used to reduce the allocation made on behalf of the remaining Participants of the Plan in such succeeding limitation year.

(6)   Notwithstanding anything in this Section to the contrary, the tentative annual addition shall be reduced to the extent required to cause such tentative annual addition to not exceed the maximum annual addition, by first reducing the amount which would otherwise be allocated to the Participant's Accounts under this Plan, including amounts which would have been allocated to the Participant's Profit Sharing Company Stock Account, and only after such amounts have reduced to zero, by reducing the amounts which otherwise would have been allocated to such Participant's accounts under any other plan maintained by the Employer.

14

Confidential

(c)  (1)   If the amounts allocated to the Participant's accounts under this Plan and any other defined contribution plan, as defined in Section 3(34) of ERISA and qualified under Section 401(a) or 403(a) of the Code, maintained by the Employer for a year exceed the maximum annual addition for such year because of allocation of forfeitures, a reasonable error in determining the amount of elective deferrals within the meaning of Section 402(g) of the Code, or under other limited facts and circumstances, the Plan Administrator shall direct the Trustee to distribute employee contributions (and earnings thereon), to the extent that the distribution reduces the excess amount in the Participant's account and, if the affected Participant is a highly-compensated employee as defined in Code Section 414(q), to the extent that the employee contribution has not been matched.

(2)   If, after refunding employee contribution (and earnings thereon) under subparagraph (1) above, the annual addition is still in excess of the maximum annual addition, the Plan Administrator shall direct the Trustee to distribute elective contributions as defined in Section 402(g) of the Code to the extent that the distribution reduces the excess amount in the Participant's account.

(d)  (1)   The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000, or, if greater, one-fourth of the dollar limitation under Section 415(b)(1)(A) of the Code adjusted under Section 415(d) of the Code. If the Participant also participates in one or more defined benefit plans of the Employer (whether or not terminated) the maximum annual addition shall be reduced so that for such calendar year the sum of the Defined Benefit Plan Fraction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0.

(2)   The Defined Benefit Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the projected annual benefit of the Participant under any defined benefit plan maintained by the Employer and (b) the denominator of which is the lesser of 125% of the limitation under Section 415(b)(1)(A) of the Code or 140% of the limitation under Section 415(b)(1)(B) of the Code (taking into account the effect of Section 235(G)(4) of the Tax Equity and Fiscal Responsibility Act of 1982).

(3)   The Defined Contribution Plan Fraction for any calendar year shall mean a fraction (a) the numerator of which is the sum of the annual additions to a Participant's accounts under all defined contribution plans maintained by an Employer as of the close of such calendar year (subject to reduction to the extent permitted under the transition rule in Section 235(g) of the Tax Equity and Fiscal Responsibility Act of 1982), and (b) the denominator of which is the sum of the lesser of 125% of the limitation under Section 415(c)(1)(A) of the Code or 140% of the limitation under Section 415(c)(1)(B) of the Code, for such calendar year and for all prior calendar years during which the Participant was employed by an Employer; provided, however, that the denominator may be increased by using for calendar years ending prior to January 1, 1983, an amount equal to the denominator in effect for the calendar year ending in 1982, multiplied by the transition fraction provided in Section 415(e)(6)(B) of the Code.

(e)  (1)   For the purposes hereof, the term "net excess contribution", for all calendar years commencing January 1, 1976, shall mean (i) the aggregate amount by which the annual contributions allocated to a Participant's Retirement Account, if any, and Profit Sharing Savings Account exceeded the maximum annual addition because such Participant's compensation under Section 4.05 was determined without disregarding Section 4.06, reduced by (ii) the aggregate amount by which the maximum annual addition in each year subsequent to a year of excess contribution exceeded the contribution to such Participant's Retirement Account, if any, and Profit Sharing Savings Account.

(2)   For all plan years commencing with the year beginning after December 31, 1984, the Employer contribution and Forfeitures allocations which are otherwise to be made to a Participant's

Confidential                                                    XC00031642

Retirement Account, if any, and Profit Sharing Savings Account shall be reduced by any net excess contribution not previously applied as herein provided.

(3)  If the net excess contribution exceeds the Employer contribution for a Plan year, such excess shall be carried over to the following year and applied as herein provided, until the total net excess contribution has been so applied.

(f)  In the case of a Participant

(1)  who is permanently and totally disabled (as defined in Section 105(d) of the Code) and

(2)  who is not an officer, owner, or highly compensated,

the word "compensation" means for purposes of Section 4.11(c) the compensation the Participant would have received for the year if the Participant was paid at the rate of compensation paid immediately before becoming permanently and totally disabled.  Contributions made with respect to the compensation (as defined in this subsection (e)) of a Participant shall be nonforfeitable when made.

Section 4.12. Matching Company Contributions.

(a)  The Employer shall make contributions from its current or accumulated earnings and profits on behalf of Participants of an amount equal to thirty-five percent of the amount (i) which each Participant contributes under Section 5.01 to his Employee Before-Tax Savings Account during such calendar year and (ii) of the Profit Sharing Savings Account contribution which each Participant transfers under Section 6.02(a) to the Trust for such calendar year.  Such Employer contribution shall be credited to the Participant's Company-Matched Savings Account.

(b)  Contributions made each year by the Employer on behalf of a Participant under this Section 4.12 shall not exceed one and four-tenths percent of such Participant's compensation (as defined in Section 4.05) for the year with respect to which the contribution is made and shall be subject to the limitations of Section 4.11.

(c)  Participants who have terminated their employment with the Employer (except by reason of death, retirement, approved leave of absence, disability, or layoff) prior to the last day in February of the year the contribution is made by the Employer pursuant to this Section are not eligible to receive such Employer contribution.

(d)  A contribution made by the Employer under this Section 4.12 will be invested in the Separate Funds in the same proportions as such Participant has elected to invest his Before-Tax Savings Account.

(e)  The Employer contribution provided for under this Section 4.12 shall be made at the same time the Employer contribution under Section 4.01 is made.

(f)  As of January 1, 1998, Participants must have a minimum of six months of service under this Plan to be eligible for matching Company contributions.

(g)  Participants who are employees of Low-Complexity Manufacturing Group, Inc. shall not be entitled to a contribution to such Participant's Company-Matched Savings Account.

Section 4.13. Rollover Contributions. In addition to the Employer contributions provided for in this Article, the employee contributions made by Participants under Article Five, and the transfer of funds from other plans as provided in Section 4.10(a) herein, as of January 1, 1998, there may also be paid over to the Plan other amounts which have been held under plans which are qualified under Section 401(a) or 401(k) of the Code maintained by a previous employer of a Participant, or held under a Participant's Individual Retirement Account, providing such rollovers are made in the form of cash.  Such rollovers shall be invested according to investment instructions specified by the Participant and may be split

Confidential

XC00031643

among the funds in one percent increments. All employees shall be permitted to make such rollover contributions to the Plan at any time whether such rollovers are made as direct rollovers from previous plans or as sixty-day rollovers made by a Participant. Qualified rollovers into the Plan must be from taxable distributions and may include installments paid over less than ten years and payments to a Participant or spousal beneficiary under a Qualified Domestic Relations Order ("QDRO") or because of death. Rollovers from multiple sources into the Plan shall be permissible.

Payments that are not eligible for rollover into the Plan include (i) periodic payments made over a specific period of at least ten years or more; (ii) minimum distribution amounts; (iii) nontaxable distributions; and (iv) distributions to non-spousal beneficiaries under a QDRO or because of death.

<u>ARTICLE FIVE</u>

<u>EMPLOYEE SAVINGS</u>

Section 5.01. <u>Savings by Participants</u>. In lieu of receiving such compensation, each Participant may have contributed to the Trust for any Plan Year with respect to which he is a Participant under the Plan amounts which do not exceed a total of eighteen percent of his compensation for such year to each of the employee savings accounts referred to in Sections 5.01(a) and 5.01(b) below, for a combined maximum total of eighteen percent of his compensation for such year, also subject to a combined maximum allocation of $7,000 for any calendar year (or such higher amount as may be prescribed by indexing pursuant to Section 402(g) of the Code) to the account referred to in Section 5.01(b) below and the Profit Sharing Savings Account. Such amounts, herein referred to as "employee savings", shall be collected by the Employer by means of payroll deductions at convenient intervals in accordance with uniform rules of general applicability established by the Employer. Neither the Employer nor the Plan Administrator shall have any liability for the payment of interest on any employee savings pending the payment of such savings to the Trustee. The amount of each Participant's employee savings shall be allocated to the employee savings accounts which shall be established for him. Amounts allocated to his Employee After-Tax Savings Account and his Employee Before-Tax Savings Account (collectively, the "Employee Savings Accounts") shall be invested by the Trustee in such Separate Funds, as defined in Section 6.02(a), as elected by the Participant under Section 5.02. The Plan Administrator may, in her discretion, prescribe for any calendar year lower maximums of compensation which may be elected under this Section 5.01, which lower maximums may apply separately to contributions to either or both of the Employee savings accounts referred to below or to contributions to both accounts in the aggregate. In addition, savings contributions may be further limited as provided in Section 4.11 or Section 5.05.

(a) Amounts allocated by a Participant to his "Employee After-Tax Savings Account" shall constitute employee contributions under the Code and shall not reduce the Participant's compensation otherwise be subject to current withholding of Federal income taxes.

(b) Amounts allocated by a Participant to his "Employee Before-Tax Savings Account" shall constitute employer contributions under the Code and shall reduce in an equal amount the Participant's compensation otherwise subject to current withholding of Federal income taxes.

Section 5.02. <u>Authorization and Elections With Respect to Employee Savings</u>. Any Participant who desires to have payroll savings contributions made shall make an election to do so in such form as shall be prescribed by the Plan Administrator, which form may include enrollment through Xerox Facts or any successor system so provided. Payroll deductions in an amount elected by the employee not in excess of the maximum amount permitted under Section 5.01 shall begin as soon as administratively feasible following filing of such form with the Employer. The Participant shall specify on such form the amounts allocable to each of his Employee Savings Accounts which shall be invested by the Trustee in each of the Separate Funds. The Plan Administrator shall establish uniform rules of general applicability designating the amounts of each Participant's payroll savings which for administrative convenience may be invested in each Separate Fund. The Employer may also establish rules regarding minimum payroll deductions.

17

XC00031644

Section 5.03.  Termination of Payroll Deductions for Employee Savings.  Any Participant who has elected to have payroll savings contributions made may terminate his authorization for such contributions at any time by filing a notice with the Employer in such manner as may be prescribed by the Plan Administrator, which may include an election made through Xerox Facts or any successor system so provided. Such notice shall take effect as soon as administratively feasible after filing of such notice by the employee. The Plan Administrator may establish uniform rules of general applicability with respect to conditions, including waiting periods, under which such a Participant can resume payroll savings contributions.

Section 5.04.  Distribution of Excess Deferral Amounts.  Notwithstanding any other provision of the Plan, the excess deferral amount, adjusted according to subsection (c) below, shall be distributed to a Participant who claims such excess deferral amount for a calendar year.  Such distribution shall be made no later than April 15 following the end of the calendar year.

(a)   For purposes of this Section 5.04, "excess deferral amount" shall mean the elective deferrals within the meaning of Section 402(g) of the Code that the Participant allocates to this Plan and claims pursuant to the election procedure set forth in subsection (b) below.

(b)   The Participant's election to claim an excess deferral amount for a calendar year shall be in writing, shall be submitted to the Plan Administrator no later than March 1 following the end of such calendar year, shall specify the excess deferral amount, and shall state that if such amount is not distributed such excess deferral amount, when added to amounts deferred under other plans or arrangements described in Sections 401(k), 408(k) or 403(b) of the Code, exceeds the limit imposed on the Participant by Section 402(g) of the Code for the calendar year in which the deferral occurred.  A Participant who has an excess deferral amount calculated by taking into account only elective deferrals under the Plan and other plans, contracts or arrangements maintained by the Employer or any Affiliated Corporation described in Section 1.03 shall be deemed to have made the appropriate notification with respect to such excess deferral amount.

(c)   The amount distributed to a Participant pursuant to this Section 5.04 with respect to a calendar year shall be increased or decreased by investment income or losses attributable thereto, calculated according to any reasonable method consistent with regulations under Code Section 402(g).

(d)   If any Matching Contributions have been allocated with respect to excess deferral amounts, they shall be forfeited and applied to reduce future Employer contributions for the Plan Year.

Section 5.05.  Actual Deferral Percentage Limitations.

(a)   Notwithstanding any provision in this Plan to the contrary, the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for a calendar year shall not exceed the greater of (1) or (2) below.

(1)   the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the calendar year multiplied by 1.25; or

(2)   the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the calendar year multiplied by two, provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees by more than two percentage points or such lesser amount as the Secretary of the Treasury shall prescribe to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Employee.

(b)   For the purposes of this Section 5.05, the following definitions shall apply:

(1)   "Actual Deferral Percentage" shall mean the ratio (expressed as a percentage), of the sum of Employee Before-Tax Savings and Profit Sharing Savings, on behalf of the Eligible Partici-

18

Confidential

XC00031645

pant for the calendar year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the calendar year. For this purpose, Matching Contributions which satisfy the requirements of Section 401(k)(2)(B) and (C) of the Code and/or qualified nonelective contributions (within the meaning of Section 401(m)(4)(C) of the Code) may be treated as Employee Before-Tax Savings and/or Profit Sharing Savings.

(2) "Average Actual Deferral Percentage" shall mean the average (expressed as a percentage) of the Actual Deferral Percentages of the Eligible Participants as a group.

(3) "Eligible Participant" shall mean any Employee of an Employer who is otherwise authorized under the terms of the Plan to receive Profit Sharing Savings or to elect Before-Tax Savings for the calendar year.

(4) "Family Member" means an individual described in Section 414(q)(6)(B) of the Code.

(5) "Highly Compensated Employee", with respect to a Plan Year, means an individual designated as such by application of Section 414(q) of the Code.

(6) "Nonhighly Compensated Employee", with respect to a Plan Year, means an Employee of an Employer who is neither a Highly Compensated Employee nor a Family Member.

(c)  (1)  For purposes of this Section 5.05, the Actual Deferral Percentage for any Eligible Participant who is a Highly Compensated Employee for the calendar year and who is eligible to have Before-Tax Savings or Profit Sharing Savings allocated to his account under two or more plans or arrangements described in Section 401(k) of the Code that are maintained by an Employer or other Affiliated Corporation described in Section 1.03 shall be determined as if all such Before-Tax Savings or Profit Sharing Savings were made under a single arrangement.

(2)  For purposes of determining the Actual Deferral Percentage of a Participant who is a Highly Compensated Employee who is a five percent owner or one of the ten most highly compensated employees, the Before-Tax Savings, Profit Sharing Savings and compensation of such Participant shall include the Before-Tax Savings, Profit Sharing Savings and compensation of Family Members, and such Family Members shall be disregarded in determining the Actual Deferral Percentage for Participants who are Nonhighly Compensated Employees.

(3)  The determination and treatment of the Before-Tax Savings, Profit Sharing Savings and Actual Deferral Percentage of any Participant shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

(d)  The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the requirements of this Section 5.05 and whereby contributions which would otherwise be treated as Before-Tax Savings or Profit Sharing Savings may be treated as After-Tax Savings, or whereby contributions may be refunded to employees as follows:

(1)  Notwithstanding any other provision of the Plan, excess contributions adjusted for investment income or investment loss allocable thereto, calculated according to any reasonable method consistent with regulations under Code Section 402(g), shall be distributed no later than the last day of the calendar year, to Participants on whose behalf excess contributions were made for the preceding calendar year. For purposes of this Section 5.05, "excess contributions" shall mean the amount described in Section 401(k)(8)(B) of the Code.

(2)  The excess contributions to be distributed to the Participant shall, after adjustment for income or loss, be reduced (in accordance with regulations) by any excess deferral amount distributed to the Participant under Section 5.04.

Confidential                                                                 XC00031646

(3)   If any Matching Contributions have been allocated with respect to excess contributions, they shall be forfeited and applied to reduce future Employer contributions for the Plan Year.

Section 5.06. Limit on After-Tax Savings and Matching Company Contributions. (This Section 5.06 shall only be in effect through December 31, 1997.)

(a)   Notwithstanding any provision in this Plan to the contrary, the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the calendar year shall not exceed the greater of (1) or (2) below:

(1)   the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the calendar year multiplied by 1.25; or

(2)   the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the calendar year multiplied by two, provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees by more than two percentage points.

(b)   Notwithstanding any provision in this Plan to the contrary, after the application of Section 5.05 and subsection (a) of this Section 5.06, the sum of the Average Actual Deferral Percentage and the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the greater of:

(1)   the sum of

(i)   the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year multiplied by 1.25; and

(ii)   the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year plus two percentage points, but not more than the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees multiplied by two; or

(2)   the sum of

(i)   the lesser of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year, multiplied by 1.25; and

(ii)   the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees for the Plan Year, plus two percentage points, but not more than the greater of the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees or the Average Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees, multiplied by two.

(c)   For the purposes of this Section 5.06, the following definitions shall apply:

20

XC00031647

(1)  "Average Contribution Percentage" shall mean the average (expressed as a percentage), of the Contribution Percentages of the Eligible Participants as a group.

(2)  "Contribution Percentage" shall, at the discretion of the Plan Administrator, mean either the ratio (expressed as a percentage), of the sum of the Employee After-Tax Savings and Matching Company Contributions under the Plan on behalf of the Eligible Participant for the calendar year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the calendar year, or the ratio expressed as a percentage) of the sum of the Employee Before-Tax Savings, Employee After-Tax Savings and Matching Company Contributions on behalf of the Eligible Participant for the calendar year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code) for the calendar year, or such other ratio permitted by the Code and selected by the Plan Administrator.

(3)  "Eligible Participant" shall mean any Employee of an Employer who is otherwise authorized under the terms of the Plan to have After-Tax Savings or Matching Company Contributions allocated to his account for the calendar year.

(4)  "Family Member", "Highly Compensated Employee", and "Nonhighly Compensated Employee" have the meanings set forth in Section 5.05(b).

(d)  (1)  For purposes of this Section 5.06, the Contribution Percentage for any Eligible Participant who is a Highly Compensated Employee for the calendar year and who is eligible to make After-Tax Savings or to have Company-Matched Contributions or Before-Tax Savings allocated to his accounts under two or more plans described in Section 401(a) of the Code or arrangements described in Section 401(k) of the Code that are maintained by an Employer or other affiliated organization described in Section 3.06 shall be determined as if all such contributions and deferrals were made under a single plan.

(2)  In the event that this Plan satisfies the requirements of Section 410(b) of the Code only if aggregated with one or more plans, or if one or more other plans satisfy the requirements of Section 410(b) of the Code only if aggregated with this Plan, then this Section 5.06 shall be applied by determining the Contribution Percentages of Eligible Participants as if all such plans were a single plan.

(3)  For purposes of determining the Contribution Percentage of an Eligible Participant who is a Highly Compensated Employee who is a five percent owner or one of the ten most highly compensated employees, the After-Tax Savings, Company-Matched Contributions, Before-Tax Savings and compensation of such Participant shall include the After-Tax Savings, Matching Company Contributions, Before-Tax Savings and compensation for Family Members, and such Family Members shall be disregarded in determining the Contribution Percentage for Eligible Participants who are Nonhighly Compensated Employees.

(4)  The determination and treatment of the Contribution Percentage of any Participant shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

(e)  The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the requirements of this Section 5.06, or whereby contributions may be distributed as follows:

(1)  Excess aggregate contributions shall be forfeited, if not otherwise forfeitable under the terms of this Plan, or if not forfeitable, distributed no later than the last day of each calendar year, to Participants to whose accounts After-Tax Savings or Matching Company Contributions are allocated for the preceding calendar year. For the purposes of this Section 5.06 "excess aggregate contributions" shall mean the amount described in Section 401(m)(6)(B) of the Code.

21

Confidential

(2)   The excess aggregate contributions to be distributed to a Participant with respect to a calendar year shall be adjusted for income or loss, calculated according to any reasonable method consistent with regulations under Section 402(g) of the Code.

(3)   Excess aggregate contributions for a calendar year shall be distributed first from the Participant's After-Tax Savings Account and then, if necessary, forfeited if otherwise forfeitable under the terms of the Plan (or if not forfeitable, distributed) from the Participant's Company-Matched Savings Account.

(4)   Amounts forfeited by Highly Compensated Employees under this Section 5.06 shall nevertheless be treated as annual additions under Section 4.11.

ARTICLE SIX

PROFIT SHARING SAVINGS ACCOUNTS, PROFIT SHARING COMPANY
STOCK ACCOUNTS, EMPLOYEE SAVINGS ACCOUNTS, COMPANY-MATCHED
SAVINGS ACCOUNTS AND ROLLOVER ACCOUNTS

Section 6.01.   Maintenance of Accounts and Valuation in Terms of Units.   As a permanent accounting record under the Plan, there shall be maintained the following accounts for each Participant:

(a)   Profit Sharing Savings Account (formerly known as Optional Account prior to September 1, 1975)

(b)   Profit Sharing Company Stock Account (established for Plan Years beginning after 1998)

(c)   Employee After-Tax Savings Account

(d)   Employee Before-Tax Savings Account (including, for certain Participants, AMTX Employee Before-Tax Savings Account)

(e)   Company-Matched Savings Account

(f)   Rollover Account.

Each Account shall be credited with all amounts allocable thereto pursuant to Article Four or Article Five, as the case may be, and shall be charged with distributions therefrom as provided in the Plan.

The total value of the assets held in each Separate Fund and the interest of each Participant therein shall be measured in terms of units which shall be equal undivided interests in such assets. For all purposes of this Plan, the JAB may, in calculating the value of units hereunder and in crediting units to the Accounts of any Participant, make such rules for the disregarding of small fractions as are desirable.

Section 6.02.   Allocation to Profit Sharing Savings Accounts and Profit Sharing Company Stock Accounts.

(a)   Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect that the funds allocable to his Profit Sharing Savings Account from such contribution be used to provide benefits in one or more of the following ways:

(1)   transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.05, 4.11, 5.04 through 5.06, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the

22

                                                                 XC00031649

(i)  "Balanced Fund", which shall be invested primarily in equity and fixed income securities and in other securities or property as determined in accordance with guidelines adopted from time to time by the JAB.

(ii)  "Xerox Stock Fund", which shall be invested by the Trustee in the Common Stock of Xerox Corporation, hereafter called "Xerox Stock" and may hold some cash for administrative purposes.

(iii)  "Income Fund", which shall be invested primarily in fixed income instruments as determined in accordance with guidelines adopted from time to time by the JAB.

(iv)  "U.S. Stock Fund", which shall be invested primarily in stocks of medium to large U.S. companies as determined in accordance with guidelines adopted from time to time by the JAB.

(v)  "Small Company Stock Fund", which shall be invested primarily in stocks of smaller U.S. companies as determined in accordance with guidelines adopted from time to time by the JAB.

(vi)  "International Stock Fund", which shall be invested primarily in stock of companies based outside of the United States as determined in accordance with guidelines adopted from time to time by the JAB.

(vii)  Any other fund hereafter established by the JAB which shall be invested in accordance with guidelines adopted from time to time by the JAB.

(each of which funds is referred to as a Separate Fund and which are collectively referred to as Separate Funds).

OR

(2)  distributed to him in cash after deduction of all legally required withholding taxes.

OR

(3)  until January 1, 1998 invested by the Employer, on behalf of such Participant, in Xerox Stock after all legally required withholding taxes have been deducted, and the stock so purchased distributed to the Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the Participant in cash. The Employer shall purchase stock for Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the Employer contribution for such purchase for such year has been made available by it. The portion of such Employer contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by the Employer on the March 15 following the close of the year to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for Participants who have elected the alternative form of benefit provided by this subsection, the Employer may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular Employer contribution.

(b)  The amounts allocated to the Profit Sharing Company Stock Account of each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by

23

Confidential

the Employer pursuant to Article Four shall be automatically invested initially in units in the Xerox Stock Fund. The value of such units may not be transferred or made the subject of loans or discretionary withdrawals until the expiration of the two-year period specified in Sections 6.12, 6.15 and 8.06 of the Plan. The Plan Administrator may, in his or her discretion, determine how dividends on shares of Common Stock of the Company in the Xerox Stock Fund, to the extent such dividends relate to Profit Sharing Company Stock Accounts, shall be paid to Participants from time to time and at such times as the Plan Administrator shall determine.

Section 6.03. Allocation of Amounts Allocable to Profit Sharing Savings Accounts and Company-Matched Savings Accounts to Separate Funds. For administrative convenience, the JAB shall establish uniform rules of general applicability specifying the proportions in which a Participant may allocate his Employer contributions between the options provided in Section 6.02(a)(1), (2) or (3).

The JAB shall designate the form, including Xerox Facts or any successor system so provided, in which the Participant may designate the percentage of the amount allocable to his Profit Sharing Savings Account which shall be invested in each Separate Fund and the proportional amount which the Participant elects to take in cash or, until January 1,1999, in distribution of Xerox Stock. An election form shall be filed with the JAB on or before such date as shall be fixed by the JAB prior to the Employer contribution for any year and shall be effective with respect to Employer contributions made after the date it is filed with the JAB. An election made via Xerox Facts or any successor system so provided shall be deemed made when made on Xerox Facts or any successor system so provided. An election form or any other form filed by a Participant in connection with the Plan shall be deemed filed when and if it is actually received by the JAB at the address specified on such form or any accompanying instructions.

Any Participant who does not make a new election by such date fixed by the JAB shall be deemed to have elected the same percentage allocation of the amount allocable to his Profit Sharing Savings Account as specified in the last previous election form duly filed by him. If no duly filed election is on record for such Participant, he shall be deemed to have elected that the amount allocable to his Profit Sharing Savings Account be invested by the Trustee in the Balanced Fund, provided that in the case of a temporary employee, he shall be deemed to have elected that the Employer contribution shall be distributed to him in cash in accordance with Section 6.02(a)(2).

Section 6.04. Valuation Date.

(A)   Prior to January 1, 1998, the Trustee shall determine the value of the assets held in each Separate Fund as of the close of each accounting year of the Trust, and as of the last business day of each calendar month during the accounting year of the Trust (each of which dates is referred to herein as a "valuation date"). For purposes of this Section, the close of any accounting year of the Trust shall be deemed to be the last day of such year on which the New York Stock Exchange is open for trading. In determining the total value of such assets as of any valuation date, the Trustee shall appraise them at their market value of such date, and shall give effect to all income, profits or losses and increases or decreases in the value of each Separate Fund. All items of income and expense shall be taken into account on an accrual basis. The Trustee shall exclude from such valuation any allocation to any Separate Fund with respect to the Employer contribution for the immediately preceding year, if the valuation date occurs before the Employer contribution has been paid in full and credited to Participants' Accounts. The Trustee shall also exclude from any valuation the amount of any employee contributions payable by the Employer to the Trustee as of such valuation date. Following the determination of the value of the assets held in each Separate Fund as of any valuation date, the unit value as of such valuation date shall be determined in accordance with Section 6.05.

(B)   As of January 1, 1998, the Trustee shall determine the value of the assets held in each Separate Fund as of the close of each accounting year of the Trust, and as of the close of business each day during the accounting year of the Trust (each of which dates is referred to herein as a "valuation date"). For purposes of this Section, the close of any accounting year of the Trust shall be deemed to be the last day of such year on which the New York Stock Exchange is open for trading, and the valuation computed as of the close of business each day shall be deemed to be the close of business on such day

24

Confidential

on which the New York Stock Exchange is open for trading. In determining the total value of such assets as of any valuation date, the Trustee shall appraise them at their market value of such date. and shall give effect to all income, profits or losses and increases or decreases in the value of each Separate Fund. All items of income and expense shall be taken into account on an accrual basis. Following the determination of the value of the assets held in each Separate Fund as of any valuation date, the unit value as of such valuation date shall be determined in accordance with Section 6.05.

Section 6.05. Determination of Unit Values of Each Separate Fund. The determination of the unit value of each Separate Fund as of any valuation date shall be made by dividing the total value of the assets in each Separate Fund, as determined by the Trustee in accordance with Section 6.04, by the number of units in each Separate Fund credited to the Profit Sharing Savings Accounts, Profit Sharing Company Stock Accounts, Employee Savings Accounts, Company-Matched Savings Accounts and Rollover Accounts of all Participants. On any valuation date a uniform change may be made in the value of all outstanding units in any of the Separate Funds, provided that such change shall not affect the aggregate value of Participant's Accounts in such Fund as of such valuation date.

Section 6.06. Determination of Value of Profit Sharing Savings Account and Profit Sharing Company Stock Account and Notification to Participants. The value of a Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account on any date shall be the sum of the number of units in each Separate Fund credited to his Profit Sharing Savings Account and Profit Sharing Company Stock Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Profit Sharing Savings Account and Profit Sharing Company Stock Account of each Participant shall be credited with the portion of the Employer contribution for the calendar year just completed allocable to such Accounts. Such amount shall then be invested by the Trustee or distributed to the Participant in cash or Xerox Stock as provided in Section 6.02 and with respect to any amounts invested in any of the Separate Funds, the Participant's Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Profit Sharing Savings Account and Profit Sharing Company Stock Account.

Section 6.07. Notification to Participants of Amount Credited to Employee After-Tax Savings Account. The value of a Participant's Employee After-Tax Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Employee After-Tax Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Employee After-Tax Savings Account of each Participant shall be credited with the amount of his payroll savings deducted from his compensation. Upon receipt of such payroll savings from the Employer, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Employee After-Tax Savings Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date such employee contributions were deducted from the Participant's compensation) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, the Plan Administrator shall notify each Participant as to the value of his Employee After-Tax Savings Account.

Section 6.08. Notification to Participants of Amount Credited to Employee Before-Tax Savings Account. The value of a Participant's Employee Before-Tax Savings Account on any date shall be the

25

XC00031652

sum of the number of units in each Separate Fund credited to his Employee Before-Tax Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Employee Before-Tax Savings Account of each Participant shall be credited with the amount of his payroll savings deducted from his compensation. Upon receipt of such payroll savings from the Employer, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Employee Before-Tax Savings Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date such employee contributions were deducted from the Participant's compensation) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, the Plan Administrator shall notify each Participant as to the value of his Employee Before-Tax Savings Account.

Section 6.09. Determination of Value of Company-Matched Savings Account and Notification to Participants. The value of a Participant's Company-Matched Savings Account on any date shall be the sum of the number of units in each Separate Fund credited to his Company-Matched Savings Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date, immediately preceding or coincident with such date.

After the report by the Trustee of the assets held in each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution for the preceding calendar year is paid in full, and after the determination of the unit value as of such valuation date, the Company-Matched Savings Account of each Participant shall be credited with the Employer contribution for the calendar year just completed pursuant to Section 4.11. The Participant's Company-Matched Savings Account shall be credited with the number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately preceding the date on which the Employer contribution is paid in full) equal in value to the amounts invested in each of the Separate Funds. After such units have been so credited, the Plan Administrator shall notify each Participant as to the value of his Company-Matched Savings Account.

Section 6.10. Notification to Participants of Amount Credited to Rollover Account. The value of a Participant's Rollover Account on any date shall be the sum of the number of units in each Separate Fund credited to his Rollover Account on such date multiplied by the unit value of the appropriate Separate Fund as of the valuation date immediately preceding or coincident with such date.

The Rollover Account of each Participant shall be credited with such rollover amounts received by the Plan. Upon receipt of such rollover(s) to the Plan, the Trustee shall then invest such amounts in the Separate Funds as selected by the Participant and his Rollover Account shall be credited with a number of units in each Separate Fund (based on the unit value of each Separate Fund as of the valuation date coincident with or immediately following the date of receipt of such rollover funds) equal in value to the amount invested in each of the Separate Funds. After such units have been so credited with respect to the valuation date coincident with or immediately preceding the date on which the rollover amounts are received in full, the Plan Administrator shall notify each Participant as to the value of his Rollover Account.

Section 6.11. Transfers Among Separate Funds Subject to the last sentence of this Section, the JAB may, in its sole discretion, adopt uniform rules of general application with respect to each Account with respect to the transfers of funds allocated to one of the Separate Funds credited to a Participant's Profit Sharing Savings Account, his Profit Sharing Company Stock Account, his Employee Savings Account, his Company-Matched Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section, a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding or coincident with such transfer) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings or Rollover Accounts, as the

26

XC00031653

case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund and debited from his Profit Sharing Savings. Profit Sharing Company Stock, Company-Matched Savings. Employee Savings or Rollover Accounts. as the case may be. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings. Company-Matched Savings or Rollover Accounts, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred. The value of units credited to a Participant's Profit Sharing Company Stock Account may not be transferred prior to the end of the second anniversary of the initial crediting of such units to such Account.

Section 6.12.  Notification to Participants of Amounts Credited to Accounts.  Sections 6.06. 6.07, 6.08, and 6.09 provide for Participants to be notified annually of the value of their Accounts.  The JAB may, however, in its discretion. provide for more frequent notifications to Participants of the amounts credited to any or all of their Accounts. All notifications to Participants, including notifications under Sections 6.06. 6.07. 6.08, and 6.09 and this Section. shall be made as of the dates determined by the JAB.

Section 6.13.  Valuation Dates for Payments from the Plan.  Payments of Accounts values from the Plan under Sections 7.02, 7.04, 8.05, 8.06, 9.02, 10.02 and 10.03, shall be made as follows, as the context requires:

(a)   Prior to January 1, 1998:

(i)   For Participants whose last day of employment prior to retirement, termination of employment or death occurs during the first fifteen days of a month, payments from any Separate Fund, except as noted in subsections (c) and (d) below, shall be made based on the valuation date as of the end of the month prior to the month which immediately precedes such event.

(ii)   For Participants whose last day of employment prior to retirement, termination of employment or death occurs between the sixteenth and last day of a month, payments from any Separate Fund, except as noted in subsections (c) and (d) below, shall be made based on the valuation date as of the end of the month immediately preceding such event.

(b)   As of January 1, 1998, for Participants who have terminated employment, payments from any Separate Fund, except as noted in subsections (c) and (d) below, shall be made based on the valuation date as of the close of business on the day the distribution request is received, providing such request is received by 4:00 p.m. (New York time), on a day on which the New York Stock Exchange is open for business. Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business.  If the Participant elects to receive such distribution in the form of an annuity, however, the valuation date shall be as of the close of business on the date the annuity form is received, providing such annuity form is received on a day on which the New York Stock Exchange is open for business.  Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business.

(c)   Up to and including December 31, 1993, payments from the Income Fund shall be made based on the balance as of the most recently available valuation date plus interest at the then effective rate of interest for the Income Fund calculated up to the estimated date of payment of a hardship or discretionary withdrawal, or the last day of employment prior to retirement, termination of employment or death, as the case may be.

(d)   Beginning January 1, 1994, payments from the Income Fund shall be made on the same basis as payments from the other Separate Funds under Sections 6.12(a), (b), (e) and (f).

(e)   Prior to January 1, 1998:

Confidential                                                                                    XC00031654

(i)   For Participants whose requests for hardship or discretionary withdrawals are received during the first fifteen days of a month, payments from any Separate Fund, except as noted in subsections (c) and (d) above, shall be made based on the valuation date as of the end of the month prior to the month which immediately precedes the date of such receipt by the Plan Administrator.

(ii)   For Participants whose requests for hardship or discretionary withdrawals are received between the sixteenth and last days of a month, payments from any Separate Fund, except as noted in subsections (c) and (d) above, shall be made based on the valuation date as of the end of the month immediately preceding the date of such receipt by the Plan Administrator.

(f)   As of January 1, 1998, for Participants for whom requests for hardship or discretionary withdrawals are received, payments from any Separate Fund, except as noted in subsections (c) and (d) above, shall be made based on the valuation date as of the close of business on the day the completed request is received, providing such request is received by 4:00 p.m. (New York time), on a day on which the New York Stock Exchange is open for business.  Otherwise, the valuation shall be as of the close of business on the next day on which the New York Stock Exchange is open for business.

Section 6.14.  Loans to Employees.

(a)   A Participant who is an employee of an Employer, or a Participant who has terminated employment with the Employer but who remains a party in interest (as defined by ERISA Section 3(14)) with respect to the Plan, may borrow funds for any reason from his Before-Tax Savings Account, Employee After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account, amounts allocated to his Profit Sharing Company Stock Account (provided that the units represented by such funds have been in such Account for a period of at least two years) in a minimum amount of $500 per loan, subject to the limitations in subsection (f) hereof.  The loan program shall be administered by the Plan Administrator and the Plan Administrator may establish uniform rules and regulations applicable to the loan program which shall appear in the loan documents.

(b)   Until September 30, 1989, each loan made under this Section shall be repayable at an interest rate which shall reflect market interest rates set by the Plan Administrator.  Commencing October 1, 1989, each loan made under this Section shall be repayable at an interest rate equal to the Citibank commercial prime rate at December 31, March 31, June 30 and September 30 of each year, rounded upward, if necessary, to the nearest tenth of one percent, plus one percent, as set on January 1, April 1, July 1 and October 1 of each year, respectively, by the Plan Administrator.

(c)   Repayment schedules shall provide for amortization not less than quarterly.  Loans shall be repaid in four and one-half years if the purpose of such loan is other than to acquire a principal residence and fourteen and one-half years if the purpose of such loan is to acquire a principal residence.

(d)   Persons may apply for loans pursuant to this Section through Xerox Facts or any successor system so provided.

(e)   Amounts borrowed from a Participant's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account shall be security for such loan.  No other collateral may be taken as security for any loan.

(f)   Loans under this Section shall be approved provided that:

(1)   No person may have more than five loans outstanding at any time; and

(2)   (A)   Prior to January 1, 1998, no person may have more than (i) $45,000 in loans outstanding at any time from his Before Tax Savings Account, After-Tax Savings Account, and Company Savings Account or (ii) $50,000 from his Before-Tax Savings Account, After-Tax Savings Account, Rollover Account and Profit Sharing Savings Account reduced by the ex-

Confidential

XC00031655

cess, if any, of (A) the highest outstanding loan balance from the Plan during the twelve-month period ending on the day before the date on which a loan is made over (B) the outstanding balance of loans from the Plan on the date on which such loan is made); and

(B)  As of January 1, 1998, no person may have more than $50,000 in loans outstanding at any time from his Before Tax Savings Account, After-Tax Savings Account, and Profit Sharing Savings Account reduced by the excess, if any, of (i) the highest outstanding loan balance from the Plan during the twelve-month period ending on the day before the date on which a loan is made over (ii) the outstanding balance of loans from the Plan on the date on which such loan is made); and

(3)  No loans outstanding under this Section shall be in default; and

(4)  The aggregate amount of all loans from a person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account and Profit Sharing Company Stock Account is limited to forty-five percent, if prior to January 1, 1998, or fifty percent as of January 1, 1998, of the combined balances in such person's Before-Tax Savings Account, After-Tax Savings Account, Rollover Account, Profit Sharing Savings Account and Profit Sharing Company Stock Account, which as of the time of the application for such loan are not security for previous loans.

(g)  In the event that a person fails to make six monthly payments on a loan for any reason (whether or not such failures are consecutive), the loan shall be considered to be in default in which case:

(1)  Such defaulting person may not defer funds into his Employee Savings Accounts or Profit Sharing Savings Account for a period of (A) twenty-four months from the date of default if prior to January 1, 1998 and (B) twelve months from the date of default as of January 1, 1998;

(2)  Such defaulting person may not make withdrawals from his Employee Savings Accounts, Profit Sharing Savings Account or Profit Sharing Company Stock Account for a period of (A) twenty-four months from the date of default if prior to January 1, 1998 and (B) twelve months from the date of default as of January 1, 1998;

(3)  An amount equal to the unpaid loan balance will be deemed to be distributed to the Participant for tax purposes, but will be actually distributed only if and when the Participant is entitled to a distribution from the Plan (or is on Disability); and

(4)  Such defaulting person may not initiate another loan from the Plan until the defaulted loan is either repaid in full or actually distributed to the Participant.

(h)  A loan will be in default in the event that the borrower terminates employment with the Employer and fails to repay the loan within thirty days (which shall become a period of ninety days as of January 1, 1998) of termination in which case a distribution of the unpaid loan will be made to the Participant and the Participant's Accounts will be reduced by the amount of the unpaid loan. The Plan Administrator shall establish uniform rules of general applicability regarding which Accounts and which Separate Fund, if any, shall be offset to reflect the distribution of the unpaid loan balance; provided, however, that the Account offset first shall be the Participant's AMTX Employee Before-Tax Savings Account, if any.

(i)  A loan attributable to a Participant's AMTX Employee Before-Tax Savings Account which is outstanding on December 31, 1994, shall be payable in accordance with the loan provisions of the AMTX, Inc. Employees' Retirement Savings Plan.

(j)  As of January 1, 1998, loans taken pursuant to this Section 6.13 will be subject to a $45 loan fee. Such loan fee will be deducted from the Account of a Participant taking a loan.

Confidential                                                           XC00031656

(k)   As of January 1, 1998, loan repayments owed by Participants in qualified military service will be suspended under this Plan as permitted under Section 414(u)(4) of the Code.

ARTICLE SEVEN

NORMAL AND DEFERRED BENEFITS

Section 7.01.   Normal Retirement.   Each Participant may retire from the active service of the Employer at his normal retirement date, which shall be the first day of the month coincident with or next following his sixty-fifth birthday or the first day of the month coincident with or next following the later of

(a)   his attainment of age sixty-five; and

(b)   his completion of ten years of continuous service with the Employer, as defined in Section 3.02.

Section 7.02.   Amount of Retirement Benefits and Normal Form of Payment of Retirement Account to Married Participants.   The benefits to which a Participant shall be entitled upon retirement shall be such as the value of the units credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts will provide.

Section 7.03.   Limitations Regarding Payment of Benefits.

(a)   Payments shall commence within sixty days after (i) the close of the calendar year in which the Participant's normal retirement date or actual retirement thereafter occurs, or (ii) subject to the limitation set forth in Section 7.03(b), at a date later than such date which shall have been elected by the Participant.   Such election shall be made by the Participant by applying to the JAB, which application shall specify the date on which the payments of benefits is to commence.

(b)   Notwithstanding the provisions of subsection (a) above, the benefits of a Participant who attains age seventy and one-half on or prior to December 31, 1998 shall be entirely distributed to such Participant or shall commence to be distributed, not later than April 1 of the calendar year following the calendar year in which the Participant attains age seventy and one-half unless such Participant remains an employee of the Employer and elects to postpone receipt of such benefits until the year of retirement. Benefits of a Participant who attains age seventy and one-half after December 31, 1998, and who is not a five percent owner in the year such Participant attains age seventy and one-half, shall be entirely distributed to such Participant or shall commence to be distributed the later of the year of retirement or the year of attainment of age seventy and one-half.   Notwithstanding the above, benefits of a Participant who is a five percent owner in the year such Participant attains age seventy and one-half shall be distributed to such Participant or shall commence to be distributed not later than April 1 of the calendar year following the calendar year in which the Participant attains age seventy and one-half.

For purposes of this Section 7.03(b), the term "five percent owner" means any person who owns (or is considered as owning within the meaning of Section 318 of the Code) more than five percent of the outstanding stock of the Employer or stock possessing more than five percent of the total combined voting power of all stock of the Employer.

If a Participant's benefit is not distributed in a lump sum, payment of such benefit shall be made during one of the following periods (in accordance with regulations to be prescribed by the Secretary of the Treasury):

(i)   the life of the Participant;

(ii)   the joint lives of the Participant and his designated beneficiary or beneficiaries;

(iii)   a period not extending beyond the life expectancy of the Participant; or

30

    XC00031657

(iv)  a period not extending beyond the joint life expectancy of the Participant and his designated beneficiary or beneficiaries.

(c)  If a Participant has begun to receive his benefits under the Plan and he dies before all of his benefits have been distributed to him. the remaining portion of his benefits shall be distributed at least as rapidly as under the method of distribution elected as of the date of his death. If a Participant dies before he has begun to receive his benefits, then his entire benefits shall be distributed within five years following the date of his death; provided, however, that this provision shall not be applicable if:

(i)  the Participant's retirement benefit is payable to or for the benefit of a designated beneficiary;

(ii)  the Participant's benefit will be distributed (in accordance with regulations to be prescribed by the Secretary of the Treasury) over the life of such designated beneficiary (or over a period not extending beyond the life expectancy of such beneficiary); and

(iii)  such distribution commences not later than one year after the date of the Participant's death (or such later date as may be prescribed in regulations promulgated by the Secretary of the Treasury);

(iv)  and further provided, however, that if the designated beneficiary referred to in subsection (i) is the Participant's spouse, the distribution under subsection (iii) need commence no earlier than the date on which the Participant would have attained age seventy and one-half. If the Participant's spouse dies before the distribution of benefits to such spouse has begun, the preceding provisions of this subparagraph shall apply to such spouse in the same manner as if such spouse were the Participant.

(d)  For purposes of Sections 7.03(b) and 7.03(c), distributions shall be made in compliance with Section 401(a)(9) of the Code and Department of Treasury regulation Section 1.401(a)(9)-1 and -2, which shall override any form of distribution otherwise permitted under the Plan and inconsistent therewith. In accordance with such regulations, the life expectancy of a Participant and a Participant's spouse may be redetermined annually, provided, however, that life expectancy shall not be redetermined for a life annuity.

(e)  In order to comply with the incidental benefit requirements of Section 401(a) (9)(G) of the Code and Department of Treasury regulation Section 1.401(a)(9)-2, a form of benefit payment must meet the following applicable conditions unless otherwise in compliance with such regulations:

(i)  If a period certain annuity option or an equal installment option for the Participant, in no event shall an interest only option be made available.

(ii)  If a joint and survivor annuity:

(A)  If the survivor is the spouse, the annual benefit payable to the survivor may not exceed one hundred percent of the annual benefit payable to the Participant.

(B)  If the survivor is other than the spouse, the present value of the payments to be made to the Participant at the date his benefits commence must be more than fifty percent of the present value of the total payments to be made to the Participant and his beneficiary.

(f)  In the event that a Participant ceases to be an employee of the Employer because of disposition by the Employer of the business in which he was employed but continues employment with the successor employer, no distribution from the Plan shall be made to the affected Participant; provided, however, that if the Employer determines that a disposition has been made of substantially all of the assets of a trade or business or the stock of a subsidiary, and that the requirements of Code Section 401(k)

31

XC00031658

(2)(B) and Code Section 401(k)(10), and any other relevant law, are met, distributions shall be made available to the affected Participants.

Section 7.04. Payment of Benefits. Upon the retirement of a Participant, at such Participant's election, the Plan Administrator shall distribute benefits with respect to the value of the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts in the form of a lump sum. Any Participant may elect that benefits be provided by an annuity payable by a legal reserve life insurance company, or by distributions of such value directly from the Trust, in one of the following forms:

(a)   (i)   Life Annuity. The Participant is paid a monthly benefit for life.

(ii)   Contingent Annuitant Option. The Participant is paid a reduced monthly benefit for life and then, if the Participant's beneficiary is still alive, a monthly benefit is paid to the beneficiary for the remainder of his life which is equal to fifty percent or one hundred percent of the monthly benefit paid to the Participant.

(iii)   Last Survivor Option. The Participant is paid a reduced monthly benefit while he and his beneficiary both live. If the Participant's beneficiary dies during the Participant's lifetime, an amount which is equal to fifty percent or one hundred percent of the monthly benefit paid before the beneficiary's death is paid to the Participant for the remainder of his life. If the Participant dies during his beneficiary's lifetime, an amount which is equal to fifty percent or one hundred percent of the monthly benefit paid before the Participant's death is paid to the beneficiary for the remainder of his life.

(iv)   Period Certain and Life Option. The Participant is paid a reduced monthly benefit for life with the provision that should the Participant die within five, ten, fifteen or twenty years of the date his benefits commence, the Participant's beneficiary will receive the same monthly payment which the Participant was receiving for the balance of the five, ten, fifteen or twenty-year period.

(v)   Cash Refund (Unpaid Balance). The Participant's beneficiary is paid the original amount transferred to the insurance company minus the amount of retirement benefits paid. This option can be combined with any of the options described above, or,

(b)   or by a combination of the above methods, as follows:

(1)   In the event that the Participant elects to receive at least part of his Plan benefits by annuity, the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings and Employee Savings Accounts which are to be used to provide such annuity shall be segregated into a separate account for his benefit (valued as of the valuation date determined pursuant to Section 6.12), and any whole shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings or Rollover Account will be sold by the Trustee, and the proceeds combined with the amount segregated to his separate account, unless the Participant elects to have the shares distributed to him. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. As soon as administratively feasible following his retirement, the entire amount to be used to provide such annuity segregated to the Participant's separate account shall then be used by the Trustee at the direction of the JAB to obtain the annuity under which benefit payments will be made to the Participant and his beneficiary or beneficiaries, if any. Such Participant may elect to receive payments pursuant to any optional form of payment available under such annuity. The election of an optional form of payment may be designated by the Participant on a form provided for that purpose by the JAB, and the JAB shall instruct the Trustee to make such election of option effective. Upon the segregation into a separate account of the Participant's interest in the Trust used to provide such annuity, all units credited to his Accounts representing such funds shall be canceled, and

Confidential                                                                                                  XC00031659

the amount held in such separate account shall be excluded as an asset of any Separate Fund for purposes of the Plan.

With respect to cases where only a portion of the value of a Participant's Accounts is to be used to purchase an annuity under this subsection, the JAB shall establish uniform rules of general applicability regarding from which Accounts and from which Separate Fund, if any, the amount used to purchase such benefit shall be segregated.

(2)  Where the participant receives at least part of his Plan benefit directly from the Trust, the Participant's share in the assets of the Trust to be used for such purpose shall remain undivided and unsegregated pending the payment of benefits to him. The value of the Participant's share in the assets of the Trust available for payment directly from the Trust may be paid:

(A)  in a single lump sum as soon as administratively feasible following his retirement,

(B)  in periodic payments in accordance with any form of annuity available in Section 7.04(a), or

(C)  if the Participant's AMTX Employee Before-Tax Savings Account exceeds $5,000, to the extent such assets are attributable to the Participant's AMTX Employee Before-Tax Savings Account, in installment payments of at least $100 over any period certain up to ten years or, if less, the Participant's life expectancy of, if the Participant has a designated beneficiary, the joint life expectancies of the Participant and his designated beneficiary.

Where payment is to be in the form of a lump sum, the number of units in the Separate Funds representing the Participant's interest in each of the Separate Funds (valued as of the valuation date determined pursuant to Section 6.12) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date immediately preceding payment) shall be canceled and debited from the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and/or Rollover Accounts, as the case may be. The whole number of shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Profit Sharing Company Stock and Employee Savings Accounts may be distributed to him where the balance of his interest is to be paid in a lump sum. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. Where the value of his interest is to be distributed in periodic payments, any such whole shares of Stock represented by units in the Xerox Stock Fund may, in the discretion and at the direction of the JAB, be either distributed to him or sold by the Trustee and the proceeds credited to any other Separate Fund, in which case the units credited to the Participant's Profit Sharing, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts representing the investment in the Xerox Stock Fund shall be canceled and the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts shall be credited with a number of units equal in value to the amount transferred to another Separate Fund. Upon the exhaustion of the value of the units credited to a Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts, no further benefits shall be due or payable to or on behalf of such Participant.

With respect to cases where a portion of the value of a Participant's Account is to be used to provide periodic payments under this subsection, the JAB shall establish uniform rules of general applicability regarding from which Accounts and from which Separate Funds, if any, the amount used to provide a lump sum distribution or periodic payment will be withdrawn.

33

(c)   In the case of a termination of employment of any married Participant who has elected to receive an annuity, distribution in the form of an annuity shall automatically be made in the form of the Contingent Annuitant Option with a fifty percent joint and survivor annuity upon the death of the Participant payable for the life of the Participant's spouse unless the Participant elects otherwise during the ninety-day period preceding the annuity commencement date. The Participant's spouse must consent in writing to such election and the consent must be witnessed by a Plan representative or notary public. An election to waive such Contingent Annuitant Option may be revoked at any time prior to the annuity commencement date. The Plan Administrator shall make available to each married Participant who elects an annuity, within a reasonable time before the annuity commencement date, a written explanation giving a general description of the terms and conditions and relative financial effect of such Contingent Annuitant Option, the Participant's right to waive the Contingent Annuitant Option or to revoke such a waiver and the effect of a waiver or revocation thereof and the rights of the Participant's spouse.

(d)   At the election of a Participant or his spouse or former spouse who is entitled to an eligible rollover distribution, under Article Seven, Eight or Ten, payment of all (or a specified part thereof) shall be made by direct transfer to the trustee or other custodian of an eligible retirement plan, subject to the following rules:

(1)   This subsection shall not apply to an eligible rollover distribution which the Plan Administrator determines to come within any de minimus exception for direct transfers allowed under Section 401(a)(31) of the Code.

(2)   To invoke the direct transfer option:

(A)   the Participant or his spouse or former spouse must specify, in such form and at such time as the Plan Administrator may prescribe, the eligible retirement plan to which the distribution is to be paid;

(B)   the Participant or his spouse or former spouse must provide to the Plan Administrator in a timely manner adequate information regarding the designated eligible retirement plan;

The Plan Administrator may place reasonable reliance on such information concerning a designated eligible retirement plan as is provided by the Participant or his spouse or former spouse and is not required to verify such information. Notwithstanding the foregoing, an alternate payee under a qualified domestic relations order who is not the spouse or former spouse of a Participant may not elect a direct transfer and a spouse or former spouse who is not an alternate payee under a qualified domestic relations order may elect a direct transfer only to an eligible retirement plan which is an individual retirement account.

(3)   The Plan Administrator shall, within a reasonable time before a distribution or withdrawal from the Plan, provide to the recipient a written explanation of:

(A)   the provisions under which the recipient may have the distribution transferred directly to another eligible retirement plan;

(B)   the provision which requires the withholding of tax on eligible rollover distributions which are not transferred directly to another eligible retirement plan;

(C)   the provisions under which an eligible rollover distribution will not be subject to tax if transferred to an eligible retirement plan within sixty days after receipt;

(D)   the provisions concerning taxation of lump sum distribution.

If a distribution is one to which Section 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than thirty days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

Confidential

(1)  the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option). and

(2)  the Participant, after receiving the notice, affirmatively elects a distribution.

(3)  For purposes of this subsection, the following terms shall have the meanings specified below:

(A)  "eligible retirement plan" means a plan or arrangement described in Section 401(a)(31)(D) of the Code: and

(B)  "eligible rollover distribution" means a distribution that meets the requirements of Section 401(a)(31)(C) of the Code.

(4)  No direct transfer is available under this Section with respect to the portion of any distribution attributable to an unpaid loan made pursuant to Section 6.14.

(e)  As of January 1, 1998, Retirees may elect to receive from their Accounts fixed installments paid on a monthly or quarterly basis.  Retirees shall be permitted to change such elections.

Section 7.05.  Deferral of Receipt of Benefits.  Subject to Section 7.04 of the Plan, any Participant may leave his Account balances in the Plan and commence receiving his benefits from the Plan at a time later than the time he would otherwise have begun to receive his benefits hereunder.

## ARTICLE EIGHT

## DISABILITY RETIREMENT, EARLY RETIREMENT, HARDSHIP AND OTHER WITHDRAWALS

Section 8.01.  Disability Retirement.  A Participant shall be eligible for retirement at any time prior to his normal retirement date if he has been examined by a physician or physicians designated by the JAB and found to be permanently and totally disabled.  The determination of the physician or physicians designated by the JAB to examine the Participant shall be deemed to be conclusive and shall be final and binding upon all parties.

Section 8.02.  Definition of Permanent and Total Disability.  A permanent and total disability by bodily injury or disease so as to be permanently prevented thereby from engaging in any occupation or employment for remuneration or profit, provided such disability

(a)  was not contracted, suffered or incurred while the Participant was engaged in, or did not result from his having engaged in, a criminal enterprise, or

(b)  did not result from his habitual drunkenness or addiction to narcotics, or

(c)  did not result from a self-inflicted injury, or

(d)  did not result from service in the Armed Forces which prevents a return to employment for which the Participant receives a military pension.

Section 8.03.  Early Retirement.  A Participant may retire as of the first day of any month if on such date he has attained age fifty-five and completed at least ten years of continuous service, as defined in Section 3.03.  Retirement under this Section shall be referred to as "Early Retirement".

Section 8.04.  Benefits Upon Disability Retirement or Early Retirement.  Upon retirement for disability under Section 8.01 or upon early retirement under Section 8.03, a Participant shall be entitled to such benefits as the amounts credited to his Profit Sharing Savings, Profit Sharing Company Stock,

35

Confidential                                                                                          XC00031662

Company-Matched Savings, Employee Savings and Rollover Accounts will provide. In the case of early retirement, such amount shall be distributed to the Participant pursuant to the provisions of Section 7.02 as if he had attained his Normal Retirement Date and retired from the active service of the Employer. However, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings Accounts and Rollover Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. In the case a Participant elects to retire on account of disability pursuant to Section 8.01 hereof, benefit payments may be commenced in accordance with Section 7.02 as of the time of retirement, or, at the election of the Participant, may be deferred, but not later than sixty days after the close of the calendar year in which the Participant's normal retirement date occurs.

Section 8.05. _Form, Time, and Manner of Payments of Benefits_. The form, time and manner of payment of the benefits upon disability retirement or early retirement shall be determined in accordance with the provisions of Sections 7.02 and 7.03.

Section 8.06. _Hardship Withdrawals from Profit Sharing Savings Account, Employee Before-Tax Savings Account, Rollover Account, Profit Sharing Company Stock Account, and Employee After-Tax Savings Account_.

(a)  Upon the application of any Participant, the JAB, in accordance with a uniform nondiscriminatory policy, may in its discretion, permit such Participant to withdraw all or a portion of the contributions then credited to his Profit Sharing Savings Account and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon), the contributions credited to his Employee Before-Tax Savings Account and earnings thereon credited on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon), the amounts credited to his Rollover Account, Profit Sharing Company Stock Account with respect to the value of units credited to such Account for a period of not less than two years, and the amounts credited to his Employee After-Tax Savings Account in an amount not to exceed the amounts needed for the purposes of:

(i)  Medical expenses arising from the sickness or disability of the Participant or his spouse or dependents previously incurred which are not covered by insurance or medical expenses arising from the sickness or disability of the Participant or his spouse or dependents which are necessary for these persons to obtain medical care not covered by insurance; or

(ii)  The purchase of real property which is to serve as the principal residence of the Participant (excluding mortgage payments); or

(iii)  The payment of tuition, related educational fees and room and board for the next twelve months of post-secondary education for the Participant, his spouse or dependents; or

(iv)  Prevention of eviction from, or mortgage foreclosure on, the Participant's principal residence.

Any such amount to be withdrawn may, at the election of the Participant, include any amounts necessary to pay any federal and state income taxes or penalties reasonably anticipated to result from the distribution.

(b)  A Participant making application under this Section 8.06 shall have the burden of presenting to the JAB proof of such need, and the JAB shall not permit withdrawal under this Section without first

Confidential

XC00031663

receiving such proof. In no event shall the total amount withdrawn under this Section 8.06 exceed the value at the time of such withdrawal of the units credited with respect to:

      (i)   contributions credited to the Participant's Profit Sharing Savings Account, and the earnings credited thereon on or prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon);

      (ii)   contributions credited to the Participant's Before-Tax Savings Account, and the earnings credited thereon prior to December 31, 1988 (unless such Participant has attained age fifty-nine and one-half, in which case such Participant may withdraw all earnings credited thereon);

      (iii)   amounts credited to the Participant's Rollover Account;

      (iv)   the amounts credited to the Participant's Profit Sharing Company Stock Account; and

      (v)   amounts credited to the Participant's After-Tax Savings Account.

No withdrawals pursuant to this Section 8.06 shall be authorized so long as the Participant may take a loan pursuant to Section 6.14. In no event shall a withdrawal pursuant to this Section 8.06 be permitted to the extent that other funds are available to the Participant from other sources, including, but not limited to, commercial or other loans, reimbursement from insurance, liquidation of the Participant's assets, discretionary withdrawals under Section 8.07 hereof, or the cessation of payroll deductions for contributions to the Participant's Employee Savings Accounts.

If a Participant's application for a hardship withdrawal is approved, a number of units equal in value to the amount approved for withdrawal payable from the Separate Funds (valued as of the valuation date determined pursuant to Section 6.13) shall be canceled and debited, in the following order: from the Participant's (i) Employee After-Tax Savings Account, (ii) Rollover Account, (iii) Profit Sharing Company Stock Account, (iv) Profit Sharing Savings Account, (v) AMTX Employee Before-Tax Savings Account, and (vi) Employee Before-Tax Savings Account, as the case may be. The JAB shall then instruct the Trustee to make payment of the amount of the hardship withdrawal to the Participant. For the purposes hereof, applications which are received by the JAB on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

The JAB shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against.

    Section 8.07. Discretionary Withdrawals from Rollover Account, Employee After-Tax Savings Account and Profit Sharing Company Stock Account. Any Participant may, upon application to the Plan Administrator on forms provided by the JAB for such purpose request that all or a portion of the value credited to his Rollover Account first, then his Employee After-Tax Savings Account, and finally his Profit Sharing Company Stock Account with respect to the value of units credited to such Account for a period of not less than two years be withdrawn from such Accounts and paid to him in cash as of the valuation date immediately preceding or coincident with the date of filing such request with the JAB.

If a Participant requests a withdrawal under this Section, a number of units in the Separate Funds equal in value to the amount requested for withdrawal (valued as of the valuation date determined pursuant to Section 6.12) shall be canceled and debited from the Participant's Rollover Account, Employee After-Tax Savings Account and Profit Sharing Company Stock Account. The Plan Administrator shall then instruct the Trustees to make payment of the amount requested to be withdrawn. For the purposes hereof, requests which are received by the Plan Administrator on a Saturday, Sunday or holiday shall be deemed received on the next business day following such Saturday, Sunday or holiday.

Confidential

XC00031664

The JAB shall adopt uniform rules of general applicability regarding the maximum amounts, timing and frequency of withdrawals permitted under this Section and shall also adopt rules regarding which Separate Fund or Funds any withdrawals shall be charged against.

ARTICLE NINE

TERMINATION OF EMPLOYMENT BY RESIGNATION OR DISCHARGE

Section 9.01.  Determination of Nonforfeitable Interest.

(a)  Upon his resignation or discharge prior to the attainment of his normal retirement date and before qualifying for disability retirement or early retirement, a Participant shall have a nonforfeitable interest in all amounts represented by the credit balance in his Employee Savings Accounts, Company-Matched Savings Account, Profit Sharing Savings Account, Profit Sharing Company Stock Account and Rollover Account.

(b)  A Participant shall be credited with a year of service for each full year of continuous service up to January 1, 1976 and with a year of service for each Computation Period ending after December 31, 1975 during which he completes at least one thousand Hours of Service, as defined in Section 1.15, with the Employer or an Affiliated Corporation as defined in Section 1.03.

Section 9.02.  Benefits on Termination of Employment.

Prior to Early Retirement Age, the normal form of distribution shall be a single lump sum payment. Upon his termination of employment by resignation or discharge, the JAB shall direct the Trustee to segregate the value of his nonforfeitable interest and distribute such value to him, all in accordance with the provisions of Section 7.02 as if he had attained his normal retirement date and had retired from the active service of the Employer, provided, however, that where such distribution is in the form of an annuity or a single lump sum, the Participant's interest in the Separate Funds shall be valued as of the valuation date determined pursuant to Section 6.12.  Notwithstanding the foregoing, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto.  Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution.

If a distribution is one to which Section 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than thirty days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(1)  the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2)  the Participant, after receiving the notice, affirmatively elects a distribution.

Section 9.03.  Change of Employment Status.  If after becoming a Participant hereunder, the employment status of an employee is changed so that he is no longer a member of a bargaining unit represented by the Union although remaining employed by the Employer on some other basis, he shall continue as a Participant hereunder but he shall not be entitled to a share of any subsequent annual contributions by the Employer except to the extent of compensation paid to him prior to such change in employment status, nor shall he be entitled to make any contributions to his Employee Savings Account after such change in employment status.

38

XC00031665

If upon termination of employment of such a Participant, whether because of retirement, death, resignation or discharge, he is entitled to benefits both from this Plan and from some other retirement plan or plans maintained by the Employer, the JAB may provide for the transfer of the funds held for such Participant hereunder to the trustee or trustees of such other plan or plans so that the total benefits to which such Participant is entitled may be paid in a uniform manner from a single source. However, such a transfer of funds shall not operate to reduce the aggregate amount of benefits otherwise payable to such Participant under the several retirement plans involved.

Section 9.04. Layoff. Notwithstanding any other provision of this Plan, a Participant who is placed on layoff status by the Employer shall not be considered to have terminated his employment by reason of discharge or resignation for purposes of this Article until the second anniversary of the date he was first placed on layoff status, unless the Participant elects to sooner terminate his employment.

ARTICLE TEN

DEATH BENEFITS

Section 10.01. Designation of Beneficiary.

(a)   Each unmarried Participant, except to the extent otherwise provided by a qualified domestic relations order, shall designate the beneficiaries entitled to receive the benefits provided under this Plan on his death, and, in the absence of an otherwise effective designation, death benefits shall be paid to a Participant's estate. An unmarried Participant, except to the extent provided in a qualified domestic relations order, may change his designation of beneficiary from time to time.

The spouse of each married Participant shall be the beneficiary entitled to receive the benefits provided under the Plan unless such spouse consents in writing to the designation of another beneficiary named by the Participant on such form or in such manner as may be prescribed by the Plan Administrator. Such consent shall be irrevocable and shall apply only with respect to the beneficiary or beneficiaries with respect to whom the consent was given. A married Participant may change his designation of beneficiary from time to time only with the consent in writing of the Participant's spouse.

(b)   Spousal consent to the designation of a nonspouse beneficiary is required unless the Plan Administrator is satisfied that the required consent cannot be obtained because the spouse cannot be located, the Participant is legally separated, the Participant has been abandoned (within the meaning of applicable law) and the Participant has a court order to that effect, or because of such other circumstances as the Secretary of the Treasury may prescribe by regulations.

(c)   If the Plan Administrator receives a qualified domestic relations order with respect to a Participant, the provisions of this subsection shall be subject to the terms of such order.

Section 10.02. Death Before Retirement. Upon the death of a Participant before retirement, the JAB shall direct the Trustee to distribute to his designated beneficiary or beneficiaries the then value of all units credited to his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts (valued as of the valuation date determined pursuant to Section 6.12). A Participant's surviving spouse may direct that payments commence within a reasonable period of time after the Participant's death. If the value of all units credited to the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts is more than $5,000 or if distribution to the surviving spouse commenced, then the JAB may not make a lump sum distribution to the Participant's spouse unless such spouse consents thereto in writing under procedures identical to those described in Section 10.01. Such consent shall only be valid if, within a reasonable time before the commencement of payment of benefits, the Participant has been provided with a general description of the available forms of distribution and the right to defer distribution. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date determined pursuant to Section 6.12) shall be canceled and debited from the Participant's Profit Sharing Savings, Profit

39

XC00031666

Sharing Company Stock, Company-Matched Savings, Employee Savings and/or Rollover Accounts, as the case may be.

In addition to the foregoing benefits, there shall be payable to the beneficiary or beneficiaries designated in the life insurance contracts on his life, if any, the benefits provided by the terms of such contracts. Such life insurance benefits shall be paid in accordance with any settlement option available under the life insurance contract.

Section 10.03. Death After Retirement. Subject to Section 7.02, upon the death of a Participant, after retirement or after termination of employment, the Plan Administrator shall direct the Trustee to pay to his designated beneficiary or beneficiaries the value of all units (valued as of the valuation date determined pursuant to Section 6.12) credited to the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Rollover and Employee Savings Accounts, as the case may be. If, however, the Participant dies after installment payments have become payable in accordance with Section 7.03(b)(2), installment payments with respect to the Participant's AMTX Employee Before-Tax Savings Account shall continue to his designated beneficiary or beneficiaries until the value of the units credited to the Participant's AMTX Employee Before-Tax Savings Account has been exhausted.

## ARTICLE ELEVEN

## AMENDMENT OF THE PLAN AND TRUST

Section 11.01. Amendment of the Plan and Trust. The Union and the Employer reserve the right jointly to amend or modify the Plan, the Trust, or both. Each party desiring to negotiate any modifications of, or amendments to, this Agreement shall notify the other party in writing at least sixty days before the expiration of the existing collective bargaining agreement between the parties.

The parties hereto further agree to alter any provision of the Plan, Trust, or other, or any aspect of its operation at any time to the extent required by the Internal Revenue Service for the purpose of meeting the conditions of the Code for qualification of the Plan and Trust under Sections 401 and 501 and for tax deduction under Section 404 thereof.

Section 11.02. Amendment by the Employer. In the event that the Union ceases to be the collective bargaining agent for the employees of the Employer, the Employer may amend or modify the Plan, the Trust, or both.

Section 11.03. Limitation on Right To Amend. Notwithstanding any other provisions of this Plan or Trust:

(a) No amendment or modification shall vest in the Employer or Union any rights, title or interest in or to any of the securities or property held hereunder, nor shall any amendment or modification retroactively affect the provisions of Section 12.02 as to distribution of the assets of the Trust on termination thereof;

(b) Any amendment or modification which increases the duties or affects the liabilities of the Trustee shall be made only upon the written consent of the Trustee.

Section 11.04. Notice to Trustee and JAB. Any amendment or modification shall be on written notice to the Trustee and the JAB.

## ARTICLE TWELVE

## TERMINATION OF PLAN AND TRUST

Section 12.01. Termination. While it is the intention of the parties to this Agreement to maintain the Plan permanently, the Union and the Employer reserve the right, subject to the provisions of Section

40

12.02, jointly to suspend or terminate the Plan, the Trust, or both, in whole or in part. However, in the event that the Union ceases to be the collective bargaining agent for the employees of the Employer, the Employer may, subject to the provisions of Section 12.02, suspend or terminate the Plan, the Trust, or both, in whole or in part.

Notwithstanding the foregoing, this Plan shall not be merged, consolidated with, or transfer its assets or liabilities to, any other plan unless each Participant in the Plan would receive (if the Plan then terminated) a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan then terminated).

Section 12.02. Distribution of Assets on Termination. In the event of termination or partial termination of this Plan and Trust for any reason, the Trustee shall distribute the assets of the Trust as follows:

(a)  The Trustee shall pay over to each former Participant for whom it is holding funds in a separate account, the balance of such funds.

(b)  The Trustee shall pay over to each affected Participant who is not retired, the value of the credit balances in his Accounts with the unit value redetermined under Article Six as if the date of distribution were a valuation date.

Upon distribution of the assets of the Trust in accordance with this Section, the Trustee, the Employer and the JAB shall be fully discharged from all liability and obligation hereunder and no Participant or beneficiary of a Participant shall have any further right or claim hereunder. In no event shall any of the assets of the Trust revert to the Employer.

Section 12.03. Discontinuance of Plan Without Terminating Trust. If the Employer discontinues the Plan without terminating the Trust or completely discontinues the contributions required under Article Four, the value of such vested units credited to Participants' Accounts shall be paid to a Participant or his beneficiary upon his death, retirement, termination of employment or the termination of the Trust in accordance with the provisions of the Plan applicable upon the occurrence of any such contingency.

## ARTICLE THIRTEEN

## MISCELLANEOUS PROVISIONS

Section 13.01. Federal and New York Law Govern  This Plan shall be construed according to federal and New York laws and all provisions hereof shall be administered according to such laws, and all persons accepting or claiming benefits under this Plan shall be deemed to consent to the provisions of such laws.

Section 13.02. Headings for Convenience Only. The headings and subheadings of this Plan are inserted for convenience and reference only and are not to be used in construing this Plan or any provision thereof.

Section 13.03. Rights of All Interested Parties Determined by the Terms of This Plan. The Plan and Trust thereunder are created as the result of negotiations between the Employer and the Union. The Trust shall be the sole source of benefits and in no event shall the Employer or the Union be liable or responsible therefor. This Plan and each and every provision thereof shall be binding upon the parties hereto and all Participants under the Plan, and upon their respective heirs, executors, administrators, successors and assigns, and upon all persons having or claiming to have any interest of any kind or nature in or under this Plan or the Trust hereunder.

Section 13.04. Spendthrift Clause. Except as may otherwise be required pursuant to the terms of a qualified domestic relations order, to the extent permitted by law, none of the benefits, payments or proceeds arising out of or by virtue of the Plan shall be subject to any claim of or any legal process by

41

Confidential                                        XC00031668

any creditor of a Participant, retired Participant, or of any beneficiary, and no Participant, retired Participant or beneficiary thereof, shall have any right to anticipate, alienate, encumber or assign any right or benefit arising out of or by virtue of the Plan.

For purposes of the Plan, a qualified domestic relations order means any judgment, order or decree (including approval of a property settlement agreement) which has been determined by the JAB, in accordance with the procedures established under the Plan, to constitute a qualified domestic relations order within the meaning of Section 414(p)(1) of the Code.

With respect to amounts from a Participant's former Retirement Account under the Plan separately accounted for an alternate payee pursuant to a qualified domestic relations order, which order was accepted by the Plan Administrator on or before December 31, 1989, the Company has established a "QDRO Account" for such alternate payee as of December 31, 1989 and which was retained in the Plan and invested in the "Guaranteed Fund". Effective April 1, 1991, the balance of the QDRO Account was divided and transferred to the Income Fund and the "Segregated Assets Fund".

Section 13.05.  Notice to Employees.  Notice of the existence and the provisions of the Plan and amendments thereto shall be communicated by the JAB to all persons who are or who become members of the bargaining unit represented by the Union.

Section 13.06.  No Employment Rights Created.  The creation and maintenance of this Plan shall not confer any right to continued employment on any Participant, and all employees shall remain subject to discharge to the same extent as if it had never been established.

Section 13.07.  Diversion from Employees Prohibited.  Neither the corpus nor the income of the Trust, nor any part thereof, shall be diverted for any purpose other than for the benefit of the Participants hereunder or their beneficiaries, except

(a)  in the case of a contribution made by the Employer by a mistake of fact, such contribution shall be returned to the Employer within one year after its payment; and

(b)  if the deduction of a contribution is disallowed by the Internal Revenue Service, to the extent of disallowance, the contribution shall be returned to the Employer within one year after the disallowance.

Section 13.08.  Right to Judicial Accounting.  Nothing contained in this Plan shall be construed as depriving the Trustee of the right to have judicial settlement of its accounts.  Upon any proceeding by the Trustee for judicial settlement of its accounts or for instructions, the only necessary parties thereto in addition to the Trustee shall be the Employer and the JAB as provided by this Plan and Agreement of Trust.

Section 13.09.  Payment in Special Cases.  In the event that it is determined to the satisfaction of the JAB that a Participant or beneficiary of a Participant is unable to care for his affairs because of mental or physical incapacities, any payment due to such person may be applied in the discretion of the JAB to the maintenance and support of such person in the manner determined by the JAB unless prior to the making of any such payment, claim shall have been made therefor by a duly appointed guardian, committee or other legal representative.

Section 13.10.  Unit Accounting May Be Ignored.  The expression in terms of units of the total value of the assets held in the Separate Funds and the interest of each Participant in such Separate Funds has been prescribed in Article Six and is referred to elsewhere in the Plan solely for the sake of precision and clarity.  Recognizing that individual account balances and other records in connection with the Plan may or will be maintained through the use of modern computer facilities, the Plan Administrator is expressly empowered to disregard the unit method of accounting so long as the results achieved by the accounting and reporting methods selected by the Plan Administrator are consistent with the intents and purposes of the provisions of the Plan. Also recognizing that amounts invested in the Income Fund may be deposited with a legal reserve life insurance company under a group annuity contract providing a guaranty of principal and interest, the Plan Administrator is also expressly empowered to disregard the unit method

42

of accounting in such cases, since accounting and reporting methods with respect to the Income Fund can be consistent with the intents and purposes of this Plan without unit accounting.

Section 13.11. Delay in Payment. Neither the Employer, the JAB, any other persons designated by the JAB to carry out its responsibilities under the Plan, nor the Trustee shall have any liability by reason of any delay in payment of a Participant's benefits under the Plan due to reasons beyond their control.

Section 13.12. Failure To Locate Payee. The entire interest or any unpaid balance thereof of any Participant or beneficiary shall be used to pay administrative expenses of the Plan in the event that the JAB, after making reasonable efforts to do so, is unable to locate the whereabouts of the payee within a period of three years following the due date of the first payment of benefits which cannot be made because of such inability to locate the payee. If thereafter the Participant or beneficiary makes claim for such interest or unpaid balance, the amount so forfeited shall be reinstated and paid to the Participant or beneficiary.

If the amount in the Forfeitures Account is insufficient to reinstate the entire amount of such interest or unpaid balance, the Employer shall contribute to the Plan the additional amount necessary to provide reinstatement of the entire amount of such interest or unpaid balance.

Section 13.13. Transfer of Funds to Other Plans. There may be paid over from the Plan to other plans, which are qualified under Section 401 of the Internal Revenue Code of 1954, amounts held for the accounts of former Employees who transferred employment from the Employer to Loral Corporation ("Loral") in connection with the transfer of certain assets of the Electro Optical Systems Division of the Employer to Loral, in accordance with the Agreement dated April 25, 1983 between the Employer and Loral.

Section 13.14. Gender. Wherever any words are used herein in the masculine or feminine gender, they shall be construed as though they were also used in the other gender in all cases where they would so apply, and wherever any words are used herein in the singular form, they shall be construed as though they were also used in the plural form in all cases where they would so apply.

## ARTICLE FOURTEEN

## TOP HEAVY PROVISIONS

Section 14.1. Application of Top Heavy Provisions.

(a)   Except as provided in subsection (b), if, as of a Determination Date, the sum of the value of all units credited to the Profit Sharing Savings, Profit Sharing Company Stock and Employee Savings Accounts (the "Accounts") of Key Employees and the beneficiaries of deceased Key Employees exceeds sixty percent of the Accounts of all Participants and beneficiaries other than former Key Employees, the Plan shall be deemed to be top heavy and the provisions of this Article Fourteen shall become applicable.

(b)   If, as of a Determination Date, the Plan is part of an Aggregation Group which is top heavy, the provisions of this Article Fourteen shall become applicable. Top-heaviness for the purpose of this subsection shall be determined with respect to the Aggregation Group in the same manner as described in subsection (a). If the Plan is top heavy under subsection (a), but the Aggregation Group is not top heavy, this Article shall not be applicable.

(c)   For purposes of determining whether the Plan is top heavy, the value of a Participant's Accounts includes the amount of any distribution made from the Plan to such Participant, if such distribution was made during the Plan year or the preceding four Plan years. If, however, any individual has not performed any services for the Employer at any time during the five-year period ending on the Determi-

43

XC00031670


nation Date, any amounts in such individual's Accounts shall not be taken into account in determining the top-heavy status of the Plan.

Section 14.2.  Provisions If Plan Becomes Top Heavy.  If, for any Plan year, the Plan becomes top heavy, then the following rules shall apply with respect to such Plan year:

(a)  Each Participant who is a non-Key Employee shall receive an Employer contribution, whether or not such non-Key Employee has elected Before-Tax Savings, equal to three percent of compensation or such lesser percentage of compensation contributed on behalf of the Key Employee who received the highest contribution.

(b)  the provisions of Section 416(h) of the Code shall apply with respect to the benefit limitations of Section 415(e) of the Code; and

Section 14.3.  Definitions.

(a)  Aggregation Group means this Plan and all other plans, whether or not terminated, maintained during the five year period ending on the Determination Date by an Employer and its affiliates which have covered during such period a Key Employee or which enable any such plan to meet the requirements of Code Sections 401(a)(4) or 410.  In addition, at the election of the JAB, the aggregation group may be expanded to include any other qualified plan maintained by the Employer or an affiliate if such expanded aggregation group meets the requirements of Code Sections 401(a)(4) and 410 of the Code.

(b)  Determination Date means the last day of the Plan year immediately preceding the Plan year for which top heaviness is to be determined.

(c)  Key Employee shall have the same meaning as provided in Section 416(i)(1) of the Code.

IN WITNESS WHEREOF, the Company and the Union have caused this Restated Plan to be executed by their duly authorized officers as of this 31st day of December, 1998.

XEROX CORPORATION

By _____

                              Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By _____ Gary Bonadonna_____

44

Confidential

XC00031671

# AMENDMENT NO. 1
## TO
## 1998 RESTATEMENT
## THE PROFIT SHARING PLAN OF XEROX CORPORATION
## AND
## THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
## INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C." (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  Effective January 1, 1998, Section 1.4 is amended to read in its entirety as follows:

    "Section 1.04. Balanced Fund-More Stocks (formerly referred to as the "Balanced Fund"). Balanced Fund-More Stocks shall have the meaning in Section 6.02 hereof."

2.  Effective January 1, 1998, Sections 1.17, 1.21 and 1.22 are deleted in their entirety and remaining Sections 1.18 through 1.23 are renumbered Sections 1.17 through 1.20.

3.  Effective January 1, 1998, Section 3.02(b) is deleted in its entirety and Section 3.02(c) is renumbered Section 3.02(b).

4.  Effective January 1, 1998, Section 3.05 is amended to read in its entirety as follows:

    "Section 3.05. Contributions With Respect to Military Service. Effective December 12, 1994, notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code."

5.  Effective January 1, 1996, Section 4.11(a)(1) is amended to read in its entirety as follows:

    "(1) The annual additions (determined in accordance with Sections 415(c)(2), 415(l) and 419A(d)(2) of the Code and regulations thereunder) allocated on the Participant's behalf under any other plan maintained by the Employer or an affiliated corporation as defined in Section 1.06 (as modified by Section 415(h) of the Code) for such calendar year;"

6.  Effective January 1, 1995, Section 4.11(d)(1) is amended to read in its entirety as follows:

    "(d) (1) The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000. If the Participant also participates in one or more defined benefit plans of the Employer (whether or not terminated) the maximum annual addition shall be re-

XC00031621

duced so that for such calendar year the sum of the Defined Benefit Plan Fraction (as defined below) for such calendar year and the Defined Contribution Plan Fraction (as defined below) for such calendar year shall not exceed 1.0."

7.  Effective January 1, 1997, Section 5.05(b)(4) is deleted in its entirety, and the remainder of subsection (b) is amended to read in its entirety as follows:

"(4) "Highly Compensated Employee" shall mean, with respect to any Plan Year, an employee who performs services for the Employer or an Affiliated Corporation during the Plan Year and who:

(A)  during the current Plan Year or the twelve-month period immediately preceding such Plan Year owns (or is considered to own within the meaning of Section 318 of the Code, as modified by Section 416(i)(1)(B)(iii) of the Code), more than five percent of the outstanding stock of the Employer or any other Affiliated Corporation or stock possessing more than five percent of the total combined voting power of all stock of any such corporation, or, if any trade or business under common control (within the meaning of Section 414(c) of the Code) with the Employer or an Affiliated Corporation is an organization other than a corporation, more than five percent of the capital or profits interest in such organization; or

(B)  during the preceding Plan Year:

(i)  earned compensation (within the meaning of Section 414(s) of the Code) from the Employer and affiliated entities described in (A) which was in excess of $80,000 (as adjusted in accordance with Section 414(q)(1) and Section 415(d) of the Code) during the preceding Plan Year; and

(ii)  if the Employer so elects, was in the top-20% (ranked by compensation as defined in (i) above) of employees who performed services for the Employer and such affiliated entities during such preceding Plan Year, excluding those who have not completed six months of service, who normally work less than seventeen and one-half Hours of Service per week, who normally work during not more than six months during any year, who have not attained age twenty-one, and/or who are nonresident aliens who receive no earned income (within the meaning of Section 911(d)(2) of the Code) from the Employer and such affiliated entities which constitutes income from sources within the United States.

The foregoing definition shall be interpreted in accordance with Section 414(q) of the Code and the regulations thereunder.

(5)  "Nonhighly Compensated Employee", with respect to a Plan Year, means an employee of an Employer who is not a Highly Compensated Employee."

8.  Effective January 1, 1997, Section 5.05(c)(2) is deleted in its entirety and Section 5.05(c)(3) is renumbered Section 5.05(c)(2).

9.  Effective January 1, 1997, Section 5.06(d)(3) is deleted in its entirety, and Section 5.06(d)(4) is renumbered Section 5.06(d)(3).

10.  Effective January 1, 1997, Section 5.06(e)(1) is amended to read in its entirety as follows:

"(1)  Excess aggregate contributions and the income allocable thereto, calculated in accordance with any reasonable method consistent with regulations under Code Section 402(g), shall be forfeited, if otherwise forfeitable under the terms of this Plan, or, if not forfeitable, distributed, to the extent practicable, within two and one-half months after the end of the plan Year (and in no event later than the last day of the following Plan Year) to Participants on whose behalf excess contributions were allocated for the Plan Year. Excess aggregate contributions on behalf of each Highly Compensated Employee shall be determined on the basis of a leveling method which calculates the

2

Confidential

extent to which the Contribution Percentage of the Highly Compensated Employee having the highest such percentage would have to be reduced to satisfy the Average Contribution Percentage limitation or to cause such percentage to equal the Contribution Percentage of the Highly Compensated Employee within the next highest percentage, such calculation to be repeated in successive steps and descending order until the Average Contribution Percentage limitation is satisfied.  The amount of excess aggregate contributions on behalf of each Highly Compensated Employee is the product of such employee's compensation and the applicable hypothetical reduction percentage determined above.  The amount of the total excess which is distributable to a Highly Compensated Employee is determined on the basis of a leveling method whereby the Company-Matched Savings Accounts (and if necessary the Employee After-Tax Savings Accounts) of the Highly Compensated Employee who had the highest dollar amount taken into account in determining the Contribution Percentage for the Plan Year in which the excess arose are reduced until equal to the dollar amount applicable to the Highly Compensated Employee who had the next highest amount taken into account, in successive steps and descending order until the excess is eliminated."

10. Effective January 1, 1996, a new subsection (5) is added to Section 5.06(e) to read in its entirety as follows:

"(5)  If the multiple use limitation set forth in Section 5.06(b) is exceeded for a Plan Year, such excess shall be eliminated by reducing the Contribution Percentage (rather than the Actual Deferral Percentage) for such Plan Year of Eligible Participants who are Highly Compensated Employees as provided in paragraphs (1) through (4) above."

11. Effective October 1, 1998, Section 6.02 is amended to read in its entirety as follows:

"Section 6.02. Allocation to Profit Sharing Savings Accounts and Profit Sharing Company Stock Accounts.

(a)  Each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four may elect as follows with respect to the funds allocable to his Profit Sharing Savings Account from such contribution to be used to provide benefits in one or more of the following ways:

(1)  transferred in cash to the Trust, subject to any applicable limitation imposed by Sections 4.03, 4.09, 5.04 through 5.07, Article Fourteen or other provisions of this Plan, and after deduction of all legally required federal withholding taxes, and invested by the Trustee in specified percentages as permitted by the Employer under Section 6.03 in the

(A)  Tier I Broad Strategy Funds made up of funds more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time, and shall include the Balanced Fund--More Stocks, which generally shall be invested primarily in stocks and to a lesser extent bonds; each such fund to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors;

(B)  Tier II Focused Strategy Funds made up of funds more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time and shall include the Income Fund, which shall be invested primarily in fixed income instruments, such as short to intermediate-term, high-quality bonds; each such fund to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors, and the Xerox Stock Fund, which shall be invested by the Trustee in the Common Stock, par value $1 per share, of the Company, hereafter called "Xerox Stock" and may hold some cash for administrative purposes.

(C)  Tier III, the Marketplace Window, which shall offer a wide selection of no-load mutual funds listed and more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time.

Confidential

XC00031623

OR

(D)  Any other fund or investment vehicle as shall be established or determined from time to time by the Board of Directors.

(each of which funds within the Tier I, Tier II and Tier III Funds is referred to as a "Separate Fund" and which are collectively referred to as "Separate Funds").

(2)   distributed to him in cash after deduction of all legally required withholding taxes.

OR

(3)   until January 1, 1998, invested by the Employer, on behalf of such Participant, in Xerox Stock after all legally required withholding taxes have been deducted, and the stock so purchased distributed to the Participant. Any amount which is insufficient to purchase one full share of Xerox Stock shall be distributed to the Participant in cash. The Employer shall purchase stock for Participants electing the alternative form of benefits provided by this subsection as soon as practicable after the Employer contribution for such purchase for such year has been made available by it. The portion of such Employer contribution to be used to purchase Xerox Stock pursuant to this subsection shall be made available by the Employer on the March 15 following the close of the year to which such contribution is attributable, or if in any year such date falls on a Saturday, Sunday or other legal holiday, then on the next preceding day which is not a Saturday, Sunday or other legal holiday.

In purchasing Xerox Stock for Participants who have elected the alternative form of benefit provided by this subsection, the Employer may purchase in blocks of such size as it may determine and shall allocate the shares so purchased to individual Participants on the basis of the average cost of all shares purchased under this subsection with respect to a particular Employer contribution.

(b)  The amounts allocated to the Profit Sharing Company Stock Account of each Participant and each employee who becomes a Participant during a calendar year for which a contribution is made by the Employer pursuant to Article Four shall be automatically invested initially in units in the Xerox Stock Fund. The value of such units may not be transferred or made the subject of loans or discretionary withdrawals until the expiration of the two-year period specified in Sections 6.12, 6.15 and 8.06 of the Plan. The Plan Administrator may, in his or her discretion, determine how dividends on shares of Common Stock of the Company in the Xerox Stock Fund, to the extent such dividends relate to Profit Sharing Company Stock Accounts, shall be paid to Participants from time to time and at such times as the Plan Administrator shall determine."

12.  Effective January 1, 1998, the third paragraph of Section 6.03 is amended to read in its entirety as follows:

"Any Participant who does not make a new election by such date fixed by the JAB shall be deemed to have elected the same percentage allocation of the amount allocable to his Profit Sharing Savings Account as specified in the last previous election form duly filed by him. If no duly filed election is on record for such Participant, he shall be deemed to have elected that the amount allocable to his Profit Sharing Savings Account be invested by the Trustee in the Balanced Fund-More Stocks, provided that in the case of a temporary employee, he shall be deemed to have elected that the Employer contribution shall be distributed to him in cash in accordance with Section 6.02(a)(2)."

13.  Effective January 1, 1998, Section 6.11 is amended to read in its entirety as follows:

"Section 6.11. Transfers Among Separate Funds  Subject to the last sentence of this Section, the JAB may, in its sole discretion, adopt uniform rules of general application with respect to each Account with respect to the transfers of funds allocated to one of the Separate Funds credited to a

4

Participant's Profit Sharing Savings Account, his Profit Sharing Company Stock Account, his Employee Savings Account, his Company-Matched Savings Account or his Rollover Account to other Separate Funds. If a Participant transfers any amounts under this Section. a number of units equal in value to the amount withdrawn from any of the Separate Funds (valued as of the valuation date immediately preceding or coincident with such transfer) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings or Rollover Accounts, as the case may be, and the Trustee shall withdraw an amount equal in value to such units from such Fund and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings or Rollover Accounts, as the case may be. Such amount shall be credited by the Trustee to the Separate Fund or Funds to which such amounts are to be transferred, and the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Employee Savings, Company-Matched Savings or Rollover Accounts, as the case may be, shall be credited with a number of units in each such Separate Fund (valued as of the valuation date coincident with such transfer) equal in value to the amount transferred; provided, however, that a Participant who elects to transfer funds to the Tier III Marketplace Window shall be deemed to have elected transfer to the Hewitt Money Market Fund in the absence of an affirmative election of a Separate Fund or Funds until such time as an affirmative election shall be made by the Participant. The value of units credited to a Participant's Profit Sharing Company Stock Account may not be transferred prior to the end of the second anniversary of the initial crediting of such units to such Account."

14. Effective January 1, 1996, Section 7.04(c) is amended to read in its entirety as follows:

"(c) In the case of a termination of employment of any married Participant who has elected to receive an annuity, distribution in the form of an annuity shall automatically be made in the form of the Contingent Annuitant Option commencing immediately with a fifty percent joint and survivor annuity upon the death of the Participant payable for the life of the Participant's spouse unless the Participant elects otherwise, in accordance with the following rules, during the election period prescribed below.

(1) The Participant's spouse must consent in writing to such election. The consent must: (a) be witnessed by a Plan representative or notary public, (b) state specifically the non-spouse beneficiary (including a class of beneficiaries or contingent beneficiaries and/or the alternative optional form of benefit, neither of which may be modified (unless to reelect the automatic Contingent Annuitant Option) without further spousal consent (unless expressly permitted by the spouse), and (c) acknowledge the effect of the election.

(2) An election to waive such Contingent Annuitant Option may be revoked at any time and made and/or revoked any number of times prior to the annuity commencement date.

(3) The Plan Administrator shall make available to each married Participant who elects an annuity, within a reasonable time before the annuity commencement date, a written explanation giving a general description of the terms and conditions and relative financial effect of such Contingent Annuitant Option, the Participant's right to waive the Contingent Annuitant Option or to revoke such a waiver and the effect of a waiver or revocation thereof and the rights of the Participant's spouse.

(4) A Participant's waiver and spousal consent may be made or revoked not more than ninety days and not less than thirty days before the annuity starting date. The thirty-day requirement in the preceding sentence may be reduced in the case of a Participant who waives such requirement after having received the written explanation described in paragraph (3) above (including an explanation of the right to utilize at least thirty days' to consider the timing and form of benefits), but in no event shall the annuity starting date be sooner than eight days after receipt of such explanations."

15. Effective January 1, 1998, Subsection (e) of Section 7.04 is amended to read in its entirety as follows:

5

XC00031625

"(e) As of January 1, 1998, Retirees may elect to receive from their Accounts fixed install-ments paid on a monthly or quarterly basis. Retirees shall be permitted to change such elections. As of June 1, 1999, Retirees may elect to receive partial distributions from their accounts. For pur-poses of this Section 7.04, installment payments and partial distributions constitute periodic pay-ments."

16. Effective January 1, 1998, Section 9.01 is amended to read in its entirety as follows:

"Section 9.01. Determination of Nonforfeitable Interest. Upon his resignation or discharge prior to the attainment of his normal retirement date and before qualifying for disability retirement or early retirement, a Participant shall have a nonforfeitable interest in all amounts represented by the credit balance in his Employee Savings Accounts, Company-Matched Savings Account, Profit Sharing Savings Account, Profit Sharing Company Stock Account and Rollover Account."

17. Effective January 1, 1996, the first paragraph of Section 12.01 is amended to read in its entirety as follows:

"Section 12.01. Termination. While it is the intention of the parties to this Agreement to main-tain the Plan permanently, the Union and the Employer reserve the right, subject to the provisions of Section 12.02, jointly to suspend or terminate the Plan, the Trust, or both, in whole or in part. However, in the event that the Union ceases to be the collective bargaining agent for the employees of the Employer, the Employer may, subject to the provisions of Section 12.02, suspend or termi-nate the Plan, the Trust, or both, in whole or in part. Upon termination or partial termination of the Plan, the Accounts of all affected Participants shall be nonforfeitable."

18. Effective January 1, 1996, Article 14 is deleted in its entirety.

In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the 21st day of December, 1999.

XEROX CORPORATION

By: _____
Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

6

Confidential

# AMENDMENT NO. 2
## TO
## 1998 RESTATEMENT
## THE PROFIT SHARING PLAN OF XEROX CORPORATION
## AND
## THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
## INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment No. 1 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    Effective January 1, 2000, Section 4.11(d) shall be amended to read in its entirety as follows:

"(d)  The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof, or $30,000."

In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the  ɳᵗʰ day of August, 2001.

XEROX CORPORATION

By: _____
                Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

XC00031620

# AMENDMENT NO. 3
## TO
## 1998 RESTATEMENT
## THE PROFIT SHARING PLAN OF XEROX CORPORATION
## AND
## THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
## INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1 and 2 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    The opening paragraph of Section 4.05 before subsection (a) shall be amended to read in its entirety as follows:

"Section 4.05.  Definition of Compensation.  For all purposes of the Plan, unless otherwise specifically provided, the "compensation" of a Participant for any calendar year shall mean the total amount reported for the portion of such calendar year during which he is a Participant to the federal government for income tax withholding purposes plus (i) any contributions made to a Participant's Employee Before-Tax Savings Account with respect to such Participant for services rendered to the Employer, (ii) any compensation redirected by the Participant pursuant to the salary redirection plan maintained by the Employer pursuant to Section 125 of the Internal Revenue Code of 1954 (not including the amount described in subsection (g) hereof), and (iii) for Plan Years commencing on or after January 1, 2001, any elective amounts that are not included in the gross income of the Participant by reason of Section 132(f)(4), less any amount so reported which is attributable to"

2.    The last two paragraphs of Section 4.05 shall be amended to read as follows:

"For Plan Years commencing before 1994, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $200,000 for the Plan Year (adjusted for Plan Years after 1989 for changes in the cost of living as provided in Section 415(d) of the Code) for the purpose of calculating a contribution on behalf of a Participant.

For Plan Years commencing after 1993 but before 2002, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $150,000 for the Plan Year (adjusted as provided in Section 401(a)(17)(B) (as in effect before 2002) and Section 415(d) of the Code) for the purpose of calculating a contribution on behalf of a Participant.

For Plan Years commencing after 2001, in addition to any other applicable limitations which may be set forth herein and notwithstanding any other contrary provision hereof, compensation taken into account hereunder shall not exceed $200,000 for the Plan Year (adjusted as provided in Section 401(a)(17)(B) and Section 415(d) of the Code) for the purpose of calculating a contribution on behalf of a Participant."

3.    Section 4.11(d) shall be amended to read in its entirety as follows:

Confidential

"(d) The term "maximum annual addition" for each calendar year means the lesser of twenty-five percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof but including elective deferrals described in Sections 402(g)(3) or 414(v) of the Code and any amount that is contributed or deferred at the election of the Employee and which is not includible in the gross income of the Employee by reason of Section 125 of the Code or (for Plan Years commencing on or after January 1, 2001) by reason of Section 132(f)(4) of the Code, or $30,000."

4.    Section 5.05(b)(1) shall be amended to read in its entirety as follows:

"(1) "Actual Deferral Percentage" shall mean the ratio (expressed as a percentage), of the sum of Employee Before-Tax Savings and Profit Sharing Savings, on behalf of the Eligible Participant for the calendar year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code but including elective deferrals described in Sections 402(g)(3) or 414(v) of the Code and any amount that is contributed or deferred at the election of the Employee and which is not includible in the gross income of the Employee by reason of Section 125 of the Code or (for Plan Years commencing on or after January 1, 2001) by reason of Section 132(f)(4) of the Code) for the calendar year.    For this purpose, Matching Contributions which satisfy the requirements of Section 401(k)(2)(B) and (C) of the Code and/or qualified nonelective contributions (within the meaning of Section 401(m)(4)(C) of the Code) may be treated as Employee Before-Tax Savings and/or Profit Sharing Savings".

5.    Section 5.06(c)(2) shall be amended to read in its entirety as follows:

"(2) "Contribution Percentage" shall, at the discretion of the Plan Administrator, mean either the ratio (expressed as a percentage) of the sum of the Employee After-Tax Savings and Matching Company Contributions under the Plan on behalf of the Eligible Participant for the calendar year to the Eligible Participant's compensation (within the meaning of Section 414(s) of the Code but including elective deferrals described in Sections 402(g)(3) or 414(v) of the Code and any amount that is contributed or deferred at the election of the Employee and which is not includible in the gross income of the Employee by reason of Section 125 of the Code or (for Plan Years commencing on or after January 1, 2001) by reason of Section 132(f)(4) of the Code) for the calendar year, or the ratio (expressed as a percentage of the sum of the Employee Before-Tax Savings, Employee After-Tax Savings and Matching Company Contributions on behalf of the Eligible Participant for the calendar year to the Eligible Participant's compensation (as defined above) for the calendar year, or such other ratio permitted by the Code and selected by the Plan Administrator."

This Amendment is effective as of January 1, 2001. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the ___ day of October, 2001.

XEROX CORPORATION

By: _____
            Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

2

Confidential

XC00031619

**AMENDMENT NO. 4**
**TO**
**1998 RESTATEMENT**
**THE PROFIT SHARING PLAN OF XEROX CORPORATION**
**AND**
**THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,**
**INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.**

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2 and 3 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.  Section 3.05 shall be amended to add a new paragraph to read in its entirety as follows:

     "Loan repayments owed by participants in qualified military service will be administered pursuant to Section 6.14(l)."

2.  Section 4.11(d) shall be amended to read in its entirety as follows:

     "(d) The term "maximum annual addition" for each calendar year means the lesser of one hundred percent of the compensation of such Participant for such year determined in accordance with Treasury Regulation Section 1.415-2(d)(11)(i), excluding moving expenses to the extent provided in the third sentence thereof but including elective deferrals described in Sections 402(g)(3) or 414(v) of the Code and any amount that is contributed or deferred at the election of the Employee and which is not includible in the gross income of the Employee by reason of Section 125 of the Code or (for Plan Years commencing on or after January 1, 2001) by reason of Section 132(f)(4) of the Code, or $40,000."

3.  Section 4.13 shall be amended to read in its entirety as follows:

     "Section 4.13. Rollover Contributions. In addition to the Employer contributions provided for in this Article, the employee contributions made by Participants under Article Five, and the transfer of funds from other plans as provided in Section 4.10(a) herein, as of January 1, 1998, there may also be paid over to the Plan other amounts which have been held under plans which are qualified under Section 401(a) or 401(k) of the Code maintained by a previous employer of a Participant, or held under a Participant's Individual Retirement Account, or amounts described in Code Sections 403(a)(4), 403(b)(8)(A) or 457(e)(16)(A), providing such rollovers are made in the form of cash. Such rollovers shall be invested according to investment instructions specified by the Participant and may be split among the funds in one percent increments. All employees shall be permitted to make such rollover contributions to the Plan at any time whether such rollovers are made as direct rollovers from previous plans or as sixty-day rollovers made by a Participant. Qualified rollovers into the Plan must be from taxable distributions and may include installments paid over less than ten years and payments

XC00031613

to a Participant or spousal beneficiary under a Qualified Domestic Relations Order ("QDRO") or because of death. Rollovers from multiple sources into the Plan shall be permissible.

Payments that are not eligible for rollover into the Plan include (i) periodic payments made over a specific period of at least ten years or more; (ii) minimum distribution amounts; (iii) nontaxable distributions; (iv) distributions to non-spousal beneficiaries under a QDRO or because of death; and (v) any distribution from a qualified plan which was made upon hardship of the employee."

4.    The first sentence of Section 5.01 is amended to read in its entirety as follows:

"In lieu of receiving such compensation, each Participant may have contributed to the Trust for any Plan Year with respect to which he is a Participant under the Plan amounts which do not exceed a total of eighteen percent of his compensation for such year to each of the employee savings accounts referred to in Sections 5.01(a) and 5.01(b) below, for a combined maximum total of eighteen percent of his compensation for such year, also subject to a combined maximum allocation to the Account referred to in Section 5.01(b) below and the Profit Sharing Savings Account for a calendar year of $11,000 (increased for calendar years after 2002 by $1,000 each year up to $15,000 for 2006), or such higher amount as may be prescribed by indexing pursuant to Section 402(g) of the Code."

5.    Section 5.05(a)(2) shall be amended to read in its entirety as follows:

"(2) the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees for the calendar year multiplied by two, provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Nonhighly Compensated Employees by more than two percentage points."

6.    Section 5.06(b) shall be deleted in its entirety and subsections (c), (d) and (e) shall be renumbered (b), (c) and (d), respectively.

7.    Section 5.06(b)(2) shall be amended to delete the comma following "percentage)" in the second line.

8.    Renumbered Section 5.06(d)(5) shall be deleted in its entirety.

9.    Section 6.14 shall be amended as follows:

(a)    The first sentence of Section 6.14(c) shall be amended to change the word "quarterly" to "monthly".

(b)    Section 6.14(f)(2)(A) shall be amended by deleting the hyphen in the word "out-standing" in the penultimate line.

(c)    Section 6.14(f)(3) is deleted in its entirety and Section 6.14(f)(4) is renumbered Section 6.14(f)(3).

(d)    Section 6.14(f) shall be further amended by adding the following sentence flush with the left margin after subsection (4):

"In applying paragraph (2) of this subsection (f) to loans initiated on or after January 1, 2002, the outstanding loan balance at any date shall include accrued interest compounded annually to such date, disregarding any deemed distribution that may have occurred under the rules of subsections (g) and (h) of this Section 6.16."

(e)    Section 6.14(g) shall be amended to add the following language after the word "In" in the first line:

"the case of a loan outstanding before January 1, 2002, in".

Confidential                                                                                                                     XC00031614

(f)   Section 6.14(g)(2) shall be amended to add the words "and may not inititate another loan from the Plan" after the words "Profit Sharing Company Stock Account" in the second line.

(g)   Section 6.14(g)(3) shall be amended to add the words "(including missed interest payments)" after the word "balance" in the first line.

(h)   A new Section 6.14(h) shall be added to read in its entirety as follows:

"(h)  In the case of a loan initiated on or after January 1, 2002, in the event that any monthly payment on a loan is not made if full for any reason before the end of the calendar quarter following the calendar quarter in which the missed monthly payment was due, the loan shall be considered to be in default, in which case an amount equal to the unpaid loan balance plus accrued interest compounded annually to the date of default will be deemed to be distributed to the Participant for tax purposes, but will be actually distributed only if and when the Participant is entitled to a distribution from the Plan."

Former Section 6.14(h) through (k) are renumbered Section 6.14(i) through (l), respectively.

(i)   The first sentence of renumbered Section 6.14(i) shall be amended to read in its entirety as follows:

"A loan will be in default in the event that the borrower terminates employment with the Company and fails to repay the loan with interest within ninety days of termination in which case a distribution of the unpaid loan will be made to the Participant and the Participant's Accounts will be reduced by the amount of the unpaid loan plus interest."

(j)   Renumbered Section 6.14(k) shall be amended to change the section reference in the first sentence to read "Section 6.14".

10.  A new Section 7.03(f) shall be added to read in its entirety as follows:

"(f)  Notwithstanding subsections (b) through (e) of this Section 7.03 or any other provision of the Plan to the contrary, with respect to distributions under the Plan made in calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the regulations under Section 401(a)(9) that were proposed in January 2001. This provision shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service."

Former Section 7.03(f) shall be renumbered to read Section 7.03(g).

11.  Renumbered Section 7.03(g) shall be amended to read in its entirety as follows:

"(g)  For purposes of this Plan, severance from employment with the Employer shall be deemed to have occurred even if the Employee continues thereafter to perform substantially the same services for another organization, provided such other organization does not become a participating Employer with respect to the Plan covering the Employee and there is no transfer (other than an optional direct transfer of an eligible rollover distribution pursuant to Code Section 401(a)(31)) to a plan maintained by such organization or its affiliate of assets and liabilities with respect to a portion of the Plan covering the Employee."

12.  Section 7.04(d)(3) shall be amended following the subparagraph "(2) the Participant, after receiving the notice, affirmatively elects a distribution." to read in its entirety as follows:

"(4)  For purposes of this subsection, the following terms shall have the meanings specified below:

3

XC00031615

(A) "eligible retirement plan" means a plan or arrangement, as described in Section 401(a)(31)(D) of the Code, which is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, a qualified trust described in section 401(a) of the Code, an annuity plan described in section 403(a) of the Code, an annuity contract described in Section 403(b) of the Code, or an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan, that accepts a distributee's Eligible Rollover Distribution. The definition of Eligible Retirement Plan also applies in the case of a distribution to a surviving spouse or to a spouse of former spouse who is an alternate payee under a qualified domestic relations order; and

(B) "eligible rollover distribution" means a distribution meeting the requirements of Section 401(a)(31)(C) of the Code, which consists of all or any portion of the balance to the credit of a distributee described in paragraph 8.02(e), except that (i) an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of 10 years or more; any distribution to the extent such distribution is required under section 401(a)(9) of the Code; or any amount that is distributed on account of hardship, and (ii) the portion of any distribution that consists of after tax employee contributions not includible in gross income may be paid only to an individual retirement account of annuity described in Section 408(a) or (b) of the Code or to a qualified defined contribution plan described in section 404(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion not so includible.

(5)    No direct transfer is available under this Section with respect to the portion of any distribution attributable to an unpaid loan made pursuant to Section 6.14."

13. Section 7.04(e) shall be amended to delete the quote mark at the end of the fourth sentence.

14. The third sentence of Section 8.03 shall be amended to read in its entirety as follows:

"However, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings and Employee Savings Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto."

15. The third sentence of Section 9.02 shall be amended to read in its entirety as follows:

"Notwithstanding the foregoing, no distribution shall be made prior to the Participant's Normal Retirement Date if the sum of his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings and Employee Savings Accounts exceeds $5,000, unless the Participant consents in writing under procedures identical to those described in Section 10.01 to such distribution prior to the commencement thereof, except for a death benefit pursuant to Article Ten of the Plan, or any successor article thereto."

16. Section 9.03 shall be amended to add the following new paragraph at the end thereof to read in its entirety as follows:

"For purposes of this Plan, severance from employment with the Employer shall be deemed to have occurred even if the Employee continues thereafter to perform substantially the same services for another organization, provided such other organization does not become a participating Employer

4

with respect to the Plan covering the Employee and there is no transfer (other than an optional direct transfer of an eligible rollover distribution pursuant to Code Section 401(a)(31)) to a plan maintained by such organization or its affiliate of assets and liabilities with respect to a portion of the Plan covering the Employee. Notwithstanding the preceding sentence, a Participant's employment shall not be deemed to have terminated by resignation or discharge if the Participant continues employment with a domestic organization with respect to which the Employer has the control specified in Code Section 414(b) or (c) (as modified by substituting the phrase "50 percent", for the phrase "80 percent" each time it appears in Code Section 1563(a)(1))."

This Amendment is effective as of January 1, 2002, unless otherwise indicated. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the _31st_ day of May, 2002.

XEROX CORPORATION

By: _____
                    Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

5

Confidential

XC00031617

**AMENDMENT NO. 5**
**TO**
**1998 RESTATEMENT**
**THE PROFIT SHARING PLAN OF XEROX CORPORATION**
**AND**
**THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,**
**INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.**

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, In-dustrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2, 3 and 4 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    Effective September 27, 2002, the first sentence of Section 5.01 shall be amended to replace the word "eighteen" with the word "eighty" in two places.

2.    Effective January 1, 1997, Section 5.05(b)(4)(B)(ii) shall be amended to delete the introductory clause "if the Employer so elects,".

3.    Effective January 1, 1997, Section 5.05(b) shall be amended to add a new paragraph (6) as follows:

"(6) "Excess Contributions" means, with respect to a Plan Year, the excess of (i) the aggregate amount of Before-Tax Savings and Profit Sharing Savings contributed by the Employer on behalf of Highly Compensated Employees for the Plan Year over (ii) the maximum amount of such contributions permitted under subsection (a), determined as provided in subsection (d)."

4.    Effective January 1, 1997, Section 5.05(b) shall be amended to read as follows:

"(d) The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the re-quirements of this Section 5.05 and whereby contributions which would otherwise be treated as Before-Tax Savings or Profit Sharing Savings may be treated as After-Tax Savings, or whereby contributions may be refunded to employees as follows:

(1) Notwithstanding any other provision of the Plan, Excess Contributions and income allo-cable thereto (calculated as provided in (2) below) shall be distributed to the extent practicable within two and one-half months after the end of the Plan Year (and in no event later than the last day of the following Plan Year) to Participants on whose behalf Excess Contributions were allocated for the Plan Year. Excess contributions shall be determined on the basis of a ratio leveling method which calculates the extent to which the Actual Deferral Percentage of the Highly Compensated Employee having the highest such percentage would have to be reduced to satisfy the Average Actual Deferral Percentage limitation or to cause such percentage to equal the Actual Deferral Percentage of the Highly Compensated Employee with the next highest percentage, such calculation to be repeated in successive steps and descending order until the Average Actual Deferral Percentage limitation is satisfied. The amount of Excess Contributions on behalf of each Highly Compensated Employee is

Confidential

the product of such employee's compensation and the applicable hypothetical reduction percentage determined above. The amount of the total excess which is distributable to each Highly Compensated Employee is determined on the basis of a dollar leveling method whereby the Employee Before-Tax Savings Account of the Highly Compensated Employee who had the highest dollar amount taken into account in determining the Actual Deferral Percentage for the Plan Year in which the excess arose is reduced until equal to the dollar amount applicable to the Highly Compensated Employee who had the next highest amount taken into account, in successive steps and descending order until the excess is eliminated. Any Matching Company Contributions that have been allocated with respect to such Excess Contributions shall be forfeited and applied to reduce future Employer contributions.

(2)   The income allocable to Excess Contributions is equal to the sum of the allocable gain or loss for the Plan Year and the period between the end of the Plan Year and the date of distribution, computed according to any reasonable method, provided the method is nondiscriminatory, is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used for allocating the income to Participant's accounts.

(3)   The Excess Contributions to be distributed to the Participant shall, after adjustment for income or loss, be reduced (in accordance with regulations) by any excess deferral amount distributed to the Participant under Section 5.04.

(4)   If any Matching Contributions have been allocated with respect to Excess Contributions that are distributed, they shall be forfeited and applied to reduce future Employer contributions for the Plan Year.

If Excess Contributions are corrected by treating Before-Tax Savings or Profit Sharing Savings After-Tax Savings, the amount of such contributions to be recharacterized shall be determined pursuant to the ratio leveling method describe in (1) above and the identity of the Participants subject to recharacterization shall be determined by the dollar leveling method described in (1) above. Any such recharacterization shall occur within two and one-half months after the end of the Plan Year. Amounts recharacterized shall remain subject to the nonforfeitability requirements and distribution limitations applicable to Before-Tax Savings."

5.   Effective January 1, 1997, Section 5.06(b) shall be amended to add a new paragraph (5) as follows:

"(5)  "Excess Aggregate Contributions" means, with respect to a Plan Year, the excess of (i) the aggregate amount of Employee After-Tax Savings and Matching Company Contributions (and any Before-Tax Savings and qualified nonelective contributions taken into account in computing the Contribution Percentage) contributed on behalf of Highly Compensated Employees for the Plan Year over (ii) the maximum amount of such contributions permitted under subsection (a), determined as provided in subsection (e) after determining the amount of Excess Contributions to be recharacterized as employee after-tax contributions Section 5.05(d) or under any other cash or deferred arrangement maintained by the Employer."

6.   Effective January 1, 1997, Section 5.06(d) shall be amended to add read as follows:

"(d)  The Plan Administrator shall establish nondiscriminatory rules, consistent with regulations under the Code, whereby contributions may be decreased, suspended or otherwise modified to meet the requirements of this Section 5.06, or whereby contributions may be distributed as follows:

(1)   Excess Aggregate Contributions and the income allocable thereto (calculated as provided in (2) below) shall be forfeited, if otherwise forfeitable under the terms of this Plan, or, if not forfeitable, distributed, to the extent practicable, within two and one-half months after the end of the plan Year (and in no event later than the last day of the following Plan Year) to Participants on whose behalf Excess Aggregate Contributions were allocated for the Plan Year. Excess Aggregate Contributions shall be determined on the basis of a ratio leveling method which calculates the extent to which the Contribution Percentage of the Highly Compensated Employee having the highest such percentage would have to be reduced to satisfy the Average Contribution Percentage limitation or to cause such percentage to equal the Contribution Percentage of the Highly Compensated Employee

2

Confidential

within the next highest percentage, such calculation to be repeated in successive steps and descending order until the Average Contribution Percentage limitation is satisfied. The amount of Excess Aggregate Contributions on behalf of each Highly Compensated Employee is the product of such employee's compensation and the applicable hypothetical reduction percentage determined above. The amount of the total excess which is distributable to a Highly Compensated Employee is determined on the basis of a dollar leveling method whereby the Company-Matched Savings Accounts (and if necessary the Employee After-Tax Savings Accounts) of the Highly Compensated Employee who had the highest dollar amount taken into account in determining the Contribution Percentage for the Plan Year in which the excess arose are reduced until equal to the dollar amount applicable to the Highly Compensated Employee who had the next highest amount taken into account, in successive steps and descending order until the excess is eliminated.

(2)   The Excess Aggregate Contributions to be distributed to a Participant with respect to a calendar year shall be adjusted for income or loss, calculated and allocated as provided in Section 5.05(d)(2).

(3)   Excess Aggregate Contributions for a calendar year shall be distributed first from the Participant's After-Tax Savings Account and then, if necessary, forfeited if otherwise forfeitable under the terms of the Plan (or if not forfeitable, distributed) from the Participant's Company-Matched Savings Account.

(4)   Amounts forfeited by Highly Compensated Employees under this Section 5.06 shall nevertheless be treated as annual additions under Section 4.11.

(5)   If the multiple use limitation set forth in Section 5.06(b) is exceeded for a Plan Year, such excess shall be eliminated by reducing the Contribution Percentage (rather than the Actual Deferral Percentage) for such Plan Year of Eligible Participants who are Highly Compensated Employees as provided in paragraphs (1) through (4) above."

7.    Effective September 27, 2002, new Section 5.07 shall be added to read in its entirety as follows:

"Section 5.07.   Additional Before-Tax Catch-Up Savings. If a Participant has attained age fifty by the end of a Plan Year, he may, in addition to contributions allowed under Section 5.01, by electing an appropriate before-tax savings percentage, elect to have contributed on his behalf additional before-tax "catch-up" contributions for the Plan Year in an amount of up to the lesser of (1) $1,000 (increased for Plan Years after 2002 by $1,000 per year up to $5,000 for 2006), indexed pursuant to Sections 414(v)(2)(C) and 415(d) of the Code, or (2) one hundred percent of his compensation for the Plan Year less any other elective deferrals (within the meaning of Section 414(u)(2)(C) of the Code) for such year. Such contributions shall be allocated to the Participant's "Employee Before-Tax Savings Account", shall constitute employer contributions under the Code, and shall reduce in an equal amount the Participant's compensation otherwise subject to current withholding of Federal income taxes, but such contributions shall not be subject to the dollar and percentage limitations in Section 5.01, shall not be subject to the limitation on annual additions in Section 4.11, and shall not be taken into account in applying the limitations in Section 5.05, nor shall such contributions be taken into account in applying such limitations (or comparable provisions of any other plan) to other contributions or benefits under the Plan or any other plan."

8.    Section 6.02(a)(1)(B) shall be amended to read in its entirety as follows:

"(B) Tier II Focused Strategy Funds made up of funds more fully described in the Company's 401(k) Savings Plan Investment Funds Guide, as it may be updated from time to time and shall include the Income Fund, which shall be invested primarily in fixed income instruments, such as short to intermediate-term, high-quality bonds; each such fund to be established by the Board of Directors and invested in accordance with guidelines adopted from time to time by the Board of Directors. In addition, there shall be a Xerox Stock Fund, which shall be invested by the Trustee in the Common Stock, par value $1 per share, of the Company, hereafter called "Xerox Stock" and may hold some cash for administrative purposes."

9.    Effective September 27, 2002, Section 6.13(b) shall be amended to delete the third and fourth sentences thereof in their entirety.

3

Confidential

10. Effective September 27, 2002, Section 7.03(d) shall be amended to delete the phrase "; provided, however, that life expectancy shall not be redetermined for a life annuity" at the end of the subsection.

11. Effective September 27, 2002, Section 7.03(e) shall be deleted in its entirety and Sections 7.03(f) and (g) shall become Sections 7.03(e) and (f), respectively.

12. Effective September 27, 2002, the second sentence of the opening paragraph of Section 7.04 shall be deleted in its entirety.

13. Effective September 27, 2002, the opening paragraph of Section 7.04(a) as well as Sections 7.04(a) and (b) shall be amended to read in their entirety as follows:

"<u>Section 7.04. Payment of Benefits</u>. Upon the retirement of a Participant, at such Participant's election, the Plan Administrator shall distribute benefits with respect to the value of the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts in the form of a lump sum.

(a)  Where the participant receives at least part of his Plan benefit directly from the Trust, the Participant's share in the assets of the Trust to be used for such purpose shall remain undivided and unsegregated pending the payment of benefits to him. The value of the Participant's share in the assets of the Trust available for payment directly from the Trust may be paid:

(i)  in a single lump sum as soon as administratively feasible following his retirement,

(ii)  if the Participant's AMTX Employee Before-Tax Savings Account exceeds $5,000, to the extent such assets are attributable to the Participant's AMTX Employee Before-Tax Savings Account, in installment payments of at least $100 over any period certain up to ten years or, if less, the Participant's life expectancy or, if the Participant has a designated beneficiary, the joint life expectancies of the Participant and his designated beneficiary.

Where payment is to be in the form of a lump sum, the number of units in the Separate Funds representing the Participant's interest in each of the Separate Funds (valued as of the valuation date determined pursuant to Section 6.12) shall be canceled and debited from his Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts. Where payment is to be in the form of periodic payments, the number of units in the Separate Funds representing the value of each payment (valued as of the valuation date immediately preceding payment) shall be canceled and debited from the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and/or Rollover Accounts, as the case may be. The whole number of shares of Xerox Stock represented by units in the Xerox Stock Fund credited to his Profit Sharing Savings, Profit Sharing Company Stock and Employee Savings Accounts may be distributed to him where the balance of his interest is to be paid in a lump sum. In such case, distribution in even lots of one hundred shares will be made in Xerox stock, and odd lots up to ninety-nine shares will be distributed in cash. Where the value of his interest is to be distributed in periodic payments, any such whole shares of Stock represented by units in the Xerox Stock Fund may, in the discretion and at the direction of the JAB, be either distributed to him or sold by the Trustee and the proceeds credited to any other Separate Fund, in which case the units credited to the Participant's Profit Sharing, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts representing the investment in the Xerox Stock Fund shall be canceled and the Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts shall be credited with a number of units equal in value to the amount transferred to another Separate Fund. Upon the exhaustion of the value of the units credited to a Participant's Profit Sharing Savings, Profit Sharing Company Stock, Company-Matched Savings, Employee Savings and Rollover Accounts, no further benefits shall be due or payable to or on behalf of such Participant.

With respect to cases where a portion of the value of a Participant's Account is to be used to provide periodic payments under this subsection, the JAB shall establish uniform rules of general applicability re-

4

Confidential

garding from which Accounts and from which Separate Funds, if any, the amount used to provide a lump sum distribution or periodic payment will be withdrawn."

14. Effective September 27, 2002, Section 7.04(c) is deleted in its entirety. Sections 7.04(d) and (e) shall be renumbered Sections 7.04(b) and (c).

15. Effective January 1, 2002, renumbered Section 7.04(b) shall be amended (except that the change in the definition of "eligible rollover distribution" to exclude hardship withdrawals shall be effective January 1, 1999) to read as follows:

"(d)  At the election of a Participant or his spouse or former spouse who is entitled to an eligible rollover distribution, under Article Seven, Eight or Ten, payment of all (or a specified part thereof) shall be made by direct transfer to the trustee or other custodian of an eligible retirement plan, subject to the following rules:

(1)  This subsection shall not apply to an eligible rollover distribution which the Plan Administrator determines to come within any de minimus exception for direct transfers allowed under Section 401(a)(31) of the Code.

(2)  To invoke the direct transfer option:

(A)  the Participant or his spouse or former spouse must specify, in such form and at such time as the Plan Administrator may prescribe, the eligible retirement plan to which the distribution is to be paid;

(B)  the Participant or his spouse or former spouse must provide to the Plan Administrator in a timely manner adequate information regarding the designated eligible retirement plan;

The Plan Administrator may place reasonable reliance on such information concerning a designated eligible retirement plan as is provided by the Participant or his spouse or former spouse and is not required to verify such information. Notwithstanding the foregoing, an alternate payee under a qualified domestic relations order who is not the spouse or former spouse of a Participant may not elect a direct transfer and a spouse or former spouse who is not an alternate payee under a qualified domestic relations order may elect a direct transfer only to an eligible retirement plan which is an individual retirement account.

(3)  The Plan Administrator shall, within a reasonable time before a distribution or withdrawal from the Plan, provide to the recipient a written explanation of:

(A)  the provisions under which the recipient may have the distribution transferred directly to another eligible retirement plan;

(B)  the provision which requires the withholding of tax on eligible rollover distributions which are not transferred directly to another eligible retirement plan;

(C)  the provisions under which an eligible rollover distribution will not be subject to tax if transferred to an eligible retirement plan within sixty days after receipt;

(D)  the provisions concerning taxation of lump sum distribution.

If a distribution is one to which Section 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than thirty days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(1)  the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2)  the Participant, after receiving the notice, affirmatively elects a distribution.

5

Confidential

XC00031610

(4)  For purposes of this subsection, the following terms shall have the meanings specified below:

(A)  "eligible retirement plan" means a plan or arrangement described in Section 402(c)(8)(B) of the Code, including an individual retirement account described in Section 408(a) of the Code; an individual retirement annuity described in Section 408(b) of the Code, a qualified trust, an annuity plan described in Section 403(a) of the Code, and (effective January 1, 2002) an annuity contract described in Section 403(b) of the Code or an eligible deferred compensation plan described in Section 457(b) of the Code maintained by a state, political subdivision of a state or any agency or instrumentality of a state or political subdivision of a state which agrees to separately account for amounts transferred into such plan from this Plan;

(B)  "eligible rollover distribution" means a distribution that meets the requirements of Section 402(c)(4) of the Code consisting of all or a portion of the balance to the credit of the distributee, except that such term does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under section 401(a)(9) of the Code; any distribution on account of hardship; and the portion of any distribution that is not includible in gross income, provided that for periods after December 31, 2001 such portion shall not be excluded in the case of transfers to an individual retirement account or annuity described in Section 408(a) or (b) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portions includible and not includible in gross income.

(5)  No direct transfer is available under this Section with respect to the portion of any distribution attributable to an unpaid loan made pursuant to Section 6.14."

16.  The second sentence of Section 8.04 shall be amended to add the words "or 7.04" after the reference to "Section 7.02".

17.  The fifth sentence of Section 8.04 shall be amended to add the words "and 7.04" after the reference to "Section 7.02".

18.  Section 8.05 shall be amended to change the reference to Section "7.03" to read "7.04".

19.  Effective September 27, 2002, the second sentence of Section 9.02 shall be amended to read in its entirety as follows:

"Upon his termination of employment by resignation or discharge, the JAB shall direct the Trustee to segregate the value of his nonforfeitable interest and distribute such value to him, all in accordance with the provisions of Section 7.04 as if he had attained his normal retirement date and had retired from the active service of the Employer, provided, however, that where such distribution is in the form of a single lump sum, the Participant's interest in the Separate Funds shall be valued as of the valuation date determined pursuant to Section 6.12."

20.  The second sentence of Section 10.03 shall be amended to change the reference to "Section 7.03(b)(2)" to read "Section 7.04(a)(ii)".

21.  The title of Section 13.09 shall be amended to read in its entirety as follows:

"Section 13.09.  Incompetency and/or Powers of Attorney."

22.  A new second paragraph shall be added to Section 13.09 to read in its entirety as follows:

"Payments may also be made to or in accordance with instructions provided by an individual with power of attorney to act on behalf of a Participant in connection with the Plan, provided that proper proof of appointment and continuing qualification is furnished in a form and manner acceptable to the Plan Ad-

Confidential

XC00031611

ministrator.  Any payment made in accordance with this Section 13.09 shall be a complete discharge of any liability therefor under the Plan."

This Amendment is effective as of the date hereof, unless otherwise indicated. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the 31st day of October, 2002.

XEROX CORPORATION

By: _____
             Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

7

Confidential

**AMENDMENT NO. 6**
**TO**
**1998 RESTATEMENT**
**THE PROFIT SHARING PLAN OF XEROX CORPORATION**
**AND**
**THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,**
**INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.**

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, In-dustrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2, 3, 4 and 5 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    Section 2.05 shall be amended to remove the "]" at the end thereof.

2.    Effective as of January 1, 2002, Section 4.01 shall be amended as follows:

   (a)    A new subsection (a) immediately after the title of the Section to read in its entirety as follows:

      "(a)    For each calendar year after December 31, 2001, there will be no further Employer con-tributions of any kind (except those matching contributions referenced in Section 4.12) hereof, so that all references to any such Employer contributions and allocations thereof shall have no meaning effective as of such date.  However, notwithstanding the above, this Section 4.01(a) does not apply to Participants who are members of UNITE Local 14Z for whom such Employer contribu-tions continue."

   (b)    The former first paragraph of Section 4.01 shall become subsection (b).

   (c)    Former Section 4.01(a) shall be renumbered Section 4.01(c).

   (d)    Former Section 4.01(b) shall be renumbered Section 4.01(d)

3.    Effective January 1, 2000, renumbered Section 4.01(d) shall be amended to read in its entirety as follows:

      "(d)    For contributions made with respect to Plan Years ending on or after December 31, 1999, the contribution on behalf of a Participant (other than a Participant who is a member of UNITE Local 14Z) allocable to his Profit Sharing Savings Account and Profit Sharing Company Stock Account shall be equal to fifty percent and twenty-five percent, respectively, of the amount derived by multi-plying the amount of the Participant's compensation for that calendar year by the payout percentage set forth in the table below that corresponds with the EPS Growth Rate for such Plan Year.  For Participants who are members of UNITE Local 14Z, for contributions made with respect to Plan Years ending on or after December 31, 1999, the contribution on behalf of such Participant allocable

to his Profit Sharing Savings Account shall be equal to fifty percent of the amount derived by multi-plying the amount of the Participant's compensation for that calendar year by the payout percentage set forth in the table below that corresponds with the EPS Growth Rate for such Plan Year.  In the event that EPS in a year shall be sufficient to provide for a Company contribution under this Section, each Participant shall receive the greater of the Company contribution calculated pursuant to the ta-ble below or $100.00."

This Amendment is effective as of the date below, unless otherwise indicated. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the 11th day of December, 2002.

XEROX CORPORATION

By:_____
                    Vice President


THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By:_____

2

XC00031605

*#002*
*P8 2 of 2*

**AMENDMENT NO. 7**
**TO**
**1998 RESTATEMENT**
**THE PROFIT SHARING PLAN OF XEROX CORPORATION**
**AND**
**THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,**
**INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.**


W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2, 3, 4, 5 and 6 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    Section 4.01(a) shall be amended by deleting the final sentence so that it reads in its entirety as follows:

"(a)  For each calendar year after December 31, 2001, there will be no further Employer contributions of any kind (except those matching contributions referenced in Section 4.12) hereof, so that all references to any such Employer contributions and allocations thereof shall have no meaning effective as of such date."

This Amendment is effective as of January 1, 2002. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the ⎽18ᵗʰ day of December, 2002.


XEROX CORPORATION


By:_____
                    Vice President


THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.


By:_____

Confidential                                                               XC00031603

## AMENDMENT NO. 7
## TO
## 1998 RESTATEMENT
### THE PROFIT SHARING PLAN OF XEROX CORPORATION
### AND
### THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
### INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2, 3, 4, 5 and 6 (hereinafter referred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies designated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.     Section 4.01(a) shall be amended by deleting the final sentence so that it reads in its entirety as follows:

> "(a)  For each calendar year after December 31, 2001, there will be no further Employer contributions of any kind (except those matching contributions referenced in Section 4.12) hereof, so that all references to any such Employer contributions and allocations thereof shall have no meaning effective as of such date."

This Amendment is effective as of January 1, 2002. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the 18th day of December, 2002.

XEROX CORPORATION

By: _____
                        Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By: _____

Confidential

XC00031602

# AMENDMENT NO. 8
## TO
## 1998 RESTATEMENT
## THE PROFIT SHARING PLAN OF XEROX CORPORATION
## AND
## THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES,
## INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

### W I T N E S S E T H:

WHEREAS, Xerox Corporation (the "Company") and The Xerographic Division, Union of Needletrades, In-dustrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (the "Union") have established The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. which is presently set forth in "1998 Restatement, The Profit Sharing Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C.", as amended by Amendment Nos. 1, 2, 3, 4, 5, 6 and 7 (hereinafter re-ferred to as the "Plan") for certain of its employees and those of the Employer's affiliated companies des-ignated as eligible to participate (hereinafter referred to as "Eligible Employees"), and

WHEREAS, the Company and the Union have determined that it is advisable to amend the Plan,

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    The paragraph following the word "W I T N E S S E T H:" shall be amended to read in its entirety as follows:

"WHEREAS, the Employer and the Union have heretofore negotiated, amended and restated a savings plan entitled "The Savings Plan of Xerox Corporation and The Xerographic Division, Union of Nee-dletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C." for the benefit of the hourly paid em-ployees of the Employer within the bargaining units represented by the Union;"

2.    Section 1.01 shall be amended to read in its entirety as follows:

"Section 1.01.  Name of Plan. This plan shall be called "The Savings Plan of Xerox Corporation and The Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. and is sometimes referred to herein as the "Plan". The Plan is designed to qualify as a savings plan for purposes of Sections 401(a), 402, 412 and 417 of the Code and to qualify as a participant-directed ac-count plan under Section 404(c) of ERISA."

3.    The second sentence of Section 1.10 shall be amended to read in its entirety as follows:

"The effective date of the Plan as restated by this instrument is January 1, 2003."

4.    Section 2.03(i) shall be amended to read in its entirety as follows:

"(i)    construe and interpret the provisions of the Plan and the agreements of trust hereunder and re-solve any ambiguity with respect thereto and their construction thereof and their action thereunder, and to determine all questions of fact, made or taken in good faith, shall be final and conclusive;"

5.    Section 3.01(c) shall be amended to delete the quotation mark at the end of the paragraph.

6.    The second paragraph of Section 3.04 shall be amended to read in its entirety as follows:

Confidential

"The entire interest under the Xerox Corporation Savings Plan of any employee subject to this Section shall remain subject to the terms and conditions of such Plan."

7.    Section 4.10(c) shall be amended to delete the hyphen in the word "trans-ferred" so that it reads "transferred".

8.    Section 4.12(a) shall be amended to add the following sentence to the end thereof:

"For the calendar year ending on December 31, 2004 and for subsequent years, thirty-five percent shall be increased to fifty percent."

9.    Section 4.12(b) shall be amended to add the following sentence to the end thereof:

"For the calendar year ending on December 31, 2003, one and four-tenths percent shall be increased to two and one-tenth percent.  For the calendar year ending on December 31, 2004 and for subsequent years, one and four-tenths percent shall be increased to three percent."

10.    Section 6.14(h) shall be amended to read in its entirety as follows:

"(h)  In the case of a loan initiated on or after January 1, 2002, in the event that any monthly payment on a loan is not made in full when due, for any reason, other than subsection (l) below, the loan shall be in default,.  Such default may be cured before the end of the calendar quarter following the calendar quarter in which the missed monthly payment was due by paying all missed installments with accrued interest otherwise due before the end of the cure period.  If the loan default is not cured by the required date, an amount equal to the unpaid loan balance plus accrued interest compounded annually to the end of the cure period will be deemed to be distributed to the Participant for tax purposes, but will actually be distributed only if and when the Participant is entitled to a distribution from the Plan."

This Amendment is effective as of January 1, 2003 unless otherwise indicated. In all other respects the Plan shall remain unchanged.

IN WITNESS WHEREOF, the Employer and the Union have caused this Amendment to be signed as of the _25th_ day of February, 2003.

XEROX CORPORATION

By:_____
            Vice President

THE XEROGRAPHIC DIVISION, UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, A.F.L.-C.I.O.-C.L.C.

By:_____

2

Confidential

XC00031601